## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CHICKEN SOUP FOR THE SOUL ENTERTAINMENT INC., *et al.*,[1] | Case No. 24-11442 |
| Debtors. | (Joint Administration Requested) |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, REIMBURSABLE EXPENSES, AND OTHER OBLIGATIONS ON ACCOUNT OF COMPENSATION AND BENEFITS PROGRAMS AND (B) CONTINUE COMPENSATION AND BENEFITS PROGRAMS; AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors")

hereby move (this "Motion") for entry of an interim Order substantially in the form attached as

**Exhibit A** (the "Interim Order") and a final Order substantially in the form attached as **Exhibit B**

(the "Final Order" and, together with the Interim Order, the "Proposed Orders") granting the relief

requested below.  In support of this Motion, the Debtors, through their undersigned counsel,

respectfully represent as follows:[2]

---

[1]        The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508).  The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

[2]        The facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration (as defined below), filed contemporaneously herewith and incorporated herein by reference.  Capitalized terms used but not defined in this Motion have the meanings given in the First Day Declaration.

## RELIEF REQUESTED

1.      By this Motion, pursuant to sections 105(a), 363(b), 507(a), and 541 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors seek entry of the Proposed Orders:  (a) authorizing the Debtors to (i) pay all prepetition wages, salaries, commissions, other compensation, reimbursable expenses, and other obligations on account of the Compensation and Benefit Programs (as defined herein) and (ii) continue to administer, modify, change, and discontinue the Compensation and Benefit Programs, and to implement new programs, policies, and benefits for non-insider employees, postpetition in the ordinary course of business, and (b) granting related relief.

2.      For the reasons set forth below, the Debtors submit that the relief requested is in the best interests of the Debtors, their estates, creditors, and other parties in interest.

## JURISDICTION AND VENUE

3.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to entry of a final Order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final Orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory predicates for the relief requested by this Motion are sections 105(a), 363(b), 507(a), and 541 of the Bankruptcy Code, and such relief is warranted under Bankruptcy Rules 6003 and 6004 and Local Rule 9013-1.

## BACKGROUND

6.      On June 28, 2024, and June 29, 2024 (as applicable, the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned cases (collectively, the "Chapter 11 Cases"). The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code. No official committees have been appointed in the Chapter 11 Cases, and no request has been made for the appointment of a trustee or an examiner.

7.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the Chapter 11 Cases under Bankruptcy Rule 1015(a).

8.      Additional information regarding the Debtors' business, their capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the *Declaration of William J. Rouhana, Jr., Chairman of the Board, in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").

## THE DEBTORS' WORKFORCE

9.      The Debtors' Employees and Contractors (each as defined below and, together, the "Debtors' Workforce") perform a wide variety of functions critical to the Debtors' restructuring. Their skills, knowledge, and understanding of the Debtors' business and operations are essential to preserving operational stability and efficiency. In many instances, the Debtors' Workforce includes highly trained personnel who are not easily replaced. Without the continued,

uninterrupted services of the Debtors' Workforce, the Debtors' reorganization efforts will be jeopardized.

10.    As of the Petition Date, the Debtors employ approximately 836 full-time employees and 197 part-time employees (collectively, the "Employees"), most of whom are involved in the day-to-day operations of the Debtors' business.  None of the Employees are represented by a union or employed pursuant to a collective bargaining agreement.

11.    In addition to the Employees, the Debtors also periodically retain temporary workers (the "Contractors") sourced from various staffing agencies ("Staffing Agencies") and other sources to fulfill certain duties on a short and long-term basis.  The Debtors typically use the services of approximately six (6) Contractors at any given time to supplement the efforts of the Employees.

12.    The vast majority of the Debtors' Workforce rely exclusively on the Compensation and Benefit Programs (as defined below) to pay their daily living expenses and support their families.  They will be exposed to significant financial hardship if the Debtors are not permitted to continue paying their compensation and providing them with health and other benefits during the Chapter 11 Cases.  Consequently, the relief requested herein is necessary and appropriate.

## COMPENSATION AND BENEFIT PROGRAMS

13.    To minimize the personal financial burden the Debtors' Workforce would suffer if obligations on account of the Compensation and Benefit Programs are not paid or remitted to such parties when due or as expected, the Debtors seek authority to (i) pay all prepetition wages, salaries, other compensation, reimbursable expenses, and other obligations on account of the Compensation and Benefit Programs and (ii) continue to administer, modify, change, and discontinue the Compensation and Benefit Programs, and to implement new programs, policies,

and benefits for non-insider employees, during the Chapter 11 Cases in the ordinary course of business.  As detailed herein, the Compensation and Benefit Programs include Employee Wages, Contractor and Staffing Obligations, Reimbursable Expenses, Payroll Deductions, Withholding Obligations, Payroll Processing Fees, Paid Leave, Health and Welfare Benefits, the Workers' Compensation Program, the 401(k) Plan, and the Non-Insider Severance Plan (each as defined below and, collectively, the "Compensation and Benefit Programs").

14.     Although the Debtors seek authority on a final basis to pay or otherwise honor all accrued but unpaid prepetition obligations associated with the Compensation and Benefit Programs (collectively, the "Prepetition Obligations"), the Debtors seek authority on an interim basis to pay or otherwise honor the Prepetition Obligations up to the following caps in order to avoid immediate and irreparable harm during the period between the Petition Date and entry of a final order on this Motion.

| Relief Sought | Interim Amount |
|---|---|
| **Compensation and Withholding Obligations** | |
| Employee Wages | $3,518,435 |
| Contractor and Staffing Obligations | $90,900 |
| Reimbursable Expenses | $5,500 |
| Payroll Deductions | $1,374,438 |
| Withholding Obligations | $1,468,007 |
| Payroll Processing Fees | $130,582 |
| **Employee Benefits Programs** | |
| Health and Welfare Benefits | $2,237,880 |
| 401(K) Plan | $594,204 |
| **TOTAL** | **$9,419,946** |

## I.     Compensation and Withholding Obligations

### A.     Employee Wages

15.     The Debtors incur obligations to the Employees for, among other things, wages salaries, overtime, and other obligations described herein (collectively, the "Employee Wages").

Employees are paid salaries on account of their services to the Debtors on a semi-monthly basis. Over the past twelve (12) months, the Debtors' average gross monthly payroll for the Employees aggregated approximately $1,700,000 per pay period. As of the Petition Date, the Debtors estimate that they owe the Employees approximately $3,518,435 on account of accrued but unpaid Employee Wages, all of which are either owed or will become due and owing within the first twenty-one (21) days of the Chapter 11 Cases. The amount due as of the Petition Date is larger than a single pay period because the Debtors were unable to make payroll for the two-week period ending on June 14, 2024.

16.     Any continuing loss of Employee Wages would cause the Employees to experience substantial financial hardship. Considering the substantial benefits the Employees will continue to provide to the Debtors' estates and the cost attendant to filling sudden vacancies, it is critical that the Debtors maintain their Employee base. Accordingly, the Debtors seek authority to pay the Employees any accrued but unpaid prepetition Employee Wages and to continue honoring Employee Wage obligations postpetition in the ordinary course of business and consistent with past practices.

17.     To the best of the Debtors' knowledge, as of the Petition Date, there are approximately 38 Employees owed Employee Wages in an amount exceeding the $15,150 statutory cap imposed by section 507(a)(4) of the Bankruptcy Code. However, the Debtors are not requesting authority in this Motion to pay any Employees in excess of the statutory cap.

**B.     Contractor and Staffing Obligations**

18.     The Debtors make payments to the Contractors and Staffing Agencies (the "Contractor and Staffing Obligations") for the performance of certain services important to the Debtors' operations. The Debtors rely on the support of Contractors to complete discrete projects

in furtherance of the Debtors' business and to fill short-term positions.  Continued payment of the Contractor and Staffing Obligations is critical to minimizing disruption to the Debtors' business operations.

19.     As of the Petition Date, the Debtors estimate that they owe the Contractors and Staffing Agencies approximately $330,000 on account of accrued but unpaid Contractor and Staffing Obligations.  The Debtors seek authority to only pay the Contractors and Staffing Agencies accrued but unpaid prepetition Contractor and Staffing Obligations up to the statutory cap or $90,900 and to continue honoring Contractor and Staffing Obligations postpetition in the ordinary course of business and consistent with past practices.

### C.     Reimbursable Expenses

20.     In the ordinary course of business, the Debtors reimburse Employees for a variety of ordinary, necessary, and reasonable business-related expenses that the Employees incur on behalf of the Debtors in the scope of their employment (the "Reimbursable Expenses").  Such Reimbursable Expenses must be approved prior to purchase.  Most Employees initially incur and pay for such Reimbursable Expenses by using personal funds or personal credit cards but are subsequently reimbursed by the Debtors after submission and approval of expense reimbursement reports.  Some Employees hold corporate credit cards to pay Reimbursable Expenses. Reimbursable Expenses may include airfare, hotel stays, meals, and transportation, among other necessary business expenses.

21.     In the twelve months before the Petition Date, the Debtors paid, on average approximately $5,500 per month in Reimbursable Expenses.  As of the Petition Date, the Debtors estimate that they owe Employees approximately $5,500 on account of accrued but unpaid Reimbursable Expenses.

22.     It is essential to the continued operation of the Debtors' business that the Debtors continue reimbursing Employees for the Reimbursable Expenses in the ordinary course of business.  The Debtors' inability to pay the Reimbursable Expenses could impose a hardship on Employees where such individuals incurred Reimbursable Expenses with the understanding that such expenses would be timely reimbursed.  The Debtors seek authority to pay the Employees on account of any accrued but unpaid prepetition Reimbursable Expenses and to continue making payments to Employees on account of Reimbursable Expenses postpetition in the ordinary course of business and consistent with past practices.

**E.      Payroll Deductions and Withholding Obligations**

23.     In the ordinary course of business and during each applicable payroll period, the Debtors routinely deduct amounts from Employees' paychecks for retirement programs, benefit plans, flexible spending accounts, insurance programs, and other similar programs (the "Payroll Deductions") and forward such amounts to various third-party recipients.

24.     As of the Petition Date, the Debtors estimate that they owe various third-party recipients approximately $1,374.438 on account of accrued but unpaid Payroll Deductions.  The Debtors seek authority to pay applicable third-party recipients any accrued but unpaid prepetition Payroll Deductions and to continue processing and remitting the Payroll Deductions postpetition in the ordinary course of business and consistent with past practices.

25.     In addition to the Payroll Deductions, certain federal and state laws require that the Debtors withhold certain amounts from Employees' gross pay related to federal, state, and local income taxes as well as Social Security and Medicare taxes (collectively, the "Employee Payroll Taxes") for remittance to the appropriate federal, state, or local taxing authority.  The Debtors must then match the Employee Payroll Taxes from their own funds and pay, based upon a percentage

of gross payroll, additional amounts for federal and state unemployment insurance and Social Security and Medicare taxes (the "Payroll Taxes," and, collectively with Employee Payroll Taxes, the "Withholding Obligations"). The Withholding Obligations generally are processed and forwarded to the appropriate federal, state, and local taxing authorities at the same time that the Employees' payroll checks are disbursed.

26.    As of the Petition Date, the Debtors estimate they owe approximately $15,500,000 in accrued but unpaid Withholding Obligations from October 1, 2023 through June 7, 2024 (the "Accrued Withholding Obligations"). The Debtors are not seeking authority in this Motion to pay the Accrued Withholding Obligations except for that portion representing approximately $1,374,438 in Withholding Obligations that are accrued but unpaid from June 8, 2024, and to otherwise continue to pay the Withholding Obligations postpetition in the ordinary course of business.

**F.    Payroll Processing Services**

27.    The Debtors use UKG (the "Payroll Processor") to administer payroll, which includes calculating and processing gross-to-net payroll, issuing payroll payments to the appropriate funds transfer networks, and generating payroll statements. The Payroll Processor charges a quarterly fee to process payroll and is imperative to the smooth functioning of the Debtors' operations and payroll processing. The Debtors pay the Payroll Processor approximately $61,000 each quarter for its services.

28.    As of the Petition Date, the Debtors estimate that they owe the Payroll Processor approximately $131,000 on account of accrued but unpaid payroll processing fees (the "Payroll Processing Fees"). The Debtors seek authority to pay the Payroll Processor any accrued but unpaid

prepetition Payroll Processing Fees and to continue paying the Payroll Processing Fees postpetition in the ordinary course of business.

## II.    Employee Benefits Programs

29.    The Debtors maintain and/or contribute to a number of employee benefits programs, including Paid Leave, various Health and Welfare Benefits, the 401k Plan, the Workers' Compensation Program, and the Non-Insider Severance Plan, each as described more fully below. Certain of these employee benefits programs require payments by the Debtors that may be unpaid as of the Petition Date.  The Debtors request authority to pay any Prepetition Obligations associated with the employee benefit programs and to continue the employee benefit programs postpetition in the ordinary course of business.

### A.    Paid and Unpaid Leave

30.    The Debtors maintain a paid leave program for the Employees, providing paid leave for personal paid time off ("PTO"), holidays, and other paid leave (collectively, the "Paid Leave"). As of the Petition Date, the Debtors estimate that Employees have accrued but unused Paid Leave of approximately $3,900,000 (or approximately 94,000 hours).

31.    Paid Leave is available to full-time and part-time Employees.  Employees accrue between 5-7 hours of PTO per pay period with an annual maximum accrual cap between 144 hours and 184 hours depending on the applicable Employee's years of service.

32.    The continuation of the Paid Leave policy is essential to maintaining Employee morale during the Chapter 11 Cases.  Employees depend on the Paid Leave policy, and the Debtors anticipate the Employees will continue to make use of the Paid Leave policy.  The Paid Leave policy does not create any material cash flow requirements as the Debtors do not make Cash Out

Payments to Employees when an Employee is terminated.  The Debtors seek authority to continue honoring obligations under the Paid Leave policy postpetition in the ordinary course of business.

**B.    Health and Welfare Benefits**

33.    The Debtors offer their eligible Employees a portfolio of health and welfare benefits, including medical care, dental coverage, vision coverage, health savings accounts, life insurance, disability insurance, coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), registered retirement savings plans, and other benefit programs provided to Employees in the ordinary course of business (collectively, and as listed in detail in the paragraphs below, the "Health and Welfare Benefits").  As of the Petition Date, the Debtors' total Prepetition Obligations associated with the Health and Welfare Benefits are approximately $2,400,000.

**i.    Medical, Dental, and Vision Benefits**

34.    Prior to the Petition Date, the Debtors administered their medical plan (the "Medical Plan") through Anthem Blue Cross ("Anthem").  The Debtors offered Employees a choice between a HSA high deductible Medical Plan, a higher-deductible PPO Medical Plan, and a lower deductible PPO Medical Plan.  The Debtors paid monthly premiums based on the number of covered Employees for administrative services related to the Medical Plan.  On June 14, 2024, however, Anthem terminated the Medical Plan for nonpayment effective as of May 14, 2024.

35.    Prior to termination, the Debtors paid Anthem approximately $2,000,000 per month towards the Medical Plan.  The Debtors subsidized participating Employees' premiums in connection with the Medical Plan, and all eligible Employees contributed through Payroll Deductions.  As of the Petition Date, the Debtors estimate that they owe approximately $4,000,000 on account of accrued but unpaid obligations under the Medical Plan.  Prior to the Petition Date,

Anthem offered to reinstate the Medical Plan upon the payment of a portion of the prepetition amounts owed. The Debtors seek authority, but not direction, to pay up to $2,000,000 in accrued but unpaid obligations under the Medical Plan, which payments the Debtors would condition upon reinstatement of the Medical Plan by Anthem. In the event Anthem does not agree to reinstate the Medical Plan upon payment of the past due amounts, the Debtors request authority to purchase a new Medical Plan that is comparable to the medical coverage previously offered by Anthem.

36.     Additionally, the Debtors offer all eligible Employees the option of participating in a range of dental plans (the "Dental Plan") administered by Delta Dental of Washington. The Debtors offer a base plan and a more comprehensive plan. The Debtors subsidize the Employees' premiums in connection with the Dental Plan, and all eligible Employees contribute through Payroll Deductions. On average, the Debtors contribute approximately $60,000 per month to the Dental Plan. As of the Petition Date, the Debtors estimate that they owe approximately $146,021 on account of accrued but unpaid obligations under the Dental Plan.

37.     The Debtors also offer eligible Employees the option of participating in a vision plan administered by VSP Vision Care, Inc. (the "Vision Plan"), which is funded partially through Payroll Deductions and partially through contributions from the Debtors. On average, the Debtors contribute approximately $40,000 per month for the Vision Plan. As of the Petition Date, the Debtors estimate that they owe approximately $40,000 on account of the Vision Plan.

**ii.     Flexible Spending Accounts**

38.     All eligible Employees may elect to participate in the Debtors' tax-advantaged flexible spending account plans (the "FSA Plans") administered by Navia Benefit Solutions, Inc. ("Navia"). Using the FSA Plans, eligible Employees may set aside pre-tax dollars up to the maximum amount allowed under IRS regulations to pay for eligible health care expenses and

dependent care expenses.  Employees who elect to participate in the FSA plans designate a certain amount per month to be withheld as a Payroll Deduction.  The Debtors do not make contributions to the FSA Plans; however, the Debtors pay a *de minimis* monthly administrative fee to Navia for each covered participant.

39.     The balance held on account of the FSA Plans constitutes segregated funds over which the Debtors have no ownership interest.  However, over the course of each year, Employees may utilize the balance within their FSA Plans to pay for a wide variety of health and dependent care not otherwise covered by the Health and Welfare Benefits.  When an Employee seeks to use his or her balance in the FSA Plan, the Debtors remit such amounts to the requested provider through Navia.  As of the Petition Date, the Debtors estimate they owe Navia $15,000 on account of prepetition accrued but unpaid obligations under the FSA Plans.

### iii.     Health Savings Accounts

40.     All Employees enrolled in Anthem's HSA high deductible Medical Plan (the "HSA Plan Employees") may elect to participate in the Debtors' tax-advantaged health savings account managed by Fidelity (the "HSA Plan").  Under the HSA Plan, HSA Plan Employees have the ability to contribute a portion of their pre-tax compensation to a health savings account to pay for qualified out-of-pocket health care expenses for the HSA Plan Employees and qualified dependents.  The HSA Plan Employees who elect to participate in the HSA Plan designate a certain amount per month to be withheld as a Payroll Deduction.

41.     The HSA Plan Employees contribute, on average, approximately $27,000 on a monthly basis to the HSA Plans.  The Debtors also pay a *de minimis* monthly administrative fee to Fidelity for each covered HSA Plan Employee.  As of the Petition Date, the Debtors believe they owe approximately $26,565 in unremitted HSA Plan contributions.

### iv.    Life and Disability Insurance

42.    The Debtors provide all eligible Employees with life and basic accidental death and dismemberment insurance (the "Basic Life/AD&D Insurance").  The Basic Life/AD&D Insurance coverage is through Sun Life Assurance Company of Canada ("Sun Life") in the event of serious illness, injury, or death, or in the event that an Employee becomes unable to work due to an illness or injury.  The Basic Life/AD&D Insurance is offered to all Employees at no cost.  The Debtors also provide short-term and long-term disability benefits to eligible Employees (the "Disability Benefits").  The Disability Benefits are provided through Sun Life.  Employees are eligible for Disability Benefits on the first day of the month following thirty days of full-time employment. The Debtors pay approximately $86,000 per month toward the Basic Life/AD&D Insurance and Disability Benefits.  Further, through Sun Life, eligible Employees may opt into an additional voluntary life and accidental death and dismemberment insurance coverage program ("Voluntary Life/AD&D Insurance").  The Debtors do not contribute to the Voluntary Life/AD&D Insurance Policy.  As of the Petition Date, the Debtors estimate that they owe Sun Life approximately $171,298 on account of accrued but unpaid Basic Life/AD&D Insurance and Disability Benefits.

### vi.    Unemployment Insurance

43.    Employees may be eligible to receive unemployment insurance benefits under certain circumstances of separation from employment (the "Unemployment Insurance").  The Unemployment Insurance is administered on a state-by-state basis and, as a result, eligibility for benefits is determined by the state unemployment agency of the state in which the eligible Employee works.  As a result, the Debtors do not accrue payments in connection with any Unemployment Insurance programs.

### vii.    Other Welfare Programs

44.    In addition to the foregoing, the Debtors have miscellaneous practices, programs, and policies that provide medical and welfare benefits to eligible Employees, including COBRA, voluntary critical illness insurance, voluntary identity theft protection, long-term care insurance, commuter benefits, and various employee wellness programs (collectively, the "Other Welfare Programs").  The Debtors believe that the Other Welfare Programs are important to maintain Employee morale and assist in the retention of the Debtors' workforce.  The monthly cost of such programs for the Debtors is *de minimis* in the context of the Debtors' aggregate compensation and benefit obligations.  The Debtors believe that failing to honor expected benefits under the Other Welfare Programs would have an adverse effect on the Employees.

### C.    Workers' Compensation Programs

45.    Prior to June 2024, the Debtors maintained a comprehensive workers' compensation program and workers' compensation insurance (the "Worker's Compensation Program").  This past June, the Debtors' prior worker's compensation insurance provider, Travelers Indemnity Company ("Travelers"), cancelled the Debtors' worker's compensation insurance for nonpayment.  Because the Debtors are statutorily and/or contractually obligated to maintain the Workers' Compensation Program, the Debtors request authority to purchase new worker's compensation insurance to cover Employees in all required states.  The Debtors' prior worker's compensation policy covered Employees in all states except North Dakota, Ohio, Washington, and Wyoming.  North Dakota, Ohio, Washington, and Wyoming are monopolistic funds states and do not permit the purchase of workers' compensation insurance from commercial insurance companies.  Coverage is provided for Employees in these jurisdictions through

jurisdiction-operated funds.   The Debtors' request authority to purchase new worker's compensation insurance in the ordinary course of business.

46.     As of the Petition Date, the Debtors estimate that there are approximately 33 open claims under the Debtors' prior Workers' Compensation Program.  The Debtors must continue the claim assessment, determination, adjudication, and payment process pursuant to the Worker's Compensation Program without regard to whether such liabilities arose before the Petition Date to ensure that the Debtors comply with applicable workers' compensation laws and requirements during the pendency of the Chapter 11 Cases.[3]  To the extent any Employees assert claims arising under the Workers' Compensation Program, the Debtors request that the Court modify the automatic stay under section 362 of the Bankruptcy Code to permit the Employees to proceed with their claims under the Workers' Compensation Program.  This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

### D.     401(k) Plan and Pension Plan

47.     The Debtors maintain a 401(k) savings plan—a qualified defined contribution plan pursuant to section 401(k) of the Internal Revenue Code—for all eligible Employees (the "401(k) Plan").  The 401(k) Plan is administered through FMR, LLC ("Fidelity").

48.      As of the Petition Date, the Debtors estimate that they owe approximately $594,204 in accrued but unpaid Employee 401(k) contributions.  The Debtors seek authority to pay all prepetition contributions and to continue the 401(k) Plan postpetition in the ordinary course of business.

---

[3]      The Debtors' Workers' Compensation Program may change postpetition in the ordinary course of business due to changes in applicable laws and regulations and the Debtors' ability to meet requirements thereunder.  The Debtors request authority to make any changes to current policy and practices that become necessary.

### E.      Non-Insider Severance Plan

49.      The Debtors maintain, in their discretion, a severance plan (the "Severance Plan") in the ordinary course of business that provides payments to non-insider Employees who are involuntarily terminated as part of a reduction in workforce (each such payment, a "Severance Payment").  Severance Payments are paid in accordance with normal payroll dates and begin with the payroll date immediately following the date that an eligible Employee satisfies all conditions for receipt of such Severance Payment under the Severance Plan.  Severance Payments are made for two (2) weeks for each completed year of service, not to exceed 12 weeks.  Severance Payments are not due and payable until Employees have signed a severance agreement, which typically includes a release and waiver of all claims.

50.      The Debtors' ability to pay and provide severance amounts has been critical to maintaining Employee morale and loyalty.  Instability in the Debtors' workforce will undermine the Debtors' ability to maintain their operations at this critical juncture.  Therefore, the Debtors seek authorization to make the Severance Payments as they may become due and consistent with their prepetition practices.

51.      As of the Petition Date, the Debtors believe that they owe approximately $24,000 on account of the Severance Payments to non-insider Employees.  Some amounts owed on account of prepetition Severance Payments, however, may be unknown to the Debtors as of the Petition Date, but may become known and therefore due and owing during the course of the Chapter 11 Cases.  The Debtors request authority, but not direction, to pay all outstanding prepetition amounts incurred on account of the severance obligations and to continue to pay such obligations on a postpetition basis in the ordinary course of business consistent with their prepetition practices.  The

Debtors do not seek permission to pay any obligations arising from the Severance Plan to any Employees that are insiders (as such term is defined in section 101(31) of the Bankruptcy Code).

## BASIS FOR RELIEF REQUESTED

I.      **Payment of the Prepetition Obligations and Continuation of the Compensation and Benefit Programs Postpetition Is a Sound Exercise of the Debtors' Business Judgment and Is Appropriate Under Sections 363 and 105(a) of the Bankruptcy Code.**

52.     Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions." *Dai-Ichi Kangyo Bank, Ltd. V. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147,153 (D. Del. 1999); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2003 LEXIS 1281, *110 (Bankr. S.D.N.Y. Mar. 4, 2003). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. Of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *In re Global Homes Prods., LLC*, 369 B.R. 778, 783-84 (Bankr. D. Del. 2007); *In re Dana Corp.*, 358 B.R. 567, 584 (Bankr. S.D.N.Y. 2006).

53.     In addition to being justified under section 363(b)(1) of the Bankruptcy Code, payment of the Prepetition Obligations is warranted under the doctrine of necessity. Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a) and the "doctrine of necessity," the Court may exercise its broad grant of equitable powers to permit

the payment of Prepetition Obligations when such payment is essential to the continued operation of the debtor's business.  *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims under the doctrine of necessity and noting that "[t]he Supreme Court, the Third Circuit, and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is the standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to the confirmation of a reorganization plan).

54.     The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor.  *Id.* (stating that a court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also Official Comm. Of Unsecured Creditors of Motor Coach Indus. Int'l Inc. v. Motor Coach Indus. Int'l, Inc. (In re Motor Coach Indus. Int'l Inc.)*, No. 08-12136-BLS, *6 (D. Del. Feb. 10, 2009) (denying stay pending appeal on grounds that doctrine of necessity had not been brought into serious question by courts in the Third Circuit).

55.     The necessity of payment doctrine is designed to foster a debtor's rehabilitation, which courts have recognized is "the paramount policy of Chapter 11."  *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see also In re Chateaugay Corp.*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of prepetition workers' compensation claims on grounds

that the fundamental purpose of reorganization and equity powers of bankruptcy courts' "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately"); *In re Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("A general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition workforce obligations may be permissible within the first twenty-one (21) days of a case where doing so is "necessary to avoid immediate and irreparable harm.")  Fed. R. Bankr. P. 6003.

56.    It is a sound exercise of the Debtors' business judgment to pay the Prepetition Obligations because doing so will help the Debtors avoid the potential for value-destructive interruption to their business operations during the Chapter 11 Cases.  For the reasons discussed herein, payment of the Prepetition Obligations enhances value for the benefit of all interested parties.  The Debtors' ability to continue operations and maximize value depends, in large part, on the retention, motivation, and productivity of their workforce, whose efforts will be critical to the success of the Chapter 11 Cases.  If the Debtors are unable to satisfy their various compensation and benefits obligations, the workforce will suffer at a time when their support is critical to the Debtors.  Therefore, to provide certainty to the Employees, maintain morale and productivity, limit turnover, and minimize any adverse effect of the commencement of the Chapter 11 Cases, it is necessary to continue providing ordinary course compensation and benefits to the Employees.  Moreover, for the avoidance of doubt, no Employee will receive payment under this Motion in

excess of the statutory cap of $15,150 on account of any existing Prepetition Obligations outstanding as of the Petition Date.  Accordingly, the Debtors respectfully request that the Court authorize the Debtors to pay any accrued but unpaid Prepetition Obligations and to continue administering the Compensation and Benefit Programs postpetition in the ordinary course of business.

II.    **Payment of Certain of the Prepetition Obligations Should be Authorized Under Section 507(a) of the Bankruptcy Code.**

57.    The Debtors believe that the majority of the Prepetition Obligations constitute priority claims under sections 507(a)(4), (a)(5), and (a)(8) of the Bankruptcy Code, which must be satisfied before any general unsecured claims against the Debtors' estates.  *See* 11 U.S.C. §§ 507(a)(4), 507(a)(5), 507(a)(8), 726.  Specifically, under section 507(a)(4)(A) of the Bankruptcy Code, employee claims for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date are afforded priority unsecured status up to $15,150 per individual.  *See* 11 U.S.C. § 507(a)(4)(A).

58.    Similarly, under section 507(a)(5) of the Bankruptcy Code, employees' claims for contributions to certain employee benefit plans also are afforded priority unsecured status up to $15,150 per employee covered by such plan, less any amount paid under section 507(a)(4).  *See* 11 U.S.C. § 507(a)(5)(A).  The same holds true for the payment of Withholding Obligations, as the relevant taxing authorities generally hold priority claims under section 507(a)(8) of the Bankruptcy Code for such obligations, and their payment will not prejudice other creditors of the Debtors.  *See* 11 U.S.C. § 507(a)(8).

59.    Although there are approximately 38 Employees owed Prepetition Obligations in an amount exceeding the $15,150 statutory cap imposed by section 507(a)(4) of the Bankruptcy Code, the Debtors are not requesting authority in this Motion to pay such Employees in excess of

the statutory cap.  Rather, the Debtors will limit payment of Prepetition Obligations to each Employee to the statutory cap of $15,150.  Thus, the Prepetition Obligations that the Debtors seek to pay under this Motion are priority claims that, in any event, must be paid in full under the Bankruptcy Code.  As a result, payment of such Prepetition Obligations merely expedites the treatment afforded to such claims and is consistent with the priority scheme set forth in the Bankruptcy Code.  Accordingly, the Debtors request authority to pay the Prepetition Obligations in an aggregate amount not to exceed the $15,510 per Employee cap.

### III.    Funds Related to Payroll Deductions and Withholding Obligations May Be Held in Trust and Are Not Property of the Estates.

60.    Withholding Obligations withheld from an Employee's wages and any other Payroll Deductions are collected or withheld by the Debtors and may be held in trust for the benefit of the applicable taxing authority.  As a result, Withholding Obligations and Payroll Deductions are not property of the Debtors' estates under section 541 of the Bankruptcy Code, and those funds, therefore, are not available for the satisfaction of creditors' claims.  *See, e.g.*, *Begier v. IRS*, 496 U.S. 53 (1990) (withheld taxes are property held by the debtor in trust for another and, as such, not property of the debtor's estate); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95 (3d Cir. 1994) (withheld taxes were subject to a trust); *see generally In re Columbia Gas Sys. Inc.*, 997 F.2d at 1060 (indicating that even if a statute does not establish an express trust, a constructive trust may be found).  Instead, the Debtors may be obligated to remit these funds to the applicable taxing authority.

61.    Many federal, state, and local statutes also impose personal liability on officers and directors of companies for the failure to remit certain Withholding Obligations and Payroll Deductions.  To the extent that the relevant Withholding Obligations and Payroll Deductions remain unpaid by the Debtors, the Debtors' directors, officers, and executives may be subject to

lawsuits or criminal prosecution during the pendency of the Chapter 11 Cases.  Any such lawsuit or criminal prosecution (and the ensuing potential liability) would distract the Debtors and their directors, officers, and executives from devoting their full attention to the Debtors' businesses and the orderly administration of the Chapter 11 Cases.  The Debtors believe that these distractions would materially undermine their ability to operate in the ordinary course of business and to administer the Chapter 11 Cases, with resulting detriment to any parties-in-interest.

62.    For these reasons, the Debtors submit that the relief requested in this Motion is essential, appropriate, and in the best interests of their estates, creditors, and any parties-in-interest, and, therefore, should be granted.

## IV.    The Continuation of Severance for Non-Insider Employees Does Not Implicate Section 503(c) of The Bankruptcy Code.

63.    The Debtors seek authority to (a) pay prepetition Severance Payments to non-insider Employees and (b) continue providing postpetition Severance Payments to non-insider Employees, in each case in the ordinary course of business and consistent with past practices.  Paying prepetition Severance Payments and continuing to pay postpetition Severance Payments does not implicate section 503(c) of the Bankruptcy Code because the Debtors only seek to pay such amounts for non-insiders and such payments (a) are not retentive in nature, (b) are generally available to all full-time Employees, and (c) arise under programs commenced before the Petition Date in the ordinary course of business.  *See* 11 U.S.C. §503(c)(1)-(3).  Because section 503(c) of the Bankruptcy Code is not implicated, the Court may grant the requested relief if providing Severance satisfies the requirements of section 363(b) of the Bankruptcy Code.  *See In re Mesa Air Group, Inc.*, No. 10-10018 (MG), 2010 LEXIS 3334, *4 (Bankr. S.D.N.Y. Sept. 24, 2010) (noting that compensation plans commenced within the ordinary course of business are governed by section 363 of the Bankruptcy Code, not section 503(c)).

64.     The Debtors have a substantial business justification for providing Severance Payments to certain non-insider Employees in the ordinary course of business, including the need to maintain Employee morale and reassure employees that the Debtors intend to honor their obligations to Employees—both during and after their tenure with the Debtors.  For the reasons set forth in this motion, the relief requested is necessary and critical to assuage Employee concerns and motivate them to achieve the Debtors' chapter 11 objectives.

## V.     Cause Exists to Authorize Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers.

65.     The Debtors anticipate having sufficient funds to pay the amounts on account of the Compensation and Benefit Programs in the ordinary course of business using expected cash flows from ongoing business operations and, subject to Court approval, cash collateral and proceeds from postpetition financing.  In addition, under the Debtors' existing cash management system, the Debtors can identify readily whether checks or wire transfer requests are payments authorized by the relief requested in this Motion.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that the Court should authorize the Banks, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein, to the extent that the Debtors have sufficient funds on deposit in their accounts with such Banks, and such Banks may rely on the representations of the Debtors without any duty of further inquiry and without liability for following the Debtors' instructions.

### THE DEBTORS HAVE SATISFIED BANKRUPTCY RULE 6003(b)

66.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to

pay all or part of a claim that arose before the filing of the petition" before 21 days after filing the petition. FED. R. BANKR. P. 6003(b). As described above and in the First Day Declaration, the Debtors failure to honor their obligations in connection with the Compensation and Benefit Programs would cause severe personal hardship to the Employees and likely would result in attrition to the detriment of the Debtors' estates. Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003(b) because the relief requested herein is necessary to avoid immediate and irreparable harm.

## BANKRUPTCY RULES 6004(a) AND (h) SHOULD BE WAIVED

67.     To the extent that any aspect of the relief sought by this Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors respectfully request that the Court find that notice of this Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and waive the fourteen (14) day stay under Bankruptcy Rule 6004(h). As described above and in the First Day Declaration, the relief requested by this Motion is necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates. Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

68.     Nothing contained in the Proposed Orders or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, basis, or amount of any claim against the Debtors and their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates

with respect to any and all claims or causes of action; or (iv) shall be construed as a promise to pay a claim.

## NOTICE

69.     Notice of this Motion has or will be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors' estates on a consolidated basis; (iii) Owlpoint IP Opportunities JVF I LP; (iv) counsel to HPS Investment Partners, LLC; (v) U.S. Bank National Association, as trustee for the 9.500% Notes due 2025; (vi) the Office of the United States Attorney for the District of Delaware; (vii) the Internal Revenue Service; (viii) the United States Securities and Exchange Commission; (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (x) any other party in interest entitled to notice of this Motion pursuant to Local Rule 9013-1(m). As this Motion is seeking "first day" relief, within two (2) business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any Order entered in respect of the Motion as required by Local Rule 9013-1(m).  Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no other or further notice is necessary.

## NO PRIOR REQUEST

70.     No previous request for the relief sought by this Motion has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court:  (i) enter the proposed Interim Order, substantially in the form attached as **Exhibit A**, granting the relief requested in this Motion on an interim basis and scheduling a final hearing on the Motion, and thereafter; (ii) enter

the proposed Final Order, substantially in the form attached as **Exhibit B**; and (iii) grant such other

relief to the Debtors as is appropriate.

Dated:  June 29, 2024                                 Respectfully submitted,
        Wilmington, Delaware

**ASHBY & GEDDES, P.A.**

 /s/ *Ricardo Palacio*
Ricardo Palacio (DE Bar No. 3765)          Mark W. Eckard (DE BAR No. 4542)
Gregory A. Taylor (DE Bar No. 4008)        REED SMITH LLP
500 Delaware Avenue, 8th Floor             1201 North Market Street, Suite 1500
Wilmington, DE 19899-1150                  Wilmington, DE 19801
Telephone: 302.654.1888                    Telephone:  302.778.7500
Facsimile: 302.654.654-2067                Facsimile:  302.778.7575
RPalacio@ashbygeddes.com                   MEckard@ReedSmith.com
GTaylor@ashbygeddes.com

                                           - and –

Michael P. Cooley (*pro hac vice* pending)     Luke A. Sizemore (*pro hac vice* pending)
REED SMITH LLP                             REED SMITH LLP
2850 N. Harwood St., Suite 1500            225 Fifth Avenue, Suite 1200
Dallas, TX 75201                           Pittsburgh, PA 15222
Telephone:  469.680.4200                   Telephone:  412.288.3334
MPCooley@ReedSmith.com                     LSizemore@ReedSmith.com

                                           *Proposed Counsel for the Debtors and*
                                           *Debtors-in-Possession*

**EXHIBIT A**

<u>Proposed Interim Order</u>

(Attached)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CHICKEN SOUP FOR THE SOUL ENTERTAINMENT INC., *et al.*,[1] | Case No. 24-11442 |
| Debtors. | (Joint Administration Requested) |
| | **Re: Docket No. _____** |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, REIMBURSABLE EXPENSES, AND OTHER OBLIGATIONS ON ACCOUNT OF COMPENSATION AND BENEFITS PROGRAMS AND (B) CONTINUE COMPENSATION AND BENEFITS PROGRAMS; AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of interim and final orders (a) authorizing the Debtors to (i) pay all prepetition wages, salaries, commissions, other compensation, reimbursable expenses, and other obligations on account of the Compensation and Benefit Programs and (ii) continue to administer, modify, change, and discontinue the Compensation and Benefit Programs, and to implement new programs, policies, and benefits for non-insider Employees, during the Chapter 11 Cases in the ordinary course of business, and (b) granting related relief; and upon consideration of the Motion and all of the pleadings related thereto, including the First Day Declaration; and having determined that this Court has jurisdiction to consider the Motion and the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

[2] Capitalized terms used but not defined in this Order have the meanings given in the Motion.

relief requested therein in accordance with 28 U.S.C. §§ 157(a)–(b) and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and having determined that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and having determined that venue of the Chapter 11 Cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been given under the circumstances, and it appearing that no other or further notice need be provided; and upon the record of the hearing held on the Motion and all proceedings had before this Court; and it appearing that the relief requested by the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Rule 6003 of the Federal Rules of Bankruptcy Procedure; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis to the extent set forth herein.

2.      The Debtors are authorized, but not directed, to pay Prepetition Obligations associated with the Compensation and Benefit Programs in aggregate amounts not to exceed:

| Relief Sought | Interim Amount |
|---|---|
| **Compensation and Withholding Obligations** | |
| Employee Wages | $3,518,435 |
| Contractor and Staffing Obligations | $90,900 |
| Reimbursable Expenses | $5,500 |
| Payroll Deductions | $1,374,438 |
| Withholding Obligations | $1,468,007 |
| Payroll Processing Fees | $130,582 |
| **Employee Benefits Programs** | |
| Health and Welfare Benefits | $2,237,880 |
| 401(K) Plan | $594,204 |
| **TOTAL** | **$9,419,946** |

3.      Except as expressly set forth herein, no payments to or on behalf of any individual Employee on account of the Prepetition Obligations shall exceed the amounts set forth in section 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

4.      The Debtors are authorized, but not directed, to continue to administer, modify, change, and discontinue the Compensation and Benefit Programs and to implement new programs, policies, and benefits for non-insider Employees in the ordinary course of business during the Chapter 11 Cases and without the need for further Court approval, subject to applicable law and the terms of this Interim Order; *provided that* such modifications, changes, and new programs, policies, and benefits do not cause a material adverse effect to the Debtors' estates.

5.      The Debtors are authorized, but not directed, to pay, remit, reimburse, or otherwise honor, as applicable, postpetition obligations associated with the Compensation and Benefit Programs in the ordinary course of business.

6.      The Debtors and any applicable third parties are authorized to continue to allocate and distribute Payroll Deductions and Withholding Obligations to the appropriate third-party recipients or taxing authorities in accordance with the Debtors' stated policies and prepetition practices.

7.      Nothing in this Interim Order shall be deemed to authorize the payment of any amounts in satisfaction of bonus or severance obligations, or which are subject to section 503(c) of the Bankruptcy Code; *provided that* nothing in this Interim Order shall prejudice the Debtors' ability to seek approval of such relief in accordance with the Bankruptcy Code at a later time.

8.      To the extent any Employees assert claims arising under the Workers' Compensation Program, the automatic stay under section 362 of the Bankruptcy Code is hereby

modified to permit the Employees to proceed with their claims under the Workers' Compensation Program.

9.      Each of the Banks at which the Debtors maintain their accounts relating to the payment of the obligations on account of the Compensation and Benefit Programs are authorized to (a) receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts and (b) accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of the Court, whether such checks, drafts, wires, or transfers are dated before, on, or after the Petition Date, without any duty to inquire otherwise.

10.     The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of obligations in connection with the Compensation and Benefit Programs, to the extent such payments are approved herein, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Chapter 11 Cases.

11.     Nothing  contained in the Motion or this Interim Order, nor any payment made pursuant to the authority granted by this Interim Order, is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (c) a waiver of any claim or cause of action which may exist against any creditor or interest holder, or (d) an approval, assumption, adoption, or rejection of any

agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

12.     Notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

13.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

14.     Under the circumstances of the Chapter 11 Cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a) and the Local Rules.

15.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

16.     A hearing to consider entry of an order granting the relief requested in the Motion on a final basis shall be held on _____, 2024, at _____ **(Eastern)**, and any objections or responses to the Motion shall be in writing, filed with this Court, and served upon (a) proposed counsel for the Debtors, (i) Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, DE  19801 (Attn: Mark W. Eckard, Esq.), (ii) Reed Smith LLP, 2850 N. Harwood Street, Suite 1500, Dallas, TX, 75201 (Attn:  Michael P. Cooley, Esq.),  (iii) Reed Smith LLP, 225 Fifth Avenue, Suite 1200, Pittsburgh, PA, 15222 (Attn:  Luke A. Sizemore, Esq.), and (iv) Ashby & Geddes, P.A., 500 Delaware Avenue, 8th Floor, Wilmington, DE 19801 (Attn: Ricardo Palacio); (b) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Jane M. Leamy, Esq.); (c) counsel for HPS Investment Partners, LLC; and (d) Owlpoint IP Opportunities JVF I LP, so as to be actually received by each of the foregoing parties no later than **4:00 p.m. (Eastern) on** _____, **2024**.

17.     The Debtors are authorized to take all action necessary to effectuate the relief granted in this Interim Order.

18.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Interim Order.

**EXHIBIT B**

<u>Proposed Final Order</u>

(Attached)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CHICKEN SOUP FOR THE SOUL<br>ENTERTAINMENT INC., *et al.*,[1] | Case No. 24-11442 |
| Debtors. | (Joint Administration Requested) |
| | **Re:  Docket No. _____** |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO (A) PAY
PREPETITION WAGES, SALARIES, REIMBURSABLE EXPENSES,
AND OTHER OBLIGATIONS ON ACCOUNT OF COMPENSATION
AND BENEFITS PROGRAMS AND (B) CONTINUE COMPENSATION
AND BENEFITS PROGRAMS; AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), for entry of interim and final orders (a) authorizing the Debtors to (i) pay all prepetition wages, salaries, commissions, other compensation, reimbursable expenses, and other obligations on account of the Compensation and Benefit Programs and (ii) continue to administer, modify, change, and discontinue the Compensation and Benefit Programs, and to implement new programs, policies, and benefits for non-insider Employees, during the Chapter 11 Cases in the ordinary course of business, and (b) granting related relief; and upon consideration of the Motion and all of the pleadings related thereto, including the First Day Declaration; and having determined that this Court has jurisdiction to consider the Motion and the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508).  The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

[2]    Capitalized terms used but not defined in this Order have the meanings given in the Motion.

relief requested therein in accordance with 28 U.S.C. §§ 157(a)–(b) and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and having determined that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and having determined that venue of these Chapter 11 Cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been given under the circumstances, and it appearing that no other or further notice need be provided; and upon the record of the hearing held on the Motion and all proceedings had before this Court; and it appearing that the relief requested by the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on a final basis to the extent set forth herein.

2.      The Debtors are authorized, but not directed, to pay and honor all Prepetition Obligations associated with the Compensation and Benefit Programs in the ordinary course of business; *provided*, *however*, that, except as expressly set forth herein, (i) no payments to or on behalf of any individual Employee on account of the Prepetition Obligations shall exceed the amounts set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, and (ii) no payments shall be made on account of the Accrued Withholding Obligations except as set forth above.

3.      The Debtors are authorized, but not directed, to continue to administer, modify, change, and discontinue the Compensation and Benefit Programs and to implement new programs, policies, and benefits for non-insider Employees in the ordinary course of business during the Chapter 11 Cases without the need for further Court approval, subject to applicable law and the

terms of this Final Order and provided that such modifications, changes, and new programs, policies, and benefits do not cause a material adverse effect to the Debtors' estates.

4.  The Debtors are authorized, but not directed, to pay, remit, reimburse, or otherwise honor, as applicable, postpetition obligations associated with the Compensation and Benefit Programs in the ordinary course of business.

5.  The Debtors and any applicable third parties are authorized to continue to allocate and distribute Payroll Deductions and Withholding Obligations to the appropriate third-party recipients or taxing authorities in accordance with the Debtors' stated policies and in the ordinary course of business.

6.  The Debtors may (a) pay prepetition Severance Payments to Employees who are not insiders, and (b) continue providing postpetition Severance Payments to Employees who are not insiders, in each case in the ordinary course of business and consistent with past practices.  For the purpose of this Final Order, the term "insider" shall have the meaning set forth in section 101(31) of the Bankruptcy Code.  The Debtors shall provide the United States Trustee for the District of Delaware (the "U.S. Trustee") a monthly report, due on the last day of each month in which Severance payments are made, indicating (x) the name and title of each Employee that receives Severance and (y) the amount of such Severance Payments received.

7.  Except as expressly set forth herein, this Final Order shall not be deemed to authorize the payment of any amounts in satisfaction of bonus or severance obligations, or which are subject to section 503(c) of the Bankruptcy Code; *provided that* nothing in this Final Order shall prejudice the Debtors' ability to seek approval of such relief in accordance with the Bankruptcy Code at a later time.

8.      To the extent any Employees assert claims arising under the Workers' Compensation Program, the automatic stay under section 362 of the Bankruptcy Code is hereby modified to permit the Employees to proceed with their claims under the Workers' Compensation Program.

9.      Each of the Banks at which the Debtors maintain their accounts relating to the payment of the obligations on account of the Compensation and Benefit Programs are authorized to (a) receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts and (b) accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of this Court, whether such checks, drafts, wires, or transfers are dated before, on, or after the Petition Date, without any duty to inquire otherwise.

10.     The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of obligations in connection with the Compensation and Benefit Programs, to the extent such payments are approved herein, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Chapter 11 Cases.

11.     Nothing contained in the Motion or this Final Order, nor any payment made pursuant to the authority granted by the Interim Order or this Final Order, is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (c) a waiver of any claim or cause of action which may

- 4 -

exist against any creditor or interest holder, or (d) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

12.     Notwithstanding entry of this Final Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claims held by, any party.

13.     Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

14.     Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

15.     The Debtors are authorized to take all action necessary to effectuate the relief granted in this Final Order.

16.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.