## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC., *et al.*, [1] | Case No. 24-11442 |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS AND PAYMENT OF RELATED PREPETITION OBLIGATIONS; (II) WAIVING THE REQUIREMENTS OF 11 U.S.C. § 345(b); (III) AUTHORIZING CONTINUED PERFORMANCE OF <u>INTERCOMPANY TRANSFERS; AND (IV) GRANTING RELATED RELIEF</u>

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors")

hereby move (this "Motion") for entry of an interim Order substantially in the form attached as

**Exhibit A** (the "Interim Order") and a final Order substantially in the form attached as **Exhibit B**

(the "Final Order" and, together with the Interim Order, the "Proposed Orders") granting the relief

requested below.   In support of this Motion, the Debtors, through their undersigned counsel,

respectfully represent as follows:[2]

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508).  The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

[2]     The facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration (as defined below), filed contemporaneously herewith and incorporated herein by reference. Capitalized terms used but not defined in this Motion have the meanings given in the First Day Declaration.

**RELIEF REQUESTED**

1.       By this Motion, pursuant to sections 105(a), 345, 363, 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "<u>Bankruptcy Code</u>"),[3] Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States District Court for the District of Delaware (the "<u>Local Rules</u>"), the Debtors seek entry of the Proposed Orders authorizing, but not directing, the Debtors to continue to use their Cash Management System in the ordinary course of business and granting related relief.

2.       Specifically, the Debtors seek (i) authority to (a) maintain and continue using their existing Cash Management System, as described in this Motion, including through the continued maintenance of their Bank Accounts in the same manner and with existing account numbers, styles, and document forms, consistent with the Debtors' prepetition practices; (b) deposit funds in, and withdraw funds from, the Bank Accounts by usual means, including check, wire transfer, ACH Transfer, draft, electronic fund transfer, or other items presented, issued, or drawn on the Bank Accounts; and (c) pay prepetition and ordinary course Bank Fees for the Bank Accounts; (ii) a waiver of certain requirements relating to Bank Accounts under section 345(b) of the Bankruptcy Code; (iii) authority to continue intercompany transfers; and (iv) related relief.

3.       To maintain the efficient operation of the Cash Management System during these cases, the Debtors also request that the Court authorize and direct Bank of America ("<u>BofA</u>"), Morgan Stanley, U.S. Bank, Silicon Valley Bank ("<u>SVB</u>"), and J.P. Morgan Chase Bank ("<u>JPMC</u>" and, together with BofA, U.S. Bank, SVB, and Morgan Stanley, the "<u>Banks</u>") to continue to

---

[3]       Capitalized terms used but not defined in this section of the Motion have the meanings ascribed to such terms in the remainder of the Motion.

administer, service, and maintain the Bank Accounts as they were prepetition, without interruption, and in the Debtors' ordinary course of business. In that regard, the Debtors seek to continue to receive, process, honor, and pay (or to reissue, as may be necessary) all checks, drafts, wires, ACH Transfers, electronic fund transfers, or other items presented, issued, or drawn on the Bank Accounts (collectively, the "Disbursements") on account of any claim this Court grants the Debtors approval to pay arising before, on, or after the Petition Date, and in reliance on the Debtors' representations of such authority, without any duty of further inquiry and without liability for following the Debtors' instructions, subject to the applicable Bank Accounts containing sufficient funds.

4.     Both here and in other first-day motions, the Debtors seek authority to pay certain prepetition obligations. For certain of these obligations, the Debtors issued Disbursements before the Petition Date that have yet to clear. For others, the Debtors will issue a Disbursement once they have Court authority to do so. The Debtors request that the Banks be authorized to accept and honor all representations from the Debtors as to which of these Disbursements should be honored. If any of the Banks nevertheless dishonor Court-approved Disbursements, the Debtors request authority to issue replacement Disbursements consistent with the Orders of this Court.

5.     While continuity of the Cash Management System is critical to the Debtors' business operations, flexibility is necessary. To that end, the Debtors request authority to implement reasonable changes to the Cash Management System that are deemed necessary or appropriate in the ordinary course of business and in the Debtors' business judgment, including closing any Bank Account and establishing new bank accounts, and that the Banks be authorized to honor such changes.

6.      Finally, the Debtors request authority to continue, in the ordinary course, certain Intercompany Transfers between and among the Debtors and their non-debtor affiliates.  To avoid disruption to the Cash Management System, the Debtors request that all receivables and payables arising post-petition from such Intercompany Transfers (collectively, the "Intercompany Claims") be accorded administrative expense status.

7.      For these reasons and for the reasons set forth below, the Debtors submit that the relief requested is in the best interest of the Debtors, their estates, creditors, and other parties in interest.

### JURISDICTION AND VENUE

8.      The United States Bankruptcy Court for the District of Delaware (this "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Local Rule 9013-1(f), the Debtors consent to entry of a final Order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final Orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     The statutory predicates for the relief requested by this Motion are sections 105(a), 345, 363, 1107(a), and 1108 of the Bankruptcy Code, and such relief is warranted under Bankruptcy Rules 6003 and 6004 and Local Rule 2015-2.

## BACKGROUND

11.     On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned cases (collectively, the "Chapter 11 Cases").  The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No official committees have been appointed in the Chapter 11 Cases, and no request has been made for the appointment of a trustee or an examiner.

12.     Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the Chapter 11 Cases under Bankruptcy Rule 1015(a).

13.     Additional information regarding the Debtors' business, their capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the *Declaration of William J. Rouhana, Jr., Chairman of the Board, in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").

## THE CASH MANAGEMENT SYSTEM

### A.     General Overview

14.     As of the Petition Date, the Debtors maintain an integrated, centralized cash management system (the "Cash Management System") designed to facilitate the efficient operation of their businesses by, among other things, allowing the Debtors to collect, transfer, and disburse funds generated by their operations.  The Cash Management System is similar to those commonly employed by businesses comparable in size and scale to the Debtors to help control funds, ensure cash availability for each entity, and reduce administrative expenses by facilitating the movement of funds among multiple entities.  The Debtors estimate that their cash receipt collections averaged approximately $18.5 million per month in the twelve (12) months prior to the Petition Date.

15.     The Debtors' accounting and finance personnel maintain daily oversight of the Cash Management System and implement cash management controls for accepting, processing, and releasing funds, including in connection with any Intercompany Transfers.  The Debtors' accounting department regularly reconciles the Debtors' books and records to ensure that all transfers are accounted for properly.

**B.     Bank Accounts**

16.     As of the Petition Date, the Cash Management System includes fifty-seven (57) debtor and non-debtor bank accounts, which are listed on **Exhibit C** (collectively, the "Bank Accounts").[4]  The Bank Accounts are U.S. Dollar-denominated accounts located at the Banks, all financially stable institutions that are (i) insured by the Federal Deposit Insurance Corporation ("FDIC") and (ii) an authorized depository in this District.

17.     The Debtors routinely deposit, withdraw, and otherwise transfer money to, from, and between these Bank Accounts by various methods, including by wire transfer, check, draft, automated clearing house transfer ("ACH Transfer"), and other electronic funds transfer.  Each of the Bank Accounts is maintained in the United States and amounts in each are denominated in U.S. Dollars.  As of the Petition Date, there was approximately $25,648 in cash in the Debtors' Bank Accounts.

18.     All of the Bank Accounts are subject to deposit account control agreements pursuant to the *Amended and Restated Credit Agreement* dated as of August 11, 2022 (the "HPS Credit Agreement") by and among debtor Chicken Soup for the Soul Entertainment Inc. ("CSSE"),

---

[4]     The Debtors believe, and have undertaken reasonable efforts to ensure, that **Exhibit C** lists all of the Bank Accounts that comprise the Debtors' Cash Management System.  In the event that any Bank Account has been inadvertently omitted from **Exhibit C**, the Debtors request that the relief sought by this Motion be deemed to apply to such account without the need for further approval by the Court.

as "Primary Borrower" thereunder, Redbox Automated Retail, LLC, as "Original Borrower" thereunder, the lenders party thereto, and HPS Investment Partners, LLC ("HPS") as "Administrative Agent" and "Collateral Agent" thereunder.

19.     The Debtors' accounts at BofA consist of (i) a concentration account titled in the name of CSSE (the "CSSE Concentration Account") and twenty-one (21) subsidiary zero balance accounts, each separately titled to a direct or indirect subsidiary of CSSE (the "CSSE Subsidiary Accounts" and, together with the CSSE Concentration Account, the "CSSE BofA Accounts"); (ii) a concentration account (the "RedBox Concentration Account"), titled in the name of RedBox Automated Retail LLC ("RBAR"), two (2) subsidiary zero balance accounts that are swept into the RedBox Concentration Account (the "RedBox Subsidiary Accounts"), two controlled disbursement accounts titled to RBAR (the "RedBox Disbursement Accounts"); and (iii) three standalone accounts titled to RedBox Incentives, LLC, Redwood Intermediate, LLC, and RedBox Entertainment, Inc., respectively (collectively, the "RedBox BofA Standalone Accounts").  The Debtors' accounts at SVB are titled to RBAR.

20.     Funds received into each CSSE Subsidiary Account are swept into the CSSE Concentration Account.  Cash is then transferred from the CSSE Concentration Account to each CSSE Subsidiary Account as necessary to pay each relevant subsidiary's expenses.  Similarly, cash received into each RedBox Subsidiary Account is swept into the RedBox Concentration Account.  Cash is then transferred from the RedBox Concentration Account to the RedBox Disbursement Accounts to pay RedBox-related expenses.

21.     The Debtors maintain a brokerage account at Morgan Stanley for each operating entity (collectively, the "Morgan Stanley Accounts").  Cash received into the Morgan Stanley Accounts is transferred into the CSSE Concentration Account at BofA.  Fees received from all

Crackle customers are deposited into a Morgan Stanley Account titled in the name of Crackle Plus, LLC.[5]

22.    The Debtors' accounts at JPMC (the "JPMC Accounts") are titled in the name of TOFG, LLC.  All cash received into the JPMC Accounts are ultimately transferred to the CSSE Concentration Account at BofA.

23.    The Debtors' accounts at SVB consist of two standalone accounts titled in the name of RBAR which serve as the accounts underlying the Debtors' corporate credit cards.

**C.    Corporate Credit Cards**

24.    The Debtors maintain a credit card program (the "Corporate Card Program") with American Express ("AMEX" and the credit cards issued thereby, the "AMEX Cards") and SVB (the credit cards issued by SVB, the "SVB Cards").

25.    As of the Petition Date, approximately 8 AMEX Cards have been issued, each in the name of the relevant employee holding such card.   The average monthly balance on all AMEX Cards during the twelve (12) months prior to the Petition Date was approximately $50,000.  Each of the AMEX Cards has a credit limit based on the identity of the cardholder ranging from $5,000 to $50,000.  In general, the Debtors pay the full balance on the AMEX Cards on a monthly basis.  However, as of the Petition Date, the Debtors owed approximately $50,000 for amounts incurred on the AMEX Cards.

26.    With respect to the SVB Cards, approximately 450 were issued as of the Petition Date.  The average monthly balance on all SVB Cards during the twelve (12) months prior to the Petition Date was approximately $100,000.  Each of the SVB Cards has a credit limit based on the

---

[5]    The Debtors maintain an account at U.S. Bank solely for purposes related to U.S. Bank's role as indenture trustee for the Debtors' 9.500% Senior Notes due 2025.

identity of the cardholder ranging from $1,000 to $20,000. In general, the Debtors pay the full balance on the SVB Cards on a monthly basis. However, as of the Petition Date, the Debtors owed approximately $123,009 for amounts incurred on the SVB Cards.

27.     Employees use the AMEX Cards and the SVB Cards to pay for authorized expenses incurred by such employees in the ordinary course of the Debtors' business. This includes, without limitation, amounts for airline and rail travel; lodging; gas, tolls, parking, and rental cars; meals and entertainment; shipping and other office supplies; marketing and advertising costs; licenses and permits; and dues and subscriptions. The Debtors carefully review the invoices and bill their employees for any charges incurred outside the scope of employment.[6]

28.     By this Motion, the Debtors seek authority to continue paying proper corporate charges on account of their Corporate Card Program (the "Corporate Card Obligations"), including any pre-petition Corporate Card Obligations, in the ordinary course on a post-petition basis consistent with historical practices.

29.     Specifically, pursuant to section 364(b) of the Bankruptcy Code, the Debtors request authority, but not direction, to continue using any existing AMEX Cards and SVB Cards in the ordinary course of business and consistent with prepetition practices. Further, the Debtors request the authority, in the exercise of their reasonable business judgment, to pay any Corporate Card Obligations outstanding not to exceed (i) $150,000 with respect to the AMEX Cards and (ii) $250,000 with respect to the SVB Cards, for a total of $400,000, on an interim basis, absent further order of the Court, whether or not such obligations were outstanding on or before the Petition Date.

---

[6]     To the extent that individual employees incurred obligations for company expenses on their personal credit cards prior to the Petition Date, reimbursement of such amounts is discussed in the Wages and Benefits Motion.

## EXISTING BUSINESS FORMS AND CHECKS

30.     As part of the Cash Management System, the Debtors use various checks, correspondence, and business forms in the ordinary course of their business.  To minimize expenses to their estates and avoid unnecessarily confusing their employees and creditors, the Debtors believe it is appropriate to continue to use the existing stock of checks, correspondence, and other business forms (including, without limitation, letterhead, purchase orders, and invoices) (collectively, the "Business Forms") as such forms were in existence immediately before the Petition Date rather than disposing of the existing forms and delaying operations until new Business Forms are obtained that reference the Debtors' status as debtors-in-possession.

31.     In accordance with Local Rule 2015-2(a), to the extent that the Debtors exhaust their existing supply of checks during the Chapter 11 Cases and require new checks, the Debtors will update their checks to reflect the designation "Debtors-in-Possession" and the jointly-administered bankruptcy case number.

## BANK FEES

32.     In the ordinary course of business, the Debtors incur and pay, honor, or allow to be deducted from the appropriate Bank Accounts certain service charges and other related fees, costs, and expenses charged by the Banks in connection with the maintenance of the Cash Management System (collectively, the "Bank Fees").  Historically, the Debtors have incurred Bank Fees of approximately $114,000 per month.  Such amounts are paid by way of debit from the Concentration Account on the last business day of each calendar month.

33.     Although the Debtors are current on all Bank Fees, the unpaid of amount of Bank Fees incurred through the Petition Date for the month of June 2024 is estimated to be approximately $114,000 based on the amount of Bank Fees incurred for May 2024.  The Debtors

seek permission to continue paying Bank Fees in the ordinary course in accordance with past practices.

## **INTERCOMPANY TRANSFERS**

34.     As noted above, the Debtors separately fund expenses for each operating entity and sweep all funds received into each subsidiary account, as relevant, into the CSSE Concentration Account or the RedBox Concentration Account and, from time to time, certain of the Debtors engage in certain other routine and necessary intercompany transfers in the ordinary course of business (collectively, the "Intercompany Transfers").

35.     By their accounting system, the Debtors track all funds transferred in Intercompany Transfers and can ascertain, trace, and account for all Intercompany Transfers.  The Debtors will continue to maintain such records during the Chapter 11 Cases.  If the Intercompany Transfers were discontinued, the Cash Management System and the Debtors' operations would be unnecessarily disrupted, to the detriment of the Debtors' estates and their creditors.

36.     Through the relief requested by this Motion, the Debtors seek authority to continue to engage in Intercompany Transfers on account of obligations arising on a post-petition basis in the ordinary course consistent with their historical accounting practices, without prejudice to any Debtor's (or its estate's) right to reallocate or seek reimbursement of post-petition transfers.

37.     The Debtors will continue to maintain accurate and detailed records of all Intercompany Transfers and will provide reasonable access to such records to the DIP Lender (as defined in any Order approving debtor-in-possession financing (the "DIP Order")) and its professionals.

## BASIS FOR RELIEF REQUESTED

**A.    The Court Should Authorize the Debtors to Continue to Use Their Existing Cash Management System.**

38.    Continuation of the Cash Management System in the ordinary course is an appropriate exercise of the Debtors' business judgment and is warranted under applicable law. Courts in this District have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). The Third Circuit has agreed, emphasizing the "huge administrative burden" and economic inefficiency of requiring affiliated debtors to maintain all accounts separately. *Columbia Gas Sys.*, 997 F.2d at 1061.

39.    Local Rule 2015-2(a) provides that "upon a motion of the debtor, the Court may, without notice and a hearing, permit the debtor to . . . use its existing bank accounts." DEL. BANKR. L.R. 2015-2(a). Additionally, section 363(c)(1) of the Bankruptcy Code permits a debtor to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide debtors flexibility to operate their businesses without unnecessary creditor or court oversight. *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (internal citation omitted). Included within the purview of section 363(c) of the Bankruptcy Code is a debtor's ability to continue the "routine transactions" a debtor's cash management system requires. *See, e.g.*, *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007) (noting that courts

have shown a reluctance to interfere in a debtor's routine, day-to-day business decisions) (citations omitted); *In re Vision Metals, Inc.*, 325 B.R. 138, 142 (Bankr. D. Del. 2005) ("[W]hen a chapter 11 debtor in possession continues to operate its business, as permitted by section 1108, no court authorization is necessary for the debtor to enter transactions that fall within the ordinary course of its business.").

40.     To the extent the use of the Cash Management System is deemed to be beyond the ordinary course of the Debtors' business, such use may be permitted by section 363(b)(1) of the Bankruptcy Code, which provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).   To approve the use of assets outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions."   *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also, e.g.*, *Culp v. Stanziale* (*In re Culp*), 550 B.R. 683, 697 (D. Del. 2015) (quoting *Montgomery Ward*); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (approving equipment sale under section 363(b) of the Bankruptcy Code because there was "a good business reason for completing the sale").

41.     The Court also may exercise its equitable powers to grant the requested relief because such relief is necessary for the Debtors to carry out their fiduciary duties under sections 1107(a) and 1108 of the Bankruptcy Code.   Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."   11 U.S.C. § 105(a); *see also In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004);   *In re Nortel Networks, Inc.*, 532 B.R. 494, 554 (Bankr. D. Del. 2015).   Pursuant to sections 1107(a) and 1108, debtors in possession are fiduciaries

managing the bankruptcy estate and operating the business for the benefit of their economic stakeholders.  *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *see also In re Imerys Tals Am., Inc. v. Cyprus Historical Excess Insurers*, 38 F.4th 361, 376 (3d Cir. 2022) (quoting *In re Smart World Techs., LLC*, 423 F.3d 166, 175-75 & n.12 (2d Cir. 2005) ("the debtor-in-possession is both 'the legal representative' and 'fiduciary of the estate'")); *In re Cybergenics Corp.*, 226 F.3d 237, 243 (3d Cir. 2000).  Consistent with such fiduciary duties, courts have authorized payment of prepetition obligations where a sound business purpose justifies the payment of such claims.

42.     The Cash Management System is a customary and essential business practice of the Debtors and provides numerous benefits, including the ability to control and monitor corporate funds and ensure availability of cash to fund operations.  The value of the Debtors' estates cannot be maximized if the Cash Management System is disrupted substantially.  Additionally, preserving a "business as usual" atmosphere and avoiding the unnecessary distractions that inevitably would be associated with any substantial disruption of the Cash Management System will facilitate the stabilization of the Debtors' business operations.  Accordingly, maintaining the existing Cash Management System is in the best interests of the Debtors' estates and all parties in interest and, therefore, should be approved.

43.     Parties in interest will not be harmed by the Debtors' continued maintenance of the Cash Management System, including the Bank Accounts, because the Debtors will have implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred prior to the Petition Date.  With the assistance of their advisors and consistent with prior practice, the Debtors will continue to maintain detailed records of any cash transfers and record all transactions on applicable accounts.  Therefore, the Court should permit

the Debtors to continue managing their cash and transferring funds among the Bank Accounts, as

needed, in accordance with the Cash Management System.

**B.      The Court Should Waive Certain U.S. Trustee Guidelines Requirements.**

44.      Although the Debtors maintain the Bank Accounts as part of an established Cash

Management System, the Operating Guidelines for Chapter 11 Cases (the "UST Operating

Guidelines") of the Office of the United States Trustee for Region 3 (the "U.S. Trustee") include

certain requirements that, if not waived, would require the Debtors (as debtors in possession) to

take certain actions with respect to prepetition Bank Accounts that are designed to draw a clear

line of demarcation between prepetition and post-petition transactions and operations, and prevent

the inadvertent post-petition payment of prepetition claims.  For the reasons set forth below, the

Debtors submit that a waiver of these requirements is warranted.

45.      The UST Operating Guidelines generally require that a chapter 11 debtor, among

other things, (a) close all existing bank accounts and open new debtor-in-possession bank

accounts; (b) establish a single debtor-in-possession account for all estate monies required for the

payment of taxes, including payroll taxes; (c) maintain a separate debtor-in-possession account for

cash collateral; and (d) acquire new checks for all debtor-in-possession accounts bearing the

designation "Debtors-In-Possession," the bankruptcy case number, and the type of account.

46.      The Debtors seek a waiver of the requirements of the UST Operating Guidelines to

the extent that they require the Debtors to open new debtor-in-possession bank accounts and close

their existing Bank Accounts, the likely effect of which would be to cause substantial disruption

in the Debtors' business and impair the Debtors' chapter 11 efforts.[7]  As explained herein, the

---

[7]      Although the Debtors are requesting a waiver of the requirement that they close all Bank Accounts, the Debtors ultimately may determine in their business judgment that opening new bank accounts and/or closing existing Bank Accounts is in the best interests of their estates under certain circumstances.  Nothing contained in this Motion should prevent the Debtors from opening any additional bank accounts, or closing

Debtors' Bank Accounts are critical elements of an established Cash Management System that the Debtors must maintain in order to ensure the uninterrupted conduct of their businesses. To ensure as smooth a transition into chapter 11 as possible, the Debtors submit that it is imperative that they be permitted to continue to maintain their existing Bank Accounts. Accordingly, subject to a prohibition against honoring pre-petition checks without specific authorization from the Court, the Debtors request that their existing Bank Accounts be deemed debtor-in-possession accounts and that the maintenance and continued use of such Bank Accounts, in the same manner and with the same account numbers, styles, and document forms (except as otherwise provided herein) as those employed during the pre-petition period, be authorized.

47.     The Debtors also seek a waiver of the requirement to establish specific bank accounts for tax payments. The Debtors' tax obligations can be paid out of the Bank Accounts, and the U.S. Trustee can adequately monitor the flow of funds into, among, and out of, the Bank Accounts, as set forth in the required reporting. Moreover, the creation of a new debtor-in-possession account designated solely for tax obligations would be unnecessary and inefficient.

48.     By preserving business continuity and avoiding likely disruption and delay to the Debtors' necessary disbursements that would undoubtedly result from strict enforcement of the UST Operating Guidelines, the relief requested herein will benefit all parties in interest.

---

any existing Bank Accounts, as they may deem necessary or appropriate in their judgment. Any new bank account opened by the Debtors shall be established at an institution that is (i) insured with the FDIC and that is organized under the laws of the United States or any State therein, or, in the case of accounts that may carry a balance exceeding the insurance limitations set thereby, and (ii) on the U.S. Trustee's List of Approved Depositories for the District of Delaware (the "AD List").

**C.     The Court Should Authorize the Banks to Continue to Service and Administer the Debtors' Bank Accounts.**

49.     Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors respectfully request that the Court authorize the Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors, as debtors-in-possession, without interruption and in the ordinary course of business.  In this regard, the Debtors request that the Banks be permitted to debit the Debtors' Bank Accounts in the ordinary course of business without the need for further Order of this Court for (i) all checks drawn on the Bank Accounts that were cashed at the Banks by the payees thereof prior to the Petition Date and (ii) Bank Fees.

50.     The Debtors also request that the Banks be authorized, when requested by the Debtors in their sole discretion, to receive, process, honor, and pay any and all Disbursements made by the Debtors related to the Cash Management System on account of any claim this Court grants the Debtors approval to pay arising before, on, or after the Petition Date, and in reliance on the Debtors' representations of such authority, without any duty of further inquiry and without liability for following the Debtors' instructions, subject to the applicable Bank Accounts containing sufficient funds.

51.     The Debtors further request that the Banks be restrained from honoring any disbursements on the Bank Accounts on account of a prepetition claim unless (i) authorized by an Order of this Court, (ii) not otherwise prohibited by a "stop payment" request received by the Banks from the Debtors, and (iii) supported by sufficient funds in the Bank Account in question.

52.     Finally, the Debtors request that, to the extent the Banks honor a prepetition check or other item drawn on any account that is the subject of this Motion either (i) at the direction of the Debtors, (ii) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (iii) as the result of an innocent mistake despite the above-described protective

measures, the Banks will not be deemed liable to the Debtors, their estates, or any other party on account of such prepetition check or other item honored post-petition.

**D.     The Debtors Should Be Authorized to Use Existing Check Stock, Correspondence, and Other Business Forms.**

53. Local Rule 2015-2(a) provides:

> Where the debtor uses pre-printed checks, upon motion of the debtor, the Court may, without notice and hearing, permit the debtor to use its existing checks without the designation "Debtor-in-Possession" and use its existing bank accounts.  However, once the debtor's existing checks have been used, the debtor shall, when reordering checks, require the designation "Debtor-in-Possession" and the corresponding bankruptcy number on all such checks.

DEL. BANKR. L.R. 2015-2(a).

54.     As discussed above, the Debtors use various Business Forms in the ordinary course of their business.  To minimize expenses to their estates, the Debtors request authority to continue using their existing prepetition Business Forms (including, without limitation, letterhead, purchase orders, and invoices) without reference to their status as debtors-in-possession or any other alteration.[8]  As noted above, to the extent that the Debtors order new check stock, the Debtors will include the "Debtor-in-Possession" legend and the jointly-administered bankruptcy case number on such checks.

55.     Changing the Debtor's existing checks, correspondence, and other Business Forms would be expensive and disruptive to the Debtors' estates as they transition to operating in chapter 11.  Further, such changes would not confer any benefit upon parties that deal with the Debtors.

---

[8]     Although the UST Operating Guidelines would require the Debtors to obtain and use new checks bearing the "Debtor-in-Possession" designation, the Debtors do not believe that such guidelines impose any limitation on the Debtors' other correspondence and Business Forms.  Nevertheless, out of an abundance of caution, the Debtors seek explicit authority to continue using its existing correspondence and Business Forms without reference to the Debtors' status as debtors-in-possession.

The Debtors therefore request authorization to use their existing Business Forms without adding a "Debtors-in-Possession" or similar legend; *provided*, *however*, that after their existing Business Forms are depleted, any replacement Business Forms will identify the Debtors' status as debtors-in-possession.

**E.  The Court Should Authorize the Debtors to Continue Paying Bank Fees and Corporate Card Obligations.**

56.    Payment of the Bank Fees, to the extent applicable, is similarly in the best interests of the Debtors and all parties in interest in the Chapter 11 Cases, as it will prevent unnecessary disruptions to the Cash Management System and ensure that the Debtors' receipt of and access to funds are not delayed.   Payment of prepetition Bank Fees will not prejudice any parties in interest.   Indeed, as the Banks may have setoff rights for the Bank Fees (whether prepetition or post-petition), payment of Bank Fees should not alter the rights of unsecured creditors in the Chapter 11 Cases.   Accordingly, the Debtors request authority to pay the Bank Fees and other similar service charges, including any prepetition Bank Fees, to maintain the Cash Management System.

57.    Additionally, the Corporate Card Program is critical to the Debtors' business operations as it allows employees to incur corporate expenses in the ordinary-course discharge of their employment duties without requiring employees to advance funds on the Debtors' behalf. Accordingly, the Court should authorize the Debtors to continue paying the Corporate Card Obligations.

**F.  Cause Exists to Waive the Requirements of Section 345(b).**

58.    Section 345 of the Bankruptcy Code governs a debtor's deposits and investments of cash during a chapter 11 case and authorizes such deposits as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."

11 U.S.C. § 345(a).  For deposits that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) requires that the debtor obtain from the "entity with which such money is deposited or invested a bond in favor of the United States [that is] secured by the undertaking of a[n adequate] corporate surety, . . . unless the court for cause orders otherwise." 11 U.S.C. § 345(b).  Additionally, the UST Operating Guidelines generally require chapter 11 debtors, among other things, to deposit all estate funds into an account with an authorized depository that agrees to comply with the requirements of the U.S. Trustee.

59.     The Court has discretion to waive the requirements of section 345(b) of the Bankruptcy Code "for cause."  11 U.S.C. § 345(b).  The existence of "cause" may be determined based upon the totality of the circumstances, taking account of factors such as: (i) the sophistication of the debtor's business; (ii) the size of the debtor's business; (iii) the amount of investments involved; (iv) the ratings of the financial institutions at which the debtor's funds are held; (v) the complexity of the case; (vi) the safeguards in place within the debtor's own business to ensure the safety of funds; (vii) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions; (viii) the benefit to the debtor; (ix) the harm, if any, to the estate; and (x) the reasonableness of the debtor's request for relief from the section 345(b) requirements in light of the overall circumstances of the case.  *See In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

60.     Here, these factors warrant a waiver of the requirements of section 345(b) of the Bankruptcy Code to the extent the Cash Management System does not already strictly comply with its requirements.  The Debtors do not maintain any investment accounts.  Most significantly, each of the Bank Accounts is maintained at an institution insured by the FDIC.  The Banks are

also designated as an authorized depository on the AD List.  Therefore, the Debtors respectfully submit that cause exists to continue to allow the Debtors to use all the Bank Accounts in the Cash Management System during the course of the Chapter 11 Cases.

61.     Out of an abundance of caution, to the extent the Court does not determine that the requirements of section 345(b) of the Bankruptcy Code are satisfied, the Debtors request a 45-day waiver of the requirements of section 345(b), subject to the Debtors' rights to seek further extensions thereof.

**G.     Continued Performance of Intercompany Transfers Is Warranted, and Intercompany Claims Should Be Granted Administrative Expense Priority.**

62.     As described above, the Debtors enter into certain Intercompany Transfers in the ordinary course of business, and these transfers are essential to the operations of the Debtors' business.  If the Intercompany Transfers were to be discontinued, the Debtors' operations, Cash Management System, and related administrative controls would be disrupted, thereby causing irreparable harm to the Debtors and their estates.

63.     The continuation of the Intercompany Transfers will not prejudice the Debtors' estates or their creditors.  Among other things, the Intercompany Transfers are part of the normal course of operation of the Debtors' business, which allows the Debtors' enterprise as a whole to function more effectively and efficiently, thereby benefitting all of the Debtors' stakeholders. Further, the Debtors maintain records of transfers of cash and other Intercompany Transfers and can ascertain, trace, and account for all such Intercompany Transfers.  Accordingly, the Debtors believe that continuation of the Intercompany Transfers is in the best interest of the Debtors' estates and creditors.

64.     Because the Debtors engage in Intercompany Transfers on a regular basis and such transactions are common among similar enterprises, the Debtors believe the Intercompany

Transfers are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code, and therefore, do not require the Court's approval. Nevertheless, out of an abundance of caution, the Debtors are seeking authority to engage post-petition in Intercompany Transfers.

65.    The Debtors request that the Court (i) authorize the Debtors to transact Intercompany Transfers with each other and with non-debtors, in the ordinary course of business, and (ii) grant administrative expense status to all Intercompany Claims against a Debtor by another Debtor or non-debtor affiliate that arise post-petition as a result of an Intercompany Transfer. Courts in this jurisdiction regularly grant such relief. *See, e.g.*, *In re Vyaire Medical, Inc.*, Case No. 24-11217 (BLS) [D.I. 86] (Bankr. D. Del. June 11, 2024) (according administrative expense status under 11 U.S.C. § 503(b) to post-petition intercompany transactions, including between debtors and non-debtors); *In re Appgate, Inc.*, Case No. 24-10956 (CTG) [D.I. 125] (Bankr. D. Del. May 8, 2024) (according administrative expense status to "all net post-petition payments from a Debtor to another Debtor or non-Debtor under any post-petition [intercompany transactions] that result in an [intercompany claim]"); *In re Pennsylvania Real Estate Investment Trust*, Case No. 23-11974 (KBO) [D.I. 135] (Bankr. D. Del. January 5, 2024) (granting administrative expense status to intercompany claims held against a debtor by another debtor or a non-debtor affiliate arising from post-petition intercompany transfers and authorizing debtors to pay third parties on behalf of non-debtor affiliates on an as-needed basis consistent with prepetition practices); *In re Dynata*, Case No. 24-11057 (TMH) [D.I. 132] (Bankr. D. Del. June 17, 2024) (authorizing continued use of cash management system involving intercompany transactions between debtors and non-debtor foreign affiliates); *In re Airspan Networks Holdings Inc.*, Case No. 24-10621 (TMH) [D.I. 98] (Bankr. D. Del. April 19, 2024) (authorizing intercompany transactions between

debtors and non-debtor affiliates); *In re Cano Health, Inc.*, Case No. 24-10164 (KBO) [D.I. 258] (Bankr. D. Del. March 5, 2024) (same).

## THE DEBTORS HAVE SATISFIED BANKRUPTCY RULE 6003(b)

66.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an Order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before 21 days after filing the petition. *See* FED. R. BANKR. P. 6003(b).  As described above, and in the First Day Declaration, the Debtors request immediate relief to continue operating their Cash Management System to avoid certain disruption of their business and ensure a seamless transition into and throughout the Chapter 11 Cases.   Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003(b) because the relief requested herein is necessary to avoid immediate and irreparable harm.

## BANKRUPTCY RULE 6004(h) SHOULD BE WAIVED

67.     To implement the foregoing successfully, the Debtors request that the Court find that notice of this Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and waive the 14-day stay of an Order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As described above and in the First Day Declaration, the relief requested by this Motion is necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.   Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and waiving the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and stay apply.

## **RESERVATION OF RIGHTS**

68.     Nothing contained in the Proposed Orders or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, basis, or amount of any claim against the Debtors and their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action; or (iv) shall be construed as a promise to pay a claim.

## **NOTICE**

69.     Notice of this Motion has or will be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors' estates on a consolidated basis; (iii) Owlpoint IP Opportunities JVF I LP; (iv) counsel to HPS Investment Partners, LLC; (v) U.S. Bank National Association, as trustee for the 9.500% Notes due 2025; (vi) the Office of the United States Attorney for the District of Delaware; (vii) the Internal Revenue Service; (viii) the United States Securities and Exchange Commission; (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (x) any other party in interest entitled to notice of this Motion pursuant to Local Rule 9013-1(m). As this Motion is seeking "first day" relief, within two (2) business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any Order entered in respect of the Motion as required by Local Rule 9013-1(m).  Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no other or further notice is necessary.

## NO PRIOR REQUEST

70.     No previous request for the relief sought by this Motion has been made to this Court

or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court:  (i) enter the proposed

Interim Order, substantially in the form attached as **Exhibit A**, granting the relief requested in this

Motion on an interim basis and scheduling a final hearing on the Motion, and thereafter; (ii) enter

the proposed Final Order, substantially in the form attached as **Exhibit B**; and (iii) grant such other

relief to the Debtors as is appropriate.

Dated:  June 29, 2024                              Respectfully submitted,
       Wilmington, Delaware

**ASHBY & GEDDES, P.A.**

 /s/ *Ricardo Palacio*
Ricardo Palacio (DE Bar No. 3765)          Mark W. Eckard (DE BAR No. 4542)
Gregory A. Taylor (DE Bar No. 4008)        REED SMITH LLP
500 Delaware Avenue, 8th Floor             1201 North Market Street, Suite 1500
Wilmington, DE 19899-1150                  Wilmington, DE 19801
Telephone: 302.654.1888                    Telephone:  302.778.7500
Facsimile: 302.654.654-2067                Facsimile:  302.778.7575
RPalacio@ashbygeddes.com                   MEckard@ReedSmith.com
GTaylor@ashbygeddes.com

                                                       - and –

Michael P. Cooley (*pro hac vice* pending)     Luke A. Sizemore (*pro hac vice* pending)
REED SMITH LLP                             REED SMITH LLP
2850 N. Harwood St., Suite 1500            225 Fifth Avenue, Suite 1200
Dallas, TX 75201                           Pittsburgh, PA 15222
Telephone:  469.680.4200                   Telephone:  412.288.3334
MPCooley@ReedSmith.com                     LSizemore@ReedSmith.com

                                              *Proposed Counsel for the Debtors and*
                                              *Debtors-in-Possession*

**EXHIBIT A**

<u>Proposed Interim Order</u>

(Attached)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC., *et al.*,[1] | Case No. 24-11442 |
| Debtors. | (Joint Administration Requested) |

## INTERIM ORDER (I) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS AND PAYMENT OF RELATED PREPETITION OBLIGATIONS; (II) WAIVING THE REQUIREMENTS OF 11 U.S.C. § 345(b); (III) AUTHORIZING CONTINUED PERFORMANCE OF INTERCOMPANY TRANSFERS; AND (IV) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the debtors and debtors-in-possession

in the above-captioned Chapter 11 Cases (collectively, the "Debtors"), for entry of an interim order

(this "Interim Order") pursuant to sections 105, 345, 363, 1107, and 1108 of the Bankruptcy Code,

Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2 (a) (i) authorizing the Debtors to

continue to use their Cash Management System and Bank Accounts; (ii) authorizing the Debtors

to continue their existing deposit practices under the Cash Management System (subject to certain

reasonable changes to the Cash Management System that the Debtors may implement);

(iii) waiving certain deposit requirements, and (iv) authorizing the Debtors to continue to perform

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

[2]     Capitalized terms used but not defined in this Order have the meanings given in the Motion.

Intercompany Transfers consistent with historical practice and granting administrative expense priority to Intercompany Claims, all as more fully set forth in the Motion; and upon consideration of the Motion and all of the pleadings related thereto, including the First Day Declaration; and the Court having found that it has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and having found that consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having determined that venue of this proceeding in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that notice of the Motion as set forth therein is sufficient under the circumstances; and the Court having reviewed the Motion and having considered the statements by counsel and evidence adduced in support of the Motion on an interim basis at the hearing before this Court (the "Hearing"); and it appearing that the relief requested by the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and it appearing that the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm as provided in Bankruptcy Rule 6003; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is GRANTED on an interim basis as set forth herein.

2.     The Debtors are authorized, but not directed, on an interim basis and in their sole discretion, to:  (a) continue operating the Cash Management System as described in the Motion, (b) continue to use the Bank Accounts in existence as of the Petition Date, in the names and with the account numbers existing immediately before the Petition Date, and (c) pay any ordinary

course Bank Fees and Credit Card Processing Fees incurred in connection with the Bank Accounts, irrespective of whether such fees arose prior to the Petition Date, and perform their obligations under the documents and arrangements governing the Bank Accounts.  The Debtors shall provide notice to the U.S. Trustee and any statutory committee appointed in the Chapter 11 Cases of any material changes to their Cash Management System.

3.       Agreements existing between the Debtors and the Banks shall continue to govern the post-petition cash management relationship between the Debtors and the Banks, and all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, collateral, and offset rights, and remedies afforded under such agreements shall remain in full force and effect absent further order of the Court or, with respect to any such agreement with the Banks, including, for the avoidance of doubt, any rights of the Banks to charge back against the Bank Accounts, in the ordinary course of business and subject to any applicable contractual arrangements, (a) any returned items drawn or presented against the Bank Accounts (regardless of whether such returned items originated prepetition or post-petition), and (b) any over-advances, credit balances, or other customary fees and service charges incurred as a result of returned or dishonored items (regardless of whether such items originated prepetition or post-petition), unless the Debtors and the Banks agree otherwise, and any other legal rights and remedies afforded to the Banks under applicable law shall be preserved.

4.       The Debtors are authorized, but not directed, to continue using, in their present form, all Business Forms, including, without limitation, any checks and other documents related to the Bank Accounts existing immediately before the Petition Date without reference to the Debtors' status as debtors-in-possession; *provided that*, once the Debtors have exhausted their existing stock of Business Forms, the Debtors shall ensure that any new Business Forms are clearly

labeled "Debtor-In-Possession;" *provided*, *further*, that, with respect to any business forms that exist or are generated electronically, to the extent reasonably practicable, the Debtors shall ensure that such electronic Business Forms are clearly labeled "Debtors-In-Possession" within ten (10) business days after the date of this Interim Order.

5.     The Debtors are authorized and empowered to continue performing under and honoring Intercompany Transfers in the ordinary course of business; *provided that* the Debtors shall not be authorized by this Interim Order to undertake any Intercompany Transfers that are not on terms materially consistent with the Debtors' operation of their business in the ordinary course during the prepetition period.

6.     The Debtors shall maintain accurate and detailed records of all Intercompany Transfers, including, but not limited to, Intercompany Transfers between Debtors and between Debtors and non-Debtor affiliates, so that all transactions may be readily ascertained, traced, recorded properly and distinguished between prepetition and post-petition transactions.  In addition, the Debtors shall provide reasonable access to such records to the DIP Lender (as defined in any Order approving debtor-in-possession financing (the "DIP Order")) and its professionals. All Intercompany Claims arising after the Petition Date shall be accorded administrative expense priority in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code, subject and subordinate to the DIP Superpriority Claims (as defined in the DIP Order).  Except as set forth in the Approved Budget (as defined in the DIP Order), no Cash Collateral (as defined in the DIP Order) shall be used for Intercompany Transfers or to otherwise fund or make payments to any non-Debtor affiliates without the prior written consent of the DIP Lender in its sole discretion (so long as the DIP Facility (as defined in the DIP Order) remains outstanding).

7.     The Debtors are authorized, pursuant to section 364(b) of the Bankruptcy Code, but not directed, to continue using any existing corporate credit cards in the ordinary course of business and consistent with prepetition practices.  The Debtors are further authorized, in the exercise of their reasonable business judgment, to pay any Corporate Card Obligations outstanding not to exceed (i) $150,000 with respect to the AMEX Cards and (ii) $250,000 with respect to the SVB Cards, for a total of $400,000 on an interim basis, absent further order of the Court, whether or not such obligations were outstanding on or before the Petition Date.  The Debtors' existing agreements with AMEX and SVB governing any existing corporate credit cards shall continue to govern the Debtors' post-petition credit card relationships with AMEX and SVB, respectively, and all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, collateral, and offset and termination rights, and remedies afforded under such agreements shall remain in full force and effect absent further order of the Court.

8.     The Banks are authorized, but not directed, to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors-in-possession without interruption and in the ordinary course and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, ACH Transfers, and other electronic transfers of any kind issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; provided that nothing contained herein shall authorize or direct the Banks to honor on a post-petition basis any wire, drafts, checks, electronic transfer requests, or other items issued or dated prior to the Petition Date, except that the Debtors may provide the Banks with specific written instructions (including by electronic mail) to honor or pay any particular prepetition wires, drafts, checks, electronic transfer requests or other items presented for payment against the Bank Accounts consistent with any other Orders of this Court authorizing

such payment, and only to the extent that the applicable Bank Accounts contain sufficient funds. The Banks shall have no duty to inquire as to whether such payments are authorized by any order of this Court, and the Banks shall not incur, and the Banks are hereby released from, any liability to the Debtors, their estates, or any other party on account of (a) relying upon the Debtors' instructions, or acting at the Debtors' direction, as to which wires, checks, drafts or other items drawn on any of the Bank Accounts should be honored or dishonored or for any of the Banks' inadvertence in honoring any wire, check, drafts, electronic transfer requests, or other item drawn on any of the Bank Accounts at variance from the Debtors instructions, (b) honoring or dishonoring any prepetition wires, checks, drafts, electronic transfer requests, or other items drawn on any of the Bank Accounts in a good faith belief or upon a representation by the Debtors that the Court has authorized the relevant Bank to honor or dishonor such prepetition wire, check, draft, electronic transfer request or other item, or (c) an innocent mistake despite implementation of reasonable handling procedures.

9.      Immediately upon entry of this Interim Order, the Banks are authorized, but not obligated, without further order of this Court, to recommence transfers or sweeps between Debtors' deposit accounts in accordance with pre-petition practice without regard to whether the funds swept and/or transferred include funds deposited prior to the Petition Date.

10.      If any Bank Accounts existing as of the Petition Date are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have forty-five (45) days from the date of this Interim Order to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines, without prejudice to the Debtors' ability to seek an additional extension or a final waiver of such requirements; *provided* that nothing herein shall prevent the

Debtors or the U.S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached within that time period (or such other period as agreed to by the Debtors and U.S. Trustee).

11.    Subject to any restrictions contained in, and in accordance with, any applicable governing documents and agreements between the Debtors and HPS, (a) the Debtors are authorized to close existing Bank Accounts or open new Bank Accounts and otherwise implement changes to their Cash Management System in the ordinary course of business; and (b) the Banks are authorized to close existing Bank Accounts and terminate any treasury management functions or additional functions; *provided that* the Debtors shall give notice of any such changes within fifteen (15) days thereafter to:  (a) Office of the United States Trustee, 844 N. King Street, Room 2207, Lockbox 35, Wilmington DE, 19801, Attn: Jane M. Leamy, Esq. (Jane.M.Leamy@usdoj.gov); (b) counsel to DIP Lender, Barnes & Thornburg LLP, Attn: Paul Laurin, Esq. (PLaurin@BTLaw.com); and (c) counsel to any statutory committees appointed in the Chapter 11 Cases; *provided*, *further*, that the Debtors shall only open any such new bank accounts at banks that are insured by the FDIC and have executed a Uniform Depository Agreement with the U.S. Trustee or are willing to immediately execute such an agreement.

12.    The relief granted in this Interim Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a Bank Account, and to any Additional Cash Management Bank (as hereinafter defined) at which such account is opened after the date hereof; *provided* that such new account is with one of the Banks (an "Additional Cash Management Bank") that: (a) is insured by the FDIC or the Federal Savings and Loan Insurance Corporation, (b) is an authorized depository pursuant to the U.S. Trustee's Operating Guidelines, and (c) agrees to be bound by the terms of this Interim Order.  If the Debtors open a new Bank

- 7 -

Account, close an existing Bank Account, or enter into any ancillary agreements (other than agreements applied by an Additional Cash Management Bank to all similarly situated customers), they shall provide notice to the U.S. Trustee, counsel to any official statutory committee appointed in these Chapter 11 Cases, and, *provided*, *further*, however, that any such opening shall be timely indicated on the Debtors' monthly operating reports.

13.     In the course of providing cash management services to the Debtors, the Banks and each Additional Cash Management Bank is authorized, without further Order of the Court, to deduct the applicable fees and expenses associated with the nature of the deposit and cash management services rendered to the Debtors, whether arising prepetition or post-petition, from the appropriate accounts of the Debtors, and further, to charge back to, and take and apply reserves from, the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH Transfers, wire transfers, merchant services transactions, or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or post-petition and regardless of whether the returned items relate to prepetition or post-petition items or transfers.

14.     The Banks are authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of the Court for:  (a) all checks drawn on the Bank Accounts that are cashed at bank counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date, (b) all checks or other items deposited in one of the Bank Accounts prior to the Petition Date that have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date, (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any of the Banks as service charges for the maintenance of

the Bank Accounts, and (d) all reversals, returns, refunds, and chargebacks of checks, deposited items, and other debits credited to Debtors' accounts after the Petition Date, regardless of the reason such item is returned or reversed.

15.     No liens on any of the Bank Accounts granted to any creditors shall take priority over the prepetition and post-petition Bank Fees to which the Banks are entitled, respectively, under the terms and in accordance with each respective contractual arrangement with the Debtors governing the Bank Accounts.

16.     The Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor regardless of which entity pays those disbursements.

17.     The requirement to establish separate bank accounts for cash collateral and/or tax payments is hereby waived.

18.     The Debtors are authorized, but not directed, to issue post-petition checks or to effect post-petition fund transfer requests in replacement of any checks or fund transfer requests that are dishonored as a consequence of the Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein.

19.     Nothing contained in the Motion or this Interim Order, nor any payment made pursuant to the authority granted by this Interim Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of any of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between any Debtor and any third party under section 365 of the Bankruptcy Code.

20.     The contents of this Motion satisfy the requirements of Bankruptcy Rule 6003(b).

21.     Notice of this Motion as provided therein shall be deemed good and sufficient and satisfies the requirements of Bankruptcy Rule 6004(a) and the Local Rules.

22.     For the reasons set forth in this Motion, notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

23.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with this Motion.

24.     A hearing to consider entry of an order granting the relief requested in the Motion on a final basis shall be held on _____, 2024, at _____ (Eastern), and any objections or responses to the Motion shall be in writing, filed with this Court, and served upon (a) proposed counsel for the Debtors, (i) Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, DE  19801 (Attn: Mark W. Eckard, Esq.), (ii) Reed Smith LLP, 2850 N. Harwood Street, Suite 1500, Dallas, TX, 75201 (Attn:  Michael P. Cooley, Esq.), and (iii) Reed Smith LLP, 225 Fifth Avenue, Suite 1200, Pittsburgh, PA, 15222 (Attn:  Luke A. Sizemore, Esq.); (b) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Jane M. Leamy, Esq.); (c) counsel for HPS Investment Partners, LLC; and (d) Owlpoint IP Opportunities JVF I LP, so as to be actually received by each of the foregoing parties no later than **4:00 p.m. (Eastern) on _____, 2024**.

25.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**EXHIBIT B**

<u>Proposed Final Order</u>

(Attached)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC., *et al.*,[1] | Case No. 24-11442 |
| Debtors. | (Joint Administration Requested) |

## FINAL ORDER (I) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS AND PAYMENT OF RELATED PREPETITION OBLIGATIONS; (II) WAIVING CERTAIN DEPOSIT REQUIREMENTS; (III) AUTHORIZING CONTINUED PERFORMANCE OF INTERCOMPANY TRANSFERS; AND (IV) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the debtors and debtors-in-possession in the above-captioned Chapter 11 Cases (collectively, the "Debtors"), for entry of an interim order and final order (this "Final Order") pursuant to sections 105, 345, 363, 1107, and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2 (a) (i) authorizing the Debtors to continue to use their Cash Management System and Bank Accounts; (ii) authorizing the Debtors to continue their existing deposit practices under the Cash Management System (subject to certain reasonable changes to the Cash Management System that the Debtors may implement); (iii) waiving certain deposit requirements, and (iv) authorizing the Debtors to continue

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

[2]    Capitalized terms used but not defined in this Order have the meanings given in the Motion.

to perform Intercompany Transfers consistent with historical practice and granting administrative expense priority to Intercompany Claims, all as more fully set forth in the Motion; and upon consideration of the Motion and all of the pleadings related thereto, including the First Day Declaration; and the Court having found that it has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and having found that consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having found that venue of this proceeding in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that notice of the Motion as set forth therein is sufficient under the circumstances; and the Court having reviewed the Motion and having considered the statements by counsel and evidence adduced in support of, and it appearing that no other or further notice need be provided; and upon the record of the hearing held on the Motion and all proceedings had before this Court; and this Court having entered an Order granting the relief requested in the Motion on an interim basis at the hearing held before this Court (the "Hearing"); and it appearing that the relief requested by the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm as provided in Bankruptcy Rule 6003; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, on an final basis and in their sole discretion, to:  (a) continue operating the Cash Management System as described in the Motion, (b) continue to use the Bank Accounts in existence as of the Petition Date, in the names and with the account numbers existing immediately before the Petition Date, and (c) pay any ordinary course Bank Fees and Credit Card Processing Fees incurred in connection with the Bank Accounts, irrespective of whether such fees arose prior to the Petition Date, and perform their obligations under the documents and arrangements governing the Bank Accounts.  The Debtors shall provide notice to the U.S. Trustee and any statutory committee appointed in the Chapter 11 Cases of any material changes to their Cash Management System.

3.      Agreements existing between the Debtors and the Banks shall continue to govern the post-petition cash management relationship between the Debtors and the Banks, and all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, collateral, and offset rights, and remedies afforded under such agreements shall remain in full force and effect absent further order of the Court or, with respect to any such agreement with the Banks, including, for the avoidance of doubt, any rights of the Banks to charge back against the Bank Accounts, in the ordinary course of business and subject to any applicable contractual arrangements, (a) any returned items drawn or presented against the Bank Accounts (regardless of whether such returned items originated prepetition or post-petition), and (b) any over-advances, credit balances, or other customary fees and service charges incurred as a result of returned or dishonored items (regardless of whether such items originated prepetition or post-petition), unless the Debtors and the Banks agree otherwise, and any other legal rights and remedies afforded to the Banks under applicable law shall be preserved.

4.     The Debtors are authorized, but not directed, to continue using, in their present form, all Business Forms, including, without limitation, any checks and other documents related to the Bank Accounts existing immediately before the Petition Date without reference to the Debtors' status as debtors-in-possession; *provided that*, once the Debtors have exhausted their existing stock of Business Forms, the Debtors shall ensure that any new Business Forms are clearly labeled "Debtor-In-Possession;" *provided*, *further*, that, with respect to any business forms that exist or are generated electronically, to the extent reasonably practicable, the Debtors shall ensure that such electronic Business Forms are clearly labeled "Debtors-In-Possession" within ten (10) business days after the date of this Interim Order.

5.     The Debtors are authorized and empowered to continue performing under and honoring Intercompany Transfers in the ordinary course of business; *provided that* the Debtors shall not be authorized by this Interim Order to undertake any Intercompany Transfers that are not on terms materially consistent with the Debtors' operation of their business in the ordinary course during the prepetition period.

6.     The Debtors shall maintain accurate and detailed records of all Intercompany Transfers, including, but not limited to, Intercompany Transfers between Debtors and between Debtors and non-Debtor affiliates, so that all transactions may be readily ascertained, traced, recorded properly and distinguished between prepetition and post-petition transactions.   In addition, the Debtors shall provide reasonable access to such records to the DIP Lender (as defined in any Order approving debtor-in-possession financing (the "DIP Order")) and its professionals. All Intercompany Claims arising after the Petition Date shall be accorded administrative expense priority in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code, subject and subordinate to the DIP Superpriority Claims (as defined in the DIP Order).  Except as set forth in

the Approved Budget (as defined in the DIP Order), no Cash Collateral (as defined in the DIP Order) shall be used for Intercompany Transfers or to otherwise fund or make payments to any non-Debtor affiliates without the prior written consent of the DIP Lender in its sole discretion (so long as the DIP Facility (as defined in the DIP Order) remains outstanding).

7.     The Debtors are authorized, pursuant to section 364(b) of the Bankruptcy Code, but not directed, to continue using any existing corporate credit cards in the ordinary course of business and consistent with prepetition practices.  The Debtors are further authorized, in the exercise of their reasonable business judgment, to pay any outstanding Corporate Card Obligations, whether or not such obligations were outstanding on or before the Petition Date.  The Debtors' existing agreements with AMEX and SVB governing any existing corporate credit cards shall continue to govern the Debtors' post-petition credit card relationships with AMEX and SVB, respectively, and all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, collateral, and offset and termination rights, and remedies afforded under such agreements shall remain in full force and effect absent further order of the Court.

8.     The Banks are authorized, but not directed, to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors-in-possession without interruption and in the ordinary course and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, ACH Transfers, and other electronic transfers of any kind issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; provided that nothing contained herein shall authorize or direct the Banks to honor on a post-petition basis any wire, drafts, checks, electronic transfer requests, or other items issued or dated prior to the Petition Date, except that the Debtors may provide the Banks with specific written instructions (including by electronic mail) to honor or pay any

particular prepetition wires, drafts, checks, electronic transfer requests or other items presented for payment against the Bank Accounts consistent with any other Orders of this Court authorizing such payment, and only to the extent that the applicable Bank Accounts contain sufficient funds. The Banks shall have no duty to inquire as to whether such payments are authorized by any order of this Court, and the Banks shall not incur, and the Banks are hereby released from, any liability to the Debtors, their estates, or any other party on account of (a) relying upon the Debtors' instructions, or acting at the Debtors' direction, as to which wires, checks, drafts or other items drawn on any of the Bank Accounts should be honored or dishonored or for any of the Banks' inadvertence in honoring any wire, check, drafts, electronic transfer requests, or other item drawn on any of the Bank Accounts at variance from the Debtors instructions, (b) honoring or dishonoring any prepetition wires, checks, drafts, electronic transfer requests, or other items drawn on any of the Bank Accounts in a good faith belief or upon a representation by the Debtors that the Court has authorized the relevant Bank to honor or dishonor such prepetition wire, check, draft, electronic transfer request or other item, or (c) an innocent mistake despite implementation of reasonable handling procedures.

9.      Immediately upon entry of this Interim Order, the Banks are authorized, but not obligated, without further order of this Court, to recommence transfers or sweeps between Debtors' deposit accounts in accordance with pre-petition practice without regard to whether the funds swept and/or transferred include funds deposited prior to the Petition Date.

10.     If any Bank Accounts existing as of the Petition Date are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have forty-five (45) days from the date of this Interim Order to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's

requirements or guidelines, without prejudice to the Debtors' ability to seek an additional extension or a final waiver of such requirements; *provided* that nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached within that time period (or such other period as agreed to by the Debtors and U.S. Trustee).

11.     Subject to any restrictions contained in, and in accordance with, any applicable governing documents and agreements between the Debtors and HPS, (a) the Debtors (with the consent of the DIP Lender in its sole discretion (so long as the DIP Facility remains outstanding) and upon the execution of applicable deposit account control agreements) are authorized to close existing Bank Accounts or open new Bank Accounts and otherwise implement changes to their Cash Management System in the ordinary course of business; and (b) the Banks are authorized to close existing Bank Accounts and terminate any treasury management functions or additional functions; *provided that* the Debtors shall give notice of any such changes within fifteen (15) days thereafter to:  (a) Office of the United States Trustee, 844 N. King Street, Room 2207, Lockbox 35, Wilmington DE, 19801, Attn:  Jane M. Leamy, Esq. (Jane.M.Leamy@usdoj.gov); (b) counsel to HPS; and (c) counsel to any statutory committees appointed in the Chapter 11 Cases; *provided, further*, that the Debtors shall only open any such new bank accounts at banks that are insured by the FDIC and have executed a Uniform Depository Agreement with the U.S. Trustee or are willing to immediately execute such an agreement.

12.     The relief granted in this Interim Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a Bank Account, and to any Additional Cash Management Bank (as hereinafter defined) at which such account is opened after the date hereof; *provided* that such new account is with one of the Banks (an "<u>Additional Cash</u>

Management Bank") that: (a) is insured by the FDIC or the Federal Savings and Loan Insurance Corporation, (b) is an authorized depository pursuant to the U.S. Trustee's Operating Guidelines, and (c) agrees to be bound by the terms of this Interim Order.  If the Debtors open a new Bank Account, close an existing Bank Account, or enter into any ancillary agreements (other than agreements applied by an Additional Cash Management Bank to all similarly situated customers), they shall provide notice to the U.S. Trustee, counsel to any official statutory committee appointed in these Chapter 11 Cases, and, *provided*, *further*, however, that any such opening shall be timely indicated on the Debtors' monthly operating reports.

13.     In the course of providing cash management services to the Debtors, the Banks and each Additional Cash Management Bank is authorized, without further Order of the Court, to deduct the applicable fees and expenses associated with the nature of the deposit and cash management services rendered to the Debtors, whether arising prepetition or post-petition, from the appropriate accounts of the Debtors, and further, to charge back to, and take and apply reserves from, the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH Transfers, wire transfers, merchant services transactions, or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or post-petition and regardless of whether the returned items relate to prepetition or post-petition items or transfers.

14.     The Banks are authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of the Court for:  (a) all checks drawn on the Bank Accounts that are cashed at bank counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date, (b) all checks or other items deposited in one of the Bank Accounts prior to the Petition Date that have been dishonored or returned unpaid for any reason, together

with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date, (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any of the Banks as service charges for the maintenance of the Bank Accounts, and (d) all reversals, returns, refunds, and chargebacks of checks, deposited items, and other debits credited to Debtors' accounts after the Petition Date, regardless of the reason such item is returned or reversed.

15.     No liens on any of the Bank Accounts granted to any creditors shall take priority over the prepetition and post-petition Bank Fees to which the Banks are entitled, respectively, under the terms and in accordance with each respective contractual arrangement with the Debtors governing the Bank Accounts.

16.     The Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor regardless of which entity pays those disbursements.

17.     The requirement to establish separate bank accounts for cash collateral and/or tax payments is hereby waived.

18.     The Debtors are authorized, but not directed, to issue post-petition checks or to effect post-petition fund transfer requests in replacement of any checks or fund transfer requests that are dishonored as a consequence of the Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein.

19.     Nothing contained in the Motion or this Interim Order, nor any payment made pursuant to the authority granted by this Interim Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of any of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (iii) a waiver of any claims or causes of action which may exist

against any creditor or interest holder, or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between any Debtor and any third party under section 365 of the Bankruptcy Code.

20.     The contents of this Motion satisfy the requirements of Bankruptcy Rule 6003(b).

21.     Notice of this Motion as provided therein shall be deemed good and sufficient and satisfies the requirements of Bankruptcy Rule 6004(a) and the Local Rules.

22.     For the reasons set forth in this Motion, notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

23.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with this Motion.

24.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

**EXHIBIT C**

<u>List of Bank Accounts</u>

(Attached)