## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CHICKEN SOUP FOR THE SOUL ENTERTAINMENT INC., *et al.*, | Case No. 24-11442 (TMH) (Joint Administration Requested) |
| Debtors.[1] | Re: Docket No. 8 |

## PRELIMINARY OBJECTION OF CEDAR ADVANCE LLC TO DEBTORS' MOTION FOR AUTHORITY TO USE CASH COLLATERAL

Cedar Advance, LLC ("Cedar Advance"), by and through its undersigned counsel, for its Preliminary Objection to the *Motion for Entry of Interim and Final Orders Under 11 U.S.C. §§ 105, 361, 362, 363 and 364 (I) Authorizing the Debtors, on a Final and Interim Basis, to (A) Obtain PostPetition Financing, (B) Grant Liens and Superpriority Administrative Expense Claims to Post-Petition Lenders, and (C) Utilize Cash Collateral; (II) Providing Adequate Protection to the Pre-Petition Secured Parties; (III) Modifying the Automatic Stay; (IV) Granting Related Relief, Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, 364 And 507; and (V) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2; and (VI) Granting Related Relief* [Docket No. 8], states as follows.

### INTRODUCTION

1.    The Debtors sold accounts to Cedar Advance pre-petition and, as such, have no

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

legal or equitable interest in the accounts the Debtors sold to Cedar Advance. The Debtors now seek to use the accounts as cash collateral. The Debtors cannot use the property they sold to Cedar Advance pre-petition as cash collateral. Cedar Advance objects to the Debtors' request to use cash collateral to the extent the Debtors intend to use the property Cedar Advance purchased pre-petition that is not property of the bankruptcy estates.

## **BACKGROUND**

2.      On February 9, 2024, the Debtors and Cedar Advance entered into the Standard Merchant Cash Advance Agreement (the "Agreement"), under which the Debtors sold, assigned, and transferred to Cedar Advance $5,621,000 ("Receivables Purchased Amount") of Receivables. A true and correct copy of the Agreement is attached hereto as **Exhibit A** and is incorporated herein by reference. "Receivables" are defined in the Agreement as "all of each [Debtors] future accounts, contract rights and other obligations arising from or relating to the payment of monies from each [Debtors'] customers and/or other third party payors…for the payment of each [Debtor's] sale of goods or services…." Receivables include "all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of each Debtor's business." *See* Agreement, ¶1.

3.      Cedar Advance and the Debtors expressly agreed in the Agreement how the Receivables purchased by Cedar Advance would be remitted to Cedar Advance. All Receivables were to be deposited into a bank account that had to be approved by Cedar Advance and was designated in the Agreement (the "Account"). The Debtors were required to deposit all Receivables in the Account and then Cedar Advance would debit on a weekly basis $165,000 ("Initial Estimated Payment") of Receivables deposited into the Account.

4.      The Initial Estimated Payment was meant to equal the Specified Percentage,

defined in the Agreement as 5%, of weekly Receivables collected by the Debtors (which were to be deposited into the Account).  The Initial Estimated Payment was based on historical revenue information provided to Cedar Advance by the Debtors when the Agreement was entered into. The Agreement provides for a reconciliation to ensure the amount debited by Cedar Advance going forward was equal to the Specified Percentage; therefore, the Agreement contemplates that the Initial Estimated Payment would be adjusted in accordance with the reconciliation provisions of the Agreement.  There was no time-period within which the Debtors had to remit the Receivables Purchased Amount to Cedar Advance, and Cedar Advance assumed the risk that the Debtors' business may slow down and, as a result, the Receivables purchased by Cedar Advance would be remitted more slowly than anticipated, or that the Debtors would cease operation in the ordinary course of business.  *See* Agreement, Pg. 1 and Section 1.9.

5.     The Receivables purchased by Cedar under the Agreement are "accounts" and/or "proceeds of accounts" as those terms are defined by the Unform Commercial Code.  As the transactions between the Debtor and Cedar Advance were sales of accounts/sales of payment rights, Cedar Advance automatically obtained a security interest in the Receivables it purchased that arose when the transaction was entered into (no specific grant of a security interest was necessary).  Cedar Advance's security interest was perfected on attachment.  *See* UCC §§ 1-201(37), 9-109(a)(3), and 9-309.  Nevertheless, Cedar Advance filed a UCC-1 Financing Statement to put others on notice of the transaction.  A copy of the UCC-1 Financing Statement is attached hereto as **Exhibit B** and is incorporated herein by reference.

6.     To date, Cedar Advance has not obtained $5,051,000 of the Receivables it purchased from the Debtors.

## OBJECTION

7.     Cedar Advance objects to the Motion to the extent the Debtors propose to use the

3

Receivables that were purchased by Cedar Advance under the Agreement. The Receivables purchased by Cedar Advance are not property of the bankruptcy estates. *See, e.g., In re R&J Pizza Corp.*, No. 14-43066-CEC, 2014 WL 12973408, at *2 (Bankr. E.D.N.Y. Oct. 14, 2014). A copy of this Opinion is attached hereto as **Exhibit C**. The Debtors have no legal or equitable interest in the Receivables the Debtors sold to Cedar Advance pursuant to Section 9-918 of the Uniform Commercial Code.

8.       Because the Receivables purchased by Cedar Advance are not property of the bankruptcy estates, they do not constitute "cash collateral" that the Debtors may use pursuant to Section 363 of the Bankruptcy Code. Pursuant to Section 363(b)(1) of the Bankruptcy Code, a debtor may only be authorized to use property that is property of the estate. Cedar Advance does not consent to the use of its property by the Debtors.

9.       In *In re R&J Pizza Corp.*, the United States Bankruptcy Court for the Eastern District of New York held that receivables purchased in a nearly identical transaction to the transaction between the Debtors and Cedar Advance were not property of the bankruptcy estate. 2014 WL 12973408, at *2. The court prohibited the debtor from using the receivables that were purchased and ordered the debtor to turnover the receivables in accordance with the terms of the agreement between the Debtor and the company that purchased the receivables. *See id.*

10.     This Court should similarly prohibit the Debtors from using the Receivables purchased by Cedar Advance. If the Debtors wish to use cash collateral, the Court should only permit the use of funds that do not constitute the Specified Percentage of Receivables.

11.     The Debtors are instead obligated to turn over the purchased Receivables to Cedar Advance in accordance with the terms of the Agreement. *See In re Florian*, 233 B.R. 25, 27 (Bankr. D. Ct. 1999) (directing trustee to turn over insurance proceeds that did not constitute

property of the debtor's estate); *Matter of Georgian Villa, Inc.*, 10 B.R. 79, 84-85 (Bankr. N.D. Ga. 1981) (holding that, where it appears that the debtor has no beneficial interest in the property, such property should be turned over to its true owner).

12.    It is also worth noting that Cedar Advance's security interest in the Receipts it purchased is not even subject to Section 552 of the Bankruptcy Code because the security interest did not arise *via* a security agreement, but rather, arose automatically without the need for an express grant of a security interest by the Debtors.

13.    As such, a replacement lien would be insufficient to protect Cedar Advance's interest in the Receivables it purchased from the Debtors.  As the Receivables are Cedar Advance's property that the Debtors have no legal or equitable interest in, no form of adequate protection would be sufficient to protect its interests in the Receivables.  Nor would it be appropriate, as the Receivables are not even property of the estates that the Court can authorize use of under any circumstances.

**WHEREFORE**, Cedar Advance respectfully requests that this Honorable Court deny the Debtors' use of cash collateral or, in the alternative, if the Court is inclined to permit use of cash collateral, prohibit the Debtors' use of the Specified Percentage of Receivables purchased by Cedar Advance, and grant such other and further relief as this Court deems just and proper.

Dated: June 30, 2024               **A.M. SACCULLO LEGAL, LLC**

                                   */s/ Mary E. Augustine*
                                   Mark T. Hurford (DE No. 3299)
                                   Mary Augustine (DE No. 4477)
                                   27 Crimson King Drive
                                   Bear, DE 19701
                                   Telephone: (302) 836-8877
                                   Facsimile: (302) 836-8787
                                   Email: mark@saccullolegal.com
                                          meg@saccullolegal.com

-and-

Shanna M. Kaminski (admitted *pro hac vice*)
Kaminski Law PLLC
P.O. Box 247
Grass Lake, MI 49240
Telephone: (248) 462-7111
Email: skaminski@kaminskilawpllc.com

*Counsel to Cedar Advance, LLC*