**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHICKEN SOUP FOR THE SOUL<br>ENTERTAINMENT INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11442 (TMH)<br><br>(Joint Administration Requested) |

**OBJECTION OF MIDCAP FINANCIAL TRUST TO DEBTORS'
MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS UNDER
11 U.S.C. §§ 105, 361, 362, 363 AND 364 (I) AUTHORIZING THE DEBTORS,
ON A FINAL AND INTERIM BASIS, TO (A) OBTAIN POST-PETITION FINANCING,
(B) GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS
TO POST PETITION LENDERS, AND (C) UTILIZE CASH COLLATERAL; (II)
PROVIDING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED
PARTIES; (III) MODIFYING THE AUTOMATIC STAY; (IV) GRANTING RELATED
RELIEF, PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507; AND (V)
SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001
AND LOCAL RULE 4001-2; AND (VI) GRANTING RELATED RELIEF**

MidCap Financial Trust ("MidCap") respectfully submits this objection (the "Objection") to the Debtors' *Motion for Entry of Interim and Final Orders Under 11 USC §§ 105, 361, 362, 363 and 364 (I) Authorizing the Debtors, on a Final and Interim Basis, to (A) Obtain Post-Petition Financing, (B) Grant Liens and Superpriority Administrative Expense Claims to Post Petition Lenders, and (C) Utilize Cash Collateral; (II) Providing Adequate Protection to the Pre-Petition Secured Parties; (III) Modifying the Automatic Stay; (IV) Granting Related Relief, Pursuant to 11*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

*U.S.C. §§ 105, 361, 362, 363, 364 and 507; and (V) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2; and (VI) Granting Related Relief*" [ECF No. 8] (the "DIP/Cash Collateral Motion"). [2] In support of its Objection, MidCap asserts:

### Overview[3]

1. MidCap is a secured creditor of Debtors Chicken Soup for the Soul Entertainment Inc. and Halcyon Television, LLC (collectively, together with any other Debtor affiliate that may have an interest in the applicable MidCap Collateral (as defined below), the "Debtors") with liens on certain collateral, including film library assets and deposit accounts acquired by the Debtors from Sonar Entertainment, Inc. and its affiliated Debtors. As security for their obligations owed to MidCap in connection with the acquisition of certain assets, as discussed in more detail below, the Debtors acquired the MidCap Collateral subject to the liens granted thereon by the sellers which were perfected by filing UCC-1 financing statements and recording a copyright security agreement and entering into a deposit account control agreement with the applicable sellers in favor of MidCap.

2. As of the filing of this Objection, MidCap has not consented to the Debtors' use of its cash collateral. Surprisingly, the DIP/Cash Collateral Motion does not mention the secured claim held by MidCap or make any showing of adequate protection as it relates to the liens on the MidCap Collateral to justify the use of MidCap's cash collateral during the pendency of these Chapter 11 Cases. Under Bankruptcy Code section 363(p), the Debtors bear the burden of

---

[2] MidCap just learned of the filing of these Chapter 11 Cases on the Petition Date and has reached out to potential local counsels over the weekend to engage in connection with these Chapter 11 Cases. Given the short notice, MidCap has not yet engaged local counsel and the undersigned counsel at Paul Hastings, LLP will be submitting Pro Hac Vice applications to the Court.

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the DIP/Cash Collateral Motion.

demonstrating to this Court that they have provided adequate protection to their secured creditors and have failed to make any such showing in respect of the liens that the Debtors have granted on the MidCap Collateral. As such, the Debtors should not be entitled to use MidCap's cash collateral.

**Factual Background**

3.  MidCap Financial Trust ("MidCap"), as administrative agent for itself and certain other lenders, provided a senior secured revolving credit and term loan facility to Sonar Entertainment, Inc. ("SEI") and certain of its subsidiaries pursuant to that certain *Credit, Security, Guaranty and Pledge Agreement* dated as of November 13, 2018, by and among SEI, the other credit parties referred to therein (together with SEI, the "Sonar Credit Parties"), MidCap, in its capacities as the administrative agent and a lender, and the other lenders from time to time party thereto (as amended or supplemented from time to time, the "MidCap/Sonar Credit Agreement"). To perfect MidCap's security interests in certain collection accounts (the "Collection Accounts"), the Sonar Credit Parties, as grantors, MidCap, as secured party and Wells Fargo, NA, as account bank, entered into that certain Deposit Account Control Agreement, dated as of December 10, 2018 (the "MidCap Control Agreement", and together with the MidCap/Sonar Credit Agreement and other Financing Documents referred to therein, as amended or supplemented from time to time, the "MidCap/Sonar Financing Documents"). The obligations owed by the Sonar Credit Parties under the MidCap/Sonar Financing Documents were secured by liens on substantially all assets of the Sonar Credit Parties.

4.  On or about May 21, 2021, the Sonar Credit Parties commenced an assignment for the benefit of creditors under California state law (the "ABC"), pursuant to which the Sonar Credit Parties assigned all of their respective assets (subject to the continuing liens of MidCap under the MidCap/Sonar Financing Documents) to Sonar (assignment for the benefit of creditors), LLC in

3

its capacity as the assignee (the "Assignee") under applicable state law. In conjunction with and prior to commencement of the ABC proceedings, the Sonar Credit Parties entered into that certain Asset Purchase Agreement dated as of April 8, 2021, by and among Chicken Soup for the Soul Entertainment Inc. ("CSSE"), Halcyon Television, LLC ("Halcyon") and, with respect to the Sonar Canada Interests referred to therein, Parkside Entertainment Inc. ("Parkside"), each as a buyer (CSSE, Halcyon and Parkside, collectively, "Buyer"), and SEI and the Sonar Subsidiaries referred to therein, each as a seller (collectively, "Seller") (as amended from time to time, the "APA"). Pursuant to the transactions contemplated by the APA and the CSS AVOD Agreements referred to therein, the Buyers acquired certain property including the Collection Accounts and also acquired certain shares in CSS AVOD Inc. ("CSS AVOD") together with the right to require CSSE to purchase such shares if so elected by MidCap for a put purchase price of $11,500,000 (the "Put Purchase Price"). As noted below, CSSE's put purchase obligations are secured by liens granted by CSSE and Halcyon to MidCap on the MidCap Collateral.

    5.    Pursuant to that certain MidCap 2021 Agreement referred to in the APA:

> a) MidCap consented to (i) the transfer by the Sonar Credit Parties of their assets to Assignee pursuant to the ABC subject to all liens granted to MidCap under the MidCap/Sonar Financing Documents (the "Agent Liens") and (ii) the sale by Assignee of the assets of the Sonar Credit Parties acquired by it pursuant to the ABC to Buyer under the APA subject to the continuation of the Agent Liens in certain of the purchased assets acquired by Buyer under the APA, including, without limitation, the Sonar library of over 1,000 television series and movies (the "Sonar Library") and all project assets related thereto (including any rights to distribute or otherwise exploit any project in the Sonar Library that may be licensed or otherwise transferred to any affiliate of Buyer) and all products and proceeds thereof, certain distribution agreements for the exploitation of various television projects, the Library Accounts Receivable referred to therein and the contracts related thereto and all products and proceeds thereof, the MidCap Collection Accounts referred to therein (over which MidCap retained control pursuant to account control agreements), the Canadian Collateral referred to therein and all products and proceeds resulting from the sale of the purchased assets by Assignee to Buyer under the APA (all purchased assets acquired by Buyer subject to the Agent Liens, collectively, the "MidCap Collateral");

b) MidCap agreed to release its liens on the MidCap Collateral upon its receipt in full of the Put Purchase Price (which as noted below has not been received);

c) CSSE, Halcyon and Parkside acknowledged that the MidCap Collateral acquired by them pursuant to the APA was subject to the Agent Liens thereon to secure (i) the obligations under the MidCap/Sonar Financing Documents (the "<u>MidCap Obligations</u>"), (ii) Buyer's obligations under the CSS AVOD Agreements to pay the Put Purchase Price at the put closing if a timely put election by MidCap were made, (iii) Buyer's obligations under the APA to account and pay the Additional Purchase Price payable thereunder, (iv) Buyer's indemnification obligations under the APA and (v) the performance by Buyer of the obligations, covenants and duties of Buyer under the MidCap 2021 Agreement; and

d) CSSE and Halcyon, as security for the payment and performance of their obligations under the MidCap 2021 Agreement, granted a separate lien on and to the MidCap Collateral referred to therein, including the MidCap Collateral. Attached hereto as **Exhibit A** hereto are the UCC-1 financing statements in favor of MidCap to perfect this separate and distinct lien.

6. MidCap timely exercised its put rights under the CSS AVOD Agreements in November 2022 and CSSE thereby became obligated under the CSS AVOD Agreements to pay the Put Purchase Price to MidCap. CSSE has defaulted on its obligations to pay the full Put Purchase Price to MidCap and, as of the Petition Date, owes substantial remaining amounts in respect thereof. As of the Petition Date, substantial remaining amounts are also owed in respect of the MidCap Obligations.

**OBJECTION**

7. Notwithstanding the Debtors' obligations to MidCap and the existence of valid and perfected security interests in the MidCap Collateral, the Debtors' "first day" pleadings make no mention of the obligations to MidCap or the MidCap Collateral (including the MidCap Control Agreement over the Collection Accounts), nor does the DIP/Cash Collateral Motion provide or attempt to address the adequate protection of MidCap's liens on the MidCap Collateral.

8. As noted, Bankruptcy Code section 363(p) provides: "In any hearing under this section – (1) the trustee has the burden of proof on the issue of adequate protection and (2) the

5

entity asserting an interest in property has the burden of proof on the issue of the validity, priority or extent of such interest."

9. As it related to the liens on the MidCap Collateral, the Debtors have failed to demonstrate that they have provided adequate protection to MidCap in respect of its liens on the MidCap Collateral and the request to this Court to use any MidCap Collateral that constitutes cash collateral should be denied. Moreover, MidCap requests that the Debtors be required to segregate and separately account for MidCap's cash collateral.

## RESERVATION OF RIGHTS

10. MidCap reserves its rights to supplement this Objection and respond to any filing of the Debtors, or any other party-in-interest in these Chapter 11 Cases, either by further submission to this Court, at oral argument or by testimony presented at the Interim Hearing or any subsequent hearing to consider the relief requested in the Motion. MidCap further reserves the right to review and comment on the proposed Interim Order, Final Order or any other order with respect to the Motion.

[*Remainder of Page Intentionally Left Blank*]

Dated: July 2, 2024

Respectfully submitted,

**PAUL HASTINGS LLP**

By:  /s/ Frank A. Merola
Frank A. Merola, Esq. (*pro hac vice* pending)
Matthew D. Friedrick, Esq. (*pro hac vice* pending)
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
frankmerola@paulhastings.com
matthewfriedrick@paulhastings.com

*Counsel to MidCap Financial Trust*