## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CHICKEN SOUP FOR THE SOUL ENTERTAINMENT INC., *et al.*,[1] | Case No. 24-11442 |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' OBJECTION TO MOTION TO SHORTEN NOTICE ON HPS PARTNERS LLC'S MOTION TO (I) RECONSTITUTE THE DEBTORS' BOARDS OF DIRECTORS AND STRATEGIC REVIEW COMMITTES, OR, IN THE ALTERNATIVE, (II) APPOINT A CHAPTER 11 TRUSTEE, OR, IN THE ALTERNATIVE, (III) CONVERT THE CHAPTER 11 CASES TO CHAPTER 7 LIQUIDATION**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby oppose the motion (the "***Motion to Shorten***") of HPS Investment Partners, LLC ("***HPS***") to shorten notice and objection periods with respect to its *Motion to (i) Reconstitute the Debtors' Boards of Directors and Strategic Review Committees, or, in the Alternative, (ii) Appoint a Chapter 11 Trustee, or, in the Alternative, (iii) Convert the Chapter 11 Cases to Chapter 7 Liquidation* (the "***HPS Motion***")[2] and respectfully state as follows:

## OBJECTION

1.     As the name suggests, the HPS Motion seeks a variety of extraordinary relief: the appointment of a chapter 11 trustee, the conversion of the case to cases under chapter 7, and—

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508).  The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

[2]   For the reader's convenience, capitalized terms used but not defined herein have the meanings assigned to them in the HPS Motion.

most unusually—the "reconstitution" of the board of directors of a public company.  Movants bear heavy burdens of proof to prevail on the relief requested, and even heavier at the outset of these cases when temperatures often run hot and parties are keen to act swiftly before a debtor can reach the stable waters that the harbor of chapter 11 provides.  It is the right of a party in interest to request such relief.  It is the right of a debtor to defend itself.

2.     Here, however, HPS hopes the Court will be sufficiently focused on the extraordinary allegations that it overlooks the extraordinary violence they would do to the due process rights of the Debtors and Mr. Rouhana.

3.     The allegations in the HPS Motion are unquestionably serious, but their legal relevance is not so clear.  The Debtors have unpaid prepetition payroll taxes exceeding $15 million and they forthrightly disclosed that fact in their first-day "wages and benefits motion" [Docket No. 3, at 9].   But, the management team that served prepetition is no longer at the Debtors' helm, and new stewards are now in place.  The Debtors thus respectfully submit that the appointment of a chapter 11 is not warranted where present management is (i) new, (ii) *not* the people who presided over the prepetition events HPS describes in its motion and, critically, (iii) independent.  *See* 11 U.S.C. § 1104(a)(1) (requiring dismissal "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by *current* management…").

4.      Similarly, it cannot be denied that Mr. Rouhana took extraordinary actions in the weeks leading up to the commencement of these cases.  But what, precisely, is the authority of this Court to actually *reconstitute* the board of directors of a chapter 11 debtor?  HPS cites to none, but instead offers the 1993 case of *In re Ralph C. Tyler, P.E., P.S., Inc.*, in which a court prohibited a debtor's shareholders from causing the debtor to waive estate claims against those same shareholders. 156 B.R. 995, 997 (Bankr. N.D. Ohio 1993).  That was no doubt the correct result in

*Ralph C. Tyler*, but a far cry from dismissing a chapter 11 debtor's board entirely and reconstituting it with another.  While HPS would have the Court treat the matters raised in the HPS Motion as simple and straightforward, they are anything but.  In such circumstances, the Debtors—and perhaps Mr. Rouhana, individually—must be allowed adequate time to consider HPS's arguments and authorities, and properly respond.

5.      As for the Debtors' recent financial performance, there is no dispute that the Debtors have suffered continuing and financial losses in recent months.  But HPS misconstrues the meaning of § 1112(b)(4), because to read it to apply to prepetition financial losses would leave no distressed business eligible for relief.  As Collier on Bankruptcy explains—

> In general, this standard has two basic requirements.  First, it tests whether, *after the commencement of the case*, the debtor has suffered or continued to experience a negative cash flow, or, alternatively, declining asset values. Second, it tests whether there is any reasonable likelihood that the debtor, or some other party, will be able to stem the debtor's losses and place the debtor's business enterprise back on solid financial footing within a reasonable amount of time.

7 Collier on Bankruptcy P 1112.04 (16th 2024).  The Debtors entered chapter 11 shortly before midnight on Friday night, June 30, 2024, and as of this filing have been in bankruptcy all of four calendar days.  It is grossly premature to draw conclusions about the Debtors' financial performance in chapter 11 before the Debtors have had a chance to, well—perform.

6.      In short, the HPS Motion levels serious allegations, and they deserve a serious response.  But perhaps most importantly, the Debtors would be remiss not to observe that some of the allegations raised in the HPS Motion are such that—if ultimately proven true—could have serious civil and even criminal implications.  Under such circumstances, it would be grossly unfair

and potentially highly prejudicial to compel any witness to testify on such short notice given the stakes that may be involved.[3]

7.      Finally, it should be noted that HPS's own authorities contradict its request for expediency and, in particular, for the HPS Motion to be heard before the Court considers even the Debtors' requests for *interim* relief at the start of these cases.  In its omnibus objection [Docket No. 28] to the Debtors' various first day motions, HPS cites to this Court's recent refusal in *In re Genapsys* to rule on a request for postpetition financing before first ruling on a pending motion to dismiss the case for lack of proper corporate authorization.  But as even HPS concedes, in that case the Court "declined to rule on the *final* DIP financing motion" until after the other motion was decided.  Docket No. 28, at 7. *Compare In re Genapsys, Inc.*, Case No. 22-10621[4] (BLS) (Bankr. D. Del. Jul. 12, 2022) (granting interim approval of request for postpetition financing).  HPS offers no authority for the proposition that relief such as that sought in the HPS Motion should be allowed to come so early in a chapter 11 case, and this Court should deny HPS's invitation to break new ground.  The Motion to Shorten should be denied and the HPS Motion set for hearing on a normal schedule.

<u>**CONCLUSION**</u>

WHEREFORE, the Debtors respectfully request that the Court deny the relief requested in the Motion to Shorten and grant the Debtors such other and further relief as the Court may deem just and proper.

---

[3] To be clear, the Debtors do not take the position that any current or former officer or director of the Debtors is, or should be considered, at risk of such civil or criminal sanctions. Nevertheless, even the mere possibility of such penalties counsels caution on the Court's part to ensure the due process rights of all parties are rightly protected.

[4] HPS's omnibus objection erroneously cites to Case No. 20-1061.

Dated:  July 2, 2024
      Wilmington, Delaware

Respectfully submitted,

**ASHBY & GEDDES, P.A.**

  */s/  Ricardo Palacio*
Ricardo Palacio (DE Bar No. 3765)
Gregory A. Taylor (DE Bar No. 4008)
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899-1150
Telephone: (302) 654-1888
Facsimile: (302) 654-2067
RPalacio@ashbygeddes.com
GTaylor@ashbygeddes.com


Michael P. Cooley (*pro hac vice* pending)
2850 N. Harwood St., Suite 1500
Dallas, TX 75201
Telephone:  469.680.4200
MPCooley@ReedSmith.com

**REED SMITH LLP**

Mark W. Eckard (No. 4542)
1201 North Market Street, Suite 1500
Wilmington, DE 19801
Telephone:  302.778.7500
Facsimile:  302.778.7575
MEckard@ReedSmith.com


- and -

Luke A. Sizemore (*pro hac vice* pending)
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone:  412.288.3334
LSizemore@ReedSmith.com

*Proposed Counsel for the Debtors and
Debtors-in-Possession*