## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHICKEN SOUP FOR THE SOUL | ) | |
| ENTERTAINMENT, INC., *et al.*,[1] | ) | Case No. 24-11442 (TMH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 8, 77 & 84** |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING, (B) USE CASH COLLATERAL, AND (C) GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (II) GRANTING ADEQUATE PROTECTION TO CERTAIN PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "**DIP Motion**")[2] of Chicken Soup for the Soul Entertainment, Inc. and each of its above-captioned affiliates (collectively, the "**Debtors**"), pursuant to sections 105, 361, 362, 363, 364, 503, 506, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "**Bankruptcy Code**"), rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), rules 4001-2(a)(i) and (ii) of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court of the District of

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprise, LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

[2]    Capitalized terms used but not defined herein are given the meanings ascribed to such terms in the DIP Term Sheet (as defined herein).

Delaware (the "**Local Rules**"), seeking entry of this interim order (this "**Interim Order**") and the

Final Order (as defined herein and, together with this Interim Order, the "**DIP Orders**") among

other things:

- authorizing Chicken Soup for the Soul Entertainment, Inc. (the "**DIP Borrower**") to obtain postpetition financing ("**DIP Financing**") pursuant to a secured, superpriority, priming debtor in possession financing facility (the "**DIP Facility**") subject to the terms and conditions set forth in the DIP Term Sheet attached hereto as **Exhibit 1** (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**DIP Term Sheet**") by and among the DIP Borrower, the DIP Guarantors (as defined below), the financial institutions or other entities from time to time party thereto as "DIP Lenders" (the "**DIP Lenders**"), and HPS Investment Partners LLC, as administrative agent and collateral agent (in such capacities, together with its successors and permitted assigns, the "**DIP Agent**" and, together with the DIP Lenders, the **"DIP Secured Parties"**), consisting of a superpriority priming revolving loan in an aggregate principal amount of $8 million (the "**DIP Loans**", and the commitment of the DIP Lenders to make the DIP Loans, the "**DIP Commitments**");

- authorizing the DIP Borrower to incur, and the other Debtors to jointly and severally guarantee (such Debtors, in this capacity, the "**DIP Guarantors**" and, together with the DIP Borrower, the "**DIP Loan Parties**") the DIP Loans, and all extensions of credit, financial accommodations, reimbursement obligations, fees and premiums (including, without limitation, commitment fees or premiums and administrative agency fees), costs, expenses and other liabilities and obligations (including indemnities and similar obligations, whether contingent or absolute) due or payable under the DIP Documents (as defined below) (collectively, the "**DIP Obligations**");

- authorizing the DIP Loan Parties to execute, deliver and perform under the DIP Term Sheet and all other documents and instruments that may be reasonably requested by the DIP Secured Parties in connection with the DIP Facility (in each case, as amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof and hereof, together with the DIP Term Sheet, the "**DIP Documents**");

- subject to the Carve-Out (as defined below) and otherwise solely to the extent set forth herein, granting to the DIP Agent, for the benefit of the DIP Secured Parties, allowed superpriority claims pursuant to section 364(c)(1) of the Bankruptcy Code;

- granting to the DIP Agent, for the benefit of the DIP Secured Parties, valid, enforceable, non-avoidable and automatically perfected liens pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code on the DIP Collateral (as defined below), on the terms described herein;

- authorizing the DIP Agent, acting at the direction of the Required DIP Lenders, to take all commercially reasonable actions to implement the terms of this Interim Order;

- waiving (a) the Debtors' right to surcharge the DIP Collateral and, subject to and upon entry of the Final Order, the Prepetition Collateral (as defined below) (together, the "**Collateral**") pursuant to section 506(c) of the Bankruptcy Code and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code;

- waiving the equitable doctrine of "marshaling" and other similar doctrines (a) with respect to the DIP Collateral for the benefit of any party other than the DIP Secured Parties and (b) subject to and upon entry of the Final Order, with respect to the Prepetition Collateral for the benefit of any party other than the Prepetition Secured Parties (as defined below);

- authorizing the Debtors to use proceeds of the DIP Facility and Cash Collateral (as defined below) solely in accordance with the DIP Orders and the DIP Documents;

- authorizing the Debtors to pay the DIP Obligations as they become due and payable in accordance with the DIP Documents;

- subject to the restrictions set forth in the DIP Documents and the DIP Orders, authorizing the Debtors to use Prepetition Collateral and provide adequate protection to the Prepetition Secured Parties for any diminution in value of their respective interests in the applicable Prepetition Collateral (including Cash Collateral), for any reason provided for in the Bankruptcy Code (collectively, the "**Diminution in Value**");

- vacating and modifying the automatic stay to the extent necessary to permit the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties to implement and effectuate the terms and provisions of the DIP Orders and the DIP Documents;

- waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim Order and, upon entry, the Final Order; and

- scheduling a final hearing (the "**Final Hearing**") to consider final approval of the DIP Facility and use of Cash Collateral on the terms of a proposed order (the "**Final Order**") to be posted to the docket prior to the Final Hearing.

The Court having considered the interim relief requested in the DIP Motion, the exhibits attached thereto, the available DIP Documents, and the evidence submitted and arguments made at the interim hearing held on July 3, 2024 (the "**Interim Hearing**"); and due and sufficient notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the Interim Hearing having been held and concluded;

and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, otherwise is fair and reasonable, in the best interests of the Debtors and their estates, and essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the DIP Loan Parties' entry into the DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor.

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.    *Petition Date*.  On June 28, 2024 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

B.    *Debtors in Possession*.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.    *Jurisdiction and Venue*.  This Court has core jurisdiction over these cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and the *Amended Standing Order of Reference from the United States District Court for the District of*

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

*Delaware*, dated February 29, 2012.   Consideration of the DIP Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court may enter a final order approving the relief sought in the DIP Motion consistent with Article III of the United States Constitution. Venue for these cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. § 1408.  The predicates for the relief sought herein are sections 105, 361, 362, 363(b), 363(c), 363(e), 363(m), 364(c), 364(d)(1), 364(e), 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014, and Local Rule 4001-2.

D.    *Committee Formation*.  As of the date hereof, the United States Trustee for the District of Delaware (the "**U.S. Trustee**") has not appointed an official committee of unsecured creditors in these cases (a "**Creditors' Committee**").

E.    *Notice*.  The Interim Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  Proper, timely, adequate and sufficient notice of the DIP Motion and the Interim Hearing has been provided in accordance with the Bankruptcy Code, Bankruptcy Rules and Local Rules, and no other or further notice was required under the circumstances.  The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.

F.    *Cash Collateral*.  As used herein, the term "**Cash Collateral**" shall mean all of the Debtors' cash, wherever located and held, including cash in deposit accounts, that constitutes or will constitute "cash collateral" of any of the Prepetition Secured Parties or DIP Secured Parties within the meaning of section 363(a) of the Bankruptcy Code.

G.    *Debtors' Stipulations*.  Subject to the provisions and limitations contained in paragraph 16 hereof, and after consultation with their attorneys and financial advisors, the Debtors admit, stipulate and agree that:

(i)     *Prepetition Credit Agreement*.  Pursuant to that certain Amended and Restated Credit Agreement, dated as of August 11, 2022 (as amended, restated, amended and restated, modified, supplemented, or extended from time to time, the "**Prepetition Credit Agreement**" and, collectively with the other "Loan Documents" (as defined in the Prepetition Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, including that certain First Amendment to Amended and Restated Credit Agreement dated as of April 29, 2024 and that certain Forbearance Agreement, dated as of April 29, 2024, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "**Prepetition Loan Documents**"), by and among (a) Chicken Soup for the Soul Entertainment Inc. ("**CSSE**"), as primary borrower, (b) Redbox Automated Retail, LLC, as original borrower (together with CSSE and any other guarantors under the Prepetition Credit Agreement, the "**Prepetition Loan Parties**"), (c) HPS Investment Partners, LLC, as administrative agent and collateral agent (the "**Prepetition Agent**"), and (d) the lenders from time to time thereunder (the "**Prepetition Lenders**" and, together with the Prepetition Agent, the "**Prepetition Secured Parties**"), the Prepetition Loan Parties incurred Obligations (as defined in the Prepetition Credit Agreement, and together with all accrued but unpaid interest, fees, expenses due thereon in accordance with the terms of the Prepetition Credit Agreement and Prepetition Loan Documents, the "**Prepetition Secured Obligations**");

(ii)     *Prepetition Secured Obligations*.  As of the Petition Date, the Prepetition Loan Parties were justly and lawfully indebted and liable to the Prepetition Secured Parties without defense, challenge, objection, claim, counterclaim, or offset of any kind, for Prepetition Secured Obligations in the aggregate principal amount of not less than $500,000,000, plus accrued and unpaid interest thereon and any fees, premium, expenses and disbursements (including attorneys'

fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees), costs, charges, indemnities, and other Prepetition Secured Obligations incurred under the Prepetition Loan Documents;

(iii)    Validity of Prepetition Secured Obligations.  The Prepetition Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Loan Parties, as applicable, enforceable in accordance with the respective terms of the relevant documents, and no portion of the Prepetition Secured Obligations or any payment made to the Prepetition Secured Parties or applied to or paid on account of the Prepetition Secured Obligations prior to the Petition Date is subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim (as such term is defined in the Bankruptcy Code), cause of action (including any avoidance actions under Chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

(iv)    *Validity, Perfection and Priority of Prepetition Liens*.  As of the Petition Date, pursuant to the Prepetition Loan Documents, the Prepetition Loan Parties granted to the Prepetition Agent, for the benefit of the Prepetition Secured Parties, a security interest in and continuing lien on (the "**Prepetition Liens**") substantially all of their respective assets and property, which, for the avoidance of doubt, includes Cash Collateral, and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (the "**Prepetition Collateral**");

(v)    *Waiver of Challenge*.  None of the Prepetition Liens are subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, subordination, recharacterization, avoidance or other cause of action (including any avoidance actions under

7

Chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

(vi)     *No Control*.  None of the Prepetition Secured Parties control (or have in the past controlled) any of the Debtors or their respective properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of any Debtor by virtue of any actions taken with respect to, in connection with, related to or arising from any Prepetition Loan Documents;

(vii)     *No Claims or Causes of Action*.  No claims or causes of action held by the Debtors or their estates exist against, or with respect to, the Prepetition Secured Parties and each of their respective Representatives (as defined below), in each case, in their capacity as such, under or relating to any agreements by and among the Debtors and any Prepetition Secured Party that is in existence as of the Petition Date; and

(viii)     *Release*.  Effective as of the date of entry of this Interim Order, each of the Debtors and (subject to the provisions of paragraph 16 hereof) each of their estates, on its own behalf and on behalf of its and their respective predecessors, successors, heirs, and past, present and future subsidiaries and assigns, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits the Prepetition Secured Parties, the DIP Secured Parties, and each of their respective Representatives (in their capacity as such) (collectively, the "**Released Parties**"), from any and all liability to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature and description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or

equity, in contract or tort (collectively, the "**Released Claims**"), in each case arising out of or related to the Prepetition Loan Documents, the DIP Facility, the DIP Documents, the DIP Loans, the negotiation thereof and the transactions and agreements reflected thereby, that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter may have against any of the Released Parties for or by reason of any act, omission, matter, or cause arising at any time on or prior to the date of this Interim Order.

H.    *MidCap Financial Trust*. MidCap Financial Trust ("**MidCap**") contends that it holds one or more claims against the Debtors secured by an interest in Cash Collateral and other property of the Debtors and makes the following contentions in support of such claims:

(i)    Pursuant to that certain: (a) Asset Purchase Agreement, dated as of April 8, 2021 (as amended, supplemented, or otherwise modified from time to time, the "**Prepetition APA**"), by and among Debtors Chicken Soup for the Soul Entertainment Inc. and Halcyon Television, LLC, as buyer (collectively, the "**Debtor Purchasers**"), Sonar Entertainment, Inc. ("**Sonar Parent**"), on behalf of itself and its subsidiaries identified therein, as seller (collectively, "**Sonar Seller**"), and the other parties thereto; and (b) Agent Consent to Assignment and Transfer of Purchased Assets, dated April 8, 2021 (the "**MidCap 2021 Agreement**", and together with the Prepetition APA and any other documents executed or delivered in connection therewith, each as amended, restated, supplemented, or otherwise modified from time to time, the "**Prepetition APA Documents**"), by and among the Debtor Purchasers, Sonar Parent, MidCap, as administrative agent under the MidCap Sonar Facility referred to below, Sonar (assignment for the benefit of creditors), LLC (the "**Assignee**"), and the other parties thereto, the Debtor Purchasers acquired the Purchased Assets under and as defined in the Prepetition APA in exchange for consideration comprised of, among other things, (i) an initial cash purchase price payment, (ii) additional

purchase price payments consisting of agreed percentages of cash flows generated from certain of the Purchased Assets (the "**Additional Purchase Price Obligations**") and (iii) certain shares of stock in Debtor CSS AVOD Inc. transferred to MidCap and in respect of which MidCap had the right to require the Debtor Purchasers to repurchase upon MidCap's exercise of such put right (which put right MidCap timely exercised) for cash consideration in the amount of $11,500,000 (the "**Put Price Obligations**"). All obligations of the Debtor Purchasers arising under the Prepetition APA Documents, including the Additional Purchase Price Obligations, the Put Price Obligations and the indemnification and other obligations of the Debtor Purchasers thereunder shall collectively be referred to herein as the "**Debtor APA Obligations**".

(ii)     Pursuant to the Prepetition APA Documents, the Debtor Purchasers acknowledged and agreed that those Purchased Assets constituting Collateral as defined in the MidCap 2021 Agreement (such Collateral, the "**MidCap Debtor Collateral**") were acquired subject to the liens granted by Sonar Seller to MidCap (the "**MidCap Sonar Liens**") as collateral for the obligations of Sonar Seller under a secured financing facility provided by MidCap and the other lenders to Sonar Seller (the "**MidCap Sonar Facility**").

(iii)     Each Debtor Purchaser also granted to MidCap, for the benefit of itself and the other lenders under the MidCap Sonar Facility, to secure such Debtor Purchaser's Debtor APA Obligations, a first priority security interest and continuing lien (the "**MidCap Debtor Liens**") in and on the MidCap Debtor Collateral (which, for the avoidance of doubt, includes Cash Collateral). As of the Petition Date, (a) the MidCap Debtor Liens and the MidCap Sonar Liens (i) are legal, valid, binding, enforceable, and perfected liens, (ii) were granted to, or for the benefit of, MidCap for fair consideration and reasonably equivalent value, (iii) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-

10

bankruptcy law, and (iv) are subject and subordinate only to the Carve-Out (as defined below); and (b) (i) the Debtor APA Obligations constitute legal, valid, and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the applicable Prepetition APA Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (ii) no setoffs, recoupments, offsets, defenses, or counterclaims to any of the Debtor APA Obligations exist, (iii) no portion of the Debtor APA Obligations or any payments made to MidCap are subject to avoidance, disallowance, disgorgement, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (iv) the Debtor APA Obligations shall continue in full force and effect notwithstanding any use of Cash Collateral permitted hereunder or any financing and financial accommodations extended by the DIP Lenders to the Debtors pursuant to the terms of this Interim Order or the DIP Loan Documents.

(iv)     Without admitting or denying the foregoing contentions, as to which all parties rights are expressly preserved, the Debtors acknowledge, stipulate, and agree that, as of March 31, 2024, the applicable Debtors owed MidCap in respect of the Put Price Obligations pursuant to the Prepetition APA Documents, without defense, counterclaim, reduction or offset of any kind, an aggregate amount of not less than $3,715,484 with respect to the Put Price Obligations consistent with the statements made in the Debtors' Form 10-Q Quarterly Report for the period ending March 31, 2024.

(v)     Based upon the foregoing, MidCap is deemed to have an interest in Cash Collateral for purposes of this Interim Order entitled to adequate protection under section 363 of the Bankruptcy Code.

I.      *Findings Regarding DIP Financing and Use of Cash Collateral.*

(vi)      Good and sufficient cause has been shown for the entry of this Interim Order and for authorization of the DIP Loan Parties to obtain financing pursuant to the DIP Documents.

(vii)      The Debtors have demonstrated an immediate and critical need to obtain the DIP Financing and to use Prepetition Collateral (including Cash Collateral) in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to satisfy other working capital and operational needs and to fund administrative expenses of these chapter 11 cases.  Access to sufficient working capital and liquidity under the DIP Documents and other financial accommodations provided under the DIP Documents, as well as through the use of Cash Collateral, is necessary for the avoidance of immediate irreparable harm to the Debtors' estates and for the preservation and maintenance of their going concern value.

(viii)      The Debtors are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or secured financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents.  The Debtors are also unable to obtain secured credit without granting to the DIP Secured Parties the DIP Liens and the DIP Superpriority Claims (each as defined below) and incurring the Adequate Protection Obligations (as defined herein) on the terms and subject to the conditions set forth in this Interim Order and in the DIP Documents.

(ix)      The Debtors continue to collect cash, rents, income, offspring, products, proceeds, and profits generated by the Prepetition Collateral and acquire equipment, inventory and other personal property, all of which constitutes the Prepetition Secured Parties' Cash Collateral

under section 363(a) of the Bankruptcy Code.  The Debtors desire and need to use the Prepetition Secured Parties' Cash Collateral for general corporate purposes.

(x)      Based on the DIP Motion and the record and argument presented to the Court at the Interim Hearing, the terms of the DIP Financing, the terms of the adequate protection granted to the Prepetition Secured Parties as provided in paragraph 11 of this Interim Order (collectively, the "**Adequate Protection**"), and the terms on which the Debtors may continue to use Prepetition Collateral (including Cash Collateral) pursuant to this Interim Order and the DIP Documents are consistent with the Bankruptcy Code, including section 506(b) thereof, are fair and reasonable, and reflect the DIP Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties under the circumstances.

(xi)     This Interim Order, the DIP Financing, the Adequate Protection, and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the DIP Loan Parties, the DIP Secured Parties, and the Prepetition Secured Parties (each of whom acted in good faith in negotiating such documents), and all of the loans and other financial accommodations extended by the DIP Secured Parties to the DIP Loan Parties under, in respect of, or in connection with, the DIP Financing and the DIP Documents (including the granting of adequate protections provided herein), shall be deemed to have been extended by the DIP Secured Parties in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Secured Parties (and their respective successors and assigns) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(xii)    The Prepetition Secured Parties have acted in good faith regarding the DIP Financing and the Debtors' continued use of the Prepetition Collateral (including Cash Collateral), including the granting of the Adequate Protection Liens (as defined below), and the Prepetition Secured Parties (and their respective successors and assigns) shall be entitled to the full protection of sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(xiii)    The Prepetition Secured Parties and the DIP Secured Parties have acted in good faith and without negligence, misconduct, or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of this Interim Order, the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens and the Adequate Protection Liens, any challenges or objections to the DIP Facility or the use of Cash Collateral, the DIP Documents, and all other documents related to and all transactions contemplated by the foregoing.  Accordingly, without limitation to any other right to indemnification, the Prepetition Secured Parties and the DIP Secured Parties shall be and hereby are indemnified (as applicable) as provided in the Prepetition Loan Documents and the DIP Documents, as applicable, including, without limitation, the section titled "Indemnity" of the DIP Term Sheet.

(xiv)    The Prepetition Secured Parties are entitled to the Adequate Protection as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the DIP Motion and on the record presented to the Court, the terms of the proposed Adequate Protection are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Prepetition Collateral, including Cash Collateral.

14

(xv)     To the extent their consent is required, the requisite Prepetition Secured Parties have consented to the use of Prepetition Collateral, including Cash Collateral and the (i) priming of the Prepetition Liens on the Prepetition Collateral by the DIP Liens, in each case on the terms set forth in this Interim Order and the DIP Documents; *provided* that nothing in this Interim Order or the DIP Documents shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral other than on the terms set forth in this Interim Order and the DIP Documents and in the context of the DIP Financing authorized by this Interim Order, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering Prepetition Collateral (whether senior or junior) other than as contemplated by this Interim Order, or (z) prejudice, limit or otherwise impair the rights of any Prepetition Secured Party to seek new, different or additional adequate protection or assert any other right, and the rights of any other party in interest, including the DIP Loan Parties, to object to such relief are hereby preserved.

(xvi)     Each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and, subject to and upon entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties, MidCap, Directors Guild of America, Inc. ("**DGA**"), Screen Actors Guild-American Federation of Television and Radio Artists ("**SAG-AFTRA**"), or Writers Guild of America, West ("**WGA**", together with DGA and SAG-AFTRA, the "**Guilds**"), with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral.

J.     *Immediate Entry*.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).  Absent the relief granted in this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the

DIP Financing and continued use of Prepetition Collateral (including Cash Collateral), in accordance with this Interim Order and the DIP Documents, are therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties. The DIP Motion and this Interim Order comply with the requirements of Local Rule 4001-2.

K.      Based upon the DIP Motion, the foregoing findings and conclusions, and the overall record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      *Authorization of the DIP Financing and the DIP Documents.*

(a)     The DIP Loan Parties are hereby authorized to execute, deliver, enter into and perform all of their obligations under the DIP Documents and perform such other acts as may be necessary, appropriate or desirable in connection therewith. The DIP Borrower is hereby authorized to borrow the DIP Loans pursuant to the DIP Documents, and the DIP Guarantors are hereby authorized to guarantee the DIP Borrower's obligations under the DIP Documents, subject to any limitations set forth in the DIP Documents. The proceeds of the DIP Loans shall be used for all purposes permitted under the DIP Documents and the Interim Order, subject to and in accordance with the following permitted uses (clauses (i) through (iii) below, collectively, the "**Permitted Uses**"):

(i)     up to $3.5 million for past due payroll and payroll due on July 5, 2024;

(ii)    up to $2.85 million for payroll deductions; and

(iii)   up to $1.65 million for payments to Anthem for healthcare premiums.

16

With the consent of the Debtors and the Required DIP Lenders, amounts in the foregoing clauses (i) through (iii) may be reallocated to effectuate the corresponding relief granted in the *Interim Order (I) Authorizing Debtors to (A) Pay Prepetition Wages, Salaries, Reimbursable Expenses, and Other Obligations on Account of Compensation and Benefits Programs and (B) Continue Compensation and Benefits Programs; and (II) Granting Related Relief* [Docket No. 75].

(b)    In furtherance of the foregoing and without further approval of this Court, each DIP Loan Party is authorized and directed to perform all acts, to make, execute and deliver all instruments, certificates, agreements, charges, deeds and documents, execute or record pledge and security agreements, mortgages, financing statements and other similar documents, if any, and to pay all fees, expenses and indemnities in connection with or that may be reasonably required, necessary, or desirable in connection with for the DIP Financing, including, without limitation:

(i)    the execution and delivery of, and performance under, each of the DIP Documents;

(ii)    the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case, in such form as the DIP Secured Parties may accept, it being understood that no further approval of this Court shall be required for any such amendments, waivers, consents or other modifications or the payment of any fees, including attorneys', accountants', appraisers' and financial advisors' fees, and other expenses, charges, costs, indemnities and other like obligations in connection therewith) that do not shorten the maturity of the DIP Facility, increase the aggregate DIP Commitments, increase the rate of interest or fees payable thereunder, or release any DIP Liens;

(iii)     the non-refundable payment to any of the DIP Secured Parties of any fees in connection with the DIP Facility, including any amendment fees, premiums, servicing fees, audit fees, liquidator fees, structuring fees, administrative agent's, collateral agent's or security trustee's fees, upfront fees, closing fees, commitment premiums, exit fees, closing date fees, prepayment fees or agency fees), and any amounts due in respect of any indemnification and expense reimbursement obligations, including, without limitation, fees and expenses of professionals retained by, or on behalf of, any of the DIP Secured Parties (including, without limitation, those of Milbank LLP, Richards, Layton & Finger, P.A., and any local legal counsel or other advisors in any foreign jurisdiction, and any other advisors as permitted under the DIP Documents), in each case, as provided in the DIP Documents (collectively, the "**DIP Fees and Expenses**"), without the need to file retention or fee applications; the payment of the foregoing amounts shall be irrevocable, and shall be deemed to have been approved upon entry of this Interim Order, whether any such obligations arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, disallowance, impairment, or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law.

2.     *DIP Obligations*.  Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute legal, valid, binding and non-avoidable obligations of the DIP Loan Parties, enforceable against each DIP Loan Party and their estates in accordance with their respective terms and this Interim Order, and any successors thereto, including any trustee appointed in these chapter 11 cases, or in any case under chapter 7 of the Bankruptcy Code upon

18

conversion of any of these cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**").   Upon execution and delivery of the DIP Documents, the DIP Obligations shall include all loans and any other indebtedness or obligations, contingent or absolute, which may from time to time be owing by any of the DIP Loan Parties to any of the DIP Secured Parties, in such capacities, in each case, under the DIP Documents and this Interim Order, including all principal, interest, costs, fees, expenses, premiums, indemnities and other amounts.   The DIP Loan Parties shall be jointly and severally liable for the DIP Obligations. Except as permitted hereby, no obligation, payment, transfer, or grant of security hereunder or under the DIP Documents to the DIP Agent and/or the other DIP Secured Parties shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

3. *Carve-Out.*

(a) As used herein, the "**Carve-Out**" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under Section 726(b) of the Bankruptcy Code (without regard to the notice set forth in

(iii) below); (iii) to the extent allowed at any time, whether on an interim or final basis, all fees and expenses (the "**Allowed Professional Fees**") earned, accrued, or incurred by persons or firms retained by the Debtors (at the direction of the SRC) pursuant to Sections 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and any persons or firms retained by the Creditors' Committee (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") and at any time before or on the first business day following delivery by the DIP Agent of a Carve-Out Trigger Notice (as defined below) (the "**DIP Termination Date**"), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $200,000 incurred after the first business day following delivery by the DIP Agent of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "**Post-Carve-Out Trigger Notice Cap**"). For purposes of the foregoing, "**Carve-Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent to the Debtors, their lead restructuring counsel, and the U.S. Trustee, which notice may be delivered following the occurrence and during the continuation of an Event of Default under the DIP Facility, stating that the Post-Carve-Out Trigger Notice Cap has been invoked. Notwithstanding anything to the contrary set forth herein or in any other order of the Court, the foregoing Carve-Out is binding upon the Debtors, the Prepetition Lenders, the Prepetition Agent, the DIP Lenders, the DIP Agent, and their respective successors, including any chapter 7 trustee, and shall survive dismissal or conversion to chapter 7 of the Chapter 11 Cases.

(b)    The DIP Secured Parties and Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any

Professional Persons incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code, and nothing in DIP Documents or DIP Orders shall obligate the DIP Secured Parties or Prepetition Secured Parties to directly pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(c)      For the avoidance of doubt, following the indefeasible payment in cash in full of the obligations under the DIP Facility or if the DIP Facility is otherwise terminated, the DIP Orders shall remain in full force and effect, including with respect to the Debtors' use of Cash Collateral, the Carve-Out, and all related provisions in respect thereof, and the Prepetition Agent shall assume any rights and obligations that the DIP Agent previously had with respect to the Carve-Out.

(d)      Payment of Allowed Professional Fees Prior to the DIP Termination Date.  Any payment or reimbursement made prior to the occurrence of the DIP Termination Date in respect of any Allowed Professional Fees shall not reduce the Carve-Out.

(e)      Payment of Carve-Out On or After the DIP Termination Date.  Any payment or reimbursement made on or after the occurrence of the DIP Termination Date in respect of any Allowed Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis.  Any funding of the Carve-Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Interim Order, the DIP Documents, the Bankruptcy Code, and applicable law.

4.      *DIP Superpriority Claims*.  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority claims (the "**DIP Superpriority Claims**") against the DIP Loan Parties on a joint and several basis (without the need to file any

proof of claim) with priority over any and all claims against the DIP Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, except for the Carve-Out.  The DIP Superpriority Claims shall be payable from, and have recourse to, all prepetition and postpetition property of the DIP Loan Parties and all proceeds thereof (excluding claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, the "**Avoidance Actions**") but, subject to the entry of the Final Order, including any proceeds or property recovered as a result of any Avoidance Actions, whether by judgment, settlement or otherwise (the "**Avoidance Proceeds**"), subject only to the Carve-Out. The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

5.    *DIP Liens*.  As security for the DIP Obligations, effective and automatically properly perfected on the date this Interim Order is entered, and without the necessity of execution, recordation or filing of any perfection document or instrument, or the possession or control by the DIP Agent of, or over, any Collateral, without any further action by the DIP Secured Parties, the following valid, binding, continuing, fully perfected, enforceable and non-avoidable security interests and liens (the "**DIP Liens**") are hereby granted to the DIP Agent for the benefit of the

DIP Secured Parties (all property identified in clauses (a) through (c) below being collectively referred to as the "**DIP Collateral**"):

(a) *Liens on Unencumbered Property*. Pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority lien on and security interest in (subject only to the Carve-Out) all tangible and intangible prepetition and postpetition property of the DIP Loan Parties, whether existing on the Petition Date or thereafter acquired, and the proceeds, products, rents, and profits thereof, that, on or as of the Petition Date, is not subject to (i) a valid, perfected and non-avoidable lien or (ii) a valid and non-avoidable lien in existence as of the Petition Date that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, other than the Avoidance Actions, but including, upon and subject to entry of the Final Order, the Avoidance Proceeds (collectively, the "**Unencumbered Property**").

(b) *Liens Priming Prepetition Liens*. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest (subject to the Carve-Out) in, and lien upon, all tangible and intangible prepetition and postpetition property of the DIP Loan Parties, regardless of where located (the "**DIP Priming Liens**"). Notwithstanding anything herein to the contrary, the DIP Priming Liens shall be (A) senior in all respects to the Prepetition Liens on the Prepetition Collateral and all other liens existing on the Petition Date, (B) senior to any Adequate Protection Liens on the Prepetition Collateral and (C) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code. The Prepetition Liens with respect to the Prepetition Collateral and all other liens existing on the Petition Date shall be primed by and made subject and subordinate to the DIP Priming Liens. Notwithstanding anything herein to the contrary, any DIP Priming Liens on the Existing Priority

Liens shall, unless further ordered by the Bankruptcy Court, secure only such DIP Obligations as incurred under the Interim DIP Facility.

(c)     *No Senior Liens.*  The DIP Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP Documents or in this Interim Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties, or (C) any intercompany liens; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code.

6.     *Protection of DIP Lenders' and Prepetition Secured Parties' Rights.*

(a)     So long as there are any DIP Obligations outstanding or the DIP Lenders have any outstanding DIP Commitments, the Prepetition Secured Parties shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Loan Documents or this Interim Order, or otherwise seek to exercise or enforce any rights or remedies against the DIP Collateral, including in connection with the Adequate Protection Liens; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, any DIP Collateral to the extent such transfer, disposition, sale or release is authorized under the DIP Documents; (iii) not file any financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral other than (x) to perfect the liens granted pursuant to this Interim Order or (y) as may be required by applicable state or foreign law to

complete a previously commenced process of perfection or to continue the perfection of valid and non-avoidable liens or security interests existing as of the Petition Date; and (iv) deliver or cause to be delivered, at the DIP Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Secured Parties or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of the DIP Collateral subject to any sale or disposition permitted by the DIP Documents and this Interim Order.

(b)     Except as set forth in clause (c) immediately below, to the extent any Prepetition Secured Party has possession of, or control over, any Prepetition Collateral or DIP Collateral, or has been listed as a secured party on any certificate of title for a titled good constituting Prepetition Collateral or DIP Collateral, such Prepetition Secured Party shall be deemed to have such possession or be so listed or have such possession or control as a gratuitous bailee and/or gratuitous agent for the benefit of the DIP Secured Parties, and such Prepetition Secured Party shall comply with the instructions of the DIP Agent, acting at the direction of the Required DIP Lenders, with respect to any of the foregoing.

(c)     Any proceeds of Prepetition Collateral received by any Prepetition Secured Party, whether in connection with the exercise of any right or remedy (including setoff) relating to the Prepetition Collateral or otherwise, shall be segregated and held in trust for the benefit of, and forthwith paid over to, the DIP Agent for the benefit of the DIP Secured Parties in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct.  The DIP Agent is hereby authorized to make any such endorsements as agent for the applicable Prepetition Secured Parties.  This authorization is coupled with an interest and is irrevocable.

(d)     The DIP Loan Parties shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, except as otherwise permitted or required by the DIP Documents or an order of the Court.

(e)     Upon the occurrence and during the continuation of an Event of Default that has not been waived by the Required DIP Lenders and following delivery of written notice (a "**Termination Notice**") (including by e-mail) on not less than five (5) business days' notice (such five (5) business day period, the "**DIP Agent Remedies Notice Period**") to lead restructuring counsel to the Debtors, lead restructuring counsel to the Prepetition Agent, lead counsel to the Creditors' Committee, and the U.S. Trustee, (the "**Remedies Notice Parties**"), the DIP Agent may (and any automatic stay otherwise applicable to the DIP Secured Parties, whether arising under sections 105 or 362 of the Bankruptcy Code or otherwise, but subject to the terms of this Interim Order (including this paragraph) is hereby modified), without further notice to, hearing of, or order from this Court, to the extent necessary to permit the DIP Agent to, unless the Court orders otherwise (*provided* that during the DIP Agent Remedies Notice Period, the Debtors, the Creditors' Committee (if appointed) and/or any party in interest shall be entitled to seek an emergency hearing (with the DIP Agent consenting to such emergency hearing) with the Court): (a) immediately terminate and/or revoke the Debtors' right under this Interim Order and any other DIP Documents to use any Cash Collateral (subject to the Carve-Out and related provisions), (b) terminate the DIP Facility and any DIP Document as to any future liability or obligation of the DIP Secured Parties but without affecting any of the DIP Obligations or the DIP Liens securing such DIP Obligations; (c) declare all DIP Obligations to be immediately due and payable; and (d) invoke the right to charge interest at the default rate under the DIP Documents.  Upon delivery of such Termination Notice by the DIP Agent, without further notice or order of the Court, the DIP Secured Parties'

and the Prepetition Secured Parties' consent to use Cash Collateral and the Debtors' ability to incur additional DIP Obligations hereunder will, subject to the expiration of the DIP Agent Remedies Notice Period and unless the Court orders otherwise, automatically terminate and the DIP Secured Parties will have no obligation to provide any DIP Loans or other financial accommodations. As soon as reasonably practicable following receipt of a Termination Notice, the Debtors shall file a copy of same on the docket.

        (f)      Following an Event of Default and the delivery of the Termination Notice, but prior to exercising the remedies set forth in this sentence below or any other remedies (other than those set forth in paragraph 6(e)), the DIP Secured Parties shall be required to file a motion with the Court seeking emergency relief (the "**Stay Relief Motion**") on not less than five (5) business days' notice to the Remedies Notice Parties (which may run concurrently with the DIP Agent Remedies Notice Period) for a further order of the Court modifying the automatic stay in the Chapter 11 Cases to permit the DIP Secured Parties to, subject to the Carve-Out and related provisions: (a) freeze monies or balances in the Debtors' accounts; (b) immediately set-off any and all amounts in accounts maintained by the Debtors with the DIP Agent or the DIP Secured Parties against the DIP Obligations; (c) enforce any and all rights against the DIP Collateral, including, without limitation, foreclosure on all or any portion of the DIP Collateral, occupying the Debtors' premises, sale or disposition of the DIP Collateral; and (d) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the DIP Documents or applicable law. If the DIP Secured Parties are permitted by the Court to take any enforcement action with respect to the DIP Collateral following the hearing on the Stay Relief Motion, the Debtors shall cooperate with the DIP Secured Parties in their efforts to enforce their security interest in the DIP Collateral, and shall not take or direct any entity to take any action designed or

intended to hinder or restrict in any respect such DIP Secured Parties from enforcing their security interests in the DIP Collateral.  Until such time that the Stay Relief Motion has been adjudicated by the Court, and subject to the other terms of this Interim Order, and subject further to any remedy, terms and conditions that the Court may impose, the Debtors may use Cash Collateral and the proceeds of the DIP Facility to the extent drawn prior to the occurrence of Event of Default to pay necessary expenses to avoid immediate and irreparable harm to the Debtors' estates in accordance with the DIP Documents.

(g)    Upon the occurrence of any Event of Default (as defined in the DIP Term Sheet, which Events of Default shall, for the avoidance of doubt, survive the indefeasible payment in cash in full of the obligations under the DIP Facility or other termination of the DIP Facility), including, for the avoidance of doubt, any Event of Default that occurs after the indefeasible payment in cash in full of the obligations under the DIP Facility or after the DIP Facility is otherwise terminated (a "**Cash Collateral Termination Event**"), the Prepetition Agent, on not less than five (5) business days' notice to the Remedies Notice Parties (such five (5) business day period, the "**Cash Collateral Remedies Notice Period**"), and unless the Court orders otherwise (provided that during the Cash Collateral Remedies Notice Period, the Debtors, the Creditors' Committee (if appointed), and/or any party in interest shall be entitled to seek an emergency hearing with the Court), may terminate its and the Prepetition Secured Parties' consent to the Debtors' use of Cash Collateral constituting Prepetition Collateral.

(h)    No rights, protections or remedies of the DIP Secured Parties or the Prepetition Secured Parties granted by this Interim Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent to the Debtors' authority to continue to use Cash Collateral; (ii) any actual or purported termination of

28

the Debtors' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Debtors' continued use of Cash Collateral or the provision of adequate protection to any party.

7.      *Limitation on Charging Expenses Against Collateral*.  Except to the extent of the Carve-Out, no costs or expenses of administration of these cases or any Successor Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceeding under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or, subject to and upon entry of the Final Order, the Prepetition Collateral (in each case, including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent, the Prepetition Agent, MidCap, or the Guilds, as applicable, and no consent shall be implied from any action, inaction or acquiescence by any of the DIP Secured Parties, the Prepetition Secured Parties, MidCap, or the Guilds and nothing contained in this Interim Order shall be deemed to be a consent by the DIP Secured Parties, the Prepetition Secured Parties, MidCap, or the Guilds to any charge, lien, assessment or claims against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

8.      *No Marshaling*.  In no event shall the DIP Secured Parties or, subject to and upon entry of the Final Order, the Prepetition Secured Parties, MidCap, or the Guilds be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the DIP Obligations, the Prepetition Secured Obligations, or the Prepetition Collateral, as applicable. Further, subject to and upon entry of the Final Order, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the Prepetition Secured Parties, MidCap, or the Guilds. Notwithstanding the foregoing, (i) the priming of any existing valid lien

29

which had priority to the Prepetition Secured Obligations as of the Petition Date (the "**Existing Priority Liens**") shall unless further ordered by the Court be limited to the obligations with respect to the Interim Facility and not any Discretionary Amount. and (ii) the DIP Agent shall first seek repayment with respect to the obligations with respect to the Interim Facility from Collateral as to which no Existing Priority Liens exist and, only to the extent such amounts are insufficient to satisfy the obligations with respect to the Interim Facility in full, then seek repayment from other Collateral; *provided* that if any Collateral is sold or otherwise disposed of there shall be a holdback from the proceeds of such sale or disposition in an amount sufficient to repay in full and in cash the obligations with respect to the Interim Facility to be held in a segregated account for the benefit of the DIP Lenders until such time as the obligations with respect to the Interim Facility are otherwise paid in full and in cash.

9.      *Payments Free and Clear*.  Any and all payments or proceeds remitted to the DIP Secured Parties or Prepetition Secured Parties pursuant to the provisions of this Interim Order, the DIP Documents or any subsequent order of the Court shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code, whether asserted or assessed by through or on behalf of the Debtors.

10.      *Use of Cash Collateral*.  The Debtors are hereby authorized, solely on the terms and conditions of this Interim Order, to use all Cash Collateral in accordance with the DIP Documents.

11.      *Adequate Protection of Prepetition Secured Parties, the Guilds and MidCap*. Pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, as adequate protection of their respective interests in the Prepetition Collateral (including Cash Collateral) for

the aggregate Diminution in Value and as an inducement to the Prepetition Secured Parties, the Guilds and MidCap to consent to the priming of the Prepetition Liens, the Guilds' liens and MidCap Debtor Liens and the use of their Cash Collateral, the Prepetition Secured Parties are granted the following Adequate Protection (collectively, the "**Adequate Protection Obligations**"):

(a)     *Prepetition Adequate Protection Liens*.  The Prepetition Agent (for the benefit of the Prepetition Secured Parties), the Guilds and MidCap are hereby granted, effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid, perfected replacement security interest in and lien on account of the Prepetition Secured Parties' Diminution in Value, the Guilds' Diminution in Value and MidCap's Diminution in Value upon, with respect to the Prepetition Secured Parties, all of the DIP Collateral, with respect to the Guilds, the collateral securing the Guilds' claims and, with respect to MidCap, the MidCap Debtor Collateral (the "**Adequate Protection Liens**"), senior to all other liens, but junior, subject, and subordinate solely to the Carve-Out and the DIP Liens and, as between the Prepetition Secured Parties, the Guilds or MidCap, consistent with their prepetition priorities.

(b)     *Prepetition Secured Parties', the Guilds' and MidCap's Section 507(b) Claims*.  The Prepetition Agent, for the benefit of the Prepetition Secured Parties, the Guilds and Midcap are hereby granted an allowed superpriority administrative expense claim against, with respect to the Prepetition Secured Parties, the DIP Loan Parties, with respect to the Guilds, the applicable Debtors, or with respect to Midcap, the Debtor Purchasers, in each case on a joint and several basis (without the need to file any proof of claim) on account of the Prepetition Secured Parties' Diminution in Value, the Guilds' Diminution in Value, and MidCap's Diminution in Value

under section 507(b) of the Bankruptcy Code (the "**507(b) Claims**"), which 507(b) Claims shall be payable from and have recourse to, with respect to the Prepetition Secured Parties, all DIP Collateral, with respect to the Guilds, the applicable collateral securing the Guilds' claims, and, with respect to MidCap, the MidCap Debtor Collateral, and, in each case, all proceeds thereof (excluding Avoidance Actions but including, without limitation, subject to entry of the Final Order, the Avoidance Proceeds).  The 507(b) Claims shall be senior to all other claims against the DIP Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, except for the Carve-Out and the DIP Superpriority Claims and, as between the Prepetition Secured Parties, the Guilds or MidCap, consistent with their prepetition priorities.

(c)     *Prepetition Secured Parties Fees and Expenses*. As further adequate protection, the DIP Loan Parties shall currently pay in cash, all professional fees and expenses payable to any agent under the Prepetition Loan Documents, including, but not limited to, the fees and disbursements of (i) Milbank LLP in connection with the Prepetition Agent in its role as agent and its administration of the Prepetition Loan Documents, (ii) local counsel of the Prepetition Agent, Richards Layton & Finger, PA, in connection with the Prepetition Agent in its role as agent and its administration of the Prepetition Loan Documents, and (iii) any financial advisor retained by the Prepetition Agent (collectively, "**Adequate Protection Fees and Expenses**"), in each case promptly upon receipt of summary form invoices which may be redacted for privileged information, subject to the review procedures set forth in paragraph 15 of this Interim Order.

(d)    *Financial Reporting*.  The DIP Loan Parties shall provide the Prepetition Agent under the Prepetition Loan Documents with financial and other reporting substantially in compliance with the Prepetition Loan Documents and any reporting described in the DIP Term Sheet.  Any information provided to the Prepetition Agent pursuant to this clause (d) shall also be made available to MidCap and the Guilds substantially contemporaneously.

(e)    *Post-Petition Interest*. As additional adequate protection, all obligations, including accrued but unpaid interest, under the Prepetition Loan Documents owing by the Debtors thereunder and other fees owing by the Debtors thereunder shall continue to accrue interest (and interest on interest) at the default rate applicable on the Petition Date under the Prepetition Loan Documents.

12.    *Maintenance of Collateral*.  The DIP Loan Parties shall continue to maintain and insure the Prepetition Collateral and DIP Collateral in amounts and for the risks, and by the entities, as required under the Prepetition Loan Documents and the DIP Documents, as applicable.

13.    *Perfection of DIP Liens and Adequate Protection Liens.*

(a)    Without in any way limiting the validity of the automatic perfection of the DIP Liens and the Adequate Protection Liens under the terms of this Interim Order, the DIP Secured Parties, the Prepetition Secured Parties, the Guilds and MidCap are hereby authorized, but not required, to execute in the name of the DIP Loan Parties, the Prepetition Loan Parties, the Guilds or MidCap (as applicable), as their true and lawful attorneys (with full power of substitution, to the maximum extent permitted by law) and to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar perfection instruments in any jurisdiction, or take possession of certificated securities, or take any other similar action in a manner not inconsistent herewith to document, validate or perfect the liens and security interests

granted to them hereunder (the "**Perfection Actions**"). All such Perfection Actions shall be deemed to have been taken on the date of entry of this Interim Order. The automatic stay shall be modified to the extent necessary to permit the DIP Secured Parties, each Prepetition Secured Party, the Guilds and MidCap to take any Perfection Action. For the avoidance of doubt, the DIP Liens and the Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Interim Order, whether or not the DIP Secured Parties, the Prepetition Secured Parties, the Guilds or MidCap take such Perfection Actions.

(b)     A certified copy of this Interim Order may, in the discretion of the DIP Agent, the Prepetition Agent, the Guilds and MidCap be filed or recorded in the filing or recording offices in addition to or in lieu of any financing statements, mortgages, notices of lien or similar instruments, and all filing and recording offices are hereby authorized and directed to accept a certified copy of this Interim Order for filing and/or recording, as applicable.

14.     *Preservation of Rights Granted Under this Interim Order.*

(a)     Other than the claims and liens expressly granted or permitted by this Interim Order, including the Carve-Out, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order shall be permitted while any of the DIP Obligations or the Adequate Protection Obligations remain outstanding, and, except as otherwise expressly provided in or permitted under this Interim Order, the DIP Liens and the Adequate Protection Liens shall not be: (i) junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after

34

the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties; or (iv) junior to any intercompany liens or security interests of the DIP Loan Parties.

(b)    The occurrence and continuance of any Event of Default  (as defined in the DIP Term Sheet) shall, after written notice by the DIP Agent (acting at the direction of Required DIP Lenders) to the DIP Borrower, counsel to the DIP Borrower, the U.S. Trustee, and lead counsel to the Creditors' Committee (if any) constitute an event of default under this Interim Order (each an "**Event of Default**") and, upon such notice, interest, including, where applicable, default interest, shall accrue and be payable as set forth in the DIP Term Sheet.  Notwithstanding any order that may be entered dismissing any of the chapter 11 cases under section 1112 of the Bankruptcy Code or converting these cases to cases to a Successor Case: (A) the DIP Superpriority Claims, the 507(b) Claims, the DIP Liens, and the Adequate Protection Liens shall continue in full force and effect, shall maintain their priorities as provided in this Interim Order, and shall remain binding on all parties in interest until all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full; (B) the other rights granted by this Interim Order, including with respect to the Carve-Out, shall not be affected; and (C) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order.

(c)    If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agent, as

applicable, of the effective date of such reversal, modification, vacatur or stay; or (ii) the validity, priority and enforceability of the DIP Liens, the Adequate Protection Liens, and the Carve-Out. Notwithstanding any such reversal, modification, vacatur or stay, the DIP Obligations, DIP Liens, Adequate Protection Obligations, Adequate Protection Liens, DIP Superpriority Claims, and the 507(b) Claims incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agent, as applicable, of the effective date of such reversal, modification, vacatur or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to, and are hereby granted, all the rights, remedies, privileges and benefits arising under sections 364(e) and 363(m) of the Bankruptcy Code.

(d)     Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the 507(b) Claims and all other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted by this Interim Order and the DIP Documents, as well as the Carve-Out, shall survive, and shall not be modified, impaired or discharged by the entry of an order (i) converting or dismissing any of these cases, or terminating the joint administration of these cases; (ii) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents); (iii) confirming a chapter 11 plan in any of the cases.  The terms and provisions of this Interim Order and the DIP Documents shall continue in in full force and effect in these cases and in any Successor Cases until all DIP Obligations and Adequate Protection Obligations are indefeasibly paid in full in cash, and the DIP Commitments have been terminated. Any confirmation order entered in these cases shall not discharge or otherwise affect in any way the joint and several obligations of the DIP Loan Parties to the DIP Secured Parties under the DIP

Facility and the DIP Documents, other than after the payment in full and in cash of all DIP

Obligations and the termination of the DIP Commitments

15.    *Payment of Fees and Expenses*.  The DIP Loan Parties are authorized and directed

to pay the DIP Fees and Expenses and the Adequate Protection Fees and Expenses.  Subject to the

review procedures set forth in this paragraph 15, payment of the DIP Fees and Expenses and

Adequate Protection Fees and Expenses shall not be subject to allowance or review by the Court.

Professionals for the DIP Secured Parties and Prepetition Secured Parties shall not be required to

comply with the U.S. Trustee fee guidelines with respect to such fees and expenses, however, any

time that such professionals seek payment of fees and expenses from the Debtors prior to

confirmation of a chapter 11 plan, each such professional shall provide summary copies of its

invoices (including aggregate amounts of fees and expenses and total amount of time on a per-

professional basis), which are not required to contain time detail and which may be redacted or

modified to the extent necessary to delete any information subject to the attorney-client privilege,

any information constituting attorney work product, or any other confidential information, to the

DIP Loan Parties, counsel to any Creditors' Committee, and the U.S. Trustee (together, the

"**Review Parties**"); *provided, however*, that (i) the provision of such invoices shall not constitute

a waiver of the attorney client privilege or of any benefits of the attorney work product doctrine or

any other evidentiary privilege or protection recognized under applicable law; and *provided further*

*that,* the U.S. Trustee and any Creditors' Committee shall have the right to request additional

details regarding the services rendered and expenses incurred by such professionals (each an

"**Information Request**").  Any objections raised by any Review Party with respect to such

invoices must be in writing and state with particularity the grounds therefor and must be submitted

to the applicable professional within ten (10) calendar days after receipt (the "**Review Period**"),

which shall not be extended by the delivery of an Information Request.  If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the last date of the Review Period, the Debtors shall pay such invoices within five (5) business days.  If an objection to a professional's invoice is received within the Review Period, the Debtors shall promptly pay the undisputed amount of the invoice without the necessity of filing formal fee applications, regardless of whether the invoiced amount arose or was incurred before or after the Petition Date, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  Notwithstanding the foregoing, the Debtors are authorized and directed to pay, on or prior to the Closing Date (as defined in the DIP Term Sheet) any costs, fees, expenses (including reasonable and documented legal fees and expenses) and other compensation contemplated by the DIP Documents.  No attorney or advisor to any DIP Secured Party or any Prepetition Secured Party shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.  Any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to (i) the DIP Secured Parties in connection with the DIP Facility, or (ii) the Prepetition Secured Parties in connection with these cases, are hereby approved in full and shall not be subject to recharacterization, avoidance, subordination, disgorgement or any similar form of recovery by the Debtors or any other person.

16.    *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding upon the Debtors in all circumstances and for all purposes.  The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these cases and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including

any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless: such committee or other party in interest with requisite standing has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein) by no later than (i)(x) as to the Creditors' Committee only, the earlier of (1) one business day before the hearing approving a sale of substantially all of the Debtors' assets and (2) 75 calendar days after the entry of this Interim Order, (y) if a chapter 7 or a chapter 11 trustee is appointed or elected prior to the end of the Challenge Period (as defined below), the Challenge Period solely for any such chapter 7 trustee or chapter 11 trustee shall be extended to the date that is the later of (1) 75 calendar days after entry of this Interim Order, or (2) the date that is 30 calendar days after such Trustee's appointment, and (z) for all other parties in interest, the earlier of (1) one business day before the hearing approving a sale of substantially all of the Debtors' assets and (2) 75 calendar days after entry of this Interim Order; and (ii) any such later date as (y) has been agreed to by the Prepetition Agent with respect to the Prepetition Secured Obligations, or (z) has been ordered by the Court for cause upon a motion filed and served within any applicable period (the time period established by the foregoing clauses (i)-(ii), the "**Challenge Period**"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Obligations or the Prepetition Liens, or (B) asserting or prosecuting any Avoidance Action or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Challenges**") against any Prepetition Secured Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (collectively, the "**Representatives**") in connection with or related to

39

the Prepetition Loan Documents, the Prepetition Secured Obligations, the Prepetition Liens, and the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge; *provided*, *however*, that any pleadings filed in connection with a Challenge shall set forth with specificity the basis for such Challenge and any potential Challenges not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred.  If no Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such Challenge then: (1) the Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding on all parties in interest; (2) the Prepetition Secured Obligations shall constitute allowed claims not subject to defense avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for all purposes in these cases and any Successor Case(s); (3) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, including any statutory or non-statutory committees appointed or formed in these cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, and any defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable

law or regulation by any statutory or non-statutory committees appointed or formed in these cases or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives shall be deemed forever waived, released and barred.  If any Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on each person or entity, except, solely respect to the person or entity who made such Challenge, to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in this Interim Order vests or confers on any person or entity (each as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in these cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, any Challenges with respect to the Prepetition Loan Documents, Prepetition Secured Obligations, or Prepetition Liens, and any ruling on standing, if appealed, shall not stay or otherwise delay confirmation of any plan of reorganization in these cases.

17.     *Limitation on Use of DIP Financing Proceeds and Collateral*.  Notwithstanding any other provision of this Interim Order or any other order entered by the Court, no DIP Loans, DIP Collateral, Prepetition Collateral (including Cash Collateral) or any portion of the Carve-Out, may be used directly or indirectly, including without limitation through reimbursement of professional fees of any non-Debtor party, in connection with (a) the investigation, threatened initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation

(i) against any of the DIP Secured Parties, or the Prepetition Secured Parties, or their respective Representatives, or any action purporting to do the foregoing in respect of the DIP Obligations, DIP Liens, DIP Superpriority Claims, Prepetition Secured Obligations, Prepetition Liens, Adequate Protection Liens, or 507(b) Claims or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to the DIP Obligations, the Prepetition Secured Obligations and/or liens, claims, rights, or security interests securing or supporting the DIP Obligations granted under the DIP Orders, the DIP Documents or the Prepetition Loan Documents in respect of the Prepetition Secured Obligations, including, in the case of each (i) and (ii), without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise, provided that, notwithstanding anything to the contrary herein, the proceeds of the DIP Loans and DIP Collateral (including Cash Collateral) may be used by the Creditors' Committee to investigate, but not to prosecute, (A) the claims and liens of the Prepetition Secured Parties and (B) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties, up to an aggregate cap of no more than $25,000 (the "**Investigation Cap**"), (b) attempts to prevent, hinder, or otherwise delay or interfere with the Prepetition Secured Parties' or the DIP Secured Parties', as applicable, enforcement or realization on the Prepetition Secured Obligations, Prepetition Collateral, DIP Obligations, DIP Collateral, as applicable, and the liens, claims and rights granted to such parties under the DIP Orders; (c) attempts to seek to modify any of the rights and remedies granted to the Prepetition Secured Parties or the DIP Secured Parties under this Interim Order, the Prepetition Loan Documents or the DIP Documents, as applicable, other than in accordance with this Interim Order; (d) to apply to the Court for authority to approve superpriority claims or grant liens (other than the liens and claims

permitted by the DIP Documents) or security interests in the DIP Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, DIP Superpriority Claims, Adequate Protection Liens and 507(b) Claims; or (e) to pay or to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are authorized by the Court, agreed to in writing by the DIP Lenders, expressly permitted under this Interim Order or under the DIP Documents (including the Permitted Uses), in each case unless all DIP Obligations, Prepetition Secured Obligations, Adequate Protection Obligations, and claims granted to the DIP Secured Parties and Prepetition Secured Parties under this Interim Order, have been paid in full in cash or otherwise agreed to in writing by the DIP Secured Parties.

18.    *SRC*.  The SRC consisting of Bart M. Schwartz, John T. Young, Jr. and Robert H. Warshauer is reinstated and is empowered to be the sole body entitled to manage all of the affairs and operations of the Debtors and their subsidiaries with all of the powers customarily given to a board of directors and with powers acceptable to the Required DIP Lenders, including, without limitation, all of those powers contemplated by the organizational documents executed in connection with the Forbearance Agreement and all such powers as are necessary or desirable to consummate the transactions contemplated by the DIP Term Sheet and such other powers contemplated by the DIP Term Sheet.  In the event that either of Mr. Young or Mr. Warshauer becomes unable to continue to serve for any reason, the other shall select his replacement subject to the consent of the DIP Administrative Agent. In the event that both become unable to continue to serve for any reason, their replacements shall be satisfactory to the DIP Administrative Agent in its sole discretion.

19.    *Interim Order Governs*.  In the event of any inconsistency between the provisions of this Interim Order, the DIP Documents or Prepetition Loan Documents, the provisions of this

Interim Order shall govern.  Any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Interim Order and the DIP Documents, including, without limitation, the Permitted Uses.

20.     *Binding Effect; Successors and Assigns*.  The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these cases, including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, any statutory or non-statutory committees appointed or formed in these cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Secured Parties, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns; *provided* that the DIP Secured Parties and the Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee or chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

21.     Nothing in this Interim Order, the DIP Documents, the Prepetition Loan Documents or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon any DIP Secured Party or Prepetition Secured Party any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts.  The DIP Secured Parties and Prepetition Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral or Prepetition

Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the DIP Collateral or Prepetition Collateral shall be borne by the Debtors.

22. *Limitation of Liability*.  In determining to make any loan or other extension of credit under the DIP Documents, to permit the use of the DIP Collateral or Prepetition Collateral (including Cash Collateral) or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents or Prepetition Loan Documents, as applicable, none of the DIP Secured Parties or Prepetition Secured Parties shall (a) have any liability to any third party or be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of any of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any other federal or state statute, including the Internal Revenue Code).  Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Secured Parties or Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective Representatives.

23. *Master Proofs of Claim*.  Neither the Prepetition Agent nor any other Prepetition Secured Parties shall be required to file proofs of claim in these cases or any Successor Cases in order to assert claims for payment of any of the Prepetition Secured Obligations, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts payable under the

Prepetition Loan Documents.  The description of claims and liens in respect of the Prepetition Secured Obligations set forth in this Interim Order is deemed to constitute proofs of claim in respect of such indebtedness and its secured status.  However, in order to facilitate the processing of claims, the Prepetition Agent is authorized, but not directed or required, to file a master proof of claim in the Debtors' lead case, Case No. 24-11442, on behalf of the Prepetition Secured Parties (each, a "**Master Proof of Claim**"), which shall be deemed to have been filed against each Debtor. The provisions of this paragraph 23 and the filing of Master Proofs of Claim, if any, are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan filed in these cases.  The Master Proofs of Claim shall not be required to include any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the Prepetition Agent.  The DIP Secured Parties shall not be required to file proofs of claim with respect to the DIP Obligations.

24.     *Insurance*.  To the extent that the Prepetition Agent is listed as a loss payee under the insurance policies of any of the DIP Loan Parties, the DIP Agent shall also be deemed to be a loss payee under such insurance policies until the indefeasible payment in full of the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and termination of the DIP Commitment and shall act in that capacity and distribute any proceeds recovered or received in respect of such insurance policies.

25.     *Credit Bidding*.  Subject to the lien priorities set forth herein, (a) the DIP Agent shall have the right to credit bid, up to the full amount of the DIP Obligations in any sale of the DIP Collateral and (b) subject to section 363(k) of the Bankruptcy Code, the Prepetition Agent

shall have the right, consistent with the provisions of the Prepetition Loan Documents, as applicable (and providing for the DIP Obligations to be indefeasibly repaid in full in cash and the termination of the DIP Commitments), to credit bid, up to the full amount of the applicable Prepetition Secured Obligations, in the sale of the applicable Prepetition Collateral, in each case, without the need for further Court order authorizing the same, whether any such sale is effectuated through section 363(k), 1123 or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code or otherwise.

26.     *Effectiveness*.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

27.     *Governing Order*.  Notwithstanding the relief granted in any other order by this Court, (i) all payments and actions by any of the Debtors pursuant to the authority granted therein shall be subject to this Interim Order, including compliance with the Permitted Uses and all other terms and conditions hereof, and (ii) to the extent there is any inconsistency between the terms of such other order and this Interim Order, this Interim Order shall control, in each case, except to the extent expressly provided otherwise in the other order.

28.     *Headings*.  Paragraph headings used herein are for convenience only and shall not affect the construction of, or to be taken into consideration in interpreting, this Interim Order.

29.     *Payments Held in Trust*.  Except as expressly permitted in this Interim Order or the DIP Documents and except with respect to the DIP Loan Parties, in the event that any person or entity receives any payment on account of a security interest in the DIP Collateral, receives any DIP Collateral or any proceeds of the DIP Collateral or receives any other payment with respect

thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations and termination of all DIP Commitments, such person or entity shall be deemed to have received, and shall hold, any such DIP Collateral or any payment on account or proceeds thereof in trust for the benefit of the DIP Secured Parties and shall immediately turn over such collateral or its proceeds to the DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this Interim Order.

30.    *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP Motion.

31.    *No Third Party Rights*.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

32.    *Necessary Action*.  The Debtors, the DIP Secured Parties, and the Prepetition Secured Parties are authorized to take all reasonable actions as are necessary or appropriate to implement the terms of this Interim Order.  The automatic stay is modified to permit affiliates of the Debtors who are not debtors in these cases to take all actions as are necessary or appropriate to implement the terms of this Interim Order.

33.    *Automatic Stay*.  For all Adequate Protection and stay relief purposes throughout these cases, the Prepetition Secured Parties shall be deemed to have requested relief from the automatic stay and Adequate Protection as of the Petition Date.  For the avoidance of doubt, such request will survive termination of this Interim Order.

34.    *Retention of Jurisdiction*.  This Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation

and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

35.     *Cedar Advance LLP*.  Cedar Advance LLC ("**Cedar Advance**") has asserted that, under the terms of a Standard Merchant Cash Advance Agreement, dated as of February 9, 2024, the proceeds of certain receivables are not property of the Debtors estates or Cash Collateral, but are instead the property of Cedar Advance.  Without any admission by any party to the accuracy of the foregoing, as to which all parties' rights are reserved, and notwithstanding anything to the contrary set forth in this Interim Order, an amount equal to 5% of gross receipts of the Debtors received from the collection of accounts receivable between the Petition Date and the Final Hearing (excluding any amounts advanced by HPS) shall be reserved and not disbursed for any purpose pending further Order of the Court.

36.     *Reporting*.  The Debtors shall use good faith efforts to provide MidCap with readily available information concerning assets on which MidCap holds valid liens.  The Debtors shall use good faith efforts to provide the Guilds with readily available information concerning assets on which the Guilds hold valid liens.

37.     *Final Hearing*.  A final hearing to consider the relief requested in the DIP Motion on a final basis shall be held on a date to be determined by the Court and noticed by the Debtors.

38.     *Objections*.  Any objections or responses to the DIP Motion shall be filed on or prior to the date specified in the notice of Final Hearing.  Any party objecting to the relief sought at the Final Hearing shall file and serve (via mail and e-mail) written objections, which objections shall be served upon (a) the Debtors, (b) the DIP Agent and Prepetition Agent, and counsel thereto, Milbank LLP, 55 Hudson Yards, New York, New York 10001, Attn: Dennis F. Dunne, Matthew L. Brod, and Andrew M. Leblanc, and Richards, Layton & Finger, One Rodney Square,

Wilmington, DE 19899, Attn: Mark D. Collins and Russell C. Silberglied, (c) the U.S. Trustee, Attn: Jame Leamy; and (d) if appointed, the Creditors' Committee.

39.     The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) on the parties having been given notice of the Interim Hearing and to any party that has filed with this Court a request for notices in these cases.

**Dated: July 4th, 2024**                              **THOMAS M. HORAN**
**Wilmington, Delaware**                          **UNITED STATES BANKRUPTCY JUDGE**