|   |   |   |
|---|---|---|
| 1 | UNITED STATES BANKRUPTCY COURT | |
| 2 | DISTRICT OF DELAWARE | |

```
 1                        UNITED STATES BANKRUPTCY COURT
                                DISTRICT OF DELAWARE
 2

 3    IN RE:                          .   Chapter 11
                                      .   Case No. 24-11442 (TMH)
 4    CHICKEN SOUP FOR THE            .
      SOUL ENTERTAINMENT, INC.,       .   (Joint Administration Requested)
 5    et al.,                         .
                                      .   Courtroom No.
 6                                    .   824 Market Street
                 Debtors.             .   Wilmington, Delaware 19801
 7                                    .
                                      .   Monday, July 1, 2024
 8    . . . . . . . . . . . . . . .       10:01 a.m.

 9                          TRANSCRIPT OF ZOOM HEARING
                     BEFORE THE HONORABLE THOMAS M. HORAN
10                       UNITED STATES BANKRUPTCY JUDGE

11    APPEARANCES:

12    For the Debtors:           Gregory A. Taylor, Esquire
                                 ASHBY & GEDDES, P.A.
13                               500 Delaware Avenue
                                 8th Floor
14                               Wilmington, Delaware 19801

15                               -and-

16                               Michael P. Cooley, Esquire
                                 REED SMITH, LLP
17                               2850 North Harwood Street
                                 Suite 1500
18                               Dallas, Texas 75201

19    (APPEARANCES CONTINUED)

20    Audio Operator:            Ian Willoughby, ECRO

21    Transcription Company:     Reliable
                                 The Nemours Building
22                               1007 N. Orange Street, Suite 110
                                 Wilmington, Delaware 19801
23                               Telephone: (302)654-8080
                                 Email: gmatthews@reliable-co.com
24
      Proceedings recorded by electronic sound recording,
25    transcript produced by transcription service.
```

```
 1  APPEARANCES (CONTINUED):

 2  For HPS Investment
    Partners, LLC:          Russell C. Silberglied, Esquire
 3                          RICHARDS, LAYTON & FINGER, P.A.
                            One Rodney Square
 4                          920 North King Street
                            Wilmington, Delaware 19801
 5
                            -and-
 6
                            Dennis F. Dunne, Esquire
 7                          MILBANK, LLP
                            55 Hudson Yards
 8                          New York, New York 10001

 9  For the Directors
    Guild of America, Inc.: Joseph A. Kohanski, Esquire
10                          BUSH GOTTLIEB, A LAW CORPORATION
                            801 North Brand Boulevard
11                          Suite 950
                            Glendale, California 91203
12
    For MidCap Financial
13  Trust:                  Frank A. Merola, Esquire
                            PAUL HASTINGS, LLP
14                          1999 Avenue of the Stars
                            27th Floor
15                          Century City, California 90067

16  For Cedar Advance:      Shanna Kaminski, Esquire
                            KAMINSKI LAW, PLLC
17                          P.O. BOX 247
                            Grass Lake, Michigan 49240

18
    For Apollo Overseas
19  Partners:               Claudia R. Tobler, Esquire
                            PAUL, WEISS, RIFKIND, WHARTON
20                            & GARRISON, LLP
                            2001 K Street, NW
21                          Washington, DC 20006

22

23

24

25
```

INDEX

MOTIONS:                                                              PAGE

Agenda
Item 1:    Motion to Extend Deadline to File Schedules or
           Provide Required Information
           [Docket No. 2; filed June 28, 2024]

           Court's Ruling:

Agenda
Item 2:    Motion for Entry of Interim and Final Orders
           (I) Authorizing Debtors to (A) Pay Prepetition
           Wages, Salaries, Reimbursable Expenses, and
           Other Obligations on Account of Compensation
           and Benefits Programs and (B) Continue
           Compensation and Benefits Programs; and (II)
           Granting Related Relief
           [Docket No. 3; filed June 28, 2024]

           Court's Ruling:

Agenda
Item 3:    Motion for Entry of Interim and Final Orders
           (I) Authorizing Continued Use of Existing Cash
           Management System, Bank Accounts, and Business
           Forms and Payment of Related Prepetition
           Obligations; (II) Waiving the Requirements of
           11 U.S.C. §345(b); (III) Authorizing Continued
           Performance of Intercompany Transfers; and
           (IV) Granting Related Relief
           [Docket No. 4; filed June 28, 2024]

           Court's Ruling:

INDEX

| | MOTIONS: | PAGE |
|---|---|---|
| | Agenda Item 4: | Motion for Entry of An Order (I) Authorizing The Debtors To (A) File a Consolidated List of Creditors in Lieu of Submitting a Separate Mailing Matrix for Each Debtor, (B) File a Consolidated List of the Debtors Thirty Largest Unsecured Creditors, and (C) Redact or Withhold Publication of Certain Personally Identifiable Information, (II) Extending the Time for the Debtors to File a Consolidated List of Creditors; (III) Approving the Master Service List, (IV) Waiving Requirement to File the List Of Equity Holders, and (V) Granting Related Relief [Docket No. 5; filed June 28, 2024] |
| | | Court's Ruling: |
| | Agenda Item 5: | Motion for Joint Administration [Docket No.6; filed June 28, 2024] |
| | | Court's Ruling: |
| | Agenda Item 6: | Motion for Entry of Interim and Final Orders Under 11 U.S.C. §§ 105, 361, 362, 363 and 364 (I) Authorizing the Debtors, on a Final and Interim Basis, to (A) Obtain Post- Petition Financing, (B) Grant Liens And Superpriority Administrative Expense Claims To Post-Petition Lenders, And (C) Utilize Cash Collateral; (II) Providing Adequate Protection To The Pre-Petition Secured Parties; (III) Modifying the Automatic Stay; (IV) Granting Related Relief, Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, 364 And 507; and (V) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2; and (VI) Granting Related Relief [Docket No.8; filed June 29,2024] |
| | | Court's Ruling: |

```
 1                             INDEX

 2  MOTIONS:                                                      PAGE

 3  Agenda
    Item 7:    Application for Entry an Order (I) Approving
 4             the Retention and Appointment of Kroll
               Restructuring Administration LLC as the Claims
 5             and Noticing Agent Effective as of the
               Petition Date, and (II) Granting Related
 6             Relief
               [Docket No.9; filed Juned 29 2024]
 7
               Court's Ruling:
 8
    Agenda
 9  Item 8:    Debtors Motion for Entry of Interim and Final
               Orders Authorizing the Debtors to Continue
10             Ordinary Course Business Relationship Under
               Management Services Agreement and License
11             Agreement with Parent Company
               [Docket No.10.; filed June 29 2024]
12
               Court's Ruling:
13

14  Transcriptionist's Certificate

15

16

17

18

19

20

21

22

23

24

25
```

1          (Proceedings commenced at 10:01 a.m.)
2          THE COURT:  Good morning, this is Judge Horan.
3 We're on the record in Chicken Soup for the Soul
4 Entertainment, Case Number 24-11442.
5          I'm going to have a few things to say, but let me
6 hear from counsel for the debtors to start, please, and then
7 I'll offer my observations.
8          MR. TAYLOR:  Thank you, Your Honor.
9          Good morning, this is Greg Taylor of Ashby &
10 Geddes, on behalf of the debtors, as proposed Delaware
11 counsel to the debtors.  Your Honor, I'm joined by our co-
12 counsel from the Reed Smith firm:  Michael Cooley, James
13 McCarroll, Luke Sizemore, Ian Turetsky, and Mark Eckard.
14          Thank you for agreeing to hear us this morning.
15 Mr. Cooley will handle the presentation on behalf of the
16 debtors today.  I'll cede the podium to him.
17          THE COURT:  And good morning, Mr. Cooley, and
18 welcome.
19          MR. COOLEY:  Good morning, Your Honor.
20          THE COURT:  It -- Mr. Cooley, it looks like it's
21 not going to be a smooth morning, will it?  There are a
22 number of issues here, and, you know, I've had an opportunity
23 to review all the papers that have been filed, including the
24 objection of Mr. Merola filed only a few moments ago, and
25 I'm, frankly, highly reluctant to go forward this morning,

1   given the seriousness of the allegations that I read.
2               As a practical matter, I'm just not sure how we
3   are able to accomplish much today.  You know, I'm concerned
4   by the fact that it appears, based upon my review of the
5   papers, including your argument, that employees haven't been
6   paid for a few weeks and that's something, I guess, a
7   situation is clearly untenable and it has got to be remedied.
8   But I am -- I really don't see how we can go forward today.
9               Well, let me hear from you, Mr. Cooley.
10              MR. COOLEY:  Thank you, Your Honor.
11              And as my co-counsel said, we very much appreciate
12  the early setting today, particularly given the lateness of
13  the filing on Friday.  I know that was an unusual and special
14  accommodation and we appreciate it greatly.
15              Your concerns, Your Honor, are not surprising and
16  do not fall on deaf ears and I do not come to you this
17  morning completely empty-handed.  This is, obviously, a
18  complicated filing, to say the least.  We have a proposed
19  priming DIP.  You mentioned HPS, the pre-petition lender's
20  motion, and, of course, there are issues that, setting aside
21  the legal issues at stake, are the critical (indiscernible)
22  importance; first and foremost among them, a payroll, the
23  June 21st payroll, which is now 10 days late, and which the
24  company is desperate to be able to fund to keep this going.
25              To that end, we have, as you might imagine, been

1  in active conversation with counsel for HPS, in particular,
2  between myself and Al Pisa from Milbank, about their
3  objections, about the motion that they filed, the
4  allegations, the forms of relief, and what it is that they're
5  practically trying to achieve by all of that.
6  　　　　　With your permission, what we would like to do --
7  we are -- the company is highly reluctant to extend these
8  hearings past today because, frankly, the July 4th holiday
9  creates challenges for us in that a one-day delay in the
10 hearing translates into, potentially, a two-day delay in
11 funding because of the intervening holiday, to actually get
12 money into people's hands; however, what we would ask the
13 Court to do, with your permission, is to adjourn the hearing
14 at this point until this afternoon.
15 　　　　　I think the Court has time available for us.  We
16 checked your calendar, and I know that's not a perfect guide,
17 but it looked like there was at least a potential that the
18 Court might be able to accommodate us this afternoon.  And I
19 realize that we have not had a chance to reach out to your
20 deputy about this; again, this has all been happening in real
21 time.  But if we were able to come back this afternoon, late
22 enough in the day to give us some time to continue our
23 dialogue, but not so late that we can't try and get something
24 done, at least for employees, if we need to, what I would
25 like to do is continue my conversations with Mr. Pisa to see

1   what we can do to narrow or resolve some of the, admittedly,
2   very serious objections and allegations that they've raised.
3               To be clear, we have a DIP lender standing by,
4   Owlpoint and their counsel, but as -- and this is the point
5   the Court, of course, is making -- peace is always better
6   than war.  And, particularly, given the unique nature of the
7   filings before the Court, we thought that some more time
8   spent between the debtor and HPS hulking through some of
9   their issues, would be time well spent for all of us.
10              And, again, I wish I could have called your
11  chambers an hour ago to give the Court a sense of this, but
12  this has all been going in real time.
13              Why don't I stop there.  The Court might like to
14  hear from Mr. Pisa who can hopefully confirm what I'm saying
15  and I suppose if anyone else wants to chime in, just to say
16  (indiscernible).
17              I don't really plan to get into opening statements
18  and allegations and waiving my arms in the air, and I would
19  imagine, under the circumstances, that others will either,
20  but I'll yield the podium at this point to Mr. Pisa or
21  whomever the Court would like to hear from.
22              THE COURT:  Okay.  Let me appreciate those
23  comments, Mr. Cooley.  My afternoon, unfortunately, is
24  actually going to be quite difficult.  I have a second day
25  hearing at 1 o'clock that also will include a preliminary

1   injunction hearing.  And I expect, based upon the estimates
2   of time needed that we received from the parties to that
3   matter, that I will be on the bench until 5:00 or later with
4   that.  So, I'll hear from some of the other parties, but I
5   think what might make sense would be for whatever dialogue
6   the parties are going to have, to have it, and to keep in
7   touch with my courtroom deputy this afternoon and see how
8   we're doing on both ends of the equation; how I'm doing with
9   my hearing and how you're doing with your discussions, and
10  just see where the calendar takes us.
11              Tomorrow, I have a -- boy, I have a fairly full
12  schedule, although, it's possible that I can move something
13  around and get you in at 9:00 a.m. tomorrow if we need to do
14  that.  And I'll see if I can make the necessary changes to my
15  schedule, but, otherwise, I think we're -- we, otherwise,
16  would be talking about not being able to get together until
17  tomorrow afternoon sometime.  And I have a hearing at 1:00
18  tomorrow that, depending on how they're progressing, may end
19  up taking several hours.  So I'll pause there and --
20              MR. DUNNE:  Your Honor?
21              THE COURT:  -- I can actually hear from the other
22  parties.
23              MR. DUNNE:  Your Honor, may I be heard?
24              It's Dennis Dunne from Milbank, on behalf of HPS.
25              THE COURT:  Yes, Mr. Dunne.  Good morning.

1                 And I'll say good morning to Mr. Silberglied, who
2    I also saw popped on your co-counsel.
3                 MR. DUNNE:  Yes, he's my co-counsel, and I'm a
4    partner with the much-mentioned Al Pisa.  But I will
5    summarize our position, which is -- it's accurate.  We're in
6    discussions right now in an attempt to kind of resolve our
7    public governance concerns, as well as our DIP objection, and
8    I do think it's kind of prudent to seek to let that process
9    play out, and so we're in favor of doing that.
10                I have a whole presentation that I'm not going to
11   get into either.  We'll save that for another time and maybe
12   it gets mooted out by the conversations we're about to have.
13   And it sounds like from a calendaring perspective, maybe Your
14   Honor's suggesting we have a check-in with you at the end of
15   the day, but we would be targeting, you know, 9:00 a.m.
16   tomorrow for anything substantive.
17                THE COURT:  I think that that's probably right,
18   and I'll just need to work on that on my end to make sure
19   that I do have that availability at 9:00.  Right now, I'm not
20   available, but I'll work to change that.
21                MR. DUNNE:  I appreciate it greatly, Your Honor.
22   That's all I have.
23                MR. COOLEY:  And, obviously, Your Honor, from the
24   company's perspective, I expressed at the outset the
25   company's concern with timing, but we also understand, as do,

1  I think, a number of parties here, that there are a variety
2  of unstoppable forces and immovable objects to contend with
3  here.  One of those is the necessity of payroll and one of
4  those is the Court's very busy calendar.  And so getting that
5  outline of your timing and your availability is actually
6  quite helpful for us, as well.
7             THE COURT:  You know, I'll add that Wednesday, I
8  am completely free, and I'm not suggesting we move
9  (indiscernible) to Wednesday, but I just want you to be aware
10 of that, okay.
11            MR. COOLEY:  Understood, Your Honor.
12            THE COURT:  Is there anybody else who'd like to be
13 heard?  I see a few faces on the screen.  I don't know if
14 they'd like to address the Court at this point.
15            MR. KOHANSKI:  Your Honor, Joe Kohanski.  The law
16 firm is Bush Gottlieb in Glendale, California, along with
17 Susan Kaufman, our local counsel in Delaware.
18            We represent the Directors Guild of America, the
19 Screen Actors Guild American Federation of Television and
20 Radio Artists and the Writers Guild of America.  Let's call
21 them "the guilds."
22            We're here today because the company likely owes
23 residuals, basically, reduced payments for talent that are
24 involved in performing in pictures produced under collective
25 bargaining agreements.  We also have liens and likely senior

1 liens in a number of motion picture rights, which the debtor
2 controls.
3       We have been in discussion, you know, with the
4 debtors about this situation for some time and just, frankly,
5 just want to get it on the record here that we don't find
6 anything in the adequate protection papers, you know, that
7 satisfies.  We just simply, we can't consent to the use of
8 cash collateral without a lot of development here.
9       THE COURT:  Understood, Mr. Kohanski.  Thank you
10 for those comments.
11       MR. KOHANSKI:  Thank you, Your Honor.
12       THE COURT:  Okay.  Is there anybody else who'd
13 like to be heard at this juncture?
14       Ms. Tobler?
15       MS. TOBLER:  Yes, good morning, Your Honor.  This
16 is Claudia Tobler from Paul Weiss Rifkind Wharton & Garrison.
17       We represent Apollo Overseas Partners and some
18 related funds as guarantors of a secured facility to debtor
19 Redbox Entertainment, LLC.  We find ourselves in a very
20 similar position, as that was just expressed.
21       Your Honor, we have liens and believe we are
22 secured and we have not seen disclosure of the facility in
23 any of the papers, or, frankly, any reference to adequate
24 protection or the typical types of provisions you'd expect in
25 a DIP facility with respect to that.

1                So, we just reserve our rights.  We'll be reaching
2   out to debtors and debtors' counsel and try to work
3   cooperatively with them to resolve our concerns to the extent
4   it's possible to do so.
5                THE COURT:  Thank you, Ms. Tobler.
6                Mr. Merola, good morning.  It's good to see you to
7   see you.
8                MR. MEROLA:  Good morning, Your Honor.  Thank you.
9                Frank Merola of Paul Hastings, on behalf of MidCap
10  Financial Trust.  And not to complete the (indiscernible) of
11  horrors today, but we also have senior liens to a limited
12  pool of collateral, but also in the cap related to that
13  collateral.  And, consequently, any cash collateral solution
14  has got to address the more narrow interests of creditors
15  that have security interests on limited pools of assets or
16  the proceeds thereof.
17               The current pleadings doesn't address any of that
18  and assume that only HPS has an interest in cash collateral.
19  So this has got to be a more universal, global solution and
20  we look forward to working with the debtors and the other
21  parties to reach it.
22               THE COURT:  Okay.  Thank you very much,
23  Mr. Merola.
24               Is there anybody else who would like to be heard?
25               MS. KAMINSKI:  Your Honor?

```
 1                THE COURT:  Ms. Kaminski?
 2                MS. KAMINSKI:  Thank you, Your Honor.
 3                Shanna Kaminski on behalf of Cedar Advance, LLC,
 4   along with my co-counsel, Mary Augustine, who is my local
 5   counsel.
 6                THE COURT:  Yes.
 7                MS. KAMINSKI:  I think there's a pro hac vice
 8   application filed already; if not, it is forthcoming, Your
 9   Honor.
10                We did file an objection prior to the hearing.  My
11   client purchased accounts prepetition.  It appears the debtor
12   is seeking to use those as cash collateral; just another
13   issue that needs to be addressed prior to the cash collateral
14   order being entered in this case.
15                I did propose a resolution this morning by email;
16   I haven't heard back.  Since everyone is talking about their
17   objection, I just felt that I would also add that to the
18   record, as well.
19                Thank you, Your Honor.
20                THE COURT:  Thank you, Ms. Kaminski.
21                Anybody else?
22         (No verbal response)
23                THE COURT:  Okay.  Mr. Cooley, it sounds like you
24   have some work to do this morning.
25                MR. COOLEY:  I do, and some new friends I think
```

1  I'm about to make (indiscernible).

2              THE COURT:  Okay.  Well, I'll tell you what.  Why
3  don't you start off and do that work, and keep in touch with
4  my chambers and we'll work out a time where we can get back
5  together.  I think the best bet is likely to be the morning.
6  I would really be surprised if my 1 o'clock hearing ends up
7  completing before 5:00, so it may be difficult to get back
8  together.  So why don't we at least work with that assumption
9  and we'll try to nail that down.

10             MR. COOLEY:  Very good, Your Honor.
11             We will keep in close contact through the day.
12             THE COURT:  Okay.  Is there anything else that
13 you'd like to address before we go off the record?
14             MR. COOLEY:  I don't believe so, Your Honor.  I've
15 given some thought to whether we should start taking up,
16 procedural motions, but honestly, I think I'd rather -- the
17 procedural motions tend to be so streamlined that I think it
18 would be easier to see if we can get ourselves better
19 presented and then we can, if I'm lucky, come back and just
20 push all through all of it.
21             THE COURT:  I think that makes good sense.
22             Okay.  Well, then that's fine.  We'll work
23 together during the day to schedule the next hearing, and
24 until then, I'll leave the parties to their good work, and
25 with that, we will adjourn.

1               MR. SILBERGLIED:  Your Honor, may I just ask a
2  logistical question --
3               THE COURT:  Please.
4               MR. SILBERGLIED:  -- that everybody is going to
5  think of in 5 minutes?
6               THE COURT:  Yes, Mr. Silberglied?
7               MR. SILBERGLIED:  Assuming that we will be back on
8  at 9:00 a.m. tomorrow, are we all going to be re-registering
9  for a new Zoom or be using this link?
10              THE COURT:  I don't know.
11         (Laughter)
12              THE COURT:  So, that is something that
13 Ms. Gadson -- oh, Ms. Gadson is telling me that, yes,
14 everybody will need to re-register, so please do.  We'll
15 provide you with that information for an agenda and I would
16 ask all the parties to re-register if they'd like to appear
17 again at the next hearing.
18              MR. SILBERGLIED:  Thank you, Your Honor.
19              THE COURT:  Okay.  Thank you for asking.
20              Okay.  Well, with that, we are adjourned.  Thank
21 you.
22              MR. SILBERGLIED:  Thank you, Your Honor.
23         (Proceedings concluded at 10:18 a.m.)
24
25

```
 1                         CERTIFICATION
 2          I certify that the foregoing is a correct
 3  transcript from the electronic sound recording of the
 4  proceedings in the above-entitled matter to the best of my
 5  knowledge and ability.
 6
 7  /s/ William J. Garling                    July 1, 2024
 8  William J. Garling, CET-543
 9  Certified Court Transcriptionist
10  For Reliable
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```