**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC., *et al.*, | Case No. 24-11442 (TMH) |
| Debtors.[1] | Jointly Administered |
| | **Objections due by: July 30, 2024 at 4:00 p.m.** **Hearing Date: August 13, 2024 at 10 a.m. (ET)** |

**MOTION OF CVS PHARMACY, INC. FOR AN ORDER MODIFYING**
**THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 105(a) AND 362(d)**
**TO PERMIT CVS PHARMACY, INC. TO REMOVE AND DISPOSE OF KIOSKS**

CVS Pharmacy, Inc. ("CVS"), by its undersigned counsel, submits this motion (this "Motion") for entry of an order, pursuant to §§ 105(a) and 362(d) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et al.* (the "Bankruptcy Code"), Rules 4001, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 4001-1 and 9013-1, modifying the automatic stay to permit CVS to remove and dispose of thousands of kiosks that were placed on CVS's premises by Redbox Automated Retail, LLC ("Redbox"), one of the debtors in the above-captioned chapter 7 cases (each a "Debtor" and collectively the "Debtors"). In support of this Motion, CVS respectfully states as follows:

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

## JURISDICTION

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).  CVS consents to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.     The legal bases for the relief requested herein are §§ 105(a) and 362(d)(1) of the Bankruptcy Code, Bankruptcy Rules 4001, 9013, and 9014, and Local Rules 4001-1 and 9013-1.  Venue of this Motion is proper in this Court under 28 U.S.C. § 1409(a).

## PRELIMINARY STATEMENT

3.     CVS and Redbox had a contract allowing Redbox to maintain DVD kiosks at various CVS locations in exchange for commissions (the "Kiosks").  The parties' contract expired in 2023, and Redbox became obligated to remove over 2500 Kiosks from CVS's premises.  Redbox refused to remove the Kiosks for over six months prior to filing its bankruptcy petition for relief under chapter 11 of the Bankruptcy Code on June 29, 2024 (the "Petition Date").  Throughout that time, it has generally behaved as though the Kiosks were abandoned, although it did remove a very small number of them once it was threatened with a preliminary injunction in a state court lawsuit.

4.     Redbox's failure to remove the Kiosks has caused and continues to cause CVS substantial and unjustifiable economic harm, as well as damages for loss of use and enjoyment of its premises that are not readily financially compensable.  CVS has locations at which its leases have expired or are about to expire, and the presence of the Kiosks at these locations has

exposed CVS to potential liability to its landlords.  At other locations, CVS has remodeling plans that have been thwarted by the presence of these large unwanted machines.

5.     Redbox abandoned the Kiosks pre-petition through its failure to take any action to collect them over many months.  Now Redbox is in bankruptcy, and its case immediately converted to chapter 7.  As such, there is no more Redbox "business" to operate.  Barring collection of the Kiosks by the Redbox Trustee within seven (7) days of the entry of an order approving this Motion, CVS should be permitted to remove and dispose of the Kiosks to avoid incurring additional, substantial damages.

**BACKGROUND**

A.     **CVS and Redbox Enter into the Kiosk Agreement**

6.     CVS and Redbox were parties to that certain Kiosk Operating Agreement, effective as of January 1, 2016 (as amended, restated, supplemented, or modified from time to time, the "Kiosk Agreement," a true and correct copy of which is attached as **Exhibit 1** to the Declaration of Jacob Trombino (the "Trombino Declaration" or "Trombino Decl."), filed concurrently herewith).

7.     Pursuant to the Kiosk Agreement, Redbox placed approximately 2,500 kiosks through which it operates DVD rentals at various CVS retail locations (the "Kiosks"). (Trombino Decl., ¶ 4.)  In exchange for the right to operate the Kiosks on CVS's premises, Redbox agreed to pay CVS a commission each quarter, among other terms.  (*Id.*, ¶ 5.)  Redbox has not paid commissions since 2022, and presently owes CVS no less than $466,639.00 in unpaid commissions.  (*Id.*)

B.      **The Kiosk Agreement Expired on December 31, 2023 – Over Six Months Before the Petition Date – and Redbox Is Obligated to Remove the Kiosks**

8.      The Kiosk Agreement provided that it would automatically renew "unless either party gives notice of its intent not to renew this contract at least ninety (90) days before expiration of the current term" – namely, "11:59 p.m. (Central time) on December 31, 2023" (the "Expiration Date"). (*Id.*, ¶ 6.)

9.      On September 20, 2023, over 90 days prior to the Expiration Date, CVS gave Redbox timely written notice of its intent not to renew the Kiosk Agreement, and asked Redbox to "reach out to CVS to plan for the smooth surrender of premises as set forth in Section 6.7 of the Kiosk Agreement." (*Id.*, ¶ 7, Exh. 2.)

10.     On December 31, 2023, the Kiosk Agreement expired pursuant to its terms –over six months before the Petition Date.

11.     Section 6.7 of the Kiosk Agreement has procedures to be followed when the Agreement expires.  It provides as follows:

> **Upon the expiration or the termination of this contract, in whole or with respect to any individual Site, [Redbox] will (a) remove the Kiosks, (b) surrender possession of the Premises, and (c) return the Premises in good clean condition, subject to normal and reasonable wear and tear related to the installation, use, operation and removal of the Kiosks.**  At the time [Redbox] remove[s] the Kiosk, [Redbox] will either cut anchor bolts flush with the ground or fill holes with concrete and restore the surface at the time we remove such bolts.  **[Redbox] will consult with [CVS] to mutually agree upon a reasonable schedule to accomplish these tasks, which should not exceed thirty (30) days from expiration or termination.**  Unless [Redbox] terminate[s] this contract for [CVS's] breach, [Redbox] will continue to operate the Kiosks and pay [CVS] commissions upon the same terms and conditions until removal of the Kiosks is complete.  In the event [CVS] elect[s] to close the retail store at a location at which a Kiosk is located, [Redbox] agree[s] to remove such Kiosk in accordance with the terms of this contract.   [CVS] agree[s] to give [Redbox] thirty (30) days prior written notice of such closing so that [Redbox] can remove

the Kiosk.    [Redbox] agree[s] to indemnify [CVS] pursuant to Section 12 if [Redbox] fail[s] to timely remove such Kiosk.

(*Id.*, Exh. 1, § 6.7 (emphasis added)).

12.    Thus, when the Kiosk Agreement was terminated, Redbox became obligated to "remove the Kiosks" and leave the premises in "good clean condition."   Redbox was further obligated to "consult with" CVS "to mutually agree upon a reasonable schedule to" remove the Kiosks, "which should not exceed thirty (30) days from expiration or termination."

13.    Redbox has had no legal right to keep the Kiosks on CVS's premises for over six months.  Yet despite that fact, Redbox has removed only a very limited number of Kiosks from CVS's premises.  (Trombino Decl., ¶ 8.)

### C.    Redbox Fails to Remove Almost Any of the Kiosks from CVS's Premises in Over Six Months, Despite the Urgent Need for Their Removal

14.    In October of 2023, Redbox acknowledged that the Kiosk Agreement would expire on December 31, 2023, but it further told CVS that *it would not remove any Kiosks upon expiration of the Kiosk Agreement or at any point in 2024*.  (Trombino Decl., ¶ 9.)

15.    For months afterwards, Redbox remained nonresponsive to communications from CVS's counsel concerning removal of the Kiosks.  CVS received no response to a letter on this issue sent to Redbox on December 4, 2023.  (*Id.*, ¶ 10, Exh. 3.)  Nor did CVS receive any response to an email sent by counsel on February 7, 2024, seeking from Redbox a "schedule to remove the kiosks from locations that have closed or are closing and being turned over to landlords this month." (*Id.*, ¶ 11, Exh. 4.)

16.    Redbox's nonresponsiveness to its obligations under the Kiosk Agreement has caused and continues to cause significant harm to CVS.  Most acutely, CVS has locations at

which its leases have expired or are about to expire, requiring CVS to vacate the premises, and CVS has or is about to return those premises to its landlords (collectively, the "Expiring Lease Locations").  The presence of the Kiosks at the Expiring Lease Locations has exposed CVS to potential liability to its landlords.  (*Id.*, ¶ 12.)

17.     At other locations where CVS's leases are not about to expire, the presence of Kiosks is preventing CVS from proceeding with remodeling projects, including the conversion of certain CVS locations into HealthHUBs, and is generally interfering with CVS's use and enjoyment of its premises (the "Remodeling Locations").  (*Id.*, ¶ 13.)

**D.      CVS Sues Redbox in Illinois State Court**

18.     On February 21, 2024, CVS filed suit against Redbox in the Circuit Court of Cook County, Illinois (the "State Court"), in a case captioned *CVS Pharmacy, Inc., v. Redbox Automated Retail, Inc.*, Case No. 2024 CH01077 (the "State Court Case").  (*Id.*, ¶ 14.)

19.     The State Court Case asserted claims for (a) specific performance, seeking to have the State Court order Redbox to remove the Kiosks from all CVS locations within 30 days; (b) declaratory judgment, seeking a declaration as to CVS's right to remove the Kiosks itself; and (c) breach of contract for unpaid commissions under the Kiosk Agreement (which presently total at least $466,639.00).  (*Id.*, ¶ 15.)

20.     On February 22, 2024, CVS filed a motion for preliminary injunction in the State Court Case, seeking entry of an order requiring Redbox to remove the Kiosks from locations at which CVS's leases had already expired within ten days. (*Id.*, ¶ 16.)

21.     After CVS's motion for preliminary injunction, by agreement with CVS in order to avoid a court-imposed injunction, Redbox did remove a small number of Kiosks related to

CVS locations that were closing or being remodeled at that time.  However, dozens more CVS locations have subsequently closed, and more are scheduled for closure and remodeling projects this month.   Redbox has taken no action to remove Kiosks from these locations.  Nor has Redbox taken action to remove damaged Kiosks, which have been flagged as damaged by CVS field leaders, from other open locations.  (*Id.*, ¶ 17.)

22.    Redbox sought and received an extension of time to answer CVS's complaint until beyond the Petition Date, and the State Court Case is now stayed.  (*Id.*, ¶ 18.)

**E.    CVS Continues to Be Damaged by the Debtors' Failure to Remove the Kiosks, which Redbox Has Abandoned**

23.    CVS is now saddled with large unwanted machines on the premises of approximately 2500 stores.  At locations where its leases have expired, CVS faces legal risk every day until Redbox removes the machines.  The presence of the Kiosks also interferes with CVS's daily use and enjoyment of its premises and its strategic store transformation projects.

**F.    Redbox Files Chapter 11 and its Case Converts to Chapter 7**

24.    On June 28-29, 2024, the Debtors filed voluntary chapter 11 cases.  On July 10, 2024, after the Debtors' new counsel made disclosures regarding various improper actions by certain insiders of the Debtors, this Court entered an order converting the Debtors' cases to cases under chapter 7 of the Bankruptcy Code [D.I. 120].  George Miller has been appointed as the chapter 7 trustee of the Debtors' estates (the "Trustee") [D.I. 130].

**RELIEF REQUESTED**

25.    By this Motion, CVS respectfully requests that this Court enter an order, substantially in the form attached hereto as Exhibit A, granting CVS relief from the automatic

stay to allow CVS to remove and dispose of the Kiosks that remain on CVS's premises more than seven (7) days after the entry of an order approving this Motion.

## **BASIS FOR RELIEF**

26.     Section 362(d)(1) of the Bankruptcy Code provides that, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay [ ] for cause."   11 U.S.C. § 362(d)(1).   While "cause" is not defined in the Bankruptcy Code, it is "a flexible concept" and courts consider the totality of the circumstances in each particular case.  *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) (citing *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997)); *see also In re Snyder*, 293 F. App'x 140, 142 (3d Cir. 2008) (noting that bankruptcy courts have "wide latitude to balance the equities when granting relief from the automatic stay.").   In examining the totality of the circumstances, courts consider various factors including:

> (1) Whether any great prejudice to either the bankrupt estate or the debtor will result from lifting the automatic stay;
>
> (2) Whether the hardship to the non-bankrupt party by maintenance of the automatic stay considerably outweighs the hardship to the debtor; and
>
> (3) The probability of the creditor prevailing on the merits.

*In re Downey Fin. Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010).

27.     There is overwhelming "cause" to modify the automatic stay to allow CVS to remove and dispose of the Kiosks, should the Trustee fail to do so.  *First*, and most importantly, postponing CVS's right to remove the Kiosks from its premises would severely prejudice CVS and expose it to unacceptable and unjustifiable economic harm.  CVS faces mounting liability

exposure from landlords at the Expiring Lease Locations – where its leases have expired or are expiring imminently. *See, e.g., Downey Fin. Corp.*, 428 B.R. at 609 (hardship factor favored lifting stay where movants otherwise would have to pay defense costs in state and federal court actions). CVS is also suffering financial harm and loss of the use and enjoyment of its premises by the presence of thousands of large unwanted machines at CVS stores including, without limitation, at Remodeling Locations, where the presence of those Kiosks is thwarting CVS's plans for site redevelopment. Moreover, CVS should not be required to continue to "store" approximately 2500 of Redbox's machines across the country without any contractual relationship with Redbox.

28. Furthermore, despite the fact that the indemnification provisions of the long-expired Kiosk Agreement saddle Redbox with broad obligations to indemnify CVS from, without limitation, any and all liabilities, costs, claims and damages relating to the Kiosks and their removal, Redbox has not indemnified CVS for any losses. Give its freefall chapter 7 case, it appears unlikely that Redbox will ever be able to honor its ongoing indemnification obligations at anything close to their full value.

29. *Second*, modifying the automatic stay to allow CVS to remove the Kiosks would not prejudice Redbox or its estate. As the history of the parties' dealings in regard to the Kiosk Agreement that expired in 2023 make clear, Redbox effectively abandoned the Kiosks long ago. It refused to "consult with [CVS] to mutually agree upon a reasonable schedule to accomplish" removal of the Kiosks (Kiosk Agreement, § 6.7), stated that it would not remove the Kiosks, and made no efforts to reclaim them. Only after it was threatened with a preliminary injunction in State Court did it make any effort to remove a very small number of them.

9

30.    By virtue of Redbox's indemnification obligations to CVS, the Kiosks appear to be, at best, a liability to Redbox's estate.  This fact is only accentuated by the conversion of the Debtors' cases to chapter 7.  There is no "business" to operate and Redbox is liquidating.  CVS disposing of the Kiosks only reduces the Redbox estate's exposure to additional, substantial claims.

31.    If the Trustee believes otherwise and wants to utilize the Kiosks for Redbox's estate, he can take steps to remove the Kiosks within the time period requested in this Motion – i.e., within 7 days of an Order approving this Motion.  However, if the Trustee fails to pick up the Kiosks while this Motion is pending or within seven days of an Order approving this Motion – after Redbox failed to pick up the Kiosks during the over-six-month pre-petition period – then the Trustee surely cannot argue that the estate is "prejudiced" by this Court granting the Motion.

32.    *Third*, and finally, the probability of CVS prevailing in having the Kiosks removed from its premises is a certainty.  The Kiosks are only present pursuant to a contract that expired at the end of 2023.  There is no legal basis for the Redbox estate to maintain rights in the Kiosks while leaving them on CVS property for an indefinite period of time and making no attempt to reclaim them.  There is no conceivable scenario in which the Kiosks will be required to remain on CVS's premises.  "Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case."  *SCO Grp., Inc.*, 395 B.R. at 859.  Here, that success is guaranteed, and this "cause" factor is satisfied.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 4001(A)(3)

33.     CVS requests that this Court waive the 14-day stay provided under Bankruptcy Rule 4001(a)(3) so that CVS may remove the Kiosks if the Trustee does not do so itself within the period requested herein.

WHEREFORE, CVS respectfully requests that this Court enter an Order (a) granting CVS relief from the automatic stay to allow CVS to remove and dispose of the Kiosks that remain on CVS's premises more than seven (7) days after the entry of an Order approving this Motion, (b) waiving the 14-day stay pursuant to Bankruptcy Rule 4001(a)(3); and (c) granting such other and further relief as the Court may deem just, equitable, and proper.

Dated: July 16, 2024

COOCH AND TAYLOR, P.A

/s/ R. Grant Dick IV
R. Grant Dick IV (No. 5123)
Kevin D. Levitsky (No. 7228)
The Brandywine Building
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Telephone:   302-984-3800
Facsimile:    302-984-3939
Email:        gdick@coochtaylor.com

- and -

FOLEY & LARDNER LLP
Geoffrey S. Goodman (admitted *pro hac vice*)
Emil P. Khatchatourian
321 N. Clark Street, Suite 3000
Chicago, IL 60654-4762
Telephone: (312) 832-4500
Facsimile: (312) 832-4700
Email:        ggoodman@foley.com
              ekhatchatourian@foley.com

*Attorneys for CVS Pharmacy, Inc.*