**<u>EXHIBIT 1</u>**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>CHICKEN SOUP FOR THE SOUL<br>ENTERTAINMENT INC., *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 24-11442 (MFW)<br><br>(Jointly Administered)<br><br>*Proposed Hearing Date*: August 21, 2024 at 2:00 p.m. (ET)<br>*Proposed Objection Deadline*: August 14, 2024 at 4:00 p.m. (ET) |

## WALMART INC.'S MOTION FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO PERMIT WALMART INC. TO REMOVE AND DISPOSE OF KIOSKS

Walmart Inc. f/k/a Wal-Mart Stores, Inc. ("Walmart"), by and through its respective undersigned counsel, hereby file this motion (the "Motion"), under sections 105 and 362(d) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") requesting that the Court modify the automatic stay to allow Walmart to remove, sell, destroy and/or otherwise dispose of thousands of kiosks that were placed on Walmart's premises by Redbox Automated Retail, LLC ("Redbox"), one of the debtors (each a "Debtor" and collectively the "Debtors") in the above-captioned chapter 7 cases (the "Chapter 7

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

Cases") and grant such other relief that this Court deems just and proper.  In support of the Motion, Walmart respectfully state as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. §157(b) and venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      Pursuant to Local Rule 9013-1(f), Walmart consents to entry of a final judgment or order with respect to the Motion if it is determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      The statutory and other predicates for the relief sought herein are sections 105 and 362(d) of the Bankruptcy Code, Bankruptcy Rule 4001(a)(1), and Local Rule 4001-1.

## PRELIMINARY STATEMENT

4.      Walmart owns and operates retail stores throughout the United States.  Redbox owns and operates DVD rental automated kiosks ("Kiosks") at Walmart stores pursuant to a Master Agreement (defined below).  Prior to the Petition Date (defined below), Walmart terminated the Master Agreement due to Redbox's failure to honor its contractual obligations. Redbox became obligated to remove over 2,500 Kiosks from Walmart's premises.  Despite repeated requests from Walmart, Redbox has failed to remove all remaining Kiosks from Walmart stores and is in violation of Redbox's obligations under the Master Agreement.

5.      Redbox's failure to remove the Kiosks has caused and continues to cause Walmart unjustifiable economic harm, the loss of use and enjoyment of valuable space both inside and

outside Walmart stores, and the risk of potential negative impressions of third-parties who may associate Walmart with Redbox's failure to maintain certain of the Kiosks.

6.      Redbox abandoned the Kiosks pre-petition through its failure to take any action to collect them over many months.  Moreover, the Debtors have converted to Chapter 7 Debtors and no longer have an operating business.  Barring collection of the Kiosks by the Redbox Trustee within seven (7) days of the entry of an order approving this Motion, Walmart should be permitted to remove, sell, destroy and/or otherwise dispose of as it sees fit the Kiosks to avoid incurring additional damages.

## GENERAL BACKGROUND

7.      On June 29, 2024 (the "Petition Date"), the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

8.      In the Debtors' voluntary petitions, Walmart was listed as having an unsecured claim against the Debtors' estate in the amount of $4,143,986.  *See* Docket No. 1.

9.      On July 10, 2024, the Court entered an order converting the Debtors' cases to cases under chapter 7 of the Bankruptcy Code. *See* Docket No. 120.  On July 11, 2024, the chapter 7 trustee of the Debtors' estates was appointed (the "Trustee").  *See* Docket No. 130.

## RELEVANT BACKGROUND

10.      On September 1, 2017, Walmart and Redbox entered into an agreement titled Master Kiosk Agreement for Redbox Kiosks in the United States as well as the Kiosk Order. Walmart and Redbox subsequently executed amendments to the Master Kiosk Agreement for Redbox Kiosks in the United States, including Amendment No. 1 to Master Kiosk Agreement for Redbox Kiosks in the United States, along with an updated Kiosk Order, effective September 1, 2022, and Amendment No. 2 to Master Kiosk Agreement for Redbox Kiosks in the United States and updated Kiosk Order, effective July 1, 2023.  The Master Kiosk Agreement for Redbox Kiosks

3

in the United States, Amendment No. 1, Amendment No. 2, and all associated Kiosk Orders will be referred to collectively as the "<u>Master Agreement</u>" as amended, restated, supplemented, or modified from time to time.

11.    A true and correct copy of the Master Agreement is attached as <u>Exhibit 1</u> to the *Declaration of Anne Johnson in Support of the Motion of Walmart Inc.'s Motion for an Order Modifying the Automatic Stay to Permit Walmart Inc. to Remove and Dispose of Inventory* (the "<u>Johnson Declaration</u>" or "<u>Johnson Decl.</u>") attached hereto as **Exhibit B**.    Because of confidentiality provisions in the Master Agreement, Walmart has filed under seal a copy of the Master Agreement.

12.    By September 2023, Redbox had approximately 2,500 Kiosks located at Walmart stores. (Johnson Decl., ¶ 3).

13.    █████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████

14.    █████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████

15.    On November 17, 2023, in accordance with Section 10.2 of the Master Agreement, Walmart provided written notice of Redbox's material breaches under the Master Agreement and provided Redbox the opportunity to cure its material breaches within thirty days.  (Johnson Decl., ¶ 9).  On January 25, 2024, Walmart sent Redbox a second written notice letter.  (Johnson Decl., ¶ 11). On February 21, 2024, Walmart sent Redbox a third written notice letter. *Id*.

16.    On March 20, 2024, Walmart sent Redbox written notice of termination of the Master Agreement ("Termination Notice Letter").   (Johnson Decl., ¶ 12).  As Walmart set out in the Termination Notice Letter, the Master Agreement terminated effective April 5, 2024.

17.    ████████████████████████████████████████

███████████████████████████████████████████████████████

█████████

18.    ████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████

19.    ████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████

---

2  Throughout this Motion, the parties' agreements including the Master Agreement, Amendment No. 1, Amendment No. 2, the Kiosk Order as well as any and all exhibits to Redbox and Walmart's agreements are sometimes collectively referred to as the "Master Agreement."

3  ███████████████████████████████████████████████████████

████████████████████████

11685692

20.     Thus, when the Master Agreement was terminated, Redbox became obligated to remove the Kiosks. Even prior to the Termination Notice Letter, Redbox was obligated to commence the removal of all Kiosks from Walmart Stores.

21.     

22.     On April 9, 2024, Walmart sent Redbox a formal demand that Redbox remove its Kiosks from all Walmart stores ("First Removal Letter"). (Johnson Decl., ¶ 15).  In its First Removal Letter, Walmart set out Redbox's obligations to remove all remaining Kiosks from Walmart stores and demanded that Redbox remove those Kiosks by April 25, 2024.  *Id*.  On April 26, 2024, Walmart sent Redbox a second formal demand that Redbox remove all remaining Kiosks from Walmart stores ("Second Removal Letter").  *Id*.  In its Second Removal Letter, Walmart again set out Redbox's obligations to remove all remaining Kiosks from Walmart stores and allowed Redbox until May 6, 2024 to remove those Kiosks from Walmart stores.  *Id*.

23.     Therefore, since the termination, Redbox has no legal right to keep the Kiosks on Walmart's premises.  Despite Walmart's repeated notices and demands, Redbox has failed to cure all of its material breaches of the Master Agreement and Kiosk Order.

## **RELIEF REQUESTED**

24.     Walmart requests an order, substantially in the form attached hereto as **Exhibit A**, granting Walmart relief from the automatic stay to allow Walmart to remove, sell, destroy and/or otherwise dispose of as it sees fit the Kiosks that remain on Walmart's premises more than seven

(7) days after the entry of an order approving this Motion and waiving the 14-day stay pursuant to Bankruptcy Rule 4001(a)(3).

## BASIS FOR RELIEF

25.    Section 362(d)(1) of the Bankruptcy Code provides that, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay [ ] for cause." 11 U.S.C. § 362 (d)(1).  Cause is not defined in the Bankruptcy Code, yet the term "is a flexible concept and courts often . . . examin[e] the totality of the circumstances to determine whether sufficient cause exists to lift the stay."  *In re SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) (citing *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997)).  Courts often view the term "cause" to be a "broad and flexible concept." *Id.*  at 130; *see also In re Snyder*, 293 F. App'x 140, 142 (3d Cir. 2008) (noting that bankruptcy courts have "wide latitude to balance the equities when granting relief from the automatic stay.").  In examining the totality of the circumstances, courts consider various factors including:

> (1) whether any great prejudice to either the bankrupt estate or the debtor will result from lifting the automatic stay;
>
> (2) whether the hardship to the non-bankrupt party by maintenance of the automatic stay considerably outweighs the hardship to the debtor; and
>
> (3) the probability of the creditor prevailing on the merits.

*See, e.g.,  In re Downey Fin. Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010).  There is ample cause to modify and/or terminate the automatic stay to allow Walmart to remove and dispose of the Kiosks, should the Trustee fail to do so.  *First*, and most importantly, postponing Walmart's right to remove the Kiosks from its premises would severely prejudice Walmart and expose it to unacceptable and unjustifiable economic harm.  Walmart has continued to involuntarily surrender

space to Redbox without receiving any economic compensation. Further, Redbox's presence on Walmart premises may cause third-parties to associate Walmart with Redbox's failures (including, but not limited to, Redbox's failure to maintain the Kiosks). Further, third-parties may look to Walmart for resolution if the Kiosks do not work properly. Accordingly, Walmart would be materially harmed by maintaining the current state of limbo – allowing the Kiosks to remain on its premises while Redbox reaps the benefits of avoiding the cost of removing the Kiosks from the premises.

26.    However, after months of attempted discussion (both pre- and post-termination), it has become abundantly clear that the Debtors do not have any intention of removing the Kiosks on their own. Walmart does not have a contractual obligation to retain any Kiosks on its premises. Moreover, Redbox has not paid amounts that are already due and payable.

27.    *Second*, modifying and/or terminating the automatic stay to allow Walmart to remove, sell, destroy and/or otherwise dispose of as it sees fit the Kiosks would not prejudice the Debtors or their estates. Walmart terminated the Master Agreement four months ago and Redbox's failure to remove the Kiosks shows that Redbox effectively abandoned the Kiosks long ago. There is no "business" to operate and Redbox is liquidating.

28.    Further, disposing of the Kiosks only reduces the Redbox estate's exposure to additional, substantial claims. If the Trustee believes otherwise and wants to utilize the Kiosks for Redbox's estate, he can take steps to remove the Kiosks within the time period requested in this Motion. However, if the Trustee fails to pick up the Kiosks while this Motion is pending or within seven days of an Order approving this Motion then the Trustee surely cannot argue that the estate is "prejudiced" by this Court granting the Motion.

29.    If the Motion is granted, and Walmart is allowed to remove, sell, destroy and/or otherwise dispose of the Kiosks, the Debtors' estates would be relieved of the ongoing burden to

do so under the terms of the Master Agreement.  Further, the Debtors' estates would be relieved from any liability for any potential administrative claim accruing post-petition for the unpaid Location Allowance which serves as rent for the Kiosks.

30.     *Third*, and finally, the probability of Walmart prevailing in having the Kiosks removed from its premises is high.  The Kiosks are only present pursuant to the Master Agreement, which Walmart terminated in April of 2024.   There is no legal basis for the Redbox estate to maintain rights in the Kiosks while leaving them on Walmart property for an indefinite period of time, with no attempt to reclaim them.  Walmart has given the Debtors ample time to collect their Kiosks, but to date, Debtors have refused to do so, leaving Walmart to bear the burden of removal and/or disposal.  While Walmart has been patient with the Debtors, Walmart is no longer willing to yield space to the Kiosks.

31.     Walmart should not be legally required to allow the Kiosks to remain on its premises while fees and expenses remain unpaid and the Agreement is terminated. "Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *SCO Grp., Inc.*, 395 B.R. at 859. Here, there are sufficient grounds for a likelihood of success.

32.     Accordingly, Walmart contends that there is ample cause to modify and/or terminate the stay to allow Walmart to remove the Kiosks from Walmart's premises.

## WAIVER OF THE 14-DAY STAY

33.     Walmart respectfully requests that the Court waive the 14-day stay requirement pursuant to Bankruptcy Rule 4001(a)(3) so that Walmart may remove the Kiosks if the Trustee does not do so itself within the period requested herein. Walmart has been, in good faith, discussing and trying to reach a resolution with the Debtors and now the Trustee.  During such time, Walmart has continued to have the Kiosks utilize space on its premises and has been patiently waiting for

11685692

the Debtors and/or Trustee to remove them.  To date, neither the Debtors nor the Trustee has removed the Kiosks.

## NOTICE

34.     Notice of this Motion has been provided to the following parties and/or their respective counsel, as applicable: (a) the Debtors; (b) the chapter 7 Trustee; (c) the Office of the United States Trustee for the District of Delaware; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002.

**WHEREFORE**, for the foregoing reasons, Walmart requests an order, substantially in the form attached hereto as **Exhibit A**, (a) granting Walmart relief from the automatic stay to allow Walmart to remove, sell, destroy and/or otherwise dispose of the Kiosks that remain on Walmart's premises more than seven (7) days after the entry of an Order approving this Motion, (b) waiving the 14-day stay pursuant to Bankruptcy Rule 4001(a)(3); and (c) granting such other and further relief as the Court may deem just, equitable, and proper

10

Dated: August 2, 2024          Respectfully submitted,

_/s/ Maria Kotsiras_
Jeremy W. Ryan (No. 4057)
R. Stephen McNeill (No. 5210)
Maria Kotsiras (No. 6840)
**POTTER ANDERSON & CORROON LLP**
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone:   (302) 984-6000
Facsimile:    (302) 658-1192
Email: jryan@potteranderson.com
           rmcneill@potteranderson.com
           mkotsiras@potteranderson.com

*Counsel for Walmart Inc.*

## **EXHIBIT A**

**Proposed Order**

11685692

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| CHICKEN SOUP FOR THE SOUL ENTERTAINMENT INC., *et al.*,[1] | Case No. 24-11442 (MFW) |
| Debtors. | (Jointly Administered) |
| | Re Docket No. ___ |

**ORDER MODIFYING THE AUTOMATIC STAY
TO PERMIT WALMART INC. TO REMOVE AND DISPOSE OF KIOSKS**

Upon *Walmart Inc.'s Motion for an Order Modifying the Automatic Stay to Permit Walmart Inc. to Remove and Dispose of Kiosks* (the "Motion")[2], filed by Walmart Inc. ("Walmart"), for entry of an order (this "Order") (a) granting Walmart relief from the automatic stay to allow Walmart to remove and dispose of the Kiosks that remain on Walmart's premises more than seven days after the entry of this Order, and (b) waiving the 14-day stay pursuant to Bankruptcy Rule 4001(a)(3); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. § 1409; and this Court having found that Walmart's notice of the Motion was appropriate under the

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

circumstances and no other notice need be provided; and this Court having determined that the

legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and

upon all of the proceedings had before the Court and after due deliberation and sufficient cause

appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      Pursuant to 11 U.S.C. § 362(d)(1), the Court finds there is sufficient cause to

modify the automatic stay to allow Walmart to remove, sell, destroy and/or otherwise dispose of

as it sees fit all Kiosks that remain in or on Walmart's premises (whether such premises is owned,

leased, or otherwise occupied by Walmart) more than seven days after the entry of this Order.

Accordingly, Walmart is hereby authorized and permitted to remove, destroy, sell and retain the

proceeds of any disposition, or otherwise dispose of the Kiosks without liability to Debtors or any

third party.

3.      The 14-day stay under Bankruptcy Rule 4001(a)(3) is waived.

4.      Walmart is authorized to take all actions necessary to effectuate the relief granted

pursuant to this Order in accordance with the Motion.

5.      Any interest in the Kiosks held by any creditor, third party (including any person

or entity claiming a security interest), the Trustee, or the Debtors is extinguished upon the entry of

this Order.

6.      Notice of the Motion as provided therein shall be deemed good and sufficient notice

of such Motion, and the requirements of the Bankruptcy Rules and Local Rules are satisfied by

such notice.

14

7.    The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**EXHIBIT B**

**Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| CHICKEN SOUP FOR THE SOUL ENTERTAINMENT INC., *et al.*,[1] | Case No. 24-11442 (MFW) |
| Debtors. | (Jointly Administered) |

### DECLARATION OF ANNE JOHNSON IN SUPPORT WALMART INC.'S
### MOTION FOR AN ORDER MODIFYING THE AUTOMATIC STAY
### TO PERMIT WALMART INC. TO REMOVE AND DISPOSE OF KIOSKS

I, Anne Johnson, hereby declare under penalty of perjury and pursuant to 28 U.S.C. § 1746

that the following is true and correct to the best of my knowledge and belief:

1.   I am the Senior Director of Everyday Services of Walmart Inc. ("Walmart"), which

owns and operates retail stores throughout the United States.   I submit this declaration (the

"Declaration") in support of the *Walmart Inc.'s Motion for an Order Modifying the Automatic*

*Stay to Permit Walmart Inc. to Remove and Dispose of Kiosks* (the "Motion").[2]   To the best of

my knowledge, understanding, and belief, the facts stated in this Declaration are true and

accurate.   I am authorized to submit this Declaration on behalf of Walmart.

---

[1]   The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

2.      On September 1, 2017, Walmart and Redbox Automated Retail, LLC ("Redbox") entered into an agreement titled Master Agreement for Redbox Kiosks as well as the Kiosk Order (collectively the "Master Agreement" as amended, restated, supplemented, or modified from time to time). A true and correct copy of which is attached hereto as **Exhibit 1**.

3.      By September 2023, Redbox held approximately 2,500 kiosks at Walmart retail locations through which it operates DVD rentals.

4.      ██████████████████████████████████████████
████████████████████████████████████████████████████
██████████████  ██████  ████████████████████████████
██████████████████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████

5.      ██████████████████████████████████████████
████████████████████████████████████████████████████

6.      On September 1, 2022, the parties entered into an amendment to the Master Agreement ("Amendment No. 1").  Attached hereto is a copy of Amendment No. 1 as **Exhibit 2**. Because of confidentiality provisions in the Master Agreement, Walmart has filed under seal a copy of Amendment No. 1.

7.      On July 24, 2023, the parties entered into a second amended agreement ("Amendment No. 2"). [4]   Attached hereto is a true and correct copy of Amendment No. 2 as **Exhibit 3.**  Because of confidentiality provisions in the Master Agreement, Walmart has filed under seal a copy of Amendment No. 2.

8.      Along with Amendment No. 2, the parties also agreed to Kiosk Order ("Kiosk Order"), which is attached to Amendment No. 2 as "Exhibit A."  *See* Ex. 3 at 3-5.

9.      ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

10.     ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

11.     On November 17, 2023, in accordance with Section 10.2 of the Master Agreement, Walmart provided written notice of Redbox's material breaches under the Master Agreement and provided Redbox the opportunity to cure its material breaches within thirty days. On January 25, 2024, Walmart sent Redbox a second written notice letter.  On February 21, 2024, Walmart sent Redbox a third written notice letter.

---

[4]  Throughout this Declaration, the parties' agreements including the Master Agreement, Amendment No. 1, Amendment No. 2, the Kiosk Order as well as any and all exhibits to the parties' agreements are sometimes collectively referred to as the "Master Agreement."

11685692

12.    On March 20, 2024, Walmart sent Redbox written notice of termination of the Master Agreement ("Termination Notice Letter").  Attached hereto as **Exhibit 4** is the Termination Notice Letter.  As Walmart set out in the Termination Notice Letter, the Master Agreement terminated effective April 5, 2024.  Because of confidentiality provisions in the Master Agreement, Walmart has filed under seal a copy of the Termination Notice Letter.

13.    █████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████

14.    Thus, when the Master Agreement was terminated, Redbox became obligated to remove the Kiosks.

15.    On April 9, 2024, Walmart sent Redbox a formal demand that Redbox remove its Kiosks from all Walmart stores ("First Removal Letter"). Attached hereto as **Exhibit 5** is the First Removal Letter.  Because of confidentiality provisions in the Master Agreement, Walmart has filed under seal a copy of the First Removal Letter.  In its First Removal Letter, Walmart set out Redbox's obligations to remove all remaining Kiosks from Walmart stores and demanded that Redbox remove those Kiosks by April 25, 2024.  On April 26, 2024, Walmart sent Redbox a second formal demand that Redbox remove all remaining Kiosks from Walmart stores ("Second Removal Letter").  Attached hereto as **Exhibit 6** is the Second Removal Letter.  Because of confidentiality provisions in the Master Agreement, Walmart has filed under seal a copy of the Second Removal Letter.  In its Second Removal Letter, Walmart again set out Redbox's

obligations to remove all remaining Kiosks from Walmart stores and allowed Redbox until May 6, 2024 to remove those Kiosks from Walmart stores.   Despite Walmart's demands, Redbox has failed to remove all remaining Kiosks from Walmart's premises.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: August 2, 2024                    By: */s/ Anne Johnson*_____
                                         Anne Johnson
                                         Kiosk Manager
                                         Walmart, Inc.

21

**<u>EXHIBIT 1</u>**

**Master Agreement**

**(Filed Under Seal)**

**<u>EXHIBIT 2</u>**

**Amendment No. 1**

**(Filed Under Seal)**

**<u>EXHIBIT 3</u>**

**Amendment No. 2**

**(Filed Under Seal)**

# EXHIBIT 4

**Termination Notice Letter**

**(Filed Under Seal)**

## **EXHIBIT 5**

**First Removal Letter**

**(Filed Under Seal)**

## **EXHIBIT 6**

**Second Removal Letter**

**(Filed Under Seal)**