# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CHICKEN SOUP FOR THE SOUL ENTERTAINMENT INC., *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 24-11442 (MFW)<br><br>(Jointly Administered)<br><br>**Hearing Date: September 4, 2024, at 2:00 p.m. (ET)**<br>**Objection Deadline: August 28, 2024 at 4:00 p.m. (ET)** |

## HPS INVESTMENT PARTNERS, LLC'S MOTION
## FOR RELIEF FROM THE AUTOMATIC STAY

HPS Investment Partners, LLC (the "<u>Agent</u>"), in its capacity as the administrative and collateral agent under that certain Amended and Restated Credit Agreement, dated as of August 11, 2022 (as amended, amended and restated, supplemented, or otherwise modified from time to time, the "<u>Credit Agreement</u>," attached hereto as **Exhibit C**) and that certain Amended and Restated Collateral Agreement, dated as of August 11, 2022, and Supplement to the Amended and Restated Collateral Agreement, dated as of July 26, 2023 (collectively, as amended, amended and restated, supplemented, or otherwise modified from time to time, the "<u>Collateral Agreement</u>")

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment, Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

attached hereto as **Exhibit D**, among Debtor Chicken Soup for the Soul Entertainment, Inc. ("CSSE" and, together with its Debtor affiliates, the "Debtors") and Redbox Automated Retail, LLC, as borrowers, the HPS-managed lender parties thereto[2] (collectively, the "Prepetition Lenders" and, together with the Agent, the "Prepetition Secured Parties"), by and through its undersigned counsel, respectfully submits this motion (this "Motion"), for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to §§ 105(a) and 362(d) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 4001-1 and 9013-1 of the Local Rules for the United States Bankruptcy Court District of Delaware (the "Local Rules"), seeking to lift the automatic stay to allow the Agent to enforce its rights under the Credit Agreement and Collateral Agreement. In support of this Motion, the Agent submits the *Declaration of Alexey Pazukha in Support of HPS Partners, LLC's Motion for Relief from the Automatic Stay* (the "Pazukha Decl."), attached hereto as **Exhibit B**, and respectfully represents the following:

## PRELIMINARY STATEMENT

1. The objective of these chapter 7 cases is to maximize the value of the Debtors' collateral. Almost six weeks after conversion of these cases, however, it has become clear that little progress has or can be made in liquidating the estate assets. Given the lack of funds to support that effort and the state of the Debtors' operations, it is the Agent's understanding that the trustee

---

[2] The HPS-managed-lender parties include: Aiguilles Rouges Sector B Investment Fund, L.P., American United Life Insurance Company, Brickyard Direct Holdings, L.P., Cactus Direct Holdings, L.P., Cactus Direct Lending, L.P., Core Senior Lending Fund (A-A), L.P., Core Senior Lending Fund, L.P., Core Senior Master Fund (PB), L.P., CSL Fund (PB) Holdings C, L.P. CSL Fund (PB) Holdings, B, L.P., CSL Fund (PB) holdings, L.P., and Falcon Credit Fund, L.P.

in these cases (the "Trustee") has been unable to take the steps necessary to achieve this objective and is unlikely to be able to do so.

2. The unfortunate reality is that no party—including the Prepetition Secured Parties—is willing to infuse any material amount of cash into these chapter 7 cases. The reason for this should be obvious: the risk of any return or benefit upon such funding is exceedingly unlikely. It should come as no surprise that the Prepetition Secured Parties are unwilling to provide a material amount of additional funding to the estates, *in addition to* the substantial risk that the Prepetition Secured Parties have already taken by providing the *only* DIP funding in these cases.[3]

3. Yet, the value of the collateral securing the Debtors' obligations to the Prepetition Lenders continues to diminish as each day progresses. Time is of the essence. Thus, the Agent seeks to lift the automatic stay now, such that it may be permitted to maximize the value of its collateral.

4. Under the Bankruptcy Code, relief from the automatic stay *must* be granted "for cause, including the lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1). Given that the Debtors are not operating, there is no conceivable argument for adequate protection of the Prepetition Secured Parties' interests in their collateral. Stay relief may also be granted where "the debtor does not have any equity in such property and such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2). The Debtors cannot possibly have any equity value in collateral where, as here, they cannot even secure funding in a chapter 7 liquidation. And since

---

[3] The DIP funding was extended pursuant to the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 85] (the "DIP Order," and the lenders thereto, the "DIP Lenders").

reorganization as a going concern is not a possibility in these chapter 7 cases, there is no sense in which the collateral is *necessary* to a *reorganization*.

5. Accordingly, the Agent seeks entry of the Proposed Order, lifting or otherwise modifying the automatic stay imposed by section 362 of the Bankruptcy Code, to allow the Agent to exercise and enforce any and all of its state and federal law rights and remedies with respect to the Credit Agreement and Collateral Agreement.

## JURISDICTION AND VENUE

6. This is a core proceeding pursuant 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013-1(f), the Agent consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

8. The legal bases for the relief requested herein are §§ 105(a) and 362(d) of the Bankruptcy Code, Bankruptcy Rules 4001, 9013, and 9014, and Local Rules 4001-1 and 9013-1.

## RELIEF REQUESTED

9. By this Motion, the Agent seeks entry of the Proposed Order pursuant to section 362(d) of the Bankruptcy Code, (a) granting relief from the automatic stay imposed by section 362(a) of the Bankruptcy Code so that the Agent may exercise any and all of its state and federal law rights and remedies with respect to the Credit Agreement and the Collateral Agreement, including, but not limited to, the foreclosure of the Pledged Collateral; (b) waiving the 14-day stay pursuant to Bankruptcy Rule 4001(a)(3); and (c) granting such other and further relief as the Court may deem just and proper under the circumstances.

**BACKGROUND**

**A. The Credit Agreement and the Collateral Agreement**

10. On August 11, 2022, the Debtors entered into the Credit Agreement, which provided the Debtors with access to an $80 million revolving credit facility and a $325 million term loan facility. *See* Pazukha Decl. ¶ 4.

11. As part of the transaction, the Prepetition Secured Parties' obligations to extend credit under the Credit Agreement were conditioned upon execution and delivery of the corresponding Collateral Agreement. *See* Credit Agreement § 3.17; Collateral Agreement. Pursuant to the Collateral Agreement, certain collateral or security interests have been pledged to the Agent for the benefit of the Prepetition Lenders (the "Pledged Collateral"). *See, e.g.*, Collateral Agreement Art. II (Pledge of Securities, including Pledged Stock, Pledged Debt, and Proceeds thereof, each as defined therein); Art. III (Security Interest in Other Personal Property, including Article 9 Collateral and Intellectual Property Collateral, each as defined therein); Schedule II; Schedule III; *see also* Pazukha Decl. ¶ 5. The Pledged Collateral accounts for substantially all of the Debtors' assets, including, among other things, the Debtors' intellectual property, accounts and accounts-receivables, and books and records. *See* Pazukha Decl. ¶ 6.

12. The relevant security interests in the Pledged Collateral have been perfected. *See* Pazukha Decl. ¶ 7. The Agent filed UCC financing statements with the relevant states, notifying of the Agent's security interests the Debtors' assets. *See id.*; Compiled UCC Financing Statements, attached hereto as **Exhibit E**. In addition, the Agent properly filed and recorded notices of the grant of security interests relating to the Debtors' intellectual property with the United States Patent and Trademark Office and the United State Copyright Office, in the form provided under the Collateral Agreement. *See* Pazukha Decl. ¶ 7; Compiled Form Notices of Grant of Security

Interests, attached hereto as **Exhibit F**; Compiled Certificates and Notices of Recordation, attached hereto as **Exhibit G**. The parties also executed deposit account control agreements to perfect the Prepetition Secured Parties' security interests over the Debtors' bank accounts. *See* Pazukha Decl. ¶ 7; Compiled Deposit Account Control Agreements, attached hereto as **Exhibit H**. The Debtors have affirmed the validity, perfection, and priority of the liens granted pursuant to the Credit Agreement and Collateral Agreement, as well as the amount and validity of the obligations thereunder. *See* DIP Order ¶ G.

13. The Debtors have been in continuing default under the Credit Agreement, which the Agent accelerated prepetition. *See* Pazukha Decl. ¶ 8; Acceleration Notice, attached hereto as **Exhibit I**. Moreover, on April 29, 2024, the Debtors entered into a forbearance agreement with the Prepetition Lenders, whereby the Debtors stipulated to nine on-going, expected, or potential events of default under the Credit Agreement. *See* CSSE, Current Report (Form 8-K) Exhibit 10.1, Forbearance Agreement at 12-22 (May 3, 2024).

### B. These Chapter 7 Cases

14. On June 29, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

15. In light of the dire circumstances detailed at the outset of these cases, the DIP Lenders provided approximately $3.5 million in DIP financing to the Debtors to ensure payment of employee payroll. Under the DIP Order, the Agent, for the benefit of the DIP Lenders, received (i) superpriority administrative expense claims and (ii) valid, binding, continuing, fully perfected, enforceable and non-avoidable security interests on the Debtors' unencumbered property and, on a priming basis, the Pledged Collateral. *See* DIP Order ¶¶ 4, 5. As adequate protection for the diminution in value of the Prepetition Lenders interests in the Pledged Collateral, the Agent

received (i) valid, perfected replacement security interests in and lien on the DIP Collateral (as defined in the DIP Order) and (ii) an allowed superpriority administrative expense claim. *See id.* ¶ 11.

16. On July 10, 2024, the Court entered an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code (these "Chapter 7 Cases"). *See* Docket. No. 120. On July 11, 2024, the Trustee was appointed. *See* Docket. No. 130 (appointing George L. Miller as Trustee).

### C. Agent's Engagement with the Trustee

17. Since the Trustee's appointment, the Agent has made extensive efforts to engage with the Trustee to determine whether the Pledged Collateral's value can be maximized in these Chapter 7 Cases.[4] *See* Pazukha Decl. ¶ 9. It has become increasingly clear, however, that the amount of funds needed to liquidate the estates' assets likely cannot be obtained due to the substantial cessation of the Debtors' operations. *See id*.

18. On information and belief, no such funding is available from any source. *See* Pazukha Decl. ¶ 10. And based on the status of these Chapter 7 Cases, the Prepetition Secured Parties are similarly unwilling to provide such funding. *See* Pazukha Decl. ¶ 10.

19. The Debtors owe the Prepetition Lenders no less than $500 million as of the Petition Date, plus accrued and unpaid interest thereon and any fees, premium, expenses and disbursements (including attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees), costs, charges, indemnities, and other obligations incurred under the Credit Agreement. *See* Pazukha Decl. ¶ 11.

---

[4] On July 31, 2024, the Prepetition Secured Parties funded $200,000 to the Trustee for the sole purpose of paying outstanding D&O insurance premiums owed by the Debtors. In connection with such funding, the Trustee agreed that the funding constituted an allowed administrative expense claim for all purposes in the Debtors' bankruptcy cases. *See* Pazukha Decl. ¶ 9, n. 3.

20. The value of the Pledged Collateral is unclear (on account of the egregious facts detailed throughout the Debtors' chapter 11 cases) but unquestionably does not exceed the value of the debt remaining under the Credit Agreement. *See* Pazukha Decl. ¶ 13. For example, in their last public filing before the Petition Date, the Debtors reported suffering net losses of $636.6 million in 2023 and $52.9 million in Q1 2024. As of the Petition Date, the Debtors had a book value *deficit of over $550 million*. *See* CSSE, Quarterly Report, (Form 10-Q) at 3, 6 (May 20, 2024). The value of the Debtors' assets continues to deteriorate on account of their ceased operations.

## BASIS FOR RELIEF REQUESTED

21. It is well settled that "the [automatic] stay is not meant to be indefinite or absolute, and in appropriate instances, relief may be granted." *Matter of Rexene Prod. Co.*, 141 B.R. 574, 576 (Bankr. Del. 1992); *see also Wedgewood Inv. Fund, Ltd. v. Wedgewood Realty Grp., Ltd. (In re Wedgewood)*, 878 F.2d 693, 697 (3d Cir.1989).

22. Bankruptcy Code section 362(d) governs relief from the automatic stay and is intended to balance the interests of the debtor and its secured creditors. *See Nantucket Inv. II v. Cal. Fed. Bank (In re Indian Palms Assocs.)*, 61 F.3d 197, 206 (3d Cir. 1995). Accordingly, section 362(d) of the Bankruptcy Code provides two grounds for relief, in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; (2) with respect to a stay of an act against property under subsection (a) of this section, if—(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization . . .

11 U.S.C. § 362(d).

23. Relief under section 362(d) is mandatory when the factors for relief are met. *See* 11 U.S.C. § 362(d)(1) ("the court **shall** grant relief from the stay") (emphasis added); *In re Indian Palms Assocs.*, 61 F.3d at 208 ("[f]urthermore, we note that the language of section 362(d)(2) is mandatory, when both factors necessary for relief under section 362(d)(2) are met").

    **A. Cause Exists to Lift the Automatic Stay.**

24. Bankruptcy Code section 362(d)(1) specifically references lack of adequate protection as a basis for establishing cause to lift the automatic stay. Because there is no adequate protection here, the Court's analysis need go no further, and the stay should be lifted. In the alternative, a totality-of-the-circumstances analysis yields an identical conclusion.

    i. *The Prepetition Secured Parties Are Not Adequately Protected.*

25. Notwithstanding that "cause" is not defined in the Bankruptcy Code, section 362(d)(1) specifically identifies lack of adequate protection as *cause* for lifting the automatic stay. The inquiry should end here. Although the value of the Pledged Collateral is unclear at this time (and likely will continue to be unclear unless and until the assets are sold), the Prepetition Secured Parties are unquestionably *not* adequately protected: the outstanding obligations of the Debtors under the Credit Agreement and the DIP facility far exceed any possible value in the Pledged Collateral. Based on the Debtors' publicly reported figures alone, it is unfathomable that a distressed sale of the Debtors' current assets could exceed the outstanding debt of the Prepetition Lenders. Indeed, the best evidence of this fact was the unwillingness of any party to provide additional chapter 11 DIP financing, thereby forcing the conversion of these cases under chapter 7 of the Bankruptcy Code.[5]

---

[5] Notably, on the Petition Date, the chapter 11 Debtors proposed a priming DIP financing. The Debtors did not prosecute that request because they were unable to establish the necessary adequate protection showing as to the Prepetition Secured Parties and other secured creditors.

26. Although the Prepetition Secured Parties received replacement liens and superpriority administrative claims as adequate protection under the DIP Order, such adequate protection is worthless in the face of this chapter 7 liquidation. Therefore, the Agent is entitled to relief from the automatic stay to pursue its legal remedies vis-à-vis the Pledged Collateral.

      ii.    ***The Totality of the Circumstances Test Favors Lifting the Automatic Stay.***

27. Lifting the automatic stay is also warranted under an analysis of the "totality of the circumstances." Courts have reasoned that "[c]ause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re Tribune Co.*, 418 B.R. 116, 126 (Bankr. D. Del. 2009) (quoting *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007)); *In re Downey Fin. Corp.*, 428 B.R. 595, 608 (Bankr. D. Del. 2010); *see also In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997) (citation omitted) ("Section 362(d)(1) does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case."); *In re Fairchild Corp.*, 2009 Bankr. LEXIS 3815, 23 (Bankr. D. Del. Dec. 1, 2009) (citing *Bandolino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997)) (stating that courts must determine "what constitutes cause based on the totality of the circumstances in each particular case"). To this end, the Bankruptcy Court is given "wide latitude" as it relates to relief from the automatic stay. *In re Myers*, 491 F.3d 120, 124 (3d Cir. 2007).

28. When examining the totality of the circumstances, courts consider various factors including:

    i.    whether any great prejudice to either the bankrupt estate or the debtor will result from lifting the automatic stay;

    ii.    whether the hardship to the non-bankrupt party by maintenance of the automatic stay considerably outweighs the hardship to the debtor; and

    iii.    the probability of the creditor prevailing on the merits.

*In re Downey Fin. Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010). The third prong is satisfied by "even a slight probability of success on the merits." *In re Continental Airlines, Inc.*, 152 B.R. 420, 426 (D. Del. 1993).

29. *First*, there is no "great prejudice" to either the Debtors or their estates as the Agent is simply seeking authority to take control of a process that the Trustee has been unable to commence. Indeed, the only prejudice is to the Prepetition Secured Parties, as the value of the Pledged Collateral continues to diminish. *See* Pazukha Decl. ¶ 13. For example: (i) a substantial portion of the Debtors' film library continues to go unmonetized (and the value of these assets will likely deteriorate the longer they continue go unmonetized), as certain assets are either (a) not being licensed, or (b) are licensed, but the licenses or sublicenses are not being renewed or monitored for payment; (ii) partners and vendors of the Debtors' digital platforms are suspending their services, and no employees remain to provide internal support; and (iii) the Debtors' books and records, which are currently kept in various physical and digital locations, struggle to be maintained. *See id*. These issues exacerbate as each day passes in these Chapter 7 Cases without further action.

30. *Second*, the Pledged Collateral will ultimately be liquidated for the benefit of the Prepetition Secured Parties. The Prepetition Secured Parties have a significantly stronger interest in maximizing the value of the Pledged Collateral than the Trustee. Thus, the hardship to the Prepetition Secured Parties of maintaining the automatic stay (*i.e.*, waiting for the assets to be liquidated even though funding is not available to do so) considerably outweighs the hardship to the Debtors, who no longer have a real interest in the Pledged Collateral.

31. Finally, there can be no dispute that the Debtors are in default under the Credit Agreement. Accordingly, the Agent's likelihood of succeeding on a foreclosure action is nearly a certainty.

32. For these reasons, section 362(d)(1) mandates that the Court lift the automatic stay so that the Agent may liquidate the Pledged Collateral.

### B. The Debtors Have No Equity in the Pledged Collateral and the Debtors are Not Reorganizing

33. Although the Court should grant the Agent's Motion pursuant to section 362(d)(1) for the reasons explained above, section 362(d)(2) further supports granting the Agent's Motion. Here, both prongs of 362(d)(2) are easily satisfied. *First*, as discussed *supra*, the Debtors are deeply insolvent and therefore have no equity in any of the Pledged Collateral. *Second*, the Pledged Collateral is not necessary for an effective reorganization—the Debtors *are explicitly not reorganizing* and pursuing a complete liquidation. *See, e.g.*, *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376, 108 S. Ct. 626, 633 (1988) ("there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" (internal citation omitted)).

34. Accordingly, 362(d)(2) further justifies lifting the automatic stay.

### WAIVER OF STAY UNDER BANKRUPTCY RULE 4001(A)(3)

35. The Agent requests that the fourteen (14) day stay provided in Bankruptcy Rule 4001(a)(3) be waived to enable the Agent, its successors or assigns, to immediately enforce and implement the terms of the Proposed Order so that the collateral does not continue to lose value during such period.

## NOTICE

36. Notice of this Motion has been provided to the following parties and/or their respective counsel, as applicable: (a) the Debtors; (b) the Trustee; (c) the Office of the United States Trustee for the District of Delaware; (d) the twenty (20) largest creditors; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Agent submits that no other or further notice is necessary.

## NO PRIOR REQUEST

37. No prior request for the relief sought herein has been made to this Court or any other court.

**WHEREFORE**, the Agent respectfully requests that this Court enter an order substantially in the form attached hereto:

(a) Modifying and terminating the automatic stay to permit the Agent to exercise any and all of its state and federal law rights and remedies with respect to the Credit Agreement and the Collateral Agreement, including, but not limited to, the foreclosure of the Pledged Collateral;

(b) Waiving the 14-day stay pursuant to Bankruptcy Rule 4001(a)(3); and

(c) Grant such other and further relief as the Court may deem just and proper under the circumstances.

*[Remainder of Page Intentionally Left Blank]*

Dated: August 20, 2024  
Wilmington, Delaware

/s/ *Russell C. Silberglied*

Mark D. Collins (No. 2981)  
Russell C. Silberglied (No. 3462)  
Emily R. Mathews (No. 6866)  
Alexander R. Steiger (No. 7139)  
**RICHARDS, LAYTON & FINGER, P.A.**  
One Rodney Square  
920 North King Street  
Wilmington, Delaware 19801  
Telephone: (302) 651-7700  
Fax: (302) 651-7701  
Email: collins@rlf.com  
silberglied@rlf.com  
mathews@rlf.com  
steiger@rlf.com  

- and -

Dennis F. Dunne (admitted *pro hac vice*)  
Matthew Brod (admitted *pro hac vice*)  
**MILBANK LLP**  
55 Hudson Yards  
New York, New York 10001  
Telephone: (212) 530-5000  
Fax: (212) 530-5219  
Email: ddunne@Milbank.com  
mbrod@Milbank.com  

Andrew M. Leblanc (admitted *pro hac vice*)  
Danielle Lee Sauer (admitted *pro hac vice*)  
**MILBANK LLP**  
1850 K Street, N.W.  
Suite 1100  
Washington, DC 20006  
Telephone: (202) 835-7500  
Fax: (202) 263-7586  
Email: aleblanc@Milbank.com  
dlee@Milbank.com  

*Co-Counsel to HPS Investment Partners*