## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 7 |
| CHICKEN SOUP FOR THE SOUL ENTERTAINMENT INC., *et al.*, | Case No. 24-11442 (MFW) |
| Debtors.[1] | (Jointly Administered) |
|  | **Objection Deadline: Sept. 9, 2024 at 4:00 pm (ET)** |
|  | **Hearing Date: October 9, 2024 at 2:00 pm (ET)** |

### MOTION OF H-E-B, LP FOR ENTRY OF AN
### ORDER MODIFYING, TO THE EXTENT APPLICABLE, THE
### AUTOMATIC STAY PURSUANT TO SECTIONS 105(a) AND 362(d)
### OF THE BANKRUPTCY CODE TO PERMIT H-E-B, LP TO CONTINUE
### TO REMOVE AND DISPOSE OF PREVIOUSLY ABANDONED KIOSKS

H-E-B, LP ("***H-E-B***"), by its undersigned counsel, submits this motion (this "***Motion***") for

entry of an order, pursuant to sections 105(a) and 362(d) of title 11 of the United States Code, 11

U.S.C. §§ 101 *et seq*. (the "***Bankruptcy Code***"), rules 4001, 9013, and 9014 of the Federal Rules

of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and rules 4001-1 and 9013-1 of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District

of Delaware (the "***Local Rules***"), modifying, to the extent applicable, the automatic stay to

immediately permit H-E-B to continue to remove and dispose of kiosks that were installed and

then abandoned prior to the Petition Date (as defined below) by Redbox Automated Retail, LLC

---

[1]    The Debtors in these chapter 7 cases and the last four digits of their respective federal tax identification numbers (where applicable) are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508).  The location of the Debtors' corporate headquarters is:  132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

("**Redbox**"), one of the debtors in the above-captioned chapter 7 cases (each, a "**Debtor**" and collectively, the "**Debtors**").  In support of this Motion, H-E-B respectfully states as follows.

## PRELIMINARY STATEMENT[2]

1.      H-E-B is a retailer engaged in the sale of groceries and other consumer products. For several years, H-E-B contracted with Redbox to install and operate Redbox Kiosks at hundreds of H-E-B's stores.  Roughly 18 months ago, however, Redbox stopped paying H-E-B the amounts it was (and still is) owed under the Kiosk Agreement and ceased maintaining the Redbox Kiosks, all in breach of its obligations under the Kiosk Agreement.  Shortly thereafter, representatives of Redbox ceased responding to communications from H-E-B entirely.

2.      H-E-B terminated the Kiosk Agreement for cause more than a year ago.  But despite H-E-B's numerous demands that Redbox honor its post-termination obligations to remove the Redbox Kiosks, Redbox has opted for inaction and radio silence.  Redbox thus has abandoned the Redbox Kiosks, leaving H-E-B with the unjustifiable extra-contractual burden of arranging for their removal—and, ultimately, storage or disposal—a process that H-E-B had already begun following Redbox's abandonment of the Redbox Kiosks and prior to the commencement of these bankruptcy cases.

3.      H-E-B believes the abandoned kiosks are no longer property of the estate, but out of an abundance of caution—and reserving fully its rights to contend that the automatic stay does not apply to abandoned property like the Redbox Kiosks—H-E-B accordingly asks the Court to modify, to the extent applicable, the automatic stay to permit the removal and disposal of the Redbox Kiosks to continue.  Ample cause exists for such modification under section 362(d)(1) of

---

[2]    Capitalized terms used but not otherwise defined in this Preliminary Statement shall share the meanings ascribed to them in the balance of the Motion.

the Bankruptcy Code, as H-E-B continues to suffer unjustifiable economic harm from having to retain the Redbox Kiosks, and no hardship will come to Redbox, which has long since abandoned the Redbox Kiosks. Additionally, under section 362(d)(2), Redbox lacks an equity in the Redbox Kiosks and the Redbox Kiosks are not necessary to a successful reorganization.

## JURISDICTION AND VENUE

4.      The United States Bankruptcy Court for the District of Delaware (the "*Court*") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). H-E-B confirms its consent, pursuant to rule 9013-1(f) of the Local Rules, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

6.      The statutory bases for the relief requested herein are sections 105(a) and 362(d) of the Bankruptcy Code, Bankruptcy Rules 4001, 9013, and 9014, and Local Rules 4001-1 and 9013-1.

## FACTUAL BACKGROUND

**A.      H-E-B and Redbox Entered into Kiosk Operating Agreement Allowing Redbox to Install the Redbox Kiosks at Approximately 232 Properties Owned or Leased by H-E-B.**

7.      H-E-B and Redbox entered into a *Kiosk Operating Agreement*, dated as of March 1, 2020 (as amended, restated, amended and restated, or otherwise modified from time to time, the "*Kiosk Agreement*"), a true and correct copy of which is attached as **Exhibit 1** to the Declaration of Stephanie Afflerbach (the "*Afflerbach Declaration*") filed concurrently herewith.

The Kiosk Agreement is the most recent in a series of similar contracts executed by and between H-E-B and Redbox over the course of the preceding decade.  *See* Afflerbach Declaration ¶ 2.

8.      Pursuant to the Kiosk Agreement, H-E-B allowed Redbox to install and operate approximately 284 automated retail kiosks that allowed customers to rent or purchase movies and other media (collectively, the "***Redbox Kiosks***") at approximately 232 properties owned or leased by H-E-B across the state of Texas.  *See* Afflerbach Declaration ¶ 3.  In exchange for these rights, Redbox agreed, among other things, to pay H-E-B a commission from monthly sales and rentals, as calculated pursuant to the terms of the Kiosk Agreement.  *See* Kiosk Agreement § 7.  As is further detailed below, Redbox currently owes H-E-B, among other amounts, the Past Due Commissions (as defined below) pursuant to the terms of the Kiosk Agreement.  *See* Afflerbach Declaration ¶ 3.

**B.      Redbox Breached the Kiosk Agreement by Failing to Make Required Commission Payments and H-E-B Terminated the Agreement.**

9.      The Kiosk Agreement provided that either party may terminate at any time for the other's failure to meet any payment obligation, subject to a 10-day cure period. *See* Kiosk Agreement § 9.2.  Beginning in January 2023, Redbox failed to make required commission payments (collectively, the "***Past Due Commissions***") and never cured such failure. *See* Afflerbach Declaration ¶ 3.

10.      On or about August 4, 2023, following expiration of the 10-day cure period, H-E-B served notice of termination of the Kiosk Agreement (the "***Notice of Termination***"), a true and correct copy of which is attached as **Exhibit 2** to the Afflerbach Declaration, which formally demanded that Redbox remove the Redbox Kiosks from all H-E-B locations in accordance with the terms of the Kiosk Agreement.  *See* Afflerbach Declaration ¶ 4.  The Kiosk Agreement expressly required that—upon expiration or termination, and among other obligations—Redbox

remove the Redbox Kiosks and return the sites where they had been installed in good and clean condition within 90 days of such expiration or termination. *See* Kiosk Agreement §6.7. The Notice of Termination requested that a representative of Redbox contact a specified H-E-B representative to arrange for such removal, remediation, and return. *See* Notice of Termination.

**C.    Redbox Ignored These Demands and Abandoned the Redbox Kiosks, Leaving H-E-B to Navigate the Costly Process of Removing the Redbox Kiosks.**

11.    Notwithstanding its obligations under the Kiosk Agreement, Redbox did not respond to the Notice of Termination's demand for removal of the Redbox Kiosks during the next two (2) months. *See* Afflerbach Declaration ¶ 5. On September 28, 2023, a representative of H-E-B sent Redbox another letter (the "***Removal Demand***"), a true and correct copy of which is attached as **Exhibit 3** to the Afflerbach Declaration, demanding, by October 18, 2023, either: (a) a written plan for removal of the Redbox Kiosks, or (b) the keys necessary to unbolt and remove the Redbox Kiosks. *See* Removal Demand. To the extent that Redbox provided neither, the Removal Demand noted that H-E-B would remove the Redbox Kiosks. *See* Afflerbach Declaration ¶ 5. Yet again, Redbox did not respond. *See* Removal Demand.

12.    On December 15, 2023, a representative of H-E-B sent Redbox yet another letter (the "***Subsequent Removal Demand***"), a true and correct copy of which is attached as **Exhibit 4** to the Afflerbach Declaration, outlining Redbox's failure to abide by its obligations under the Kiosk Agreement to remove the Redbox Kiosks. The Subsequent Removal Demand further noted that H-E-B was currently storing the Redbox Kiosks in place and that Redbox was welcome to claim them within 60 days, *i.e.*, by February 13, 2024—more than a year after Redbox first breached the Kiosk Agreement. *See* Subsequent Removal Demand. The Subsequent Removal Demand further observed that H-E-B considered the Redbox Kiosks "abandoned" property, and that H-E-B would—in the absence of removal by Redbox within the specified 60-day period—

arrange for their removal and disposal.  *See Subsequent Removal Demand.*  After such 60-day period had passed—again, without any word from Redbox—H-E-B began the process of removal, storage, and/or disposal of the abandoned Redbox Kiosks, ultimately removing and storing and/or disposing of approximately 266 of the Redbox Kiosks.  *See Afflerbach Declaration ¶ 6.*

**D.      Redbox Filed These Bankruptcy Cases.**

13.      On June 28, 2024 (the "***Petition Date***"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On July 10, 2024, the Court entered an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code. *See* D.I. 120.  The next day, the Court entered an order appointing George L. Miller as chapter 7 trustee (the "***Chapter 7 Trustee***") in these chapter 7 cases.  *See* D.I. 130.

**E.      H-E-B Continues to Suffer Prejudice from Redbox's Failure to Abide by Its Obligations Under the Kiosk Agreement, Including, Removal of the Redbox Kiosks.**

14.      Redbox—notwithstanding its obligations under the Kiosk Agreement to maintain the Redbox Kiosks in an attractive and good state of repair—has failed to do so, an omission that interferes with H-E-B's daily use and enjoyment of its properties and efforts to drive growth with its customer base.  *See* Afflerbach Declaration ¶ 7.  H-E-B has likewise received no assurance that Redbox has complied with its obligations under the Kiosk Agreement to protect customer data. *See* Afflerbach Declaration ¶ 7.  H-E-B has, moreover, already incurred costs associated with the process of removing, storing, and/or disposing of certain abandoned Redbox Kiosks. *See* Afflerbach Declaration ¶ 7.  Notwithstanding its belief that the automatic stay does not extend to abandoned property like the Redbox Kiosks, H-E-B has incurred further costs by seeking this precautionary relief.  *See* Afflerbach Declaration ¶ 7.

6

## RELIEF REQUESTED

15.    By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "***Proposed Order***"), providing, among other things, that (a) H-E-B may immediately continue to remove and dispose of any Redbox Kiosks that remain on properties owned or leased by H-E-B and (b) the 14-day stay otherwise contemplated by Bankruptcy Rule 4001 is waived pursuant to Bankruptcy Rule 4001(a)(3).

## BASIS FOR RELIEF REQUESTED

16.    Ample "cause" exists within the meaning of section 362(d)(1) of the Bankruptcy Code to modify, to the extent applicable, the automatic stay to allow H-E-B to continue to remove and dispose of the Redbox Kiosks.  Additionally, and to the extent applicable and within the meaning of section 362(d)(2) of the Bankruptcy Code, Redbox lacks an equity in the Redbox Kiosks, which Redbox abandoned before the Petition Date, and the Redbox Kiosks are not necessary to an effective reorganization.

A.    **Ample "Cause" Exists to Modify, to the Extent Applicable, the Automatic Stay.**

17.    Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that "the court shall grant relief from the [automatic] stay . . . such as by terminating, annulling, modifying, or conditioning such stay for cause . . ."  While the Bankruptcy Code does not supply a definition for "cause," courts have construed such term as "a flexible concept" and will "often conduct a fact[-]intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the [automatic] stay.  *See In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) (collecting cases).  The U.S. Court of Appeals for the Third Circuit has likewise emphasized that bankruptcy courts are afforded "wide latitude to balance the equities when granting relief from the automatic stay."  *See In re Snyder*, 293 F. App'x 140, 142 (3d Cir. 2008).

18.     Bankruptcy courts within the District of Delaware have organized their determinations of "cause" around three inquiries:  (a) whether any great prejudice to either the bankruptcy estate or the debtor will result from lifting the automatic stay; (b) whether the hardship to the non-bankrupt party by maintenance of the automatic stay considerably outweighs the hardship to the debtor; and (c) whether it is probable that the creditor will prevail on the merits. *See, e.g.*, *In re Downey Fin. Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010) (collecting cases). The party opposing stay relief must carry the burden of proof on all issues, except "the debtor's equity in property."  *Id*. (citing 11 U.S.C. § 362(g)).

19.     Here, all three inquiries decisively favor stay relief.  Further impediment to H-E-B's clear entitlement to removal of the Redbox Kiosks will continue to prejudice H-E-B through exposure to unjustifiable economic harm.  To be clear, there is no legal right—nor was there any after termination of the Kiosk Agreement and abandonment of the Kiosks by Redbox—for the Redbox Kiosks to remain installed on any properties owned or leased by H-E-B.  Yet H-E-B was forced to surrender, without any payment in more than 18 months, valuable space that could otherwise have been repurposed to economically productive ends.  Moreover, the presence of the Redbox Kiosks—particularly in their increasingly dilapidated state—may cause reputational harm among H-E-B's customer base, which could inaccurately attribute to H-E-B the failures and shortcomings of Redbox.

20.     Modification of the automatic stay will not prejudice the Debtors or their estates. Again, H-E-B terminated the Kiosk Agreement more than a year ago and Redbox has abandoned the Redbox Kiosks.  H-E-B should not be required to continue bearing the costs of the long-terminated Kiosk Agreement when Redbox failed to provide H-E-B with the full benefit of its bargain even during the term of the same.  Given the pendency of these chapter 7 cases, it is

obvious that Redbox will not require use of the Redbox Kiosks as a going concern. Disposal of the Redbox Kiosks, moreover, will reduce the Redbox bankruptcy estate's exposure to additional, potentially substantial claims, including likely administrative claims.

**B.     To the Extent Applicable, Redbox Likewise Lacks "an Equity" in the Redbox Kiosks and the Redbox Kiosks Are Not "Necessary to an Effective Reorganization."**

21.     Section 362(d)(2) of the Bankruptcy Code likewise provides, in relevant part, that "the court shall grant relief from the [automatic] stay . . . such as by terminating, annulling, modifying, or conditioning such stay with respect to a stay of an act against property under subsection (a) of this section, if:  (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization."  Here, Redbox lacks equity in the Redbox Kiosks and the Redbox Kiosks are not necessary to an effective reorganization.

22.     Redbox's repeated failures to remove the Redbox Kiosks show that they lack any value.  The fact that these cases have now converted to a liquidation under chapter 7 as opposed to a reorganization under chapter 11 necessarily makes any successful reorganization highly unlikely.

23.     Even if a successful reorganization were possible within the context of a chapter 7 liquidation, Redbox's conduct during the course of the last 18 months confirms that the Redbox Kiosks cannot credibly be characterized as "necessary" for such putative reorganization. Were Redbox of the view that the Redbox Kiosks provided any value, then Redbox presumably would have responded to H-E-B's multiple demands that the Redbox Kiosks be removed and would have put them to some purpose.  Instead, Redbox abandoned the Redbox Kiosks and lacks any interest or equity therein.

## **RESERVATION OF RIGHTS**

24.     For the avoidance of doubt, H-E-B reserves its rights to amend or supplement this Motion on any basis and reserves all rights and remedies with respect to the Motion and otherwise in these chapter 7 cases.

## **WAIVER OF STAY**

25.     H-E-B requests that the Court waive, as is contemplated by Bankruptcy Rule 4001(a)(3), the 14-day stay that would otherwise apply to the effectiveness of the Proposed Order.

## **NOTICE OF MOTION**

26.     Notice of this Motion has been provided to:  (a) counsel to the Debtors; (b) counsel to the Chapter 7 Trustee; (c) the Office of the United States Trustee for the District of Delaware; (d) counsel to the Pre-Petition Secured Parties (as defined in the First Day Declaration[3]).  Notice has also been provided to all other parties requesting notice pursuant to Bankruptcy Rule 2002(i) in accordance with Local Rules 2002-1(b) and 4001-1(a) through the Court's CM/ECF system.  In light of the nature of the relief requested in this Motion, H-E-B submits that no further notice is necessary.

## **NO PRIOR REQUEST**

27.     No prior motion seeking the relief requested herein has been made to the Court or any other court.

---

[3]     The "***First Day Declaration***" is the *Declaration of William J. Rouhana, Jr., Chairman of the Board, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [D.I. 7].

H-E-B respectfully requests that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, and grant such other and further relief to which H-E-B may be justly entitled.

Respectfully submitted,

Dated: August 26, 2024
Wilmington, Delaware

/s/ *Leslie C. Heilman*
Leslie C. Heilman (No. 4716)
Laurel D. Roglen (No. 5759)
Nicholas Brannick (No. 5721)
Margaret A. Vesper (No. 6995)
**BALLARD SPAHR LLP**
919 N. Market Street, 11th Floor
Wilmington, DE 19801-3034
Tel:  302.252.4465
Fax:  302.252.4466
E-mail:  heilmanl@ballardspahr.com
       roglenl@ballardspahr.com
       brannickn@ballardspahr.com
       vesperm@ballardspahr.com

- and -

Bradley R. Foxman (to be admitted *pro hac vice*)
**VINSON & ELKINS LLP**
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel:  214.220.7700
Fax:  214.220.7716
E-mail:  bfoxman@velaw.com

- and -

Jason M. Powers (to be admitted *pro hac vice*)
**VINSON & ELKINS LLP**
845 Texas Avenue, Suite 4700
Houston, TX 77002
Tel:  713.758.2222
Fax:  713.758.2346
E-mail:  jpowers@velaw.com

*Attorneys for H-E-B, LP*