

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC., *et al*,<br><br>Debtors. | Chapter 7<br><br>Case No. 24-11442 (MFW)<br>(Jointly Administered) |

**DECLARATION OF JASON TANZER, CFA, IN SUPPORT OF THE APPLICATION
OF CHAPTER 7 TRUSTEE TO EMPLOY AUTOMATED KIOSK ADVISORS LLC
BANKRUPTCY CONSULTANTS,
EFFECTIVE AS OF SEPTEMBER 4, 2024**

I, Jason Tanzer, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am a partner with the firm of Automated Kiosk Advisors LLC ("AKA"), Bankruptcy Consultants, with offices at 25 Broadway, 7th Floor NY, NY 10004, and I am authorized to execute this Declaration on behalf of AKA.

2. I do not believe that I, nor any member of AKA, holds or represents any interest adverse to the Trustee or the Debtors' estates.

Dated: August 28, 2024

Automated Kiosk Advisors LLC
Managing Member

/s/ Jason Tanzer

jason.tanzer@tribecacapital.com
25 Broadway, 7th Floor
New York, NY 10004
Telephone: (646) 246-9166

IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC., *et al*,<br><br>Debtors. | Chapter 7<br><br>Case No. 24-11442 (MFW)<br>(Jointly Administered)<br><br>Hearing Date: September 4, 2024 at 2:00 pm (ET)<br>Objection Deadline: August 28, 2024 at 4:00 pm (ET)<br><br>**HAND DELIVERED 8/28/24** |

## OBJECTION TO APPLICATION OF CHAPTER 7 TRUSTEE GEORGE L. MILLER TO EMPLOY MILLER COFFEY TATE LLP AS BANKRUPTCY CONSULTANTS

Automated Kiosk Advisors LLC ("AKA"), objects to the application of George L. Miller, the Chapter 7 Trustee (the "Trustee") of the estate of the above-captioned Debtors, to employ his own firm, Miller Coffey Tate LLP ("MCT"), to serve as bankruptcy consultants for the Chapter 7 liquidation of Chicken Soup for the Soul Entertainment, Inc., *et al.*

While MCT touts its avoidance of any conflicts of interest, it falls short on having the specialized, vertical industry expertise necessary to maximize the recovery for creditors from a non-traditional and fully automated retailer such as Redbox. In fact, we were unable to find any past instances of MCT operating in an advisory capacity for any other automated retail client. It appears that the trustee is attempting to double dip with respect to fees, by hiring his own firm to handle <u>all advisory functions</u> yet has no vertical industry expertise in the automated non-traditional retailer space.

In contrast, AKA specializes in the advisory of companies that own and operate automated retail kiosks, ancillary light boxes, physical media (DVD/Blu-ray) and digital film content libraries. Our expertise in this particular vertical runs deep as we have focused on installing, operating, and liquidating DVD rental equipment since 2001. As such, we propose the Trustee employ AKA in lieu of MCT for the role of bankruptcy consultant in this matter.

In fact, AKA has handled <u>the full nationwide liquidation of the #2 Automated DVD rental network in the US as well as advised Blockbuster, Inc. during its wind down and eventual liquidation</u>. Importantly, part of AKA's approach is to market the DVD rental kiosks in a "repurposed" manner which helps attract other established vending and retail players to understand the value of these well-placed kiosk systems. In our past liquidations, we were able to recoup well over the expected liquidation value by selling re-pivoted hard assets as well as "hidden" assets whose value was only unearthed during the liquidation process.

To this end, we have the ability to identify asset buyers that are actively looking to funnel their existing products into a scaled automated kiosk network. Some of these parties (including several 4th wall "neighbors") have *high margin SKUs that can fit in the same form factor as the Redbox kiosks* while others, including several retail chains, have showed strong interest in *a loyalty type kiosk that could also easily work within the confines of an existing Redbox kiosk* without any need for retooling.

There are many nuances in liquidating a non-traditional and fully automated retailer. Many "hidden assets" exist to be recouped for the creditors but can only be seized upon by a firm steeped in the granularity of the business operations. For instance, Redbox has written off $100MM+ of accounts receivables from rental customers over the past years. With the advent of recent AI advances in credit card fraud recovery, algorithms can be run against all of the previously outstanding receivable credit card strings which will result in a material recapture of "lost" revenue.

Specifically, AKA has developed a proprietary algorithmic piece of software that can strategically bulk reprocess millions of Redbox credit card transactions covering instances where funds previously could not be captured during attempted extra day(s) rental charges. Based on past results utilizing the software package with other automated retailers, we believe that a meaningful recovery rate for previously uncollectible Redbox rental revenue is a reasonable recoup assumption for the creditors in this matter.

We also understand that there is also a significant volume of DVDs/Blu-rays, both sitting in the field kiosks as well as in various warehouses throughout the US. Over the past 20+years, we have identified and sold tens of millions of previously viewed DVDs/Blu-rays to virtually every Region 1 physical media buyer in the US and Canada. Simply stated, we understand the fluid market dynamic for physical media and can sell high volumes of discs in a quick and efficient manner for maximum economic recovery.

There are also a number of **important considerations** and legal/financial pitfalls to avoid when liquidating a Redbox kiosk that may not be immediately evident. Failure to properly remove and destroy the internal data storage and payment information can expose the trust to a wide range of material legal and financial liabilities. Some kiosk system removal challenges that we attend to include the following:

- All locally stored kiosk/payment processing system data must be "scrubbed" as any activities involving customer data must strictly adhere to PCI Compliance guidelines.
- Specifically, kiosk hard drives must be securely and properly reformatted as these may contain sensitive and personal identifying information (PII) including, but not limited to, private customer information including credit/debit card data, email addresses, zip codes, customer names and associated movie rental history.

In summary, AKA can achieve superior recovery results for creditors at a fraction of the cost being proposed in the application of employment of Miller Coffey Tate LLP as bankruptcy consultants.

As we speak, thousands of Redbox kiosks across the nation are being removed and disposed of by retailers with no recovery for the creditors. Numerous court orders to such effect have already been approved by the Court. Time is of the essence to bring in an advisor like AKA that can stem this destruction of value.

Section 9 of Miller's application lists the following services that the Trustee requires to do its job. We find that MCT is not capable of effectively delivering on the services below without having had significant experience and expertise in the industry in which the debtor operated.

*d. Assist the Trustee in liquidating and recovering assets (not duplicative of any other professionals(s) that may be retained by the Trustee to liquidate assets);*
*e. Assist the Trustee in pursuing causes of action for the benefit of the estate;*
*f. Assist the Trustee with analysis and reconciliation of claims asserted against the Debtors;*

Given the lack of vertical industry expertise, we find the MCT compensation request to be excessive.
In contrast, AKA, with its decades of experience in the industry of the debtor, is better suited to carry out these services at lower rates which will result in a greater recovery for the creditors. Bios of AKA's principles are

summarized below:

## PRINCIPALS

**Greg Meyer, CFA.** Seasoned Entrepreneur/Investor/Operator with a focus on sales, strategy and business restructurings. Dartmouth MBA with a concentration in Finance. Chartered Financial Analyst. Former member of the Blockbuster, Inc. Board of Directors. Introduced Coinstar, Inc. to the concept of DVD rental kiosks before their involvement with Redbox. Actively involved as a Blockbuster Board Member during its wind down and eventual liquidation. Pioneered the value priced DVD rental kiosk industry and the first commercial usage of RFIDs in a supermarket environment in 2001.

**Jason Tanzer, CFA.** Entrepreneur/Investor with a strong finance and accounting focus. NYU MBA in Finance. Studied under Professor Ed Altman, developer of the Z-score bankruptcy predictor model. Former management consultant at PwC. Co-founded, along with Mr. Meyer, two nationwide DVD/video game automated rental networks, raised capital, oversaw all financial and accounting functions and helped drive sustainable growth and eventual liquidity events. Laser focused on maximizing asset values during all business life cycle phases including reorganizations and Ch. 7 liquidations.

In summary, we do not assert that MCT has a conflict of interest but rather that they lack the experience and vertical industry expertise to justify being employed as bankruptcy consultants in this case. This objection does not pertain to MCT's application to act as the lead accounting services provider under the Ch.7 liquidation. We request that the Court allows AKA to pursue an application to provide bankruptcy consulting services to the debtor as AKA has the experience and wherewithal to liquidate all tangible and intangible assets to the deepest markets at the highest price points.

## PROPOSED COMPENSATION FOR AKA

- Principal Compensation: $475 per hour
- Reasonable and customary expenses.

Dated: <u>August 28, 2024</u>

Automated Kiosk Advisors LLC
Managing Member

*[signature]*

greg.meyer@tribecacapital.com
25 Broadway, 7th Floor
New York, NY 10004
Telephone: (212) 444-8784