# EXHIBIT A

# technicolor

# MANUFACTURING AND DISTRIBUTION SERVICES AGREEMENT

MARCH 31, 2020

## SCREEN MEDIA VENTURES, LLC

800 Third Ave, Third Floor
New York, NY 10022

## TECHNICOLOR HOME ENTERTAINMENT SERVICES

3233 East Mission Oaks Boulevard
Camarillo, CA 93012 – USA

Reference No. HP20A

This proposal is submitted on the basis that its existence and content are to be kept strictly confidential and may not be disclosed without Technicolor's prior written consent to anyone other than your employees and advisors who have a need to know and who you will ensure are made aware of the terms of this paragraph and who will be similarly obliged to maintain confidentiality.

# CONTENTS

1. OPTICAL (DVD) SERVICES .................................................................................................................. 3
   1.1 DVD Mastering / Check Disc Package    3
   1.2 DVD Replication Base Pricing    3
   1.3 DVD Manufacturing Turnaround Times  4
   1.4 DVD Minimum Order Quantity  4
   1.5 DVD Warranty  4
   1.6 Copy Protection         4
   1.7 Packaging and Related Services (DVD Products)        5
2. OPTICAL (BLU-RAY DISC) SERVICES ............................................................................................ 6
   2.1 Blu-ray Disc Mastering / Check Disc Package    6
   2.2 Blu-ray Disc Replication Base Pricing    6
   2.3 Blu-ray Disc Manufacturing Turnaround Times 7
   2.4 Blu-ray Disc Minimum Order Quantity  7
   2.5 Blu-ray Disc Warranty  8
   2.6 Copy Protection         8
   2.7 Packaging and Related Services (Blu-ray Disc Products)        8
3. DISTRIBUTION SERVICES .................................................................................................................. 9
   3.1 Receiving        9
   3.2 Distribution / Fulfillment        9
   3.3 Warehousing / Storage        9
   3.4 Additional Packaging/Distribution Services    9
   3.5 Returns Processing       10
   3.6 Rework            10
   3.7 Distribution Order Turnaround Time   10
4. GENERAL BUSINESS TERMS ............................................................................................................ 11
5. TERMS AND CONDITIONS OF BUSINESS .................................................................................... 12
6. ACCEPTANCE ......................................................................................................................................... 16

This Agreement is entered into between Technicolor Home Entertainment Services, Inc. and Technicolor Home Entertainment Services Southeast, LLC (collectively, "Technicolor") and Screen Media Ventures, LLC ("Customer") whereby Technicolor shall provide replication, packaging and distribution services as detailed below on a non-exclusive basis ("Agreement").

# 1. Optical (DVD) Services

## 1.1 DVD MASTERING / CHECK DISC PACKAGE

| ITEM | UNIT PRICE |
|---|---|
| Initial DVD-5 Mastering / Check Disc Package | |
| Initial DVD-9 Mastering / Check Disc Package | |
| Additional/Revised DVD-5 Mastering / Check Disc Package | |
| Additional/Revised DVD-9 Mastering / Check Disc Package | |

- Charges for the Initial Mastering / Check Disc Package will be waived for Titles where the initial order quantity is one thousand (1,000) units or more. This waiver does not apply to: (a) subsequent mastering changes requested by Customer under the initial order; (b) expedited mastering requirements; and (c) revised masters for the same Title where the mastering waiver quantity is not met.
- Standard Mastering / Check Disc Package turnaround time is three (3) working days from receipt of an approved master for DVD-5s and DVD-9s. Working days are defined as Monday through Friday, excluding legal holidays.
- Mastering / Check Disc Package services include the option to receive up to twenty (20) check discs for verification of product.
- All check discs are labeled with rimage text, limited to 26 characters.
- All check discs are packaged in paper sleeves.

## 1.2 DVD REPLICATION BASE PRICING

| ITEM | UNIT PRICE |
|---|---|
| DVD-5 (single side, single layer) | |
| DVD-9 (single side, dual layer) | |

- The above pricing is inclusive of all applicable standard industry royalties for patents related to the DVD physical structure, technology and manufacturing processes.
- All DVD replication will be done using customer-approved images/masters provided by Customer.
- All orders are subject to an overrun/underrun (+/-) allowance of five percent (5%) for order quantities up to one thousand (1,000) units and three percent (3%) for order quantities in excess of one thousand (1,000) units. Customer will be invoiced for the actual quantity delivered.
- Base replication price includes 5-color label art (including white base).

## 1.3 DVD MANUFACTURING TURNAROUND TIMES

| FORMAT | PRODUCT | ORDER QUANTITY | TURNAROUND TIME |
|---|---|---|---|
| DVD-5, DVD-9 | Catalog | Up to 1,000,000 Units | Seven (7) Working Days |
| DVD-5, DVD-9 | Catalog | Over 1,000,000 Units | To be mutually agreed |
| DVD-5, DVD-9 | New Release | All | To be mutually agreed |

An additional two (2) Working Days are required for orders with manual and/or non-standard packaging requirements.

All turnaround times are measured from starting upon the latter of (a) receipt of Customer check disc approval; (b) receipt of a duly authorized purchase order; (c) receipt of Customer-supplied label film/artwork; or (d) receipt of all Customer-supplied packaging components, to delivery of product to Technicolor's dock ready for shipment (irrespective of FOB point). Working Days are defined as Monday through Friday, excluding legal holidays. Purchase orders received by Technicolor after 12:00 p.m. local time will be deemed received by Technicolor on the next Working Day.

## 1.4 DVD MINIMUM ORDER QUANTITY

The minimum order quantity for DVD replication is one thousand (1,000) units per disc, per title, per order (i.e. the MOQ applies to each disc in a multi-disc set). The minimum re-order quantity for DVD replication is five hundred (500) units per disc, per title, per order. At no time will orders of less than five hundred (500) units per title be accepted.

## 1.5 DVD WARRANTY

Technicolor warrants that all DVDs shall conform wholly or in significant content to DVD specifications for Read-Only Disc as published by DVD Format/Logo Licensing Corporation (or a successor/replacement organization), as modified or amended or extended versions thereof as may be issued by DVD Format/Logo Licensing Corporation (or an successor/replacement organization).

## 1.6 COPY PROTECTION

| ITEM | UNIT PRICE |
|---|---|
| CSS Encryption | |
| Macrovision Copy Protection | |

*Confirmation that titleholder is a Macrovision customer must be obtained from Macrovision prior to replication. Price based on customer agreement with Macrovision, and can be invoiced by Technicolor on Macrovision's behalf.*

## 1.7 PACKAGING AND RELATED SERVICES (DVD PRODUCTS)

- Technicolor, if requested, can coordinate print procurement services for Customer at an additional charge.
- Unless otherwise stated herein, all printed material required for DVD packaging will be supplied by Customer and must conform to Technicolor's DVD print component and packaging specifications.
- Technicolor's DVD packaging specifications can be found on the Technicolor Internet website at www.technicolor.com.

| ITEM | UNIT PRICE |
|---|---|
| Case, Single Generic DVD (black) | |
| Assembly, Automated Single Generic DVD Case (case priced separately) | |
| Case, Double Generic DVD with Tray, Black | |
| Assembly, Automated Double Generic DVD Case (case priced separately) | |
| Automated O-Sleeve application | |

The Generic DVD case automated assembly prices provided above include insertion of a Customer-supplied printed cover wrap under the clear plastic cover of the case, insertion of one (1) Customer-supplied insert into the case, insertion of the disc, cello-wrapping using standard gauge cello-wrap, application to the cello-wrap of one (1) Customer-supplied sticker, packing in a Technicolor-supplied 30-count master carton and palletized, if required.

The Generic DVD case automated assembly pricing proposed above assumes all components provided by Customer, including inserts, stickers, cover wraps, etc., conform to Technicolor's packaging specifications as found on the Technicolor Internet website at www.technicolor.com. Requirements for more than three (3) inserts, any non-conforming components and any other custom/non-standard packaging requirements will result in the need for manual assembly at manual assembly pricing.

| ITEM | UNIT PRICE |
|---|---|
| Inserts, Additional, Automated Insertion (insertion only) | |
| Inserts, Additional, Manual Insertion (insertion only) | |
| Stickers, Additional, Automated Application (application only) | |
| Stickers, Additional, Manual Application (application only) | |

## 2. Optical (Blu-ray Disc) Services

### 2.1 BLU-RAY DISC MASTERING / CHECK DISC PACKAGE

| ITEM | UNIT PRICE |
|---|---|
| Initial BD-25 Mastering / Check Disc Package | |
| Additional/Revised BD-25 Mastering / Check Disc Package | |
| Initial BD-50 Mastering / Check Disc Package | |
| Additional/Revised BD-50 Mastering / Check Disc Package | |

- Standard Mastering / Check Disc Package turnaround time is seven (7) working days after receipt of AACS signing and approval. Working days are defined as Monday through Friday, excluding legal holidays.
- Mastering / Check Disc Package services include the option to receive up to twenty (20) check discs for verification of product.
- Delivery of check discs will be FOB Technicolor's dock to delivery locations designated by Customer and Customer shall be responsible for all shipping costs.
- All check discs are labeled with rimage text, limited to 26 characters.
- All check discs are packaged in paper sleeves.

### 2.2 BLU-RAY DISC REPLICATION BASE PRICING

| ITEM | UNIT PRICE |
|---|---|
| BD-25 (single layer) (order quantity 5,000 or more) | |
| BD-50 (double layer) (order quantity 5,000 or more) | |

- Technicolor shall be responsible for royalties associated with BD Essential Patents and the use of either the AVC or VC-1. BD Essential Patents shall mean patents that are generally accepted within the industry as essential to the Blu-ray Disc ROM Media format and that are licensed by either the One-Blue or Premier BD Patent Pools (the "BD Patent Pools"). Technicolor is not responsible for (a) use of further video codecs (e.g. VC-1, AVC/H.264, MPEG2, MVC) included on discs in addition to the primary AVC or VC-1 video codec, (b) BD patents outside the BD Patent Pools, (c) BD+ security technology, (d) BD-J Advanced Content, (e) BD-Live technology, (f) AACS Optical Media Fees, (g) incremental royalties/patents associated with Blu-ray 3D technology or Ultra HD Blu-ray technology, including without limitation royalties/costs associated with the HEVC video codec, and (h) any other applicable technologies, rights or royalties. To the extent any of the above excluded technologies, rights or royalties are applicable to a disc, standard industry (or other applicable) royalty rates will be added, as appropriate, and aggregate additional amounts will be billed separately on a quarterly basis. For clarification, Technicolor's responsibility for coverage of BD Essential Patents as noted above does not constitute a separate/specific component of BD disc pricing, but instead is included in the overall disc price.
- AACS Optical Media Fees: Customer represents that it is a current and valid AACS Content Participant or Content Provider, and Customer shall maintain such status throughout the term of this Agreement, and Customer has all necessary rights to authorize the provision of services under the

agreement. Customer shall provide Technicolor with Customer's AACSLA 4-digit Licensee ID number prior to Technicolor's performance of any applicable services hereunder, and shall provide such supporting information/updates as may be reasonably requested by Technicolor. Exhibit B of the AACS Content Provider and Participant Agreements list fees for (i) Prerecorded Optical Media MKB Fees and (ii) Prerecorded Optical Media Content Certificate Fees; both fee types are sub-divided into "Order Fulfillment Fees" and "Unit Fees". With respect to Content Certificate Fees: (a) charges associated with procurement of Content Certificates by Technicolor on behalf of Customer during the provision of Services (i.e. Content Certificate Order Fulfillment Fees) will be the responsibility of Customer, and (b) all AACS "Content Certificate Unit Fees", whether charged on a Per Disc or Annual Fee Basis are the responsibility of Customer and payable directly to AACS by Customer as defined in Exhibit B of the Agreements, and, as such, Technicolor shall not collect any fee from Customer associated with AACS Content Certificate Unit Fees. Technicolor's sole obligation with respect to AACS Unit Fees is to report to AACS on a periodic basis, the quantity of AACS discs sold by Technicolor to Customer, and Technicolor is permitted to make such reports and any other reports required by AACS or similar organizations.

- AACS Licensee ID: Technicolor will require an AACS Licensee ID number from Customer before Blu-ray orders can be processed. This can be obtained by signing AACS's Content Participant Agreement or Content Provider Agreement. These Agreements, associated fees and other pertinent information are available at http://www.aacsla.com.
- All Blu-ray disc replication will be done using approved masters provided by Customer.
- All orders are subject to an overrun/underrun (+/-) allowance of three percent (3%). Customer will be invoiced for the actual quantity delivered.
- Base replication price includes 5-color label art (including white base).

## 2.3 BLU-RAY DISC MANUFACTURING TURNAROUND TIMES

Turnaround time for Blu-ray disc replication is ten (10) working days for order quantities of up to fifty thousand (50,000) discs, subject to available capacity. Turnaround time for orders in excess of fifty thousand (50,000) discs shall be mutually agreed between the parties. An additional two (2) Working Days are required for orders with manual and/or non-standard packaging requirements.

All turnaround times are measured from starting upon the latter of (a) receipt of Customer check disc approval; (b) receipt of a duly authorized purchase order; (c) receipt of Customer-supplied label film/artwork; or (d) receipt of all Customer-supplied packaging components, to delivery of product to Technicolor's dock ready for shipment (irrespective of FOB point). Working days are defined as Monday through Friday, excluding legal holidays.

## 2.4 BLU-RAY DISC MINIMUM ORDER QUANTITY

The minimum order quantity for Blu-ray disc replication is two thousand five hundred (2,500) units per disc, per title, per order (i.e. the MOQ applies to each disc in a multi-disc set). The minimum re-order quantity for DVD replication is one thousand (1,000) units per disc, per title, per order. At no time will orders of less than one thousand (1,000) units per title be accepted.

## 2.5 BLU-RAY DISC WARRANTY

Technicolor warrants that all Blu-ray Discs shall conform wholly or in significant content to the System Description Blu-ray Disc Read-Only Format as published by the Blu-ray Disc Association (or an successor/replacement organization), as modified or amended or extended versions thereof as may be issued by the Blu-ray Disc Association (or a successor/replacement organization), including Blu-ray and Blu-ray 3D (BD25 and BD50), and Ultra HD Blu-ray (UHD50, UHD66 and UHD100).

## 2.6 COPY PROTECTION

| ITEM | UNIT PRICE |
|---|---|
| AACS Content Certificate | |

- The AACS Content Certificate pricing above includes AACS Media Key Block/Content Certificate/Order Fulfillment fees plus Technicolor administration fees (compliance documentation, key procurement and title processing).

## 2.7 PACKAGING AND RELATED SERVICES (BLU-RAY DISC PRODUCTS)

- Technicolor, if requested, can coordinate print procurement services for Customer at an additional charge.
- Unless otherwise stated herein, all printed material required for Blu-ray disc packaging will be supplied by Customer and must conform to Technicolor's Blu-ray disc print component and packaging specifications.
- Technicolor's packaging specifications can be found on the Technicolor Internet website at www.technicolor.com.

| ITEM | UNIT PRICE |
|---|---|
| Case, Single Blu-ray Disc-style (blue) | |
| Assembly, Automated Single Blu-ray Disc-style Case (case priced separately) | |
| Case, Double Special Blu-ray Disc-style, Side by Side Case | |
| Assembly, Automated, Double using Blu-ray Disc-style Case (case priced separately) | |
| Automated O-Sleeve application | |

The automated assembly prices provided above include insertion of a Customer-supplied printed cover wrap under the clear plastic cover of the case, insertion of one (1) Customer-supplied insert into the case, insertion of the disc, cello-wrapping using standard gauge cello-wrap, application to the cello-wrap of one (1) Customer-supplied sticker and packing in a Technicolor-supplied 30 count master carton.

## 3. Distribution Services

For purposes of this section, the term 'unit' means a single DVD or BD disc.

### 3.1 RECEIVING

| ITEM | UNIT PRICE |
|---|---|
| Pallets Receiving and Put-Away* - (single selection (SKU) pallet) | |

* Mixed pallets pricing shall be

### 3.2 DISTRIBUTION / FULFILLMENT

Technicolor will provide distribution order pick and pack services for shipments at the following prices. Pricing includes receiving and generating all documents, materials (including UPC 128 labels which are integrated in the shipping label) and tendering to the freight carriers, but excludes any shipping/freight related charges.

| B2B FULFILLMENT | UNIT PRICE |
|---|---|
| Bulk Pick (Full Carton/Pallet Picks) | |
| Less Than Full Case Picks (Loose) | |
| Minimum Order Charge | |
| Cancelled Orders (after PPS) | |
| Cancelled Orders Restocking Fee | |
| **DIRECT TO CONSUMER (DTC) FULFILLMENT** | **UNIT PRICE** |
| Order Processing (includes the first unit) | |
| DTC Additional units on the same order | |
| Cancelled Orders (after PPS) | |
| Cancelled Orders Restocking Fee | |

### 3.3 WAREHOUSING / STORAGE

| ITEM | UNIT PRICE |
|---|---|
| Storage of Finished Goods and Dry Goods (Full Pallet) | |
| Storage of Finished Goods and Dry Goods (Half Pallet or Less) | |

### 3.4 ADDITIONAL PACKAGING/DISTRIBUTION SERVICES

| ITEM | UNIT PRICE |
|---|---|
| Sticker, Price (application for direct to retail shipments) | |
| Receiving of Non-Technicolor Goods | |
| BOL Printing (one-time IT set-up fee) | |
| Proof of Delivery | |
| Freight Collect and Will Call | |
| Carton labeling (in distribution) | |

| ITEM | UNIT PRICE |
|---|---|
| Destruction fee (dry goods) | |
| Advance Shipping Notification (ASN) | |

## 3.5 RETURNS PROCESSING

| ITEM | UNIT PRICE |
|---|---|
| Returns Processing Charge: Full Case and/or Partial Case (Single Title/SKU and/or Multiple Title/SKUs) units Requiring Sorting, Reshrink-wrapping and Put-Away using Automated Processes | |
| Other Non-Standard, Non-Automated, Oversized and/or Multi SKU unit Returns Requiring Manual Processing, Re-Shrinking and Master Carton Packing and Carton Labeling | |
| Non-Automated O-Ring (Paperboard) Removal and Repacking into Master Cartons with Content Labels Provided the Originally Packed Item with the O-Ring is not Shrink-Wrapped, while the Packaged DVD in the O-Ring is Shrink-Wrapped and is Put-Away as is (i.e. Requires No Re-Shrink Activity) | |
| Other non-standard, non-automated very large Giftsets or Giftboxes typically in case counts of 5 or less, requiring manual processing, re-shrinking, master carton packing and carton labeling | |
| Scrap upon receipt | |

## 3.6 REWORK

| ITEM | UNIT PRICE |
|---|---|
| Re-shrink Only | |
| Repackaging with New Inserts, Stickers, and Re-shrinking | |
| Repackaging with New Inserts, Stickers, Reworking into a New Customer-supplied Sleeve, and Re-shrinking | |

*Technicolor's minimum charge for re-work and custom packaging is

## 3.7 DISTRIBUTION ORDER TURNAROUND TIME

Technicolor's standard turnaround time for distribution is forty-eight (48) hours following receipt of Customer's order, pending inventory availability. On a limited basis, to be mutually agreed between Customer and Technicolor, Technicolor will tender the same day of receipt provided the orders are received no later than 12:00 p.m. (noon) local time. Order completion includes tendering to designated freight carriers and shipment confirmation utilizing Technicolor's systemic processes. Distribution turnaround time for new release or time delivery orders will be mutually agreed between Customer and Technicolor for each release/promotion.

## 4. General Business Terms

- <u>Terms and Conditions of Business</u>. This Agreement is subject to Technicolor's Terms and Conditions of Business, attached hereto.

- <u>Order of Precedence</u>. In the event of a conflict between any of the terms, conditions and/or elements included herein in Section 1-3 above and the Terms and Conditions of Business Document, the requirements shall be interpreted in accordance with the following order of precedence:
    1. Agreement elements (Section 1-3 above)
    2. General Business Terms
    3. Technicolor Terms and Conditions of Business

- <u>Currency</u>. All prices proposed herein are stated in U.S. Dollars.

- <u>Payment Terms</u>. Payment terms are net-30 days from the invoice date, subject to the credit limit approved by Technicolor, which may be changed from time to time by Technicolor based upon the circumstances.

- <u>Termination for Convenience</u>. Notwithstanding anything to the contrary, either party may terminate this Agreement at any time with or without cause by giving ninety (90) days' written notice to the other party.

- <u>Shipments/FOB Point</u>. All shipments of finished goods to Customer will be F.O.B. Technicolor's North America manufacturing facilities. Customer shall be responsible for all shipping charges for all product shipped by Technicolor and Technicolor shall separately invoice Customer for same upon shipment of each order. Customer shall pay all invoices for shipping charges within thirty (30) days after the date of invoice.

- <u>Technicolor Facilities</u>. Notwithstanding anything herein to the contrary, and provided that Technicolor continues to satisfy its service level and other obligations herein or therein, as the case may be, Technicolor may provide the replication, assembly, packaging and other services it provides to Customer at any of its (or its affiliates) global facilities in its discretion and Technicolor may for the avoidance of doubt, change in Technicolor's discretion the Technicolor (or affiliate) facilities at which it provides any such services, including by changing or consolidating its (or its affiliates) global manufacturing, distribution or other services footprint. Accordingly, Customer-supplied artwork and print components should not include any country of origin markings.

- <u>Third Party Replicator</u>. In the event Technicolor determines it is unable to provide timely replication services or meet Customer's purchase order delivery schedules, Technicolor may offload Customer's requirement to another qualified third party replicator at no additional cost to Customer. In such event, Customer shall pay Technicolor as if Technicolor had provided such services, and both Technicolor and Customer shall remain obligated to each other with respect to all other terms and conditions of this Agreement.

- <u>Replication of Obscene/Adult Materials</u>. Notwithstanding anything to the contrary contained herein, Technicolor shall not be obligated to provide replicating services for any product containing obscene matter (i.e. lewd, lascivious, sexually explicit or excessively violent content) or matter which would be rated NC-17 or above by the MPAA. If unrated, Technicolor shall determine its sole discretion such rating.

# 5. Terms and Conditions of Business

This Agreement between Technicolor and Customer shall consist of the following documents:

(a) Sections 1-5 above; (b) this Terms and Conditions of Business document; and (c) the Agreement and Application for Credit Document (if required by Technicolor). These documents collectively constitute the entire agreement between Technicolor and its subsidiaries and Customer (collectively, the "Purchase Agreement"). The Purchase Agreement shall supersede any prior oral or written understandings, representations and warranties (including any terms and conditions which may appear on Customer's purchase order or order form) between Technicolor and Customer and may not be amended except pursuant to a written document signed by both parties.

1. **Acceptance**. The Purchase Agreement and any Customer order(s) for services and/or materials will be accepted only by: (a) written confirmation from an authorized representative of Technicolor, or (b) shipment of goods in accordance with the terms set forth herein. Technicolor reserves the right to refuse to accept any order for any reason. The Purchase Agreement is subject to and Customer agrees to be bound by all terms and conditions set forth herein and Customer waives any objections thereto.

2. Intentionally left blank.

3. **Prices**. Prices to be charged for services and materials provided to Customer hereunder shall be as agreed as outlined in this Agreement. If orders are cancelled after Technicolor has begun processing or manufacturing, Customer shall be responsible for payment and disposition of all completed work, all work in progress, and all materials purchased by Technicolor to fulfill said orders.

4. **Payment Terms**. Technicolor will issue invoices upon shipment of products, unless Customer delays shipment, in which case invoices will be issued upon completion of manufacturing. Charges for services performed by Technicolor shall be invoiced upon completion of those services. Unless otherwise noted, payment is due within thirty (30) calendar days of the invoice date. In the event that the Customer fails to make payment in full by the payment due date, then interest on the unpaid amount shall commence to accrue in an amount equal to the lesser of (i) the highest rate permitted by law, or (ii) a rate of one and one-half percent (1½%) per month (18% annually) until the date that the amount is paid in full. Claims for adjustments in amounts due Technicolor must be presented to Technicolor in writing, within five (5) business days prior to the due date of the invoice. Any credit on Customer's account must be claimed or used within twelve (12) months from the shipping date of the goods to which the credit relates. In addition to all other rights Technicolor has under the Purchase Agreement or applicable law, Customer hereby grants Technicolor a lien, dependent on possession, on all materials as collateral for payment of all amounts due to Technicolor from Customer. Technicolor reserves the right to delay or withhold shipment of any order if payment in full has not been received on any prior order. In the event any dispute concerning the obligations of the parties hereunder results in the commencement of legal action, the prevailing party in any such legal action shall be entitled to recover the reasonable attorneys' fees and costs incurred by it in such legal action.

5. **Taxes**. Customer shall be responsible for all local, state, federal or other governmental charges for sales, use, manufacturing, excise and similar taxes associated with the production of products and performance of services hereunder (other than taxes on Technicolor's net income) in addition to other charges hereunder.

6. **Warranty**. Technicolor warrants that all video and/or optical products and materials manufactured or packaged under the Purchase Agreement will be free from manufacturing defects in accordance with general industry standards for a period of one (1) year from the date of shipment by Technicolor. Technicolor further warrants that all DVDs shall meet the specifications in Section 1.5 above and that all Blu-ray Discs shall meet the specifications in Section 2.5 above. As Customer's sole remedy, and as Technicolor's' sole liability, for breach of this warranty, Technicolor shall, at Customer's election, either promptly replace said defective product at Technicolor's sole expense, or refund the amount paid by Customer to Technicolor for any video and/or optical product that is returned to and found defective by Technicolor or Customer. The foregoing notwithstanding, 3rd party product included in packaged goods is excluded from Technicolor's product and packaging warranties. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PARAGRAPH, TECHNICOLOR DISCLAIMS ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY WARRANTY AS TO PERFORMANCE, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. (TECHNICOLOR DOES NOT WARRANT ANY CONTENT PREPARATION SERVICES AND THE PRODUCT THEREOF UNLESS TECHNICOLOR HAS CONTRACTED SUCH SERVICES. TECHNICOLOR MAKES NO REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THE EFFECTIVENESS OF ANY COPYRIGHT PROTECTION PROCESSES AND SHALL NOT BE RESPONSIBLE OR LIABLE FOR ANY EFFECT THEY MIGHT HAVE ON THE PERFORMANCE OF THE CUSTOMER'S CONTENT OR THE VIDEO AND/OR OPTICAL PRODUCT.)

**7. Customer Returns.** Return authorizations must be requested by Customer and furnished in writing by a Technicolor customer service representative prior to return of any finished product. Return authorization number and/or form, including requirements of requested returned product, must accompany return authorization information.

**8. Limitation of Liability.** Except with respect to Technicolor's indemnity obligations as provided for in Section 12(a) below, in no event and under no circumstances, including, but not limited to, the incurrence by the Customer of damages due to loss of data, programs, or other information, damages due to business interruption or, damages due to a delay or the failure of delivery, shall Technicolor's liability to Customer under any theory exceed the amount paid by Customer to Technicolor pursuant to Technicolor invoice(s) for the related services or materials. In no event shall either party hereto be liable for, and each party hereto expressly waives any claim for, indirect, incidental, punitive, exemplary, special or consequential damages, including, but not limited to lost data, programs, or other information or lost profits. Notwithstanding the foregoing, in the event of a claim made by Customer against Technicolor for which Technicolor has insurance coverage, Customer shall not be barred from recovering the amount actually paid by the applicable insurance carrier on said claim even if said amount exceeds the foregoing limitation of liability.

**9. Materials Provided By Customer.** For purposes of this Section 9, "Materials" means all items delivered to Technicolor in whatever form by or for Customer for use in connection with the production, printing and/or packaging of videocassettes and/or optical discs hereunder, including, without limitation, master media, artwork and packaging materials.

    a. Customer shall retain title to all Materials, including the content of such Materials. Customer warrants that it owns all Materials and has the right to deliver all Materials to Technicolor. Customer also warrants that it owns all copyrights in the contents of Material (including without limitation any computer code embedded therein) or has the unrestricted right to permit Technicolor to perform the services requested hereunder. Notwithstanding anything to the contrary contained herein, Technicolor shall not be obligated to provide services for any titles containing obscene matter (i.e., lewd, lascivious, sexually explicit or excessively violent content) or matter which would be rated NC-17 or above by the MPAA (if unrated, Technicolor shall determine in its sole discretion such rating). Customer agrees to indemnify, defend and hold Technicolor harmless from and against any and all actions, suits, claims, liabilities, damages, losses and expenses (including reasonable attorneys' fees) arising directly or indirectly out of or in connection with any claim that the services rendered or product manufactured for Customer by Technicolor violate any local, state, or federal law, rule or regulation or violate any rights of third parties, including without limitation, any liability for slander, defamation, invasion of privacy, or infringement of any patent, copyright, trademark, or other proprietary right of third party.

    b. If Customer is to provide artwork to Technicolor in connection with the production of videocassette and/or disc label printing or packaging of videocassettes and/or optical discs hereunder, Technicolor must receive such artwork prior to the commencement of work by Technicolor. If Customer is to provide Materials for label printing or the final packaging of optical discs produced hereunder, such Materials must be received by Technicolor not more than one (1) week after the delivery of the applicable master media to Technicolor.

    c. Customer is solely responsible for delivering Materials to and retrieving Materials from Technicolor hereunder. At Customer's request and sole risk, Technicolor will store Materials as long as Technicolor is providing services hereunder, at any place that Technicolor deems appropriate. Customer shall be charged $10.00 per pallet (or portion thereof) for Inventory ("Storage Charges") and Technicolor shall separately invoice Customer for the Storage Charges at the end of each month. Customer will receive monthly inventory reports to monitor and adjust levels prior to invoicing. Customer agrees to pay all such invoices within thirty (30) days after the date of invoice. Technicolor may require Customer to retake possession of any or all of the Inventory and, upon failure of Customer to remove said Inventory after thirty (30) days written notice by Technicolor to Customer, Technicolor may, in its sole discretion, either (i) send such Inventory to a public warehouse or to a storage company to be held in the name of, for the account of, and at the risk of, Customer at a rate obtained in good faith by Technicolor or (ii) destroy said Inventory. Customer agrees that because of the impracticability of Technicolor storing Materials for all of its customers and because Customer has the ultimate responsibility for its Materials, these procedures for disposition of Materials are reasonable and fair.

**10. License.** Customer grants Technicolor a royalty-free, non-transferable license to reproduce and distribute copies of Materials (as hereinafter defined) to the extent necessary for Technicolor to perform its obligations under the Purchase Agreement.

**11. Warranties, Representations.** Each party to this Agreement warrants and represents that (i) it is a corporate entity in good standing with the full right power and authority to enter into and be bound by the terms and conditions of this Agreement. (iii) all proceedings or corporate action necessary for the authorization, execution, delivery and performance of this Agreement and any other agreements contemplated hereby have been taken and remain in full force and effect and the execution, delivery and performance of such agreements has been duly and validly authorized, (iv) this Agreement and any other agreements contemplated hereby constitute the valid and binding obligation of such party enforceable against such party in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, arrangement, moratorium or other similar laws and by general principles of equity, (v) the execution, delivery and performance of this Agreement and the other agreements contemplated hereby will not result in any material violation of, or materially conflict with,

or constitute a material default under, any of its charter documents, agreements, or applicable law or order by which it is bound or affected, nor require any consent or notification to any person not given, (vi) there is no litigation in progress, pending or in effect, or to the knowledge of such party threatened, against or relating to such party that could have a material adverse effect on the ability of such party to perform hereunder, and (vii) no insolvency proceedings or other bankruptcy proceeding of any nature is now pending or to such party's knowledge threatened by or against it.

12. **Indemnification.**

   (a)   **Indemnity by Technicolor.**  Technicolor will indemnify, defend and hold harmless Customer from and against Claims arising out of or related to (i) Technicolor's breach of any of the representations and warranties contained in paragraph 11 above; (ii) Technicolor's failure to pay any royalties or other payments required in connection with the patents which Technicolor is responsible to pay royalties as provided for herein; (iii) Technicolor's infringement of a third party's rights including any violation, misappropriation or infringement of any Intellectual Property ("IP") Rights (but excluding patent infringement which is covered in (a)(ii) above) or violation of law related to or resulting from Technicolor's manufacturing process hereunder; and (iv) personal injury resulting from the defective manufacture, design, or labeling of the products manufactured by Technicolor.

   (b)   **Indemnity by Customer.**  Customer will indemnify, defend and hold harmless Technicolor from and against any Claims arising out of or related to (i) Customer's breach of any of the representations and warranties contained in paragraph 11 above; (ii) any violation, misappropriation or infringement of any IP Rights or third party rights or violation of law related to Customer content provided by Customer to Technicolor hereunder including, but not limited to, any and all music or other royalties in connection with Customer content; or (iii) failure of Customer to have the necessary rights to grant Technicolor rights to use any Customer content provided by Customer to Technicolor hereunder.

13. **Insurance.**

   (a)   Technicolor shall maintain during the Term (i) a property insurance policy covering theft, fire and other risks determined to be necessary by Technicolor for Products and Materials owned by Customer and stored in Technicolor's facilities under this Agreement and with a policy limit of sufficient to cover the Replacement Cost of such Products and Materials and (ii) product liability coverage for Products and Materials provided by Technicolor (the "**Policies**"). Customer shall be entitled to request satisfactory evidence of the Policies, and Customer will be provided with a certificate of insurance. Technicolor shall neither (i) modify such Policies where the Policies as modified would fail to meet the requirements of this section nor (ii) cancel or terminate such Policies unless a substitute insurance policy or policies are put in place providing uninterrupted coverage meeting the requirements of this section.

   (b)   In connection with the shipment of any Products that Technicolor is responsible for hereunder, Technicolor shall maintain or cause to be maintained insurance for up to $100,000 per truckload, $5.00 per pound for LTL and UPS, $0.05 per pound for air shipment, and $100 per parcel and shall coordinate any claims and insurance recovery with the shipping companies it retains for shipment and the applicable insurance carriers. Except as otherwise provided for herein, Customer's sole recovery and Technicolor's sole liability for Product during shipment (e.g., damaged, destroyed, lost or stolen) shall be limited to the amounts/insured levels set forth above, it being understood that the measure of loss/damage for any Products lost or damaged during shipment shall be the Replacement Cost.

14. **Technicolor's Rights in Tooling, Programs, Specifications and Data.**  Technicolor shall retain title to all tooling, including masters, stampers, and other tooling, produced by Technicolor. Technicolor shall also retain all rights in computer programs, specifications, or data developed by Technicolor in or for the performance of this Purchase Agreement, notwithstanding whether such computer programs, specifications or data were developed by Technicolor for Customer or otherwise.

15. **Export Compliance.**  Customer agrees not to export any product manufactured for it by Technicolor in violation of any export control laws, rules or regulations.

16. **Confidentiality.**  If Customer discloses confidential information to Technicolor and clearly identifies such information in writing as "confidential," Technicolor shall use reasonable care to ensure that such information is disclosed only to Technicolor employees requiring access to such information to render the services or manufacture product requested by Customer. Nothing herein shall limit

Technicolor's' right to use or disclose information that (a) becomes available to the public without fault of Technicolor; (b) is lawfully acquired by Technicolor from a third party; (c) is in the possession of Technicolor at the time of disclosure by Customer; (d) is developed by or on behalf of Technicolor by persons who have not received Customer's confidential information, or (e) is required by document subpoena, civil investigative demand, interrogatories, request for information or other similar process of law or by any government action or court of competent jurisdiction. The parties undertake to maintain in confidence, during and after the term of this Agreement, all terms and conditions contained in this Agreement, any information, including without limitation, prices, projections, release schedules, trade secrets, and proprietary rights howsoever acquired by or disclosed to it by the other party (the "Information") and undertake to procure that their respective parent and/or affiliated companies and their officers, directors, employees, agents and other representatives do the same. Customer expressly warrants, represents and undertakes that it shall at all times during and after the term of this Agreement employ its best efforts to assure that neither Customer nor any officer, director, employee, agent or other representative of Customer discloses, under any circumstances, any part of the Information hereunder to any officer, director, employee, agent or other representative of Technicolor's competitors.

**17. Force Majeure.** Technicolor will not be responsible for failure to fulfill its obligations under any Purchase Agreement if such failures caused by circumstances beyond the reasonable control of Technicolor or its suppliers or contractors, including but not limited to acts of God, unavailability of materials, equipment failures, strikes or other labor disturbances.

**18. Default, Right to Cure.** Except as otherwise provided in the Purchase Agreement, a party hereto shall be deemed to be in default if such party materially fails to comply with any material provisions hereof or to fulfill any of its material obligations hereunder in the manner prescribed (herein a "Material Default"). Subject to a defaulting party's right to cure hereunder, a party shall be entitled to terminate the Purchase Agreement based on a Material Default of the other party which remains uncured after expiration of the relevant cure period, if any.

Certain defaults hereunder may or may not be curable. The determination of whether a default is or is not curable depends upon all the relevant facts and circumstances. Except as otherwise provided for herein, should either party (the "Non-Defaulting Party") allege that the other party (the "Defaulting Party") is in default of the Purchase Agreement the Non-Defaulting Party shall give the Defaulting Party written notice with full details of the facts and circumstances of such alleged default. If and to the extent that the default is curable the Defaulting Party shall commence to cure forthwith and diligently pursue the same until or to the extent that such default is or may be cured. In the event of a curable default, the Defaulting Party shall be deemed to have breached the Purchase Agreement if and only if it has failed to cure the curable default (i) within ten (10) days for a default in the payment of money after receipt of written notice of said default or (ii) in a timely fashion after receipt of the applicable written notice for all other defaults. Should the Defaulting Party cure such curable default within the periods specified above, the Non-Defaulting Party shall have no right to terminate the Purchase Agreement, without prejudice to any other rights or remedies the Non-Defaulting Party may have hereunder. If either party hereto files or has filed against it a petition in bankruptcy or is adjudged a bankrupt, or if such party becomes insolvent, or makes an assignment for the benefit of creditors, or discontinues its business or a receiver is appointed for such party or such party's business that is not discharged within fifteen (15) days (a "Bankruptcy Condition"), the other party may terminate the Purchase Agreement on ten (10) days prior written notice, provided such party in default shall not have remedied such failure within such ten (10) day period.

**19. Successors and Assigns.** The Purchase Agreement shall be binding upon and inure to the benefit of the respective successors and assigns of the parties hereto. The Purchase Agreement shall not be assigned by a party without the written consent of the other party, except (i) in the reorganization of the assigning party, or (ii) to any corporation or entity with which the assigning party is merged or consolidated, or (iii) to any corporation or entity which succeeds to all or substantially all of the assigning party's assets, or (iv) to any corporation or entity which controls, is controlled by, or under common control with the assigning party. Technicolor may assign any of its accounts receivable under the terms of the Purchase Agreement, and Customer agrees to cooperate in any reasonable manner with any such assignee or assignees in making payments otherwise due to Technicolor, provided such arrangement does not increase the extent of Customer's obligations hereunder unless Customer otherwise agrees in writing.

**20. Severability.** If any provision in the Purchase Agreement is found to be invalid, unenforceable or void by a court of competent jurisdiction, such provisions shall be deemed to be severed from the Purchase Agreement, and the remaining provisions will remain in full force and effect.

**21. Governing Law.** The Purchase Agreement shall be governed by and constructed in accordance with the laws of the State of California without respect to conflict of laws principles and the parties hereby submit to the non-exclusive jurisdiction of any court of competent jurisdiction in the Central District of the County of Los Angeles, State of California in connection with any dispute which may arise under the Purchase Agreement or its implementation or enforcement. The prevailing party in any such proceeding shall be entitled to its actual, reasonable and verifiable legal fees and costs.

## 6. Acceptance

Please acknowledge your acceptance to this Agreement by signing below and returning one complete copy of this document together with a signed original of the attached Agreement and Application for Credit document.

This Agreement is entered into on the basis that its existence and content are to be kept strictly confidential and may not be disclosed without our prior written consent to anyone other than your employees and advisors who have a need to know and who you will ensure are made aware of the terms of this paragraph and who will be similarly obliged to maintain confidentiality.

BY SIGNING THIS DOCUMENT THE CUSTOMER REPRESENTS THAT HE/SHE HAS READ THE FOREGOING TERMS AND CONDITIONS OF DOING BUSINESS AND AGREES THAT THE SERVICES RENDERED AND MATERIALS FURNISHED SHALL BE GOVERNED BY THE ABOVE TERMS AND CONDITIONS. THESE TERMS AND CONDITIONS CAN ONLY BE MODIFIED BY A WRITTEN INSTRUMENT SIGNED BY TECHNICOLOR AND CUSTOMER.

IN WITNESS WHEREOF, the parties have signed this Agreement by a duly authorized officer as of the date first written above.

**Screen Media Films, LLC.**

By: *David T. Fannon*

Name: David Fannon

Date: June 2, 2020

**Technicolor Home Entertainment Services, Inc.**

By: *Patricia Dave* (DocuSigned by: A50510S4EEEB446)

Name: Patricia Dave

Title: CFO

Date: 6/5/2020

**Technicolor Home Entertainment Services Southeast, LLC.**

By: *Patricia Dave* (DocuSigned by: A5051024EEEB446)

Name: Patricia Dave

Title: CFO

Date: 6/5/2020



**Agreement and Application for Credit** (All Sections Mandatory, Attachments May be Used)

Technicolor Home Entertainment Services, Inc.
3233 East Mission Oaks Boulevard
Camarillo, California  93012

Attention: Credit Department
Phone:  (805) 445-1122
Fax:      (805) 445-0042

Full Name of Customer: _____   Telephone: (____)_____

Address: _____   Fax Number: (____)_____

Primary Contact: _____   In Business Since: _____

Web Site Address: _____

Accounts Payable Email Contact Address: _____