**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>CHICKEN SOUP FOR THE SOUL<br>ENTERTAINMENT, INC., et al.,<br><br>Debtors. | Chapter 7<br><br>Case No. 24-11442 (MFW)<br><br>Jointly Administered<br><br>**Obj. Deadline: 10/2/24 by 4:00p.m. (ET)**<br>**Hearing Date: 10/9/24 at 2:00p.m. (ET)** |

**MOTION OF AHOLD DELHAIZE USA SERVICES, LLC FOR ENTRY**
**OF AN ORDER (I) COMPELLING ABANDONMENT OF DEBTORS' PROPERTY;**
**(II) LIFTING THE AUTOMATIC STAY TO PERMIT AHOLD DELHAIZE USA**
**SERVICES, LLC TO TERMINATE CONTRACT AND REMOVE AND DISPOSE OF**
**DEBTORS' PROPERTY; AND (III) GRANTING RELATED RELIEF**

Ahold Delhaize USA Services, LLC, formerly known as Retail Business Services, LLC ("ADUSA"), files this motion (the "Motion") and, in support thereof, respectfully represents as follows:

**RELIEF REQUESTED**[1]

1.      By this Motion, ADUSA requests the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) compelling the Trustee to abandon the Kiosks that remain on ADUSA's affiliates' premises in connection with the Operating Agreement entered into between ADUSA and Redbox Automated Retail, LLC ("Redbox"), one of the debtors in the above-captioned chapter 7 cases (collectively, the "Debtors"); (ii) granting ADUSA relief from the automatic stay to terminate the Operating Agreement and remove, sell, and/or otherwise dispose of the Kiosks remaining on ADUSA's affiliates' premises; (iii) waiving the 14-day stay pursuant to Bankruptcy Rule 4001(a)(3); and (iv) granting related relief.

---

[1] Capitalized terms used but not defined in this section of the Motion shall have the meanings ascribed to them *infra*.

2.      In support of the Motion, ADUSA relies upon and fully incorporates by reference the Declaration of Shawn Sousa, attached hereto as **Exhibit B** (the "Sousa Declaration").

## JURISDICTION

3.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b), and this Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105, 362(d), 365(b) and (d), and 554(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), rule 4001, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 4001-1 and 9013-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Local Rules").

## BACKGROUND

### Kiosk Operating Agreement and Related Prepetition Events

5.      ADUSA and Redbox entered into that certain Kiosk Operating Agreement, effective as of October 20, 2020 (as amended or otherwise modified from time to time, the "Operating Agreement"),[2] pursuant to which Redbox installed over 500 automated kiosks (collectively, the "Kiosks") on the premises of various supermarket chains—affiliated with ADUSA through the corporate structure of Ahold Delhaize USA, Inc., such as Food Lion, LLC ("Food Lion"), and Hannaford Bros. Co., LLC ("Hannaford")[3]—that are located throughout the

---

[2] For confidentiality reasons, ADUSA has not attached to this Motion a copy of the Operating Agreement or any amendments thereto.  Upon request by the Trustee, the Court, or another party whose interests may be impacted by the relief requested herein, ADUSA will provide a copy of the Operating Agreement to the requesting party.

[3] For ease of reference throughout this Motion, ADUSA and its affiliates will be referred to collectively as ADUSA.

United States.  Sousa Declaration, ¶¶ 3-4.  In exchange for the right to operate the Kiosks on the above-described premises, Redbox agreed to, in relevant part, pay ADUSA a quarterly commission.  Sousa Declaration, ¶ 4.  Pursuant to Sections 2.1 and 2.3 of the Operating Agreement, the Kiosks are owned and operated by Redbox and serve to vend movies to customers for purchase or rent.  Sousa Declaration, ¶¶ 4-5.

6.      The initial term of the Operating Agreement ended on October 19, 2022 and was extended to October 19, 2025 pursuant to that certain First Amendment to Kiosk Operating Agreement, dated as of October 1, 2022.  Sousa Declaration, ¶ 3.

7.      Article 9 of the Operating Agreement governs termination of the agreement, and provides ADUSA the right to terminate the Operating Agreement in a multitude of ways, including termination for cause due to a material breach by Redbox pursuant to Section 9.2 (subject to a 21-day cure period).

8.      On April 25, 2024, ADUSA sent to Redbox a letter seeking to terminate the Operating Agreement due to, among other things, Redbox's failure to pay, in violation of Section 7(a) of the Operating Agreement, $157,465.72 to Food Lion and $67,647.36 to Hannaford on account of their respective rental commissions earned for year 2023 in connection with the Kiosks operating on their premises (the "Termination Letter").  The Termination Letter requested Redbox, by no later than September 1, 2024, to (i) remove the Kiosks; (ii) surrender possession of the various premises on which the Kiosks are installed; and (iii) return the various premises on which the Kiosks are installed in good clean condition.  The Termination Letter also asked that Redbox respond to ADUSA's Termination Letter by June 1, 2024 with a schedule setting forth Redbox's plan to remove the Kiosks from the affected premises.  Sousa Declaration, ¶ 6.

9.      On May 14, 2024, an account manager at Redbox emailed ADUSA to inform them, among other things, that given the Debtors' financially constrained situation, Redbox would be "unable to schedule relocation and or kiosk removal tasks with [its] third-party operational vendors." Sousa Declaration, ¶ 7. A true and correct copy of the May 14, 2024 email is attached hereto as **Exhibit C**.

10.     As of the Petition Date (as defined below), the Kiosks remained (and continue to remain) on ADUSA's affiliates' premises and the rental commissions set forth in the Termination Letter, totaling $225,113.08, plus additional amounts that have accrued pursuant to the terms of the Operating Agreement[4], remain outstanding. Sousa Declaration, ¶ 8. Redbox's failure to remove the Kiosks from the premises has caused, and continues to cause, ADUSA, and its affiliates, Food Lion and Hannaford, not only economic harm but also loss of use and enjoyment of the premises that is difficult to assign a monetary value to. Moreover, Redbox's failure to remove the Kiosks from the premises risks exposing ADUSA's affiliates' premises to potential damage due to customers attempting to break into the Kiosks to steal the movies contained inside the Kiosks. Sousa Declaration, ¶ 9.

***Bankruptcy Proceedings***

11.     On June 28 and 29, 2024 (collectively, the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.

12.     On July 10, 2024, the Court entered an order converting the Debtors' chapter 11

---

[4] In addition to the quarterly rental commission amounts and any other amounts that may remain owed by Redbox to ADUSA that may not be described herein, Redbox owes a broad indemnification obligation to ADUSA pursuant to Article 12 of the Operating Agreement to indemnify ADUSA from, without limitation, any and all liabilities, costs, claims and damages relating to a breach of Redbox under the Operating Agreement. Given the posture of these cases, it is unlikely that Redbox will honor its ongoing indemnification obligation to ADUSA at anything close to its full value, if at all. Nonetheless, ADUSA reserves the right to assert these amounts and claims against the Debtors and nothing contained herein shall be construed to waive such claims against Redbox or its affiliated Debtors, as applicable.

cases to chapter 7 cases pursuant to chapter 7 of the Bankruptcy Code (the "Conversion Order") [Docket No. 120].

13.     On July 11, 2024, Mr. George L. Miller was appointed as the chapter 7 trustee (the "Trustee") of the Debtors' estates [Docket No. 130].

14.     Pursuant to sections 348(c) and 365(d)(1) of the Bankruptcy Code and Bankruptcy Rule 9006(a), the Operating Agreement was deemed rejected as of September 9, 2024.

<b>BASIS FOR RELIEF REQUESTED</b>

**A.      The Court Should Compel the Trustee to Abandon the Kiosks Remaining on ADUSA's Affiliates' Premises**

15.     Section 554(b) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b).

16.     As stated above, Redbox began neglecting the Kiosks for months leading up to the Petition Date and expressly represented to ADUSA prior to the Petition Date it had no intention of operating or servicing the Kiosks as it is obligated to pursuant to the terms of the Operating Agreement. As such, the Debtors have already effectively abandoned the Kiosks remaining on the various premises. ADUSA is unaware of any legitimate, viable alternative for the Kiosks pursuant to which the Trustee would monetize them for the benefit of the Debtors' estates and their creditors, rendering the Kiosks of little to no value and benefit to the estate. Indeed, as noted above, pursuant to sections 348(c) and 365(d) of the Bankruptcy Code and Bankruptcy Rule 9006(a), the Operating Agreement was deemed rejected as of September 9, 2024 because the Trustee did not assume or reject the Operating Agreement within sixty (60) days following the date the Conversion Order was entered.

5

17.     It is ADUSA's understanding that some of the Kiosks cannot merely be unplugged and hauled away, as the Kiosks not only appear to be bolted to the ground and hardwired to the exterior walls of storefronts but are also very large, heavy, and difficult to move pieces of equipment.  Moreover, it is ADUSA's understanding that all of Redbox's kiosks contain a coolant solution in varying amounts – dependent upon whether they are located inside or outside of a storefront – requiring the Kiosks to be removed in an environmentally safe manner.  The need to dispose the Kiosks in an environmentally friendly manner is expected to increase ADUSA's costs to dispose of the Kiosks considerably.  As such, efforts to remove the Kiosks from ADUSA's affiliates' premises will require ADUSA to spend a considerable sum of money to hire and coordinate with a number of third parties to visit each of the premises upon which the Kiosks are installed to properly remove the Kiosks so that (i) any damage to the premises in the removal process is minimized; and (ii) environmental risks inherent in disposing the Kiosks are appropriately addressed.  Sousa Declaration, ¶ 9.

18.     Accordingly, ADUSA submits that sufficient grounds are present in the case at bar to warrant compelling the Trustee to abandon the Kiosks so that ADUSA may timely and responsibly begin the removal process of the Kiosks from the premises.  Failure to do so not only minimizes ADUSA's use and enjoyment of the premises absent the bulky Kiosks, it also risks damage and theft from the Kiosks as well as potential damage to ADUSA's affiliates' premises. The longer the Kiosks remain on the premises inoperable, individuals may attempt to break into the Kiosks to steal the movies, thereby causing damage not only to the Kiosks but potentially damaging ADUSA's affiliates' premises in the process.  Sousa Declaration, ¶ 9.

B.    **The Court Should Grant Relief from the Automatic Stay to Permit ADUSA to Terminate the Agreement and Remove and Dispose of the Kiosks on ADUSA's Affiliates' Premises**

19.    In addition to the relief requested above, the Court should grant ADUSA relief from automatic stay to permit ADUSA to terminate the Operating Agreement and remove, sell and/or otherwise dispose the kiosks from the premises.

20.    The Court may grant a party in interest relief from the automatic stay "for cause". 11 U.S.C. § 362(d)(1).  Cause is a flexible concept and courts conduct a fact intensive, case-by-case analysis, examining the totality of the circumstances to determine whether cause exists to lift the automatic stay.  *See, e.g., Baldino v. Wilson (In re Wilson),* 116 F.3d 87, 90 (3d Cir. 1997); *In re SCO Grp., Inc.*, 359 B.R. 852, 856 (Bankr. D. Del. 2007) (citations omitted); *Issarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).  "The party seeking relief from the automatic stay bears the burden of establishing a *prima facie* case of cause."  *In re Ashcraft*, No. 20-12725 (BLS), 2024 WL 1986078, at *2 (Bankr. D. Del. May 3, 2024).  "The movant may establish cause by showing that the balance of hardships from not obtaining relief tips significantly in its favor."  *Id*.

21.    The Delaware Bankruptcy Court has developed a three-prong test to determine whether to grant relief from the automatic stay: (i) whether any great prejudice to either the bankruptcy estate or the debtor will result from a lifting of the stay; (ii) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and (iii) the probability of the creditor prevailing on the merits.  *In re Downey Fin. Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010).

22.    For the reasons set forth below, ample cause exists to grant ADUSA relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code to terminate the Operating Agreement and to remove, sell, and/or otherwise dispose the Kiosks, should the Trustee fail to do

so.  First, great prejudice would result to ADUSA, rather than the Debtors, should the Operating Agreement remain in force.  Redbox can no longer perform under the Operating Agreement because the Debtors are now subject to liquidation pursuant to chapter 7 of the Bankruptcy Code and, as such, will not be operating as a going concern.  The Operating Agreement has also been deemed rejected by operation of sections 348(c) and 365(d) of the Bankruptcy Code.  Further, the Trustee has not filed a motion with this Court seeking to operate the Debtors' business and, to date, ADUSA is aware of no viable path forward identified by the Trustee with respect to relocation or removal of the Kiosks from ADUSA's affiliates' premises.

23.     As stated above, under the Operating Agreement, Redbox is the exclusive party authorized to service, operate, and remove the Kiosks from the premises.  Absent relief from the automatic stay to terminate the Operating Agreement, ADUSA is unable to rid its affiliates' various premises of the cumbersome, unwanted Kiosks—Kiosks that the Debtors and the Trustee effectively have already abandoned—thereby depriving ADUSA affiliates' from use and enjoyment of the premises.  This is a clear-cut example of prejudice to ADUSA, while no such prejudice to the Debtors or their estates exists.

24.     Second, the balancing of hardships also weighs in favor of lifting the stay as it applies to ADUSA so that ADUSA may terminate the Operating Agreement and remove, sell, and/or otherwise dispose the Kiosks.  As mentioned above, the Debtors converted the bankruptcy proceedings to chapter 7 cases, no longer have an operational business, and the Operating Agreement is already deemed rejected.  Conversely, ADUSA's affiliates have a vested interest in caring for and maintaining their respective premises.  Further, as mentioned above, should the Kiosks continue to remain inoperable on ADUSA's affiliates' premises for an indeterminable amount of time, risk of damage due to theft not only increases for the Kiosks but also poses a threat

8

to ADUSA's affiliates' premises.  If the relief requested in this Motion is granted, ADUSA will be enabled to take swift measures to begin the complex, expensive, and time intensive process of coordinating the removal of the over 500 Kiosks installed on ADUSA's affiliates' premises and restore the premises to their condition prior to the placement of the Kiosks by Redbox.  Again, there is no such hardship that will result to the Debtors or their estates.

26. Third, absent the automatic stay, ADUSA has the legal right to terminate the Operating Agreement and effectuate the removal of the Kiosks from the premises. More specifically, pursuant to Section 9.2 of the Operating Agreement, ADUSA could terminate the agreement for cause, on 21-days' notice, given Redbox's breach of Section 7(a) by failure to pay to ADUSA its rental commissions, among other breaches thereunder.  Moreover, Redbox not only can no longer provide the required services and obligations under the Operating Agreement due to these chapter 7 cases, it stopped performing under the Operating Agreement and effectively abandoned the Kiosks well before the Petition Date.  ADUSA would prevail on the merits of any proceeding arising from such breaches of Redbox.

26. For these reasons, ADUSA submits that cause exists to lift the automatic stay to permit it to terminate the Operating Agreement and to coordinate the removal, sale, and/or otherwise disposal of the Kiosks on ADUSA's affiliates' premises.

## WAIVER OF BANKRUPTCY RULE 4001(A)(3) STAY

27. Pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3), ADUSA requests that the Court direct that any order modifying the stay is immediately enforceable and not subject to the customary 14-day stay.  Continuance of the automatic stay does not serve any purpose other than to delay ADUSA's right to terminate the Operating Agreement and thereby further increase the likelihood of harm to ADUSA.  For the reasons set forth above, this is not a case where granting relief from the automatic stay will create enormous consequences for the parties involved or dictate

the success or failure of the entire bankruptcy case. *See* 9 Collier on Bankruptcy P 4001.05 (16 2023) (circumstances where 14-day stay is imposed). Thus, this Court should waive the 14-day stay imposed under Bankruptcy Rule 4001(a)(3).

**NOTICE**

28.    Notice of this Motion has been or will be provided to: (i) counsel for the Debtors, (ii) the Trustee and his counsel, (iii) the United States Trustee; and (iv) all parties that have filed in this case a request for service under Fed. R. Bankr. P. 2002(i). ADUSA submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, ADUSA respectfully requests entry of an order (i) compelling abandonment of the Operating Agreement; (ii) granting ADUSA relief from the automatic stay to terminate the Operating Agreement and remove, sell, and/or otherwise dispose of the Kiosks remaining on ADUSA's affiliates' premises; (iii) waiving the 14-day stay pursuant to Bankruptcy Rule 4001(a)(3); and (iv) granting such other relief as the Court may deem equitable, just and necessary.

Dated: September 19, 2024                    Respectfully submitted,


*/s/ Karen C. Bifferato*
Karen C. Bifferato (No. 3279)
**CONNOLLY GALLAGHER LLP**
1201 N. Market Street, 20th Floor
Wilmington, Delaware 198001
Telephone:    (302) 888-6221
E-mail:        kbifferato@connollygallagher.com

-and-

Gregory G. Hesse (TX Bar No. 09549419)
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Telephone:    (214) 979-3000

E-mail:          ghesse@HuntonAK.com

-and-

Catherine A. Rankin (TX Bar No. 24109810)
**HUNTON ANDREWS KURTH LLP**
600 Travis Street, Suite 4200
Houston, Texas 77002
Telephone:     (713) 220-4200
E-mail:          crankin@HuntonAK.com

***Counsel for Ahold Delhaize USA Services, LLC,
formerly known as Retail Business Services, LLC***