```
 1                       UNITED STATES BANKRUPTCY COURT
                             DISTRICT OF DELAWARE
 2

 3    IN RE:                      .  Chapter 7
                                  .  Case No. 24-11442 (MFW)
 4    CHICKEN SOUP FOR THE        .
      SOUL ENTERTAINMENT, INC., .  (Jointly Administered)
 5    et al.,                     .
                                  .  Courtroom No. 4
 6                                .  824 Market Street
                Debtors.          .  Wilmington, Delaware 19801
 7                                .
                                  .  Wednesday, October 9, 2024
 8    . . . . . . . . . . . . . .  4:00 p.m.

 9
                            TRANSCRIPT OF HYBRID HEARING
10                   BEFORE THE HONORABLE MARY F. WALRATH
                        UNITED STATES BANKRUPTCY JUDGE
11

12    APPEARANCES:

13    For the Chapter 7
      Trustee:                    John T. Carroll III, Esquire
14                                COZEN O'CONNOR, LLP
                                  1201 North Market Street
15                                Suite 1001
                                  Wilmington, Delaware 19801
16

17

18

19    (APPEARANCES CONTINUED)

20    Audio Operator:            Lesa Neal, ECRO

21    Transcription Company:     Reliable
                                 The Nemours Building
22                               1007 N. Orange Street, Suite 110
                                 Wilmington, Delaware 19801
23                               Telephone: (302)654-8080
                                 Email:  gmatthews@reliable-co.com
24
      Proceedings recorded by electronic sound recording,
25    transcript produced by transcription service.
```

1  APPEARANCES (CONTINUED):

2  For the Chapter 7
   Trustee:                    Richard M. Pachulski, Esquire
3                              PACHULSKI STANG ZIEHL & JONES, LLP
                               10100 Santa Monica Boulevard
4                              11th Floor
                               Los Angeles, California 90067
5

6  For William Rouhana
   and Chicken Soup for
7  the Soul, LLC:              Donald J. Detweiler, Esquire
                               WOMBLE BOND DICKINSON (US), LLP
8                              1313 North Market Street
                               Suite 1200
9                              Wilmington, Delaware 19801

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1                                  INDEX

2    MOTIONS:                                               PAGE

3    Agenda
     Item 1:    Scheduling Conference                         4
4
                Court's Ruling:                              13
5

6    Transcriptionist's Certificate                         16

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      (Proceedings commenced at 4:00 p.m.)

2          THE COURT:  Good afternoon, this is Judge Walrath.

3  We're here for a scheduling conference on Chicken Soup.

4          Mr. Detweiler asked for the conference, so...

5          MR. DETWEILER:  Okay.  Thank you, Your Honor, and

6  may I please the Court, Donald Detweiler, along with Cathy

7  Hinger and Claire Rauscher, on behalf of Chicken Soup for the

8  Soul, LLC, the nondebtor parent company of the debtor

9  entities, as well as Mr. Bill Rouhana.

10         We thank the Court for scheduling the status

11  conference and hopefully, it'll be relatively short.

12         There were a couple of issues that you may have

13  seen from the emails that were correspondence with your

14  deputy courtroom clerk, Ms. Capp, with Mr. O'Neill and I with

15  regard two applications, two retention applications that are

16  pending before the Court.

17         Your Honor, are you able to hear me okay, Your

18  Honor?

19         THE COURT:  Yes.

20         MR. DETWEILER:  Okay.  All right.

21         So there are two applications that are pending

22  before the Court are, first, the Chapter 11 retention

23  application of the Pachulski firm filed by Mr. Warshauer and

24  then the Chapter 7 Trustee retention application of the

25  Pachulski firm, filed by Mr. Miller.

1           Our clients had objected to the two retention

2  applications and while the applications should be relatively

3  straightforward, I think the facts and issues get a little

4  dense at times.  The debtors, or excuse me, the applicants

5  have told us that they wish to proceed via Zoom hearing.  We

6  advised them that we believed that the hearing should be in

7  person.  There are three witnesses that the applicants intend

8  to call, as we understand it:  first was Mr. Pachulski;

9  second was Mr. Miller; and third was Mr. Warshauer.  So you

10 have the two applicants, plus the declarant, Mr. Pachulski.

11 And we said that we wanted the hearing in person to examine

12 the witnesses, given the issues.

13          The purpose of the status conference, we think, is

14 threefold.  It's, one, is to address that hearing of a Zoom

15 hearing versus an in-person hearing on the applications.

16 Second, before any meet-and-confer occurred in the case,

17 yesterday, we received some written discovery requests for

18 production of documents from the Pachulski firm, requesting

19 certain documents from our clients, as well as notices of

20 deposition of Mr. Rouhana and a 30(b)(6) deposition of a

21 representative of CSS.

22          All of this is to tell Your Honor that we plan to

23 file some objections to the requested discovery and wanted to

24 alert Your Honor to the same and especially as you may be

25 considering a hearing date in the case.

1         We were also told last week when things started

2    moving forward that the Pachulski firm, or the applicants,

3    wanted to depose five additional witnesses:  the former

4    debtors' counsel, the Reed Smith -- two Reed Smith people;

5    Mr. Rouhana; Ed Edwards from the company; and another

6    individual whose name currently escapes me.

7         We said, look, we'll reserve the right to depose

8    your witnesses, as well.  So there could be some discovery

9    disputes.  And that's the point of this, is to tell Your

10   Honor that there may be some discovery disputes coming down

11   the pike.

12        The third part of the, the purpose for the status

13   conference is, when you take a step back from everything and

14   you look at the undisputed, uncontroverted, in our opinion,

15   the undisputed, uncontroverted facts, we believe the Court

16   may be able to decide the issues, the retention on the

17   papers.  And, specifically, it deals with the Chapter 11

18   retention application that was filed by Mr. Warshauer.  He's

19   a former director.  He wasn't a director at the time that he

20   filed the declaration, so we say that he lacks the requisite

21   corporate authority, after the fact, to go back and try to

22   seek the retention of the Pachulski firm.

23        We're prepared for purposes of trying to find some

24   efficiency, which Mr. O'Neill mentioned in his email

25   yesterday, we're prepared to file either a motion in limine

1   to exclude his declaration or, perhaps, even a motion to

2   strike or a motion for a directed verdict on the issue.

3   Because we believe if they lacks the requisite corporate

4   authority to file the application after the fact, then,

5   necessarily, the 327(e) application fails, which is the

6   applicant needed to be retained by the debtors or had

7   represented the debtors.

8            So those are the three points.

9            And then lastly, Your Honor, I think if we're

10  going to move forward with evidentiary hearing in the matter,

11  we probably need to get a scheduling conference or a

12  scheduling order in place with the Court.  So that was the

13  point of the status conference, Your Honor.

14           THE COURT:  Does the trustee wish to respond?

15           MR. PACHULSKI:  I assume, Your Honor, that we

16  would do it on behalf of our firm, but I don't know

17  whether -- who your -- Mr. Carroll is also here

18  (indiscernible).

19           MR. CARROLL:  No, I don't have a response at this

20  time, Your Honor.  I think I'll leave it up to Pachulski.

21           THE COURT:  Okay.

22           Mr. Pachulski, go ahead.

23           MR. PACHULSKI:  Thank you so much, Your Honor.

24           Richard Pachulski of Pachulski Stang Ziehl & Jones

25  in these cases on behalf of the firm.  I'm also here with my

1  partners, Mr. O'Neill and Mr. Kornfeld, with respect to

2  potentially any arguments.  To be frank, Your Honor, I

3  thought the status conference was specifically about whether

4  we're going to have Zoom or not.  There's been a lot more

5  said so I'll address it.

6          But I think I'm going to start primarily with what

7  I thought the issue was, which is whether this should be by

8  Zoom or whether this should be by an in-person hearing.  But

9  I will respond to some of the other comments that have been

10 made by Mr. Detweiler.

11         First, so Your Honor knows, after the filing of

12 the objection and some of the issues that were raised -- and

13 to be very clear, there's no declaration that supports

14 anything that is stated in the opposition, but that's the

15 opponent's choice -- but the U.S. Trustee had a number of

16 issues.  We've addressed those issues.  I don't know if we've

17 already filed the declaration with respect to that, but

18 the -- I believe Mr. O'Neill is nodding his head, so the U.S.

19 Trustee has no objection to either the 327(a) in the

20 Chapter 11 case or the 327(e), with respect to the Chapter 7

21 case.

22         So, for at least Your Honor's edification, I

23 wanted to make that very clear and also to make very clear

24 that Mr. Detweiler, in filing his pleading, makes a lot of

25 spurious claims, including against my firm without a

1  declaration, but he fails to mention that his client may have

2  committed criminal acts by failing to file payroll taxes or

3  by taking money for medical expenses, which Your Honor will

4  see in reviewing --

5          THE COURT:  I don't need any of the facts.

6          Let's talk about scheduling.

7          MR. DETWEILER:  Thank you, Your Honor.

8          THE COURT:  Discovery, I don't want to hear the

9  merits of anything.

10          MR. PACHULSKI:  Okay.  That's fine, Your Honor.

11          So, but the only issue, because Mr. Detweiler has

12  responded to what some of the issues are, the issues are not

13  unique, as Mr. Detweiler seems to say in his email.  As he

14  said, it's not unique whether or not if a case that's

15  converted, the members of the board can sign a 327(a)

16  application.

17          That is a legal issue.  We can take that on.

18  Mr. Warshauer effectively resigned because the Chapter 7, for

19  all intents and purposes, made his resign.  That's one of the

20  issues.

21          The other issue is because whether our firm

22  approximately three years ago had two matters that

23  represented less than .1 percent of our firm's revenue, so

24  not even a percent, with respect to HPS, but we have -- not

25  with respect to this matter.  They raised the issue with

1  respect to another creditor.  I'm not even sure what their

2  claim was, but our firm has represented them and takes the

3  position that because we represented the SRC on behalf of

4  it --

5          THE COURT:  I don't need to get into the merits of

6  all of this.

7          MR. PACHULSKI:  That's fine.  And I'm not trying

8  to get into the merits; I'm just trying to state the

9  (indiscernible), Your Honor.  That's all.

10          THE COURT:  Yeah, I don't need that.

11          MR. PACHULSKI:  So here is the issue, Your Honor.

12  In terms of the discovery, we have asked to take

13  Mr. Rouhana's deposition.  He's the objecting party.  And he

14  has made a number of allegations, which we think are

15  materially false, and so we've asked for his deposition.

16          We've asked for documents specifically -- we're

17  very specific and Your Honor doesn't have it in front of you

18  because we didn't think this was going to be the issue -- but

19  documents with respect to allegations made in the pleading

20  and with respect to, and also with respect to board minutes.

21  Very limited.  If Mr. Detweiler wants to litigate all that,

22  we can do it, but I think we have the right to take the

23  objecting party's deposition, who was the CEO of the company

24  and was -- is making the claim.  So that's for another day.

25          The reason we're asking by Zoom is it isn't

1   complicated, but more importantly, the -- and my schedule is
2   not a problem -- but Mr. Warshauer, who has a full-time job
3   and has never been paid a dime by anybody, including, as is
4   required to by the debtors, has -- is willing to cooperate,
5   but the dates don't work.  And Mr. Miller, who has a very
6   full schedule, doesn't have time for in-person.

7           So this is not that complicated.  It's not that
8   many witnesses.  And I think we can do this by Zoom.

9           And, frankly, what is happening is there's a
10  constant delay where we're going to fight over discovery.
11  We're going to fight over all these issues.  We can certainly
12  go to trial by Zoom by November 13th.

13          If there's an issue, I know Your Honor will take
14  it.  But we filed this application over two months ago and
15  what is not -- what should be made clear is that corporate
16  counsel for Mr. Rouhana and his entity --

17          MR. DETWEILER:  Your Honor --

18          THE COURT:  -- will not cooperate and turn over
19  documents because we have not been retained.  So we're
20  paralyzed at this point to do our job and we think this is a
21  purposeful, stalling tactic and we just want to have our
22  trial and win or lose on whether or not we can get retained.
23  It's really that simple and we'd like to do it by Zoom.

24          And the last point, Your Honor, Mr. Detweiler
25  raised the issue, which we weren't going to about these other

1    potential depositions, none of which we've noticed, and when

2    we said we were going to do it, he wrote an email saying, I

3    cannot believe that you're going to waste resources in a case

4    that has limited resources by taking depositions, but to the

5    same point, he's going to make a bunch of people and our

6    lawyers fly to Delaware and argue in person, but that's okay.

7            So, all we're asking for --

8            MR. DETWEILER:  Your Honor?

9            MR. PACHULSKI:  -- *per se* --

10           THE COURT:  Mr. Detweiler, please stop

11   interrupting, okay?

12           MR. DETWEILER:  Yes, Your Honor.

13           THE COURT:  Go ahead, Mr. Pachulski.

14           MR. PACHULSKI:  All we're asking for, Your Honor,

15   is to do it by Zoom at a time convenient for Mr. Miller and

16   Mr. Warshauer because the issues are not unique in the

17   slightest.

18           If we want to talk about discovery, we can, but

19   the fact of the matter is that Mr. Detweiler hasn't filed an

20   objection yet, so we're not sure how to respond to it because

21   we purposefully made it limited, because we knew that

22   Mr. Detweiler was going to object to anything, because he

23   made it pretty clear in an email that he sent us that he

24   opposed us doing discovery when they filed an objection

25   that's 35 pages with most of it being factual allegations.

1          THE COURT:  All right.  Thank you.

2          Listen, let me just cut this short.  On the issue

3 of whether it's live or Zoom, my new procedures are anybody

4 can appear by Zoom or live at their discretion and that

5 includes witnesses.  Because I fully appreciate that both

6 lawyers and witnesses often come from destinations that are

7 far from Delaware.  I do not have a problem with any

8 examination of witnesses, direct or cross, via Zoom, whether

9 it's the witness on Zoom or the attorney or both.

10          So, from that perspective, we can do the hearing

11 by Zoom.  I don't know -- there are no issues presently ripe

12 before me with respect to any discovery disputes, but I will

13 deal with them as I can.  And I will endeavor to have the

14 hearing as expeditiously as possible, consistent with

15 whatever the parties are doing to prepare for that.

16          So I can't opine whether or not the parties should

17 limit their depositions or not or whether or not other

18 discovery is appropriate or not; it's just not before me.

19          MR. DETWEILER:  Thank you, Your Honor.

20          We weren't trying to bring the discovery issue;

21 again, as I said, we were just trying to alert the Court that

22 there may be a discovery issue, given the discovery that has

23 been served.  And if and when those issues are brought, we'll

24 bring them to Your Honor's attention.  So we weren't trying

25 to get that done today.

1          And then with regard to the, what I'll call the

2 "gatekeeping issue," we'll bring that to Your Honor's

3 attention, as well, through an appropriate motion, as to the

4 issue that we see that may potentially resolve it on the

5 papers.

6          THE COURT:  Okay.

7          MR. DETWEILER:  Thank you, Your Honor, for your

8 time.  We greatly appreciate your time.

9          THE COURT:  All right.  Just remind me, do we have

10 a hearing that this has been continued to or I think it was

11 continued to a date to be determined?

12          MR. PACHULSKI:  I think that's accurate, Your

13 Honor.  We had thought it was going to be October 23rd, but

14 we knew Mr. Detweiler said he wanted live witnesses and we

15 weren't sure what Your Honor's position would be, so it was

16 not settled.

17          We can appear on November 13th -- that was another

18 date Your Honor's clerk had given us -- November 13th or

19 November 14th.  We've checked with the two witnesses and I

20 certainly can deal with that date.  So if it works for

21 Mr. Detweiler and his client, we are fine on November 13th,

22 as Your Honor had given us through your clerk.

23          THE COURT:  I don't set it; my clerk does, so

24 you're right.

25          MR. PACHULSKI:  Okay.

1        THE COURT:  Talk to Ms. Capp.  I'm not allowed to.

2     (Laughter)

3        MR. PACHULSKI:  I understand.  I'm not allowed to

4  do a lot of those things either, trust me.

5        MR. DETWEILER:  I believe that two of the trial

6  attorneys weren't available on the 13th, Your Honor, but they

7  are available on the 14th.

8        THE COURT:  All right.  Well, I'll let you two to

9  confirm that with Ms. Capp in the morning, if you will, okay?

10        MR. DETWEILER:  Okay.

11        MR. PACHULSKI:  Okay.  That would be great.  Thank

12  you, Your Honor.

13        THE COURT:  All right.

14        MR. PACHULSKI:  Thank you for your time.

15        MR. DETWEILER:  Thank you, Your Honor, for your

16  time.

17        THE COURT:  Thank you.

18        MR. CARROLL:  Thank you.

19     (Proceedings concluded at 4:17 p.m.)

20

21

22

23

24

25

1                        CERTIFICATION

2              I certify that the foregoing is a correct

3      transcript from the electronic sound recording of the

4      proceedings in the above-entitled matter to the best of my

5      knowledge and ability.

6

7      /s/ William J. Garling                    October 14, 2024

8      William J. Garling, CET-543

9      Certified Court Transcriptionist

10     For Reliable