IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CHICKEN SOUP FOR THE SOUL ENTERTAINMENT INC.*, et al.,*[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 24-11442 (MFW)<br><br>(Jointly Administered)<br><br>Related Docket Nos. 225, 226, and 283 |

### CHICKEN SOUP FOR THE SOUL, LLC'S AND WILLIAM ROUHANA'S
### MOTION FOR PROTECTIVE ORDER

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7026, 9014, and 9016, and pursuant to Rule 7030-1(c) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Chicken Soup for the Soul, LLC ("CSS"), the indirect non-debtor parent company of Debtor Chicken Soup for the Soul Entertainment, Inc. ("CSSE"), and William Rouhana ("Mr. Rouhana"; together with CSS, the "Movants") move this Court for a protective order (this "Motion for Protective Order") quashing the Notices of Depositions (**Exhibit A** and **Exhibit B** hereto) issued by proposed counsel to Robert Warshauer ("Mr. Warshauer"), a former director of CSSE and former member of CSSE's Special Review Committee (the "SRC"), and the Chapter 7 Trustee, George Miller (the "Chapter 7

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment, Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508).

Trustee"; together with Mr. Warshauer and the SRC, the "Applicants") to Movants.[2] In support of this Motion for Protective Order, Movants state as follows:

## INTRODUCTION

1. This Motion for Protective Order arises in connection with the contested: (i) *Application Of The Strategic Review Committee And The Debtors For Authorization To Employ And Retain Pachulski Stang Ziehl & Jones LLP As Chapter 11 Counsel Effective As Of June 28, 2024 Through And Including July 10, 2024* (D.I. 226) (the "327(a) Application"); and (ii) *Application Of Chapter 7 Trustee For An Order Authorizing The Retention Of Pachulski Stang Ziehl & Jones LLP As Special Litigation And Transactional Counsel To The Chapter 7 Trustee Effective As Of July 11, 2024* (D.I. 225) (the "327(e) Application"; together with the 327(a) Application, the "Applications").

2. Pursuant to the 327(a) Application, Mr. Warshauer, a former director of CSSE and member of CSSE's SRC, seeks entry of an order, pursuant to section 327(a) of title 11 of the United States Code (the "Bankruptcy Code"), Fed. R. Bankr. P. 2014(a), and Local Rule 2014-1, seeking two distinct retentions: (i) an order "authorizing **the SRC** to retain and employ PSZJ from June 28, 2024 through and including July 3, 2024"; and (ii) an order "authorizing **the Chapter 11 Debtors** to retain and employ PSZJ as their chapter 11 counsel from July 4, 2024 through and including July 10, 2024, the conversion date for these cases." (D.I. 226 at Opening Recital, pp. 1-2 (emphasis added).)

---

[2] The first Notice of Deposition seeks to take the oral deposition of CSS pursuant to Fed. R. Civ. P. 30(b)(6) (**Exhibit A**, the "30(b)(6) Deposition"), while the second Notice of Deposition seeks to take the individual deposition of Mr. Rouhana pursuant to Fed. R. Civ. P. 30. (**Exhibit B**, the "Rouhana Deposition"; together with the 30(b)(6) Deposition, the "Depositions.")

3. Pursuant to the 327(e) Application, the Chapter 11 Trustee seeks to retain PSZJ as special litigation and transactional counsel to the Chapter 7 Trustee effective as July 11, 2024. (D.I. 225.)

4. Movants have objected to the Applications. (*See* D.I. 283, *Omnibus Objection to the Applications* (the "Omnibus Objection").) The Omnibus Objection identifies a number of critical events and facts impacting the Applications, including (i) Pachulski Stang Ziehl & Jones LLP's ("PSZJ") undisputed representation of the SRC both before and during the chapter 11 cases; (ii) PSZJ's purported change of representation from the SRC to the Debtors following the Court's July 4, 2024 Interim DIP Financing Order; (iii) Creditor HPS Investment Partners, LLC's ("HPS") failure to fully fund the amounts payable under the Interim DIP Financing Order prior to the conversion of the chapter 11 cases; (iv) HPS using the Interim DIP Financing Order to reinstate the SRC; HPS using the conversion of the chapter 11 cases to chapter 7 as an excuse not to fund almost half of the Interim DIP Financing approved by the Court (thereby depriving employees of certain health coverage benefits bargained for as part of the Interim DIP Financing Order); (v) PSZJ assisting in these efforts by criticizing the Debtors' financial condition (and Mr. Rouhana individually) before the Court, despite just days earlier claiming PSZJ lacked the records and documents necessary to assess the Debtors' finances and operations; and (vi) the SRC's inexplicable replacement of Reed Smith, LLP, the Debtors' chapter 11 counsel, with the SRC's individual counsel, PSZJ.

5. While the Omnibus Objection sets forth a troubling sequence of events and facts, it is not intended to prove liability of HPS, the SRC, or its individual members. Rather, it informs the Court of the events and questionable relationships and interests among the SRC, HPS, and PSZJ, all of which bear upon the Applicants' burden of proof before the Court. To meet their

burden for the Applications, Applicants must, *inter alia*, demonstrate that: (i) under the 327(a) Application, PSZJ did not hold or represent an interest adverse to the Debtors' estates and was disinterested at the time of its alleged engagement by the Debtors in the chapter 11 cases; and (ii) under the 327(e) Application, the proposed retention of PSZJ is in the best interest of the estates, and PSZJ does not represent or hold any interest adverse to the Debtors or the estates with respect to the matters on which PSZJ would be employed.

6.     Because Mr. Warshauer is a former director of CSSE who resigned his board position on or around July 10, 2024, Movants are filing simultaneously with this Motion for Protective Order an *Emergency Motion to Exclude the Court's Consideration of the 327(a) Application* (D.I. TBD, the "Emergency Motion to Exclude"). The Emergency Motion to Exclude seeks to exclude the Court's consideration of the 327(a) Application due to Mr. Warshauer's lack of corporate authority to seek retention of PSZJ *ex post facto*, after his resignation from the CSSE board of directors and the clear and unambiguous retention requirements of section 327(a) of the Bankruptcy Code. Granting the Emergency Motion to Exclude would winnow the issues raised by the Applications and should be considered in connection with this Motion for Protective Order. Based on discussions between counsel to the Movants and Applicants, the Movants understand that the Applicants oppose such relief.

7.     By this Motion for Protective Order, Movants seek entry of an order quashing the proposed Depositions pursuant to Fed. R. Civ. P. 26(c) because: (i) good cause exists to protect Movants from annoyance, embarrassment, oppression, undue burden, and expense; (ii) the Depositions are also not relevant to the Applications before the Court and seek privileged information; (iii) the discovery sought is disproportionate to the issues before the Court; and (iv) the Applications fail as a matter of law. Indeed, the Depositions appear to be nothing more

than an improper attempt to launch an investigation of Mr. Rouhana and CSS on issues unrelated to the Applications. The Court should not countenance such gamesmanship by the Applicants and its proposed counsel.

8. A protective order is also necessary because the Applicants seek discovery as to certain legal contentions identified in the Omnibus Objection relating to potential claims the Debtors' estates may have or hold against HPS and the SRC, PSZJ's former clients. (**Exhibit A** at Ex. A.) These potential legal claims were raised by the chapter 11 Debtors' former counsel, Reed Smith LLP, as potential legal claims against HPS (**Exhibit C** hereto, the "Reed Smith Correspondence"), not CSS or Mr. Rouhana. The Applicants presumably plan to explore these legal contentions and Reed Smith Correspondence with Movants. However, neither CSS nor Mr. Rouhana can swear under oath about the legal theories and contentions developed by Reed Smith on behalf of the chapter 11 Debtors, and the Applicants' desire to examine Movants on such legal contentions would be an exercise in futility given the pervasive attorney-client privilege and work product objections and instructions that questions about Reed Smith's characterizations regarding HPS's alleged misconduct would inevitably draw.

9. To this end, the hearing on the Applications should not be turned into collateral litigation about whether the chapter 7 Debtors can prevail on legal contentions developed by the Debtors' former chapter 11 counsel. Rather, the focus should, instead, be on whether the Applicants have met their burden of proof to retain PSZJ under the Applications, especially given PSZJ's prior representations of the SRC and HPS.

10. Accordingly, Movants respectfully request the Court enter a protective order quashing the proposed Depositions in their entirety.

## JURISDICTION AND VENUE

11. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

12. The legal predicate for the relief sought in this Motion for a Protective Order is Fed. R. Civ. P. 26(c), Fed. R. Bankr. P. 7026(c), and Local Rule 7030-1(c).

13. This is a core proceeding under 28 U.S.C. § 157(b). Pursuant to Local Rule 9013-1(f), the Movants consent to the entry of a final judgment or order with respect to this Motion for a Protective Order if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## BASIS FOR RELIEF REQUESTED

14. The Movants move for a protective order pursuant to Fed. R. Civ. P. 26(c), Fed. R. Bankr. P. 7026(c), and Local Rule 7030-1(c) for the entry of an order quashing the Depositions requested by the Applicants.

## LEGAL ARGUMENT

**I. The Court Should Enter A Protective Order Quashing The Depositions Because The Depositions Are Intended To Annoy, Embarrass, Oppress, and Cause Undue Burden And Expense To Movants.**

15. Fed. R. Civ. P. 26(c)(1) provides that any "party or any person from whom discovery is sought" may move for an order protecting them from "annoyance, embarrassment, oppression, or undue burden."

16.     The burden is on the party seeking relief to demonstrate that good cause exists to grant the order. *See* In re *Am. Bus. Fin. Services, Inc.*, No. 05-10203 MFW, 2008 WL 3906894, at *3 (Bankr. D. Del. Aug. 20, 2008) (Walrath, J.) (citation omitted). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)).

17.     Moreover, "[d]iscovery can only take place in the context of some type of dispute . . . and the scope of the inquiry is limited to issues which are relevant to that dispute." *In re J & R Trucking, Inc.*, 431 B.R. 818, 821 (Bankr. N.D. Ind. 2010). The scope of discovery is limited to "matter[s] that [are] relevant to any party's claim[s] or defense." Fed. R. Civ. P. 26(b)(1); *In re Serendipity Labs, Inc.*, No. MC 20-71003-SWD, 2020 WL 5900052, at *2 (Bankr. W.D. Mich. Oct. 5, 2020).

18.     Here, neither the Applicants, nor Movants, have identified Mr. Rouhana (or any CSS employees) as a potential witness at the hearing on the Applications. Yet, the Applicants and PSZJ seek to depose Mr. Rouhana in connection with the Applications and Omnibus Objection. While Mr. Rouhana joined in the Omnibus Objection, Mr. Rouhana's testimony is not necessary for the Court to consider the merits of the Applications. Rather, the Applicants, or PSZJ as their proposed counsel, seek to depose Mr. Rouhana for the sole purpose of annoying, embarrassing, oppressing, and causing undue burden and expense on him. The Court need not look any further than the recent remarks of proposed counsel at the October 9, 2024 status conference before the Court as evidence of the Applicants' and PSZJ's intent. (**Exhibit D** hereto, Hr'g Tr., Oct. 9, 2024, at 9:1-4.) The status conference was meant to cover scheduling and logistical matters relating to

the Applications and Omnibus Objection. Yet, PSZJ launched into gratuitous and inaccurate personal attacks on Mr. Rouhana. (*Id.*) PSZJ's remarks are not an isolated occurrence. At the First Day hearing in the chapter 11 cases, PSZJ, on behalf of its then-client the SRC, included similar unfounded personal attacks against Mr. Rouhana. (*See*, *e.g.*, **Exhibit E**, D.I. 283-17, First Day Hr'g Tr., July 2, 2024, at 20:9-11, 23:17-20, 24:1-8, 26:15-20.) This conduct continued during a July 10, 2024 hearing, all while PSZJ agreed with and lauded the positions of HPS, the firm's former client and the largest secured creditor in the cases. (*See*, *e.g.*, **Exhibit F**, Hr'g Tr., July 10, 2024, at 26:2-7, 26:13-22.) The proposed retention of PSZJ as SRC counsel, the chapter 11 Debtors' counsel, and the Chapter 7 Trustee's proposed special counsel are at issue pursuant to the Applications, not counsel's view of the actions or inactions of Mr. Rouhana.

19.     Movants will experience specific undue burden and expense with respect to the Depositions. They will have to prepare for the Depositions with counsel. Counsel will also need to appear at the Depositions and defend the Depositions, including travel. And, as to the Rule 30(b)(6) Deposition, CSS would have an obligation to prepare its corporate designee(s) on the deposition topics, which is an impossible and burdensome task here given the nature and scope of the topics. (*See* Section II, *infra.*) Moreover, the Depositions would require Movants to prepare to provide testimony about categories of information that are not relevant or necessary for the Court to rule on the pending Applications and Omnibus Objection. (*See id.*) Thus, even if there were some probative value as it relates to the matters before the Court (which is denied), the Depositions would be an undue burden and a waste of party and judicial resources, as the cost and burden of permitting the Depositions to go forward greatly outweighs any limited potential benefit from obtaining this information.

20. Accordingly, because the Depositions are intended to annoy, embarrass, oppress, and cause undue burden and expense on Movants, the Depositions should be quashed.

**II.  The Court Should Enter A Protective Order Quashing The Depositions Because The Depositions Are Not Relevant To The Applications Before The Court And Seek Privileged Information.**

21. Fed. R. Civ. P. 26(c)(1) permits the Court to enter a protective order at the request of any party "(A) forbidding the disclosure or discovery . . . [or] (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." *See* Fed. R. Civ. P. 26(c)(1). For example, a party is not entitled to discover irrelevant or privileged information. Fed. R. Civ. P. 26(b) (providing that a party may discover "any nonprivileged matter that is relevant to any party's claim or defense"). Further, the Court should limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). In applying the Federal Rules of Civil Procedure, the Court should construe them in light of their overarching purpose "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

22. Here, the discovery being sought—depositions of Mr. Rouhana and CSS—strays far afield from the dispute before the Court, which is whether the Applications can and should be granted when: (i) Mr. Warshauer, the Applicant of the 327(a) Application, lacks the requisite corporate authority to seek the retention of PSZJ after he resigned from CSSE's board of directors and was no longer a member of CSSE's SRC at the time of the filing the 327(a) Application; (ii) PSZJ holds or represents an interest adverse to the Debtors' estates and is not a disinterested person capable of being retained under section 327(a); (iii) counsel cannot serve as special counsel under section 327(e) when it did not previously serve as the Debtor's counsel under section 327(a); and

9

(iv) the Chapter 7 Trustee should not retain PSZJ under section 327(e) when the proposed retention is not in the best interest of the chapter 7 estates and PSZJ represents or holds an interest adverse to the Debtors and the Debtors' estates.

23. The Applicants, through PSZJ, seek the Depositions under the guise that the information they seek to obtain is relevant to the Applications before the Court. The discovery sought by the Applicants is, however, not relevant to the Applications. Where a party seeks to examine a deponent on topics that are irrelevant to the party's claims or defenses, a protective order barring examination on those topics is appropriate, given the burden and expense of preparing a witness and the low probative value of the information. *See, e.g., Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 355 (11th Cir. 2012) (upholding trial court protective order precluding examination on irrelevant topics); *Carpenter Tech. Corp. v. Armco, Inc.*, No. CIV. A. 90-0740, 1990 WL 61180, at *4 (E.D. Pa. May 8, 1990) (granting protective order as to certain subject matter set forth in deposition notice where such information sought was not relevant to the matters at issue). "Courts have held that irrelevancy of the proposed discovery is sufficient to satisfy the "good cause" requirement for a protective order." *Fellner v. Tri-Union Seafoods, L.L.C.*, No. 2:06-CV-688-DMC-MF, 2011 WL 13340570, at *3 (D.N.J. Mar. 11, 2011) (citations omitted).

24. Thus, the discovery sought by the Applicants must be, among other things, nonprivileged information relevant to the Applications and Omnibus Objection. The proposed Depositions fail this test.

25. Again, none of the requested discovery relates to the Applicants' burden before the Court: whether Mr. Warshauer holds the requisite corporate authority to sign and prosecute the 327(a) Application on behalf of the SRC or the Debtors following his resignation from CSSE's

board; whether PSZJ's prior representation of the SRC or HPS, and any prior instances where PSZJ represented Messrs. Young and Warshauer, render PSZJ as "not disinterested" or cause PSZJ to hold an interest adverse to the Debtors' estates; whether PSZJ's potential retention as special litigation counsel to the Chapter 7 trustee pursuant section 327(e) is in the best interest of the estates; and whether PSZJ represents or holds an interest adverse to the Debtors or their estates with respect to the matters on which PSZJ is to be employed.

26. Rather than seeking discovery relevant to the Applications, the topics identified in the 30(b)(6) Deposition primarily relate to CSS's *contentions* on the *substantive merits* of the Debtors' potential claims against HPS and the SRC:

**Topic 1**     The Objectors' contention at Paragraph 55 of the Objection that "Debtors owned very contentious claims against PSZJ's client the SRC (and, by extension, Warshauer and Young) relating to their roles in executing and facilitating HPS's plan to prevent CSSE from obtaining the $40 million working capital it needed."

**Topic 2**     The Objectors' contention at Paragraph 55 of the Objection that "Debtors' claims against HPS were one of the Estates' most valuable assets that any counsel for Debtors ought to have vigorously preserved and, at the appropriate time, pursued."

**Topic 3**     The Objectors' contention at Paragraph 55 of the Objection that "Warshauer and Young, were key witnesses to, and targets of, such claims [against HPS]."

**Topic 4**     The Objectors' contention at Paragraph 56 of the Objection that "the circumstances and timing of PSZJ's retention by the SRC strongly suggest PSZJ and HPS were working together to execute HPS's prepetition plan to force Debtors' liquidation for HPS's gain to the detriment of Debtors' shareholder, creditors, business partners, and employees."

**Topic 5**     The Objectors' contention at Paragraph 68 of the Objection that "PSZJ became the conduit for the SRC's destruction of the value-preserving strategy Reed Smith had set into motion for the cases, including derailment of Debtors' potential claims and causes of action against HPS."

**Topic 6**     The Objectors' contention at Paragraph 69, footnote 10 of the Objection that there are "claims and causes of action Debtors'

11

> Estates may have or hold against the SRC and HPS relating to value-destructive actions taken by the SRC[.]"
>
> **Topic 7**   The Objectors' contention at Paragraph 77 of the Objection that "these PSZJ [current and former] clients caused the financial distress and the circumstances that ultimately led to Debtors seeking bankruptcy protection."

(**Exhibit A** at Ex. A.)

27. The substantive merits of claims the Chapter 7 Trustee and the Debtors may have against HPS and the SRC need not (and should not) be decided in connection with these Applications. The mere existence of this dispute and potential claims against HPS and the SRC, as aptly evidenced by the Reed Smith Correspondence, is sufficient to disqualify PSZJ from the retentions sought in the Applications. (*See* D.I. 283-3; 283-4; 283-5; 283-6; 283-7; 283-8.) Stated simply, a law firm with loyalties to HPS and the SRC—who should be investigated (at a minimum) for potentially colluding to manufacture excuses for HPS to avoid fully funding the Interim DIP Order to the detriment of the shareholders, creditors, and employees—should not be permitted to represent the Debtors or the interests of the Debtors' estates or the Chapter 7 Trustee, including during depositions overtly aimed at inquiring about matters that involved the law firm's clients' potential misconduct.

28. Yet, the Applicants seem focused on using the discovery to develop preemptive lines of defense. More importantly, the legal contentions are supported by the exhibits attached to the Omnibus Objection, including PSZJ's written statements and statements during hearings in this proceeding. **Additional details regarding PSZJ's behind-the-scenes coordination with the SRC and/or HPS would be known by PSZJ, the SRC (including Young or Warshauer), or HPS, not CSS or Mr. Rouhana.**

29. And, as noted above, the 30(b)(6) Deposition topics also seek information protected by the attorney-client privilege and the work product doctrine and so are improper topics for

deposition discovery. *See* Fed. R. Civ. P. 26(b). The Reed Smith Correspondence sufficiently documents the fact that there are hotly contested disputes between the Debtors, the SRC, and HPS and that PSZJ is conflicted in connection with its prior representations of HPS and the SRC. To this end, a Rule 30(b)(6) deposition is not the proper mechanism to obtain such information. For example, in *In re Indep. Serv. Organizations Antitrust Litig.*, 168 F.R.D. 651 (D. Kan. 1996), the trial court granted a motion for protective order relating to a Rule 30(b)(6) notice seeking deposition testimony about facts supporting denials and affirmative defenses in an answer and counterclaim. *Id.* at 654. The court reasoned that the noticing party's "attempt to discover those facts through a Rule 30(b)(6) deposition is overbroad, inefficient, and unreasonable" and "also implicates serious privilege concerns . . . ." *Id.* (observing that a party is not required to have counsel "marshal all of its factual proof" and "prepare a witness to be able to testify on a given defense or counterclaim"). Similarly, the U.S. District Court for the Southern District of New York concluded as follows when addressing privilege and work product assertions in connection with a Rule 30(b)(6) deposition:

> [T]o provide the information defendants seek would in effect require the Government to marshal all of its factual proof and then provide it to [the Rule 30(b)(6) designee] so that she could respond to what are essentially a form of contention interrogatories. Aside from any issues of privilege, this would be highly inefficient and burdensome . . . .

*United States v. District Council of New York City & Vicinity of United Bhd. of Carpenters & Joiners of Am.*, No. 90 CIV. 5722 (CSH), 1992 WL 208284, at *15 (S.D.N.Y. August 18, 1992).

30. It would also be impossible for CSS to prepare a Rule 30(b)(6) witness on many of the contentions that are the topic of the 30(b)(6) Deposition because they are derived predominantly from the Reed Smith Correspondence to HPS's counsel Milbank LLP and Quinn Emanuel Urquhart & Sullivan, LLP. (*See* **Exhibit C**.) The Applicants and PSZJ are well aware

of this correspondence. To the extent CSS or Mr. Rouhana have any knowledge of the work product or privileged information and analysis behind those letters and communications, it would be derived from Mr. Rouhana's time as CEO of CSSE. Mr. Rouhana will not waive the Debtors' privilege (and the Trustee has not given him permission to do so), and CSS cannot prepare a witness to explain the legal theories or privileged work product of Reed Smith, because Reed Smith represented the Debtors and presumably would not waive the privileges either. As a result, the depositions would be an exercise in futility, mired by instructions not to answer questions on grounds of privilege.

31. It is not surprising that a law firm that has represented HPS and the SRC would want discovery into the substantive merits of potential claims against its former clients. Such discovery is not proper, however, and the noticed Rule 30(b)(6) Deposition merely underscores that PSZJ is not the proper law firm to represent the Debtors, their estates, or the Chapter 7 Trustee as to these claims and related issues, for the reasons set forth in the Omnibus Objection. (D.I. 283.)

32. To require Movants to prepare a witness or witnesses to provide testimony about categories of information that are wholly irrelevant to the Applications pending before the Court, and to gather and produce any documents relied upon in preparing for said depositions, is also an undue burden a waste of financial and judicial resources.

33. The Court should therefore enter a protective order forbidding the Depositions from taking place in connection with the Applications.

**III.   The Rule 30(b)(6) Topics Seek Privileged Information That Is Disproportional, And Any Marginal Probative Value Is Greatly Outweighed By The Burden And Cost Of A Rule 30(b)(6) Deposition.**

34. Relatedly, the Court should also enter a protective order quashing the Depositions because they are disproportionate to the needs of the case, and any marginal probative value from

the Depositions would be greatly outweighed by the cost and burden of proceeding with the discovery. *See* Fed. R. Civ. P. 26(b)(1) (permitting discovery that is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").

35. As explained above, the discovery sought through the Depositions is not relevant or important to resolving the limited issues before the Court, the Applicants already have access to the information that may be relevant to resolving the Omnibus Objection, and the expense of preparing for and defending a corporate Rule 30(b)(6) deposition and an individual deposition is significant, especially when compared to the *de minimis* (if any) impact any testimony would have on the Court's resolution of the Omnibus Objection or the Court's decision on the Applications.

36. The Applicants bear the burden before the Court on the Applications, not Movants. Accordingly, because the Depositions are disproportional to the needs of the matter before the Court, and any marginal probative value greatly outweighs the potential benefit from obtaining the irrelevant information, the Depositions should be quashed.

**IV.    There Is No Legitimate Basis For Deposing Mr. Rouhana.**

37. The Court should enter a protective order precluding the Rouhana deposition from going forward for similar reasons. Rather than seeking legitimate, relevant, and proportional discovery, the Rouhana Deposition appears to be a fishing expedition into the merits of the investigation PSZJ wants, but does not have, the Court's authority to conduct.

38. Mr. Rouhana has limited firsthand knowledge of any issues relating to resolution of the Omnibus Objection because he resigned as CEO of the Debtors upon their filing of the

15

chapter 11 bankruptcy, turning the leadership of the companies over to independent new CEO Bart Schwartz. Thus, if anyone has knowledge of facts concerning the relevant issues relating to the Application, it would be Mr. Schwartz (and PSZJ, Young, Warshauer, and HPS). Though the Omnibus Objection relies in part on the Reed Smith Correspondence discussing HPS's conduct, that correspondence was authored by CSSE's counsel, and the Reed Smith Correspondence discusses HPS's bad acts (and by extension CSSE's potential claims against HPS and the SRC), not claims by Mr. Rouhana.

39. As with the Rule 30(b)(6) Deposition, the Rouhana Deposition is nothing more than the Applicants, or PSZJ, capitalizing on an opportunity to interrogate Mr. Rouhana about the merits of the Debtors' potential claims against HPS and the SRC. In addition to being outside the scope of legitimate discovery on the pending Applications, PSZJ's conflicts preclude PSZJ from litigating these claims on behalf of the Debtors or as special counsel to the Chapter 7 Trustee, for the reasons set forth in the Omnibus Objection. In reality, the Rouhana Deposition Notice is simply part of the Applicants' or PSZJ's ongoing campaign to brand Mr. Rouhana as the scapegoat in these cases. As noted above, the Applicants, through PSZJ, have waged a campaign against Mr. Rouhana through repeated vitriolic, conclusory, unsupported assertions of wrongdoing directed at Mr. Rouhana, without any evidence or testimony under oath. Mr. Rouhana's deposition is not necessary to PSZJ's preparation for a hearing on the Applications, and it would only serve as an opportunity for PSZJ to harass Mr. Rouhana further and accelerate the investigation of him that the Applicants appear to be gunning for with zero risk such investigation would ever turn against the SRC or HPS, even though it should.

40. The Court should not countenance such gamesmanship and, instead, should enter a protective order precluding the Rouhana Deposition.

## V. The Court Should Enter A Protective Order Quashing the Deposition From Going Forward Because The Applications Fail As A Matter Of Law.[3]

41. Finally, there is no need to engage in expensive and burdensome depositions and discovery because the Applications can be resolved on a simple threshold issue: whether Mr. Warshauer had authority to submit the 327(a) Application on behalf of the Debtors. As explained in the pending Omnibus Objection and Emergency Motion to Exclude filed contemporaneously with this Motion, the 327(a) Application was signed by Warshauer supposedly on behalf of the Debtors and the SRC. (*See* D.I. 226 at 8.) Yet, Mr. Warshauer resigned from the CSSE Board (and, thus, the SRC) several weeks earlier. As discussed more fully in the Emergency Motion to Exclude, Mr. Warshauer therefore lacked the requisite corporate authority to submit the 327(a) Application to retain PSZJ when he did. (D.I. 283 at ¶ 29; D.I. TBD.)

42. Therefore, as a matter of Delaware law, the 327(a) Application is ineffective and invalid as a matter of law. The Court should not entertain the 327(a) Application. And, for purposes of this Motion for Protective Order, the Court should enter a protective order precluding PSZJ from taking the Depositions until this issue is resolved.

## **CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 7026-1(d)**

43. Pursuant to Local Rule 7026-1, Movants' counsel certifies that on October 15, 2024, Movants' counsel and Applicants' counsel held a meet-and-confer in connection with the Applications, the Omnibus Objection, the requested Depositions, and potential depositions of Applicants' trial witnesses.

44. During the meet-and-confer, Movants' counsel advised Applicants' counsel that Movants oppose the requested Depositions and that Movants intend to file a Motion for Protective

---

[3] While the may notice depositions as well to preserve their rights, they maintain the Court should first take up whether the Applications fail as a matter of law before any depositions proceed.

Order with the Court seeking to quash the Depositions. Movants' counsel also advised Applicants' counsel that Movants believe the Court may be able to decide the 327(e) Application on the undisputed facts before the Court, and, accordingly, Movants intended to file a Motion To Exclude with the Court seeking an emergency hearing in connection with the Motion To Exclude. Movants believe that if considered simultaneously with any hearing on the Motion for Protective Order, the Motion To Exclude could winnow down the issues to be presented at the hearing on the Applications.

45. Applicants' counsel advised Movants' counsel that the Applicants oppose any Motion for Protective Order, as well as any Motion To Exclude. Applicants' have re-noticed the CSS 30(b)(6) Deposition to November 1, 2024 and the Rouhana Deposition to November 5, 2024.

46. The parties did not reach agreement on the parties' disagreements over the necessity of the Depositions, the Motion for Protective Order, or the Motion To Exclude. Nor did the parties reach agreement on Movants' desire to have the Court consider Movants' Motion to Exclude simultaneously with Movant's Motion for Protective Order.

47. Counsel believes a reasonable effort was made by the parties to reach agreement on the matters set forth above.

## CONCLUSION AND REQUESTED RELIEF

For the forgoing reasons, Movants respectfully request the Court enter a protective order, substantially in the form of the proposed protective order attached as **Exhibit G** hereto, and that the Court grant Movants any and all other relief just and appropriate under the circumstances.

| | |
|---|---|
| Dated: October 17, 2024<br>Wilmington, Delaware | **WOMBLE BOND DICKINSON (US) LLP**<br><br>*/s/ Donald J. Detweiler*<br>Donald J. Detweiler (DE Bar No. 3087)<br>1313 North Market Street, Suite 1200<br>Wilmington, Delaware 19801<br>Telephone: (302) 252-4320<br>Facsimile:  (302) 252-4330<br>Email: don.detweiler@wbd-us.com<br><br>-and-<br><br>Cathy A. Hinger (pro hac vice)<br>2001 K. Street, NW<br>Suite 400 South<br>Washington, D.C. 20006<br>Telephone: (202) 467-6900<br>Facsimile:  (202) 467-6910<br>Email:  cathy.hinger@wbd-us.com<br><br>Claire J. Rauscher (pro hac vice)<br>301 S. College St., Ste. 3500<br>Charlotte, NC 28202<br>Telephone: (704) 331-4961<br>Email:  claire.rauscher@wbd-us.com<br><br>*Counsel for Chicken Soup for the Soul, LLC and William Rouhana* |