**EXHIBIT D**

```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE


IN RE:                         .  Chapter 7
                               .  Case No. 24-11442 (MFW)
CHICKEN SOUP FOR THE           .
SOUL ENTERTAINMENT, INC.,      .  (Jointly Administered)
et al.,                        .
                               .  Courtroom No. 4
                               .  824 Market Street
           Debtors.            .  Wilmington, Delaware 19801
                               .
                               .  Wednesday, October 9, 2024
 . . . . . . . . . . . . . . . .  4:00 p.m.


                      TRANSCRIPT OF HYBRID HEARING
                BEFORE THE HONORABLE MARY F. WALRATH
                   UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Chapter 7
Trustee:                       John T. Carroll III, Esquire
                               COZEN O'CONNOR, LLP
                               1201 North Market Street
                               Suite 1001
                               Wilmington, Delaware 19801




(APPEARANCES CONTINUED)

Audio Operator:                Lesa Neal, ECRO

Transcription Company:         Reliable
                               The Nemours Building
                               1007 N. Orange Street, Suite 110
                               Wilmington, Delaware 19801
                               Telephone: (302)654-8080
                               Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

```
 1  APPEARANCES (CONTINUED):

 2  For the Chapter 7
    Trustee:                    Richard M. Pachulski, Esquire
 3                              PACHULSKI STANG ZIEHL & JONES, LLP
                                10100 Santa Monica Boulevard
 4                              11th Floor
                                Los Angeles, California 90067
 5

 6  For William Rouhana
    and Chicken Soup for
 7  the Soul, LLC:              Donald J. Detweiler, Esquire
                                WOMBLE BOND DICKINSON (US), LLP
 8                              1313 North Market Street
                                Suite 1200
 9                              Wilmington, Delaware 19801

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

INDEX

| MOTIONS: | PAGE |
|---|---|
| Agenda<br>Item 1:    Scheduling Conference | 4 |
|           Court's Ruling: | 13 |
| Transcriptionist's Certificate | 16 |

1       (Proceedings commenced at 4:00 p.m.)
2              THE COURT:  Good afternoon, this is Judge Walrath.
3  We're here for a scheduling conference on Chicken Soup.
4              Mr. Detweiler asked for the conference, so...
5              MR. DETWEILER:  Okay.  Thank you, Your Honor, and
6  may I please the Court, Donald Detweiler, along with Cathy
7  Hinger and Claire Rauscher, on behalf of Chicken Soup for the
8  Soul, LLC, the nondebtor parent company of the debtor
9  entities, as well as Mr. Bill Rouhana.
10             We thank the Court for scheduling the status
11 conference and hopefully, it'll be relatively short.
12             There were a couple of issues that you may have
13 seen from the emails that were correspondence with your
14 deputy courtroom clerk, Ms. Capp, with Mr. O'Neill and I with
15 regard two applications, two retention applications that are
16 pending before the Court.
17             Your Honor, are you able to hear me okay, Your
18 Honor?
19             THE COURT:  Yes.
20             MR. DETWEILER:  Okay.  All right.
21             So there are two applications that are pending
22 before the Court are, first, the Chapter 11 retention
23 application of the Pachulski firm filed by Mr. Warshauer and
24 then the Chapter 7 Trustee retention application of the
25 Pachulski firm, filed by Mr. Miller.

1          Our clients had objected to the two retention
2   applications and while the applications should be relatively
3   straightforward, I think the facts and issues get a little
4   dense at times.  The debtors, or excuse me, the applicants
5   have told us that they wish to proceed via Zoom hearing.  We
6   advised them that we believed that the hearing should be in
7   person.  There are three witnesses that the applicants intend
8   to call, as we understand it:  first was Mr. Pachulski;
9   second was Mr. Miller; and third was Mr. Warshauer.  So you
10  have the two applicants, plus the declarant, Mr. Pachulski.
11  And we said that we wanted the hearing in person to examine
12  the witnesses, given the issues.
13         The purpose of the status conference, we think, is
14  threefold.  It's, one, is to address that hearing of a Zoom
15  hearing versus an in-person hearing on the applications.
16  Second, before any meet-and-confer occurred in the case,
17  yesterday, we received some written discovery requests for
18  production of documents from the Pachulski firm, requesting
19  certain documents from our clients, as well as notices of
20  deposition of Mr. Rouhana and a 30(b)(6) deposition of a
21  representative of CSS.
22         All of this is to tell Your Honor that we plan to
23  file some objections to the requested discovery and wanted to
24  alert Your Honor to the same and especially as you may be
25  considering a hearing date in the case.

1        We were also told last week when things started
2   moving forward that the Pachulski firm, or the applicants,
3   wanted to depose five additional witnesses:  the former
4   debtors' counsel, the Reed Smith -- two Reed Smith people;
5   Mr. Rouhana; Ed Edwards from the company; and another
6   individual whose name currently escapes me.
7        We said, look, we'll reserve the right to depose
8   your witnesses, as well.  So there could be some discovery
9   disputes.  And that's the point of this, is to tell Your
10  Honor that there may be some discovery disputes coming down
11  the pike.
12       The third part of the, the purpose for the status
13  conference is, when you take a step back from everything and
14  you look at the undisputed, uncontroverted, in our opinion,
15  the undisputed, uncontroverted facts, we believe the Court
16  may be able to decide the issues, the retention on the
17  papers.  And, specifically, it deals with the Chapter 11
18  retention application that was filed by Mr. Warshauer.  He's
19  a former director.  He wasn't a director at the time that he
20  filed the declaration, so we say that he lacks the requisite
21  corporate authority, after the fact, to go back and try to
22  seek the retention of the Pachulski firm.
23       We're prepared for purposes of trying to find some
24  efficiency, which Mr. O'Neill mentioned in his email
25  yesterday, we're prepared to file either a motion in limine

1 to exclude his declaration or, perhaps, even a motion to
2 strike or a motion for a directed verdict on the issue.
3 Because we believe if they lacks the requisite corporate
4 authority to file the application after the fact, then,
5 necessarily, the 327(e) application fails, which is the
6 applicant needed to be retained by the debtors or had
7 represented the debtors.
8         So those are the three points.
9         And then lastly, Your Honor, I think if we're
10 going to move forward with evidentiary hearing in the matter,
11 we probably need to get a scheduling conference or a
12 scheduling order in place with the Court.  So that was the
13 point of the status conference, Your Honor.
14         THE COURT:  Does the trustee wish to respond?
15         MR. PACHULSKI:  I assume, Your Honor, that we
16 would do it on behalf of our firm, but I don't know
17 whether -- who your -- Mr. Carroll is also here
18 (indiscernible).
19         MR. CARROLL:  No, I don't have a response at this
20 time, Your Honor.  I think I'll leave it up to Pachulski.
21         THE COURT:  Okay.
22         Mr. Pachulski, go ahead.
23         MR. PACHULSKI:  Thank you so much, Your Honor.
24         Richard Pachulski of Pachulski Stang Ziehl & Jones
25 in these cases on behalf of the firm.  I'm also here with my

1  partners, Mr. O'Neill and Mr. Kornfeld, with respect to
2  potentially any arguments.  To be frank, Your Honor, I
3  thought the status conference was specifically about whether
4  we're going to have Zoom or not.  There's been a lot more
5  said so I'll address it.
6             But I think I'm going to start primarily with what
7  I thought the issue was, which is whether this should be by
8  Zoom or whether this should be by an in-person hearing.  But
9  I will respond to some of the other comments that have been
10 made by Mr. Detweiler.
11            First, so Your Honor knows, after the filing of
12 the objection and some of the issues that were raised -- and
13 to be very clear, there's no declaration that supports
14 anything that is stated in the opposition, but that's the
15 opponent's choice -- but the U.S. Trustee had a number of
16 issues.  We've addressed those issues.  I don't know if we've
17 already filed the declaration with respect to that, but
18 the -- I believe Mr. O'Neill is nodding his head, so the U.S.
19 Trustee has no objection to either the 327(a) in the
20 Chapter 11 case or the 327(e), with respect to the Chapter 7
21 case.
22            So, for at least Your Honor's edification, I
23 wanted to make that very clear and also to make very clear
24 that Mr. Detweiler, in filing his pleading, makes a lot of
25 spurious claims, including against my firm without a

Case 24-11442-MFW    Doc 396-4    Filed 10/17/24    Page 10 of 17

9

1  declaration, but he fails to mention that his client may have
2  committed criminal acts by failing to file payroll taxes or
3  by taking money for medical expenses, which Your Honor will
4  see in reviewing --
5              THE COURT:  I don't need any of the facts.
6              Let's talk about scheduling.
7              MR. DETWEILER:  Thank you, Your Honor.
8              THE COURT:  Discovery, I don't want to hear the
9  merits of anything.
10             MR. PACHULSKI:  Okay.  That's fine, Your Honor.
11             So, but the only issue, because Mr. Detweiler has
12 responded to what some of the issues are, the issues are not
13 unique, as Mr. Detweiler seems to say in his email.  As he
14 said, it's not unique whether or not if a case that's
15 converted, the members of the board can sign a 327(a)
16 application.
17             That is a legal issue.  We can take that on.
18 Mr. Warshauer effectively resigned because the Chapter 7, for
19 all intents and purposes, made his resign.  That's one of the
20 issues.
21             The other issue is because whether our firm
22 approximately three years ago had two matters that
23 represented less than .1 percent of our firm's revenue, so
24 not even a percent, with respect to HPS, but we have -- not
25 with respect to this matter.  They raised the issue with

1  respect to another creditor.  I'm not even sure what their
2  claim was, but our firm has represented them and takes the
3  position that because we represented the SRC on behalf of
4  it --
5              THE COURT:  I don't need to get into the merits of
6  all of this.
7              MR. PACHULSKI:  That's fine.  And I'm not trying
8  to get into the merits; I'm just trying to state the
9  (indiscernible), Your Honor.  That's all.
10             THE COURT:  Yeah, I don't need that.
11             MR. PACHULSKI:  So here is the issue, Your Honor.
12 In terms of the discovery, we have asked to take
13 Mr. Rouhana's deposition.  He's the objecting party.  And he
14 has made a number of allegations, which we think are
15 materially false, and so we've asked for his deposition.
16             We've asked for documents specifically -- we're
17 very specific and Your Honor doesn't have it in front of you
18 because we didn't think this was going to be the issue -- but
19 documents with respect to allegations made in the pleading
20 and with respect to, and also with respect to board minutes.
21 Very limited.  If Mr. Detweiler wants to litigate all that,
22 we can do it, but I think we have the right to take the
23 objecting party's deposition, who was the CEO of the company
24 and was -- is making the claim.  So that's for another day.
25             The reason we're asking by Zoom is it isn't

1  complicated, but more importantly, the -- and my schedule is
2  not a problem -- but Mr. Warshauer, who has a full-time job
3  and has never been paid a dime by anybody, including, as is
4  required to by the debtors, has -- is willing to cooperate,
5  but the dates don't work.  And Mr. Miller, who has a very
6  full schedule, doesn't have time for in-person.
7         So this is not that complicated.  It's not that
8  many witnesses.  And I think we can do this by Zoom.
9         And, frankly, what is happening is there's a
10 constant delay where we're going to fight over discovery.
11 We're going to fight over all these issues.  We can certainly
12 go to trial by Zoom by November 13th.
13         If there's an issue, I know Your Honor will take
14 it.  But we filed this application over two months ago and
15 what is not -- what should be made clear is that corporate
16 counsel for Mr. Rouhana and his entity --
17         MR. DETWEILER:  Your Honor --
18         THE COURT:  -- will not cooperate and turn over
19 documents because we have not been retained.  So we're
20 paralyzed at this point to do our job and we think this is a
21 purposeful, stalling tactic and we just want to have our
22 trial and win or lose on whether or not we can get retained.
23 It's really that simple and we'd like to do it by Zoom.
24         And the last point, Your Honor, Mr. Detweiler
25 raised the issue, which we weren't going to about these other

1   potential depositions, none of which we've noticed, and when
2   we said we were going to do it, he wrote an email saying, I
3   cannot believe that you're going to waste resources in a case
4   that has limited resources by taking depositions, but to the
5   same point, he's going to make a bunch of people and our
6   lawyers fly to Delaware and argue in person, but that's okay.
7              So, all we're asking for --
8              MR. DETWEILER:  Your Honor?
9              MR. PACHULSKI:  -- *per se* --
10             THE COURT:  Mr. Detweiler, please stop
11  interrupting, okay?
12             MR. DETWEILER:  Yes, Your Honor.
13             THE COURT:  Go ahead, Mr. Pachulski.
14             MR. PACHULSKI:  All we're asking for, Your Honor,
15  is to do it by Zoom at a time convenient for Mr. Miller and
16  Mr. Warshauer because the issues are not unique in the
17  slightest.
18             If we want to talk about discovery, we can, but
19  the fact of the matter is that Mr. Detweiler hasn't filed an
20  objection yet, so we're not sure how to respond to it because
21  we purposefully made it limited, because we knew that
22  Mr. Detweiler was going to object to anything, because he
23  made it pretty clear in an email that he sent us that he
24  opposed us doing discovery when they filed an objection
25  that's 35 pages with most of it being factual allegations.

1               THE COURT:  All right.  Thank you.
2               Listen, let me just cut this short.  On the issue
3  of whether it's live or Zoom, my new procedures are anybody
4  can appear by Zoom or live at their discretion and that
5  includes witnesses.  Because I fully appreciate that both
6  lawyers and witnesses often come from destinations that are
7  far from Delaware.  I do not have a problem with any
8  examination of witnesses, direct or cross, via Zoom, whether
9  it's the witness on Zoom or the attorney or both.
10              So, from that perspective, we can do the hearing
11 by Zoom.  I don't know -- there are no issues presently ripe
12 before me with respect to any discovery disputes, but I will
13 deal with them as I can.  And I will endeavor to have the
14 hearing as expeditiously as possible, consistent with
15 whatever the parties are doing to prepare for that.
16              So I can't opine whether or not the parties should
17 limit their depositions or not or whether or not other
18 discovery is appropriate or not; it's just not before me.
19              MR. DETWEILER:  Thank you, Your Honor.
20              We weren't trying to bring the discovery issue;
21 again, as I said, we were just trying to alert the Court that
22 there may be a discovery issue, given the discovery that has
23 been served.  And if and when those issues are brought, we'll
24 bring them to Your Honor's attention.  So we weren't trying
25 to get that done today.

1           And then with regard to the, what I'll call the
2  "gatekeeping issue," we'll bring that to Your Honor's
3  attention, as well, through an appropriate motion, as to the
4  issue that we see that may potentially resolve it on the
5  papers.
6           THE COURT: Okay.
7           MR. DETWEILER: Thank you, Your Honor, for your
8  time. We greatly appreciate your time.
9           THE COURT: All right. Just remind me, do we have
10 a hearing that this has been continued to or I think it was
11 continued to a date to be determined?
12          MR. PACHULSKI: I think that's accurate, Your
13 Honor. We had thought it was going to be October 23rd, but
14 we knew Mr. Detweiler said he wanted live witnesses and we
15 weren't sure what Your Honor's position would be, so it was
16 not settled.
17          We can appear on November 13th -- that was another
18 date Your Honor's clerk had given us -- November 13th or
19 November 14th. We've checked with the two witnesses and I
20 certainly can deal with that date. So if it works for
21 Mr. Detweiler and his client, we are fine on November 13th,
22 as Your Honor had given us through your clerk.
23          THE COURT: I don't set it; my clerk does, so
24 you're right.
25          MR. PACHULSKI: Okay.

1                THE COURT:  Talk to Ms. Capp.  I'm not allowed to.
2          (Laughter)
3                MR. PACHULSKI:  I understand.  I'm not allowed to
4    do a lot of those things either, trust me.
5                MR. DETWEILER:  I believe that two of the trial
6    attorneys weren't available on the 13th, Your Honor, but they
7    are available on the 14th.
8                THE COURT:  All right.  Well, I'll let you two to
9    confirm that with Ms. Capp in the morning, if you will, okay?
10               MR. DETWEILER:  Okay.
11               MR. PACHULSKI:  Okay.  That would be great.  Thank
12   you, Your Honor.
13               THE COURT:  All right.
14               MR. PACHULSKI:  Thank you for your time.
15               MR. DETWEILER:  Thank you, Your Honor, for your
16   time.
17               THE COURT:  Thank you.
18               MR. CARROLL:  Thank you.
19          (Proceedings concluded at 4:17 p.m.)
20
21
22
23
24
25

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

/s/ William J. Garling                              October 14, 2024

William J. Garling, CET-543

Certified Court Transcriptionist

For Reliable