**EXHIBIT 1**

**Golub Corporation**
*Merchandising Contract Routing*
*Agreement for Purchase of Goods*

*Please review the attached Trade Partner Contract and route back in VPS to **Tracy Andrews**.*
*Any questions regarding the contract documentation should be directed to*
**Tracy Andrews (x1425)** *in the Vendor Allowance Department.*

Contract# __11761__

Trade Partner: __RedBox Automated Retail__    Vendor #: __AR000630__

Category Manager: __Sean O'bryan__
Department: __GM__

| Date | Initials | Reviewed | Approved |
|---|---|---|---|
| 6/4/20 | Tracy Andrews, Vendor Allowance | TP | |
| | Legal, HSE | | |
| 11/11/20 | Diane Persons, Vendor Allowance | DP | DP * Final Need Contract Printed & replace one attached 9/1/11 |
| | Merchandising Area Vice President | | |

Contract Expires: __June 30, 2023__

| $ | Thru P or Year | D & A in 000s |
|---|---|---|
| Current YTD D & A | '20 | 0 |
| Prior Yr | '19 | 0 |

**Comments:**

✓ Terms: 3 Year    7/1/2020 - 6/30/2023 ✓
Payment: Net 30 days    Standard payment terms
Damaged N/A vending
Exhibit A
COI

14.3 Dispute Resolution    Section 8.5 "Your Website" a description of
? Chicago, Illinois    Redbox products + services... on our website N/A
we usually state of NY    (same as previous contracts)
            Has Auto Renewal up to two additional 1yr periods

✓ * Need Redbox Signature
✓ * Need Exh B Site List filled out

# redbox.

## KIOSK OPERATING AGREEMENT
### Summary Page

| | |
|---|---|
| **Client:** | The Golub Corporation |
| **Primary Client Contact:** | Mike DeSimone; mikedesimone@pricechopper.com; 518-379-1616 |
| **Form of Organization:** | A corporation organized under the laws of the State of Delaware |
| **Client Addresses:** | *Principal Office:*  *For Notices:*  <br> 461 Nott Street  Same <br> Schenectady, New York, 12308 |
| **Effective Date:** | July 1, 2020. |
| **Term:** | 3 years effective as of July 1, 2020 (the "**Effective Date**") and expiring on June 30, 2023. |
| **Placements:** | ☒ Indoor   ☒ Outdoor |
| **Commission:** | Movie Rental = 5.5% from July 1, 2020 until midnight December 31, 2020; 6% for calendar year 2021; 6.5% beginning on January 1, 2022 until expiration of the Term. <br><br> Movie Sell Through and Movie Previously-Viewed Sell Through = 3% |
| **Products:** | ☒ Movie Rental <br> ☒ Movie Sell Through <br> ☒ Movie Previously Viewed Sell Through |
| **Issuance of Commission Payments:** | Quarterly, Net 30 |
| **Cancellation of Prior Contracts:** | This contract, on and after its Effective Date, supersedes and cancels the prior contracts (except with respect to any outstanding payment obligations) identified as follows: <br><br> Kiosk Operating Agreement the term of which began on July 1, 2016 between Redbox Automated Retail, LLC and The Golub Corporation. |

| THE GOLUB CORPORATION | REDBOX AUTOMATED RETAIL, LLC |
|---|---|
| By: *[signature]* | By: *[signature]* Michael Chamberlain <br> BA0FB675BF29454... |
| Name: Tom Tomasulo | Name: Michael Chamberlain |
| Title: VP Center Store | Title: COO |
| Date: 9/18/2020 | Date: September 14, 2020 |

8935507_3
8935507_5

# KIOSK OPERATING AGREEMENT

## Contents

1. Definitions
2. Nature of Our Agreement
3. Identification of Sites and Premises
4. Kiosk Installation
5. Kiosk Operation and Maintenance
6. Kiosk Relocation, Removal and Re-Installation
7. Commission Payments
8. Marketing
9. Term and Termination
10. Confidential Information
11. Assumption of Loss; Insurance
12. Indemnification
13. Limitations of Liability
14. Miscellaneous

This Kiosk Operating Agreement (this "**contract**") is entered into between **The Golub Corporation**, a Delaware corporation ("**you**," "**your**" or "**Client**") with its principal offices at 461 Nott Street, Schenectady, New York, 12308 and **Redbox Automated Retail, LLC,** a Delaware limited liability company ("**we**," "**our**" or "**Redbox**"), with its principal offices at One Tower Lane, Suite 900, Oakbrook Terrace, Illinois 60181. The term "**us**" refers to both Client and Redbox. The contract consists of the Summary Page, the following terms and conditions, and the exhibits to the contract.

## Terms and Conditions

### 1. Definitions

"**Commissions**" refers to the sums payable to you under this contract, as detailed in the Section entitled "Commission Payments."

"**Kiosk**" means a Redbox® branded machine that vends Media (a) selected by a customer on the Kiosk's touch screen monitor (b) after the presentment of a valid payment card accepted by Redbox. The Kiosk also has a card reader, a lighted panel for displaying Media cover art that is mounted on the side of the Kiosk, and may have a flat screen video monitor mounted above the Kiosk to play promotional or advertising materials. The Kiosk specifications are substantially similar to those displayed on Exhibit "A."

"**Media**" movies (in all formats).

"**Net Rental Revenue**" means all gross revenues from paid rentals of Media and from the failure of customers to return rented Media, less customer refunds, credit card charge backs, declined transactions, promotional discounts, and applicable sales taxes.

"**Net Sales Revenue**" means all gross revenues from paid sales of Media and from the failure of customers to return rented Media, less customer refunds, credit card charge backs, declined transactions, promotional discounts, and applicable sales taxes.

"**Premises**" means prominent and visible space measuring approximately three (3) feet by seven (7) feet in a mutually agreed, strategic location at each Site, together with non-exclusive access rights in , upon and across those areas designated by Client and Redbox for the installation, operation, maintenance and repair of the Kiosks.

"**Sites**" means the retail locations which you own or operate within the United States which are listed on Exhibit B, together with all additional locations acquired or controlled by you after the Effective Date for which the parties agree to add to Exhibit B.

### 2. Nature of Our Agreement

**2.1 Kiosk Deployment.** Redbox operates automated Kiosks offering customers a convenient way to rent or buy Media, and an efficient way for you

to generate income from your Premises. You have requested, and we have agreed, that Redbox will install and operate, or continue to operate, as the case may be, Kiosks at eligible Sites. You grant Redbox the exclusive right to install and operate automated media rental and sales machines, and to rent Media, at your Sites. In return, Redbox will pay you the Commissions detailed in the Section entitled "Commission Payments."

**2.2 Access to Sites**. You grant Redbox (for its use and the use of its employees and agents) a limited license at your Sites when the Sites are open to the public for business. This license allows Redbox to enter and exit the Sites, in a manner that is in accordance with Client's safety and security procedures in place at each Site from time to time and not disruptive to your business, and to perform any necessary installation, service, maintenance, repair, relocation and removal of the Kiosks. You will not cause or permit any unreasonable interference with Redbox to or from the Kiosks

**2.3 Ownership of Kiosks and Media**. As between the two of us, you acknowledge that we own all right, title and interest in the Kiosks and the Media. You will not interfere with our ownership.

## 3. Identification of Sites and Premises

**3.1 Site Identification**. The parties have mutually agreed to continue to operate Kiosks at the Site(s) listed on **Exhibit B** attached hereto and incorporated herein. Notwithstanding the notice provision set forth below, the parties may amend Exhibit B by mutual agreement through the use of email.

**3.2 Site Eligibility**. As to future installed Kiosks, to be eligible for the installation of a Kiosk, a Site must be within a feasible Redbox Kiosk service area, as defined by Redbox, support Redbox's model for economic viability and be accessible to individuals pursuant to the requirements of the Americans with Disabilities Act of 1990 ("ADA"). If a Site does not meet these criteria, then we may, but will not be obligated to, install a Kiosk at the Site.

**3.3 Selection of Premises**. As to future installed Kiosks, after identifying the Sites, the parties will work together to select Premises at the Sites to install the Kiosks. The order of installing Kiosks and the selection of Premises are largely determined by satisfying the goals of maximizing foot traffic, visibility, revenue and Commissions, maintaining safety, complying with law, and minimizing disruption to your business. Any installations will be subject to all applicable ordinances, codes, local laws, terms and conditions of leases, covenants, and use restrictions.

**3.4 Permits**. As to future installed Kiosks, at Redbox expense, the parties will work together to obtain any necessary permits, licenses or other governmental authorizations.

**3.5 New and Newly Acquired Sites**. You will use good faith efforts to provide Redbox throughout the term with a rolling forecast of your projected openings of new retail locations to determine eligibility according to section 3.2 above. However, notwithstanding any other provision in this contract, Redbox is not obligated to install a Kiosk at a new or newly acquired Site and Client is not obligated to submit any new or newly acquired Site for consideration for installation of a Kiosk by Redbox. Installation at a new or newly acquired Site will be by mutual agreement.

**3.6 Installation and Access Authority**. Subject to applicable law, regulation, or the terms of any agreement for any new Site (which is in effect prior to the time we place a Kiosk at such new Site), you represent and warrant that you have the authority (a) to grant Redbox the right to install and operate Kiosks at the Sites, and (b) to grant access to Redbox, and its invitees, from and to the Kiosks so we can perform our obligations under this contract.

## 4. Kiosk Installation

**4.1 Our Installation Responsibilities**. The parties affirm and acknowledge that Kiosks currently existing as of the Effective Date at the locations listed on Exhibit B shall remain in operation until removed pursuant to Section 6 below. If the parties agree to install any additional Kiosks or reinstall any Kiosks, we will install Kiosks at the Sites according to a mutually agreed deployment schedule. Kiosk specifications are substantially similar to those described in **Exhibit A** attached hereto and incorporated herein. We will minimize disturbances to your Site operations during our installation of the Kiosks, and all installation activities will be coordinated with the manager on duty at your Site before we begin installation. For security reasons, we will bolt an outdoor Kiosk to the pavement.

**4.2 Your Preparation of the Premises**. Before the scheduled date of Kiosk delivery, you, at your reasonable cost, will prepare the Premises for installation by removing any structures, machinery, or displays located on the Premises. Due to the potential variation of deployment options, any additional preparation of a Site for the deployment of an outdoor

Kiosk will be determined following a Site visit by Redbox personnel. The means and manner by which you prepare the Premises for installation of a Kiosk will be at your discretion.

**4.3 Utilities.** With the exception of electrical power, our Kiosks normally have "plug and play" capability. Before the scheduled date of Kiosk delivery, you will provide two (2) electrical outlets from a dedicated circuit providing 120-volt, 20 Amp A.C. electrical power service to operate the Kiosk. We are responsible for communication or data connectivity. Should two (2) electrical outlets from a dedicated circuit providing 120-volt, 20 Amp A.C. electrical power service to operate the Kiosk, not exist, you agree to have them installed at your cost.

## 5. Kiosk Operation and Maintenance

**5.1 Our Responsibilities.** We have exclusive rights over the operation, use and control of the Kiosks, including but not limited to their hardware and software. Your personnel have only the same limited right of access to the Kiosks as are granted to the general public, except that in the event of emergency circumstances and provided you first notify Redbox if practicable or as soon as possible if not practicable, you may disconnect a Kiosk from its power source in order to reasonably ensure the safety of your and Redbox customers and personnel and the safe operation of your business. We will provide all hardware and software support, maintenance and repairs for the Kiosks. We will maintain the Kiosks in an attractive and good state of repair, and in proper working order. If there is a Kiosk malfunction, we will promptly initiate diagnostic and repair services after receiving notice of the malfunction. The Redbox personnel assigned to perform Redbox's obligations under this contract will be qualified for the services they are assigned to perform. They will perform Redbox's obligations with promptness and diligence, and in a good and workmanlike manner, and in accordance with all applicable local, state and federal laws, statutes and ordinances and in accordance with Client's security, access, and safety practices, guidelines, and standards which Client shall provide in writing to Redbox. Redbox represents and warrants that it has all rights in and to the hardware, the software and the Media necessary for the lawful operation of Kiosks and rental of the Media and that such operation of the Kiosks and rental of the Media pursuant to this Agreement shall not infringe any intellectual property right of any third party.

**5.2 Your Responsibilities.** You will maintain the area immediately surrounding the Premises in a neat, clean and good condition, so as to provide an attractive and suitable environment for the use of the Kiosks by customers. You will provide all electrical service. For indoor Kiosk locations, you are responsible for heating and air conditioning services.

**5.3 Security and Access to Stores.** Each of us will take reasonable precautions to ensure safe working procedures and conditions during and in connection with our operations at a Site. While on-Site, Redbox's personnel will comply with your security and access policies as may be in effect (and as are identified or provided in writing to Redbox) at the Sites. At your request, our personnel will check in with Site management when they arrive to perform maintenance or operations at a Site.

**5.4 Customer Queuing.** You will keep the area immediately adjacent to the Premises open so individuals waiting to use the Kiosks may queue. Of course, you may direct such queuing so as to minimize interference with your other business traffic.

**5.5 Customer Service.** We will maintain a toll free customer service phone number which will be prominently displayed on the Kiosk. We will handle all customer calls and other issues relating to the operation of the Kiosks, providing not less than seventy (70) hours of live phone coverage across seven (7) days/week, excluding holidays, and 24 x 7 voice mail coverage.

## 6. Kiosk Relocation, Removal and Re-Installation

We understand that, under certain circumstances, a Kiosk may need to be moved or relocated. This Section details the procedures governing movement and relocation of a Kiosk.

**6.1 Movement of a Kiosk.** It is critical that only Redbox – and not you – physically moves a Kiosk. Redbox needs to handle any move for several reasons, including: (a) the Kiosk is our property; (b) the Kiosk contains sensitive electronic equipment and precision machinery; (c) the Kiosk needs to remain powered and have consistent internet connectivity to conduct transactions, monitor inventory and status, and to receive programming updates; (d) due to its size, weight, and various components, the Kiosk requires specialized equipment for handling by trained personnel to prevent damage to and shifting of contents, personal injury, unnecessary service calls and lost revenue; and (e) because a sub-optimal location may result in less revenue, the new location must be mutually agreed upon between us. You agree to communicate these points to your personnel.

**6.2 Process for Movement, Relocation and Reinstallation of a Kiosk.** The agreed-upon process for relocation, removal or reinstallation ("3R") of Kiosks is as follows:

(a) You must request in writing the relocation, removal or reinstallation of any Kiosk by submitting a "3R" request to your Client relations manager no less than five (5) business days prior to the requested relocation, removal or reinstallation date.

(b) Because Kiosk location is by mutual agreement, we will promptly respond with our agreement or disagreement as to the proposed Premises. Any relocated placement must be similar to the original location. In the unlikely event that the parties cannot agree on new Premises at a Site, then either party may terminate this contract with respect to that Site.

(c) Once the parties reach agreement on relocation, removal or reinstallation, we will coordinate with your representative at the Site and will mutually determine the schedule (date and time) for it to take place. We – and not you – are responsible for the relocation, removal or reinstallation of the Kiosk.

(d) INTENTIONALLY DELETED

(e) Your responsibility for the costs associated with a relocation, removal or reinstallation of the Kiosk, made at your request, are limited to the relocation of the electrical lines to the Kiosk.

**6.3 Disclaimer of Liability.** We are not liable, and disclaim all assumption of loss, for any damages, personal or otherwise, should you or any of your agents take it upon themselves to solely on their own and without assistance from Redbox relocate, remove, or re-install a Kiosk. If you move a Kiosk without following the procedures set forth in Section 6.2, you will defend and indemnify Redbox for any Claims that result from the unauthorized movement according to the provisions of Section 12 ("Indemnification") below. We also may offset your Commission for any damages we incur. If you move a Kiosk a second time at a Site without following the procedures set forth in Section 6.2, we may immediately terminate this contract with respect to that Site. Notwithstanding the foregoing, Redbox's disclaimer of liability shall not apply in situations where Client has requested Redbox remove, relocate or re-install a Kiosk, Redbox has agreed to do so and thereafter Redbox fails to do so in a reasonable time.

**6.4 Remodels and Rebuilds.** Should your operations continue during any period of remodeling or rebuilding of a Site, reasonable accommodations will be made to attempt to keep the Kiosk operating at the Site during that period. However, we may remove a Kiosk from a Site or suspend service at a Kiosk during that period if, in our reasonable opinion, the remodeling or rebuilding would have a material adverse effect upon (a) the number of customer transactions conducted at the Kiosk or (b) the Kiosk's condition.

**6.5 Vandalism or Burglary.** Either party may request approval of the other party for the exclusion of any Site from these obligations if the Kiosk has repeatedly been vandalized or burglarized. The other party's approval of this request will not be unreasonably withheld, conditioned or delayed.

**6.6 Removal for Failure to Generate Income.** If a Kiosk fails to generate average Net Rental Revenue in excess of six hundred dollars ($600.00) per week for any four (4) consecutive weeks occurring eight (8) weeks or more after the initial installation of a Kiosk at the Site, we may remove the Kiosk. Upon removal of the Kiosk, this contract automatically terminates with respect to that Site. Notwithstanding the foregoing, it is within our sole discretion to remove a second Kiosk from a Site for any reason.

**6.7 Surrender of Premises; Transitional Operation.** Upon the expiration or the termination of this contract, in whole or with respect to any individual Site, we will, at Redbox's sole cost and expense, (a) remove the Kiosks, (b) surrender possession of the Premises, and (c) return the Premises in good clean condition, subject to normal and reasonable wear and tear related to the use and operation of the Kiosks. Notwithstanding the foregoing, we will fix or repair bolt holes due to Kiosk installation and removal. We will consult with you to mutually agree upon a reasonable schedule to accomplish these tasks, which should not exceed thirty (30) days from expiration or termination. Unless we terminate this contract for your breach, we will continue to operate the Kiosks and pay you commissions upon the same terms and conditions set forth in this contract until removal of the Kiosks is complete.

**7. Commission Payments**

**7.1 Rental Commissions.** We offer Media in the Kiosks for rental by end-customers. We will pay you a commission based on a percentage of Net Rental Revenue received by Redbox from both the rental of Media and from the failure by customers to return Media, as detailed in Section 7.4 below. The Commission percentage is specified on the Summary Page.

**7.2 Sell Through Commissions.** We may offer new Media for direct sale from the Kiosks. We will pay

you a commission based on a percentage of the net revenue received by Redbox for such sale of new Media and Net Sales Revenue as detailed in Section 7.4 below. Redbox will determine the sale price of the Media. Such sell through commission percentage is specified on the Summary Page.

**7.3 Previously-Viewed Sell Through Commissions.** We may offer previously-viewed Media for direct sale from the Kiosks. We will pay you a commission based on a percentage of the Net Sales Revenue received by Redbox for such sale of previously viewed Media as detailed in Section 7.4 below. We reserve the right to determine the selection and pricing for previously-viewed Media. Such previously-viewed sell through commission percentage is specified on the Summary Page.

**7.4 Commission Calculation and Payment.** For all Kiosks installed and operating at the Sites, we will pay you your commissions within thirty (30) days of the end of each calendar quarter. Commission payments will:

(a)  be calculated in accordance with generally accepted accounting principles.

(b)  be applied against Net Rental Revenue or Net Sales Revenue, as the case may be; and

(c)  be accompanied by a report which itemizes Net Rental Revenue and Net Sales Revenue by Kiosk and Site.

**7.5 Inspection of Records.** It is your right, within one hundred eighty (180) days of payment of a commission, to inspect our accounts and reports relating to the calculation of that commission. Inspections can occur at reasonable intervals upon reasonable advance written notice, and during our regular business hours.

**7.6 Taxes**

(a)  Redbox shall ensure compliance with all federal, state and local tax laws applicable to the Kiosks, Media and services including but not limited to registering to pay, collecting and remitting taxes imposed upon Redbox in performance of its obligations under this contract. Each party shall be solely responsible for any taxes owed on its income, gross receipts, property or net worth, including income generated under this contract. Redbox will have no liability to separately reimburse Client for any income, gross receipts, business and occupation, or similar tax imposed on Client's business, income, or receipts for any amount paid to Client by Redbox as a result of this contract or any Kiosk transactions.

(b)  In the event that the tax authorities subsequently seek to assess taxes against Client that Client reasonably believes are Redbox's obligation, then Client, rather than remit such taxes and seek reimbursement from Redbox, shall immediately provide written notice to Redbox, and Redbox and Client shall reasonably cooperate with each other to investigate and accurately determine the appropriate tax liability, if any, and work together to minimize such tax liability, to the extent legally permissible. Notwithstanding the indemnification provision set forth below, if the Parties, exercising good faith, determine that the assessed taxes, or some portion thereof, is properly due and payable by Redbox, Redbox shall pay such taxes, and in such a case, Redbox shall bear all interest, levies and penalties, assessed by such tax authorities as required by applicable Law, unless the failure to collect and remit taxes is attributable to a Client misrepresentation or knowingly failing to disclose a material fact that affects the imposition of taxes due.

(c)  The Parties shall provide prompt notice to one another of any audit by tax authorities with respect to Taxes and shall reasonably cooperate to identify and defend positions that may arise under such an audit.

**8. Marketing**

Recognizing that marketing is critically important to increasing customer awareness, which in turn substantially impacts Net Rental Revenue and Net Sales Revenue, the parties agree to engage in the following marketing efforts:

**8.1 Location Guide.** You authorize Redbox to use your name and address of the Sites solely for the purpose of providing a location guide for customers. This guide may be in interactive media form or Internet-based, such as but not limited to a locator guide on our website.

**8.2 Banners and Signage.** Provided that Client reviews and approves banners and signage and subject to any applicable lease provisions, Client will provide Redbox access and permission to place banners and signage which may include but not be limited to the following categories at each Client Site:

☒ Banners

**8.3 Intercom Messages.** If a Site hosting a Kiosk has an automated intercom system which is used for promotions, each Site will play a pre-recorded thirty (30) second message once every hour during the eight (8) weeks following the grand opening of each Kiosk. Thereafter, the Site will play a message five (5) times

per day at evenly spaced intervals, as long as the Kiosk is operating at the location. We will provide scripts of such messages for your reasonable approval.

**8.4  Point of Purchase Merchandising.** We reserve the right to use a digital merchandising screen for point of purchase merchandising from the Kiosks. The screen would be directly attached and secured to the Kiosks and would have a visual component as well as an audio component. The screen may display (but not be limited to displaying):

- ☒ Cover art from the currently offered Media;
- ☒ Movie trailers from new movie releases and upcoming releases; and
- ☒ External advertising.

**8.5  Your Website.** You will maintain on your corporate website a description of the Redbox products and services offered at your Sites, along with a photo of a Kiosk. The text and photo appearing on this webpage are subject to the mutual approval of the parties. There should be a link to the webpage from some other conspicuous point on your website (e.g., your home page).

**8.6  Trademarks.** During the term of this contract, Redbox may include Client's name and logo among its list of Clients on its website and in general sales presentations, and may disclose Client's name during its quarterly earnings announcement in fulfillment of any SEC disclosure requirements if such should become required. Neither party shall use the name, registered trademark, or proprietary product names of the other party for the purpose of advertising, or other such purposes without the prior written approval of the other party.

**8.7  Other.** The parties upon mutual agreement may elect to engage in additional marketing efforts such as quarterly marketing promotions which may include the following: Circular advertising, Out Of Home (OOH) advertising, radio sponsorships, cross promotions, demo programs, text messaging programs, email marketing programs, and vend screen advertisements, programs involving promo code distribution via cross promotions (Catalina or POS System), circular advertising, text programs and incremental in-store signage via a 3rd party vendor.

**9.     Term and Termination**

**9.1     Term.**

This contract goes into effect on the "**Effective Date,**" which is identified on the Summary Page. The term of this contract expires at 11:59 p.m. (Central time) on the date identified on the Summary Page.

**9.2     Termination for Cause.** Either of us may terminate this contract as a result of a material breach by the other party of any of its obligations. The termination will be effective upon the breaching party's receipt of notice of the breach, subject to a thirty (30) business day cure period. If the breaching party fails to cure or to initiate and diligently implement a plan to cure the breach within thirty (30) business days after its receipt of the notice, the non-breaching party may terminate the contract.

**9.3     Immediate Termination.** Notwithstanding the foregoing paragraph, either of us may terminate this contract immediately upon written notice if any of the following events occur: (a) the other party ceases or is likely to cease to carry on all or any principal part of its business; (b) the other party is unable to pay its debts as and when they become due; (c) due to an encumbrance, a third party takes possession of all or any part of the business, property or asset of the other party, or any liquidator or receiver is appointed in respect thereof; (d) the other party makes a general assignment for the benefit of its creditors; or (e) any order has been made or any resolution has been passed for the winding up of the other party.

**10.    Confidential Information**

**10.1 Definition of "Confidential Information."** "Confidential Information" means information, whether received before or after the Effective Date, marked or otherwise identified in writing by one of us as proprietary or confidential, or information that, under the circumstances surrounding the disclosure, the receiving party reasonably should recognize as being confidential. It includes non-public information regarding either party's products, software, marketing or promotions, business methods, cost information, forecasts, sales, revenues, profits, customer information (including personally identifiable information, rental transactions, and rental history), supplier information, legal compliance, and the terms of this contract.

**10.2 Information Not Considered Confidential.** Confidential Information does not include information which: (a) the recipient developed independently; (b) the recipient knew before receiving it from the other party; or (c) is or subsequently becomes publicly available or is received from another source, in both cases other than by a breach of an obligation of confidentiality. The burden of proof to establish that one of the above exceptions applies will be upon the

recipient.

**10.3 Use of Confidential Information.** During the term of this contract and for a period of three (3) years after termination or expiration of this contract, neither party will:

(a)   use the other's Confidential Information without the other's written consent, except in furtherance of this business relationship or as expressly permitted by this contract; or

(b)   disclose the other's Confidential Information, except to obtain advice from its professional advisors, legal or financial consultants, or if compelled by law (including disclosure necessary or appropriate in filings with the U.S. Securities Exchange Commission) or generally accepted accounting principles, in which case the party compelled to make the disclosure will use its best efforts to give the other party notice of the requirement so that the disclosure can be contested.

**10.4 Protection of Confidential Information.** Each party will take reasonable precautions to safeguard the other party's Confidential Information. Those precautions will be at least as great as the precautions that the other party takes to protect its own Confidential Information. Each party will disclose the other's Confidential Information to its employees, consultants or subcontractors only as needed to fulfill such party's obligations and exercise such party's rights under this contract and subject to the confidentiality obligations imposed here. When Confidential Information is no longer necessary to perform any obligation under this agreement, each party will return it to the other party or destroy it at the other's request.

**10.5 Cooperation in the Event of Disclosure.** Each party will promptly notify the other party upon discovery of any unauthorized use or disclosure of Confidential Information and will help the other party regain possession of the Confidential Information and prevent further unauthorized use or disclosure.

**10.6 Right to Use Feedback.** If one party provides suggestions for changes or improvements, or other feedback, to the other party about the other party's products or services, the party receiving the feedback may use it for any purpose without obligation of any kind, except that the receiving party will not disclose the source of feedback without the consent of the party providing it.

**11.   Assumption of Loss; Insurance**

**11.1 Assumption of Loss.** Except as otherwise stated in this contract and except for the intentional or grossly negligent acts of you, your employees or agents, we will assume responsibility for all physical loss or damage to our Kiosks, their contents, signs and other personal property.

**11.2 Insurance Coverages.** We will maintain basic commercial general liability insurance coverage in the minimum amount of $1 million per occurrence and $2 million in the aggregate, workers compensation insurance coverage in an amount equal to at least statutory limits, and employers liability coverage in the minimum amount of $1 million per accident and per employee. At your request, we will supply certificates evidencing the insurance coverages specified in this paragraph. Client shall be included as an additional insured with respect to the commercial general liability insurance coverage by Redbox's insurance provider.

**11.3 Claims Cooperation.** You agree to (a) promptly notify Redbox in writing of any claim or loss after any potentially insurable loss is discovered, and (b) cooperate in the investigation and adjustment of any such loss.

**12.   Indemnification**

**12.1 Third-Party Claims.** Each party (the "**indemnifying party**") will indemnify and defend the other party, its officers, affiliates, employees and agents, against and hold them harmless from, without limitation, any and all liabilities, injury, death, penalties, losses, costs, damages, claims, expenses, attorneys' fees, expenses of litigation, suits, judgments, liens and encumbrances brought, suffered or incurred by the other party or third parties (collectively, "**Claims**") attributable to the respective negligent acts or omissions of or breach of this contract or applicable law the indemnifying party, its officers, affiliates, employees, agents or subcontractors, while engaged in their business or in the performance of their duties under this contract. A party will have no obligations under this paragraph to the extent a Claim relates to or arises from the intentional acts or omissions of the other party, its officers, employees, affiliates, subcontractors, or agents.

**12.2 Landlord Claims.** You will further indemnify and defend Redbox against and hold it harmless from the Claims of any landlord or property manager resulting from such landlord or property manager's claim that we do not have the right to install or operate a Kiosk at a Site.

**13. Limitations of Liability**

**13.1 Limitation of Liability.** IN NO EVENT WILL A PARTY OR ANY OF ITS DIRECTORS, OFFICERS, MEMBERS, EMPLOYEES, AGENTS OR SUBCONTRACTORS BE LIABLE UNDER ANY THEORY OF TORT, CONTRACT, STRICT LIABILITY OR OTHER LEGAL OR EQUITABLE THEORY FOR EXEMPLARY, PUNITIVE, SPECIAL, INCIDENTAL, INDIRECT, CONSEQUENTIAL DAMAGES, LOSS OF USE OF DATA OR THE LIKE, EACH OF WHICH IS HEREBY EXCLUDED BY AGREEMENT OF THE PARTIES REGARDLESS OF WHETHER SUCH DAMAGES WERE FORESEEABLE OR WHETHER EITHER PARTY OR ANY ENTITY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**13.2 Exclusions to the Limitation of Liability.** The limitations of liability in the preceding paragraph will not apply to liabilities arising under the Sections governing "Confidential Information," "Indemnification," or to acts or omissions involving a party's intentional misconduct or fraud.

**13.3 Disclaimer of Warranties.** EXCEPT AS EXPRESSLY STATED IN THIS CONTRACT, NEITHER PARTY MAKES ANY WARRANTY OF ANY KIND TO THE OTHER PARTY, AND DISCLAIMS ALL WARRANTIES, INCLUDING WITHOUT LIMITATION ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

## 14. Miscellaneous

**14.1   Notices.** Notices, authorizations, and requests in connection with this contract must be sent by personal delivery, certified mail (return receipt requested), or express courier to the addresses listed in this contract. Notices will be treated as delivered on the date shown on the return receipt or on the courier confirmation of delivery. Notices sent to Redbox must be separately copied and sent to the "Legal Department."

**14.2   Governing Law.** The laws of the State of Delaware, excluding the rules of conflicts of law, will govern this contract.

**14.3   Dispute resolution.** When bringing an action to enforce this contract, the parties agree to the following jurisdictions: (a) if we bring the action, the jurisdiction will be where you have your headquarters; and (b) If you bring an action, the jurisdiction will be Cook County (Chicago), Illinois.

**14.4   Jury Waiver.** Each party knowingly, voluntarily and intentionally waives the right it may have to a trial by jury in respect of any litigation based upon this contract, or arising out of, under or in connection with this contract, or any course of dealing, statements, whether verbal or written, or action of or by a party or any of their respective affiliates to the fullest extent permitted by law. This provision is a material inducement for the parties to enter into this contract.

**14.5   Independent Contractors.** Redbox acts as an independent contractor and will be responsible for any and all social security, unemployment, workers' compensation and other withholding taxes for all of its employees. Nothing in this contract will be deemed to establish a partnership, joint venture, employment, agency or other legal relationship other than that of independent contractors between the parties.

**14.6   Subcontracting.** We may subcontract certain of our obligations under this contract, including but not limited to, installation, maintenance, supplying, servicing, relocation or removal of our Kiosks. However, we will remain primarily liable to you for any and all such subcontracted services.

**14.7   Assignment.** This contract cannot be assigned without the express written consent of the other, which consent will not be unreasonably withheld, conditioned or delayed. However, a party may withhold consent if an assignee is in or plans to be in competition with that party. Additionally, a party does not need to obtain the consent of the other party to assign this contract to a parent, subsidiary, or affiliated corporation or to a corporation or entity, which acquires all or, substantially all of the assets or stock of such party, parent, subsidiary or affiliate.

**14.8   Entire Agreement.** This contract, the Summary Page, and all exhibits contain the entire agreement between the parties with respect to the subject matter of this contract, and supersede any previous understandings or agreements, whether written or oral, in respect of such subject matter. However, if this contract does not include a section governing the confidential nature of information exchanged by the parties, then the terms of any separate confidentiality or nondisclosure agreement signed by the parties will not be superseded by this contract.

**14.9   Interpretation.** If a court holds any provision of this agreement to be illegal, invalid or unenforceable, the rest of the document will remain in effect and this agreement will be amended to give effect to the eliminated provision to the maximum extent possible. The term "may" indicates that something is permissive and optional in a party's

discretion, not mandatory or automatic. The language used in this contract has been mutually chosen by the parties to express their intent, and no rule of strict construction will be used against either party.

**14.10 Modification; Waiver.** No amendment, change, waiver or discharge of this contract is valid unless it is set forth in writing and signed by an authorized representative of the party (which in the case of Redbox is a Vice President) against whom the amendment, change, waiver or discharge is sought to be enforced.

**14.11 Third Party Beneficiaries.** There are no third-party beneficiaries who are intended to benefit in any way from this contract.

**14.12 Force Majeure.** Neither of us will be liable to each other for any loss, damage, delay or failure of performance that is attributable to acts of God, armed conflicts, war, insurrection, acts of terrorism or acts committed in furtherance of terrorism, riots, earthquakes, hurricanes, floods, unusually severe weather, conditions or events of nature that cannot be predicted, civil disturbances, power or communications failures, strikes, fire, the acts of any governmental authority, or other causes beyond a party's reasonable control. A party's performance will be excused during the pendency of any such event, but that party will take all steps reasonable, practical and necessary to effect prompt resumption of its obligations under this contract in full or in part.

**14.13 Survival.** Provisions regarding payment of commissions, limitations of liability, confidentiality, indemnification, obligations on termination or expiration and the other provisions in this Section entitled "Miscellaneous" survive termination or expiration of this contract.

**14.14 Execution.** This contract is effective as of the Effective Date when it is signed by authorized representatives of each party. The contract may be executed in one or more counterparts, each of which will constitute an original agreement, but is not enforceable until delivery and exchange of the executed counterparts. Copies of this contract (including facsimiles) have the same force and effect as a signed original document.

| THE GOLUB CORPORATION | REDBOX AUTOMATED RETAIL, LLC |
|---|---|
| By: *[signature]* | By: *[DocuSigned by: Michael Chamberlain, BA0FB675BF29454...]* — Approved by Legal |
| Name: Tom Tomaselli | Name: Michael Chamberlain |
| Title: VP Center Store | Title: COO |
| Date: 9/18/2020 | Date: September 14, 2020 |

# EXHIBIT A

## Redbox Physical/Technology Overview

Physical Specifications

**66 TITLE INDOOR KIOSK** (redbox)

*TOP VIEW*

Front view dimensions: 32" + 34" width; 80.17" total height; 14.375" and 10.75" upper sections; 66" middle section; 83.63" and 76.19" right panel; 7.44" bottom.

*FRONT VIEW*

Side view dimensions: 26" depth; 8"/4.75" top section.

*SIDE VIEW*



1. Electricity Connection
    a. Interior Kiosk
        1. Power – 120v. 20 amp **dedicated electric line**
        2. The light box and the header that sits on top of the machine have a total electric load of 1.2 amps. The machine has a total electric load of 4.9 amps for a total connected load of 6.1 amps.
    b. Exterior Kiosk
        1. Power: 120v 20 Amp **dedicated** circuit
        2. The light box and the header that sits on top of the machine have a total electric load of 2.1 amps. The machine has a total electric load of 8.5 amps for a total connected load of 10.6 amps.

# EXHIBIT B

## SITE LIST

| Kiosk Number | Store Number | Store Location |
|---|---|---|
| 7222 | 224 | NY-Albany-1892 Central Ave |
| 7309 | 45 | NY-Albany-40 Delaware Ave - Machine A |
| 7310 | 133 | NY-Albany-911 Central Ave |
| 7312 | 42 | NY-Catskill-320 W Bridge St |
| 7313 | 196 | NY-Glenmont-329 Glenmont Rd |
| 7314 | 195 | NY-Gloversville-358 N Main St |
| 7315 | 183 | NY-Guilderland-1706 Western Ave |
| 7316 | 28 | NY-Guilderland-2080 Western Ave |
| 7318 | 12 | NY-Johnstown-241 N Comrie Ave |
| 7319 | 138 | NY-Latham-873 New Loudon Rd |
| 7320 | 188 | NY-Albany-475 Albany Shaker Rd |
| 7321 | 184 | NY-Malta-1 Kendall Way - Machine A |
| 7322 | 94 | NY-Mechanicville-1 Price Chopper Plz |
| 7323 | 134 | NY-Oneonta-1000 Main St |
| 7324 | 111 | NY-Rensselaer-501 Columbia Tpke |
| 7325 | 39 | NY-Saratoga Springs-3045 Route 50 - Machine A |
| 7326 | 158 | NY-Saratoga Springs-115 Ballston Ave - Machine A |
| 7327 | 193 | NY-Saugerties-138 Ulster Ave |
| 7329 | 175 | NY-Schenectady-1879 Altamont Ave |
| 7330 | 191 | NY-Schenectady-442 Balltown Rd |
| 7331 | 38 | NY-Scotia-290 Saratoga Rd |
| 7332 | 159 | NY-Slingerlands-1395 New Scotland Rd |
| 7333 | 3 | NY-Troy-716 Hoosick Rd |
| 7334 | 181 | NY-Troy-79 Vandenburgh Ave |
| 7335 | 10 | NY-Troy-865 2nd Ave |
| 7822 | 23 | NY-Albany-1060 Madison Ave - Machine A |
| 10989 | 221 | CT-Windsor-675 Poquonock Ave |
| 13667 | 194 | MA-Worcester-72 Pullman St |
| 14474 | 209 | CT-Newington-2985 Berlin Tpke - Machine A |
| 14475 | 204 | CT-Bristol-121 Farmington Ave |
| 14477 | 203 | CT-Southington-410 Queen St |
| 14478 | 140 | MA-Pittsfield-555 Hubbard Ave - Machine A |
| 14480 | 162 | MA-Marlborough-240 E Main St - Machine A |
| 14481 | 179 | MA-Worcester-50 Cambridge St |
| 14482 | 160 | MA-Worcester-564 SW Cutoff |
| 14483 | 155 | MA-Great Barrington-300 Stockbridge Rd |
| 14485 | 148 | MA-Worcester-221 Park Ave # 223 |
| 14486 | 5 | MA-Lenox-489 Pittsfield Rd |
| 14487 | 150 | MA-Spencer-133 Main St |
| 14489 | 40 | NY-Queensbury-677 Upper Glen St |
| 14490 | 112 | NY-Clifton Park-15 Park Ave - Machine A |
| 14491 | 168 | NY-Plattsburgh-19 Centre Dr |
| 14492 | 198 | NY-Newburgh-39 N Plank Rd |
| 14493 | 102 | NY-Watertown-1283 Arsenal St |
| 14494 | 172 | NY-Syracuse-2515 Erie Blvd E - Machine A |
| 14495 | 199 | NY-Cicero-5701 E Cir Dr Ste 100 |
| 14496 | 129 | NY-Poughkeepsie-432 South Rd - Machine A |
| 14497 | 142 | NY-New Windsor-115 Temple Hill Rd Ste D |
| 14498 | 178 | NY-Cortland-854 State Route 13 |
| 14499 | 44 | NY-Utica-50 Auert Ave - Machine A |
| 14500 | 130 | NY-Endicott-911 North St - Machine A |
| 14502 | 174 | NY-Syracuse-4713 Onondaga Blvd |
| 14504 | 206 | NY-Rome-1790 Black River Blvd N |
| 14505 | 114 | NY-Middletown-511 Schutt Rd Ext |
| 14506 | 157 | NY-Granville-8648 St Rte 22 |
| 14507 | 166 | NY-Malone-53 Finney Blvd - Machine A |
| 14508 | 161 | NY-Norwich-5631 State Hwy 12 |
| 14509 | 237 | NY-Binghamton-10 Glenwood Ave |

| Kiosk Number | Store Number | Store Location |
|---|---|---|
| 14510 | 30 | NY-Ogdensburg-2981 Ford St Ext Ste 9 |
| 14511 | 164 | NY-Palatine Bridge-6025 State Hwy 5 |
| 14512 | 214 | NY-Fulton-12 W 1st St S |
| 14513 | 180 | NY-Lake Placid-1930 Saranac Ave |
| 14514 | 207 | NY-New Hartford-4535 Commercial Dr |
| 14515 | 202 | PA-Matamoras-1025 Pennsylvania Ave |
| 14516 | 135 | PA-Dunmore-1228 Oneill Hwy |
| 14517 | 190 | PA-Edwardsville-180 W Side Mall |
| 14518 | 169 | PA-Taylor-1510 S Main Ave |
| 14521 | 185 | PA-Montrose-6750 State Route 706 |
| 14522 | 165 | VT-Burlington-595 Shelburne Rd |
| 14523 | 131 | VT-Rutland-38 Rutland Shopping Plz - Machine A |
| 14524 | 171 | VT-Bennington-214 Northside Dr - Machine A |
| 14525 | 136 | VT-Brattleboro-499 Canal St |
| 14526 | 127 | VT-Saint Albans-170 Swanton Rd |
| 14527 | 123 | VT-Barre-168 Ames Dr |
| 14528 | 137 | VT-Morrisville-370 Munson Ave - Machine A |
| 14529 | 141 | VT-Saint Johnsbury-857 Memorial Dr Ste 1 - Machine A |
| 14530 | 192 | VT-Essex Junction-90 Ctr Rd Ste 3 |
| 18953 | 184 | NY-Malta-1 Kendall Way - Machine B |
| 19007 | 208 | NH-Keene-16 Ashbrook Rd |
| 19138 | 213 | NY-Oneida-142 Genesee St |
| 19140 | 189 | CT-Putnam-251 Kennedy Dr - Machine A |
| 23999 | 46 | NY-Canton-111 E Main St |
| 24002 | 29 | NY-Potsdam-201 Market St |
| 25482 | 228 | VT-S Burlington-41 Hinesburg Rd |
| 29852 | 227 | NH-Lebanon-370 Miracle Mile |
| 30202 | 23 | NY-Albany-1060 Madison Ave - Machine B |
| 31335 | 151 | MA-Worcester-29 Sunderland Rd |
| 34231 | 230 | VT-Colchester-1184 Prim Rd |
| 34369 | 226 | NY-Oswego-137 State Route 104 |
| 34555 | 225 | NY-Hamilton-1050 Madison Market Place |
| 37741 | 216 | NY-Owego-42 W Main St |
| 40540 | 215 | NY-Sidney-165 Delaware Ave |
| 40541 | 220 | NY-Champlain-860 State Route 11 |
| 40632 | 219 | VT-Derby-56 Commons Drive |
| 42078 | 172 | NY-Syracuse-2515 Erie Blvd E - Machine B |
| 42080 | 162 | MA-Marlborough-240 E Main St - Machine B |
| 42786 | 210 | NY-Richfield Springs-1 W Main St |
| 43416 | 223 | NY-Warwick-142 State Route 94 S |
| 43417 | 232 | CT-Middletown-835 Washington St |
| 43794 | 218 | NY-Delhi-3 Main St |
| 44335 | 130 | NY-Endicott-911 North St - Machine B |
| 44447 | 235 | NY-Cooperstown-113 Chestnut St |
| 44452 | 037 | NY-Gouverneur-389 E Main St - Machine A |
| 44453 | 024 | NY-Carthage-60 High St - Machine A |
| 44454 | 004 | NH-Lincoln-10 Lumber Yard Dr |
| 46682 | 45 | NY-Albany-40 Delaware Ave - Machine B |
| 46683 | 26 | NY-Utica-1917 Genesee St - Machine B |
| 46684 | 209 | CT-Newington-2985 Berlin Tpke - Machine B |
| 46685 | 112 | NY-Clifton Park-15 Park Ave - Machine B |
| 46757 | 189 | CT-Putnam-251 Kennedy Dr - Machine B |
| 46759 | 1 | NY-Schenectady-1640 Eastern Pky - Machine B |
| 46930 | 137 | VT-Morrisville-370 Munson Ave - Machine B |
| 47872 | 229 | MA-Shrewsbury-731 Boston Tpke |
| 51993 | 140 | MA-Pittsfield-555 Hubbard Ave - Machine B |
| 51994 | 116 | NY-Cobleskill-Barnersville Rd Jamesway Plz - Machine B |
| 51995 | 158 | NY-Saratoga Springs-115 Ballston Ave - Machine B |
| 52197 | 166 | NY-Malone-53 Finney Blvd - Machine B |
| 52199 | 141 | VT-Saint Johnsbury-857 Memorial Dr Ste 1 - Machine B |
| 53580 | 170 | NY-Lake George-49 Amherst St |
| 53582 | 36 | NY-Cohoes-240 Congress St |
| 53697 | 125 | VT-Manchester Center-263 Depot St, Ste 1 |
| 53698 | 122 | VT-West Rutland-5 Main St, Route 4A |

| Kiosk Number | Store Number | Store Location |
|---|---|---|
| 54234 | 024 | NY-Carthage-60 High St - Machine B |
| 54647 | 234 | NY-Binghamton-33 Chenango Bridge Rd |
| 54878 | 171 | VT-Bennington-214 Northside Dr - Machine B |
| 62350 | 037 | NY-Gouverneur-389 E Main St - Machine B |
| 66094 | 231 | MA-Hopkinton-167 W Main St |
| 69607 | 239 | MA-Gardner-560 Main St |
| 69662 | 129 | NY-Poughkeepsie-432 S Rd - Machine B |
| 69664 | 131 | VT-Rutland-38 Rutland Shopping Plz - Machine B |
| 72753 | 240 | MA-Webster-2 Worcester Rd |
| 72868 | 236 | PA-Stroudsburg-4547 Milford Rd |
| 73789 | 245 | NY-Watervliet-515 19th St |
| 73790 | 246 | NY-Ghent-2614 Rte 66 |
| 74656 | 241 | NY-Alexandria Bay-43615 NYS Route 12 |
| 75300 | 238 | NY-Saratoga Springs-55 Railroad Pl, STE 102 |
| 76004 | 250 | NY-Clifton Park-1026 Route 146, STE 100 |
| 78132 | 249 | NY-Fort Edward-354 Broadway |
| 78200 | 244 | MA-Sutton-21 Galaxy Pass |