**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | Chapter 7 |
| ) | |
| CHICKEN SOUP FOR THE SOUL ) | Case No. 24-11442 (MFW) |
| ENTERTAINMENT, INC., et al.,[1] ) | (Jointly Administered) |
| ) | |
| Debtors. ) | Hearing Date: November 20, 2024 at 2:00 pm |
| ) | Objection Deadline: November 6, 2024 at 4:00 pm |

**MOTION OF LOVEDOG PRODUCTIONS FOR**
**RELIEF FROM THE AUTOMATIC STAY AND RELATED RELIEF**

Movant LoveDog Productions as successor-in-interest to Vandal Film, LLC ("Movant"), by and through undersigned counsel, hereby move this Court, (the "Motion"), pursuant to section 362(d) of title 11 of the United States Code, for entry of an order granting relief from or modifying the automatic stay of 11 U.S.C. §362(a) (1) to the extent necessary, (i) to permit Movant to terminate the Distribution Agreement (as defined below), (ii) to permit Movant to recover Movant's rights to exploit the Picture (as defined below) for profit and enforce those rights as specified in the Distribution Agreement ("Licensed Rights," as more fully defined below), and as related relief (iii) authorizing any third-party of Movant's choice to assume Licensed Rights over the Picture and for any provider of Licensed Rights to take necessary steps to accomplish the transfer or termination of Licensed Rights and duties away from Debtor(s); and (iv) allowing Movant and/or any representative(s) acting on itsbehalf, including counsel and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

1

distributor(s), to obtain information from non-debtor providers of Licensed Rights, including as to past and future royalties concerning the Picture; (v) waiver of the 14-day stay pursuant to Bankruptcy Rule 4001(a)(3); and (vi) granting of such other and further relief as the Court may deem just and proper under the circumstances.   In support of its Motion, Movant respectfully states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

4. The statutory predicates for the relief requested herein are Sections 362 of the Bankruptcy Code and Rule 4001(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

5. Vandal Film, LLC ("VFLLC") and Debtor TOFG LLC ("TOFG") entered a Motion Picture Distribution Agreement, (the "Distribution Agreement," attached as Exhibit A) on or around August 16, 2021, wherein VFLLC granted TOFG certain distribution rights (the "Licensed Rights") [2] to exploit for profit the motion picture titled *Vandal* (the "Picture") worldwide. The Licensed Rights consist of:

    (a)    TVOD Exploitation;

    (b)    EST Exploitation;

    (c)    SVOD Exploitation;

---

[2] The Picture is known to have been played on and/or available by video on demand or purchase through at least: iTunes, AppleTV, Amazon, Google Play, YouTube Movies, Microsoft Xbox, Vudu, Fuse, in Demand EST, Verizon, Vubiquity, Dish, DirecTV, AT&T U-Verse, Claro.

(d)         FVOD Exploitation (including AVOD Exploitation);

(e)         Educational and Library Streaming Rights;

(f)         Linear Streaming via OTT Services;

(g)         Airline Rights, Ship Rights and other Transportation Rights;

(h)         Television Exploitation, including Basic Television Exploitation, Free Television Exploitation, Pay Television Exploitation and Pay-Per-View Exploitation; and

(i)         Non-Theatrical Exhibition

*See* Exhibit A at § 5.

6.     Movant LoveDog Productions purchased VFLLC in 2023 and acquired all its contracts and rights therein. LoveDog thereafter became the successor-in-interest to Vandal, including regarding the Distribution Agreement, following Vandal's dissolution in or around June 15, 2023

7.     As a fee for the ongoing specified exploitation services to be performed by TOFG, Debtors were entitled to <u>retain</u> as a Distribution Fee a percentage of the gross royalties received on behalf of VFLLC, as well as certain expenses. *See* Exhibit A at § 7. The net royalties were to be paid to VFLLC during each accounting period. *See* Exhibit A at § 8.

8.     Beginning prior to the petition date, Debtor failed to provide statements and payments to the Movants.

9.     Movants have not received any payment for royalties earned for the period approximately March 2023 through the present. Based only on the limited reporting provided by Debtors, and upon information and belief, Debtors owed Movants at least $12,399.25 for prepetition royalties wrongfully withheld by Debtors and not paid to Movants through February 2024.

10. Upon information and belief, the Debtors failed to fully perform their exploitation duties contemplated by the Distribution Agreement.

11. Prior to the Petition Date, Movant communicated with 1091/TOFG, and had reached an informal agreement to terminate the Distribution Agreement, but that agreement was not reduced to formal documentation prior to the Petition Date.

12. Chicken Soup for the Soul Entertainment filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 28, 2024 and TOFG filed a voluntary Chapter 11 petition the following day (each, a "Petition Date"). Less than two weeks later, on July 10, 2024, the cases were converted to Chapter 7 of the Bankruptcy Code [D.I. 120] and the Trustee was appointed. [D.I. 130].

13. On July 30, 2024, the Chapter 7 Trustee filed a letter notifying all employees that the Debtors had ceased operations and all employees have been terminated (D.I. 192) (the "Notice of Non-Operation").

14. Upon information and belief, Debtors are not operating, not actively exploiting the Picture and cannot cure the breaches.

15. On September 10, 2024, all executory contracts, including the Distribution Agreement, were deemed rejected by operation of Section 365(d)(1) of the Bankruptcy Code.

16. As a result of the Debtors' bankruptcy, conversion of these cases from Chapter 11 to Chapter 7, and the deemed rejection of the Distribution Agreement, the rights and obligations of the Debtors to actively exploit the Picture for profit appear to have remained largely unperformed, to the detriment of Movant, and with no foreseeable avenue to obtain Movant's royalties that were earned and presumably will continue to be earned but unrecoverable until relief is granted.

17. Importantly, the Picture continues to be available through various providers (*see* Note 3) which presumptively has and should be providing royalty payments to the Debtors, but if so, those payments are disappearing into the nether, not available to Movant and not even quantifiable at this point because Debtors have ceased reporting.

## BASIS FOR RELIEF REQUESTED

18. Section 362(d)(1) of the Bankruptcy Code provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay….
>
> (1) For cause, including lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1). The term "cause" is not defined in the Code, but rather must be determined on a case-by-case basis. *In re Rexene Prods. Co.,* 141 B.R. 547, 576 (Bankr. D. Del. 1992) (internal citations and quotations omitted). "Cause is a flexible concept and courts often...examin[e] the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re SCO Group, Inc.,* 395 B.R. 852, 856 (Bankr. D. Del. 2007).

19. Courts in this District rely upon a three-pronged balancing test in determining whether "cause" exists for granting relief from the automatic stay to continue litigation: (1) prejudice to the estate or the debtor, (2) hardship to the moving party resulting from maintenance of the stay weighed against hardship to the debtor, and (3) probability of success of the moving party on the merits. *Trump Entm't Resorts, Inc.*, 526 B.R. 116, 120-21 (Bankr. D. Del. 2015) (citing *Izzrelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992)). Here, the facts weigh in Movant's favor on each of these three prongs.

20. First, neither the bankrupt estate nor the Debtors will suffer prejudice should the stay be lifted to allow Movant to terminate the Distribution Agreement. As discussed above, the

Distribution Agreement was recently deemed rejected by operation of Section 365(d)(1) of the Bankruptcy Code. Accordingly, the Agreement is effectively rejected and deemed "abandoned and [] no longer property of the estate." *In re Biggs*, 271 F. App'x at 288. Thus, the Debtors have no cognizable interest in the Agreement following a deemed rejection under Section 365(d)(1). The Debtors cannot be prejudiced by the termination of an Agreement in which they have no interest and with respect to which they were in material breach of as of the Petition Date. Moreover, Debtors can no longer perform under the Distribution Agreement. Further, prior to the Petition date, the parties had reached oral agreement to terminate the Distribution Agreement, which was merely not reduced to writing prior to the Petition Date.

21. As to the second prong, the balance of harms favors lifting the automatic stay. Movant will face hardship if denied the ability to terminate the Distribution Agreement and maximize or protect the value of the Picture. Proceeds have stalled while Debtors fail to exploit the Picture. The Debtors have an obligation to VFLLC to exploit the Picture and maximize the Gross Profit generated from the Picture, and to deliver payment to the Movant received as royalties for their use of the Picture.

22. Third, the likelihood of success on the merits prong is satisfied, as "even a slight probability of success on the merits may be sufficient to support lifting an automatic stay." *In re Continental Airlines, Inc.*, 152 B.R. 420, 426 (D. Del. 1993). This prong also weighs in Movant's favor. Movant has shown that the Debtors are in pre-petition material breach of the Agreement based on non-payment and other nonperformance of various contractual obligations. Further, the Debtors' failure to fully exploit the Picture continues to harm Movant. Were that not enough, the deemed rejection of the Agreement constitutes a pre-petition breach occurring "immediately before" bankruptcy. *In re Tempnology, LLC*, 587 U.S. at 374, 139 S.Ct. 1652; 11

U.S.C. § 365(g). Upon lifting or modification of the automatic stay, Movant can lawfully terminate the Distribution Agreement, recover distribution rights and the right to receive payment for exploitation of the Picture, perform or engage a third-party to perform distribution and exploitation of the Picture, and actually receive the royalties entitled to be received with respect to the Picture. When weighing the above factors, the Court should lift the automatic stay to terminate the Distribution Agreement and grant related relief.

23. Further, the Debtors' attempt at reorganization quickly failed and was converted to a Chapter 7 on July 10, 2024. [D.I. 120]. In the months since, the Debtors have been unable to secure funding to organize a liquidation of assets and their primary secured lender was recently granted relief from stay to pursue its rights in the Debtors' assets. Thus, there is no reasonable prospect of reorganization. The Distribution Agreement is not "necessary to an effective reorganization." *See* 11 U.S.C. § 362(d)(2)(B). As a result, relief from the automatic stay is mandatory. *See Nantucket Investors II v. Cal. Fed. Bank. (In re Indian Palms Assocs., Ltd.)*, 61 F.3d 197, 208 (3d Cir. 1995) ("the language of section 362(d)(2) is mandatory, when both factors necessary for relief under section 362(d)(2) are met 'the court shall grant relief.'").

24. Thus, Movant respectfully submits that any order granting this Motion should be effective immediately upon its entry, notwithstanding the fourteen (14) day stay contemplated in Fed.R.Bankr.P. 4001(a)(3). Continuance of the automatic stay does not serve any purpose other than to delay termination of the Distribution Agreement and delaying Movant's ability to recoup and mitigate against losses caused by Debtors over an extended period of time.

**CONCLUSION**

**WHEREFORE**, Movant respectfully requests entry of an Order in substantially the form attached hereto, and for such further additional relief as may be just and proper under the circumstances.

DATED: October 23, 2024                THE LAW OFFICE OF JAMES TOBIA, LLC

By: _DRAFT_
James Tobia, Esq. (#3798)
1716 Wawaset Street
Wilmington, DE 19806
Tel. (302) 655-5303
Fax (302) 656-8053
Email: jtobia@tobialaw.com
*Attorney for Movant LoveDog Productions*