# EXHIBIT 6

# IRREVOCABLE PROXY

Known all by these presents that the undersigned Stockholders (each, a "Stockholder", and collectively, the "Stockholders") each hereby constitutes, makes and appoints HPS Investment Partners, LLC ("HPS") in its capacity as the administrative agent for lenders under the Credit Agreement (as defined below), signing singly, as each of their sole and exclusive proxy, effective as of May 3, 2024 (the "Execution Date"), to act on each of their behalf in accordance with the terms of this Irrevocable Proxy (collectively, the "Irrevocable Proxy") and hereby agrees to certain other matters set forth below. Capitalized terms used but not defined herein shall have the respective meanings ascribed to them in the Credit Agreement.

1. Definitions. The following terms used in this Irrevocable Proxy shall have the following meanings:

"Company" means Chicken Soup for the Soul Entertainment Inc., a Delaware corporation.

"Credit Agreement" means that certain Amended and Restated Credit Agreement made effective as of August 11, 2022 by and among the Company, Redbox Automated Retail, LLC, the Lenders party thereto, and HPS as administrative agent, as amended by the First Amendment dated as of April 29, 2024 and as the same may be amended from time to time.

"Forbearance Agreement" means that certain Forbearance Agreement, dated as of April 29, 2024, by and among the Company, the Stockholders, Redbox Automated Retail, LLC, HPS and other parties thereto.

"Forbearance Agreements" means, collectively, the Credit Agreement and the Forbearance Agreement.

"Independent Directors" means John T. Young, Jr. and Robert H. Warshauer, who were appointed as independent directors of the Company at the board meeting of the Company held on April 30, 2024.

"Restructuring Transactions" means (i) any sale transactions occurring on and after the Forbearance Termination Date (as defined in the Forbearance Agreement) (including, without limitation, the Disposition of non-core assets and/or one or more Company Sale Transactions, each as defined in the Credit Agreement), (ii) a Chapter 11 pre-arranged restructuring of the Loan Parties (including the Company) and (iii) any matters or transactions necessary or desirable to accomplish the foregoing, in each case that have been approved by the Strategic Review Committee.

"Shares" means the shares of capital stock of the Company, and all other securities of the Company issued or issuable in respect thereof on or after the date hereof, that now or hereafter may be owned by each Stockholder.

2. Grant of Irrevocable Proxy.

a. Effective as of the Execution Date, each of the undersigned Stockholders agrees to vote or cause to be voted all of their respective Shares in connection with any annual or special meeting of the Company's stockholders and at every adjournment or postponement thereof, or any action or approval by written consent of the Company's stockholders (and execute and deliver any and all such consents) in lieu of a meeting of stockholders:

   i. in favor of the approval of any Restructuring Transactions and the approval of any other matter that is required to be approved by the stockholders of the Company in order to effect (a) the transactions contemplated by the Forbearance Agreements and the Restructuring Term Sheet or (b) any matters or transactions necessary or desirable to accomplish the foregoing;

   ii. against any action, proposal, transaction or agreement involving the Company or any of its subsidiaries that would reasonably be expected to prevent, interfere with or delay effecting any of the Restructuring Transactions and any other transactions contemplated by the Forbearance Agreements or that would otherwise be inconsistent with the Restructuring Transactions or other transactions contemplated by the Forbearance Agreements; and

   iii. against the removal of any of the Independent Directors.

   In furtherance of the foregoing, each of the Stockholders agree to execute any documents that are necessary or appropriate in order to effectuate the foregoing. Each of the Stockholders shall (or shall cause the holder of record of any Shares on any applicable record date to) be present (in person or by proxy) at any meeting of stockholders of the Company (including any adjournment or postponement thereof), as applicable, called to effect the Restructuring Transactions or any other transactions contemplated by the Forbearance Agreements or otherwise cause the Shares to be counted as present thereat for purposes of establishing a quorum.

b. In furtherance of the foregoing, effective as of the Execution Date, each of the undersigned Stockholders hereby irrevocably appoints HPS as each such Stockholder's sole and exclusive proxy (in such capacity, the "Proxy Holder"), with full power of substitution and re-substitution, to vote or consent in writing and exercise all related rights, for any and all actions that may be taken at a meeting of the stockholders or by consent in writing of the stockholders, with respect to any and all Shares, to vote or grant a written consent on the matters and in the manner specified in Section 2(a). Each of the Stockholders hereby affirms that such irrevocable proxy is given in connection with, and in consideration of, the execution of the Forbearance Agreement, and that such irrevocable proxy is given to secure the performance of the duties of the Stockholders under the Forbearance Agreement. Each of the Stockholders shall execute any further agreement or form reasonably necessary or appropriate to confirm and effectuate the grant of the proxy

   contemplated herein.  HPS may terminate this proxy at any time at its sole election by written notice provided to the Stockholders.

  c. In furtherance of the foregoing, each of the Stockholders hereby irrevocably grants to, and appoints, HPS, until the Expiration Date (as defined below), each of HPS' officers and any person or persons designated in writing by HPS, and each of them individually, as each Stockholder's proxy and attorney-in-fact (with full power of substitution and resubstitution), as applicable, for and in the name, place and stead of each of the Stockholders, to vote or grant a written consent in respect of all of each Stockholder's Shares, or execute and deliver a proxy to vote or grant a written consent in respect of such Shares, on the matters and in the manner specified in Section 2(a), as applicable.

  d. The irrevocable proxy granted in this Irrevocable Proxy granted under and pursuant to this Section 2, and Section 3, Section 4, and Sections 6 through 14 (the "Proxy") shall include, without limitation, the right to receive or accept service of or agree to waive all or any notices or to agree to accept short notice for, and to attend and vote or execute a written resolution, or otherwise to execute any form of proxy in respect of all or any meetings or class meetings of the holders of shares or securities (including the Shares) in the Company and to receive, grant, complete and deliver all written resolutions and class consents relating to the Shares.

  e. From and after the date hereof, each of the Stockholders hereby agrees not to vote any of the Shares at any meeting of stockholders of the Company or execute or deliver any written consents in lieu of a meeting of stockholders of the Company with respect to any matter relating to the Restructuring Transactions or in any matter contrary to the Forbearance Agreements, in each case without the prior written consent of HPS, provided, however that the foregoing shall not be deemed to limit in any respect the ability of HPS to unilaterally exercise the authority granted hereunder without the consent of the Stockholder.

  3. <u>Irrevocable Proxy</u>.  Each of the Stockholders hereby covenants and agrees that, to the fullest extent permitted under Section 212 of the General Corporation Law of the State of Delaware, the Proxy and the powers arising therefrom granted herein to HPS (i) are irrevocable and may not be revoked without the prior written consent of HPS (it being understood that HPS' prior written consent to each Stockholder's exercise of any voting or consent rights as contemplated by Section 2 of this Irrevocable Proxy shall not be deemed to constitute a revocation of the Proxy by HPS), (ii) shall constitute an irrevocable proxy and are coupled with an interest sufficient in law to support an irrevocable power, (iii) shall continue and shall remain in effect with respect to any Shares held of record or beneficially owned by each of the Stockholders and its successors and assigns until the Expiration Date (as defined below) (which period of effectiveness of the Proxy may, for the avoidance of doubt, exceed a period of three years), and (iv) may be exercised by HPS at any time up to and prior to the Expiration Date (as defined below).

  4. <u>Revocation of Prior Proxies; Expiration Date</u>.  Upon each Stockholder's execution of this Irrevocable Proxy, any and all prior proxies given or purported to have been given by the

Stockholders with respect to the Shares, as applicable, in connection with the matters set forth herein shall hereby be automatically revoked, and each Stockholder agrees not to grant any subsequent proxies with respect to the Shares in connection with the matters set forth herein until such time as HPS and the Stockholders shall mutually agree (the "Expiration Date").  Except as otherwise provided herein, the provisions of this Irrevocable Proxy shall inure to the benefit of, and be binding upon, the successors, assigns, heirs, executors and administrators of the parties hereto. Each of the Stockholders hereby acknowledges and agrees that the Proxy may be exercised by HPS at any time prior to the Expiration Date with respect to any Shares held of record or beneficially owned by the Stockholders, notwithstanding each such Stockholder's dissolution, liquidation, termination, cancellation or winding up, as the case may be.

5. Certain Covenants.  Each of the Stockholders hereby covenants and agrees that, to the fullest extent permitted under applicable law, in the event that there is a vacancy on the board of directors of the Company resulting from the death, disability or resignation of any Independent Director (or any individual who has directly or indirectly replaced an Independent Director with the approval of HPS on behalf of the Required Lenders), each such Stockholder shall vote or cause to be voted all of the Shares in a manner such that the Company will fully comply with its obligations under Sections 5.18, 5.21(a)(4), 5.19, 5.21(a)(5) and 6.12(a) of the Credit Agreement.

6. Restrictions on Transfer of Shares.  From the date hereof until the Expiration Date, each Stockholder shall not, directly or indirectly (by merger, conversion, consolidation, division, domestication, operation of law or otherwise), (i) transfer, sell, assign, dispose, donate, pledge, bequest, hypothecate, convey, encumber or otherwise dispose of any of the Shares or any direct or indirect interest therein by any means whatsoever (a "Transfer"), (ii) deposit (or permit the deposit of) any Shares in a voting trust, (iii) grant any other proxy with respect to the Shares or (iv) enter into any voting agreement or similar agreement with respect to any of the Shares, except (x) if HPS provides its prior written consent to such action, or (y) in the case of a Transfer, if as a precondition to such Transfer, the transferee agrees in a writing satisfactory to HPS to be bound by all of the terms of this Irrevocable Proxy and such writing is delivered to and accepted by HPS prior to such Transfer. Any Transfer or other prohibited action under this Section 6 not made in accordance with the terms of the foregoing sentence shall be null and void *ab initio*. Each Stockholder shall submit any certificate(s) representing the Shares to be submitted to the appropriate officer and/or transfer agent of the Company for the impression thereon of a legend reflecting the transfer restrictions set forth in this Irrevocable Proxy.

7. Ratification; Reliance.

   a. Each of the Stockholders undertakes to ratify and confirm whatever HPS lawfully does, causes to be done or purports to do in good faith in the exercise of any power of conferred by this Irrevocable Proxy.

   b. Each of the Stockholders declares that any Person who deals with HPS in good faith may accept a written statement signed by HPS to the effect that this Irrevocable Proxy (including the Proxy granted herein) has not been revoked as conclusive evidence of that fact.

8. <u>Miscellaneous</u>. Termination of this Irrevocable Proxy shall not affect the rights or liabilities of any party accrued prior to and including the date of such termination, nor the continuing existence and validity of any terms intended expressly or by implication to survive such termination.

9. <u>Amendment</u>. No amendment, modification, replacement, termination or cancellation of any provision of this Irrevocable Proxy will be valid, unless the same shall be in writing and signed by HPS and the Stockholders. No waiver by HPS of any default, misrepresentation, or breach of warranty or covenant hereunder, whether intentional or not, shall be deemed to affect in any way any the rights of HPS arising hereunder.

10. <u>Governing Law</u>. This Irrevocable Proxy shall be governed by and construed in accordance with the internal laws of the State of Delaware, without giving effect to its principles of conflict of laws.

11. <u>Exclusive Jurisdiction</u>. The Stockholders and HPS agree that any suit, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Irrevocable Proxy shall be brought only to the exclusive jurisdiction of the Court of Chancery of the State of Delaware or, if such court lacks jurisdiction, any state or federal court sitting in the State of Delaware with jurisdiction over such action, suit or proceeding. The Stockholders and HPS each consent to the jurisdiction of such court (and of the appropriate appellate courts therefrom) in any such suit, action, or proceeding and irrevocably agrees not to commence any litigation relating thereto except in such court, and each further waives any objection to the laying of venue of any such litigation in such court and agrees not to plead or claim in such court that such litigation brought therein has been brought in an inconvenient forum.

12. <u>Specific Performance</u>. Each of the Stockholders hereby agrees and acknowledges that HPS would be irreparably harmed in the event of a breach by such Stockholder of such Stockholder's obligations hereunder, that monetary damages may not be an adequate remedy for such breach and that HPS shall be entitled to specific performance or injunctive relief, without the need to post a bond or other security, in addition to any other remedy that HPS may have at law or in equity, in the event of such breach.

13. <u>Further Assurances</u>. Each party hereto shall execute any documents and do or procure any other acts or things that may reasonably be required to give full effect to the terms of this Irrevocable Proxy, including but not limited in the case of the Stockholders providing any share certificates or other evidence of ownership of the Shares where so required by the Company or HPS

14. <u>Entire Agreement</u>. This Irrevocable Proxy constitutes the full and entire understanding and agreement with regard to the subject matter hereof and supersedes all prior oral or written (and all contemporaneous oral) agreements or understandings with respect to the subject matter hereof.

[*Signature Page Follows*]

The foregoing Irrevocable Proxy is hereby executed on the date first above written.

**Stockholder Name: Chicken Soup for the Soul, LLC**

_____
Name: William J. Rouhana, Jr.
Title: Chief Executive Officer

**Type(s) and Number of Shares as of the Execution Date:**

3,668,942 shares of Class A Common Stock and 7,654,506 shares of Class B Common Stock of Chicken Soup for the Soul Entertainment Inc., a Delaware corporation

**Stockholder Name: Chicken Soup for the Soul Productions, LLC**

_____
Name: William J. Rouhana, Jr.
Title: Chief Executive Officer

**Type(s) and Number of Shares as of the Execution Date:**

3,668,942 shares of Class A Common Stock and 7,654,506 shares of Class B Common Stock of Chicken Soup for the Soul Entertainment Inc., a Delaware corporation

Accepted and Acknowledged:

**HPS Investment Partners, LLC**

_____
By:
Title:

[Signature Page to Irrevocable Proxy]