## EXHIBIT A

**Declaration of Dan Hougom**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC., *et al.*, | Case No. 24-11442 (MFW) |
| Debtors.[1] | Jointly Administered |

## DECLARATION OF DAN HOUGOM IN SUPPORT OF MOTION OF KWIK TRIP, INC. FOR AN ORDER MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 105(a) AND 362(d) TO PERMIT KWIK TRIP, INC. TO REMOVE AND DISPOSE OF KIOSKS

I, Dan Hougom, hereby declare (this "Declaration"), pursuant to 28 U.S.C. § 1746, as follows:

1.      I am over the age of eighteen, of sound mind, capable of making this Declaration, and personally acquainted with the facts stated herein, which are true and correct to the best of my knowledge, information, and belief.

2.      I am a Category Manager III at Kwik Trip, Inc. ("Kwik Trip"), for whom I have worked for almost 33 years.  I am authorized to submit this Declaration on behalf of Kwik Trip.

3.      Kwik Trip and Redbox Automated Retail, LLC ("Redbox") were parties to a certain Kiosk Operating Agreement, which was later amended by the First Amendment to Kiosk

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

Operating Agreement, effective September 21, 2021 (collectively, as amended, the "Agreement"). A true and correct copy of the Agreement is attached hereto as **Exhibit 1**.

4.　　Pursuant to the Agreement, Redbox placed 82 kiosks through which it operates DVD rentals at various Kwik Trip retail locations (the "Kiosks").

5.　　In exchange for the right to operate the Kiosks on Kwik Trip's premises, Redbox agreed to pay Kwik Trip a commission each quarter, among other terms.  (*See* Agreement § 7.4.) Redbox has not paid commissions since 2022, and presently owes Kwik Trip no less than $12,476.40 for unpaid commissions.

6.　　In the beginning of 2024, Kwik Trip was planning to remodel certain stores with Kiosks (the "Remodeling Locations").  In order to begin the remodeling process, Kwik Trip needed to remove six Kiosks.

7.　　In accordance with the Agreement, on January 23, 2024, Kwik Trip sent Redbox a written letter, requesting that Redbox remove the Kiosks from the Remodeling Locations by February 5, 2024 (the "January Request").  A true and correct copy of the January Request is attached hereto as **Exhibit 2**.  Redbox never responded to or otherwise acknowledged the January Request.

8.　　On May 28, 2024, Kwik Trip sent Redbox a second letter requesting the removal of all 82 Kiosks no later than June 10, 2024 (the "May Request").  The May Request also stated that if Redbox did not respond within five business day of receipt of the letter, Kwik Trip would begin the process to relocate the Kiosks to a secure location to be collected by Redbox.  A true and correct copy of the May Request is attached hereto as **Exhibit 3**.  Redbox never responded or otherwise acknowledged the May Request.

9.     Thereafter, Kwik Trip began removing and relocating Kiosks to a secure location. When it received notice of Redbox's bankruptcy case, it stopped removing any further Kiosks, and it has not removed or relocated any Kiosks since the Petition Date.

10.    The Kiosks that Kwik Trip had already removed as of the Petition Date are still being securely stored by Kwik Trip at its facilities, where they are taking up valuable storage space that would otherwise be used for other items.

11.    Redbox's nonresponsiveness to its obligations under the Agreement has caused and continues to cause significant harm to Kwik Trip.  The Kiosks are interfering with Kwik Trip's daily use and enjoyment of its premises and its strategic store transformation projects.  The Kiosks are occupying valuable marketing space that would otherwise be used for other product displays. As a result, other product displays have had to be placed in front of windows, cluttering storefront appearances.  Moreover, the Kiosks look worn and unsightly, thus damaging the image of Kwik Trip stores.

12.    Kwik Trip's store engineering department is regularly fielding customer complaints about the Kiosks because they are inoperable.

13.    Redbox's refusal to remove the Kiosks also threatens to cause construction delays at Kwik Trip locations scheduled for upcoming remodeling, which cannot begin until the Kiosks are removed from those premises.

I declare under penalty of perjury that the foregoing is true and correct.

*/s/Dan Hougom*
Dan Hougom
Category Manager III
Kwik Trip, Inc.

3

# Exhibit 1

DocuSign Envelope ID: BD097D0D-70D4-456F-86D2-7A147622249D



# KIOSK OPERATING AGREEMENT

### Summary Page

**Client:** Kwik Trip, Inc.

**Primary Client Contact:** Dan Hougom

**Form of Organization:** A corporation organized under the laws of the State of Wisconsin

**Client Addresses:**

*Principal Office:*

Kwik Trip, Inc.
1626 Oak Street
P.O. Box 2107
La Crosse, Wisconsin 54602

*For Notices:*

Same

**Effective Date:** The date upon which Redbox and Client have both executed this contract.

**Initial Term:** 3 years beginning on September 1, 2017 and expiring on August 31, 2020. Thereafter, the contract shall renew in accordance with Section 9.1(b).

**Placements:** ☐ Indoor     ☒ Outdoor

**Commission:** 9% per Kiosk for Movie rental; 5% per Kiosk for video game rental; 3% per Kiosk for Sell Through and Previously viewed Sell Through. Commission payment is calculated in accordance with Section 7. In the event that Net Revenue (as set forth in Section 7.4(b), for all products rented and sold at a Kiosk is Five Thousand Five Hundred Dollars ($5,500) or less in a calendar quarter, the Commission for all products rented and sold from the Kiosk for the quarter will be 0%.

**Products:**

☒ Movie Rental

☒ Movie Sell Through

☒ Movie Previously-Viewed Sell Through

☒ Video Game Rental

☒ Video Game Sell Through

☒ Video Game Previously-Viewed Sell Through

**Issuance of Commission Payments:** Quarterly

**Cancellation of Prior Contracts:** This contract, on and after its Effective Date, supersedes and cancels the prior contracts (except with respect to any outstanding payment obligations) identified as follows:

Kiosk Operating Agreement effective  December 8, 2011

**KWIK TRIP, INC.**

By: *[signature]*

Name: Greg Scriver

Title: VP Procurement & Marketing

Date: 10-29-17

**REDBOX AUTOMATED RETAIL, LLC**

redbox. Approved by Legal

DocuSigned by:

By: *Tim Hale*
— A5AE41837D734CE...

Name: Tim Hale

Title: SVP Sales

Date: August 31, 2017

DocuSign Envelope ID: BD097D0D-70D4-456F-86D2-7A147622249D

# KIOSK OPERATING AGREEMENT

## Contents

1. **Definitions**

2. **Nature of Our Agreement**

3. **Identification of Sites and Premises**

4. **Kiosk Installation**

5. **Kiosk Operation and Maintenance**

6. **Kiosk Relocation, Removal and Re-Installation**

7. **Commission Payments**

8. **Marketing**

9. **Term and Termination**

10. **Confidential Information**

11. **Assumption of Loss; Insurance**

12. **Indemnification**

13. **Limitations of Liability**

14. **Miscellaneous**

This Kiosk Operating Agreement (this "**contract**") is entered into between **Kwik Trip, Inc.**, a Wisconsin corporation ("**you**," "**your**" or "**Client**") with its principal offices at 1626 Oak Street, P.O. Box 2107, La Crosse, Wisconsin 54602 and **Redbox Automated Retail, LLC**, a Delaware limited liability company ("**we**," "**our**" or "**Redbox**"), with its principal offices at One Tower Lane, Suite 900, Oakbrook Terrace, Illinois 60181. The term "**us**" refers to both Client and Redbox. The contract consists of the Summary Page, the following terms and conditions, and the exhibits to the contract.

## Terms and Conditions

### 1. Definitions

"**Commissions**" refers to the sums payable to you under this contract, as detailed in the Section entitled "Commission Payments."

"**Kiosk**" means a Redbox® branded machine that vends Media (a) selected by a customer on the Kiosk's touch screen monitor (b) after the presentment of a valid payment card accepted by Redbox. The Kiosk also has a card reader, a lighted panel for displaying Media cover art that is mounted on the side of the Kiosk, and may have a flat screen video monitor mounted above the Kiosk to play promotional or advertising materials. The Kiosk specifications are substantially similar to those displayed on Exhibit "A."

"**Media**" means movies  and video games

"**Premises**" means prominent and visible space measuring approximately three (3) feet by seven (7) feet in a mutually agreed, strategic location at each Site, together with non-exclusive access rights over, upon and across those areas designated by Client and Redbox for the installation, operation, maintenance and repair of the Kiosks.

"**Sites**" means the retail locations which you own or operate within the United States, together with all additional locations acquired or controlled by you after the Effective Date.

### 2. Nature of Our Agreement

**2.1    Kiosk Deployment**. Redbox operates automated Kiosks offering customers a convenient way to rent or buy Media, and an efficient way for you to generate income from your Premises. You have requested, and we have agreed, that Redbox will install and operate Kiosks at eligible Sites. You grant Redbox the exclusive right to install and operate automated media rental and sales machines, and to rent Media, at your Sites. In return, Redbox will pay you the Commissions detailed in the Section entitled "Commission Payments."

**2.2    Access to Sites**. You grant Redbox (for its use and the use of its employees and agents) a limited license over your Sites when the Sites are open to the public for business. This license allows Redbox to enter and exit the Sites, and to perform any necessary installation, service, maintenance, repair, relocation

DocuSign Envelope ID: BD097D0D-70D4-456F-86D2-7A147622249D

and removal of the Kiosks. You will not cause or permit any unreasonable interference to or from the Kiosks.

**2.3    Ownership of Kiosks and Media**. As between the two of us, you acknowledge that we own all right, title and interest in the Kiosks and the Media. You will not interfere with our ownership.

## 3.    Identification of Sites and Premises

**3.1    Site Identification**. The parties have mutually agreed to install and operate, or continue to operate, Kiosks at eligible Site(s) on Exhibit B.

**3.2    Site Eligibility**. To be eligible for the future installation of a Kiosk, a Site must be within a feasible Redbox Kiosk service area, as defined by Redbox, support Redbox's model for economic viability and be accessible to individuals pursuant to the requirements of the Americans with Disabilities Act of 1990 ("ADA"). If a Site does not meet these criteria, then we may, but will not be obligated to, install a Kiosk at the Site.

**3.3    Selection of Premises**. After identifying the Sites, the parties will work together to select Premises at the Sites to install the Kiosks. The order of installing Kiosks and the selection of Premises are largely determined by satisfying the goals of maximizing foot traffic, visibility, revenue and Commissions. Any installations will be subject to all applicable ordinances, codes, local laws, leases, covenants, and use restrictions.

**3.4    Permits**. At our expense, the parties will work together to obtain any necessary permits, licenses or other governmental authorizations.

**3.5    New and Newly Acquired Sites**. You will use good faith efforts to provide Redbox throughout the term with a rolling forecast of your projected openings to determine eligibility according to section 3.2 above. However, notwithstanding any other provision in this contract, we are not obligated to install a Kiosk at a new or newly acquired Site.  Installation at a new or newly acquired Site will be by mutual agreement.

**3.6    Installation and Access Authority**. Subject to applicable law, regulation, or the terms of any agreement for any new Site (which is in effect prior to the time you own or operate the new Site), you represent and warrant that you have the authority (a) to grant Redbox the right to install and operate Kiosks at the Sites, and (b) to grant access to Redbox, and its invitees, from and to the Kiosks so we can perform our obligations under this contract.

## 4.    Kiosk Installation

**4.1    Our Installation Responsibilities**. We will install Kiosks at the Sites according to a mutually agreed deployment schedule. Kiosk specifications are substantially similar to those described in Exhibit A. We will try to minimize disturbances to your Site operations during our installation of the Kiosks. For security reasons, we will bolt an outdoor Kiosk to the pavement.

**4.2    Your Preparation of the Premises**. Before the scheduled date of Kiosk delivery, you will prepare the Premises for installation by removing any structures, machinery, or displays located on the Premises. Due to the potential variation of deployment options, any additional preparation of a Site for the deployment of an outdoor Kiosk will be determined following a Site visit by Redbox personnel.

**4.3    Utilities**. With the exception of electrical power, our Kiosks normally have "plug and play" capability. Before the scheduled date of Kiosk delivery, you will provide two (2) electrical outlets from a dedicated circuit providing 120 volt, 20 Amp A.C. electrical power service to operate the Kiosk. We are responsible for communication or data connectivity. Should two (2) electrical outlets from a dedicated circuit providing 120 volt, 20 Amp A.C. electrical power service to operate the Kiosk, not exist, you agree to have them installed at your cost.

## 5.    Kiosk Operation and Maintenance

**5.1    Our Responsibilities**. We have exclusive rights over the operation, use and control of the Kiosks, including but not limited to their hardware and software. Your personnel have only the same limited right of access to the Kiosks as are granted to the general public. We will provide all hardware and software support, maintenance and repairs for the Kiosks. We will maintain the Kiosks in an attractive and good state of repair, and in proper working order. If there is a Kiosk malfunction, we will promptly initiate diagnostic and repair services after receiving notice of the malfunction. The Redbox personnel assigned to perform Redbox's obligations under this contract will be qualified for the services they are assigned to perform. They will perform Redbox's obligations with promptness and diligence, and in a good and workmanlike manner.

**5.2    Your Responsibilities**. You will maintain the area immediately surrounding the Premises in a neat, clean and good condition, so as to provide an attractive and suitable environment for the use of the Kiosks by customers. You will provide all electrical service. For indoor Kiosk locations, you are responsible for heating and air conditioning services.

**5.3    Security and Access to Stores**. Each of us will

take reasonable precautions to ensure safe working procedures and conditions during and in connection with such our operations at a Site. While on-Site, Redbox's personnel will comply with your security and access policies as may be in effect (and as are identified or provided in writing to Redbox) at the Sites. At your request, our personnel will check in with Site management when they arrive to perform maintenance or operations at a Site.

**5.4   Customer Queuing**. You will keep the area immediately adjacent to the Premises open so individuals waiting to use the Kiosks may queue. Of course, you may direct such queuing so as to minimize interference with your other business traffic.

**5.5   Customer Service**. We will maintain a toll free customer service phone number which will be prominently displayed on the Kiosk. We will handle all customer calls and other issues relating to the operation of the Kiosks.

# 6.   Kiosk Relocation, Removal and Re-Installation

We understand that, under certain circumstances, a Kiosk may need to be moved or relocated. This Section details the procedures governing movement and relocation of a Kiosk.

**6.1   Movement of a Kiosk**. It is critical that only Redbox – and not you – physically moves a Kiosk. Redbox needs to handle any move for several reasons, including: (a) the Kiosk is our property; (b) the Kiosk contains sensitive electronic equipment and precision machinery; (c) the Kiosk needs to remain powered and have consistent internet connectivity to conduct transactions, monitor inventory and status, and to receive programming updates; (d) due to its size, weight, and various components, the Kiosk requires specialized equipment for handling by trained personnel to prevent damage to and shifting of contents, personal injury, unnecessary service calls and lost revenue; and (e) because a sub-optimal location may result in less revenue, the new location must be mutually agreed upon between us. You agree to communicate these points to your personnel.

**6.2   Process for Movement, Relocation and Reinstallation of a Kiosk**.  The agreed-upon process for relocation, removal or reinstallation ("3R") of Kiosks is as follows:

(a)    You must request in writing the relocation, removal or reinstallation of any Kiosk by submitting a "3R" request to your Client relations manager no less than five (5) business days prior to the requested relocation, removal or reinstallation date.

(b)    Because Kiosk location is by mutual agreement, we will promptly respond with our agreement or disagreement as to the proposed Premises. Any relocated placement must be similar to the original location. In the unlikely event that the parties cannot agree on new Premises at a Site, then either party may terminate this contract with respect to that Site.

(c)    Once the parties reach agreement on relocation, removal or reinstallation, we will coordinate with your representative at the Site and will mutually determine the schedule (date and time) for it to take place. We – and not you – are responsible for the relocation, removal or reinstallation of the Kiosk.

(d)    The costs associated with any relocation, removal or reinstallation of the Kiosk made at your request will be at your sole cost and expense subject to Section 6.2 (e) below.

(e)    Your responsibility for the costs associated with a relocation, removal or reinstallation of the Kiosk are limited to the relocation of the utility lines, which include any communication lines (DSL or otherwise), electrical lines and any other necessary utilities to the Kiosk.

**6.3   Disclaimer of Liability**. We are not liable, and disclaim all assumption of loss, for any damages, personal or otherwise, should you or any of your agents take it upon themselves to relocate, remove, or re-install a Kiosk. If you move a Kiosk without following the procedures set forth in Section 6.2, you will defend and indemnify Redbox for any Claims that result from the unauthorized movement according to the provisions of Section 12 ("Indemnification") below. We also may offset your Commission for any damages we incur.  If you move a Kiosk a second time at a Site without following the procedures set forth in Section 6.2, we may immediately terminate this contract with respect to that Site.

**6.4   Remodels and Rebuilds**. Should your operations continue during any period of remodeling or rebuilding of a Site, reasonable accommodations will be made to attempt to keep the Kiosk operating at the Site during that period. However, we may remove a Kiosk from a Site or suspend service at a Kiosk during that period if, in our reasonable opinion, the remodeling or rebuilding would have a material adverse effect upon (a) the number of customer transactions conducted at the Kiosk or (b) the Kiosk's condition.

**6.5   Vandalism or Burglary**.  Either party may request approval of the other party for the exclusion of any Site from these obligations if the Kiosk has repeatedly been vandalized or burglarized. The other party's approval of this request will not be

unreasonably withheld, conditioned or delayed.

**6.6  Removal for Failure to Generate Income**. If a Kiosk fails to generate average net rental revenue in excess of four hundred dollars ($400.00) per week for any eight (8) consecutive weeks occurring eight (8) weeks or more after the initial installation of a Kiosk at the Site, we may remove the Kiosk. Net rental revenue is calculated according to Section 7.4(b) ("Commission Calculation and Payment") below. Upon removal of the Kiosk, this contract automatically terminates with respect to that Site. Notwithstanding the foregoing, it is within our sole discretion to remove a second Kiosk from a Site for any reason.

**6.7  Surrender of Premises; Transitional Operation**. Upon the expiration or the termination of this contract, in whole or with respect to any individual Site, we will (a) remove the Kiosks, (b) surrender possession of the Premises, and (c) return the Premises in good clean condition, subject to normal and reasonable wear and tear related to the installation, use, operation and removal of the Kiosks. Notwithstanding the foregoing, we will fix or repair bolt holes due to Kiosk installation and removal. We will consult with you to mutually agree upon a reasonable schedule to accomplish these tasks, which should not exceed thirty (30) days from expiration or termination. Unless we terminate this contract for your breach, we will continue to operate the Kiosks and pay you commissions upon the same terms and conditions until removal of the Kiosks is complete.

## 7.    Commission Payments

**7.1  Rental Commissions**.  We offer Media in the Kiosks for rental by end-customers. We will pay you a commission based on a percentage of net revenue received by Redbox from both the rental of Media and from the failure by customers to return Media, as detailed in Section 7.4 below. The Commission percentage is specified on the Summary Page.

**7.2  Sell Through Commissions**.  We may offer new Media for direct sale from the Kiosks. We will pay you a commission based on a percentage of the net revenue received by Redbox for the sale of new Media as detailed in Section 7.4 below. Redbox will determine the sale price of the Media. The sell through commission percentage is specified on the Summary Page.

**7.3  Previously-Viewed Sell Through Commissions**. We may offer previously-viewed Media for direct sale from the Kiosks. We will pay you a commission based on a percentage of the net revenue received by Redbox for the sale of previously viewed Media as detailed in Section 7.4 below.  We reserve

the right to determine the selection and pricing for previously-viewed Media. The previously-viewed sell through commission percentage is specified on the Summary Page.

**7.4  Commission Calculation and Payment**.  For all Kiosks installed and operating at the Sites, we will pay you your commissions within thirty (30) days of the end of each calendar quarter. Commission payments will:

(a)     be calculated in accordance with generally accepted accounting principles;

(b)     include all gross revenues from paid rentals or sales of Media (as the case may be) and from the failure by customers to return rented Media, less customer refunds, credit card charge backs, declined transactions, promotional discounts, rental taxes and sales taxes ("**Net Revenue**");

(c)     be accompanied by a report which itemizes revenue by Kiosk and Site; and

(d)     in the event that Net Revenue for all products rented and sold at a Kiosk is Five Thousand Five Hundred Dollars ($5,500) or less in a calendar quarter, the Commission for all products rented and sold from the Kiosk for the quarter will be 0%.

**7.5  Inspection of Records**. It is your right, within one hundred eighty (180) days of payment of a commission, to inspect our accounts and reports relating to the calculation of that commission. Inspections can occur at reasonable intervals upon reasonable advance written notice, and during our regular business hours.

**7.6      Taxes**

(a)     Redbox shall ensure compliance with all federal, state and local tax laws applicable to the Kiosks, Media and services including but not limited to registering to pay, collecting and remitting taxes imposed upon Redbox in performance of its obligations under this contract. Each party shall be solely responsible for any taxes owed on its income, gross receipts, property or net worth, including income generated under this contract.  Redbox will have no liability to separately reimburse Client for any income, gross receipts, business and occupation, or similar tax imposed on Client's business, income, or receipts for any amount paid to Client by Redbox as a result of this contract or any Kiosk transactions.

(b)     In the event that the tax authorities subsequently seek to assess taxes against Client that Client reasonably believes are Redbox's obligation, then Client, rather than remit such taxes and seek

reimbursement from Redbox, shall immediately provide written notice to Redbox, and Redbox and Client shall reasonably cooperate with each other to investigate and accurately determine the appropriate tax liability, if any, and work together to minimize such tax liability, to the extent legally permissible. Notwithstanding the indemnification provision set forth below, if the Parties, exercising good faith, determine that the assessed taxes, or some portion thereof, is properly due and payable by Redbox, Redbox shall pay such taxes, and in such a case, Redbox shall bear all interest, levies and penalties, assessed by such tax authorities as required by applicable Law, unless the failure to collect and remit taxes is attributable to a Client misrepresentation or failure to disclose a material fact that affects the imposition of taxes due.

(c)    The Parties shall provide prompt notice to one another of any audit by tax authorities with respect to Taxes, and shall reasonably cooperate to identify and defend positions that may arise under such an audit.

## 8.    Marketing

Recognizing that marketing is critically important to increasing customer awareness, which in turn substantially impacts revenue, the parties agree to engage in the following marketing efforts:

**8.1    Location Guide**. You authorize Redbox to use your name and address of the Sites for the purpose of providing a location guide for customers. This guide may be in interactive media form or Internet-based, such as but not limited to a locator guide on our website.

**8.2    Banners and Signage**. Client will provide Redbox access and permission to place banners and signage which may include but not be limited to the following categories at each Client Site:

☒ Ceiling Danglers

☒ Window or Cooler Clings

☒ Door Decals

☒ Cashier Stickers and Handouts

☒ Breakroom Poster

**8.3    Intercom Messages**. If a Site hosting a Kiosk has an automated intercom system which is used for promotions, each Site will play a pre-recorded thirty (30) second message once every hour during the eight (8) weeks following the grand opening of each Kiosk. Thereafter, the Site will play a message five (5) times per day at evenly spaced intervals, as long as the Kiosk is operating at the location.  We will provide scripts that meet your specifications.

**8.4    Point of Purchase Merchandising**. We reserve the right to use a digital merchandising screen for point of purchase merchandising from the Kiosks. The screen would be directly attached and secured to the Kiosks, and would have a visual component as well as an audio component. The screen may display (but not be limited to displaying):

☒ Cover art from the currently offered Media;

☒ Movie trailers from new movie releases and upcoming releases; and

☒ External advertising.

**8.5    Your Website**. You will maintain on your corporate website a description of the Redbox products and services offered at your Sites, along with a photo of a Kiosk. The text and photo appearing on this webpage are subject to the mutual approval of the parties. There should be a link to the webpage from some other conspicuous point on your website (e.g., your home page).

**8.6    Trademarks.** Redbox may include Client's name and logo among its list of Clients on its website and in general sales presentations, and may disclose Client's name during its quarterly earnings announcement in fulfillment of any SEC disclosure requirements if such should become required.  Neither party shall use the name, registered trademark, or proprietary product names of the other party for the purpose of advertising, or other such purposes without the prior written approval of the other party.

**8.7    Other**. Client agrees to participate in quarterly marketing promotions which may include the following: Circular advertising, Out Of Home (OOH) advertising, radio sponsorships, cross promotions, demo programs, text messaging programs, email marketing programs, and vend screen advertisements.  Also included are any programs involving promo code distribution via cross promotions (Catalina or POS System), circular advertising, text programs and incremental in-store signage via a  3rd party vendor.

## 9.    Term and Termination

### 9.1    Term.

(a)    This contract goes into effect on the "**Effective Date**," which is identified on the Summary Page. The term of this contract expires at 11:59 p.m. (Central time) on the date identified on the Summary Page.

(b)    This contract automatically renews for one additional one (1) year period (the "Renewal Term"), unless one of us gives the other written notice that the contract will expire at the end of the Initial Term. This notice must be given and received at least ninety (90)

DocuSign Envelope ID: BD097D0D-70D4-456F-86D2-7A147622249D

days and not more than one hundred eighty (180) days prior to the end of the Initial Term.

**9.2    Termination for Cause**. Either of us may terminate this contract as a result of a material breach by the other party of any of its obligations. The termination will be effective upon the breaching party's receipt of notice of the breach, subject to a thirty (30) business day cure period. If the breaching party fails to cure or to initiate a plan to cure the breach within thirty (30) business days after its receipt of the notice, the non-breaching party may terminate the contract.

**9.3    Immediate Termination**. Notwithstanding the foregoing paragraph, either of us may terminate this contract immediately upon written notice if any of the following events occur: (a) the other party ceases or is likely to cease to carry on all or any principal part of its business; (b) the other party is unable to pay its debts as and when they become due; (c) due to an encumbrance, a third party takes possession of all or any part of the business, property or asset of the other party, or any liquidator or receiver is appointed in respect thereof; (d) the other party makes a general assignment for the benefit of its creditors; or (e) any order has been made or any resolution has been passed for the winding up of the other party.

## 10.   Confidential Information

**10.1   Definition of "Confidential Information."** "Confidential Information" means information, whether received before or after the Effective Date, marked or otherwise identified in writing by one of us as proprietary or confidential, or information that, under the circumstances surrounding the disclosure, the receiving party reasonably should recognize as being confidential. It includes non-public information regarding either party's products, software, marketing or promotions, business methods, cost information, forecasts, sales, revenues, profits, customer information (including personally identifiable information, rental transactions, and rental history), supplier information, and the terms of this contract.

**10.2   Information Not Considered Confidential**. Confidential Information does not include information which: (a) the recipient developed independently; (b) the recipient knew before receiving it from the other party; or (c) is or subsequently becomes publicly available or is received from another source, in both cases other than by a breach of an obligation of confidentiality. The burden of proof to establish that one of the above exceptions applies will be upon the recipient.

**10.3   Use of Confidential Information.** For a period of three (3) years after initial disclosure, neither party

will:

(a)    use the other's Confidential Information without the other's written consent, except in furtherance of this business relationship or as expressly permitted by this contract; or

(b)    disclose the other's Confidential Information, except to obtain advice from its professional advisors, legal or financial consultants, or if compelled by law (including disclosure necessary or appropriate in filings with the U.S. Securities Exchange Commission) or generally accepted accounting principles, in which case the party compelled to make the disclosure will use its best efforts to give the other party notice of the requirement so that the disclosure can be contested.

**10.4   Protection of Confidential Information**. Each party will take reasonable precautions to safeguard the other party's Confidential Information. Those precautions will be at least as great as the precautions that the other party takes to protect its own Confidential Information. Each party will disclose the other's Confidential Information to its employees, consultants or subcontractors only on a need-to-know basis and subject to the confidentiality obligations imposed here. When Confidential Information is no longer necessary to perform any obligation under this agreement, each party will return it to the other party or destroy it at the other's request.

**10.5   Cooperation in the Event of Disclosure.** Each party will immediately notify the other party upon discovery of any unauthorized use or disclosure of Confidential Information, and will help the other party regain possession of the Confidential Information and prevent further unauthorized use or disclosure.

**10.6   Right to Use Feedback.** If one party provides suggestions for changes or improvements, or other feedback, to the other party about the other party's products or services, the party receiving the feedback may use it for any purpose without obligation of any kind, except that the receiving party will not disclose the source of feedback without the consent of the party providing it.

## 11.   Assumption of Loss; Insurance

**11.1   Assumption of Loss**. Except as otherwise stated in this contract and except for the intentional or grossly negligent acts of you, your employees or agents, we will assume responsibility for all physical loss or damage to our Kiosks, their contents, signs and other personal property.

**11.2   Insurance Coverages**. We will maintain basic commercial general liability insurance coverage in the minimum amount of $1 million per occurrence and $2

million in the aggregate, workers compensation insurance coverage in an amount equal to at least statutory limits, and employers liability coverage in the minimum amount of $1 million per accident and per employee. At your request, we will supply certificates evidencing the insurance coverages specified in this paragraph.

**11.3 Claims Cooperation**. You agree to (a) promptly notify Redbox in writing of any claim or loss after any potentially insurable loss is discovered, and (b) cooperate in the investigation and adjustment of any such loss.

## 12. Indemnification

**12.1 Third-Party Claims**. Each party (the "**indemnifying party**") will indemnify and defend the other party, its officers, affiliates, employees and agents, against and hold them harmless from, without limitation, any and all liabilities, injury, death, penalties, losses, costs, damages, claims, expenses, attorneys' fees, expenses of litigation, suits, judgments, liens and encumbrances brought, suffered or incurred by the other party or third parties (collectively, "**Claims**") attributable to the respective acts or omissions of the indemnifying party, its officers, affiliates, employees, agents or subcontractors, while engaged in their business or in the performance of their duties under this contract. A party will have no obligations under this paragraph to the extent a Claim relates to or arises from the intentional acts or omissions of the other party, its officers, employees, affiliates, subcontractors, or agents.

**12.2 Landlord Claims**. You will further indemnify and defend Redbox against and hold it harmless from the Claims of any landlord or property manager who claims that we do not have the right to install or operate a Kiosk at a Site.

## 13. Limitations of Liability

**13.1 Limitation of Liability**. IN NO EVENT WILL A PARTY OR ANY OF ITS DIRECTORS, OFFICERS, MEMBERS, EMPLOYEES, AGENTS OR SUBCONTRACTORS BE LIABLE UNDER ANY THEORY OF TORT, CONTRACT, STRICT LIABILITY OR OTHER LEGAL OR EQUITABLE THEORY FOR LOST PROFITS, EXEMPLARY, PUNITIVE, SPECIAL, INCIDENTAL, INDIRECT, CONSEQUENTIAL DAMAGES, LOSS OF USE OF DATA OR THE LIKE, EACH OF WHICH IS HEREBY EXCLUDED BY AGREEMENT OF THE PARTIES REGARDLESS OF WHETHER SUCH DAMAGES WERE FORESEEABLE OR WHETHER EITHER PARTY OR

ANY ENTITY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**13.2 Exclusions to the Limitation of Liability**. The limitations of liability in the preceding paragraph will not apply to liabilities arising under the Sections governing "Confidential Information," "Indemnification," or to acts or omissions involving a party's intentional misconduct or fraud.

**13.3 Disclaimer of Warranties**. EXCEPT AS EXPRESSLY STATED IN THIS CONTRACT, NEITHER PARTY MAKES ANY WARRANTY OF ANY KIND TO THE OTHER PARTY, AND DISCLAIMS ALL WARRANTIES, INCLUDING WITHOUT LIMITATION ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

## 14. Miscellaneous

**14.1 Notices.** Notices, authorizations, and requests in connection with this contract must be sent by personal delivery, certified mail (return receipt requested), or express courier to the addresses listed in this contract. Notices will be treated as delivered on the date shown on the return receipt or on the courier confirmation of delivery. Notices sent to Redbox must be separately copied and sent to the "Legal Department."

**14.2 Governing Law.** The laws of the State of Illinois, excluding the rules of conflicts of law, will govern this contract.

**14.3 Dispute resolution.** When bringing an action to enforce this contract, the parties agree to the following jurisdictions: (a) if we bring the action, the jurisdiction will be where you have your headquarters; and (b) If you bring an action, the jurisdiction will be Cook County (Chicago), Illinois.

**14.4 Jury Waiver**. Each party knowingly, voluntarily and intentionally waives the right it may have to a trial by jury in respect of any litigation based upon this contract, or arising out of, under or in connection with this contract, or any course of dealing, statements, whether verbal or written, or action of or by a party or any of their respective affiliates to the fullest extent permitted by law. This provision is a material inducement for the parties to enter into this contract.

**14.5 Independent Contractors**. Redbox acts as an independent contractor, and will be responsible for any and all social security, unemployment, workers' compensation and other withholding taxes for all of its employees. Nothing in this contract will be deemed to establish a partnership, joint venture, employment,

DocuSign Envelope ID: BD067802-26A4-43AF-862D-7FCF4F6221A5

agency or other legal relationship other than that of independent contractors between the parties.

**14.6    Subcontracting.**  We may subcontract certain of our obligations under this contract, including but not limited to, installation, maintenance, supplying, servicing, relocation or removal of our Kiosks. However, we will remain primarily liable to you for any and all such subcontracted services.

**14.7    Assignment.**  This contract cannot be assigned without the express written consent of the other, which consent will not be unreasonably withheld, conditioned or delayed. However, a party may withhold consent if an assignee is in or plans to be in competition with that party. Additionally, a party does not need to obtain the consent of the other party to assign this contract to a parent, subsidiary, or affiliated corporation or to a corporation or entity, which acquires all or, substantially all of the assets or stock of such party, parent, subsidiary or affiliate.

**14.8    Entire Agreement.**  This contract and all exhibits contain the entire agreement between the parties with respect to the subject matter of this contract, and supersede any previous understandings or agreements, whether written or oral, in respect of such subject matter. However, if this contract does not include a section governing the confidential nature of information exchanged by the parties, then the terms of any separate confidentiality or nondisclosure agreement signed by the parties will not be superseded by this contract.

**14.9    Interpretation.**  If a court holds any provision of this agreement to be illegal, invalid or unenforceable, the rest of the document will remain in effect and this agreement will be amended to give effect to the eliminated provision to the maximum extent possible. The term "may" indicates that something is permissive and optional in a party's discretion, not mandatory or automatic. The language used in this contract has been mutually chosen by the parties to express their intent, and no rule of strict construction will be used against either party.

**14.10    Modification; Waiver.**  No amendment, change, waiver or discharge of this contract is valid unless it is set forth in writing and signed by an authorized representative of the party (which in the case of Redbox is a Vice President) against whom the amendment, change, waiver or discharge is sought to be enforced.

**14.11    Third Party Beneficiaries.**  There are no third-party beneficiaries who are intended to benefit in any way from this contract.

**14.12    Force Majeure.**  Neither of us will be liable to each other for any loss, damage, delay or failure of performance that is attributable to acts of God, armed conflicts, war, insurrection, acts of terrorism or acts committed in furtherance of terrorism, riots, earthquakes, hurricanes, floods, unusually severe weather, conditions or events of nature that cannot be predicted, civil disturbances, power or communications failures, strikes, fire, the acts of any governmental authority, or other causes beyond a party's reasonable control. A party's performance will be excused during the pendency of any such event, but that party will take all steps reasonable, practical and necessary to effect prompt resumption of its obligations under this contract in full or in part.

**14.13    Survival.**  Provisions regarding payment of commissions, limitations of liability, confidentiality, indemnification, obligations on termination or expiration and the other provisions in this Section entitled "Miscellaneous" survive termination or expiration of this contract.

**14.14    Execution.**  This contract is effective when it is signed by authorized representatives of each party. The contract may be executed in one or more counterparts, each of which will constitute an original agreement, but is not enforceable until delivery and exchange of the executed counterparts. Copies of this contract (including facsimiles) have the same force and effect as a signed original document.

**KWIK TRIP, INC.**

By: _(signature)_

Name: _Greg Scriver_

Title: _VP Procurement & Marketing_

Date: _10-29-17_

**REDBOX   AUTOMATED   RETAIL,   LLC**

Approved by Legal
DocuSigned by:

_Tim Hale_

By: _____
AEAE41637D734CE...

Name: Tim Hale

Title: SVP Sales

Date: August 31, 2017

**EXHIBIT A**

**Redbox Physical/Technology Overview**

Physical Specifications



1. Electricity Connection
   a. Interior Kiosk
      1. Power – 120v. 20 amp **dedicated electric line**
      2. The light box and the header that sits on top of the machine have a total electric load of 1.2 amps. The machine has a total electric load of 4.9 amps for a total connected load of 6.1 amps.
   b. Exterior Kiosk
      1. Power: 20 Amp **dedicated** circuit
      2. The light box and the header that sits on top of the machine have a total electric load of 2.1 amps. The machine has a total electric load of 8.5 amps for a total connected load of 10.6 amps.

DocuSign Envelope ID: BD097D0D-70D4-456F-86D2-7A147622249D

*82 Total Stores with Redbox*

**EXHIBIT B**

**SITE LIST**

| Banner | Store Nbr | Address | City | State | Zip Code | Kiosk Client ID |
|--------|-----------|---------|------|-------|----------|-----------------|
| Kwik Trip | 213 | 5335 Stacy Trl | Stacy | MN | 55079-9487 | 75677 |
| Kwik Trip | 224 | 2715 W Michigan St | Duluth | MN | 55806-2611 | 75672 |
| Kwik Trip | 324 | 210 S Main St | Juneau | WI | 53039-1051 | 59760 |
| Kwik Trip | 329 | 201 W Maple St | Spooner | WI | 54801-1435 | 59777 |
| Kwik Trip | 330 | 104 Aspen Ln | Belle Plaine | MN | 56011-3200 | 69229 |
| Kwik Trip | 331 | 3030 Plover Rd | Wisconsin Rapids | WI | 54494-2142 | 59748 |
| Kwik Trip | 337 | 124 Paperjack Dr | New Richmond | WI | 54017-2427 | 59703 |
| Kwik Trip | 338 | 1900 Post Rd | Plover | WI | 54467-2886 | 75693 |
| Kwik Trip | 339 | 212 S Main St | Cuba City | WI | 53807-1544 | 59716 |
| Kwik Trip | 350 | 9421 State Road 16 | Onalaska | WI | 54650-8539 | 59776 |
| Kwik Trip | 352 | 2997 Commercial Blvd | Chippewa Falls | WI | 54729-5051 | 59686 |
| Kwik Trip | 367 | 701 W State St | Fox Lake | WI | 53933-9550 | 59693 |
| Kwik Trip | 373 | 1809 W Saint Paul Ave | Waukesha | WI | 53188-5711 | 75696 |
| Kwik Trip | 379 | 1701 Monks Ave | Mankato | MN | 56001-5772 | 70299 |
| Kwik Trip | 388 | 3111 Wellner Dr NE | Rochester | MN | 55906-8388 | 69230 |
| Kwik Trip | 389 | 108 W Madison St | Eau Claire | WI | 54703-5233 | 75694 |
| Kwik Trip | 396 | W229N2086 County Highway F | Waukesha | WI | 53186-1185 | 75695 |
| Kwik Trip | 410 | 2401 Crest View Dr | Hudson | WI | 54016-9498 | 59684 |
| Kwik Trip | 413 | 1625 E Main St | Arcadia | WI | 54612-7212 | 59685 |
| Kwik Trip | 414 | 101 Schumann Dr NW | Stewartville | MN | 55976-7919 | 75697 |
| Kwik Trip | 425 | 2530 N Grandview Blvd | Waukesha | WI | 53188-1607 | 62190 |
| Kwik Trip | 427 | 1625 Woodard Rd | Bloomer | WI | 54724-9022 | 59739 |
| Kwik Trip | 436 | 924 Fleetfoot Dr | Waukesha | WI | 53186-6306 | 62194 |
| Kwik Trip | 438 | 2109 2nd St SW | Rochester | MN | 55902- | 75676 |

24

DocuSign Envelope ID: BD097D0D-70D4-456F-86D2-7A147622249D

| | | | | | 4145 | |
|---|---|---|---|---|---|---|
| Kwik Trip | 443 | 18290 Pilot Knob Rd | Farmington | MN | 55024-9168 | 75674 |
| Kwik Trip | 450 | 1200 E Commerce Blvd | Slinger | WI | 53086-9085 | 59752 |
| Kwik Trip | 451 | 455 State Highway 64 | Antigo | WI | 54409-0000 | 59775 |
| Kwik Trip | 466 | 1305 S Minnesota Ave | Saint Peter | MN | 56082-2209 | 75698 |
| Kwik Trip | 472 | 1130 W Macarthur Ave | Eau Claire | WI | 54701-6213 | 59690 |
| Kwik Trip | 487 | 465 Village Walk Ln | Johnson Creek | WI | 53038-9526 | 59746 |
| Kwik Trip | 602 | 324 2nd St | Chetek | WI | 54728-9743 | 59688 |
| Kwik Trip | 605 | 603 W Madison Ave | Milton | WI | 53563-1031 | 59759 |
| Kwik Trip | 608 | 150 Highway 30 W | Chatfield | MN | 55923-3614 | 75671 |
| Kwik Trip | 612 | 915 E Main St | Winneconne | WI | 54986-9725 | 59709 |
| Kwik Trip | 619 | 101 8th St SE | Kasson | MN | 55944-2900 | 20874 |
| Kwik Trip | 622 | 16 2nd Ave NW | Byron | MN | 55920-1604 | 72677 |
| Kwik Trip | 626 | 99 E Montello St | Montello | WI | 53949 | 59755 |
| Kwik Trip | 635 | 215 N Main St | Lodi | WI | 53555-1227 | 59706 |
| Kwik Trip | 656 | 2315 Menasha Ave | Manitowoc | WI | 54220-1748 | 59757 |
| Kwik Trip | 686 | 943 SE Frontage Rd | Mount Pleasant | WI | 53177-1502 | 59770 |
| Kwik Trip | 691 | 1600 Maria Dr | Stevens Point | WI | 54481-1159 | 75690 |
| Kwik Trip | 695 | 13357 Palomino Dr | Apple Valley | MN | 55124-4241 | 72678 |
| Kwik Trip | 696 | 940 Baldwin Plaza Dr | Baldwin | WI | 54002-5163 | 59687 |
| Kwik Trip | 721 | 504 Plaza Dr | Marshall | WI | 53559-8514 | 59714 |
| Kwik Trip | 729 | 36281 Main St | Whitehall | WI | 54773-9139 | 59756 |
| Kwik Trip | 740 | 261 E Main St | Hortonville | WI | 54944-9452 | 59754 |
| Kwik Trip | 748 | 211 E Division Ave | Barron | WI | 54812-1138 | 59772 |
| Kwik Trip | 753 | 380 Sandstone Dr NW | Eyota | MN | 55934-2226 | 75673 |
| Kwik Trip | 755 | 745 Lincoln Ave | Fennimore | WI | 53809-1537 | 59722 |
| Kwik Trip | 756 | 13907 10th St | Osseo | WI | 54758-7563 | 59724 |
| Kwik Trip | 786 | 303 S Fulton St | Princeton | WI | 54968-8927 | 59779 |

51

DocuSign Envelope ID: BD097D0D-70D4-456F-86D2-7A147622249D

| | | | | | | |
|---|---|---|---|---|---|---|
| Kwik Trip | 789 | 408 2nd Ave NW | Dodge Center | MN | 55927-9276 | 72676 |
| Kwik Trip | 794 | 525 Springdale St | Mount Horeb | WI | 53572-1749 | 59695 |
| Kwik Trip | 803 | 410 Main St N | Stewartville | MN | 55976-1237 | 75678 |
| Kwik Trip | 822 | 950 2nd Ave N | Onalaska | WI | 54650-2209 | 59712 |
| Kwik Trip | 832 | 208 E Main St | Waunakee | WI | 53597-1126 | 59704 |

Sb

## FIRST AMENDMENT TO
## KIOSK OPERATING AGREEMENT

This First Amendment to Kiosk Operating Agreement ("**First Amendment**") is made between Kwik Trip, Inc., a Wisconsin corporation ("**Client**") and Redbox Automated Retail, LLC, a Delaware limited liability company ("**Redbox**") (**collectively, the "Parties"**).

Client and Redbox entered into a Kiosk Operating Agreement (the "**Operating Agreement**"), with an Effective Date of October 29, 2017, granting Redbox, among other things, the exclusive right to install and operate Kiosk(s) at Sites. Client and Redbox now desire to amend the Operating Agreement.

THEREFORE, Client and Redbox agree that effective September 1, 2021 (the "**First Amendment Effective Date**"); the Operating Agreement is amended as follows:

1. The term is extended to August 31, 2023. Upon expiration of the term, the Operating Agreement automatically renews for an additional one (1) year period, unless one of us gives the other written notice that the Operating Agreement will expire at the end of the term. This notice must be given and received at least thirty (30) days prior to the end of the term.

2. The Commission Rate set forth on the Summary Page of the Operating Agreement shall be deleted in its entirety and replaced by "5% per Kiosk for Movie Rental and 3% per Kiosk for Sell Through and Previously Viewed Sell Through".

3. All references to Video Games shall be deleted as Redbox no longer offers Video Games for rental or sale.

4. The reference to four hundred dollars ($400.00) in Section 6.6 shall be deleted and replaced by three hundred and fifty dollars ($350.00).

Except for the provisions set forth above, all other terms and conditions contained within the Operating Agreement remain unchanged. **THIS FIRST AMENDMENT, INCLUDING THE OPERATING AGREEMENT OF WHICH IT IS A PART, IS A COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN THE PARTIES, WHICH SUPERSEDES ALL PRIOR OR CONCURRENT PROPOSALS AND UNDERSTANDINGS, WHETHER ORAL OR WRITTEN, AND ALL OTHER COMMUNICATIONS BETWEEN THE PARTIES, RELATING TO THE SUBJECT MATTER OF THIS FIRST AMENDMENT AND THE OPERATING AGREEMENT.**

Notwithstanding anything to the contrary in the Operating Agreement, in the event of a conflict between the terms and conditions of this First Amendment and those contained within the Operating Agreement, the terms and conditions of this First Amendment shall prevail. ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED AND ARE RATIFIED HEREBY.

IN WITNESS WHEREOF, Client and Redbox, by their execution below, indicate their consent to the terms of this First Amendment.

**KWIK TRIP, INC.**

By: _____

Name: _JAKE A Vogel_

Title: _Dir. Category Management_

Date: _8/10/21_

**REDBOX AUTOMATED RETAIL, LLC**

By: _____

Name: _____

Title: _____

Date: _____

1

# Exhibit 2



Legal

PHONE 608-781-8988
FAX 608-793-6120

January 23, 2024

1626 Oak St., P.O. Box 2107
La Crosse, WI 54602
www.kwiktrip.com

**Via UPS – separately to each of the following:**

Redbox Automated Retail, LLC
Attn:  Jason Whalum (Client Relations Manager)
One Tower Lane, Suite 900
Oakbrook Terrace, Illinois 60181

Redbox Automated Retail, LLC
Attn: Legal Department
One Tower Lane, Suite 900
Oakbrook Terrace, Illinois 60181

    **Re:**    **Notice To Remove Kiosks by February 5, 2024**

Dear Mr. Whalum and Legal Department,

Pursuant to Section 6 of the Kiosk Operating Agreement entered into between Kwik Trip, Inc. ("Kwik Trip") and Redbox Automated Retail, LLC ("Redbox") effective December 8, 2011, and as amended by the First Amendment to Kiosk Operating Agreement effective September 1, 2021 (collectively, the "Agreement"), Kwik Trip hereby provides formal, written notice requesting removal of the Redbox Kiosks located at the following Kwik Trip locations for the listed reasons:

KT 372 – 916 Janesville Street, Oregon, WI  53575
(Building is closed and will be demolished)

KT 748 – 211 E. Division Ave, N 2nd Street, Barron, WI  54812
(Building is closed and will be sold)

KT 630 - 45 E Chestnut ST, Chilton, WI  53014
(Building is being remodeled)

KT 328 – 511 W 4th Street, Blair, WI  54616
(Kiosk is out of service)

KT 804 – 906 W Front Street, Albert Lea, MN  56007
(Kiosk has been inactive since May 2023)

KT 696 – 940 Baldwin Plaza Drive, Baldwin, WI  54002
(Prior request was made in early 2023 to remove this Kiosk)

**Due to the reasons stated above, Kwik Trip needs these Kiosks removed no later than February 5, 2024.** Please promptly respond to Kevin Boldt – Store Engineering Project Manager at (608) 793-4942 or at Kboldt@kwiktrip.com to confirm that removal will occur by that deadline and to schedule the removal.

Please note that if we do not hear from Redbox within five (5) days of your receipt of this Notice, we will make arrangements to remove the Kiosks on or about February 5, 2024, and will store them in a secure location until you make arrangements to collect the Kiosks.  Under that scenario, please contact Mr. Boldt to obtain the storage location and to arrange for pick up.

Thank you for your attention to this request and feel free to contact me at (608) 793-6007 to discuss this matter further.

Very truly yours,

Lara Czajkowski Higgins
Senior Corporate Attorney
lczhiggins@kwiktrip.com



FOLD HERE

UPS Campusship: View/Print Label

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
**Customers with a Daily Pickup**
Your driver will pickup your shipment(s) as usual.

**Customers without a Daily Pickup**
Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.

Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.

Hand the package to any UPS driver in your area.

| UPS Access Point™ | UPS Access Point™ | UPS Access Point™ |
|---|---|---|
| MICHAELS STORE # 5150 | ADVANCE AUTO PARTS STORE #3714 | THE UPS STORE |
| 9348 STATE ROAD 16 | 9398 STATE ROAD 16 | 317 4TH ST S |
| ONALASKA, WI 54650 | ONALASKA, WI 54650 | LA CROSSE, WI 54601 |

# Proof of Delivery

Dear Customer,

This notice serves as proof of delivery for the shipment listed below.

Tracking Number

1Z5891931391857920

Weight

1.00 LBS

Service

UPS Next Day Air Saver®

Shipped / Billed On

01/23/2024

Delivered On

01/24/2024 10:29 A.M.

Delivered To

OAKBROOK TERRACE, IL, US
Received By

ZANDER

Please print for your records as photo and details are only available for a limited time.

Sincerely,

UPS

Tracking results provided by UPS: 01/24/2024 11:34 A.M. EST

**Exhibit 3**



PHONE 608-781-8988
FAX 608-793-6120

May 28, 2024

1626 Oak St., P.O. Box 2107
La Crosse, WI 54602
www.kwiktrip.com

<u>**Via UPS OVERNIGHT DELIVERY – separately to each of the following:**</u>

Redbox Automated Retail, LLC
Attn: Jason Whalum (Client Relations Manager)
One Tower Lane, Suite 900
Oakbrook Terrace, Illinois 60181

Redbox Automated Retail, LLC
Attn: Legal Department
One Tower Lane, Suite 900
Oakbrook Terrace, Illinois 60181

**Re:   Notice To Remove Kiosks by June 10, 2024**

Dear Mr. Whalum and Legal Department,

Pursuant to Section 6 of the Kiosk Operating Agreement entered into between Kwik Trip, Inc. ("Kwik Trip") and Redbox Automated Retail, LLC ("Redbox") effective December 8, 2011, and as amended by the First Amendment to Kiosk Operating Agreement effective September 1, 2021 (collectively, the "Agreement"), Kwik Trip hereby provides formal, written notice requesting removal of the Redbox Kiosks located at the Kwik Trip locations set out on the attached Exhibit A.

**Kwik Trip needs these Kiosks removed no later than June 10, 2024.**  Please promptly respond to Kevin Boldt – Store Engineering Project Manager at (608) 793-4942 or at Kboldt@kwiktrip.com to confirm that removal will occur by that deadline and to schedule the removal.

Please note that if we do not hear from Redbox within five (5) days of your receipt of this Notice, we will make arrangements to remove the Kiosks on or about June 10, 2024, and will store them in a secure location until you make arrangements to collect the Kiosks.  Under that scenario, please contact Mr. Boldt to obtain the storage location and to arrange for pick up.

Thank you for your attention to this request and feel free to contact me at (608) 793-6007 to discuss this matter further.

Very truly yours,

Lara Czajkowski Higgins
Senior Corporate Attorney
lczhiggins@kwiktrip.com

## EXHIBIT A

| Kwik Trip Inc. Store | Address | City | State | Zip Code |
|---|---|---|---|---|
| Kwik Trip 804 | 906 W Front St | Albert Lea | MN | 56007 |
| Kwik Trip 575 | 855 Keller Ave S | Amery | WI | 54001 |
| Kwik Trip 200 | 2120 E Edgewood Dr | Appleton | WI | 54913 |
| Kwik Trip 413 | 1625 E Main St | Arcadia | WI | 54612 |
| Kwik Trip 696 | 940 Baldwin Plaza Dr | Baldwin | WI | 54002 |
| Kwik Trip 748 | 211 E Division Ave | Barron | WI | 54812 |
| Kwik Trip 346 | 1200 Madison St | Beaver Dam | WI | 53916 |
| Kwik Trip 330 | 104 Aspen Ln | Belle Plaine | MN | 56011 |
| Kwik Trip 239 | W235S7125 Big Bend Dr | Big Bend | WI | 53189 |
| Kwik Trip 328 | 511 W 4th St | Blair | WI | 54616 |
| Kwik Trip 427 | 1625 Woodard Rd | Bloomer | WI | 54724 |
| Kwik Trip 646 | 209 S Grove St | Blue Earth | MN | 56013 |
| Kwik Trip 622 | 16 2nd Ave NW | Byron | MN | 55920 |
| Kwik Trip 733 | 608 Esch Dr | Caledonia | MN | 55921 |
| Kwik Trip 922 | 201 S 1st St | Cameron | WI | 54822 |
| Kwik Star 283 | 8835 Runaway Ct SW | Cedar Rapids | IA | 52404 |
| Kwik Trip 608 | 150 Highway 30 W | Chatfield | MN | 55923 |
| Kwik Trip 602 | 324 2nd St | Chetek | WI | 54728 |
| Kwik Trip 630 | 45 E Chestnut St | Chilton | WI | 53014 |
| Kwik Trip 660 | 503 E Grand Ave | Chippewa Falls | WI | 54729 |
| Kwik Trip 352 | 2997 Commercial Blvd | Chippewa Falls | WI | 54729 |
| Kwik Star 223 | 3205 Willow Creek Ct | Clear Lake | IA | 50428 |
| Kwik Trip 339 | 212 S Main St | Cuba City | WI | 53807 |
| Kwik Star 629 | 905 Short St | Decorah | IA | 52101 |
| Kwik Trip 789 | 408 2nd Ave NW | Dodge Center | MN | 55927 |
| Kwik Trip 224 | 2715 W Michigan St | Duluth | MN | 55806 |
| Kwik Trip 472 | 1130 W Macarthur Ave | Eau Claire | WI | 54701 |
| Kwik Trip 389 | 108 W Madison St | Eau Claire | WI | 54703 |
| Kwik Trip 753 | 380 Sandstone Dr NW | Eyota | MN | 55934 |
| Kwik Trip 693 | 217 Elm St. | Farmington | MN | 55024 |
| Kwik Trip 443 | 18290 Pilot Knob Rd | Farmington | MN | 55024 |
| Kwik Trip 755 | 745 Lincoln Ave | Fennimore | WI | 53809 |
| Kwik Trip 292 | 840 S Huron Rd | Green Bay | WI | 54311 |
| Kwik Star 145 | 402 S Highway 52 | Guttenberg | IA | 52052 |
| Kwik Star 567 | 300 Central Ave W | Hampton | IA | 50441 |
| Kwik Trip 655 | 1411 E Sumner St | Hartford | WI | 53027 |
| Kwik Trip 740 | 261 E Main St | Hortonville | WI | 54944 |
| Kwik Trip 410 | 2401 Crest View Dr | Hudson | WI | 54016 |
| Kwik Trip 487 | 465 Village Walk Ln | Johnson Creek | WI | 53038 |
| Kwik Trip 437 | 319 S 3rd St | La Crescent | MN | 55947 |
| Kwik Trip 844 | 994 W Lyon Ave | Lake City | MN | 55041 |
| Kwik Trip 635 | 215 N Main St | Lodi | WI | 53555 |
| Kwik Trip 379 | 1701 Monks Ave | Mankato | MN | 56001 |
| Kwik Trip 721 | 504 Plaza Dr | Marshall | WI | 53559 |

| Kwik Trip Inc. Store | Address | City | State | Zip Code |
|---|---|---|---|---|
| Kwik Star 720 | 125 Main St | Mc Gregor | IA | 52157 |
| Kwik Trip 295 | 1157 Gateway Dr | Milton | WI | 53563 |
| Kwik Trip 605 | 603 W Madison Ave | Milton | WI | 53563 |
| Kwik Star 711 | 12801 Falcon Ave | Monona | IA | 52159 |
| Kwik Trip 626 | 99 E Montello St | Montello | WI | 53949 |
| Kwik Trip 794 | 525 Springdale St | Mount Horeb | WI | 53572 |
| Kwik Trip 883 | 1400 W American Dr | Neenah | WI | 54956 |
| Kwik Trip 313 | 110 E Division St | Neillsville | WI | 54456 |
| Kwik Trip 337 | 124 Paperjack Dr | New Richmond | WI | 54017 |
| Kwik Star 665 | 10 1st Ave SE | Oelwein | IA | 50662 |
| Kwik Trip 822 | 950 2nd Ave N | Onalaska | WI | 54650 |
| Kwik Trip 372 | 916 Janesville St | Oregon | WI | 53575 |
| Kwik Star 801 | 809 Main St | Osage | IA | 50461 |
| Kwik Trip 756 | 13907 10th St | Osseo | WI | 54758 |
| Kwik Star 704 | 605 Highway 57 | Parkersburg | IA | 50665 |
| Kwik Trip 245 | 95 4th Ave SE | Plainview | MN | 55964 |
| Kwik Trip 338 | 1900 Post Rd | Plover | WI | 54467 |
| Kwik Trip 653 | 1223 E Wisconsin St | Portage | WI | 53901 |
| Kwik Trip 388 | 3111 Wellner Dr NE | Rochester | MN | 55906 |
| Kwik Trip 438 | 2109 2nd St SW | Rochester | MN | 55902 |
| Kwik Trip 609 | 110 State Road 16 | Rushford | MN | 55971 |
| Kwik Trip 466 | 1305 S Minnesota Ave | Saint Peter | MN | 56082 |
| Kwik Trip 225 | 1020 S Mainline Dr | Seymour | WI | 54165 |
| Kwik Trip 450 | 1200 E Commerce Blvd | Slinger | WI | 53086 |
| Kwik Trip 213 | 5335 Stacy Trl | Stacy | MN | 55079 |
| Kwik Trip 691 | 1600 Maria Dr | Stevens Point | WI | 54481 |
| Kwik Trip 803 | 410 Main St N | Stewartville | MN | 55976 |
| Kwik Trip 414 | 101 Schumann Dr NW | Stewartville | MN | 55976 |
| Kwik Trip 442 | 501 Elm Ave W | Waseca | MN | 56093 |
| Kwik Trip 373 | 1809 W Saint Paul Ave | Waukesha | WI | 53188 |
| Kwik Trip 425 | 2530 N Grandview Blvd | Waukesha | WI | 53188 |
| Kwik Trip 436 | 924 Fleetfoot Dr | Waukesha | WI | 53186 |
| Kwik Trip 396 | W229N2086 County Highway F | Waukesha | WI | 53186 |
| Kwik Trip 832 | 208 E Main St | Waunakee | WI | 53597 |
| Kwik Trip 188 | 310 Grand Ave | Wausau | WI | 54403 |
| Kwik Trip 684 | 985 W City Highway 16 | West Salem | WI | 54669 |
| Kwk Trip 729 | 36281 Main St | Whitehall | WI | 54773 |
| Kwik Trip 463 | 100 Jefferson Dr | Zumbrota | MN | 55992 |

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.**  Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.**  Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. GETTING YOUR SHIPMENT TO UPS
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.
   Take your package to any location of The UPS Store®, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   FOLD HERE



# [EXTERNAL] UPS Delivery Notification, Tracking Number 1Z5891931396069871

UPS <pkginfo@ups.com>
Wed 5/29/2024 2:30 PM

To:Maranda Oliver <MOliver@kwiktrip.com>

**This Message Is From an External Sender**
This message came from outside your organization.

UPS logo

## Hello, your package has been delivered.
**Delivery Date:**    Wednesday, 05/29/2024
**Delivery Time:**    2:28 PM
**Signed by:**    REDBOX

## KWIK TRIP MAIN

| | |
|---|---|
| **Tracking Number:** | **1Z5891931396069871** |
| **Ship To:** | REDBOX AUTOMATED RETAIL, LLC<br>ONE TOWER LANE<br>SUITE 900<br>OAKBROOK TERRACE, IL 601814623<br>US |
| **Number of Packages:** | 1 |
| **UPS Service:** | UPS Next Day Air Saver® |
| **Package Weight:** | 1.0 LBS |
| **Reference Number:** | 469 |

### Discover more about UPS:

Visit www.ups.com

Sign Up For Additional E-Mail From UPS

Read Compass Online

© 2024 United Parcel Service of America, Inc. UPS, the UPS brandmark, and the color brown are trademarks of United Parcel Service of America, Inc. All rights reserved.

All trademarks, trade names, or service marks that appear in connection with UPS's services are the property of their respective owners.