IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                                    }         Chapter 7
                                          }
CHICKEN SOUP FOR THE SOUL                 }         Case No.: 24-11442 (MFW)
ENTERTAINMENT, INC., et al.,              }
                                          }         Jointly Administered
Debtors.[1]                               }
_____   }

**OBJECION TO TRUSTEE'S ENGAGEMENT OF SPECIAL COUNSEL,
REQUEST FOR DISQUALIFICATION OF CULPEPPER IP, LLLC
PURSUANT TO 105, 327(e), AND 328(a)
REQUEST FOR SANCTIONS**

**TO THE HONORABLE COURT:**

1. COMES NOW admitted (and unobjected) party in interest Charles Muszynski, pro se, ("Movant") and objects to Trustee George Miller's retroactive engagement of Special Counsel Culpepper IP, LLLC., i.e., Kerry Culpepper ("Culpepper") prior to receiving court approval to do so. Trustee Miller retroactively engaged Culpepper without knowing of Culpepper's concealment of actual significant conflicts, an absence of disinterestedness, his pecuniary interest in the litigation, a history replete with bad faith and continuing violations of multiple courts' automatic stays (including this one's), and a scandalous history of copyright trolling based on barratry with a third-party litigation funding partner located in the Republic of Cyprus with ties to sovereign Chinese investment, convicted German criminals, and Philippine money laundering.

2. Culpepper lacks disinterestedness and a myriad of conflicts stem from his pecuniary interests in an unargued, default judgment procured through fraud and issued to indispensable, joined Judgment Creditors ("Creditors"), a group of non-performing entities: MILLENNIUM FUNDING, INC., (owned by a Chinese wire manufacturing company), VOLTAGE HOLDINGS, LLC, VOLTAGE PICTURES, LLC, AMBI DISTRIBUTION CORP., AFTER PRODUCTIONS, LLC, AFTER II MOVIE, LLC, MORGAN CREEK PRODUCTIONS, INC., MILLENNIUM MEDIA, INC., COLOSSAL MOVIE PRODUCTIONS, LLC, YAR PRODUCTIONS, INC., MILLENNIUM IP, INC., KILLING LINK DISTRIBUTION, LLC, BADHOUSE STUDIOS, LLC, LHF PRODUCTIONS, INC., VENICE PI, LLC, RAMBO V

PRODUCTIONS, INC., MON, LLC, SF FILM, LLC, SPEED KILLS PRODUCTIONS, INC., MILLENNIUM IP, INC., NIKOLA PRODUCTIONS, INC., WONDER ONE, LLC, BODYGUARD PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., GLACIER FILMS 1, LLC, DEFINITION DELAWARE LLC, HANNIBAL CLASSICS INC., HANNIBAL MEDIA, INC., STATE OF THE UNION DISTRIBUTION AND COLLECTIONS, LLC, PARADOX STUDIOS, LLC, DALLAS BUYERS CLUB, LLC, and SCREEN MEDIA VENTURES, LLC, 42 VENTURES, LLC, (wholly owned by Kerry Culpepper), and declared parties in interest CULPEPPERIP, LLLC, SRIPLAW, P.A., and KERRY CULPEPPER, individually who appears pro se and volunteered multiple times as a fact witness, JOEL ROTHMAN, ("Rothman") and his law firm, SRIPLaw, Inc. and PML PROCESS MANAGEMENT LIMITED, ("PML", the third-party litigation funding company, non-lawyer, and fee-splitting partner), in that unargued, default, S.D. Florida ("SDFL") Judgment against multiple entities, including Movant (Culpepper and Rothman willfully concealed the principal litigant, PML from the SDFL to fraudulently obtain the judgment). The judgment remains an undeclared asset in Screen Media Ventures, LLC's ("SMV"), and Chicken Soup For The Soul Entertainment, Inc.'s, ("CSSE"), bankruptcies.

3. According to the Judgment, Movant is liable to SMV and the other Creditors, jointly, for statutory damages under 17 U.S.C. §§ 504(c) and 1203(c)(3)(B) in the total aggregate amount of $14,850,000.00. In the Creditors' underlying complaint, they jointly, alleged Movant and others committed violations of the U.S. Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the "Copyright Act") and were liable to the Judgment Creditors, jointly, for alleged statutory damages, arguing against an empty chair (Culpepper subsequently admitted to never properly serving Movant, a foreign citizen and resident).

4. Creditors specifically allege each of the Judgment Creditors, including SMV, were properly joined as joint plaintiffs in the action, pursuant to Rule 20(a)(1) of the Federal Rules of Civil Procedure because the Creditors jointly asserted "a right to relief arising out of the same transaction, occurrence, or series of transactions" that also involves "common questions of law and fact." Rule 20(a)(1) allows multiple parties to "join in one action as plaintiffs," and although the District Court was able to grant judgment to "one or more plaintiffs according to their rights," the Creditors instead sought a collective judgment on behalf of all Judgment Creditors, jointly, for alleged statutory damages under the Copyright Act in the 2021 action Millennium Funding,

Inc. et al v. 1701 Management, LLC. et al, 21-cv-20862-BB, SDFL.

5.   Subsequently, on July 2, 2024, SMV filed for bankruptcy protection in the District of Delaware (the "D.DE"), case no. 24-11491 ("Bankruptcy Case"), under Chapter 11 of title 11 of the United States Code ("Code"). The Case was converted to a Chapter 7 on 11 July 2024 and Trustee Miller was appointed over the estate of SMV and CSSE and their undivided interest in the Judgment.

6.   In multiple actions including the instant matters, Culpepper's partnership concealed the pivotal role of financing and control PML exercises despite admitting after the conclusion of proceedings in SDFL that PML was *the* litigant behind all the claims. The partnership does not deny PML funds barratrous U.S. actions and profits from copyright trolling as a business, not enforcement, extracting revenue from alternative sources for movies that were otherwise failures. For these conflicts, repeated failures to disclose, a disreputable practice history mimicking Prenda Law's criminal scheme, tortured case practices, to protect the dignity of the Court and prevent benefits inuring to this Special Counsel (which remain undisclosed and concealed) – which benefits eclipse those reserved for the benefit of the estate – and overwhelming evidence proving Culpepper IP, LLLC is unfit, the Trustee's request should be denied and this Special Counsel disqualified. Multiple actual conflicts, failures to disclose multiple pecuniary interests, continuing automatic stay violations, and *failure to provide all information required* by the Code and Model Rules are starters. Just in SDFL, Culpepper and Rothman were sanctioned and ordered to repay over $260,000.00 in fees for similar abusive practices. They are not disinterested lawyers free of conflict or pecuniary interest and work to conceal a plethora of prohibited interests and potential liabilities. Their presence will expose to the estate to liabilities stemming from their practices and to its detriment (such as unenforceability of the underlying judgment, the Movant's own bankruptcy mooting the judgment, and forthcoming litigation against the estate, Culpepper, Rothman, and the remaining creditors for admittedly violating attorney client privilege and improperly employing proprietary information gained thereby).

**I. CulpepperIP, LLLC is conflicted, a Creditor, has pecuniary interest, is not disinterested.**

7.   In the instant matter, Trustee George Miller requests the court *retroactively* authorize his existing contract with Culpepper IP, LLLC as of 1 October 2024 in reliance on representations in Culpepper's unsworn affidavit. Culpepper requested retroactive approval to whitewash his continuing, contemptuous, proven automatic stay violations in which he and his "firm" continue

to engage. Culpepper and his "firm" are not disinterested parties but highly conflicted creditors with adverse pecuniary interests in the litigation that Culpepper has willfully concealed and in which he has defrauded multiple courts. Culpepper IP, LLC is not a "firm", he is a sole practitioner, despite referring to himself and his "firm" in his affidavit in the plural to mislead readers. He previously practiced patent law before partnering with PML in the Republic of Cyprus (cir. 2019) and began initiating federal copyright trolling claims to "legally" extort subscriber lists from ISPs, VPNs, and related U.S. IT infrastructure providers on behalf of and funded by foreign dark money through nominee directors in Cyprus. Despite holding himself forth as a "patent attorney", his primary business is not arms-length representation of clients' interests but a reprisal of the Prenda Law scheme. After conviction and imprisonment of Prenda's lawyers, Culpepper and co-counsel in Florida, Joel Rothman ("Rothman"), revised their respective corporate structures in concert with formation of PML to facilitate a copyright trolling mimicking Prenda's (using Cyprus instead of Nevis). Through underhanded "discovery" without a judge's authorization and/or premature discovery, they obtained IT providers' subscriber lists to send thousands of demand letters threatening those subscribers with "copyright infringement" litigation based on PML's "investigations" in Germany by MaverickEye, U.G. Their letters phished and demanded "settlements" lest they bring a federal jury trial. Culpepper's wife runs his office and makes calls to follow up on demand letters. A paralegal who returned her California law license years ago assist them working from home. Despite Culpepper's Affidavit plural references indicating "attorneys" occupy "the firm", it's his single shingle.

8.  PML is the pivotal party and partner behind (in every sense) Culpepper's administrations on behalf of his alleged "movie company" Creditors. He and Rothman concealed PML for years in SDFL to fraudulently obtain their unargued, default judgment after falsely telling the SDFL court scores of non-performing entities ("NPE") were "infringed" claimants. After conclusion of the SDFL's proceedings, Culpepper admitted the truth in Movant's 1ˢᵗ District BAP case, #23-00023, citing Culpepper's Motion to Dismiss, Doc. #57, ¶8 Culpepper states:

> "Muszynski seeks *to punish PML for petitioning the S. D. Flo.* to put a stop to his Liquid VPN service..." * (emphasis added).

PML was never once mentioned in the SDFL action despite thousands of record pages, yet it is admittedly, *the* litigant. Yet Culpepper disclosed partner PML in Doc. #1148362 in 1ˢᵗ Dist. BAP Appeal #23-23, pg.9, ¶2, stating (SRIPLaw is Rothman's law firm – which has associates):

"STATEMENT REGARDING INTERESTED PARTIES 1st Cir. BAP L.R. 8010-1(b)(4) The undersigned certifies that the following parties have an interest in the outcome of this appeal. These representations are made to enable the judges of the Panel to evaluate possible disqualification or recusal. **The Movants**, Kerry S. Culpepper, Culpepper IP, LLLC, SRIP Law, and **PML Process Management Limited**." (emphasis added)

Neither Culpepper nor Rothman revealed PML's presence to SDFL. Culpepper's admission of PML's hidden-hand primacy further was evidenced in another BAP action where he listed it as an interested party and on 28 November 2023, accepted service on PML's behalf in BAP case 23-00092, despite having willfully concealed PML's primacy from multiple courts for years.

9. PML is a non-lawyer, third-party litigation funding entity fronted by nominee "directors" tied to scores of other NPEs to mask its foreign sovereign funders operation of a barratry scheme as advertised on its website seeking U.S. lawyers as copyright trolling partners see screenshot:



https://processmanagement.global                                                        ⌂ ☆ )

**PML** Process Management Ltd.                                      HOME    LEGAL NOTICE

We have over ten years of experience in this field and provide seamless service delivery on behalf of our clients. We offer returns of 30% of net revenue (the rest is distributed to the partners working on the project, e.g. law firms and data supplier) in exchange for providing this service.

10. Besides Culpepper's scandalous history with PML and documented, unethical legal practices (premature discovery actions, discovery actions without judges' approval, "settlement" demands emailed to innocent ISP subscribers, running a barratry business), Culpepper IP, LLLC is a Creditor of the estate as the retroactive contract request acknowledges when citing prior fees he holds of SMV under lawyer's lien. However, Culpepper offered no accounting regarding how much of the fees (there is no accounting provided for the total of the fees wither) were allegedly SMV's versus the scores of his other joined creditors (non-performing entities – "NPE") with SMV. Culpepper also omits any mention that he wholly owns one of the joined entities, 42 Ventures, LLC, and his pro se participation among the partners. No accounting or legal determination exists nor was provided to apportion or determine each entity's estate claim(s).

11. Culpepper appears pro se in multiple of Movant's bankruptcy cases and fails to inform the Trustee of this too. In D. Puerto Rico, case# 23-02870, Culpepper argued regarding his interest in the judgment, held by scores of joined, indispensable parties, while his co-counsel, Rothman, unadmitted, filed papers without permission and years later, has yet to be approved.

12. PML is a non-lawyer, third-party litigation funding entity in the Republic of Cyprus that underwrites copyright trolling in the U.S. and fee-splits with Culpepper. The scheme jumps from

federal district to federal district after initiating discovery to obtain subscriber lists while avoiding litigation to prevent discovery of their sham. Like locusts consuming crops, when their scheme consumes a district's attention and risks exposure for what it is, they jump to fresh ground. Multiple districts have failed to make criminal referrals as was the case with Prenda Law, instead opting to award a tiny fraction of fees and costs to make the scammers go away; similar to an Army CO transferring his problem rather than fixing it – let the next guy do it.

13. Culpepper lists himself as a fact witness in Movant's bankruptcy proceedings (which include SMV) then twice volunteered before the E.D. Texas court as a fact witness in them:

a) Movie Creditors' Witness List, E.D. Texas, Case #23-90112, Doc. #74, p.2, ¶4:

*"4. Kerry S. Culpepper. Mr. Culpepper is counsel for movie creditors and appearing pro se."*

b) Volunteered as a fact witness in Case #23-02870, evidentiary hearing transcript, Doc. #134, p.48, l.23 – p.39, l.3:

```
23          THE COURT:  All right.  So no other witnesses.
24      Mr. Culpepper, do you have any other witnesses you plan
25  or intend to call?


          CINDY SUMNER, CSR (214) 802-7196
```

Case:23-02870-MCF7  Doc#:134  Filed:11/01/23  Entered:11/03/23 14:53:46  Desc:Main
                    Document      Page 49 of 92

```
1      You're still muted.
2              MR. CULPEPPER:  Yes, Your Honor, on one issue.
3  I want to call myself to introduce a document.
```

c) Again volunteered as fact witness, case #23-02870, evidentiary hearing transcript Doc. #134, p.65, l.19 – l.21:

```
19      Mr. Culpepper, any other witnesses?
20              MR. CULPEPPER:  Yes, Your Honor.  I'm ready to
21  call myself as a witness.
```

d) It is certain the ECC High Court in Nevis will call Culpepper as a witness to provide information that can't be obtained from any other party as reflected in its ruling #NEVHCV2022/0138 from 2022, a collection action continuing to this day, where from the bench, the Nevis Judge said Culpepper would be required to come to Nevis and testify in an extensive proceeding to justify how a foreign, statutory judgment could possibly be collected:

> presently before this Court is an application to set aside the freezing order. The ultimate trial of the Claimant's claim is for another day where no doubt Mr. Muszynski, Mr. Cox and Mr. Culpepper and perhaps others may be called as witnesses.

14. Culpepper has failed to provide evidence of authorized officers' signatures from his purported "movie company" Creditors waiving their rights under the joined judgment's claims to allow Culpepper to be employed on behalf of SMV's and CSSE's estates nor their consent to employ privileged information belonging to them to benefit the estates of SMV or CSSE.

15. Culpepper failed to comply with §327's continuing requirements to inform the Court of any conflicts his activities may encounter or update it regarding proceedings he continues yet never mentions the $15,000,000.00 judgment, instead his engagement and affidavit focus on finding a way for Culpepper to capture fees in his ILOTA account that belong to the estate.

16. Culpepper undeniably holds pecuniary interest in the judgment, profits from revenue splits his litigation extortion produces on behalf of PML's investors (including his sweat equity and significant degree of control over related NPEs), as was evidenced in SDFL's litigation that obtain subscriber lists in lieu of "settlements" from ISPs, as the lists are far more valuable than litigation settlements in that they will be used to extort millions from subscribers again, and again – just because Culpepper agrees to settle one subscriber's alleged movie "download" doesn't prevent him from harvesting scores of others at a later date, having identified a soft target…the returns his PML partners/investors financed and which Culpepper manages through "demand letters" after his unlicensed, German "investigator", MaverickEye, U.G.'s points a finger.

17. Culpepper wholly owns Creditor 42 Ventures, LLC, an NPE company he formed as a sham trademark claim to boost and facilitate "override claims" on top of extorted payments underlying the "movie company" NPEs claim as PML "settlements". After assembling his 41 litigant "movie company" NPEs, Culpepper named the "42 Ventures, LLC" as his trademark sham, indicating malice aforethought to "juice" his new Prenda scheme's settlements with a "kicker". After he and Rothman reprised Prenda's extortion using many of the same NPE "movie companies" after its lawyers went to prison, this time they used PML's Cyprus financing and jurisdictional obfuscation for concealment and denial.

18. Too, 42 Ventures, LLC is another of the joined Creditors of the estate, as is SMV. Culpepper and his partners' presence as "Special Counsel" unquestionably invites and exposes

the estate to litigation (forthcoming) for damages Culpepper created by extorting protected, attorney-client privileged information belonging to a trust, of which Movant is a beneficiary, evidence of which Culpepper filed in SDFL regarding his violations of multiple laws in New Zealand and the Federation of St. Christopher and Nevis that include criminal punishments and showing in SDFL, his doing so in cooperation with another Florida lawyer. Just as he illegally obtained Movant's private U.S. tax returns without court authorization, Culpepper illegally extorted foreign trust information from a foreign trustee by filing improper, baseless writs of garnishment against assets he knew unrelated to the fraudulent SDFL damages. As with his copyright trolling practice, he counted on threats for parties' capitulation when facing his vexation and falsehoods. Culpepper committed these crimes in concert with Rothman under cover of the SDFL litigation as both conspired to and did provably obtain attorney-client privileged information knowingly off limits yet sought to legitimize their crime by claiming it "attorneys' eyes only" information. See In re: Millennium Funding, Inc. v. 1701 Management, LLC, et al., Case #21-cv-20862-BB, Doc. #408, FLSD 02/13/2023, pg.1:

CASE NO.: 1:21-cv-20862-BB

MILLENNIUM FUNDING, INC., et al.,

Plaintiffs,

v.

1701 MANAGEMENT, LLC DBA
LIQUIDVPN, et al.,

Defendants.

**WRIT OF GARNISHMENT**

YOU ARE COMMANDED to summon the garnishee, Southpac Trust Nevis Limited, to serve an answer to this writ on KERRY CULPEPPER, plaintiffs' attorney, whose address is, 75-170 HUALALAI ROAD, SUITE B204, KAILUA KONA, HI 96740 within 20 days after service on the garnishee, exclusive of the day of service, and to file the original with

19. Engagement as "Special Counsel" rewards Culpepper at the expense of introducing new exposures and expenses the estate will have to bear. Further, doing so permits Culpepper to triple dip compensation by leveraging estate assets for his and his partners' benefit while exposing the estate to claims from joined NPE "movie company" creditors. Engaged since 1 October, nothing addresses: 1) how fee splits are assessed and netted against the continuing PML's revenues he and his wife harvest – and which he concealed from the Trustee - in addition to being calculated as contingencies of the estate; 2) how the engagement agreement, supported by Culpepper's *unsworn*, purportedly "truthful", affidavit remains glaringly silent as to how the estate's

contingency payment(s) will be calculated relative to PML's cut; 3) since his contract requires the estate reimburse expenses, how they are apportioned vs. expenses directly benefiting scores of joined, non-estate claimants (and PML); 4) how the estate subsidizes Culpepper's costs that also inure to the benefit of non-estate entities; 5) without showing of basis or proof of award for, or claim to legal fees, the estate agreed to be made liable for prior and continuing lawyer fees that, if actual, support his company's, his law firm's, and the joined creditor's benefit at the expense of the estate, and without an accounting; 6) Culpepper's wholly-owned company, 42 Ventures, LLC, a Creditor of the estate, and scores of other joined creditors are now directly subsidized through payments for expenses by CSSE's and SMV's estates.

20. Culpepper continues to conceal that, prior to his retroactive contract as "Special Counsel", he had already subcontracted two law firms and allegedly accumulated fees, for which he now holds the estate liable – Conde and Associates in San Juan, Puerto Rico and Rowe & Rowe, in Charlestown, Nevis. Culpepper provided no substantiation for fees he alleges, nor his hours, nor his expenses, nor his subcontracted firms' costs. Culpepper has continued to use both firms to contemptuously, continuously violate the automatic stay through collection activities, evidenced by his latest filing in Nevis, about 72 hours ago, see "Exhibit 1".

21. Culpepper's admissions in the Nevis filing are relevant to the instant matter, showing: a) Movant is a party of interest in the instant matter, b) it evidences Culpepper's flagrant continuing contempt of the automatic stay, per se, c) and admits to a host of facts proving his intent in filing resides with vexation and abuse, not adjudication – given Nevis does not honor foreign statutory judgments as a matter of public policy per.

22. In other filings and hearing statements, Culpepper evidences he is not an arms-length advocate appearing on behalf of clients but a player/participant motivated by pecuniary interests, a partner operating on behalf of his joined NPEs, the hidden hand of PML, and operates a barratrous scheme profiting from foreign-funded attacks on U.S. infrastructure companies. (see "Exhibit 2"). Culpepper and Rothman conceal their scheme's underpinnings by exiting litigation with any specter of discovery, having learned from Prenda Law's fate (see "Exhibits 3").

23. Significant actual conflicts of interest haunt the "Special Counsel". Culpepper's admitted, proven, continuing automatic stay violations required he insist on retroactive engagement to insulate his contempt while continuing in automatic stay violations predating his new status. His admitted automatic stay violations Movant brought before the 1st D. Puerto Rico Bankruptcy

Court ("DPR") were described by its Chief Judge as "more substantive and serious motions", see "Status Conference" transcript, Cas #23-02870, Doc. #177, p22, l.18; screen shot below:

```
18 || before we can get to the more substantive and serious motions.
```

24. Culpepper's duplicity is proven in papers he filed in *In re: Frontier Communications Corporation, et al.*, S.D.N.Y., Case #20-22476-mg, Doc. #2392, 12 July 24 where Culpepper claims he will honor the automatic stay for the benefit of SMV, CSSE, and the estate in other matters despite flagrantly, contemptuously, continuously violating the same affirmative duty in multiple other jurisdictions as Exhibit 1 proves versus the pledge over his signature below regarding respect for the court's automatic stay in the above-mentioned action:

> Pursuant to 11 U.S.C. § 362(a), an automatic stay ("Automatic Stay") applicable to all
> Debtors is imposed upon the filing of the Bankruptcy Case on June 29, 2024, and prohibits any
> party from taking any action against any Debtor or its property.

> Dated: July 12, 2024                    Respectfully submitted,

>                                By:   */s/ Kerry S. Culpepper*
>                                      Kerry S. Culpepper (admitted *pro hac vice*)
>                                      CULPEPPER IP, LLLC

And in the SDFL action, case # 21-cv-20862-BB, Doc. #586, 29 November 2024, screenshot:

> Plaintiffs' counsels are unable to take any actions on behalf of SMV until the Chapter 7 Trustee
> formally approves them as special litigation counsel or ordinary course counsel.

> DATED: Nov. 25, 2024                    Respectfully submitted,

>                                      */s/ Joel B. Rothman*
>                                      JOEL B. ROTHMAN
>                                      Florida Bar No. 98220

25. In forthcoming litigation, alleged "movie company" creditors will be subject to discovery and required to disgorge proof for claims of "ownership" and the details of structures renting rights as basis for "copyrights" claims, their foreign third-party investors' hidden funding, their German investigators (with criminal backgrounds) "tracking" software, the partner/lawyers' involvement and "setup" of litigation resulting in the SDFL action, what payments go to whom (certainly not the estate) after thousands of "settlement" demand letters harvest payoffs, and which alleged successors in interest are involved as fronts for their admitted principal litigant, PML. Intermingling the estate further in these claims and engaging a conflicted, adverse, highly interested "Special Counsel" risks further liability, cost, and embroilment in a tortured aftermath

created by Culpepper's vexatious lawfare and copyright trolling barratry; an odd choice for a U.S. Bankruptcy Court – why would a court qualify a "Special Counsel" and contribute to and subsidize his barratry, foreign dark money finance, trolling of U.S. citizens for "settlements", and abusive pursuit of uncollectable claims?

26. In accordance with applicable law, any action to collect or enforce the Judgment by or on behalf of any of the Judgment Creditors, without the participation of the Trustee after approval of the Court (except in extraordinary circumstances) in SMV's Bankruptcy Case is void ab initio and subject parties to sanctions for violation of the automatic stay of 11 U.S.C. § 362 (the "Automatic Stay") in SMV's Bankruptcy Case.  Furthermore, the Bankruptcy Court has exclusive jurisdiction to determine unequivocally that the judgment is property of the bankruptcy estate under U.S. law, jurisdiction to determine matters concerning the estate, and that any enforcement actions taken in Nevis violate the automatic stay and are therefore void.

## II. Culpepper's partnerships, Judgment joinder, actual conflicts, and pecuniary interests.

27. As the Trustee's request is largely based in §327(e), it will be addressed specifically. "A party holds an interest adverse to the estate if it possesses or asserts an economic interest that would lessen the value of the bankruptcy estate or create an actual or potential dispute between the party and the estate. Blumenthal v. Myers (In re M&M Marketing, LLC), 426 B.R. 796, 802 (B.A.P. 8th Cir. 2010). An attorney represents an adverse interest if its client holds any such interest.

28. Section 327(e) permits employment of an attorney who has previously represented the debtor for a specified special purpose. the so-called "special counsel" if it is in the best interest of the estate and the special counsel "does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter for which such attorney is to be employed." 11 U.S.C. § 327(e). "[A]n `adverse interest' has been described in pragmatic terms as the `possess[ion] or assert[ion] [of] mutually exclusive claims to the same economic interest, thus creating an actual or potential dispute between rival claimants as to which . . . of them the disputed right or title to the interest in question attaches under the valid and applicable law; or (2) [the possession of] a predisposition or interest under circumstances that render such a bias in favor of or against one of the entities." *Rome v. Braunstein*, 19 F.3d 54, 58 n. 1 (1st Cir. 1994). quoting *In re Roberts*, 46 B.R. 815, 826-27 (Bankr D. Utah 1985). Whether the contingent fee arrangement and the Settlement Agreement have created the type of predisposition or interest that rise to the level of

an adverse interest will be left for another day. But the Court notes that the firm's failure to disclose the arrangement from the beginning of these cases only exacerbates the Court's concern.

29. A professional whose services may be vital to the debtor's reorganization effort, but who is not "disinterested" and eligible for employment under § 327 (a), cannot circumvent that requirement by trying to characterize the employment as "special counsel" under § 327 (e). - in *In re Running Horse, LLC*, 2007 and 3 similar citations.

30. In order to employ counsel under § 327 (e), the trustee—in this case the Debtor, as the debtor in possession—must also show that the proposed employment is in the "best interest of the estate." 11 USC § 327 (e). - in *In re Johnson*, 2010 and 3 similar citations.

31. The applicant seeking to employ special counsel has the burden of proof to show that employment is proper. - in *IN RE SILVER LION, INC.*, 2010 and one similar citation.

32. To hold an adverse interest is to:(1) possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) possess a predisposition under circumstances that render such a bias against the estate. - in *In re Kuykendahl Place Associates, Ltd.*, 1989 and 137 similar citations.

33. A law firm is deemed to hold an interest adverse to the estate when it "possess [es] a predisposition under circumstances that render such a bias against the estate." - in *In re Adam Furniture Industries, Inc.*, 1993 and More generally, it includes any interest or relationship, however slight, `that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules.'" - in *In re Keller Financial Services of Florida, Inc.*, 1999 and 13 similar citations.

34. The burden is on the person to be employed to come forward and make full, candid, and complete disclosure - in *In re Nunez*, 2019 and 11 similar citations.

35. The professional seeking to be retained must make "full, complete, and timely disclosure" of all of the professional's connections to the debtor, creditors and any other party in interest. - in *In re Vascular Access Centers, LP*, 2020 and 5 similar citations.

36. Denying an application to appoint special counsel under § 327(e) because the scope of the proposed employment was "far too expansive" to be considered appropriate under § 327(e) - *in Asher v. COOK AND SONS MINING, INC.*, 2021 and one similar citation.

37. Section 327(a) authorizes a trustee to employ as general counsel an attorney who is a "disinterested person" and does not hold or represent an interest adverse to the bankruptcy estate. 11 U.S.C. § 327(a). Section 327(e), on the other hand, authorizes a trustee to employ as "special counsel" an attorney who is ineligible for employment under § 327(a). Section 327(e) provides:

> "The trustee, with the court's approval, may employ, for a special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the case, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed."

38. In *In re Potter*, 2009 WL 2922850, at *1 (Bankr. D.N.M. 2009), the court set out four requirements for § 327(e) employment:

> 1) the proposed special counsel must have represented the debtor previously;
> 2) the proposed special counsel must be employed by the trustee only for a limited, special purpose;
> 3) the proposed representation must be in the best interest of the estate; and
> 4) there must be no conflict with the debtor or the estate arising from the matter(s) for which the trustee seeks to engage special counsel.

2009 WL 2922850, at *1. See also *In re Running Horse, LLC*, 371 B.R. 446, 451 (Bankr. E.D. Cal. 2007) (articulating the same requirements, except for the previous representation of the debtor). With respect to the "no conflict" requirement, some courts have been unwilling to approve § 327(e) employment if the proposed retention would violate state law rules of professional conduct. See e.g. *In re Neuman*, 138 B.R. 683, 687 (S.D.N.Y. 1992) (citing *In re Bohack Corp.*, 607 F.2d 258 (2d Cir. 1979), the bankruptcy court held that employment under 327(e) should not be approved if it would violate the attorney's "more general obligation to decline representation where there is a prohibited conflict of interest").

39. Here, parties agree one of four required elements is satisfied – the lawyer represented the debtor in the past. Three required elements are absent: whether representation is in the best interest of the estate, the lawyer was court approved, and the lawyer does not represent or hold interest adverse to the debtor or the debtor's estate, remains for the Court's determination.

40. The Third Circuit instructs, "the attorney's employment must be in the best interest of the estate, which means property of estate is threatened and the need for services is real. Employment cannot be based on some `hypothetical or speculative benefit.'" *In re Engel*, 124 F.3d 567, 575 (3d Cir. 1997) (citing *In re Duque*, 48 B.R. 965 (D.C. Fla. 1984)). In addition, the

Third Circuit notes that special counsel must provide a benefit to the estate, not merely a benefit to the debtor. Id.

41. If the estate continues to employ Culpepper, so too does it expose itself to costs and fees when the Nevis trial concludes which will exceed $50,000.00 USD. Culpepper's latest litigation, filed without the court's authorization, another automatic stay violation, asks for costs and fees for his sub-contracted law firm. Too, Culpepper is attempting to play U.S. courts against the foreign court to enable him to sue movant here while preventing him from defending against claims from SMV that will, nonetheless, never be recognized by Nevis due to public policy. Culpepper is not interested in adjudication but abusive vexation to extort a "settlement" through endless litigation (which will never happen), per se bad faith; Culpepper's Nevis lies and claims he is approved to proceed. Not only does Culpepper fail under §327(a), he fails three of four requirements under §327(e).

42. Culpepper's "Special Counsel" request and affidavit willfully ignores and fails to provide the Trustee with the tortured case history of his joined litigants, including his own entities.

43. Under bankruptcy law, the commencement of a bankruptcy case creates an estate that includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This broad definition encompasses a wide range of property types, including causes of action and judgments obtained prior to the filing of the bankruptcy petition. In *United States v. Whiting Pools, Inc.*, the Supreme Court emphasized the expansive scope of § 541(a)(1), noting that the bankruptcy estate includes "all kinds of property, including tangible or intangible property, causes of action, and all other forms of property." 462 U.S. 198, 205 n.9 (1983). The United States Court of Appeals for the Sixth Circuit has similarly recognized that pre-bankruptcy causes of action are property of the bankruptcy estate. In *Parker v. Goodman* (*In re Parker*), the court held that "causes of action that belong to the debtor constitute property of the estate under § 541(a)(1)." 499 F.3d 616, 624 (6th Cir. 2007). This means that any legal claims or judgments held by the debtor at the time of the bankruptcy filing become assets of the estate. Further, in *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, the court stated that "property of the estate… includes 'all legal or equitable interests of the debtor in property as of the commencement of the case,' including causes of action possessed by the debtor at the time of filing" (429 B.R. 423, 430 (Bankr. S.D.N.Y. 2010)). "Where a cause of action belonging to the

debtor has been merged into judgment prior to bankruptcy, the estate succeeds to all rights under such judgment." *Reed v. City of Arlington*, 650 F.3d 571, 575 (5th Cir. 2011).

44. In addition, only the bankruptcy trustee can assert claims or interests that belong to the debtor's bankruptcy estate. "It is axiomatic that the trustee has the right to bring any action in which the debtor has an interest . . . ." *Koch Ref. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1348 (7th Cir. 1987). Furthermore, this right is exclusive to the bankruptcy trustee, who has "exclusive standing" to assert causes of action belonging to the estate. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 429 B.R. 423, 430 (Bankr. S.D.N.Y. 2010) (citing *McHale v. Alvarez (In re The 1031 Tax Group, LLC)*, 397 B.R. 670, 679 (Bankr. S.D.N.Y. 2008) (quoting *Goldin v. PrimaveraFamilienstiftung, Tag Assocs., Ltd. (In re Granite Partners, L.P.)*, 194 B.R. 318, 324-25 (Bankr. S.D.N.Y. 1996)). This exclusivity prevents third parties from independently enforcing judgments that belong, in whole or in part, to the bankruptcy estate. Courts have recognized that allowing third parties to proceed independently can undermine the trustee's efforts and the equitable distribution of assets. In *Stevenson v. J.C. Bradford & Co. (In re Cannon)*, the Sixth Circuit held that a Chapter 7 trustee has the exclusive right to assert causes of action belonging to the debtor. 277 F.3d 838, 853 (6th Cir. 2002). In *Fisher v. Apostolou*, the Seventh Circuit held that creditors must "wait their turn behind the trustee" and cannot pursue separate actions that would affect estate property. 155 F.3d 876, 879 (7th Cir. 1998).

45. Accordingly, SMV's interest in the Judgment is part of the bankruptcy estate in SMV's Bankruptcy Case, even though the Judgment is held jointly with the non-bankrupt Judgment Creditors. Any action taken by one or more of the Judgment Creditors to enforce or collect the Judgment in Nevis without participation from the Chapter 7 trustee will risk interference with the trustee's administration of estate property and a potential violation of the automatic stay, to the extent that SMV's interest in the Judgment—which is held jointly and not severally with the other Judgment Creditors—constitutes property of the bankruptcy estate in SMV's Bankruptcy Case. The Special Counsel owns the creditor entity 42 Ventures, LLC and continues collections.

46. The question of whether and to what extent SMV's interest in the Judgment constitutes "property of the estate" under the Bankruptcy Code "is an issue of federal law." *Fisher v. Apostolou*, 155 F.3d 876, 880 (7th Cir. 1998). According to applicable United States law, the Bankruptcy Court has "exclusive jurisdiction . . . of all of the property, wherever located, of the debtor as of the commencement of the [bankruptcy] case, and of property of the estate." 28

U.S.C. § 1334(e)(1). "[T]he Bankruptcy Court is the only court with subject matter jurisdiction to determine whether [] claims are property of the bankruptcy estate," and it does not have discretion to defer ruling on the Trustee's standing to another court. *Hafen v. Adams (In re Hafen)*, 616 B.R. 570, 578-79 (B.A.P. 10th Cir. 2020); *In re Sticky Holsters, Inc.*, 2024 WL 3359368 (Bankr. M.D. Fla. July 10, 2024).

47. SMV's interest in the Judgment held jointly and not severally with the other Judgment Creditors and none of the Joint Creditors may enforce the Judgment without negatively impacting the Trustee's rights and interests in the Judgment, which are property of the estate and protected by the automatic stay. Because the Judgment Creditors as a joint group hold and own the Judgment, and none of them individually own a separate or several interest in the Judgment, any recovery by one of the Judgment Creditors without the participation of the Trustee would result in a depreciation of value in SMV's interest in the Judgment, both in terms of amount owing to SMV's bankruptcy estate from the Judgment debtors and in terms of amount available for recovery from the Judgment debtors.

48. Even if the Trustee consented to or requested Culpepper or another attorney enforce the Judgment on behalf of the Judgment Creditors, applicable United States bankruptcy law requires that any attorney or professional seeking to act on behalf of the Trustee or SMV's bankruptcy estate must first obtain approval from the Court and fully disclose compensation arrangements. *See* 11 U.S.C. §§ 327, 329 and 330, and Fed. R. Bankr. P. 2016(b). Compliance with these statutory requirements is mandatory to uphold the integrity of the bankruptcy process and to ensure that attorneys acting on behalf of the bankruptcy estate are doing so in the best interests of the estate and its creditors and that any compensation is subject to bankruptcy court oversight.

49. The Court in SMV's case has exclusive jurisdiction to determine whether and to what extent the Judgment is property of the estate over which the Trustee has exclusive jurisdiction to enforce. A non-bankruptcy court does not have jurisdiction to determine whether and to what extent SMV's joint interest in the Judgment is property of the estate in SMV's Bankruptcy, including whether any of the Judgment Creditors have the right to enforce the Judgment apart from the Trustee. Even so, the Bankruptcy Court must first approve the engagement and compensation of any attorney or professional that acts on behalf of SMV's interest in the Judgment.

50. The automatic stay is a fundamental protection in bankruptcy that halts all collection

activities against the debtor and preserves the estate's property. The filing of a bankruptcy petition operates as an automatic stay applicable to "all entities" regarding any act to obtain possession of, or exercise control over, property of the estate. 11 U.S.C. § 362(a). According to the U. S. Supreme Court, "[b]ankruptcy courts have exclusive jurisdiction over a debtor's property, wherever located, and over the estate." *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 447, 124 S. Ct. 1905, 158 L. Ed. 2d 764 (2004) (citing 28 U.S.C. § 1334(e)).

51. Courts have recognized that violations of the automatic stay are void *ab initio*. In *United States v. White*, the Eleventh Circuit Court of Appeals held that "[a]ctions taken in violation of the automatic stay are void and without effect." 466 F.3d 1241, 1244 (11th Cir. 2006); *see also FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 137 (2d Cir. 1992) ("actions taken in violation of the stay are void and without effect").

52. Furthermore, the automatic stay not only halts actions directly against the bankrupt debtor but also extends to actions against third parties when those actions affect the bankruptcy estate. In *Queenie, Ltd. v. Nygard Int'l*, the Second Circuit Court of Appeals held that the automatic stay can apply to non-debtor parties when a claim against them would have an immediate adverse economic impact on the debtor's estate. 321 F.3d 282, 287 (2d Cir. 2003). In *In re Enyedi*, for example, the court held that dismissal of a bankrupt debtor's lawsuit was a violation of the automatic stay because the dismissal order constituted an exercise of control over property of the estate. 371 B.R. 327, 331-32 (Bankr. N.D. Ill. 2007).

53. In bankruptcy proceedings, debtors are required to disclose all assets, including legal claims and judgments, in their bankruptcy schedules. However, even if a debtor fails to schedule a judgment, that judgment remains property of the bankruptcy estate unless it is administered or abandoned by the trustee. Under 11 U.S.C. § 554(d), "property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate." This provision ensures that all assets, whether scheduled or not, are preserved for the benefit of the bankruptcy estate until properly disclosed and disposed of through the bankruptcy process.

54. In *In re Muhlig*, the debtor failed to disclose a prepetition wrongful death lawsuit in his bankruptcy schedules. 494 B.R. 755, 760 (Bankr. S.D. Fla. 2013). After the bankruptcy case was closed, the defendants in the wrongful death action obtained a judgment dismissing the case without notifying the trustee. The court in *Muhlig* held that the unscheduled lawsuit remained property of the estate under Section 554(d) of the Bankruptcy Code and that the automatic stay

continued to apply to the lawsuit even after the bankruptcy case was closed. Consequently, the defendants' actions violated the automatic stay, and the judgment was declared void ab initio. Similarly, in *In re Enyedi*, the debtor did not schedule a prepetition personal injury claim, and the bankruptcy case was closed as a no-asset case (371 B.R. 327, 329-30 (Bankr. N.D. Ill. 2007)). After the case was reopened upon discovery of the unscheduled asset, the court held that the personal injury claim remained property of the estate and that the automatic stay had remained in effect. The defendants' actions in seeking dismissal of the claim without notifying the trustee were found to violate the automatic stay, rendering the dismissal void.

55. These cases illustrate that unscheduled assets are not removed from the bankruptcy estate simply because they were not disclosed. In this case, the Judgment is not disclosed on SMV's bankruptcy schedules and will remain property of SMV's bankruptcy estate unless and until they are properly scheduled and abandoned by the Trustee, even if the SMV Bankruptcy Case is later closed. For as long as the Judgment remains an unscheduled asset of SMV's bankruptcy estate, the Trustee retains the exclusive right to administer SMV's interest in the Judgment, and the automatic stay continues to protect SMV's interest in the Judgment.

56. Accordingly, SMV's interest in the Judgment against Movant is property of the estate in SMV's Bankruptcy Case and the Trustee has exclusive authority to enforce SMV's joint and not several interest in the Judgment. To the extent that there are any questions or disputes as to what extent the Judgment constitutes property of the estate and any action to enforce the Judgment would violate the automatic stay (given that the Trustee has succeeded to SMV's joint interest in the Judgment), the Bankruptcy Court in SMV's Bankruptcy Case has exclusive jurisdiction to decide those questions. Furthermore, the automatic stay's global reach prohibits actions on the Judgment even outside of the United States, rendering any action on the Judgment in a Nevis court a violation of the automatic stay and therefore void and without effect.

57. Given these legal conclusions, Movant informed the Nevis court it should refrain from any action to enforce the Judgment against him as any enforcement actions must be coordinated through the Chapter 7 Trustee and subject to approval of the Court in the SMV Bankruptcy.

## III. DISCUSSION

58. Counsel for a bankruptcy trustee must show benefit to the estate besides proving the disinterestedness of any proposed professional the trustee seeks to engage on behalf of the estate. Case law is clear:

"Section 327(a) provides that court approval is necessary before a trustee can retain counsel. While the test of the disinterestedness of the attorney is one consideration for the court in determining whether to approve a trustee's choice of attorney, <u>nowhere in the statute is the court's discretion limited to determinations of disinterestedness</u>. Indeed, the purpose of §327 is: 'to insure in advance both that the person's employment is necessary to the estate and that the person employed is disinterested and able to serve the best interests of the estate.'" *In re Kurtzman*, 220 B.R. 538, 541–42 (S.D.N.Y. 1998) (quoting *In re That's Entertainment Marketing Group, Inc.*, 168 B.R. 226, 229 (N.D.Cal.1994)).

"By its very nature, the 'best interest of the estate' under §327(d) is a concept that affords the court considerable discretion in making evaluations and comparisons regarding the performance of counsel. In light of this discretion, the Court below was entitled to rely on its own first-hand observations and, based on those observations, to draw its own conclusions regarding professional performance. Here, the presiding judge was in a unique position to observe the conduct of counsel over a significant period of time, and to compare counsel's performance with that of other attorneys performing similar work. The Court articulated and specified its concerns, which admittedly were of a conclusory nature, and afforded Appellant an opportunity to respond. Since the 'right' that Appellant seeks to vindicate rests in the final analysis with the discretion of the Court, we cannot conclude that the hearing afforded Appellant failed to meet constitutional standards." *In re Kurtzman*, 220 B.R. 538, 541 (S.D.N.Y. 1998).

59. Accordingly, "disinterestedness need not be the exclusive test when evaluating the propriety of an attorney's retention." *In re Vebeliunas*, 231 B.R. 181, 194 (Bankr. S.D.N.Y. 1999). One court applied this rationale to find that the proposed attorney was "ill-suited to serve as the trustee's counsel because of his expressed prejudice against the debtor." *In re Vebeliunas*, 231 B.R. 181, 195 (Bankr. S.D.N.Y. 1999).

60. Therefore, for a bankruptcy trustee's choice of lawyer to be successfully employed, counsel must not only be disinterested, but his employment must serve the best interests of the estate. If the trustee's lawyer would not benefit the bankruptcy estate, most notably its creditors, an objection to the employment is proper, as is the case here, *Attorney Retention and Disqualification in Bankruptcy, 4 ST. JOHN'S BANKR. RESEARCH LIBR. NO. 26 (2012).*

61. Lawyers must abide by standards of their states' ethical code adapted from ABA's Model Rules of Professional Conduct ("Model Rules").[1] In bankruptcy, they must abide by section 327 of the U.S. Bankruptcy Code ("Code"), which only permits retention of "disinterested" parties.[2]

---

[1] STEPHEN GILLERS ET. AL., REGULATION OF LAWYERS: STATUTES AND STANDARDS

[2] (Aspen Publishers 2010). 3 See 11 U.S.C. § 327(a) (2006).

If a lawyer does not meet the standards, a presiding court must disqualify him. The Model Rules and the Code, applied together in bankruptcy, determine if a lawyer must be disqualified.[4] Although some overlap and incongruity exists, their intent is parallel.[5]

A. Model Rules

62. The Model Rules are a national standard for consideration of disqualification motions and Courts apply them with a state's ethical code.[9] Three Model Rules are relevant to retention of lawyers and disqualification: Rules 1.7, 1.9, and 3.7.

63. Model Rule 1.7 addresses conflicts of interest among current clients and prohibits a lawyer serving in a representation involving a concurrent conflict of interest.[10] A concurrent conflict exists in two circumstances: a) where representation of two clients would be directly adverse or b) where there is a "significant risk" the lawyer's representation of a client would be "materially limited" by the lawyer's personal interest or the attorney's responsibilities to a current or former client or another third person.[11] This assumes the lawyer's representation is competent, applicable law permits representation, the clients are not directly asserting claims against one another, and all clients consent to the representation in writing.[12]

64. Model Rule 1.9 addresses duties a lawyer owes to former clients and prevents lawyers from representing a new client if the representation creates a conflict of interest with a former client. The lawyer is barred from the representation if the new client and the former client's interests are materially adverse and if their matters are either the same or substantially related to one another.[13] Similarly, Rule 1.9 prohibits a lawyer from knowingly representing a client with materially adverse interests to a former client that the attorney represented or received privileged

65. Model Rule 3.7 stops a lawyer acting as both an advocate for a client and a necessary witness in the same trial.[16]

---

[3] See Lois R. Lupica, Business Bankruptcy Practice, Sophisticated Clients and Rules of Professional Conduct, 30 AM. BANKR. INST. J. 1, 66 (2011).
[4] See ABA, Status of State Review of Professional Conduct Rules (2011): www.american bar.org /content/dam/aba/migrated/cpr/pic/ethics_2000_status_chart.authche ckdam.pdf.
[5] See In re ProEducation Int'l, Inc., 587 F.3d 296, 299 (5th Cir. 2009).
[6] MODEL RULES OF PROF'L CONDUCT R. 1.7(a) (2009).
[7] MODEL RULES OF PROF'L CONDUCT R. 1.7(a).
[8] MODEL RULES OF PROF'L CONDUCT R. 1.7(b).
[9] MODEL RULES OF PROF'L CONDUCT R. 1.9(a) (2009).
[10] MODEL RULES OF PROF'L CONDUCT R. 3.7(a) (2009).

It is possible conflicts can be resolved if a former client(s) consents in writing to the new representation.[11] The rule prevents prejudice to the opposing party where the factfinder may be confused over the weight that should be given to the attorney's testimony.[12] Disqualification under Rule 3.7, requires a movant establish that the lawyer's testimony is both required and substantially adverse to the attorney's client's interests.[13] Some courts follow a three-part test to determine if a lawyer's testimony warrants disqualification: the testimony must be relevant, material, and unobtainable elsewhere.[14]

   B.  Code's "Disinterestedness" Requirement

66. Lawyers retained in bankruptcy proceedings must meet Code requirements under §327.[15] Section 327 permits a trustee or a debtor in possession ("DIP") to hire professional persons to represent or assist the trustee or DIP in their duties.[16] However, *the court must approve the attorney's retention* and, if approved, a continuing obligation to comply with §327's requirements for the duration of the case exists.[17] The court retains power and discretion to review the lawyer's compliance with statute throughout the proceeding.[18] Only lawyers proven without a conflict of interest under the statute's two-pronged test can be approved: a) first, a lawyer must "not hold or represent an interest adverse to the estate."[19] and, b) second, a lawyer must be a "disinterested person[]."[20]

67. Under §327's first prong, a lawyer must not have or represent an adverse interest to the

---

[11] MODEL RULES OF PROF'L CONDUCT R. 1.9.
[12] MODEL RULES OF PROF'L CONDUCT R. 3.7 cmt. 2.
[13] In re Duke Invs., Ltd., 454 B.R. 414, 422–26 (Bankr. S.D. Tex. 2011).
[14] In re Demois, No. 06-02024-DRD, 2006 WL 1168674, at *2 (Bankr. W.D. Mo. Apr. 27, 2006). See also Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell, 239 F. Supp. 2d 1170, 1173 (D. Colo. 2003).
[15] 11 U.S.C. § 327 (2006).
[16] Id. § 327(a).
[17] 11 U.S.C. § 328(c) (2006). See also In re Vebeliunas, 231 B.R. 181, 187 (Bankr. S.D.N.Y. 1999).
[18] In re Vebeliunas, 231 B.R. at 187. See also Rome v. Braunstein, 19 F.3d 54, 58–59 (1st Cir. 1994) (stating court can disqualify attorney for conflict of interest once relevant information is discovered).
[19] 11 U.S.C. § 327(a).
[20] Id.

estate. Many courts apply the standard[21] set forth in *In re Roberts.* First, courts distinguish between an "adverse interest" under §327 versus only a potential conflict of interest.[22] If an actual conflict exists, the lawyer must be disqualified.[23] If a lawyer has potential conflict, a court has discretion whether to grant disqualification.[24] There is a general presumption against approving a lawyer with a potential conflict even if the reasons for employing the [attorney] . . . are particularly compelling."[25] This presumption exists to prevent future prejudice to the lawyer's party and, where the potential conflict is likely to become an actual conflict, the court's early disqualification of a lawyer saves the parties costs and delays in obtaining new counsel when disqualification becomes required. Second, an appointed lawyer must be a "disinterested person" to avoid disqualification. "Disinterested person" is defined under §101(14)(C) of the Code as someone lacking an interest materially adverse to the interests of the estate, equity security holders, or any class of creditors.[26] To:

> "hold an interest adverse to the estate" means (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.[27]

A materially adverse interest arises from any relationship or connection with the debtor.[28] The "disinterested" standard is about exclusion more than inclusion. The statute lists several parties that can per se never be disinterested and must be disqualified. Statutory per se categories include: creditors, equity security holders, insiders, and anyone who within two years prior to filing of the bankruptcy petition served as the debtor's director, officer, or employee.[29]

---

[21] See, e.g., In re AFI Holding, Inc., 530 F.3d 832, 845 (9th Cir. 2008); In re West Delta Oil Co., 432 F. 3d 347, 356 (5th Cir. 2005); In re AroChem Corp., 176 F.3d 610, 623 (2d Cir. 1999); Rome, 19 F.3d at 58 n.1 (1st Cir. 1994).

[22] In re Roberts, 46 B.R. 815, 827 (Bankr. D. Utah 1985), aff'd, 75 B.R. 402 (D. Utah 1987).

[23] In re Marvel Entm't Group, Inc., 140 F.3d 463, 477 (3d Cir. 1998).

[24] Id. at 476.

[25] Id.

[26] In re BH & P, Inc., 103 B.R. 556, 566 (Bankr. D.N.J. 1989).

[27] Id.

[28] 11 U.S.C. § 101(14)(C) (2006).

[29] Id.

[30] See 11 U.S.C. § 101(14)(A); 11 U.S.C. § 101(14)(B).

The per se categories identify interested persons disqualified from participation. One goes beyond statute text requiring disqualification, where lawyers are disqualified when present as a creditor for attorney's fees or any other debt owed to the lawyer by the estate amassed before the bankruptcy.[31] Another basis for disqualification stems from "control" exercised by the lawyer over the entity.

68. In addition to presence of an actual conflict of interest, §327(c) also requires an objection by another creditor or the United States Trustee.[32] Since the court is barred from granting disqualification due to an attorney's previous employment absent an actual conflict of interest, the precise definition of "employment" is rarely, if ever, at issue. Both prongs of the Code's test contain similar language relating to the disqualified attorney's "adverse interest."

69. Under §327(a), a lawyer participating in a bankruptcy proceeding shall not hold or represent an "interest adverse" to the estate and, under §101(14)(C), a disinterested person must lack an "interest materially adverse" to the estate or any class of creditors or equity security holders.[33] While some courts deem that this overlap creates "one hallmark" to evaluate attorney retention,[34] other courts recognize the standalone "adverse interest" language under section §327(a) as a more restrictive prohibition.[35] Under Code §101(14), a "disinterested person" is one "that: a) is not a creditor, an equity security holder, or an insider; b) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor; and c) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."[36]

70. Courts carefully consider motions to disqualify because judges know that these motions

---

[31] In re Martin, 817 F.2d 175, 180 (1st Cir. 1987).

[32] 11 U.S.C. § 327(c). See also In re Blue Coal Corp., 152 B.R. 710, 714 (Bankr. M.D. Pa. 1993).

[33] See In re Martin, 817 F.2d at 180; In re White Glove, Inc., No. 98–12493DWS, 1998 WL 226781, at *2 (Bankr. E.D. Pa. Apr. 29, 1998).

[34] In re Martin, 817 F.2d at 180 (recognizing, however, the existence of both "easy to spot situations" and more ambiguous areas that cannot be easily categorized); In re Vebeliunas, 231 B.R. 181, 189 (Bankr. S.D.N.Y. 1999).

[35] In re White Glove, 1998 WL 226781, at *2.

[36] See *In re Miller*, Nos. CO-10-073, 10-25453, 2011 WL 1807015, slip op. at *6 (B.A.P. 10th Cir. May 12, 2011), rev'd on other grounds No. 11-1232, 2012 WL 286865 (10th Cir. 2012); Sec.

Investor Prot. Corp., 246 B.R. 582, 587 (Bankr. N.D. Ill. 2000); Leaseamerican Corp. v. Stewart, 876 P.2d 184, 191 (Kan. Ct. App. 1994).

may be brought as tactical maneuvers to disadvantage the opposing party. Even when a motion to disqualify is not used as a tactical maneuver, courts are especially sensitive to prejudice that will befall a disqualified attorney's party, who is charged with the responsibility to find new counsel before the action can proceed. Courts also face a particular challenge when weighing potential conflicts of interest, which requires the courts to balance deference to the party's choice of counsel against the risk that the potential conflict could develop into an actual conflict of interest.[37] If the court denies a lawyer's disqualification and an actual conflict of interest later develops, then the party will suffer the prejudice the court originally sought to avoid. In the instant matter, the conflicts are actual.

71. Another consideration for lawyers is how the relevant provisions interact when they are applied. Rules 1.7 and 1.9 are closely related, especially when it is unclear whether the lawyer-client relationship is ongoing or was previously concluded.[38] Assuming the lawyer otherwise capable of representing the client, both rules allow affected clients to waive a concurrent conflict of interest through informed, written consent.[39] Under the Model Rules, informed consent requires full disclosure to the parties of "the material risks and reasonably available alternatives" to the attorney's proposed course of action.[40] The Code is more restrictive and waiving an actual conflict of interest is not permitted because consent cannot overcome §327's statutory requirements.[41]

72. The Code overlaps with Rule 1.7, providing that disqualification can only be granted if an actual, concurrent conflict of interest exists between clients.[42] However, Model Rules reflect a

---

[37] See In re S.S. Retail Stores Corp., 211 B.R. 699, 701 (B.A.P. 9th Cir. 1997); In re Creative Restaurant Mgmt., 139 B.R. 902, 909 (Bankr. W.D. Mo. 1992).

[38] See In re Meridian Auto. Syss.-Compcsite Operations, Inc., 340 B.R. 740, 744–45 (Bank. D. Del. 2006) (indicating Rule 1.7 was inapplicable because representation ended two months before attorney accepted representation of new client).

[39] MODEL RULES OF PROF'L CONDUCT R. 1.7(a)(4) (2009); MODEL RULES OF PROF'L CONDUCT R. 1.9(a), (b) (2009). See also MODEL RULES OF PROF'L CONDUCT R. 1.0(e) (2009) (providing the definition for "informed consent").

[40] MODEL RULES OF PROF'L CONDUCT R. 1.0(e)

[41] See In re Diamond Mortgage Corp. of Illinois, 135 B.R. 78, 90 (Bankr. N.D. Ill. 1990) (stating the Code does not permit concurrent client conflict waiver where an attorney represents both the

debtor and a creditor in an action). See also In re Project Orange Assocs, LLC, 431 B.R. 363, 374–75 (Bankr. S.D.N.Y. 2010).
[42] In re Adam Furniture Indus., Inc., 191 B.R. 249, 260 (Bankr. S.D. Ga. 1996).
traditional adversarial model, one plaintiff and one defendant with relatively static roles.[43] In contrast, parties' positions and relationships in bankruptcy constantly shift.[44] Therefore applying Rule 1.7 and the Code where a bankruptcy lawyer represents a class of creditors that, while sharing substantially similar claims, still suffers from conflicting interests, either within or outside of the bankruptcy proceeding is problematic.[45] Similar to Rule 1.7, the Code strictly prohibits representation by an attorney with an actual conflict of interest.[46] But unlike Rule 1.7, the Code permits a court to disqualify a lawyer if there is only a potential conflict of interest based upon the relevant facts.[47]

73. Too, rule 1.9 overlaps with the Code regarding a lawyer's prior employment. Courts decide disqualification per Rule 1.9 by applying a four-step analysis.[48] First, the moving party and opposing counsel must have a previous attorney-client relationship. Second, the lawyer's present and former clients' interests must be adverse. Third, client's present matters must be substantially related to the lawyer's representation of the former client.[49] Finally, the former client must not have consented to the lawyer's representation of his present client. If an actual conflict is found under Rule 1.9, the affected former client may usually waive the conflict and consent to the representation in writing.[50]

---

[43] Nancy B. Rapoport, Our House, Our Rules: The Need for a Uniform Code of Bankruptcy Ethics, 6 Am. Bankr. Inst. L. Rev. 45, 66–67 (1998).
[44] Id.
[45] See Lupica, supra note 4, at 1 (indicating a Model Rules' weakness is assumption of single party representation).
[46] See In re AroChem Corp., 176 F.3d 610, 624 (2d Cir. 1999); In re Marvel Entm't Group, Inc.,140 F.3d 463, 476 (3d Cir. 1998); In re Interwest Bus. Equip., Inc., 23 F.3d 311, 315–16 (10th Cir. 1994).
[47] See, e.g., In re AroChem, 176 F.3d at 627; In re First Jersey Sec., Inc., 180 F.3d 504, 509 (3d Cir. 1999); In re Martin, 817 F.2d 175, 182 (1st Cir. 1987).
[48] Touchcom, Inc. v. Bereskin & Parr, 299 Fed. Appx. 953, 954 (Fed. Cir. 2008); Pearson v. First NH Mortgage Corp., 200 F.3d 30, 36 (1st Cir. 1999); In re Blue Coal Corp., 152 B.R. 710, 713 (Bankr. M.D. Pa. 1993).
[49] The term "substantially related" can apply to matters either involving the same transaction or legal dispute or when information obtained in the previous representation would materially advance the present client's position. Disqualification under Rule 1.9 is possible even without a breach of a client's confidences. In re Meridian Auto. Syss.-Compcsite Operations, Inc., 340

B.R. 740, 747 (Bankr. D. Del. 2006). See also MODEL RULES OF PROF'L CONDUCT R. 1.9 cmt. 2 (2009).

[50] MODEL RULES OF PROF'L CONDUCT R. 1.9.

Under §327 of the Code, however, a lawyer cannot be disqualified solely because of his previous employment by the debtor or a creditor unless there is an actual conflict of interest.[51] If an actual conflict is discovered, the Code does not allow a waiver under any circumstances.

74. If a lawyer testifies in their client's case, this too leads to disqualification under Rule 3.7 if he has first-hand, exclusive knowledge about the subject of the attorney's testimony.[52] The bar is low, as courts have granted disqualification even where a lawyer prepared and filed bankruptcy petitions for two separate defendants that each "inadvertently omitted" the same plaintiff from their Schedule D list of creditors.[53]

**IV. Failure to disclose, third party litigation funding, liability exposure,**

59. In April 2022, Chief Judge Colm Connolly, D. Delaware, issued a standing order requiring parties disclose third-party litigation funding (TPLF):

> "District of Delaware Standing Order Regarding Third-Party Litigation Funding Arrangements (D. Del. Apr. 18, 2022):
>
> "(1) Within...30 days of the filing of an initial pleading ... the party receiving [third party litigation] funding shall file a statement...containing the following information: (a) The identity, address, and, if a legal entity, place of formation of the Third-Party Funder(s); (b) Whether any Third-Party Funder's approval is necessary for litigation or settlement decisions in the action, and if the answer is in the affirmative, the nature of the terms and conditions relating to that approval; and (c) A brief description of the nature of the financial interest of the Third-Party Funder(s).
> (2) Parties may seek additional discovery of the terms of a party's arrangement with any Third-Party Funder upon a showing that the Third-Party Funder has authority to make material litigation decisions or settlement decisions, the interests of any funded parties or the class (if applicable) are not being promoted or protected by the arrangement, conflicts of interest exist as a result of the arrangement, or other such good cause exists."). See also Standing Order Regarding Disclosure Statements Required by Federal Rule of Civil

---

[51] In re AroChem, 176 F.3d at 620–21. See also 11 U.S.C. 1107(b).

[52] In re Duke Invs., Ltd., 414, 424 (Bankr. S.D. Tex. 2011). Compare Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell, 239 F. Supp. 2d 1170, 1173–74 (D. Colo. 2003) (granting disqualification where issue was client's commercially reasonable behavior disposing of collateral, but attorney was primary actor regarding collateral's storage, dealings with the storage company, payment of storage fees, and collateral's sale) with Leaseamerica Corp. v. Stewart, 876 P.2d 184, 193 (Kan. Ct. App. 1994) (denying disqualification where attorney lacked first-hand knowledge regarding his client's disposal of property and whether or not the client had done so in a commercially reasonable manner).

[53] Foley, Inc. v. Fevco, Inc., No. L-11302-98, 2006 WL 1223143, at *2 (N.J. Super. Ct. App. Div. May 9, 2006); Foley, Inc. v. Fevco, Inc., 379 N.J. Super. 574, 577, 579 (2005).

Procedure 7.1 (D. Del. Apr. 18, 2022) (requires any party that is a nongovernmental joint venture, limited liability corporation (LLC), partnership, or limited liability partnership to disclose "the name of every owner, member, and partner of the party, proceeding up the chain of ownership until the name of every individual and corporation with a direct or indirect interest in the party has been identified."); VLSI Tech. LLC v. Intel Corp., 2022 WL 3134427, at *1 (D. Del. Aug. 1, 2022) (disclosure that plaintiff's owners include "pension and retirement funds, sovereign wealth funds, foundations, high net worth individuals, endowments and other institutional investors" was inadequate; judge said he could think of "no reason that would justify hiding from the public this information."). See generally Nimitz Techs. LLC v. CNET Media, Inc., 2022 WL 17338396, at *3 (D. Del. Nov. 30, 2022) ("I was (and am) confident about the appropriateness of the Third Party Funding Order. My confidence is reinforced by the fact that as of 2018, six federal courts of appeals and 24 district courts had third-party funding disclosure requirements of some kind. See Meeting of the Advisory Committee on Civil Rules Agenda Book 209, 2010 Philadelphia, P.A. (Apr. 10, 2018) (reporting survey results showing that "[s]ix U.S. Courts of Appeals have local rules which require identifying litigation funders" and that "of the 94 federal district courts in the United States, 24—or roughly 25% of all U.S. District Courts—require disclosure of the identity of litigation funders 2 in a civil case"), mandamus pet. denied sub nom. In re Nimitz Techs. LLC, 2022 WL 17494845 (Fed. Cir. Dec. 8, 2022); cf. Mellaconic IP LLC v. Timeclock Plus, LLC, 2023 WL 3224584 (D. Del. May 3, 2023) (denying motion to set aside Nov 30. order); Lamplight Licensing LLC v. ABB Inc., 2023 WL 3582778 (D. Del. May 2, 2023) (same).

60. Employment of a lawyer in a bankruptcy case is objectionable if basis exists to believe there is an adverse interest, conflict of interest, or their professional practice is lacking. Some examples of when objection is merited and disqualification results include if a lawyer has:

    a.  an economic interest that could lessen the value of the estate,
    b.  an economic interest that could create a dispute where the estate is a rival claimant,
    c.  a predisposition that could bias them against the estate,
    d.  known or could have known of an investment in an entity possibly involved in case,
    e.  controlled or could have controlled investment decisions in a relevant entity / industry,
    f.  a conflict of interest from work for other clients,
    g.  fees billed in the case that are unreasonable.

61. Code §327(a) governs retention of estate professionals, including legal counsel and most financial consultants. Under §327(a), an estate may retain and compensate an attorney, accountant, or other professional so long as such professional does "not hold or represent an interest adverse to the estate" and such professional is a "disinterested person[]."[54]

---

[54] 11 U.S.C. § 327(a).

The Code does not define "adverse" interest, case law does, and many courts apply the *Roberts* test, which provides an adverse interest is one where: (1) possession or assertion of any economic interest would tend to decrease value of the bankruptcy estate or create an actual or potential dispute with the estate as a rival claimant or, (2) predisposition of bias against the estate.[55] Third Circuit courts tend to focus on actual, as opposed to potential or speculative, conflicts of interest.[56]

62. Courts have generally interpreted subsection "c" to require a present interest that is materially adverse, the most common example being that of a lawyer running afoul of disinterestedness requirements in §327(a) is one owed fees or expenses for pre-petition work, which makes the professional a creditor of the estate, thereby creating a violation of the disinterestedness requirement in §327(a).[57]

63. There are certain narrow exceptions to the strict disinterestedness requirement in §327(a). Specifically, §327(c) of the Code allows a debtor to retain a professional that is also representing a creditor provided (1) no creditor nor the United States Trustee objects to the retention or (2) if a party objects, no actual conflict of interest exists.[58] While courts differ in their interpretation of

---

[55] *In re Roberts*, 46 B.R. 815, 826-27 (Bankr. Utah 1985); see also In re Level 8 Apparel LLC, 2023 Bankr. LEXIS 1006, *17-18 (Bankr. S.D.N.Y. April 13, 2023) (an "interest adverse to the estate" means "either (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant or (2) to possess a predisposition under circumstances that render such a bias against the estate"); *In re Granite Partners, L.P.*, 219 B.R. 22, 33 (S.D.N.Y. 1998) (same); *In re Hutch Holdings, Inc.*, 532 B.R. 866, 876 (Bankr. S.D. Ga. 2015) (same).

[56] *In re Boy Scouts of America*, 630 B.R. 122, 130 (D. Del. 2021) (an interest is adverse if a professional "holds or represents interests in competition with the debtor that would actually (as opposed to speculatively) impair its service as an estate fiduciary") (citing In re First Jersey Sec., Inc., 180 F.3d 504, 509 (3d Cir. 1999)); see also *In re Vascular Access Ctrs., L.P.*, 613 B.R. 613, 624 (Bankr. E.D. Pa. 2020) (quoting In re First Jersey Sec., Inc., 180 F.3d 504, 509 (3d Cir. 1999) (section "327(a) 'mandates disqualification when there is an actual conflict of interest, allows for it when there is a potential conflict, and precludes it based solely on an appearance of conflict'")).

[57] *In re Owens*, 2014 WL 3867535, *4 (B.A.P. 9th Cir. Aug. 6, 2014) (affirming the bankruptcy court's holding that debtor's counsel was not disinterested for purposes of section 327(a) because it held a claim for pre-petition fees).

[58] 11 U.S.C. §327(c); see also In re Decade, S.A.C., LLC, 2020 WL 564903, *8 (Bankr. D. Del. Feb. 5, 2020) ("Bankruptcy Code itself clarifies that a professional is not disqualified from employment solely because the professional represents the trustee and a creditor").
an "actual conflict" under §327(c), one prevailing school of thought is that an "actual conflict" only exists under §327(c) if there is "an active competition between two interests, in which one interest can only be served at the expense of the other."[59] While a potential conflict of interest is generally sufficient to warrant disqualification under §327(a), that is not the case under §327(c).

59. While the Code has statutory requirements for the retention of estate professionals, Federal Rules of Bankruptcy Procedure ("FRBP") Rule 2014 sets out the retention process. Rule 2014(a) provides that estate professionals must file an application requesting the bankruptcy court to approve the professional's retention. Among other things, the application must include:

> "a verified statement of the [professional's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed by the United States Trustee."[60]

60. Courts interpret disclosure requirements under Rule 2014(a) extremely broadly, consistently holding that all connections or potential conflicts must be disclosed even if, in the professional's opinion, they do not constitute a disqualifying conflict of interest under section 327(a) of the Bankruptcy Code.[61] Obligation to disclose all connections under Rule 2014 is not dependent on whether a professional would be disqualified under §327 of the Code for such connection and the mere failure to make requisite disclosures can result in disqualification, sanctions, or disgorgement of fees — even if there are no disqualifying connections.[62]

61. Rule 2014(a)'s disclosure obligation is a continuing obligation that persists throughout the

---

[59] In re Relativity Media, LLC, 2018 WL 3769967, *2 (Bankr. S.D.N.Y. July 6, 2018) (citing In re Empire State Conglomerates, Inc., 546 B.R. 306, 315 (Bankr. S.D.N.Y. 2016)).
[60] Fed. Rules Bankr. Proc. Rule 2014(a).
[61] In re Vascular Access Ctrs., L.P., 613 B.R. at 625 ("[a]ll facts that may be pertinent to a court's determination of whether an attorney is disinterested or holds an adverse interest to the estate must be disclosed"); KLG Gates LLP v. Brown, 506 B.R. 177, 193 (E.D.N.Y. 2014) ("[t]he decision as to what information to disclose should not be left to counsel, whose judgment may be clouded by the benefits of the potential employment").

[62] *In re Vascular Access Ctrs., L.P.*, 613 B.R. at 623; *In re Nilhan Developers, LLC*, 2021 WL 1539354, *15 (Bankr. N.D. Ga. April 19, 2021); *In re US Bentonite, Inc.*, 536 B.R. 948, 957-58 (Bankr. D. Wy. 2015).

life of the bankruptcy case.[12][63] Said plainly, a zero-tolerance policy exists among bankruptcy courts for an estate professional's failure to disclose – anything.

62. In re Vascular Access Ctrs., L.P., 613 B.R. 613 (Bankr. E.D. Pa. 2020), a law firm sought to represent a limited partnership debtor. Prior to representation of the debtor, however, the firm briefly represented and entered into an engagement letter with the debtor's general partner. The law firm failed to disclose its prior representation of the general partner, which was raised by the United States Trustee. While the court did not find the conflict of interest to be disqualifying under §327(a) of the Code, *the failure to disclose the connection* was a "flagrant violation" of Rule 2014(a), and the delayed disclosure resulting from the United States Trustee's objection was insufficient to remedy the violation. As a result, the bankruptcy court sanctioned the law firm by denying its fees and costs before the date of the delayed disclosure. In determining the appropriate relief, the bankruptcy court expressed its intent to deter the law firm from committing the same "flagrant violation" in the future.

63. Vascular Access highlights risk of disqualification following *acceptance of payment that constitutes a preferential transfer*. The court found that the law firm's early application of its retainer during the preference period could constitute an avoidable preferential transfer because the law firm typically billed through monthly invoices. Therefore, the application of its retainer was not a payment in the ordinary course of business. Nevertheless, the court declined to avoid the transfers because of the new value and contemporaneous exchange for new value defenses. Even absent a disqualifying conflict, a lawyer's failure of proper disclosure has serious consequences, including loss or disgorgement of fees and expenses, it is not up to the lawyer to determine if connections are irrelevant or trivial relating to disclosure. Culpepper has been receiving fees in the last 90 days from different cases joined with SMV's judgment creating the preferential transfer already therefore requiring his disqualification.

64. *In re Chris Pettit & Assocs., P.C.*, 2022 WL 17723920 (W.D. Tex. Dec. 13, 2022), the law

---

[12] In re Bay Voltex Corp., 2008 WL 8444794, *8 (B.A.P. 9th Cir. October 9, 2008) ("Rule 2014 has been interpreted to impose an ongoing duty to update information as circumstances

change"); In re NIR West Coast, Inc., 638 B.R. 441, 449-450 (Bankr. E.D. Cal. 2022); In re ESJ Towers, Inc., 2022 WL 7721668, *6 (Bankr. D. P.R. October 13, 2022) ("Although [Rule] 2014 does not require continuous disclosure, courts have interpreted that the professional has the self-imposed obligation to continuously update and fully disclose to the court whether there are any circumstances which might suggest either an actual or potential conflict").

firm of Martin & Drought, P.C. ("M&D") was hired to represent the debtors (an individual, Mr. Pettit, and his law firm). However, M&D previously represented Mr. Pettit in certain state court actions whereby he and his law firm were accused of a host of bad acts, including fraud, conversion, breach of fiduciary duty, felony theft, fraudulent inducement, and unjust enrichment — resulting in agreed judgments in excess of $35 million. In its retention application, M&D stated that it merely provided pre-petition legal services to the debtor that were unrelated to the bankruptcy preparation or planning. They failed to mention that the prior representation was in connection with various state court proceedings in which creditors were seeking debt recovery. After the court's approval of the retention application, the debtor filed amended schedules and statements that contained pre-petition payments to M&D in the amount of $70,000 in connection with "several State Court Cases between March - June 2022." The United States Trustee objected, arguing that the law firm failed to sufficiently disclose its connections with the debtors because the disclosures did not include the fee structure and nature of its prepetition compensation. Moreover, the trustee argued that M&D had actual knowledge of the debtors' professional misconduct based upon the agreed judgments.

65. The court held that the M&D's disclosures were "unclear at best" and "illustrate the pattern of incomplete disclosures." The failure to disclose was compounded by M&D's alleged knowledge that monies used to pay its fees were funds of Mr. Pettit's law firm's clients, as the court had made clear an attorney's duty to investigate the source of the funds when it is reasonable to do so. Accordingly, the court denied the firm's fee applications and ordered that M&D disgorge all amounts received to the chapter 11 trustee to be held for the benefit of creditors. Clearly, partial disclosure is insufficient to satisfy requirements under the Code and FRPB and courts strictly enforce the obligation to disclose all connections and do not not turn a blind eye to the failure to do so.

87. LRBP 2014-1(a) Motion for Approval, requires that after learning of the additional material information relating to employment (such as the potential and actual conflicts of interest herein), the professional employed shall file and serve a supplemental affidavit setting forth the additional information. Unlike the affidavit served by Culpepper, it should be sworn under oath

of perjury to ensure accountability for his actions regarding the menagerie of disclosure failures, proven conflicts, potential conflicts, suitability for representation of the estate, and the reasons for his premature engagement and retroactive nature of its contracting – predating the Motion for Approval.

## V. Case Law: Clear and Settled.

88. Failure to disclose even a de minimis connection can result in sanctions and disgorgement of fees and disqualification notwithstanding that no actual conflicts exist to justify such action.

89. A conflict of interest under bankruptcy §327 occurs when a professional employed in a bankruptcy case is not disinterested and/or holds an interest adverse to the bankruptcy estate. To be disinterested, the professional cannot be a creditor, equity security holder, or insider of the debtor. They also cannot have been a director, officer, or employee of the debtor within two years of the petition filing date nor an equity security holder or insider of the debtor. As the professional's interest would decrease the value of the bankruptcy estate or create a dispute with the estate.

90. As the district court noted, section 101(14)(E), the so-called "catch-all clause" governing lack of disinterest, has been held "broad enough to include anyone who `in the slightest degree might have some interest or relationship that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules.'" *In re Glenn Electric Sales Corp.*, 99 B.R. 596, 601 (D.N.J.1988) (quoting *In re Roberts*, 46 B.R. 815, 828 n. 26 (D. Utah 1985)).

91. Subsection (e), commonly referred to as the "catch-all clause," is broad enough to exclude an attorney with some interest or relationship that " `would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules.'" - in *In re Cook*, 1998 and 24 similar citations.

92. However, courts have concluded that "an alleged conflict of interest is `actual' and warrants disqualification under § 327 (c) if there is `active competition between two interests, in which one interest can only be served at the expense of the other.'" Id. - in *IN RE FAITH CATHEDRAL LOOK UP AND LIVE MINISTRIES, INC.*, 2020 and 19 similar citations.

93. Cases cited by the United States Trustee support the position that an attorney holding a prepetition claim for services is not disinterested and cannot be appointed unless the claim is waived - in *IN RE HALL*, 2014 and 7 similar citations

94. To hold an adverse interest is to: (1) possess or assert any economic interest that would

tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) possess a predisposition under circumstances that render such a bias against the estate. - in *In re Kuykendahl Place Associates, Ltd.*, 1989. In the instant case, the lawyer admits he has work for cases outside the code, they have not been waived, and he is therefore disqualified.

95. To `hold an adverse interest' means for two or more entities (1) to possess or assert mutually exclusive claims to the same economic interest, thus creating either an actual or potential dispute between the rival claimants as to which, if any, of them the disputed right or title to the interest in question attaches under valid and applicable law; or (2) to possess a predisposition ... - in *In re Micro-Time Management Systems, Inc.*, 1989.

96. To "represent an adverse interest" under § 327 (a) means "to serve as an agent or attorney for an individual holding such an adverse interest." - in *IN RE WOLFSON*, 2018.

97. Such is for the Court to decide, not HD & C. Full disclosure is the only way that the Court can make such a decision. - in *IN RE D & H MACH. SERVICE, INC.*, 2016 a

98. To hold or represent an interest adverse to the estate" means (1) to hold or assert any economic interest that would tend to reduce the value of the bankruptcy estate or that would give rise to an actual or potential dispute in which the estate is a rival claimant, or (2) to possess a predisposition under circumstances that render such predisposition a bias against the estate. - in *In re Cleveland Trinidad Paving Co.*, 1998.

99. Disgorgement is the expected remedy when a professional does not comply with the Bankruptcy Code or its Rules. - in *In re New River Dry Dock, Inc.*, 2011.

100. A violation of the disclosure rules alone suffices to support partial denial of compensation, regardless of whether an undisclosed fee arrangement is in fact materially adverse to the estate's interest. - in *IN RE MIRACLE CHRISTIAN INTERNATIONAL LIFE CENTER*, 2008 and 7 similar citations.

101. However, "adverse interest" is not defined in the Code. Courts have stated that adverse interests "exists when two or more entities possess or assert mutually exclusive claims to the same economic interest." *In re Granite Sheet Metal Works*, 159 B.R. 840, 845 (Bankr. S. Ill. 1993).

102. In the Second Circuit, to determine whether an adverse interest exists, courts use an

objective test involving a fact-specific inquiry. *In re Doug Gross Constr., Inc.*, 2024 Bankr. LEXIS 1406, *4 (Bankr. W.D.N.Y. 2024). This objective test "precludes 'any interest or relationship, however slight, that would even faintly color the independence and impartial attitudes required by the Code and Bankruptcy Rules.'" Id. (internal citations omitted).

103. Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition operates as a stay against the following activities:

> "(a) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> (b) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
> (c) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> (d) any act to create, perfect, or enforce any lien against property of the estate;
> (e) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
> (f) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; and
> (g) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor."

104. Under § 327(a) any party in interest may object to the appointment of counsel. *In re Mundo Custom Homes, Inc.*, 214 B.R. 356, 360 (Bankr.N.D.Ill. 1997). On the issue of whether the firm's appointment under § 327(a) is appropriate, the Court again begins the analysis with the statute, which provides:

> "(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title. 11 U.S.C. § 327(a)."

1j05. Section 327(a) serves to insure that "the undivided loyalty and exclusive allegiance required of a fiduciary to an estate in bankruptcy is not compromised or eroded." *In re Prudent Holding Corp.*, 153 B.R. 629, 631 (Bankr.E.D.N.Y. 1993).

106. In some circumstances, however, prior retention is not possible due to the nature of the services to be performed. In those circumstances, approval may be granted in the discretion of

the court. Such nunc pro tunc relief is, however, an extraordinary remedy. See *In re ICG Communications, Inc.*, 2001 Bankr. LEXIS 1251 (Bankr. D. Del. Aug. 2, 2001). In the Third Circuit, the bankruptcy court may grant retroactive approval only if it finds that it would have granted prior approval and that the delay in seeking approval was due to extraordinary circumstances beyond the professional's control. *Arkansas*, 798 F.2d at 650.

107. Attorney fees are considered a preferential transfer when they are paid to a lawyer by a debtor within 90 days before filing for bankruptcy, while the debtor is insolvent, and the payment gives the lawyer a larger payout than they would receive in a Chapter 7 liquidation, essentially favoring them over other creditors; this timeframe extends to one year if the lawyer is considered an "insider" (like a close family member) to the receipt of a preferential transfer, however, does constitute an actual conflict of interest requiring disqualification. *In re First Jersey Securities. Inc.*, 180 F.3d 504, 509 (3d Cir. 1999).

108. EYR's action in filing a separate retention application is wise. It is clear that the requirement in section 327(a) that Court approval be obtained before the debtor employs any professional (including an accountant or financial advisor) mandates a separate application for approval of EYR. Parties may not avoid the requirements of section 327(a) by entering into such "subcontracting" arrangements which E Y originally contemplated with respect to the EYR personnel. Such a subcontracting arrangement, if approved would eviscerate the protections of section 327(a) and allow a third party (rather than the debtor or the Court) to determine who should render professional services for the estate. The receipt of a preference creates a conflict with unpaid creditors because a payment by an insolvent debtor to one creditor is necessarily paid at the expense of another creditor. *Pillowtex*. 304 F.3d at 252.

109. Failure to disclose connections itself is enough to warrant disqualification of counsel from employment. See, e.g., *In re Crivello*, 134 F.3d 831, 839 (7th Cir.1998) (stating that "a bankruptcy court should punish a willful failure to disclose connections under Fed. R. Bankr.P.2014 as severely as an attempt to put forth a fraud on the court."); *Rome v. Braunstein*, 19 F.3d 54, 59 (1st Cir.1994) (warning that "[a]bsent the spontaneous, timely and complete disclosure required by section 327(a) and Fed. R. Bankr.P.2014(a), court-appointed counsel proceed at their own risk.") (emphasis in original); *In re Filene's Basement, Inc.*, 239 B.R. 845 (Bankr.D.Mass.1999) (disqualifying counsel because of false 2014 disclosures alone without deciding whether counsel was disinterested).

**V. Conclusion.**

110. In a prior deposition with William Rouhana, Rouhana's representatives objected to Movant's participation despite his being an established, unobjected, interested party. Notably, in the civil matter for which the deposition was held, Mr. Rouhana repeatedly invoked his Fifth Amendment right multiple times. Given SMV's involvement in Culpepper's copyright trolling scheme, CSSE's treatment of employee matching funds, and desperate financial flailing, the risk of invoking one's Fifth Amendment claims might be worth it as SMV and CSSE were clearly involved in the type of copyright trolling that sent Jonathan Steele and Paul Hansmeier to federal prison for decades after their scheme was uncovered and courts finally acted, see Exhibit 4.

111. Culpepper unquestionably holds claims for prepetition expenses as is recognized in his current engagement despite Culpepper, his "firm", and his partners in the joined judgment being creditors of the debtors (CSSE and SVM). Culpepper claims his fees are applicable despite no accounting of or unchallenged award for "attorney fees", and claims a fee amount that is materially different than those he previously claimed in other courts. The existence of fees becomes a preferential transfer, another basis for disqualification, besides being a Creditor.

112. In the Eastern Caribbean Community's High Court of St. Christopher and Nevis, a Judge's interocular order prior to setting a trial date and pronouncements from the bench will require Culpepper appear as a witness in proceedings Culpepper instituted January of 2023, despite the inarguable fact that collection on an unargued, default, statutory judgment awarded by a U.S. S.D. Florida court is, as a matter of public policy in the Federation of St. Christopher and Nevis moot as no foreign statutory judgments are honored – another fact Culpepper concealed from the Trustee and court. Further, in the unlikely event Culpepper proceeds to trial in Nevis, it exposes him, his firm, and the estate for all costs related thereto since, unlike the U.S., losers pay.

113. Culpepper also failed to disclose the existence and scope of Movant's current 1st Dist. BAP Appeal and multiple vectors for further actions subsequent thereto and the necessary involvement of the estate within them.

114. Googling "Culpepper copyright troll" returns barrage of barratry practice results. Culpepper and his partners are creditors of the estate. Their claim is unscheduled. Culpepper willfully concealed PML from this court as he has in others, continued litigating in contempt of the automatic stay despite his written affirmation of his duty, attempted to hoodwink the Trustee

into legitimizing his contempt by back-dating his "Special Counsel" contract, is a pro se litigant, a declared fact witness, volunteered twice as a fact witness, has been ordered to appear as a fact witness in Nevis, and owns 42 Ventures, LLC, another Creditor of the estate and indispensably joined with scores of other NPEs. Culpepper is not a disinterested party or arms-length advocate but a player/partner in barratry with PML. He cannot represent the estate's best interests and those of scores of clients he indispensably joined in his default judgment, all of whom hold interests adverse to SMV's. It is impossible for him to perform as "Special Counsel" in the best interests of the estate without inviting litigation and liability from many vectors.

115. Of all Movant's bankruptcy Creditors, only Culpepper has engaged in outrageous and willfully malicious litigation to vex and exasperate Movant, other creditors, Movant's former spouse, and more than half a dozen federal and international Courts. Plaintiff prays this Court will weigh the equities in these circumstances, review the record, and find Movant's opposition to Culpepper's engagement as "Special Counsel" is merited due to the number and severity of violations of Code and Rules and that his contempt for his application disclosure requirements and automatic stay violations merit significant fines, sanctions, and any remedy the court deems appropriate in order to recover its dignity and dissuade others from riding roughshod over its reputation. This is the latest tactic from Culpepper in a tortured case with a long string of abusive practice by Culpepper and his partners to extort money by using U.S. courts as slot machines. A "Special Counsel" cannot reasonably be expected to provide competent representation for a menagerie of clients and partners with conflicting interests among themselves and the "Special Counsel" himself, where he simultaneously participates in fee-splitting partnership with a hidden, foreign, third-party litigation funder, while working for the benefit of the estate and indispensably joined partners.

116. Respectfully, Movant asks the court to recognize pleadings of pro se litigants are to be construed liberally, such pleadings, "however inartfully pleaded" are held to less stringent standards than formal pleadings drafted by lawyers. Plaintiff is cognizant of and respects the dignity and authority of the Court and has done his best in the few days available to properly prepare and present this Complaint as the Trustee was unable to provide extension allowing time for a succinct filing.. *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 596, 30 774*774 L.Ed.2d 652 (1972); *United States v. Otero*, 502 F.3d 331, 334 (3d Cir. 2007); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003). Finally, Movant requests that, barring any other decision, it

prohibit Culpepper from continuing to appear in cases where he is required as a fact witness, such as in Nevis, the 1st District BAP, and Movant's bankruptcy.

RESPECTFULLY SUBMITTED, 26 December 2024, Basseterre, Federation of St. Christopher and Nevis.

Charles Muszynski, pro se
usfilefolder@protonmail.com
P. O. Box 1423
Basseterre
St. Kitts and Nevis
West Indies
1-424-333-0569

## CERTIFICATE OF SERVICE

The undersigned states that the Claim herein was served upon the parties/entities related to the proceedings above by way of the Court's CM/ECF system on the date below subsequent to courier delivery to the Court's physical location in Wilmington, Delaware on this date.

26 December 2024
Respectfully submitted,

Charles Muszynski, pro se
usfilefolder@protonmail.com
P. O. Box 1423
Basseterre
St. Kitts and Nevis
West Indies

**EXHIBIT 1**
Latest Violation of Automatic Stay
Nevis Filing

Case Number :NEVHCV2022/0183

**FILED**

HIGH COURT

ST.CHRISTOPHER / NEVIS

(NEVIS CIRCUIT)

THE EASTERN CARIBBEAN SUPREME COURT
ST. CHRISTOPHER AND NEVIS
NEVIS CIRCUIT

IN THE HIGH COURT OF JUSTICE

Submitted Date:23/12/2024 09:10

Filed Date:23/12/2024 09:10

CLAIM NO. NEVHCV2022/0183

Fees Paid:22.00

BETWEEN:

MILLENNIUM FUNDING, INC.
VOLTAGE HOLDINGS, LLC
AMBI DISTRIBUTION CORP
AFTER PRODUCTIONS, LLC
AFTER II MOVIE, LLC
MORGAN CREEK PRODUCTIONS, INC
BEDEVILED LLC
MILLENNIUM MEDIA, INC
COLOSSAL MOVIE PRODUCTIONS, LLC
YAR PRODUCTIONS, INC.
FSMQ FILM, LLC
FW PRODUCTIONS, LLC
MILLENNIUM IP, INC.
I AM WRATH PRODUCTIONS, INC
KILLING LINK DISTRIBUTION, LLC
BADHOUSE STUDIOS, LLC
LF2 PRODUCTIONS, INC
LHF PRODUCTIONS, INC
VENICE PI, LLC
RAMBO V PRODUCTIONS, INC
RUPTURE CAL, INC
MON, LLC
SF FILM, LLC
SPEED KILLS PRODCUTIONS, LLC
NIKOLA PRODUCTIONS, INC.
WONDER ONE, LLC
BODYGUARD PRODUCTIONS INC.
OUTPOST PRODUCTIONS, INC.
GLACIER FILMS 1, LLC
DEFINITION DELAWARE, LLC
HANNIBAL CLASSICS INC.
JUSTICE EVERYWHERE PRODUCTIONS LLC
STATE OF THE UNION DISTRIBUTION AND COLLECTIONS, LLC
PARADOX STUDIOS, LLC
DALLAS BUYERS CLUB, LLC
HITMAN TWO PRODUCTIONS, INC.
SCREEN MEDIA VENTURES, LLC
42 VENTURES LLC

Claimants/ Applicants

and

AUH2O LLC
CHARLES MUSZYNSKI also known as FREDERICK DOUGLAS

Defendants/ Respondents

## AFFIDAVIT OF KERRY S. CULPEPPER

*(In opposition to the Defendants' Notice of Application to set aside the worldwide freezing order and dismiss claim)*

1

I, **KERRY S. CULPEPPER**, of 75-170 Hualalai Road, Suite B204 Kailua-Kona, Hawaii 96740, in the United States of America, **MAKE OATH** and say as follows:

1. I am the Principal of the law firm Culpepper, IP LLC which is based in Kailua Kona, Hawaii, in the United States of America. I am also the Principal of 42 Ventures, LLC, one of the Claimants in the captioned matter. I am duly authorized to swear this affidavit in opposition to the Defendant' Notice of Application to set aside the worldwide freezing order and dismiss claim filed on 10th December 2024.

2. That the facts and matters stated herein are within my own knowledge unless otherwise expressly stated. Insofar as they are within my own knowledge, the facts and matters deposed to are true. Insofar as they are not within my own knowledge, the facts and matters deposed to are true to the best of my knowledge, information and belief.

3. Paragraphs 3 to 13 of the 2nd Defendant's affidavit are admitted insofar as those paragraphs accurately recite the terms of the Orders made by the Court further to the freezing order dated 12th January 2023.

4. In response to paragraph 14, I am informed by Messrs Joseph Rowe and verily believe that following the filing of the Defence, the Court's office is required to fix the for a case management conference following the filing of a defence. While awaiting the listing of this claim for case management, I have actively opposed a petition brought by the 2nd Defendant before Bankruptcy Courts in the United States for the purpose of preserving this Claim. The Claimants at all times have actively participated in and taken the necessary action necessary to advance this Claim.

5. In response to paragraphs 15 and 16, I hereby state that the bankruptcy petition of Screen Media Venture LLC has no effect on the present Claim for the following reasons:

    i.    When a company files for bankruptcy under Chapter 7 of the United States Bankruptcy Code, the Bankruptcy Court appoints a trustee for the estate of the company.

    ii.   Screen Media Ventures, LLC filed for bankruptcy in the Bankruptcy Court for the District of Delaware.   Further to this petition, the Bankruptcy Court for the District of Delaware appointed George Miller as the trustee.

    iii.  Mr. Miller has retained my firm, Culpepper IP to represent him as trustee for the estate of Screen Media Ventures, LLC and has authorized my firm to proceed with this claim.

    iv.   As an Attorney licensed to practice in the jurisdiction of the United States of America since 2000, I submit that the 2nd Defendant's assertion that an automatic stay comes into effect due to the bankruptcy proceedings of Screen Media Ventures, LLC is

incorrect. Rather, an automatic stay applies to *claims against* Screen Media Ventures, LLC. It is my understanding based on case authorities in the United States that the automatic stay does not prevent a plaintiff/debtor from continuing to prosecute its own claims.

v.   On the other hand, the Defendants' request for damages as outlined at the request numbered 3 in its Application, does violate the automatic stay applied to claims against Screen Media Ventures, LLC

vi.   The 2nd Defendant has voluntarily filed a formal appearance in the Screen Media Ventures, LLC bankruptcy proceedings in the District of Delaware, and has further attended a meeting of the creditors.

vii.   If it is the 2nd Defendant's assertion that the actions of Screen Media Ventures, LLC before the Court of Nevis violates the automatic stay, he must seek relief before the Bankruptcy Court for the District of Delaware.

6. In response to paragraph 17, the Claimants deny the 2nd Defendant's assertion that there can be no progress of this Claim and states that there is presently no stay over this Claim which prevents the Claimant from participating in this matter. The Claimants further states that it is the 2nd Defendant who has been untruthful on the particulars of his petition for bankruptcy. The Claimants hereby state as follows:

i.   On May 11, 2023, the 2nd Defendant filed a petition for bankruptcy in the United States Bankruptcy Court for the Eastern District of Texas (the "Bankruptcy Petition") Court.   A true copy of the 2nd Defendant's Voluntary Petition for Individuals Filing for Bankruptcy is enclosed and marked "**KSC1**".

ii.   Upon filing his Bankruptcy Petition an automatic stay over claims against the 2nd Defendant took effect unless and or until the Texas Bankruptcy Court or another other US Federal Court granted a motion lifting the automatic stay.

iii.   On May 31, 2023, I filed a motion to lift the automatic stay in the Texas Bankruptcy Court. On June 13, 2023, the 2nd Defendant filed his objection in the Texas Bankruptcy Court opposing the motion to lift the automatic stay over claims against him.

3

    iv.    On June 23, 2023, the Texas Bankruptcy Court issued a preliminary order that the Claimants maintain the status quo in that action, to allow the 2nd Defendant's Trustee, Steven Zayler time to investigate what assets form part of his estate. The Court explained that maintaining the status quo meant that the Claimants could respond to filings or actions in the 2nd Defendant's Claim, but not seek new or further relief in such a Claim which was not previously requested. The reliefs sought on the Claim were issued before the filing of the 2nd Defendant's Bankruptcy Petition. A true copy of the Order is enclosed and marked "**KSC2**".

    v.    On August 23, 2023, the Texas Bankruptcy Court transferred the 2nd Defendant's petition to the Bankruptcy Court of the District of Puerto Rico based upon his assertion that he has property in Puerto Rico.

    vi.    On May 21, 2024, the Puerto Rico Bankruptcy Court dismissed the 2nd Defendant's Bankruptcy Petition and ruled that (1) the 2nd Defendant was ineligible to be a Debtor in the bankruptcy proceedings and (2) that the 2nd Defendant failed to fully disclose his financial resources. A true copy of the Opinion and Order are enclosed and marked "**KSC3**".

    vii.    The 2nd Defendant filed motions for reconsideration and a stay of the dismissal order in the Puerto Rico Bankruptcy Court. On June 25, 2024, that Court denied both of the 2nd Defendant's motions.

    viii.    The 2nd Defendant has appealed the decision of the Puerto Rico Bankruptcy Court appellate court and requested a stay again. The appellate court also denied his motion for a stay. His appeal is outstanding.

7.    I deny the 2nd Defendant's statements in paragraphs 18 to 21 and put the 2nd Defendant to strict proof. I further state that I attended a meeting of the creditors relative to the 2nd Defendant's bankruptcy petition where the 2nd Defendant admitted to his creditors that Chase Bank canceled his credit card after he notified them of his bankruptcy petition. At this meeting, the 2nd Defendant's Trustee who was also present informed him that was normal practice. Further in the Puerto Rico Bankruptcy Court proceedings of which I am a part of, the 2nd Defendant stated that he is the beneficiary of at least two trusts and that his residence is a pre-paid lease owned by a trust.

8. I accept paragraph 22 insofar that the 2nd Defendant commenced bankruptcy proceedings in the United States on May 11, 2023 and has appealed the last order of that Court.

9. The Claimants deny paragraphs 23 to 24 and repeat paragraph 6 herein.

10. The Claimants deny paragraph 25 and repeat paragraph 5 herein.

11. The Claimants deny and oppose paragraphs 26 to 30 of the 2nd Defendant's affidavit. The Claimants deny that its claim is an abuse of the Court's process and maintains that is entitled to the reliefs sought.

12. The Claimants deny the allegations made by the Claimants in paragraphs 31 to 35 of unethical and or defamatory conduct and puts the 2nd Defendant to strict proof. The Claimants submit that it is 2nd Defendant who has been dishonest in these proceedings as is evidenced in the states he has submitted in the bankruptcy proceedings which contradict evidence provided in its application to set aside the freezing order.

13. It is important to highlight that in the 2nd Defendant's First Affidavit filed on 31st January 2023 he advanced that the United Sates Courts had no jurisdiction over him or the claims against him. The 2nd Defendant in this earlier application to set aside the freezing order also advanced that he abandoned any personal interest in Puerto Rico, that his assets were abandoned or liquidated and further that relinquished his United States nationality.

14. In contrast, at page two of exhibit "KC1" filed on May 11 2023 the 2nd Defendant states in his petition under penalty of perjury that he lives in Livingston, Texas. The 2nd Defendant subsequently submitted to that Court that he resides in Nevis, but maintains property in the United States (Texas and Puerto Rico) which was sufficient to maintain the jurisdiction of the United States Courts over his Bankruptcy Petition.

15. The Claimants further submits that it continues to be deprived of the monies due under the default judgment granted in its favor against the 2nd Defendant and submits that the evidence of the 2nd Defendant has not satisfied that the Freezing Order should be dismissed or that the 2nd Defendant is entitled to the damages alleged.

16. In the premises, I respectfully request that this Court dismissed the Defendants' Application and that the Defendants be ordered to pay the Claimants' costs.

I make this affidavit sincerely and conscientiously knowing the contents to be true in every aspect.

SWORN at                              )
on the                                )    _Kerry S. Culpepper_ (signature)
by **KERRY S. CULPEPPER**             )    _____
                                           **KERRY S. CULPEPPER**

Before and in the presence of:

_(signature)_

Notary Public Amanda Smith

My Commission exp: 06/28/2027
State of Hawaii
County of Hawaii

AMANDA SMITH
NOTARY
PUBLIC
Comm. No.
15-226
STATE OF HAWAII

6

THE EASTERN CARIBBEAN SUPREME COURT
ST. CHRISTOPHER AND NEVIS
NEVIS CIRCUIT

IN THE HIGH COURT OF JUSTICE

CLAIM NO. NEVHCV2022/0183

BETWEEN:

MILLENNIUM FUNDING, INC.
VOLTAGE HOLDINGS, LLC
AMBI DISTRIBUTION CORP
AFTER PRODUCTIONS, LLC
AFTER II MOVIE, LLC
MORGAN CREEK PRODUCTIONS, INC
BEDEVILED LLC
MILLENNIUM MEDIA, INC
COLOSSAL MOVIE PRODUCTIONS, LLC
YAR PRODUCTIONS, INC.
FSMQ FILM, LLC
FW PRODUCTIONS, LLC
MILLENNIUM IP, INC.
I AM WRATH PRODUCTIONS, INC
KILLING LINK DISTRIBUTION, LLC
BADHOUSE STUDIOS, LLC
LF2 PRODUCTIONS, INC
LHF PRODUCTIONS, INC
VENICE PI, LLC
RAMBO V PRODUCTIONS, INC
RUPTURE CAL, INC
MON, LLC
SF FILM, LLC
SPEED KILLS PRODCUTIONS, LLC
NIKOLA PRODUCTIONS, INC.
WONDER ONE, LLC
BODYGUARD PRODUCTIONS INC.
OUTPOST PRODUCTIONS, INC.
GLACIER FILMS 1, LLC
DEFINITION DELAWARE, LLC
HANNIBAL CLASSICS INC.
JUSTICE EVERYWHERE PRODUCTIONS LLC
STATE OF THE UNION DISTRIBUTION AND COLLECTIONS, LLC
PARADOX STUDIOS, LLC
DALLAS BUYERS CLUB, LLC
HITMAN TWO PRODUCTIONS, INC.
SCREEN MEDIA VENTURES, LLC
42 VENTURES LLC

Claimants/ Applicants

and

AUH2O LLC
CHARLES MUSZYNSKI also known as FREDERICK DOUGLAS

Defendants/ Respondents

## AFFIDAVIT OF KERRY S. CULPEPPER

*(In opposition to the Defendants' Notice of Application to set aside the worldwide freezing order and dismiss claim)*

Filed By:
Edisha K. Greene
JOSEPH ROWE
Attorneys-at-Law for the Claimants/ Applicants
Unit #5, Long Stone House, Main Street
Charlestown, Nevis
Telephone: (869) 469-1015
Email: rowe@josephrowelaw.com

THE EASTERN CARIBBEAN SUPREME COURT
ST. CHRISTOPHER AND NEVIS
NEVIS CIRCUIT
                        IN THE HIGH COURT OF JUSTICE

CLAIM NO. NEVHCV2022/0183
BETWEEN:

                        **MILLENNIUM FUNDING, INC.**
                    **VOLTAGE HOLDINGS, LLC**
                    **AMBI DISTRIBUTION CORP**
                    **AFTER PRODUCTIONS, LLC**
                        **AFTER II MOVIE, LLC**
                **MORGAN CREEK PRODUCTIONS, INC**
                        **BEDEVILED LLC**
                    **MILLENNIUM MEDIA, INC**
                **COLOSSAL MOVIE PRODUCTIONS, LLC**
                    **YAR PRODUCTIONS, INC.**
                        **FSMQ FILM, LLC**
                        **FW PRODUCTIONS, LLC**
                    **MILLENNIUM IP, INC.**
                **I AM WRATH PRODUCTIONS, INC**
                **KILLING LINK DISTRIBUTION, LLC**
                    **BADHOUSE STUDIOS, LLC**
                        **LF2 PRODUCTIONS, INC**
                    **LHF PRODUCTIONS, INC**
                        **VENICE PI, LLC**
                    **RAMBO V PRODUCTIONS, INC**
                    **RUPTURE CAL, INC**
                            **MON, LLC**
                            **SF FILM, LLC**
                **SPEED KILLS PRODCUTIONS, LLC**
                    **NIKOLA PRODUCTIONS, INC.**
                        **WONDER ONE, LLC**
                **BODYGUARD PRODUCTIONS INC.**
                **OUTPOST PRODUCTIONS, INC.**
                    **GLACIER FILMS 1, LLC**
                    **DEFINITION DELAWARE, LLC**
                    **HANNIBAL CLASSICS INC.**
                **JUSTICE EVERYWHERE PRODUCTIONS LLC**
        **STATE OF THE UNION DISTRIBUTION AND COLLECTIONS, LLC**
                    **PARADOX STUDIOS, LLC**
                    **DALLAS BUYERS CLUB, LLC**
                **HITMAN TWO PRODUCTIONS, INC.**
                    **SCREEN MEDIA VENTURES, LLC**
                        **42 VENTURES LLC**
                                                **Claimants/ Applicants**

                            **and**

                        **AUH2O LLC**
        **CHARLES MUSZYNSKI also known as FREDERICK DOUGLAS**

                                                **Defendants/ Respondents**

## CERTIFICATE OF EXHIBITS

*(Affidavit of Kerry S. Culpepper in opposition to the Defendants' Notice of Application to set aside the worldwide freezing order and dismiss claim)*

These are exhibits **"KSC1"**, **"KSC2"** and **"KSC3"** referred to at paragraphs 6 (i.), 6(iv.) and 6(vi) of the prefixed Affidavit of **Kerry S. Culpepper** sworn on 20 December 2024

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

Eastern District of Texas

Case number *(if known)*: _____

Chapter you are filing under:
- [x] Chapter 7
- [ ] Chapter 11
- [ ] Chapter 12
- [ ] Chapter 13

"KSC1"

- [ ] Check if this is an amended filing

Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy    04/20

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as Debtor 1 and the other as Debtor 2. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:    Identify Yourself

| | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **1. Your full name**<br><br>Write the name that is on your government-issued picture identification (for example, your driver's license or passport).<br><br>Bring your picture identification to your meeting with the trustee. | Charles<br>First name<br><br>Middle name<br><br>Muszynski<br>Last name<br><br>Suffix (Sr., Jr., II, III) | First name<br><br>Middle name<br><br>Last name<br><br>Suffix (Sr., Jr., II, III) |
| **2. All other names you have used in the last 8 years**<br><br>Include your married or maiden names. | First name<br><br>Middle name<br><br>Last Name | First name<br><br>Middle name<br><br>Last Name |
| **3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | XXX – XX – 1273 | XXX – XX – |

Debtor 1    Charles _____ Muszynski _____    Case number (*if known*) _____

 First Name     Middle Name     Last Name

| About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|
| **4. Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years** <br><br> Include trade names and *doing business* as names | ☑ I have not used any business names or EINs. <br><br> _____ <br> Business name <br><br> _____ <br> EIN | ☐ I have not used any business names or EINs. <br><br> _____ <br> Business name <br><br> _____ <br> EIN |

**5. Where you live**

445 Carolcrest Lane
_____
Number  Street

Livingston    TX  77351
_____
City       State ZIP Code

POLK-TX
_____
County

**If Debtor 2 lives at a different address:**

_____
Number  Street

_____
City       State ZIP Code

_____
County

**If your mailing address is different from the one above, fill it in here. Note that the court will send any notices to you at this mailing address.**

2810 US Highway 190 West
_____
Number  Street

#100
_____
P.O. Box

Livingston    TX  77351
_____
City       State ZIP Code

**If Debtor 2's mailing address is different from yours, fill it in here. Note that the court will send any notices to this mailing address.**

_____
Number  Street

_____
P.O. Box

_____
City       State ZIP Code

**6. Why you are choosing *this district* to file for bankruptcy**

*Check one:*

☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☑ I have another reason. Explain. (See 28 U.S.C. § 1408.)

Appropriate minimal presence exists in this jurisdiction
_____

*Check one:*

☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason. Explain. (See 28 U.S.C. § 1408.)

_____

| Debtor 1 | Charles | | Muszynski | | Case number (*if known*) |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

---

**Part 2:** **Tell the Court About Your Bankruptcy Case**

**7. The chapter of the Bankruptcy Code you are choosing to file under**

*Check one.* (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy* (Form 2010)). Also, go to the top of page 1 and check the appropriate box.

- ☑ Chapter 7
- ☐ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13

**8. How you will pay the fee**

☐ **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

☐ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

☑ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments). If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

**9. Have you filed for bankruptcy within the last 8 years?**

- ☑ No.
- ☐ Yes. District _____ When _____ Case Number _____
  MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

- ☑ No.
- ☐ Yes. Debtor _____ Relationship to you _____
  District _____ When _____ Case Number, if known _____
  MM / DD / YYYY

**11. Do you rent your residence?**

- ☐ No. Go to line 12
- ☑ Yes. Has your landlord obtained an eviction judgment against you?
  - ☑ No   No. Go to line 12
  - ☐ Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it as part of this bankruptcy petition.

---

Debtor 1    Charles                    Muszynski

First Name        Middle Name        Last Name                                Case number (*if known*)  _____

| Part 3: | Report About Any Businesses You Own as a Sole Proprietor |
|---|---|

**12. Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

☑ No.    Go to Part 4.

☐ Yes.   Name and location of business

_____
Name of business, if any

_____
Number        Street

_____

_____
City                              State    ZIP Code

*Check the appropriate box to describe your business:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
☐ None of the above

**13. Are you filing under Chapter 11 of the Bankruptcy Code, and are you a *small business debtor* or a debtor as defined by 11 U.S.C. § 1182(1)?**

For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor or a debtor choosing to proceed under Subchapter V so that it can set appropriate deadlines. If you indicate that you are a small business debtor or you are choosing to proceed under Subchapter V, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).*

☑ No.    I am not filing under Chapter 11.

☐ No.    I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes.   I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I do not choose to proceed under Subchapter V of Chapter 11.

☐ Yes.   I am filing under Chapter 11, I am a debtor according to the definition in § 1182(1) of the Bankruptcy Code, and I choose to proceed under Subchapter V of Chapter 11.

| Part 4: | Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention |
|---|---|

**14. Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

☑ No.

☐ Yes.   What is the hazard?    _____

If immediate attention is needed, why is it needed?    _____

Where is the property?    _____
Number        Street

_____

Debtor 1   Charles                              Muszynski                              Case number (*if known*) _____

First Name        Middle Name        Last Name

City                                          State      ZIP Code

| Debtor 1 | Charles | | Muszynski | | Case number (if known) _____ |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

---

**Part 5:**    **Explain Your Efforts to Receive a Briefing About Credit Counseling**

**15. Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

**About Debtor 1:**

*You must check one:*

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☑ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy. If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.**   I have a mental illness or a mental deficiency that makes meincapable of realizing or making rational decisions about finances.

☐ **Disability.**   My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.**   I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

**About Debtor 2 (Spouse Only in a Joint Case):**

*You must check one:*

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy. If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.**   I have a mental illness or a mental deficiency that makes meincapable of realizing or making rational decisions about finances.

☐ **Disability.**   My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.**   I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

---

| Debtor 1 | Charles | | Muszynski | | Case number (*if known*) | |
| | First Name | Middle Name | Last Name | | | |

---

| **Part 6:** | **Answer These Questions for Reporting Purposes** |

**16. What kind of debts do you have?**

16a. **Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☑ No. Go to line 16b.
☐ Yes. Go to line 17

16b. **Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☑ No. Go to line 16c.
☐ Yes. Go to line 17

16c. State the type of debts you owe that are not consumer debts or business debts.

Default judgment

---

**17. Are you filing under Chapter 7?**

**Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?**

☐ No. I am not filing under Chapter 7. Go to line 18

☑ Yes. I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

☑ No
☐ Yes

---

**18. How many creditors do you estimate that you owe?**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☑ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

---

**19. How much do you estimate your assets to be worth?**

| | | |
|---|---|---|
| ☑ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

---

**20. How much do you estimate your liabilities to be?**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☑ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

---

| **Part 7:** | **Sign Below** |

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

X _____     X _____
   Signature of Debtor 1                    Signature of Debtor 2

Executed on   05/11/2023                Executed on _____
              MM / DD / YYYY                         MM / DD / YYYY

---

Debtor 1    Charles                    Muszynski                                      Case number (*if known*) _____
           First Name    Middle Name    Last Name

| **For your attorney, if you are represented by one** | I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible. I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect. |
|---|---|

**If you are not represented by an attorney, you do not need to file this page.**

X _____    Date _____
   Signature of Attorney for Debtor                     MM / DD / YYYY


_____
Printed name

_____
Firm name

_____
Number        Street

_____
City                          State        ZIP Code

Contact phone _____    Email address _____

_____
Bar number                       State

Debtor 1    Charles    Muszynski    Case number (if known) _____

| First Name | Middle Name | Last Name |

**For you if you are filing this bankruptcy without an attorney**

**If you are represented by an attorney, you do not need to file this page.**

The law allows you, as an individual, to represent yourself in bankruptcy court, but **you should understand that many people find it extremely difficult to represent themselves successfully. Because bankruptcy has long-term financial and legal consequences, you are strongly urged to hire a qualified attorney.**

To be successful, you must correctly file and handle your bankruptcy case. The rules are very technical, and a mistake or inaction may affect your rights. For example, your case may be dismissed because you did not file a required document, pay a fee on time, attend a meeting or hearing, or cooperate with the court, case trustee, U.S. trustee, bankruptcy administrator, or audit firm if your case is selected for audit. If that happens, you could lose your right to file another case, or you may lose protections, including the benefit of the automatic stay.

You must list all your property and debts in the schedules that you are required to file with the court. Even if you plan to pay a particular debt outside of your bankruptcy, you must list that debt in your schedules. If you do not list a debt, the debt may not be discharged. If you do not list property or properly claim it as exempt, you may not be able to keep the property. The judge can also deny you a discharge of all your debts if you do something dishonest in your bankruptcy case, such as destroying or hiding property, falsifying records, or lying. Individual bankruptcy cases are randomly audited to determine if debtors have been accurate, truthful, and complete. **Bankruptcy fraud is a serious crime; you could be fined and imprisoned.**

If you decide to file without an attorney, the court expects you to follow the rules as if you had hired an attorney. The court will not treat you differently because you are filing for yourself. To be successful, you must be familiar with the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the local rules of the court in which your case is filed. You must also be familiar with any state exemption laws that apply.

Are you aware that filing for bankruptcy is a serious action with long-term financial and legal consequences?

☐ No
☑ Yes

Are you aware that bankruptcy fraud is a serious crime and that if your bankruptcy forms are inaccurate or incomplete, you could be fined or imprisoned?

☐ No
☑ Yes

Did you pay or agree to pay someone who is not an attorney to help you fill out your bankruptcy forms?

☑ No
☐ Yes.    Name of Person _____

Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

By signing here, I acknowledge that I understand the risks involved in filing without an attorney. I have read and understood this notice, and I am aware that filing a bankruptcy case without an attorney may cause me to lose my rights or property if I do not properly handle the case.

X _____    X _____
Signature of Debtor 1    Signature of Debtor 2

Date    05/11/2023    Date _____
     MM / DD / YYYY         MM / DD / YYYY

Contact phone    424-333-0569    Contact phone _____

Cell phone    424-333-0569    Cell phone _____

Email address    usfilefolder@protonmail.com    Email address _____

| Debtor 1 | Charles | | Muszynski | | Case number (*if known*) | _____ |
|---|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | | |

**Request for 30-day Temporary Waiver of Credit Counseling Briefing Requirement**

| About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|
| Explanation of efforts made to obtain credit counseling briefing, why I was unable to obtain it before I filed for bankruptcy, and the exigent circumstances that required me to file this case: | Explanation of efforts made to obtain credit counseling briefing, why I was unable to obtain it before I filed for bankruptcy, and the exigent circumstances that required me to file this case: |
| Due to an inability to pay the fee for the counseling services as my credit card has not been able to be charged, I was unable to obtain the counseling services in advance of filing. I will get the card reactivated and complete the counseling before May 18, 2023. NONE of my debt is related to irresponsible credit use or profligate spending. The entire reason for filing is a default judgment for $15,000,000.00 in Miami Federal Court by a copyright troll and his movie backers. There will be NO ISSUE with having the course completed and reported to the Court by the end of business on 18 May. | |

Date    05/11/2023
       MM / DD / YYYY

Date    _____
       MM / DD / YYYY

**Fill in this information to identify your case:**

| | | |
|---|---|---|
| Debtor 1 | Charles | Muszynski |
| | First Name          Middle Name | Last Name |
| Debtor 2 | | |
| (Spouse, if filing) | | |
| | First Name          Middle Name | Last Name |
| United States Bankruptcy Court for the: | Eastern District of Texas | |
| Case number (If known) | | |

☐ Check if this is an amended filing

Official Form 106Dec

# Declaration About an Individual Debtor's Schedules          12/15

If two married people are filing together, both are equally responsible for supplying correct information.

You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**Sign Below**

Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?

☑ No

☐ Yes.  Name of person _____.  *Attach Bankruptcy Petition Preparer's Notice, Declaration, and Signature (Official Form 119).*

Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.

X _____          X _____
Signature of Debtor 1                              Signature of Debtor 2

Date 05/11/2023                                Date _____
     MM / DD / YYYY                                    MM / DD / YYYY

**Fill in this information to identify your case:**

| | | |
|---|---|---|
| Debtor 1 | Charles | Muszynski |
| | First Name    Middle Name | Last Name |
| Debtor 2 (Spouse, if filing) | | |
| | First Name    Middle Name | Last Name |
| United States Bankruptcy Court for the: | Eastern District of Texas | |
| Case number (if known) | | |

☐ Check if this is an amended filing

## Official Form 106Sum

## Summary of Your Assets and Liabilities and Certain Statistical Information    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new Summary and check the box at the top of this page.

### Part 1:  Summarize Your Assets

|  |  | **Your assets** Value of what you own |
|---|---|---|
| 1. | *Schedule A/B: Property* (Official Form 106A/B) | |
| | 1a. Copy line 55, Total real estate, from *Schedule A/B* ............................................. | $ 0.00 |
| | 1b. Copy line 62, Total personal property, from *Schedule A/B* .................................. | $ 12230.00 |
| | 1c. Copy line 63, Total of all property on *Schedule A/B* ........................................... | $ 12230.00 |

### Part 2:  Summarize Your Liabilities

|  |  | **Your liabilities** Amount you owe |
|---|---|---|
| 2. | *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D) | |
| | 2a. Copy the total you listed in Column A, *Amount of claim*, at the bottom of the last page of Part 1 of *Schedule D* ........ | $ |
| 3. | *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F) | |
| | 3a. Copy the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F* ............................................. | $ 1322980.00 |
| | 3b. Copy the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F* .................................. | + $ 469999999.53 |
| | **Your total liabilities** | $ 471322979.53 |

### Part 3:  Summarize Your Income and Expenses

|  |  |  |
|---|---|---|
| 4. | *Schedule I: Your Income* (Official Form 106I) | |
| | Copy your combined monthly income from line 12 of *Schedule I* ............................................................... | $ 3382.53 |
| 5. | *Schedule J: Your Expenses* (Official Form 106J) | |
| | Copy your monthly expenses from line 22c of *Schedule J* ....................................................................... | $ 3846.00 |

| Debtor 1 | Charles | Muszynski | | Case number (*if known*) | |
| | First Name | Middle Name | Last Name | | |

---

| **Part 4:** | **Answer These Questions for Administrative and Statistical Records** |

**6. Are you filing for bankruptcy under Chapters 7, 11, or 13?**

☐ No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

☑ Yes

**7. What kind of debt do you have?**

☑ **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9g for statistical purposes. 28 U.S.C. § 159.

☐ **Your debts are not primarily consumer debts.** You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

**8. From the *Statement of Your Current Monthly Income:* Copy your total current monthly income from Official Form 122A-1 Line 11; OR, Form 122B Line 11; OR, Form 122C-1 Line 14.**

$ _____

**9. Copy the following special categories of claims from Part 4, line 6 of *Schedule E/F:***

| | Total claim |
|---|---|
| **From Part 4 on *Schedule E/F*, copy the following:** | |
| 9a. Domestic support obligations (Copy line 6a.) | $  1322980.00 |
| 9b. Taxes and certain other debts you owe the government. (Copy line 6b.) | $  0.00 |
| 9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.) | $  0.00 |
| 9d. Student loans. (Copy line 6f.) | $  0.00 |
| 9e. Obligations arising out of a separation agreement or divorce that you did not report as priority claims. (Copy line 6g.) | $  0.00 |
| 9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.) | + $  0.00 |
| 9g. **Total.** Add lines 9a through 9f. | $  1322980.00 |

---

Official Form 106Sum          **Summary of Your Assets and Liabilities and Certain Statistical Information**          page 2 of 2

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | Charles | | Muszynski |
| | First Name | Middle Name | Last Name |
| Debtor 2 (Spouse, if filing) | | | |
| | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | Eastern District of Texas | | |
| Case number (If known) | | | |

☐ Check if this is an amended filing

Official Form 106A/B

# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

   ☑ No. Go to Part 2.
   ☐ Yes. Where is the property?

   | | **What is the property?** Check all that apply. | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
   |---|---|---|
   | _____ | ☐ Single-family home | |
   | Street address, if available, or other description | ☐ Duplex or multi-unit building | **Current value of the entire property?**    **Current value of the portion you own?** |
   | _____ | ☐ Condominium or cooperative | |
   | | ☐ Manufactured or mobile home | $ _____    $ _____ |
   | _____ | ☐ Land | |
   | City          State    ZIP Code | ☐ Investment property | **Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.** |
   | | ☐ Timeshare | |
   | _____ | ☐ Other | |
   | County | | _____ |
   | | **Who has an interest in the property?** Check one. | |
   | | ☐ Debtor 1 only | |
   | | ☐ Debtor 2 only | ☐ Check if this is community property (see instructions) |
   | | ☐ Debtor 1 and Debtor 2 only | |
   | | ☐ At least one of the debtors and another | |
   | | **Other information you wish to add about this item, such as local property identification number:** | |
   | | _____ | |

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here. ................................................ → $ _____ 0.00

**Part 2:    Describe Your Vehicles**

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

   ☐ No
   ☑ Yes

Debtor 1    Charles    Muszynski    Case number (*if known*) _____

First Name        Middle Name        Last Name

---

| 3.1 | Make: | porsche | **Who has an interest in the property?** Check one. | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|---|

| | Model | boxster | ☑ Debtor 1 only | |
| | Year: | 1998 | ☐ Debtor 2 only | |
| | Approximate mileage: | 128000 | ☐ Debtor 1 and Debtor 2 only | **Current value of the entire property?** **Current value of the portion you own?** |
| | Other information: | | ☐ At least one of the debtors and another | |

☐ Check if this is community property (see instructions)

$ _____3200.00  $ _____3200.00

---

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**

   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

   ☑ No
   ☐ Yes

| | Make: | _____ | **Who has an interest in the property?** Check one. | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|---|
| | Model | _____ | ☐ Debtor 1 only | |
| | Year: | _____ | ☐ Debtor 2 only | |
| | Other information: | | ☐ Debtor 1 and Debtor 2 only | **Current value of the entire property?** **Current value of the portion you own?** |
| | | | ☐ At least one of the debtors and another | |

☐ **Check if this is community property** (see instructions)

$ _____  $ _____

---

5. **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here.** .............................................................. ➔ $ _____3200.00

---

| Debtor 1 | Charles | | Muszynski | | Case number (*if known*) | _____ |
| | First Name | Middle Name | Last Name | | | |

---

| Part 3: | Describe Your Personal and Household Items |
|---|---|

| Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**6. Household goods and furnishings**

*Examples:* Major appliances, furniture, linens, china, kitchenware

☐ No
☑ Yes. Describe. ........ | Small microwave oven, cooking utensils, small stereo, books, old family records. | $ 1000.00

**7. Electronics**

*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collection; electronic devices including cell phones, cameras, media players, games

☐ No
☑ Yes. Describe. ........ | Laptop, small stereo, mobile phone for VOIP, printer/scanner, about 50 cds, digital camera | $ 1300.00

**8. Collectibles of value**

*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles

☑ No
☐ Yes. Describe. ........ | | $ _____

**9. Equipment for sports and hobbies**

*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments

☐ No
☑ Yes. Describe. ........ | Workout clothing, 2 pairs trainers, bicycle | $ 300.00

**10. Firearms**

*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment

☑ No
☐ Yes. Describe. ........ | | $ _____

**11. Clothes**

*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories

☐ No
☑ Yes. Describe. ........ | 5 business suits, 2 leather jackets, wool overcoat, shirts, pants, underclothes, 5 pairs dress shoes | $ 500.00

**12. Jewelry**

*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver

☑ No
☐ Yes. Describe. ........ | | $ _____

Debtor 1    Charles    Muszynski    _____    Case number (*if known*) _____

| First Name | Middle Name | Last Name |

---

**13. Non-farm animals**

*Examples:* Dogs, cats, birds, horses

☑ No

☐ Yes. Describe. ....... [                                      ]    $ _____

**14. Any other personal and household items you did not already list, including any health aids you did not list**

☑ No

☐ Yes. Give specific
information. .......... [                                      ]    $ _____

**15.** Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached
for Part 3. Write that number here. ...................................................................................... ➔    $ _____3100.00

---

| Debtor 1 | Charles | Muszynski | | Case number (*if known*) | |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

---

**Part 4:    Describe Your Financial Assets**

Do you own or have any legal or equitable interest in any of the following?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

**16. Cash**

*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☐ No
☑ Yes ......................................................................................................................... Cash: ................    $ _____120.00

**17. Deposits of money**

*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No
☑ Yes....................

| | | Institution name: | |
|---|---|---|---|
| 17.1 | Checking account: | Bank of Nevis | $ 5800.00 |
| 17.2 | Checking account: | Bank OZK | $ 10.00 |

**18. Bonds, mutual funds, or publicly traded stocks**

*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

☑ No
☐ Yes.....................    Institution or issuer name:

$ _____

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☑ No
☐ Yes. Give specific information about them .....................

| Name of entity: | % of ownership: | |
|---|---|---|
| | 0 % | $ _____ |

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**

*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☑ No
☐ Yes. Give specific information about them .....................    Issuer name:

$ _____

**21. Retirement or pension accounts**

*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☑ No
☐ Yes. List each account separately.    Type of account:    Institution name:

$ _____

---

| Debtor 1 | Charles | Muszynski | | Case number (*if known*) | |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

---

**22. Security deposits and prepayments**

Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

☑ No

☐ Yes..........................    Institution name or individual:

_____    $ _____

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

☑ No

☐ Yes..........................    Issuer name and description:

_____    $ _____

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☑ No

☐ Yes..........................    Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

_____    $ _____

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

☐ No

☑ Yes. Give specific
information about them .....    | I am a beneficiary of a trust and, upon making application, may be granted money for my personal health and maintenance if qualified by spendthrift provision and trustee's approval. |    $ _____ 0.00

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**

*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

☑ No

☐ Yes. Give specific
information about them .....    | |    $ _____

**27. Licenses, franchises, and other general intangibles**

*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

☑ No

☐ Yes. Give specific
information about them .....    | |    $ _____

---

**Money or property owed to you?**

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

**28. Tax refunds owed to you**

☑ No

☐ Yes. Give specific information
about them, including whether
you already filed the returns
and the tax years. ....................    | |    Federal:    $ _____
State:    $ _____
Local:    $ _____

---

| Debtor 1 | Charles | | Muszynski | | Case number (*if known*) _____ |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

---

**29. Family support**

*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

☑ No

☐ Yes. Give specific information. .........

| | Alimony: | $ _____ |
|---|---|---|
| | Maintenance: | $ _____ |
| | Support: | $ _____ |
| | Divorce Settlement: | $ _____ |
| | Property Settlement: | $ _____ |

**30. Other amounts someone owes you**

*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else

☑ No

☐ Yes. Give specific information. ........                                   $ _____

**31. Interests in insurance policies**

*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

☑ No

☐ Yes. Name the insurance company
of each policy and list its value. ....   Company name:            Beneficiary:

_____   _____   $ _____

**32. Any interest in property that is due you from someone who has died**

If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

☑ No

☐ Yes. Give specific information. ........                                   $ _____

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**

*Examples:* Accidents, employment disputes, insurance claims, or rights to sue

☑ No

☐ Yes. Give specific information. ........                                   $ _____

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

☑ No

☐ Yes. Give specific information. ........                                   $ _____

**35. Any financial assets you did not already list**

☑ No

☐ Yes. Give specific information. ........                                   $ _____

**36.** Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here ..................................................➔ | $ 5930.00 |

---

| Debtor 1 | Charles | Muszynski | | Case number (*if known*) | |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

---

| **Part 5:** | **Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.** |
|---|---|

**37. Do you own or have any legal or equitable interest in any business-related property?**

- ☑ No. Go to Part 6.
- ☐ Yes. Go to line 38.

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

**38. Accounts receivable or commissions you already earned**

- ☐ No
- ☐ Yes. Describe ....... _____     $ _____

**39. Office equipment, furnishings, and supplies**

*Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices

- ☐ No
- ☐ Yes. Describe ....... _____     $ _____

**40. Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**

- ☐ No
- ☐ Yes. Describe ....... _____     $ _____

**41. Inventory**

- ☐ No
- ☐ Yes. Describe ....... _____     $ _____

**42 Interests in partnerships or joint ventures**

- ☐ No
- ☐ Yes. Describe ....... Name of entity:                    % of ownership:
  _____     0 %     $ _____

**43. Customer lists, mailing lists, or other compilations**

- ☐ No
- ☐ Yes. **Do your lists include personally identifiable information (as defined in 11 U.S.C. § 101(41A))?**
  - ☐ No
  - ☐ Yes. Describe ....... _____     $ _____

**44. Any business-related property you did not already list**

- ☐ No
- ☐ Yes. Give specific information ...........
  _____     $ _____

**45. Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached for Part 5. Write that number here** ...............................................................................➔   $ _____ 0.00

| Debtor 1 | Charles | Muszynski | | Case number (*if known*) | |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

---

**Part 6:** **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.**
If you own or have an interest in farmland, list it in Part 1.

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

☑ No. Go to Part 7.
☐ Yes. Go to line 47.

> **Current value of the portion you own?**
> Do not deduct secured claims or exemptions.

47. **Farm animals**

*Examples:* Livestock, poultry, farm-raised fish

☐ No
☐ Yes ..................... $ _____

48. **Crops—either growing or harvested**

☐ No
☐ Yes. Give specific information .......... $ _____

49. **Farm and fishing equipment, implements, machinery, fixtures, and tools of trade**

☐ No
☐ Yes ..................... $ _____

50. **Farm and fishing supplies, chemicals, and feed**

☐ No
☐ Yes ..................... $ _____

51. **Any farm- and commercial fishing-related property you did not already list**

☐ No
☐ Yes. Give specific information .......... $ _____

52. **Add the dollar value of all of your entries from Part 6, including any entries for pages you have attached for Part 6. Write that number here** ................................................................................... ➔ $ _____

Debtor 1    Charles    Muszyns    Case number (*if known*) _____

First Name    Middle Name    Last Name

---

## Part 7:    Describe All Property You Own or Have an Interest in That You Did Not List Above

53. **Do you have other property of any kind you did not already list?**

    *Examples:*  Season tickets, country club membership

    ☑ No

    ☐ Yes. Give specific
       information ..........

    _____    $ _____

54. **Add the dollar value of all of your entries from Part 7. Write that number here** ...................................... ➔ | $ _____ 0.00

---

## Part 8:    List the Totals of Each Part of this Form

55. **Part 1: Total real estate, line 2** ................................................................................ ➔ | $ _____ 0.00

56. **Part 2: Total vehicles, line 5**    $ _____ 3200.00

57. **Part 3: Total personal and household items, line 15**    $ _____ 3100.00

58. **Part 4: Total financial assets, line 36**    $ _____ 5930.00

59. **Part 5: Total business-related property, line 45**    $ _____ 0.00

60. **Part 6: Total farm- and fishing-related property, line 52**    $ _____

61. **Part 7: Total other property not listed, line 54**    +$ _____ 0.00

62. **Total personal property. Add lines 56 through 61.** ............    $ _____ 12230.00    Copy personal property total ➔ | +$ _____ 12230.00

63. **Total of all property on Schedule A/B. Add line 55 + line 62.** ................................................................ | $ _____ 12230.00

---

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | Charles | | Muszynski |
| | First Name | Middle Name | Last Name |
| Debtor 2 (Spouse, if filing) | | | |
| | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | Eastern District of Texas | | |
| Case number (if known) | | | |

☐ Check if this is an amended filing

Official Form 106C

# Schedule C: The Property You Claim as Exempt

04/19

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

| Part 1: | Identify the Property You Claim as Exempt |
|---|---|

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☑ You are claiming state and federal nonbankruptcy exemptions. 11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions. 11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own? Copy the value from *Schedule A/B* | Amount of the exemption you claim *Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| Brief description: 1998 porsche boxster<br>Line from *Schedule A/B*: 3.1 | $ 3200.00 | ☐ $ _____<br>☑ 100% of fair market value, up to any applicable statutory limit | _____ |
| Brief description: Laptop, small stereo, mobile phone for VOIP, printer/scanner, about 50 cds, digital camera<br>Line from *Schedule A/B*: 7 | $ 1300.00 | ☐ $ _____<br>☑ 100% of fair market value, up to any applicable statutory limit | |
| Brief description: Small microwave oven, cooking utensils, small stereo, books, old family records.<br>Line from *Schedule A/B*: 6 | $ 1000.00 | ☐ $ _____<br>☑ 100% of fair market value, up to any applicable statutory limit | |
| Brief description: Workout clothing, 2 pairs trainers, bicycle | | | |

Debtor 1    Charles                        Muszynski                                          Case number (if known) _____
           First Name    Middle Name        Last Name

| Part 2: | Additional Page |

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own?<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| Line from *Schedule A/B:* 9 | $ 300.00 | ☐ $ _____<br>☑ 100% of fair market value, up to any applicable statutory limit | _____ |
| Brief description: 5 business suits, 2 leather jackets, wool overcoat, shirts, pants, underclothes, 5 pairs dress shoes<br>Line from *Schedule A/B:* 11 | $ 500.00 | ☐ $ _____<br>☑ 100% of fair market value, up to any applicable statutory limit | _____ |
| Brief description: Cash on Hand<br>Line from *Schedule A/B:* 16 | $ 120.00 | ☐ $ _____<br>☑ 100% of fair market value, up to any applicable statutory limit | _____ |
| Brief description: Checking Account Bank of Nevis<br>Line from *Schedule A/B:* 17.1 | $ 5800.00 | ☐ $ _____<br>☑ 100% of fair market value, up to any applicable statutory limit | _____ |
| Brief description: I am a beneficiary of a trust and, upon making application, may be granted money for my personal health and maintenance if qualified by spendthrift provision and trustee's approval.<br>Line from *Schedule A/B:* 25 | $ 0.00 | ☐ $ _____<br>☑ 100% of fair market value, up to any applicable statutory limit | _____ |
| Brief description: Checking Account Bank OZK<br>Line from *Schedule A/B:* 17.2 | $ 10.00 | ☐ $ _____<br>☑ 100% of fair market value, up to any applicable statutory limit | _____ |

3. **Are you claiming a homestead exemption of more than $170,350?**
   (Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.)

   ☑ No
   ☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?
   　　☐ No
   　　☐ Yes

**Fill in this information to identify your case:**

| | | |
|---|---|---|
| Debtor 1 | Charles | Muszynski |
| | First Name | Middle Name | Last Name |
| Debtor 2 (Spouse, if filing) | | |
| | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | Eastern District of Texas | |
| Case number (if known) | | |

☐ Check if this is an amended filing

Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

1. **Do any creditors have claims secured by your property?**
   ☑ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.
   ☐ Yes. Fill in all of the information below.

## Part 1:    List All Secured Claims

2. **List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | Column A Amount of claim Do not deduct the value of collateral. | Column B Value of collateral that supports this claim | Column C Unsecured portion if any |
|---|---|---|---|

| | | Column A | Column B | Column C |
|---|---|---|---|---|
| Creditor's Name | Describe the property that secures the claim: | $_____ | $_____ | $_____ |
| Number    Street | | | | |
| | As of the date you file, the claim is: Check all that apply. | | | |
| City    State    ZIP Code | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | | |
| **Who owes the debt?** Check one. | **Nature of lien.** Check all that apply. | | | |
| ☐ Debtor 1 only | ☐ An agreement you made (such as mortgage or secured car loan) | | | |
| ☐ Debtor 2 only | ☐ Statutory lien (such as tax lien, mechanic's lien) | | | |
| ☐ Debtor 1 and Debtor 2 only | ☐ Judgment lien from a lawsuit | | | |
| ☐ At least one of the debtors and another | ☐ Other (including a right to offset) | | | |
| ☐ **Check if this claim is for a community debt** | | | | |
| Date debt was incurred | Last 4 digits of account number | | | |

| | Column A dollar value totals from all pages. | $_____ | |
|---|---|---|---|

Debtor 1   Charles _____ Muszynski _____   Case number (*if known*) _____
           First Name    Middle Name    Last Name

| Part 2: | List Others to Be Notified for a Debt That You Already Listed |
|---------|---------------------------------------------------------------|

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

_____
Name

_____
Number    Street

_____

_____
City                    State    ZIP Code

On which line in Part 1 did you enter the creditor? _____

Last 4 digits of account number _____

| Fill in this information to identify your case: | |
|---|---|

| Debtor 1 | Charles | | Muszynski | |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |
| Debtor 2 (Spouse, if filing) | | | | |
| | First Name | Middle Name | Last Name | |
| United States Bankruptcy Court for the: | Eastern District of Texas | | | |
| Case number (If known) | | | | |

☐ Check if this is an amended filing

Official Form 106E/F

# Schedule E/F: Creditors Who Have Unsecured Claims          12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Property* (Official Form 106A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 106G). Do not include any creditors with partially secured claims that are listed in *Schedule D: Creditors Who Have Claims Secured by Property*. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. On the top of any additional pages, write your name and case number (if known).

| Part 1: | List All of Your PRIORITY Unsecured Claims |
|---|---|

**1. Do any creditors have priority unsecured claims against you?**

☐ No. Go to Part 2.
☑ Yes.

**2. List all of your priority unsecured claims.** If a creditor has more than one priority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. If a claim has both priority and nonpriority amounts, list that claim here and show both priority and nonpriority amounts. As much as possible, list the claims in alphabetical order according to the creditor's name. If you have more than two priority unsecured claims, fill out the Continuation Page of Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3. (For an explanation of each type of claim, see the instructions for this form in the instruction booklet.)

| | | | Total claim | Priority amount | Nonpriority amount |
|---|---|---|---|---|---|
| **2.1** | Marcia Waddell | Last 4 digits of account number  8848 | $ 1322980.0 0 | $ 1322980.0 0 | $      0.00 |
| | Priority Creditor's Name | | | | |
| | 145 West 58th Street | When was the debt incurred? 20 december 2016 | | | |
| | Number    Street | | | | |
| | | As of the date you file, the claim is: Check all that apply | | | |
| | New York                NY      10019 | ☐ Contingent | | | |
| | City                          State    ZIP Code | ☑ Unliquidated | | | |
| | | ☐ Disputed | | | |
| | Who incurred the debt? Check one. | | | | |
| | ☐ Debtor 1 only | Type of PRIORITY unsecured claim: | | | |
| | ☐ Debtor 2 only | ☑ Domestic support obligations | | | |
| | ☐ Debtor 1 and Debtor 2 only | ☐ Taxes and certain other debts you owe the government | | | |
| | ☐ At least one of the debtors and another | ☐ Claims for death or personal injury while you were intoxicated | | | |
| | ☐ Check if this claim is for a community debt | ☐ Other. Specify | | | |
| | Is the claim subject to offset? | | | | |
| | ☑ No | | | | |
| | ☐ Yes | | | | |

Debtor 1    Charles            Muszynski

First Name        Middle Name        Last Name            Case number (*if known*) _____

| | |
|---|---|

**Part 2:** **List ALL of Your NONPRIORITY Unsecured Claims**

**3. Do any creditors have nonpriority unsecured claims against you?**

☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.

☑ Yes

**4. List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim.** If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

|  |  | Total claim |
|---|---|---|

| **4.1** | Millennium Funding, Inc. | **Last 4 digits of account number** _____ | $ 9999999.99 |
|---|---|---|---|

Nonpriority Creditor's Name

**When was the debt incurred?**  25 March 2022

318 N. Carson Street

Number    Street

Ste 208

Carson City            NV        89701

City                State    ZIP Code

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☑ Unliquidated
☐ Disputed

**Who incurred the debt? Check one.**

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**

☐ No
☑ Yes

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify

Default judgment of $15,000,000.00

| **4.2** | 2.HUNTER KILLER PRODUCTIONS, INC. | **Last 4 digits of account number** _____ | $ 9999999.99 |
|---|---|---|---|

Nonpriority Creditor's Name

**When was the debt incurred?**  25 March 2022

318 N. Carson Street

Number    Street

Ste 208

Carson City            NV        89701

City                State    ZIP Code

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☑ Unliquidated
☐ Disputed

**Who incurred the debt? Check one.**

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**

☐ No
☑ Yes

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify

Default judgment of $15,000,000.00

| **4.3** | 3.        VOLTAGE HOLDINGS, LLC | **Last 4 digits of account number** _____ | $ 9999999.99 |
|---|---|---|---|

Nonpriority Creditor's Name

**When was the debt incurred?**  March 25, 2022

116 N. Robertson Blvd

Number    Street

Suite 200

Los Angeles            CA        90048

City                State    ZIP Code

**As of the date you file, the claim is:** Check all that apply

| Debtor 1 | Charles | Muszynski | | Case number (if known) _____ |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

| **Part 2:** | **Your NONPRIORITY Unsecured Claims - Continuation Page** |
|---|---|

After listing any entries on this page, number them beginning with 4.., followed by 4.5, and so forth.

**Total claim**

**Who incurred the debt? Check one.**
- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [ ] **Check if this claim is for a community debt**

**Is the claim subject to offset?**
- [ ] No
- [✓] Yes

- [ ] Contingent
- [✓] Unliquidated
- [ ] Disputed

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [✓] Other. Specify
      15,000,000.00 default judgment

---

| 4.4 | 4. | EVE NEVADA, LLC | | $ 9999999.99 |

Nonpriority Creditor's Name

116 N. Robertson Blvd
Number    Street

Suite 200

| Los Angeles | CA | 90048 |
| City | State | ZIP Code |

**Last 4 digits of account number** _____

**When was the debt incurred?** March 25, 2022

**As of the date you file, the claim is: Check all that apply**
- [ ] Contingent
- [✓] Unliquidated
- [ ] Disputed

**Who incurred the debt? Check one.**
- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [ ] **Check if this claim is for a community debt**

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [✓] Other. Specify
      15,000,000.00 default judgment

**Is the claim subject to offset?**
- [ ] No
- [✓] Yes

---

| 4.5 | 5. | BODYGUARD PRODUCTIONS, INC. | | $ 9999999.99 |

Nonpriority Creditor's Name

318 N. Carson Street
Number    Street

Ste 208

| Carson City | NV | 89701 |
| City | State | ZIP Code |

**Last 4 digits of account number** _____

**When was the debt incurred?** March 25, 2022

**As of the date you file, the claim is: Check all that apply**
- [ ] Contingent
- [✓] Unliquidated
- [ ] Disputed

**Who incurred the debt? Check one.**
- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [ ] **Check if this claim is for a community debt**

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [✓] Other. Specify
      15,000,000.00 default judgment

**Is the claim subject to offset?**
- [ ] No
- [✓] Yes

---

| 4.6 | 6. | KILLING LINK DISTRIBUTION, LLC | | $ 9999999.99 |

Nonpriority Creditor's Name

**Last 4 digits of account number** _____

Debtor 1    Charles    Muszynski    Case number (*if known*) _____

First Name        Middle Name        Last Name

---

| **Part 2:** | **Your NONPRIORITY Unsecured Claims - Continuation Page** |
|---|---|

After listing any entries on this page, number them beginning with 4.., followed by 4.5, and so forth.    | **Total claim** |

9190 Olympic Blvd

Number    Street

Suite 400

Beverly Hills        CA        90212

City        State        ZIP Code

**Who incurred the debt? Check one.**
- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [ ] Check if this claim is for a community debt

**Is the claim subject to offset?**
- [ ] No
- [x] Yes

**When was the debt incurred?** March 25, 2022

**As of the date you file, the claim is: Check all that apply**
- [ ] Contingent
- [x] Unliquidated
- [ ] Disputed

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [x] Other. Specify    15,000,000.00 default judgment

---

**4.7** | **7.** | **LHF PRODUCTIONS, INC.** | **Last 4 digits of account number** _____ | $ 9999999.99 |

Nonpriority Creditor's Name

318 N. Carson Street

Number    Street

Ste 208

Carson City        NV        89701

City        State        ZIP Code

**Who incurred the debt? Check one.**
- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [ ] Check if this claim is for a community debt

**Is the claim subject to offset?**
- [ ] No
- [x] Yes

**When was the debt incurred?** March 25, 2022

**As of the date you file, the claim is: Check all that apply**
- [ ] Contingent
- [x] Unliquidated
- [ ] Disputed

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [x] Other. Specify    15,000,000.00 default judgment

---

**4.8** | **8.** | **RAMBO V PRODUCTIONS, INC.** | **Last 4 digits of account number** _____ | $ 9999999.99 |

Nonpriority Creditor's Name

318 N. Carson Street

Number    Street

Ste 208

Carson City        NV        89701

City        State        ZIP Code

**Who incurred the debt? Check one.**
- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [ ] Check if this claim is for a community debt

**Is the claim subject to offset?**
- [ ] No

**When was the debt incurred?** March 25, 2022

**As of the date you file, the claim is: Check all that apply**
- [ ] Contingent
- [x] Unliquidated
- [ ] Disputed

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [x] Other. Specify

---

Debtor 1    Charles                    Muszynski

First Name      Middle Name      Last Name                    Case number (*if known*) _____

| Part 2: | Your NONPRIORITY Unsecured Claims - Continuation Page | |
|---|---|---|

| | | Total claim |
|---|---|---|
| After listing any entries on this page, number them beginning with 4.., followed by 4.5, and so forth. | | |

☑ Yes          15,000,000.00 default judgment _____

**4.9**  9.    WONDER ONE, LLC

Nonpriority Creditor's Name

4164 Weslin Ave

Number    Street

Sherman Oaks            CA        91423

City                State      ZIP Code

**Who incurred the debt? Check one.**

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**

☐ No
☑ Yes

Last 4 digits of account number _____

When was the debt incurred?  _____

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☑ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify    15,000,000.00 _____

$ 9999999.99

**4.10**  10.    DEFINITION DELAWARE, LLC

Nonpriority Creditor's Name

251 Little Falls Drive

Number    Street

Wilmington            DE        19808

City                State      ZIP Code

**Who incurred the debt? Check one.**

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**

☐ No
☑ Yes

Last 4 digits of account number _____

When was the debt incurred?  March 25, 2022

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☑ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify    15,000,000.00 default judgment

$ 9999999.99

**4.11**  11.    MILLENNIUM IP, INC.

Nonpriority Creditor's Name

318 N. Carson Street

Number    Street

Ste 208

Carson City            NV        89701

City                State      ZIP Code

**Who incurred the debt? Check one.**

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Last 4 digits of account number _____

When was the debt incurred?  March 25, 2022

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☑ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

$ 9999999.99

Debtor 1    Charles                Muszynski                Case number (*if known*) _____
      First Name        Middle Name        Last Name

| **Part 2:** | **Your NONPRIORITY Unsecured Claims - Continuation Page** | |
|---|---|---|

| After listing any entries on this page, number them beginning with 4.., followed by 4.5, and so forth. | **Total claim** |
|---|---|

☐ Check if this claim is for a community debt

Is the claim subject to offset?
☐ No
☑ Yes

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify

    15,000,000.00 default judgment

---

**4.12** | 12.    NIKOLA PRODUCTIONS, INC.
Nonpriority Creditor's Name

318 N. Carson Street
Number   Street

Ste 208

Carson City      NV     89701
City        State     ZIP Code

Who incurred the debt? Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

Is the claim subject to offset?
☐ No
☑ Yes

Last 4 digits of account number _____

When was the debt incurred? March 25, 2022

As of the date you file, the claim is: Check all that apply
☐ Contingent
☑ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify
    15,000,000.00 default judgment

$ 9999999.99

---

**4.13** | 13.    OUTPOST PRODUCTIONS, INC.
Nonpriority Creditor's Name

318 N. Carson Street
Number   Street

Ste 208

Carson City      NV     89701
City        State     ZIP Code

Who incurred the debt? Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

Is the claim subject to offset?
☐ No
☐ Yes

Last 4 digits of account number _____

When was the debt incurred? March 25, 2022

As of the date you file, the claim is: Check all that apply
☐ Contingent
☑ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify
    15,000,000.00 default judgment

$ 9999999.99

---

**4.14** | 14.    211 PRODUCTIONS, INC.
Nonpriority Creditor's Name

318 N. Carson Street
Number   Street

Ste 208

Carson City      NV     89701
City        State     ZIP Code

Who incurred the debt? Check one.

Last 4 digits of account number _____

When was the debt incurred? March 25, 2022

As of the date you file, the claim is: Check all that apply
☐ Contingent

$ 9999999.99

---

| Debtor 1 | Charles | Muszynski | | Case number (*if known*) _____ |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

**Part 2:    Your NONPRIORITY Unsecured Claims - Continuation Page**

After listing any entries on this page, number them beginning with 4.., followed by 4.5, and so forth.                                    Total claim

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

Is the claim subject to offset?
☐ No
☐ Yes

☑ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify     15,000,000.00 default judgment

---

| 4.15 | 15. | DAY OF THE DEAD PRODUCTIONS, INC. | | |
|---|---|---|---|---|

Nonpriority Creditor's Name

318 N. Carson Street, Ste 208, Carson City, NV 897
Number    Street

Ste 208

Carson City          NV        89701
City                 State     ZIP Code

**Who incurred the debt? Check one.**
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

Is the claim subject to offset?
☐ No
☐ Yes

Last 4 digits of account number _____     $ 9999999.99

When was the debt incurred?  March 25, 2022

As of the date you file, the claim is: Check all that apply
☐ Contingent
☑ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify     15,000,000.00 default judgment

---

| 4.16 | 16. | VENICE PI, LLC | | |
|---|---|---|---|---|

Nonpriority Creditor's Name

116 N Robertson Blvd
Number    Street

Ste 200

Los Angeles          CA        90048
City                 State     ZIP Code

**Who incurred the debt? Check one.**
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

Is the claim subject to offset?
☐ No
☑ Yes

Last 4 digits of account number _____     $ 9999999.99

When was the debt incurred?  March 25, 2022

As of the date you file, the claim is: Check all that apply
☐ Contingent
☑ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify     15,000,000.00 default judgment

---

| 4.17 | 17. | I AM WRATH PRODUCTIONS, INC. | | |
|---|---|---|---|---|

Nonpriority Creditor's Name

1901 Ave of the Stars
Number    Street

Last 4 digits of account number _____     $ 9999999.99

---

Debtor 1    Charles              Muszynski                          Case number (*if known*)  _____

First Name        Middle Name        Last Name

---

| **Part 2:** | **Your NONPRIORITY Unsecured Claims - Continuation Page** |
|---|---|

After listing any entries on this page, number them beginning with 4., followed by 4.5, and so forth.    **Total claim**

When was the debt incurred?  March 25, 2022

Ste 1050

| Los Angeles | CA | 90067 |
|---|---|---|
| City | State | ZIP Code |

**As of the date you file, the claim is:** Check all that apply

- ☐ Contingent
- ☑ Unliquidated
- ☐ Disputed

**Who incurred the debt? Check one.**

- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

- ☐ No
- ☑ Yes

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ☑ Other. Specify

  15,000,000.00 default judgment

---

| 4.18 | 18.    BADHOUSE STUDIOS, LLC | Last 4 digits of account number _____ | $ 9999999.9 9 |
|---|---|---|---|
| | Nonpriority Creditor's Name | | |

8265 Sunset Blvd

Number    Street

When was the debt incurred?  March 25, 2022

Ste 107

| West Hollywood | CA | 90046 |
|---|---|---|
| City | State | ZIP Code |

**As of the date you file, the claim is:** Check all that apply

- ☐ Contingent
- ☑ Unliquidated
- ☐ Disputed

**Who incurred the debt? Check one.**

- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

- ☐ No
- ☑ Yes

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ☑ Other. Specify

  15,000,000.00 default judgment

---

| 4.19 | 19.    YAR PRODUCTIONS, INC | Last 4 digits of account number _____ | $ 9999999.9 9 |
|---|---|---|---|
| | Nonpriority Creditor's Name | | |

9 Acer Ct.

Number    Street

When was the debt incurred?  March 25, 2022

| Monsey | NY | 10952 |
|---|---|---|
| City | State | ZIP Code |

**As of the date you file, the claim is:** Check all that apply

- ☐ Contingent
- ☑ Unliquidated
- ☐ Disputed

**Who incurred the debt? Check one.**

- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

- ☐ No

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ☑ Other. Specify

---

Debtor 1    Charles _____ Muszynski _____    Case number (*if known*)_____
　　　　　　First Name　　　Middle Name　　　Last Name

| **Part 2:** | **Your NONPRIORITY Unsecured Claims - Continuation Page** |
|---|---|

| After listing any entries on this page, number them beginning with 4.., followed by 4.5, and so forth. | | **Total claim** |
|---|---|---|

☑ Yes    15,000,000.00 default judgement

---

**4.20**

20.　　AMBI DISTRIBUTION CORP.
Nonpriority Creditor's Name

3415 S. Sepulveda Blvd.
Number　Street

11th Fl.

Los Angeles　　　　CA　　90034
City　　　　　　　　State　　ZIP Code

**Who incurred the debt? Check one.**
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☐ No
☑ Yes

Last 4 digits of account number _____

When was the debt incurred?　March 25, 2022

**As of the date you file, the claim is: Check all that apply**
☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify　15,000,000.00 default judgment

$ 9999999.99

---

**4.21**

21.　　AFTER PRODUCTIONS, LLC
Nonpriority Creditor's Name

1209 Orange Street
Number　Street

Wilmington　　　　DE　　19801
City　　　　　　　　State　　ZIP Code

**Who incurred the debt? Check one.**
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☐ No
☑ Yes

Last 4 digits of account number _____

When was the debt incurred?　March 25, 2022

**As of the date you file, the claim is: Check all that apply**
☐ Contingent
☑ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify　15,000,000.00 default judgment

$ 9999999.99

---

**4.22**

22.　　AFTER II MOVIE, LLC
Nonpriority Creditor's Name

500 N. Rainbow Road
Number　Street

Ste 300A

Las Vegas　　　　NV　　89107
City　　　　　　　　State　　ZIP Code

**Who incurred the debt? Check one.**
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Last 4 digits of account number _____

When was the debt incurred?　March 25, 2022

**As of the date you file, the claim is: Check all that apply**
☐ Contingent
☑ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans

$ 9999999.99

---

Debtor 1    Charles                    Muszynski
    First Name      Middle Name      Last Name             Case number (*if known*)  _____

| **Part 2:** | **Your NONPRIORITY Unsecured Claims - Continuation Page** | |
|---|---|---|

After listing any entries on this page, number them beginning with 4.., followed by 4.5, and so forth. | **Total claim**

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☐ No
☑ Yes

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify
    15,000,000.00 default judgement

---

| 4.23 | 23. | MORGAN CREEK PRODUCTIONS, INC. |
|---|---|---|

Nonpriority Creditor's Name

32 Loockerman Square
Number   Street

#L-100

Dover          DE      19901
City          State   ZIP Code

**Who incurred the debt? Check one.**
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☐ No
☑ Yes

**Last 4 digits of account number** _____

**When was the debt incurred?** March 25, 2022

**As of the date you file, the claim is: Check all that apply**
☐ Contingent
☑ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify
    15,000,000.00 default judgment

$ 9999999.99

---

| 4.24 | 24. | BEDEVILED LLC |
|---|---|---|

Nonpriority Creditor's Name

18823 Belshire Ave
Number   Street

Cerritos            90703
City          State   ZIP Code

**Who incurred the debt? Check one.**
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☐ No
☑ Yes

**Last 4 digits of account number** _____

**When was the debt incurred?** _____

**As of the date you file, the claim is: Check all that apply**
☐ Contingent
☑ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify
    15,000,000.00 default judgment

$ 9999999.99

---

| 4.25 | 25. | MILLENNIUM MEDIA, INC. |
|---|---|---|

Nonpriority Creditor's Name

318 N. Carson Street
Number   Street

Ste 208

Carson City       NV      89701
City          State   ZIP Code

**Who incurred the debt? Check one.**

**Last 4 digits of account number** _____

**When was the debt incurred?** _____

**As of the date you file, the claim is: Check all that apply**
☐ Contingent

$ 9999999.99

---

| Debtor 1 | Charles | Muszynski | | Case number (*if known*) | |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

---

| **Part 2:** | **Your NONPRIORITY Unsecured Claims - Continuation Page** |
|---|---|

After listing any entries on this page, number them beginning with 4., followed by 4.5, and so forth.

**Total claim**

- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another

- [ ] **Check if this claim is for a community debt**

**Is the claim subject to offset?**
- [ ] No
- [x] Yes

- [x] Unliquidated
- [ ] Disputed

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [x] Other. Specify    15,000,000.00 default judgment

---

| 4.26 | 26. | COLOSSAL MOVIE PRODUCTIONS, LLC | | **Last 4 digits of account number** _____ | $ 9999999.99 |

Nonpriority Creditor's Name

127 Broadway
Number    Street

Ste 220

Santa Monica            CA        90401
City                    State     ZIP Code

**When was the debt incurred?**   March 25, 2022

**As of the date you file, the claim is: Check all that apply**
- [ ] Contingent
- [x] Unliquidated
- [ ] Disputed

**Who incurred the debt? Check one.**
- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another

- [ ] **Check if this claim is for a community debt**

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [x] Other. Specify    15,000,000.00 default judgment

**Is the claim subject to offset?**
- [ ] No
- [x] Yes

---

| 4.27 | 27. | FSMQ FILM, LLC | | **Last 4 digits of account number** _____ | $ 9999999.99 |

Nonpriority Creditor's Name

9107 Wilshire Blvd
Number    Street

Ste 600

Beverly Hills           CA        90210
City                    State     ZIP Code

**When was the debt incurred?**   March 25, 2022

**As of the date you file, the claim is: Check all that apply**
- [ ] Contingent
- [x] Unliquidated
- [ ] Disputed

**Who incurred the debt? Check one.**
- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another

- [ ] **Check if this claim is for a community debt**

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [x] Other. Specify    15,000,000.00

**Is the claim subject to offset?**
- [ ] No
- [ ] Yes

---

| 4.28 | 28. | FW PRODUCTIONS, LLC | | **Last 4 digits of account number** _____ | $ 9999999.99 |

Nonpriority Creditor's Name

9454 Wilshire Blvd.
Number    Street

---

Debtor 1    Charles                Muszynski
              First Name    Middle Name    Last Name                              Case number (if known)

| **Part 2:** | **Your NONPRIORITY Unsecured Claims - Continuation Page** |
|---|---|

After listing any entries on this page, number them beginning with 4.., followed by 4.5, and so forth. | **Total claim**

When was the debt incurred? March 25, 2022

Ste M-16

| Beverly Hills | CA | 90212 |
|---|---|---|
| City | State | ZIP Code |

**Who incurred the debt? Check one.**
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
- ☐ No
- ☑ Yes

**As of the date you file, the claim is: Check all that apply**
- ☐ Contingent
- ☑ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**
- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ☑ Other. Specify

15,000,000.00

---

**4.29** | **29.    LF2 PRODUCTIONS, INC** | | $ 9999999.99
        Nonpriority Creditor's Name

318 N. Carson Street
Number    Street

Last 4 digits of account number _____

When was the debt incurred? March 25, 2022

Ste 208

| Carson City | NV | 89701 |
|---|---|---|
| City | State | ZIP Code |

**Who incurred the debt? Check one.**
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
- ☐ No
- ☑ Yes

**As of the date you file, the claim is: Check all that apply**
- ☐ Contingent
- ☑ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**
- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ☑ Other. Specify

15,000,000.00

---

**4.30** | **30.    RUPTURE CAL, INC** | | $ 9999999.99
        Nonpriority Creditor's Name

9454 Wilshire Blvd.
Number    Street

Last 4 digits of account number _____

When was the debt incurred? March 25, 2022

Ste M-16

| Beverly Hills | CA | 90212 |
|---|---|---|
| City | State | ZIP Code |

**Who incurred the debt? Check one.**
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
- ☐ No

**As of the date you file, the claim is: Check all that apply**
- ☐ Contingent
- ☑ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**
- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ☑ Other. Specify

Debtor 1   Charles                                    Muszynski                                      Case number *(if known)* _____
           First Name        Middle Name        Last Name

---

| **Part 2:** | **Your NONPRIORITY Unsecured Claims - Continuation Page** |
|---|---|

| After listing any entries on this page, number them beginning with 4.., followed by 4.5, and so forth. | **Total claim** |
|---|---|

☑ Yes                          15,000,000.00 default judgent

---

**4.31** **31.**   MON, LLC

Nonpriority Creditor's Name

215 1/2 Arnaz Drive
Number    Street

Beverly Hills                    CA        90211
City                             State     ZIP Code

**Who incurred the debt? Check one.**
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☐ No
☑ Yes

**Last 4 digits of account number** _____     $ 9999999.99

**When was the debt incurred?** March 25, 2022

**As of the date you file, the claim is:** Check all that apply
☐ Contingent
☑ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify   15,000,000.00 default judgment

---

**4.32** **32.**   SF FILM, LLC

Nonpriority Creditor's Name

90 State Street
Number    Street

Ste 700, Office 40

Albany                           NY        12207
City                             State     ZIP Code

**Who incurred the debt? Check one.**
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☐ No
☑ Yes

**Last 4 digits of account number** _____     $ 9999999.99

**When was the debt incurred?** March 25, 2022

**As of the date you file, the claim is:** Check all that apply
☐ Contingent
☑ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify   15,000,000.00 default judgment

---

**4.33** **33.**   SPEED KILLS PRODUCTIONS, INC

Nonpriority Creditor's Name

8265 Sunset Blvd.
Number    Street

Ste 107

West Hollywood                   CA        90046
City                             State     ZIP Code

**Who incurred the debt? Check one.**
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Last 4 digits of account number** _____     $ 9999999.99

**When was the debt incurred?** March 25, 2022

**As of the date you file, the claim is:** Check all that apply
☐ Contingent
☑ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans

---

Debtor 1    Charles                    Muszynski                    Case number (if known) _____
    First Name        Middle Name        Last Name

| **Part 2:** | **Your NONPRIORITY Unsecured Claims - Continuation Page** |
|---|---|

After listing any entries on this page, number them beginning with 4.., followed by 4.5, and so forth.    | **Total claim** |

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☐ No
☑ Yes

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify
    15,000,000.00 default judgment

---

**4.34**    34.    MILLENNIUM SPVH, INC          $ 9999999.99
Nonpriority Creditor's Name

Carson Street
Number    Street

Ste 208

Carson City                    NV        89701
City                    State        ZIP Code

**Who incurred the debt? Check one.**
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☐ No
☑ Yes

**Last 4 digits of account number** ___ ___ ___ ___

**When was the debt incurred?** March 25, 2022

**As of the date you file, the claim is: Check all that apply**
☐ Contingent
☑ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify
    15,000,000.00 default judgment

---

**4.35**    35.    HANNIBAL CLASSICS INC          $ 9999999.99
Nonpriority Creditor's Name

8033 Sunset Blvd.
Number    Street

Ste 1066

West Hollywood                    CA
City                    State        ZIP Code

**Who incurred the debt? Check one.**
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☐ No
☑ Yes

**Last 4 digits of account number** ___ ___ ___ ___

**When was the debt incurred?** March 25, 2022

**As of the date you file, the claim is: Check all that apply**
☐ Contingent
☑ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify
    15,000,000.00 default judgment

---

**4.36**    36.    JUSTICE EVERYWHERE PRODUCTIONS LLC          $ 9999999.99
Nonpriority Creditor's Name

at 1901 Ave of the Stars
Number    Street

Ste 1050

Los Angeles                    CA        90067
City                    State        ZIP Code

**Who incurred the debt? Check one.**

**Last 4 digits of account number** ___ ___ ___ ___

**When was the debt incurred?** March 25, 2022

**As of the date you file, the claim is: Check all that apply**
☐ Contingent

---

Debtor 1    Charles          Muszynski
　　　　　First Name　　　Middle Name　　　Last Name          Case number (if known) _____

| **Part 2:** | **Your NONPRIORITY Unsecured Claims - Continuation Page** |

After listing any entries on this page, number them beginning with 4.., followed by 4.5, and so forth. | **Total claim**

- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another

- [ ] Check if this claim is for a community debt

**Is the claim subject to offset?**
- [ ] No
- [✓] Yes

- [✓] Unliquidated
- [ ] Disputed

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [✓] Other. Specify
  15,000,000.00

---

**4.37** | **37.** STATE OF THE UNION DISTRIBUTION AND COLLECTIONS, LLC
Nonpriority Creditor's Name

800 W. 6th Street,
Number    Street

Ste 380

Los Angeles          CA          90001
City          State          ZIP Code

**Who incurred the debt? Check one.**
- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another

- [ ] Check if this claim is for a community debt

**Is the claim subject to offset?**
- [ ] No
- [ ] Yes

**Last 4 digits of account number** _____

**When was the debt incurred?** March 25, 2022

**As of the date you file, the claim is: Check all that apply**
- [ ] Contingent
- [✓] Unliquidated
- [ ] Disputed

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [✓] Other. Specify
  15,000,000.00 default judgment

$ 9999999.99

---

**4.38** | **38.** PARADOX STUDIOS, LLC
Nonpriority Creditor's Name

919 North Market Street
Number    Street

Ste 950

Wilmington          DE          19801
City          State          ZIP Code

**Who incurred the debt? Check one.**
- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another

- [ ] Check if this claim is for a community debt

**Is the claim subject to offset?**
- [ ] No
- [✓] Yes

**Last 4 digits of account number** _____

**When was the debt incurred?** March 25, 2022

**As of the date you file, the claim is: Check all that apply**
- [ ] Contingent
- [✓] Unliquidated
- [ ] Disputed

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [✓] Other. Specify
  15,000,000.00 default judgment

$ 9999999.99

---

**4.39** | **39.** DALLAS BUYERS CLUB, LLC
Nonpriority Creditor's Name

**Last 4 digits of account number** _____

$ 9999999.99

---

Debtor 1    Charles               Muszynski                          Case number (*if known*) _____
            First Name    Middle Name    Last Name

| **Part 2:** | **Your NONPRIORITY Unsecured Claims - Continuation Page** |
|---|---|

After listing any entries on this page, number them beginning with 4.., followed by 4.5, and so forth. **Total claim**

---

7 Switchbud Pl
Number   Street

Ste 192

The Woodlands        TX    77380
City                 State  ZIP Code

**Who incurred the debt? Check one.**
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☐ No
☑ Yes

**When was the debt incurred?** March 25, 2022

**As of the date you file, the claim is: Check all that apply**
☐ Contingent
☑ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify
   15,000,000.00 default judgment

---

**4.40**   40.   SCREEN MEDIA VENTURES, LLC
Nonpriority Creditor's Name

800 Third Ave.
Number   Street

3rd Floor

New York             NY    10022
City                 State  ZIP Code

**Who incurred the debt? Check one.**
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☐ No
☑ Yes

**Last 4 digits of account number** _____

**When was the debt incurred?** March 25, 2022

**As of the date you file, the claim is: Check all that apply**
☐ Contingent
☑ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify
   15,000,000.00 default judgment

$ 9999999.99

---

**4.41**   41.   42 VENTURES, LLC
Nonpriority Creditor's Name

75-5915 Walua Rd.
Number   Street

Kailua Kona          HI    96740
City                 State  ZIP Code

**Who incurred the debt? Check one.**
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☐ No

**Last 4 digits of account number** _____

**When was the debt incurred?** March 25, 2022

**As of the date you file, the claim is: Check all that apply**
☐ Contingent
☑ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify

$ 9999999.99

---

| Debtor 1 | Charles | Muszyb | ski | Case number *(if known)* _____ |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

---

| **Part 2:** | **Your NONPRIORITY Unsecured Claims - Continuation Page** |
|---|---|

| After listing any entries on this page, number them beginning with 4., followed by 4.5, and so forth. | | **Total claim** |
|---|---|---|

☑ Yes    15,000,000.00 default judgment

---

**4.42**   42.   **KERRY STEVEN CULPEPPER**    $ 9999999.99
Nonpriority Creditor's Name

75-5915 Walua Rd.    **When was the debt incurred?**  March 25, 2022
Number    Street

Kailua Kona    HI    96740
City    State    ZIP Code

**As of the date you file, the claim is:** Check all that apply

**Who incurred the debt? Check one.**
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Contingent
☑ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☐ No
☑ Yes

15,000,000.00

---

**4.43**   44.   **JOEL B. ROTHMAN**    $ 9999999.99
Nonpriority Creditor's Name

21301 Powerline Road    **When was the debt incurred?** _____
Number    Street

Ste 100

Boca Raton    FL    33433
City    State    ZIP Code

**As of the date you file, the claim is:** Check all that apply

**Who incurred the debt? Check one.**
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Contingent
☑ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☐ No
☑ Yes

15,000,000.00 default judgment

---

**4.44**   43.   **CULPEPPERIP, LLC**    $ 9999999.99
Nonpriority Creditor's Name

75-5915 Walua Rd.    **When was the debt incurred?** _____
Number    Street

Kailua Kona    HI    96740
City    State    ZIP Code

**As of the date you file, the claim is:** Check all that apply

**Who incurred the debt? Check one.**
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Contingent
☑ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans

---

Debtor 1  Charles                      Muszynski                          Case number (if known) _____
          First Name    Middle Name    Last Name

---

| **Part 2:** | **Your NONPRIORITY Unsecured Claims - Continuation Page** |
|---|---|

| After listing any entries on this page, number them beginning with 4.., followed by 4.5, and so forth. | | **Total claim** |
|---|---|---|

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☐ No
☑ Yes

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify
15,000,000.00 default judgment

---

**4.45**

45.    SRIPLAW, P.A.
Nonpriority Creditor's Name

21301 Powerline Road
Number    Street

Ste 100

Boca Raton            FL        33433
City                  State     ZIP Code

**Who incurred the debt? Check one.**
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☐ No
☑ Yes

**Last 4 digits of account number** _____

**When was the debt incurred?** _____

**As of the date you file, the claim is: Check all that apply**
☐ Contingent
☑ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify
15,000,000.00 default judgment

$ 9999999.99

---

**4.46**

46.    DAVID COX
Nonpriority Creditor's Name

Number    Street

Canton                MI
City                  State     ZIP Code

**Who incurred the debt? Check one.**
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☐ No
☑ Yes

**Last 4 digits of account number** _____

**When was the debt incurred?** March 25, 2022

**As of the date you file, the claim is: Check all that apply**
☐ Contingent
☑ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify
15,000,000.00 default judgment

$ 9999999.99

---

**4.47**

47.    SMR HOSTING LLC
Nonpriority Creditor's Name

Number    Street

Livonia               MI
City                  State     ZIP Code

**Who incurred the debt? Check one.**

**Last 4 digits of account number** _____

**When was the debt incurred?** March 25, 2022

**As of the date you file, the claim is: Check all that apply**
☐ Contingent

$ 9999999.99

---

| Debtor 1 | Charles | Muszynski | | Case number (*if known*) |
| | First Name | Middle Name | Last Name | |

| **Part 2:** | **Your NONPRIORITY Unsecured Claims - Continuation Page** |
|---|---|

After listing any entries on this page, number them beginning with 4.., followed by 4.5, and so forth.

**Total claim**

- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [ ] **Check if this claim is for a community debt**

**Is the claim subject to offset?**

- [ ] No
- [x] Yes

- [x] Unliquidated
- [ ] Disputed

**Type of NONPRIORITY unsecured claim:**

- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [x] Other. Specify

    15,000,000.00 default judgment

Debtor 1   Charles        Muszyn ski
_____  _____  _____                     Case number (*if known*) _____
First Name         Middle Name      Last Name

---

**Part 3:**    **List Others to Be Notified About a Debt That You Already Listed**

5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.

_____        **On which entry in Part 1 or Part 2 did you list the original creditor?**
Name

_____        Line _____ of (*Check one*): ☐ Part 1: Creditors with Priority Unsecured Claims
Number    Street                                                 ☐ Part 2: Creditors with Nonpriority Unsecured Claims

_____        **Last 4 digits of account number** _____
City                    State    ZIP Code

---

Official Form 106E/F          **Schedule E/F: Creditors Who Have Unsecured Claims**          page 20 of 21

| Debtor 1 | Charles | Muszynski | | Case number (*if known*) _____ |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

---

**Part 4:    Add the Amounts for Each Type of Unsecured Claim**

6. **Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. § 159.**
   Add the amounts for each type of unsecured claim.

|  |  | Total claim |
|---|---|---|
| **Total claims from Part 1** | 6a. **Domestic support obligations** | 6a. $ 1322980.00 |
| | 6b. **Taxes and certain other debts you owe the government** | 6b. $ 0.00 |
| | 6c. **Claims for death or personal injury while you were intoxicated** | 6c. $ 0.00 |
| | 6d. **Other.** Add all other priority unsecured claims. Write that amount here. | 6d. + $ 0.00 |
| | 6e. **Total.** Add lines 6a through 6d. | 6e. $ 1322980.00 |

|  |  | Total claim |
|---|---|---|
| **Total claims from Part 2** | 6f. **Student loans** | 6f. $ 0.00 |
| | 6g. **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. $ 0.00 |
| | 6h. **Debts to pension or profit-sharing plans, and other similar debts** | 6h. $ 0.00 |
| | 6i. **Other.** Add all other nonpriority unsecured claims. Write that amount here. | 6i. + $ 469999999.53 |
| | 6j. **Total.** Add lines 6f through 6i. | 6j. $ 469999999.53 |

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | Charles | | Muszynski |
| | First Name | Middle Name | Last Name |
| Debtor 2 (Spouse, if filing) | | | |
| | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | Eastern District of Texas | | |
| Case number (if known) | | | |

☐ Check if this is an amended filing

Official Form 106G

# Schedule G: Executory Contracts and Unexpired Leases    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).

1. **Do you have any executory contracts or unexpired leases?**

   ☐ No. Check this box and file this form with the court with your other schedules. You have nothing else to report on this form.

   ☑ Yes. Fill in all of the information below even if the contracts or leases are listed on *Schedule A/B: Property* (Official Form 106A/B).

2. **List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone).** See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| Person or company with whom you have the contract or lease | State what the contract or lease is for |
|---|---|
| | |

Name

Number    Street

City                                    State    ZIP Code

**Fill in this information to identify your case:**

| | | |
|---|---|---|
| Debtor 1 | Charles | Muszynski |
| | First Name    Middle Name | Last Name |
| Debtor 2 | | |
| (Spouse, if filing) | | |
| | First Name    Middle Name | Last Name |
| United States Bankruptcy Court for the: | Eastern District of Texas | |
| Case number | | |
| (If known) | | |

☐ Check if this is an amended filing

## Official Form 106H

# Schedule H: Your Codebtors

12/15

Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.

1.  **Do you have any codebtors?** (If you are filing a joint case, do not list either spouse as a codebtor.)

    ☑ No

    ☐ Yes

2.  **Within the last 8 years, have you lived in a community property state or territory?** (Community property states and territories include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

    ☐ No. Go to line 3.

    ☐ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?

      ☐ No

      ☐ Yes. In which community state or territory did you live? _____. Fill in the name and current address of that person.

      _____
      Name of your spouse, former spouse, or legal equivalent

      _____
      Number        Street

      _____

      _____
      City                          State          ZIP Code

3.  **In Column 1, list all of your codebtors. Do not include your spouse as a codebtor if your spouse is filing with you. List the person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the creditor on** *Schedule D* **(Official Form 106D),** *Schedule E/F* **(Official Form 106E/F), or** *Schedule G* **(Official Form 106G). Use** *Schedule D, Schedule E/F, or Schedule G* **to fill out Column 2.**

| *Column 1:* **Your codebtor** | *Column 2:* **The creditor to whom you owe the debt** |
|---|---|
| | Check all schedules that apply: |
| _____ | ☐ Schedule D, line _____ |
| Name | ☐ Schedule E/F, line _____ |
| _____ | ☐ Schedule G, line _____ |
| Number    Street | |
| _____ | |
| City                State      ZIP Code | |

**Fill in this information to identify your case:**

| | | |
|---|---|---|
| Debtor 1 | Charles | Muszynski |
| | First Name    Middle Name | Last Name |
| Debtor 2 (Spouse, if filing) | | |
| | First Name    Middle Name | Last Name |
| United States Bankruptcy Court for the: | Eastern District of Texas | |
| Case number (If known) | | |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD / YYYY

Official Form 106I

# Schedule I: Your Income

12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:    Describe Employment

**1. Fill in your employment information.**

If you have more than one job, attach a separate page with information about additional employers.

Include part-time, seasonal, or self-employed work.

Occupation may Include student or homemaker, if it applies

| | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|
| **Employment Status** | ☐ Employed<br>☑ Not employed | ☐ Employed<br>☐ Not employed |
| **Occupation** | _____ | _____ |
| **Employer's name** | _____ | _____ |
| **Employer's address** | _____<br>Number  Street | _____<br>Number  Street |
| | _____<br>City    State  Zip Code | _____<br>City    State  Zip Code |
| **How long employed there?** | _____ | _____ |

Case 23-90112    Doc 1    Filed 05/11/23    Entered 05/12/23 09:03:16    Desc Main
Document    Page 52 of 77

Debtor 1    Charles                    Muszynski                                    Case number (*if known*) _____
    First Name     Middle Name     Last Name

| **Part 2:** | **Give Details About Monthly Income** |
|---|---|

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

|  |  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. $ _____ | $ _____ |
| 3. | Estimate and list monthly overtime pay. | 3. + $ _____ | + $ _____ |
| 4. | Calculate gross income. Add line 2 + line 3. | 4. $ _____ | $ _____ |
|  | Copy line 4 here ...................................................➔ | 4. $ _____ | $ _____ |
| 5. | List all payroll deductions: |  |  |
| 5a. | Tax, Medicare, and Social Security deductions | 5a. $ _____ | $ _____ |
| 5b. | Mandatory contributions for retirement plans | 5b. $ _____ | $ _____ |
| 5c. | Voluntary contributions for retirement plans | 5c. $ _____ | $ _____ |
| 5d. | Required repayments of retirement fund loans | 5d. $ _____ | $ _____ |
| 5e. | Insurance | 5e. $ _____ | $ _____ |
| 5f. | Domestic support obligations | 5f. $ _____ | $ _____ |
| 5g. | Union dues | 5g. $ _____ | $ _____ |
| 5h. | Other deductions. Specify: _____ | 5h. + $ _____ | + $ _____ |
|  | _____ | 5h. + $ _____ | + $ _____ |
| 6. | Add the payroll deductions. Add lines 5a + 5b + 5c + 5d + 5e +5f + 5g + 5h. | 6. $ _____ | $ _____ |
| 7. | Calculate total monthly take-home pay. Subtract line 6 from line 4. | 7. $ _____ | $ _____ |
| 8. | List all other income regularly received: |  |  |
| 8a. | Net income from rental property and from operating business, profession, or farm |  |  |
|  | Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. $ _____ | $ _____ |
| 8b. | Interest and dividends | 8b. $ _____ | $ _____ |
| 8c. | Family support payment that you, a non-filing spouse, or a dependent regularly receive |  |  |
|  | Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. $ _____ | $ _____ |
| 8d. | Unemployment compensation | 8d. $ _____ | $ _____ |

| Debtor 1 | Charles | | Muszyński | | Case number (*if known*) | _____ |
|---|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | | |

| | | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|---|
| 8e. | **Social Security** | | 8e. | $ _____ | $ _____ |
| 8f. | **Other government assistance that you regularly receive** | | | | |
| | Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. | | | | |
| | Specify: _____ | | 8f. | $ _____ | $ _____ |
| | _____ | | 8f. | $ _____ | $ _____ |
| 8g. | **Pension or retirement income** | | 8g. | $ _____ | $ _____ |
| 8h. | **Other monthly income. Specify:** | Annual lump sum for personal maintenance and living expenses from a trust. | 8h. | + $ 3382.53 | + $ _____ |
| | | _____ | 8h. | + $ _____ | + $ _____ |
| 9. | **Add all other income.** Add lines 8a + 8b + 8c + 8d + 8e + 8f + 8g + 8h. | | 9. | $ 3382.53 | $ _____ |
| 10. | **Calculate monthly income. Add line 7 + line 9.** Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse. | | 10. | $ 3382.53 + | $ _____ = $ 3382.53 |

11. **State all other regular contributions to the expenses that you list in** *Schedule J.*

   Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.

   Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*

   Specify: _____    11.  + $ _____

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income. Write that amount on the *Summary of Your Assets and Liabilities and Certain Statistical Information,* if it applies    12.    $ 3382.53

   **Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**

   ☐ No.

   ☑ Yes. Explain: Legal expenses are already almost 10,000.00 and that is 25% of what my annual stipend is; a significant decrease.

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | Charles | | Muszynski |
| | First Name | Middle Name | Last Name |
| Debtor 2 (Spouse, if filing) | | | |
| | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | Eastern District of Texas | | |
| Case number (if known) | | | |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD / YYYY

Official Form 106J

# Schedule J: Your Expenses

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:    Describe Your Household

1.  **Is this a joint case?**

    ☑ No. Go to line 2.

    ☐ Yes. **Does Debtor 2 live in a separate household?**

        ☐ No

        ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household of Debtor 2.*

2.  **Do you have dependents?**

    Do not list Debtor 1 and Debtor 2.

    Do not state the dependents' names.

    ☑ No

    ☐ Yes. Fill out this information for each dependent ......................

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| _____ | _____ | ☐ No  ☐ Yes |
| _____ | _____ | ☐ No  ☐ Yes |
| _____ | _____ | ☐ No  ☐ Yes |
| _____ | _____ | ☐ No  ☐ Yes |
| _____ | _____ | ☐ No  ☐ Yes |

3.  **Do your expenses include expenses of people other than yourself and your dependents?**

    ☑ No
    ☐ Yes

## Part 2:    Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | | Your expenses |
|---|---|---|
| 4. | The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot. | 4.  $ _____ |
| | **If not included in line 4:** | |
| | 4a.  Real estate taxes | 4a.  $ _____ |
| | 4b.  Property, homeowner's, or renter's insurance | 4b.  $ _____ |

| Debtor 1 | Charles | Muszynski | | Case number (if known) _____ |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

|  | **Your expenses** |
|---|---|

| | | |
|---|---|---|
| 4c. Home maintenance, repair, and upkeep expenses | 4c. | $ _____ |
| 4d. Homeowner's association or condominium dues | 4d. | $ _____ |
| 5. **Additional mortgage payments for your residence,** such as home equity loans | 5. | $ _____ |
| 6. **Utilities:** | | |
| 6a. Electricity, heat, natural gas | 6a. | $ 125.00 |
| 6b. Water, sewer, garbage collection | 6b. | $ _____ |
| 6c. Telephone, cell phone, Internet, satellite, and cable services | 6c. | $ 100.00 |
| 6d. Other Specify: _____ | 6d. | $ _____ |
| 7. **Food and housekeeping supplies** | 7. | $ 1200.00 |
| 8. **Childcare and children's education costs** | 8. | $ _____ |
| 9. **Clothing, laundry, and dry cleaning** | 9. | $ 100.00 |
| 10. **Personal care products and services** | 10. | $ _____ |
| 11. **Medical and dental expenses** | 11. | $ 1200.00 |
| 12. **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | 12. | $ _____ |
| 13. **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. | $ _____ |
| 14. **Charitable contributions and religious donations** | 14. | $ _____ |
| 15. **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20 | | |
| 15a. Life insurance | 15a. | $ _____ |
| 15b. Health insurance | 15b. | $ 921.00 |
| 15c. Vehicle insurance | 15c. | $ _____ |
| 15d. Other. Specify: _____ | 15d. | $ _____ |
| 16. **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: _____ | 16. | $ _____ |
| 17. **Installment or lease payments:** | | |
| 17a. Car payments for Vehicle 1 | 17a. | $ _____ |
| 17b. Car payments for Vehicle 2 | 17b. | $ _____ |
| 17c. Other. Specify: _____ | 17c. | $ _____ |
| 17d. Other. Specify: _____ | 17d. | $ _____ |
| 18. **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5,** *Schedule I,* Your Income (Official Form 106I). | 18. | $ _____ |
| 19. **Other payments you make to support others who do not live with you.** | | |

Official Form 106J                    **Schedule J: Your Expenses**                    page 2

Debtor 1    Charles            Muszynski

First Name        Middle Name        Last Name            Case number (if known) _____

|  | | Your expenses |
|---|---|---|
| Specify: _____ | 19. | $ _____ |

20. **Other real property expenses not included in lines 4 or 5 of this form or on** *Schedule I: Your Income.*

|  |  |  |
|---|---|---|
| 20a. Mortgages on other property | 20a. | $ _____ |
| 20b. Real estate taxes | 20b. | $ _____ |
| 20c. Property, homeowner's, or renter's insurance | 20c. | $ _____ |
| 20d. Maintenance, repair, and upkeep expenses | 20d. | $ _____ |
| 20e. Homeowner's association or condominium dues | 20e. | $ _____ |
| 21. **Other.** Specify: Transport cost for taxis and ferries | 21. | +$ 200.00 |

22. **Calculate your monthly expenses.**

|  |  |  |
|---|---|---|
| 22a. Add lines 4 through 21. | 22a. | $ 3846.00 |
| 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | 22b. | $ _____ |
| 22c. Add line 22a and 22b. The result is your monthly expenses. | 22c. | $ 3846.00 |

23. **Calculate your monthly net income.**

|  |  |  |
|---|---|---|
| 23a. Copy line 12 (your combined monthly income) from Schedule I. | 23a. | $ 3382.53 |
| 23b. Copy your monthly expenses from line 22c above. | 23b. | -$ 3846.00 |
| 23c. Subtract your monthly expenses from your monthly income. The result is your monthly net income. | 23c. | $ 0.00 |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**

For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

☐ No.

☑ Yes. Explain here: | Legal fees are arlready approaching 10,000.00 and will take 25% of living cost away. |

| Fill in this information to identify your case: | Check one box only as directed in this form and in Form 122A-1Supp: |
|---|---|

**Fill in this information to identify your case:**

Debtor 1  Charles _____ Muszynski _____
    First Name    Middle Name    Last Name

Debtor 2
(Spouse, if filing) _____
    First Name    Middle Name    Last Name

United States Bankruptcy Court for the:  Eastern District of Texas

Case number
(if known) _____

**Check one box only as directed in this form and in Form 122A-1Supp:**

[✓] 1. There is no presumption of abuse.

[ ] 2. The calculation to determine if a presumption of abuse applies will be made under *Chapter 7 Means Test Calculation* (Official Form 122A–2).

[ ] 3. The Means Test does not apply now because of qualified military service but it could apply later.

[ ] Check if this is an amended filing

## Official Form 122A–1

# Chapter 7 Statement of Your Current Monthly Income
04/20

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for being accurate. If more space is needed, attach a separate sheet to this form. Include the line number to which the additional information applies. On the top of any additional pages, write your name and case number (if known). If you believe that you are exempted from a presumption of abuse because you do not have primarily consumer debts or because of qualifying military service, complete and file *Statement of Exemption from Presumption of Abuse Under § 707(b)(2)* (Official Form 122A-1Supp) with this form.

### Part 1:   Calculate Your Current Monthly Income

1. **What is your marital and filing status?** Check one only.

[✓] Not married. Fill out Column A, lines 2-11.

[ ] Married and your spouse is filing with you. Fill out both Columns A and B, lines 2-11.

[ ] Married and your spouse is NOT filing with you. You and your spouse are:

    [ ] Living in the same household and are not legally separated. Fill out both Columns A and B, lines 2-11.

    [ ] Living separately or are legally separated. Fill out Column A, lines 2-11; do not fill out Column B. By checking this box, you declare under penalty of perjury that you and your spouse are legally separated under nonbankruptcy law that applies or that you and your spouse are living apart for reasons that do not include evading the Means Test requirements. 11 U.S.C. § 707(b)(7)(B).

**Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case.** 11 U.S.C. § 101(10A). For example, if you are filing on September 15, the 6-month period would be March 1 through August 31. If the amount of your monthly income varied during the 6 months, add the income for all 6 months and divide the total by 6. Fill in the result. Do not include any income amount more than once. For example, if both spouses own the same rental property, put the income from that property in one column only. If you have nothing to report for any line, write $0 in the space.

| | Column A<br>Debtor 1 | Column B<br>Debtor 2 or<br>non-filing spouse |
|---|---|---|
| 2. **Your gross wages, salary, tips, bonuses, overtime, and commissions** (before all payroll deductions). | $ _____ | $ _____ |
| 3. **Alimony and maintenance payments.** Do not include payments from a spouse if Column B is filled in. | $ _____ | $ _____ |
| 4. **All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support.** Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Include regular contributions from a spouse only if Column B is not filled in. Do not include payments you listed on line 3. | $ _____ | $ _____ |

5. **Net income from operating a business, profession, or farm**

| | Debtor 1 | Debtor 2 | | | |
|---|---|---|---|---|---|
| Gross receipts (before all deductions) | $ _____ | $ _____ | | | |
| Ordinary and necessary operating expenses | - $ _____ | - $ _____ | | | |
| Net monthly income from a business, profession, or farm | $ _____ | $ _____ | Copy here → | $ _____ | $ _____ |

6. **Net income from rental and other real property**

| | Debtor 1 | Debtor 2 | | | |
|---|---|---|---|---|---|
| Gross receipts (before all deductions) | $ _____ | $ _____ | | | |
| Ordinary and necessary operating expenses | - $ _____ | - $ _____ | | | |
| Net monthly income from rental or other real property | $ _____ | $ _____ | Copy here → | $ _____ | $ _____ |

| Debtor 1 | Charles | Muszynski | | Case number (*if known*) _____ |
| | First Name | Middle Name | Last Name | |

|  |  | Column A<br>Debtor 1 | Column B<br>Debtor 2 or<br>non-filing spouse |
|---|---|---|---|
| 7. | **Interest, dividends, and royalties** | $ _____ | $ _____ |
| 8. | **Unemployment compensation** | $ _____ | $ _____ |

Do not enter the amount if you contend that the amount received was a benefit under the Social Security Act. Instead, list it here: ..........................↓

For you ...................................................................... $ _____

For your spouse ........................................................... $ _____

| 9. | **Pension or retirement income.** Do not include any amount received that was a benefit under the Social Security Act. Also, except as stated in the next sentence, do not include any compensation, pension, pay, annuity, or allowance paid by the United States Government in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services. If you received any retired pay paid under chapter 61 of title 10, then include that pay only to the extent that it does not exceed the amount of retired pay to which you would otherwise be entitled if retired under any provision of title 10 other than chapter 61 of that title. | $ _____ | $ _____ |

10. **Income from all other sources not listed above.** Specify the source and amount. Do not include any benefits received under the Social Security Act; payments made under the Federal law relating to the national emergency declared by the President under the National Emergencies Act (50 U.S.C. 1601 et seq.) with respect to the coronavirus disease 2019 (COVID-19); payments received as a victim of a war crime, a crime against humanity, or international or domestic terrorism; or compensation, pension, pay, annuity, or allowance paid by the United States Government in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services. If necessary, list other sources on a separate page and put the total below.

| _____ | $ _____ | $ _____ |
| _____ | $ _____ | $ _____ |
| **Total amounts from separate pages, if any.** | + $ _____ | + $ _____ |

11. **Calculate your total current monthly income.** Add lines 2 through 10 for each column. Then add the total for Column A to the total for Column B.

$ _____ + $ _____ = $ _____

**Total current monthly income**

---

**Part 2:**     **Determine Whether the Means Test Applies to You**

12. **Calculate your current monthly income for the year.** Follow these steps:

12a.    Copy your total current monthly income from line 11. ...................................................... **Copy line 11 here** ➜   $ _____

Multiply by 12 (the number of months in a year).      **x 12**

12b.    The result is your annual income for this part of the form.     **12b.**   $    0.00

13. **Calculate the median family income that applies to you.** Follow these steps:

Fill in the state in which you live.   [____]

Fill in the number of people in your household.   [____]

Fill in the median family income for your state and size of household. ....................................................... **13.**   $ _____

Debtor 1    Charles                                    Muszynski                        Case number (*if known*) _____

First Name            Middle Name            Last Name

To find a list of applicable median income amounts, go online using the link specified in the separate
instructions for this form. This list may also be available at the bankruptcy clerk's office.

**14. How do the lines compare?**

14a. ☑  Line 12b is less than or equal to line 13. On the top of page 1, check box 1, *There is no presumption of abuse.*
Go to Part 3. Do NOT fill out or file Official Form 122A-2.

14b. ☐  Line 12b is more than line 13. On the top of page 1, check box 2, *The presumption of abuse is determined by Form 122A-2.*
Go to Part 3 and fill out Form 122A–2.

| Part 3: | Sign Below |
|---------|------------|

By signing here, I declare under penalty of perjury that the information on this statement and in any attachments is true and correct.

X _____          X _____
Signature of Debtor 1                                        Signature of Debtor 2

Date  05/11/2023                                              Date  _____
MM / DD / YYYY                                                MM / DD / YYYY

If you checked line 14a, do NOT fill out or file Form 122A–2.
If you checked line 14b, fill out Form 122A–2 and file it with this form.

Official Form 122A–1                    **Chapter 7 Statement of Your Current Monthly Income**                    page 3

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | Charles | | Muszynski |
| | First Name | Middle Name | Last Name |
| Debtor 2 (Spouse, if filing) | | | |
| | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | Eastern District of Texas | | |
| Case number (if known) | | | |

☐ Check if this is an amended filing

## Official Form 122A—1Supp

# Statement of Exemption from Presumption of Abuse Under § 707(b)(2)  12/15

File this supplement together with Chapter 7 Statement of Your Current Monthly Income (Official Form 122A-1), if you believe that you are exempted from a presumption of abuse. Be as complete and accurate as possible. If two married people are filing together, and any of the exclusions in this statement applies to only one of you, the other person should complete a separate Form 122A-1 if you believe that this is required by 11 U.S.C. § 707(b)(2)(C).

### Part 1:    Identify the Kind of Debts You Have

1. **Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose." Make sure that your answer is consistent with the answer you gave at line 16 of the *Voluntary Petition for Individuals Filing for Bankruptcy* (Official Form 101).

   ☑ No.    Go to Form 122A-1; on the top of page 1 of that form, check box 1, There is no presumption of abuse, and sign Part 3. Then submit this supplement with the signed Form 122A-1.

   ☐ Yes.   Go to Part 2.

### Part 2:    Determine Whether Military Service Provisions Apply to You

2. **Are you a disabled veteran** (as defined in 38 U.S.C. § 3741(1))?

   ☐ No.    Go to line 3.

   ☐ Yes.   Did you incur debts mostly while you were on active duty or while you were performing a homeland defense activity? 10 U.S.C. § 101(d)(1); 32 U.S.C. § 901(1).

      ☐ No.    Go to line 3.

      ☐ Yes.   Go to Form 122A-1; on the top of page 1 of that form, check box 1, *There is no presumption of abuse*, and sign Part 3. Then submit this supplement with the signed Form 122A-1.

3. **Are you or have you been a Reservist or member of the National Guard?**

   ☐ No. Complete Form 122A-1. Do not submit this supplement.

   ☐ Yes. Were you called to active duty or did you perform a homeland defense activity? 10 U.S.C. § 101(d)(1); 32 U.S.C. § 901(1).

      ☐ No. Complete Form 122A-1. Do not submit this supplement.

      ☐ Yes. Check any one of the following categories that applies:

         ☐ **I was called to active duty after September 11, 2001,** for at least 90 days and remain on active duty.

         ☐ **I was called to active duty after September 11, 2001,** for at least 90 days and was released from active duty on _____ , which is fewer than 540 days before I file this bankruptcy case.

         ☐ **I am performing a homeland defense activity for at least 90 days.**

         ☐ **I performed a homeland defense activity for at least 90 days,** ending on _____ , which is fewer than 540 days before I file this bankruptcy case.

      If you checked one of the categories to the left, go to Form 122A-1. On the top of page 1 of Form 122A-1, check box 3, The Means Test does not apply now, and sign Part 3. Then submit this supplement with the signed Form 122A-1. You are not required to fill out the rest of Official Form 122A-1 during the exclusion period. The exclusion period means the time you are on active duty or are performing a homeland defense activity, and for 540 days afterward. 11 U.S.C. § 707(b)(2)(D)(ii).

      If your exclusion period ends before your case is closed, you may have to file an amended form later.

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | Charles | | Muszynski |
| | First Name | Middle Name | Last Name |
| Debtor 2 (Spouse, if filing) | | | |
| | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | Eastern District of Texas | | |
| Case number (If known) | | | |

☐ Check if this is an amended filing

Official Form 107

# Statement of Financial Affairs for Individuals Filing for Bankruptcy    04/19

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Give Details About Your Marital Status and Where You Lived Before**

1. **What is your current marital status?**
   ☐ Married
   ☐ Not married

2. **During the last 3 years, have you lived anywhere other than where you live now?**
   ☑ No
   ☐ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1: | Dates Debtor 1 lived there | Debtor 2: | Dates Debtor 2 lived there |
|---|---|---|---|
| | | ☐ Same as Debtor 1 | ☐ Same as Debtor 1 |
| | From _____ | | From _____ |
| Number    Street | To _____ | Number    Street | To _____ |
| City         State   ZIP Code | | City         State   ZIP Code | |
| | | ☐ Same as Debtor 1 | ☐ Same as Debtor 1 |
| | From _____ | | From _____ |
| Number    Street | To _____ | Number    Street | To _____ |
| City         State   ZIP Code | | City         State   ZIP Code | |

3. **Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)
   ☑ No
   ☐ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

| Debtor 1 | Charles | | Muszyb... | | Case number (*if known*) | |
|---|---|---|---|---|---|---|
| | First Name | | Middle Name | Last Name | | |

---

| Part 2: | Explain the Sources of Your Income |
|---|---|

**4. Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

☑ No

☐ Yes. Fill in the details.

| | | Debtor 1: | | Debtor 2: | |
|---|---|---|---|---|---|
| | | Source of Income<br>Check all that apply. | Gross income<br>(before deductions and<br>exclusions) | Source of Income<br>Check all that apply. | Gross income<br>(before deductions and<br>exclusions) |
| **From January 1 of current year until the date you filed for bankruptcy:** | | ☐ Wages, commissions, bonuses, tips | $ _____ | ☐ Wages, commissions, bonuses, tips | $ _____ |
| | | ☐ Operating Business | | ☐ Operating Business | |
| **For last calendar year:**<br>(January 1 to December 31, _____ )<br>YYYY | | ☐ Wages, commissions, bonuses, tips | $ _____ | ☐ Wages, commissions, bonuses, tips | $ _____ |
| | | ☐ Operating Business | | ☐ Operating Business | |
| **For last calendar year before that:**<br>(January 1 to December 31, _____ )<br>YYYY | | ☐ Wages, commissions, bonuses, tips | $ _____ | ☐ Wages, commissions, bonuses, tips | $ _____ |
| | | ☐ Operating Business | | ☐ Operating Business | |

**5. Did you receive any other income during this year or the two previous calendar years?**
Include income regardless of whether that income is taxable. Examples of other income are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

List each source and the gross income from each source separately. Do not include income that you listed in line 4.

☐ No

☑ Yes. Fill in the details.

| | Debtor 1: | | Debtor 2: | |
|---|---|---|---|---|
| | Source of Income<br>Describe below. | Gross income from<br>each source<br>(before deductions and<br>exclusions) | Source of Income<br>Describe below. | Gross income from<br>each source<br>(before deductions and<br>exclusions) |
| **From January 1 of current year until the date you filed for bankruptcy:** | _____ | $ _____ | _____ | $ _____ |
| | _____ | $ _____ | _____ | $ _____ |
| | _____ | $ _____ | _____ | $ _____ |
| **For last calendar year:**<br>(January 1 to December 31, _____ )<br>YYYY | _____ | $ _____ | _____ | $ _____ |
| | _____ | $ _____ | _____ | $ _____ |
| | _____ | $ _____ | _____ | $ _____ |
| **For the calendar year before that:**<br>(January 1 to December 31, _____ )<br>YYYY | _____ | $ _____ | _____ | $ _____ |
| | _____ | $ _____ | _____ | $ _____ |
| | _____ | $ _____ | _____ | $ _____ |

Debtor 1    Charles                       Muszynski                            Case number *(if known)*
           First Name    Middle Name    Last Name

---

**Part 3:**    **List Certain Payments You Made Before You Filed for Bankruptcy**

6.  **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**

☑ No.    **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as
"incurred by an individual primarily for a personal, family, or household purpose."

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $6,825* or more?

☑ No.    Go to line 7.

☐ Yes.    List below each creditor to whom you paid a total of $6,825* or more in one or more payments and the
total amount you paid that creditor. Do not include payments for domestic support obligations, such as
child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

* Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.

☐ Yes.    **Debtor 1 or Debtor 2 or both have primarily consumer debts.**

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

☐ No.    Go to line 7.

☐ Yes.    List below each creditor to whom you paid a total of $600 or more and the total amount you paid that
creditor. Do not include payments for domestic support obligations, such as child support and
alimony. Also, do not include payments to an attorney for this bankruptcy case.

| | Dates of payment | Total amount paid | Amount you still owe | Was this payment for ... |
|---|---|---|---|---|
| _____ | _____ | $_____ | $_____ | ☐ Mortgage |
| Creditor's Name | | | | ☐ Car |
| | | | | ☐ Credit Card |
| _____ | | | | ☐ Loan Repayment |
| Number    Street | | | | ☐ Suppliers or vendors |
| _____ | | | | ☐ Other |
| City          State    ZIP Code | | | | _____ |

7.  **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
*Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner;
corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing
agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations,
such as child support and alimony

☑ No.
☐ Yes. List all payments to an insider.

| | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|
| _____ | _____ | $_____ | $_____ | |
| Insider's Name | | | | |
| _____ | | | | |
| Number    Street | | | | |
| _____ | | | | |
| City          State    ZIP Code | | | | |

---

| Debtor 1 | Charles | Muszynski | | Case number *(if known)* |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

---

8. **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
   Include payments on debts guaranteed or cosigned by an insider.

   ☑ No.

   ☐ Yes. List all payments that benefited an insider

| | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment
Include creditor's name |
|---|---|---|---|---|
| | | $ | $ | |
| Insider's Name | | | | |
| | | | | |
| Number    Street | | | | |
| | | | | |
| City                        State    ZIP Code | | | | |

Debtor 1    Charles _____ Muszynski _____    Case number (*if known*)_____
      First Name      Middle Name      Last Name

---

### Part 4:    Identify Legal Actions, Repossessions, and Foreclosures

**9. Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

☐ No
☑ Yes. Fill in the details.

| | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| Case title  Millennium Funding, et al., v. 1701 Management, LLC | Copyright troll litigation | USDC S. District Miami Florida<br>Court Name<br><br>400 N. Miami Avenue<br>Number     Street | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| Case number  21-cv-20862-BLOOM/Otazo-Reyes | | Miami                         FL    33132<br>City                         State    ZIP Code | |

**10. Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
Check all that apply and fill in the details below.

☐ No. Go to line 11.
☑ Yes. Fill in the information below.

| | Describe the property | Date | Value of the property |
|---|---|---|---|
| Millennium Funding, Inc<br>Creditor's Name<br><br>318 N. Carson Street<br>Number     Street<br><br>Ste 208<br><br>Carson City        NV    89701<br>City                State    ZIP Code | Bank OZK checking account<br><br>**Explain what happened**<br>☐ Property was repossessed.<br>☐ Property was foreclosed.<br>☑ Property was garnished.<br>☐ Property was attached, seized, or levied. | | $              100.00 |

| | Describe the property | Date | Value of the property |
|---|---|---|---|
| 318 N. Carson Street<br>Creditor's Name<br><br>318 N. Carson Street<br>Number     Street<br><br>Ste 208<br><br>Carson        NV    89701<br>City                State    ZIP Code | Bank of Nevis checking account<br><br>**Explain what happened**<br>☐ Property was repossessed.<br>☐ Property was foreclosed.<br>☐ Property was garnished.<br>☑ Property was attached, seized, or levied. | 02/11/2023 | $            15000.00 |

**11. Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**

☑ No
☐ Yes. Fill in the details.

---

Official Form 107          Statement of Financial Affairs for Individuals Filing for Bankruptcy          page 5

Debtor 1    Charles                    Muszynski
                                                                                    Case number (*if known*) _____

First Name        Middle Name        Last Name

| | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|
| Creditor's Name | | _ _ _ | $ _____ |
| Number    Street | | | |
| City        State    ZIP Code | Last 4 digits of account number: XXXX– _____ | | |

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**

☐ No

☑ Yes

---

**Part 5:    List Certain Gifts and Contributions**

13. **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**

☑ No

☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|
| Person to Whom You Gave the Gift | | _ _ _ | $ _____ |
| Number    Street | | | |
| City        State    ZIP Code | | | |
| Person's relationship to you | | | |

14. **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**

☑ No

☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that total more than $600 | Describe what you contributed | Date you contributed | Value |
|---|---|---|---|

---

Debtor 1  Charles _____ Muszyn$ski _____   Case number (*if known*) _____
First Name    Middle Name    Last Name

| | | $ _____ |
|---|---|---|
| Charity's Name | | |
| Number    Street | | |
| City    State    ZIP Code | | |

## Part 6:    List Certain Losses

15. Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?

☑ No
☐ Yes. Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss<br><br>Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property*. | Date of your loss | Value of property lost |
|---|---|---|---|
| | | | $ _____ |

## Part 7:    List Certain Payments or Transfers

16. Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

☑ No
☐ Yes. Fill in the details.

| | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| Person Who Was Paid | | | $ _____ |
| Number    Street | | | |
| City    State    ZIP Code | | | |
| Email or website address | | | |
| Person Who Made the Payment, if Not You | | | |

| Debtor 1 | Charles | Muszynski | | Case number (*if known*) _____ |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

---

**17.** Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?
Do not include any payment or transfer that you listed on line 16.

☑ No
☐ Yes. Fill in the details.

| | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| Person Who Was Paid | | | $ _____ |
| Number    Street | | | |
| City    State    ZIP Code | | | |

**18.** Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property).
Do not include gifts and transfers that you have already listed on this statement.

☑ No
☐ Yes. Fill in the details.

| | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|
| Person Who Received Transfer | | | |
| Number    Street | | | |
| City    State    ZIP Code | | | |
| Person's relationship to you | | | |

**19.** Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary? (These are often called *asset-protection devices*.)

☑ No
☐ Yes. Fill in the details.

| | Description and value of the property transferred | Date transfer was made |
|---|---|---|
| Name of trust _____ | | |

---

Debtor 1    Charles                    Muszynski

First Name        Middle Name        Last Name                         Case number (*if known*) _____

| | |
|---|---|
| **Part 8:** | **List Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units** |

20. Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

☑ No
☐ Yes. Fill in the details.

|  | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| _____ | XXXX–_____ | ☐ Checking | | $ _____ |
| Name of Financial Institution | | ☐ Savings | | |
| _____ | | ☐ Money market | | |
| Number    Street | | ☐ Brokerage | | |
| _____ | | ☐ Other | | |
| City    State    ZIP Code | | _____ | | |

21. Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?

☑ No
☐ Yes. Fill in the details.

|  | Who else had access to it? | Describe the contents | Do you still have it? |
|---|---|---|---|
| _____ | _____ | | ☐ No |
| Name of Financial Institution | Name | | ☐ Yes |
| _____ | _____ | | |
| Number    Street | Number    Street | | |
| _____ | _____ | | |
| City    State    ZIP Code | City    State    ZIP Code | | |

22. Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?

☑ No
☐ Yes. Fill in the details.

|  | Who else has or had access to it? | Describe the contents | Do you still have it? |
|---|---|---|---|
| _____ | _____ | | |
| Name of Storage Facility | Name | | |
| _____ | _____ | | |
| Number    Street | Number    Street | | |
| _____ | | | |

Debtor 1    Charles    Muszynski    _____    Case number (*if known*) _____

     First Name        Middle Name        Last Name

☐ No
☐ Yes

City      State   ZIP Code    City      State   ZIP Code

---

**Part 9:**    **Identify Property You Hold or Control for Someone Else**

23. Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.

☑ No

☐ Yes. Fill in the details.

| Where is the property? | Describe the property | Value |
|---|---|---|

Owner's Name

Number   Street         Number   Street

City      State  ZIP Code    City     State  ZIP Code

$ _____

---

**Part 10:**    **Give Details About Environmental Information**

For the purpose of Part 10, the following definitions apply:

- *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.

- *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.

- *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

24. Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?

☑ No

☐ Yes. Fill in the details.

| | Governmental unit | Environmental law, if you know it | Date of notice |
|---|---|---|---|

Name of site             Governmental unit

Number   Street         Number   Street

---

Debtor 1   Charles          Muszynski
           First Name       Middle Name       Last Name          Case number (*if known*) _____

_____         _____
City          State   ZIP Code      City          State   ZIP Code

**25. Have you notified any governmental unit of any release of hazardous material?**

☑ No

☐ Yes. Fill in the details.

|  | Governmental unit | Environmental law, if you know it | Date of notice |
|---|---|---|---|
| Name of site | Governmental unit | | |
| Number    Street | Number    Street | | |
| City      State   ZIP Code | City      State   ZIP Code | | |

**26. Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☑ No

☐ Yes. Fill in the details.

|  | Court or agency | Nature of the case | Status of the case |
|---|---|---|---|
| Case title | Court Name | | ☐ Pending |
| Case number | Number    Street | | ☐ On appeal |
| | | | ☐ Concluded |
| | City      State   ZIP Code | | |

---

**Part 11:   Give Details About Your Business or Connections to Any Business**

**27. Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time

☐ A member of a limited liability company (LLC) or limited liability partnership (LLP)

☐ A partner in a partnership

☑ An officer, director, or managing executive of a corporation

☐ An owner of at least 5% of the voting or equity securities of a corporation

☐ No. None of the above applies. Go to Part 12.

☑ Yes. Check all that apply above and fill in the details below for each business.

| | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|

| Debtor 1 | Charles | Muszynski | | Case number (*if known*) _____ |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

| Business Name | | EIN: _____ |
|---|---|---|
| Number    Street | Name of accountant or bookkeeper | Dates business existed |
| | | From _____  To _____ |
| City         State   ZIP Code | | |

28. **Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.**

☑ No

☐ Yes. Fill in the details below.

| | Date issued |
|---|---|
| Name | MM / DD / YYYY |
| Number    Street | |
| City         State   ZIP Code | |

---

**Part 12:  Sign Below**

I have read the answers on this Statement of Financial Affairs and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

X _____            X _____
Signature of Debtor 1                                    Signature of Debtor 2

Date  05/11/2023                                       Date _____

**Did you attach additional pages to Your Statement of Financial Affairs for Individuals Filing for Bankruptcy (Official Form 107)?**

☑ No

☐ Yes

**Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?**

☑ No

☐ Yes. Name of Person _____ . Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | Charles | | Muszynski |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | Eastern District of Texas | | |
| Case number (If known) | | | |

# Mailing List

List contains the name and address of each entity included on Schedules D, E/F, G, H and Creditor Information.

Marcia Waddell
145 West 58th Street

New York                              NY      10019

Millennium Funding, Inc.
318 N. Carson Street
Ste 208
Carson City                           NV      89701

2.HUNTER KILLER PRODUCTIONS, INC.
318 N. Carson Street
Ste 208
Carson City                           NV      89701

3.     VOLTAGE HOLDINGS, LLC
116 N. Robertson Blvd
Suite 200
Los Angeles                           CA      90048

4.     EVE NEVADA, LLC
116 N. Robertson Blvd
Suite 200
Los Angeles                           CA      90048

5.     BODYGUARD PRODUCTIONS, INC.
318 N. Carson Street
Ste 208
Carson City                           NV      89701

6.     KILLING LINK DISTRIBUTION, LLC
9190 Olympic Blvd
Suite 400
Beverly Hills                         CA      90212

7.     LHF PRODUCTIONS, INC.
318 N. Carson Street
Ste 208
Carson City                           NV      89701

Debtor 1    Charles          Muszynski          Case number (*if known*) _____

First Name          Middle Name          Last Name

| 8. | RAMBO V PRODUCTIONS, INC. | | |
|---|---|---|---|
| 318 N. Carson Street | | | |
| Ste 208 | | | |
| Carson City | | NV | 89701 |
| 9. | WONDER ONE, LLC | | |
| 4164 Weslin Ave | | | |
| Sherman Oaks | | CA | 91423 |
| 10. | DEFINITION DELAWARE, LLC | | |
| 251 Little Falls Drive | | | |
| Wilmington | | DE | 19808 |
| 11. | MILLENNIUM IP, INC. | | |
| 318 N. Carson Street | | | |
| Ste 208 | | | |
| Carson City | | NV | 89701 |
| 12. | NIKOLA PRODUCTIONS, INC. | | |
| 318 N. Carson Street | | | |
| Ste 208 | | | |
| Carson City | | NV | 89701 |
| 13. | OUTPOST PRODUCTIONS, INC. | | |
| 318 N. Carson Street | | | |
| Ste 208 | | | |
| Carson City | | NV | 89701 |
| 14. | 211 PRODUCTIONS, INC. | | |
| 318 N. Carson Street | | | |
| Ste 208 | | | |
| Carson City | | NV | 89701 |
| 15. | DAY OF THE DEAD PRODUCTIONS, INC. | | |
| 318 N. Carson Street, Ste 208, Carson City, NV 897 | | | |
| Ste 208 | | | |
| Carson City | | NV | 89701 |
| 16. | VENICE PI, LLC | | |
| 116 N Robertson Blvd | | | |
| Ste 200 | | | |
| Los Angeles | | CA | 90048 |
| 17. | I AM WRATH PRODUCTIONS, INC. | | |
| 1901 Ave of the Stars | | | |
| Ste 1050 | | | |
| Los Angeles | | CA | 90067 |

**Mailing List**                                                    page  2 of  5

| Debtor 1 | Charles | Muszyn | ski | Case number (*if known*) _____ |
| --- | --- | --- | --- | --- |
| | First Name | Middle Name | Last Name | |

| | |
| --- | --- |
| **18.** BADHOUSE STUDIOS, LLC<br>8265 Sunset Blvd<br>Ste 107<br>West Hollywood                    CA      90046 | |
| **19.** YAR PRODUCTIONS, INC<br>9 Acer Ct.<br><br>Monsey                    NY      10952 | |
| **20.** AMBI DISTRIBUTION CORP.<br>3415 S. Sepulveda Blvd.<br>11th Fl.<br>Los Angeles                    CA      90034 | |
| **21.** AFTER PRODUCTIONS, LLC<br>1209 Orange Street<br><br>Wilmington                    DE      19801 | |
| **22.** AFTER II MOVIE, LLC<br>500 N. Rainbow Road<br>Ste 300A<br>Las Vegas                    NV      89107 | |
| **23.** MORGAN CREEK PRODUCTIONS, INC.<br>32 Loockerman Square<br>#L-100<br>Dover                    DE      19901 | |
| **24.** BEDEVILED LLC<br>18823 Belshire Ave<br><br>Cerritos                    90703 | |
| **25.** MILLENNIUM MEDIA, INC.<br>318 N. Carson Street<br>Ste 208<br>Carson City                    NV      89701 | |
| **26.** COLOSSAL MOVIE PRODUCTIONS, LLC<br>127 Broadway<br>Ste 220<br>Santa Monica                    CA      90401 | |
| **27.** FSMQ FILM, LLC<br>9107 Wilshire Blvd<br>Ste 600<br>Beverly Hills                    CA      90210 | |

| Debtor 1 | Charles | | Muszynski | | Case number (*if known*) | |
|---|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | | |

| | | | |
|---|---|---|---|
| 28.      FW PRODUCTIONS, LLC | | | |
| 9454 Wilshire Blvd. | | | |
| Ste M-16 | | | |
| Beverly Hills | | CA | 90212 |
| 29.      LF2 PRODUCTIONS, INC | | | |
| 318 N. Carson Street | | | |
| Ste 208 | | | |
| Carson City | | NV | 89701 |
| 30.      RUPTURE CAL, INC | | | |
| 9454 Wilshire Blvd. | | | |
| Ste M-16 | | | |
| Beverly Hills | | CA | 90212 |
| 31.      MON, LLC | | | |
| 215 1/2 Arnaz Drive | | | |
| | | | |
| Beverly Hills | | CA | 90211 |
| 32.      SF FILM, LLC | | | |
| 90 State Street | | | |
| Ste 700, Office 40 | | | |
| Albany | | NY | 12207 |
| 33.      SPEED KILLS PRODUCTIONS, INC | | | |
| 8265 Sunset Blvd. | | | |
| Ste 107 | | | |
| West Hollywood | | CA | 90046 |
| 34.      MILLENNIUM SPVH, INC | | | |
| Carson Street | | | |
| Ste 208 | | | |
| Carson City | | NV | 89701 |
| 35.      HANNIBAL CLASSICS INC | | | |
| 8033 Sunset Blvd. | | | |
| Ste 1066 | | | |
| West Hollywood | | CA | |
| 36.      JUSTICE EVERYWHERE PRODUCTIONS LLC | | | |
| at 1901 Ave of the Stars | | | |
| Ste 1050 | | | |
| Los Angeles | | CA | 90067 |
| 37.      STATE OF THE UNION DISTRIBUTION AND COLLECTIONS, LLC | | | |
| 800 W. 6th Street, | | | |
| Ste 380 | | | |
| Los Angeles | | CA | 90001 |

| Debtor 1 | Charles | | Muszynski | | Case number (*if known*) | |
| | First Name | Middle Name | Last Name | | | |

| 38. | PARADOX STUDIOS, LLC |
| --- | --- |
| 919 North Market Street | |
| Ste 950 | |
| Wilmington | DE    19801 |

| 39. | DALLAS BUYERS CLUB, LLC |
| --- | --- |
| 7 Switchbud Pl | |
| Ste 192 | |
| The Woodlands | TX    77380 |

| 40. | SCREEN MEDIA VENTURES, LLC |
| --- | --- |
| 800 Third Ave. | |
| 3rd Floor | |
| New York | NY    10022 |

| 41. | 42 VENTURES, LLC |
| --- | --- |
| 75-5915 Walua Rd. | |
| | |
| Kailua Kona | HI    96740 |

| 42. | KERRY STEVEN CULPEPPER |
| --- | --- |
| 75-5915 Walua Rd. | |
| | |
| Kailua Kona | HI    96740 |

| 44. | JOEL B. ROTHMAN |
| --- | --- |
| 21301 Powerline Road | |
| Ste 100 | |
| Boca Raton | FL    33433 |

| 43. | CULPEPPERIP, LLC |
| --- | --- |
| 75-5915 Walua Rd. | |
| | |
| Kailua Kona | HI    96740 |

| 45. | SRIPLAW, P.A. |
| --- | --- |
| 21301 Powerline Road | |
| Ste 100 | |
| Boca Raton | FL    33433 |

| 46. | DAVID COX |
| --- | --- |
| | |
| | |
| Canton | MI |

| 47. | SMR HOSTING LLC |
| --- | --- |
| | |
| | |
| Livonia | MI |

| Debtor 1 | Charles Alexander Muszynski | | Case number (if known) _____ |
|---|---|---|---|
| | First Name    Middle Name    Last Name | | |

**For you if you are filing this bankruptcy without an attorney**

**If you are represented by an attorney, you do not need to file this page.**

The law allows you, as an individual, to represent yourself in bankruptcy court, but **you should understand that many people find it extremely difficult to represent themselves successfully. Because bankruptcy has long-term financial and legal consequences, you are strongly urged to hire a qualified attorney.**

To be successful, you must correctly file and handle your bankruptcy case. The rules are very technical, and a mistake or inaction may affect your rights. For example, your case may be dismissed because you did not file a required document, pay a fee on time, attend a meeting or hearing, or cooperate with the court, case trustee, U.S. trustee, bankruptcy administrator, or audit firm if your case is selected for audit. If that happens, you could lose your right to file another case, or you may lose protections, including the benefit of the automatic stay.

You must list all your property and debts in the schedules that you are required to file with the court. Even if you plan to pay a particular debt outside of your bankruptcy, you must list that debt in your schedules. If you do not list a debt, the debt may not be discharged. If you do not list property or properly claim it as exempt, you may not be able to keep the property. The judge can also deny you a discharge of all your debts if you do something dishonest in your bankruptcy case, such as destroying or hiding property, falsifying records, or lying. Individual bankruptcy cases are randomly audited to determine if debtors have been accurate, truthful, and complete. **Bankruptcy fraud is a serious crime; you could be fined and imprisoned.**

If you decide to file without an attorney, the court expects you to follow the rules as if you had hired an attorney. The court will not treat you differently because you are filing for yourself. To be successful, you must be familiar with the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the local rules of the court in which your case is filed. You must also be familiar with any state exemption laws that apply.

Are you aware that filing for bankruptcy is a serious action with long-term financial and legal consequences?

☐ No
☑ Yes

Are you aware that bankruptcy fraud is a serious crime and that if your bankruptcy forms are inaccurate or incomplete, you could be fined or imprisoned?

☐ No
☑ Yes

Did you pay or agree to pay someone who is not an attorney to help you fill out your bankruptcy forms?

☑ No
☐ Yes. Name of Person_____.
Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

By signing here, I acknowledge that I understand the risks involved in filing without an attorney. I have read and understood this notice, and I am aware that filing a bankruptcy case without an attorney may cause me to lose my rights or property if I do not properly handle the case.

| ✗ _Signature_ | ✗ _____ |
|---|---|
| Signature of Debtor 1 | Signature of Debtor 2 |
| Date 05/10/2023 | Date _____ |
| MM / DD / YYYY | MM / DD / YYYY |
| Contact phone (869) 469-1833 | Contact phone _____ |
| Cell phone _None_ | Cell phone _____ |
| Email address usfilefolder@protonmail.com | Email address _____ |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## LUFKIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | **"KSC2"** |
| | § | |
| CHARLES MUSZYNSKI | § | |
| xxx-xx-1273 | § | Case No. 23-90112 |
| 855 Forrester Street, Silsbee, TX 77656 | § | |
| | § | |
| Debtor | § | Chapter 7 |

### ORDER SETTING VIRTUAL EVIDENTIARY HEARING ON
### MOTION FOR RELIEF FROM STAY AFTER PRELIMINARY HEARING

On June 30, 2023, the Court conducted a *preliminary* hearing on the "Motion for

Relief from Automatic Stay WITHOUT Waiver of 30-Day Hearing Requirement and

Injunctive Relief As To Civil Action in Southern District of Florida" (the "Motion") filed

by Kerry S Culpepper and joined by additional parties (together "Movant"). Debtor,

Charles Muszynski and the Chapter 7 Trustee, Steven J. Zayler, timely objected to the

Motion. After consideration of the pleadings and presentation of counsel, and for the

reasons set forth on the record, the Court finds that good cause exists for entry of the

following order. Accordingly,

**IT IS FURTHER ORDERED** that, the Court will convene a virtual hearing on the

Motion to consider the entry of an order granting the relief requested therein on:

**Tuesday, August 22, 2023 at 9:30 a.m. CST**

**\*\*HEARING LINK: https://bit.ly/3qZnUBR \*\***

Any questions regarding the virtual hearing may be forwarded to the Courtroom Deputy

as set forth below:

Ms. Mona Doyle
Phone: (409-654-7064)
or
Email: **CRD_BMT@txeb.uscourts.gov**

## This is the only notice that will be provided for this hearing.

Such hearing shall be conducted pursuant to the virtual hearing directives issued by the

Court.[1]

**IT IS FURTHER ORDERED** that the Clerk shall distribute copies of this Order

to all attorneys active in this case by electronic means and otherwise to all parties listed

on the Master Mailing Matrix as constituted by the Court on the date of its entry through

the Bankruptcy Noticing Center.

**IT IS FURTHER ORDERED** that until such time as this Court rules on the

Motion, the parties are expressly directed to maintain the *status quo ante* in order to

permit the Chapter 7 Trustee time to begin to investigate what, if any, assets exist within

this estate, as well as to determine what other relief Trustee may need to seek from this

Court to enable proper and efficient administration of assets.  The Court understands

there was litigation pending on the petition date between Movant and Debtor both in Case

---

[1] The directives regarding the conduct of virtual hearings are located on Judge Searcy's webpage on the Court's website, https://www.txeb.uscourts.gov/content/judgesearcy under the *Court Appearances and Hearing Methods* tab.  As set forth therein, the presentation of exhibits under LBR 9014(d) is altered to require each party seeking to introduce exhibits to attach (separately) each of those designated exhibits to the exhibit list that is filed with the Court.  Attorneys are further reminded that they are responsible for the virtual appearance of any witness sponsored by that attorney at the hearing and that any such witness must: (1) join the hearing as a separate participant from the sponsoring attorney; (2) use a different camera and microphone than the sponsoring attorney; and (3) be capable of accessing any exhibit needed for the examination.

No. 21-cv-20862 before the United States District Court for the Southern District of

Florida, as well as in Case No. NEVHCV2022/0183 before the Nevis Circuit of the High

Court of Justice of the Eastern Caribbean Supreme Court of the Federation of Saint

Christopher & Nevis (together the "Litigation").  Maintaining the *status quo ante*

includes, but is not limited to, taking no action in the Litigation to exercise dominion,

authority, or control over property of the bankruptcy estate of this case absent an order of

this Court or written consent of the Chapter 7 Trustee.  Notwithstanding this directive,

and due to this Court's unfamiliarity with the Litigation, Movant is authorized to *respond*

to filings or actions of Debtor in the Litigation so long as such response is directed solely

at maintaining the *status quo ante*, and not at obtaining new or further relief not

previously requested.  All parties are expected in the interim to fully cooperate with the

efforts of the Chapter 7 Trustee to identify and begin administration of assets, if any.

**"KSC3"**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 23-02870 (MCF) |
| CHARLES MUSZYNSKI | CHAPTER 7 |
| Debtor | |

<u>**OPINION AND ORDER**</u>

  The Court ordered the chapter 7 Debtor, Mr. Charles Muszynski's ("Debtor"), to show cause as to why the case should not be dismissed for two reasons; first, for his ineligibility to be a debtor in a bankruptcy case, pursuant to 11 U.S.C. § 109(h) and second, for Debtor's failure to fully disclose his financial resources as required by the Bankruptcy Code, pursuant 11 U.S.C. § 521. Having considered Debtor's response to the orders to show cause and related motions, we conclude that the instant case should be dismissed for the reasons set forth below.

<u>Relevant Procedural History</u>

  On May 11, 2023, Debtor filed a pro se bankruptcy case under chapter 7 at the Bankruptcy Court for the Eastern District of Texas ("Texas Bankruptcy Court"). His petition did not include the credit counseling certificate required by 11 U.S.C. §§ 109(h)(1) and 521(b)(1).

  In the voluntary petition, Debtor certified that he asked for credit counseling services from an approved agency but was unable to obtain the same during the 7 days after he made the request and that exigent circumstances merited a 30-day temporary waiver of the requirement. The voluntary petition form specifically instructs debtors in a bankruptcy case who ask for a 30-day temporary waiver of the requirement, to **"attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case."** (emphasis added) Debtor failed to include such a document with his petition.

1    With the petition, Debtor filed schedules containing inaccurate and/or incomplete

2    information such as:[1]  i) executory contracts or unexpired leases were informed, but failed to

3    disclose the persons or companies with whom he had the contracts, the address of said persons or

4    companies and to state what the contracts or leases were for; ii) the Debtor disclosed that he was

5    a beneficiary of a trust, but failed to disclose any information of the trust; iii) the Debtor only

6    disclosed one trust even though he is beneficiary of two trusts and income information regarding

7    each trust was never disclosed nor their respective values; iv) the Debtor informed to have been

8    an officer, director, or managing executive of a corporation within four years before the

9    bankruptcy filing but failed to disclose the identity of any business; v) the source and amount of

10   income received by him during the year that the petition was filed and the two previous calendar

11   years was failed to be disclosed; and vi) the Chapter 7 Statement of Your Current Monthly Income

12   form was filed with zero income.

13   The day after the filing of the petition, on May 12, 2023, the Texas Bankruptcy Court

14   issued an order denying Debtor's application for extension of time to meet credit counseling

15   requirement.  Docket No. 5.  In the order, the Texas Bankruptcy Court expressed that the

16   Voluntary Petition provides specific instructions for debtors choosing to seek a temporary waiver

17   of the credit counseling requirement; including a directive to "attach a separate sheet explaining

18   what efforts you made to obtain the briefing, why you were unable to obtain it before you filed

19   for bankruptcy, and what exigent circumstances required you to file this case." Id.  The Texas

20   Bankruptcy Court further explained that no separate explanation was provided by Debtor and that

21   11 U.S.C. § 109(h)(3)(A) does not authorize a court to extend the time for compliance with the

22   requirement unless the prerequisites above enumerated were met, including that a request for

23   credit counseling services was actually made, but could not be fulfilled prior to the filing of the

24   petition.

25   In the same order, the Texas Bankruptcy Court granted Debtor until May 26, 2023, to

26   fulfill the credit counseling requirement.  In doing so, the court expressed that "[i]f such

27

---

[1] Debtor disclosed assets in the amount of $12,230.00, a domestic support obligation ("DSO") claim in the amount of $1,322,980.00 and a default judgment against him and in favor of multiple parties in the amount of $15,000,000.00.

1  requirement is fulfilled prior to this date, the Court would hope that parties in interest would elect

2  to waive this eligibility issue in light of Debtor's pro se status, thereby avoiding a possible

3  pointless re-filing and the necessity of conducting a stay continuation hearing." On June 2, 2023,

4  Debtor filed a "Certificate of Counseling" dated May 13, 2023. Docket No. 18.

5        On June 30, 2023, the Texas Bankruptcy Court conducted a preliminary hearing on a

6  "Motion for Relief from Automatic Stay" filed by Kerry S. Culpepper, a creditor, and joined by

7  other parties. Pursuant to the information that transcended during the hearing,[2] on July 5, 2023,

8  the Texas Bankruptcy Court issued a sua sponte order to show cause as to why the case should

9  not be dismissed for lack of eligibility, pursuant 11 U.S.C. § 109(a)[3] or alternatively, as to why

10 venue should not be transferred under 28 U.S.C. § 1408.[4] Docket No. 41.

11       Debtor filed a response to the order to show cause on July 31, 2023, in which he asserted

12 that he qualifies as a debtor, pursuant 11 U.S.C. § 109(a) because he had a bank account in Texas

13 and furniture in Puerto Rico. Docket No. 56.[5] On even date, Debtor filed a motion requesting

14 that the case be transferred to the Bankruptcy Court for the District of Puerto Rico; deeming it as

15 the most qualified venue according to Bankruptcy Rules and procedures since the majority of his

16 tangible and intangible property underlying his application are situated here. Docket No. 58.

17 Subsequently, on August 23, 2023, the Texas Bankruptcy Court issued an order transferring the

18 case to us. Docket No. 79.

19

20

---

21 [2] The court expressed that it appears that "Debtor does not reside, have a domicile, nor a place of business in the
22 United States. At best, Debtor may have 'property in the United States." Docket No. 41 at 2. As per Debtor's
   testimony, he resides in Nevis, St. Kitts & Nevis, WI.
23 [3] 11 U.S.C. § 109(a) provides that "only a person that resides or has a domicile, a place of business, or property in
   the United States, or a municipality, may be debtor" under title 11.
24 [4] 28 U.S.C. § 1408 provides that "a case under title 11 may be commenced in the district court for the district – (1)
   in which the domicile, residence, principal place of business in the United States, or principal assets in the United
25 States, of the person or entity that is the subject of such case have been located for the one hundred and eighty
   days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day
26 period than the domicile, residence, or principal place of business, in the United States, or principal assets in the
   United States, of such person were located in any other district; or (2) in which there is pending a case under title
27 11 concerning such person's affiliate, general partner, or partnership."
   [5] In the motion, Debtor informs that he "has corrected his assets matrix to reflect tangible household property
   remaining in Fajardo, Puerto Rico worth approximately $2,100.00". Docket No. 56 at 2. Debtor filed the amendments
   on July 12, 2023. Docket No. 46.

1    On September 12, 2023, this court received the transferred case from the Texas

2    Bankruptcy Court. After various procedural matters, this court scheduled a status conference for

3    February 28, 2024. Docket Nos. 91 and 142. At the status conference, upon a review of the docket

4    and the information proffered and discussed, the court ordered the following:

5    
6    Debtor is ordered to show cause, within 28 days, as to why the case should not be
     dismissed for Debtor's failure to fully disclose his financial resources, as required
     by the Bankruptcy Code pursuant to 11 U.S.C. §521. The Debtor is further ordered
7    to file: (1) an Amended Voluntary Petition disclosing his current residential
     address; (2) Amended Schedule A/B disclosing the following information in
8    question number twenty-five (25): the name of the trust, the trust tax ID number
     (EIN), the trust address, the date in which the trust was created, who created the
9    trust, how the trust is funded, details of the trust's assets, the name of the trustee or
     trustees and their addresses; (3) Amended Statement of Financial Affairs providing
10   the complete information required in questions five (5) and question number
     twenty-seven (27). The Debtor's failure to comply with this order completely may
11   result in the dismissal of the case.

12   
13   The Debtor is also ordered to show cause, within 28 days, as to why the case should
     not be dismissed for lack of eligibility to be a debtor pursuant to 11 U.S.C. §109(h).
14   Docket No. 172.

15    Regarding his eligibility to be a debtor, the Debtor replied by asserting that he "timely

16   paid and completed the preliminary credit counseling course" and submitted a copy of a credit

17   counseling certificate dated May 13, 2023.[6] Docket No. 174. Debtor made no reference to the

18   timing requirements for the credit counseling briefing pursuant 11 U.S.C. § 109(h)(1) nor to the

19   waiver requirements pursuant 11 U.S.C. § 109(h)(3).

20    With respect to the court's order to file amended documents and indicate why the case

21   should not be dismissed for failure to disclose his financial resources, the Debtor amended his

22   voluntary petition, schedules A/B, and statement of financial affairs. Docket No. 178. Then, a

23   few days later, the Debtor filed a response to the order to show cause asserting that he had

24   complied with the court's order by filing the amended documents. Docket No.179.

25

26

27

---

[6] Previously, on February 28, 2024, Debtor filed a motion alleging compliance with his credit counseling requirement, but failed to attach a pre-petition credit counseling certification.

-4-

1

<u>Legal Analysis and Discussion</u>

2

Before evaluating whether Debtor complied or not with any other provision of the

3

Bankruptcy Code, we first analyze if Debtor is eligible to be a Debtor in a bankruptcy proceeding,

4

pursuant to 11 U.S.C. § 109(h).

5

6

A.  <u>Section 109(h) Requirements</u>

7

Section 109(h)(1) sets out the pre-petition counseling requirement; it provides that:

8
9
10
11
12
13

> "... an individual **may not be a debtor** under this title unless such
> individual has, **during the 180-day period <u>ending</u> on the date of
> filing of the petition by such individual**, received from an
> approved nonprofit budget and credit counseling agency . . . an
> individual or group briefing (including a briefing conducted by
> telephone or on the Internet) that outlined the opportunities for
> available credit counseling and assisted such individual in
> performing a related budget analysis." 11 U.S.C. § 109(h)(1)
> (emphasis added).

14

15

Pursuant Section 109(h)(1), "an individual may not be a debtor in a bankruptcy case

16

unless,  within the 180-day period **prior to the filing of the bankruptcy petition**, the individual

17

has received an individual or group briefing from an approved nonprofit budget and credit

18

counseling agency as described in 11 U.S.C. § 111(a) (the "Credit Counseling Requirement").".

19

In re Prater, 445 B.R. 424, 428(Bankr. E.D. Pa. 2010) (emphasis added). See Taal v. Sumski (In

20

re Taal), 504 B.R. 682, 684-685 (BAP 1st Cir. 2014) ("... debtors must take the required credit

21

counseling course within 180 days **prior to the petition date** and must file a certificate of

22

compliance within 14 days of filing the petition.") (emphasis added).

23

Section 109(h)(3) provides for an exception to the credit counseling requirement.

24

Pursuant to said subsection, a debtor may obtain a temporary deferral of the requirement to file a

25

credit counseling certificate (up to 45 days), if the debtor submits a certification that: (i) describes

26

exigent circumstances that merit a waiver of the [credit counseling requirement]; (ii) states that

27

the debtor requested credit counseling services from an approved nonprofit budget and credit

counseling agency, but was unable to obtain the services . . . during the 7-day period beginning

-5-

1    on the date on which the debtor made that request; and (iii) is satisfactory to the court. To qualify

2    for the exigent circumstance's exception, a debtor must satisfy all three elements. Taal), 504 B.R.

3    at 685 (making references to In re Fiorillo, 455 B.R. 297, 302 (D. Mass. 2011); In re Falcone, 370

4    B.R. 462, 465 (Bankr. D. Mass. 2007)) (emphasis added).

5         Debtor in the present case did not meet the requirements that would have entitled him to

6    a temporary waiver to the pre-petition credit counseling requirement, pursuant to 11 U.S.C. §

7    109(h)(3).   Debtor failed to submit with the bankruptcy petition the required certification

8    describing the exigent circumstances that merited a temporary waiver of the requirement.

9    Although Debtor certified that he asked for credit counseling services from an approved agency

10   but was unable to obtain those services during the seven days after he made the request, he failed

11   to explain the efforts made to obtain credit counseling prior to filing for bankruptcy and the

12   reasons for which he was unable to obtain the credit counseling before the petition date.

13        In response to the order to show cause as to why the case should not be dismissed for

14   lack of eligibility to be a debtor, pursuant to 11 U.S.C. §109(h)(1), Debtor's only response is that

15   he timely paid and completed the preliminary credit counseling course on May 13, 2023. As per

16   Debtor's allegation and the certificate of credit counseling filed, Debtor obtained credit

17   counseling on May 13, 2023, which is two days after the petition date. Thus, Debtor did not

18   comply with the requirement of receiving a briefing from an approved credit counseling agency

19   within the 180 days period before his filing of the bankruptcy petition.

20        Given that Debtor did not meet the credit counseling requirement under § 109(h)(1) nor

21   the requirements for a temporary waiver under § 109(h)(3), he is ineligible to be a Debtor in the

22   present bankruptcy procedure.

23

24        B.   Disclosure Requirements - Section 521

25        In addition to not being eligible to be a debtor in the present bankruptcy, Debtor has also

26   failed to comply with disclosure requirements, pursuant to 11 U.S.C. § 521.

27

1    The Bankruptcy Code imposes on debtors an affirmative duty of full disclosure. Ryan

2  Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 362 (3rd Cir. 1996).  To obtain

3  the benefits of bankruptcy and achieve a fresh start, debtors are tasked with an unavoidable duty

4  and expectation of forthright disclosures. Roberts v. Vara (In re Roberts), 2024 Bankr. LEXIS

5  1088 (Bankr. W.D.PA. 2024)(making reference to In re White, 618 B.R. 748, 754 (Bankr.

6  E.D.N.C. 2020)).  Section 521(a)(1)(B) requires a debtor to file with the court a schedule of assets

7  and liabilities, a schedule of current income and current expenditures, and a statement of the

8  debtor's financial affairs. These disclosure requirements are crucial to the effective functioning of

9  the federal bankruptcy system.  Ryan Operations, 81 F.3d at 362.

10    Compliance with § 521 requires that all documents filed by a debtor be accurate and

11  complete. "[I]t is the Debtor's duty to file accurate schedules and value his assets correctly. Fraser

12  v. Citimortgage, Inc. (In re Fraser), 599 B.R. 830, 837 (Bankr. W.D. Pa. 2019).  "Debtors have

13  an absolute duty to file complete and accurate schedules." In re Rolland, 317 B.R. 402, 413

14  (Bankr. C.D. Cal. 2004) ( making reference to Cusano v. Klein, 264 F.3d 936, 946 (9th Cir.

15  2001)); In re Mohring, 142 B.R. 389, 394 (Bankr. E.D. Cal. 1992).  Full and comprehensive

16  disclosure is critical to the integrity of the bankruptcy process. In re Rolland,Id. (making reference

17  to Heidkamp v. Whitehead (In re Whitehead), 278 B.R. 589, 594 (Bankr. M.D. Fla. 2002)) (stating

18  that "the veracity of the debtor's Statement is absolutely essential to the successful administration

19  of the Bankruptcy Code").

20    At the Status Conference, Debtor was ordered to show cause as to why the case should

21  not be dismissed for failure to comply with § 521.  Given the inaccuracy of the Schedules and

22  Statement of Financial Affairs filed by Debtor, the court also ordered Debtor to file amended

23  Schedule A/B and Statement of Financial Affairs to disclose missing information.  On March 20,

24  2024, Debtor filed amended documents and on March 22, 2024, Debtor filed his response to the

25  order to show cause.

26    On Schedule A/B filed with the petition, Debtor informed that he was "a beneficiary of a

27  trust" but failed to disclose any information about the trust.  Consequently, the court ordered

1  Debtor to disclose: the name of the trust, the trust tax ID number (EIN), the trust address, the date

2  in which the trust was created, who created the trust, how the trust is funded, details of the trust's

3  assets, the name of the trustee or trustees and their addresses.

4      On March 20, 2024, Debtor filed an amended Schedule A/B which disclosed, for the first

5  time, that he is a beneficiary, of not one but of two trusts, as follows 1) F.A. Hayek Irrevocable

6  Settlement Trust, created by Rubilee Muszynski (Debtor's mother) in year 2009; and 2) Dusko

7  Popov Irrevocable Trust, created by Debtor in year 2019.  As to the information on how the trusts

8  are funded, Debtor limited his disclosure by stating that "[e]ach trust was funded when

9  established." The Debtor omitted disclosure of the amount of funds transferred to each of the

10  trusts upon their creation and their current balance.

11      In addition, Debtor was ordered to disclose the assets of the trust(s).  Debtor failed to

12  comply with this court order and did not provide the required information in Amended Schedule

13  A/B.   It is notable to point out that we do not have any information regarding the funds in each

14  of trusts nor their source of income.

15      Furthermore, on question 19 of the statement of financial affairs, debtors are required to

16  disclose specific information regarding any property transferred within ten (10) years before filing

17  for bankruptcy on any self-settled trust or similar entity in which the debtor is the beneficiary.  As

18  revealed in Amended Schedule A/B in response to court order, the Debtor created a trust in year

19  2019.  However, Debtor's original statement of financial affairs nor his amended statement of

20  financial affairs disclose any information in relation to question 19.

21      In his response to the order to show cause, Debtor asserts that he timely complied with the

22  filing of all schedules and that the filings were discussed and accepted by the chapter 7 Trustee.

23  In support of his assertion, Debtor submitted a copy of the transcript of the 341meeting held on

24  June 2, 2023. Docket No. 176. However, upon review of said transcript, we find that the same

25  does not support Debtor's allegations.  In the transcript, the chapter 7 Trustee expresses:

26

27      "But basically what it says is, even if -- even if the trust -- even if
        the trust is not property of the estate because of possible spendthrift
        clause, at this moment I don't know that. And so it -- I'm going to

-8-

1  need to have some information about that to see what that trust is,
   the name of it, where it's located, the Trustee, beneficiaries, and see
2  if, in fact, it does have a spendthrift clause.

3  What my intention is to continue this case. It will be four weeks
   from today. It will be Friday June the 30th, 2023. And it's going to
4  be at 12:00 noon, Central Time.

5  Again, I will go ahead and continue this case until Friday, June the
   30th, 2023 at 12:00 p.m. Central Time." Docket No. 176.
6

7        On June 30, 2023, the date in which the continued 341 meeting was supposed to be held,

8  the Texas Bankruptcy Court instead held a preliminary hearing on a Motion for relief from stay.

9  Said court ended up issuing an order to show cause as to why the case should not be dismissed

10 for lack of eligibility, pursuant 11 U.S.C. § 109(a) or alternatively, as to why venue should not be

11 transferred under 28 U.S.C. § 1408.

12        The case record does not show that the 341 continued for June 30, 2023, nor any other

13 341 meeting, was ever held.  Thus, contrary to what Debtor asserts, Debtor was not examined by

14 the Trustee on the information requested related to the trust(s) of which Debtor is beneficiary.

15        We conclude that the Debtor has filed incomplete and inaccurate schedules and statement

16 of financial affairs and thus, has failed to comply with his duty of full disclosure pursuant Section

17 521 of the Bankruptcy Code.  Furthermore, Debtor has also failed to fully comply with our court

18 order at the hearing to provide all the required information. For the aforementioned reasons of

19 lack of eligibility to be a bankruptcy debtor, lack of proper disclosure, and failure to comply with

20 a court order, the instant case is dismissed.

21        IT IS SO ORDERED.

22        In San Juan, Puerto Rico, this 21st day of May, 2024.

23

24                                              *Mildred Cabán*
                                                MILDRED CABAN FLORES
25                                              United States Bankruptcy Judge

26

27

-9-

THE EASTERN CARIBBEAN SUPREME COURT
ST. CHRISTOPHER AND NEVIS
NEVIS CIRCUIT
                    IN THE HIGH COURT OF JUSTICE


CLAIM NO. NEVHCV2022/0183

BETWEEN:
                              MILLENNIUM FUNDING, INC.
                              VOLTAGE HOLDINGS, LLC
                              AMBI DISTRIBUTION CORP
                              AFTER PRODUCTIONS, LLC
                              AFTER II MOVIE, LLC
                              MORGAN CREEK PRODUCTIONS, INC
                              .BEDEVILED LLC
                              MILLENNIUM MEDIA, INC
                              COLOSSAL MOVIE PRODUCTIONS, LLC
                              YAR PRODUCTIONS, INC.
                              FSMQ FILM, LLC
                              FW PRODUCTIONS, LLC
                              MILLENNIUM IP, INC.
                              I AM WRATH PRODUCTIONS, INC
                              KILLING LINK DISTRIBUTION, LLC
                              BADHOUSE STUDIOS, LLC
                              LF2 PRODUCTIONS, INC
                              LHF PRODUCTIONS, INC
                              VENICE PI, LLC
                              RAMBO V PRODUCTIONS, INC
                              RUPTURE CAL, INC
                              MON, LLC
                              SF FILM, LLC
                              SPEED KILLS PRODCUTIONS, LLC
                              NIKOLA PRODUCTIONS, INC.
                              WONDER ONE, LLC
                              BODYGUARD PRODUCTIONS INC.
                              OUTPOST PRODUCTIONS, INC.
                              GLACIER FILMS 1, LLC
                              DEFINITION DELAWARE, LLC
                              HANNIBAL CLASSICS INC.
                              JUSTICE EVERYWHERE PRODUCTIONS LLC
                    STATE OF THE UNION DISTRIBUTION AND COLLECTIONS, LLC
                              PARADOX STUDIOS, LLC
                              DALLAS BUYERS CLUB, LLC
                              HITMAN TWO PRODUCTIONS, INC.
                              SCREEN MEDIA VENTURES, LLC
                              42 VENTURES LLC

                                                    **Claimants/ Applicants**

                              and


                              AUH2O LLC
          CHARLES MUSZYNSKI also known as FREDERICK DOUGLAS

                                                    **Defendants/ Respondents**


                    <u>**CERTIFICATE OF EXHIBITS**</u>

Edisha K. Greene
**JOSEPH ROWE**
Attorneys-at-Law for the Claimants/ Applicants
Unit #5, Long Stone House, Main Street
Charlestown, Nevis
Telephone: (869) 469-1015
Email: rowe@josephrowelaw.com

**EXHIBIT 2**
U.S. Senators' Letters
Third Party Litigation Funding

JOHN KENNEDY
LOUISIANA

———
SUITE SR-416
RUSSELL BUILDING
WASHINGTON, DC 20510
(202) 224-4623

**United States Senate**

COMMITTEES

APPROPRIATIONS

BANKING, HOUSING, AND
URBAN AFFAIRS

BUDGET

JUDICIARY

SMALL BUSINESS AND
ENTREPRENEURSHIP

January 6, 2023

The Honorable Merrick Garland
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue
Washington, DC 20530

The Honorable John Roberts
Chairman
Judicial Conference of the United States
1 First Street NE
Washington, DC 20543

Dear General Garland and Chief Justice Roberts,

I write to you out of grave concern about the growing threat to national security from foreign entities funding litigation in our nation's courts. Few safeguards exist in any form of law, rule, or regulation to prevent foreign adversaries from participating in civil litigation as an undisclosed third-party in our country's federal courtrooms –this resulting in our national security and our entire government being vulnerable to manipulation.

A recent report estimated that the United States maintains one of the largest worldwide third-party litigation funding markets, where foreign hedge funds, private equity funds, and even sovereign wealth funds closely connected to hostile governments finance civil lawsuits as an investment in a desired outcome.[1] Foreign funders bankrolling these suits exert varying degrees of control and influence regarding litigation strategy, often even sidelining the original plaintiff in a case, or a portfolio of cases, in which the funder has an interest. According to the Institute for Legal Reform, foreign litigation funding risks destabilizing our civil legal system, in part by "increasing the filing of questionable claims, deterring and prolonging settlement efforts, contravening longstanding ethical rules for attorney conduct, and compromising the sanctity of the attorney-client relationship."[2]

The more pernicious threat is that hostile foreign governments or companies closely connected to them could use control of lawsuits in federal courtrooms to harm the United States' national security. The National Counterintelligence and Security Center has warned, for example, that

---

[1] Erica A. Moran and Theresa A. Griffin, *Considerations from the ABA's Best Practices for Litigation Funding*, THE NAT'L REV. (Feb. 16, 2021), https://www.natlawreview.com/article/considerations-aba-s-best-practices-litigation-funding.
[2] Institute for Legal Reform, U.S. Chamber of Commerce, *A New Threat: The National Security Risk of Third Party Litigation Funding*, Nov. 2022, https://instituteforlegalreform.com/wp-content/uploads/2022/11/TPLF-Briefly-Oct-2022-RBG-FINAL-1.pdf.

adversaries like the People's Republic of China and the Russian Federation "use all instruments of national power to target the United States."[3]  Our intelligence community recently concluded that China, in particular, "will remain the top threat to U.S. technological competitiveness as Beijing targets key technology sectors and proprietary commercial and military technology from U.S. and allied companies and research institutions associated with defense, energy, finance, and other sectors."[4]  Given the relentless efforts by these adversaries, among others, in pursuit of their foreign policy goals, we should expect that litigation financing in our courtrooms is another dangerous weapon among their arsenal.

Merely by financing litigation in the United States against influential individuals, corporations, or highly sensitive sectors, a foreign actor can advance its strategic interests in the shadows since few disclosure requirements exist in jurisdictions across our country.[5]  Foreign entities, including adversaries, "can fund frivolous litigation to overwhelm U.S. courts, target lawsuits to weaken critical industries, or obtain confidential materials through the discovery process."[6]  Depending on the scale of involvement, foreign entities could exploit disputes to drain the resources of American companies in key industries with national security implications or cause them significant reputational harm in ways that benefit companies in their home country.  If, for example, a foreign entity finances multiple lawsuits impacting a particular industry, it could even "destabilize entire sectors of the U.S. economy that are vital to American national and economic security."[7]  In addition, foreign entities could also access sensitive technologies and information by circumventing existing controls embedded in federal law, like those enforced by the Committee on Foreign Investment in the United States, that exist to protect our security interests.

As a member of the Judiciary Committee, I ask that the Department of Justice provide details about any course of action that has been taken to mitigate this threat.  I also recommend that the Judicial Conference of the United States consider proactively providing guidance to courts from coast to coast as means of preventing foreign entities from hijacking our federal judiciary.

I understand that Congress may be forced to consider amending the Foreign Agents Registration Act—among other actions—to protect the integrity of our nation's judicial system at the end of the day. Until that becomes necessary, I respectfully request a response to this inquiry no later than January 23, 2023 by contacting my Chief Counsel on the Judiciary Committee, Nathan Williams, at nathan_williams@kennedy.judiciary.gov.

---

[3] *Id.*

[4] Off. of the Dir. of Nat'l Intel., *Annual Threat Assessment of the U.S. Intelligence Community*, (Feb. 7, 2022), https://www.dni.gov/files/ODNI/documents/assessments/ATA-2022-Unclassified-Report.pdf.

[5] Only the District of New Jersey requires disclosure by "non-parties that provide non-recourse funding for attorneys' fees and expenses." Sara Merken, *Litigation Funders Howl as NJ Adopts Disclosure Requirement*, REUTERS (June 22, 2022), https://www.reuters.com/legal/litigation/litigation-funders-howl-nj-adopts-disclosure-requirement-2021-06-22/. This broad requirement is not limited though to foreign entities.

[6] Donald J. Kochlan, *Keep Foreign Cash Out of U.S. Courts*, WALL ST. J. (Nov. 24, 2022), https://www.wsj.com/articles/keep-foreign-cash-out-of-u-s-courts-litigation-courts-foreign-cash-profit-legal-reform-funder-lawsuit-money-11669227764.

[7] *Supra* note 2, at 12.

Sincerely,

John Kennedy
United States Senate

# 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕾𝖊𝖓𝖆𝖙𝖊
## WASHINGTON, DC 20510-0908

November 3, 2023

The Honorable Cecilia Altonaga
Chief Judge
U.S. District Court for the Southern District of Florida
400 North Miami Avenue
Miami, Florida 33128

Dear Chief Judge Altonaga:

We write to highlight the dangers of foreign third-party litigation funding (TPLF) and the need for more transparency in the federal judiciary as it relates to this matter.

As you may know, foreign TPLF is when foreign actors, including hostile foreign actors, who are not directly engaged in a lawsuit provide funds to litigants in exchange for potential monetary returns from such litigation. Foreign TPLF may come from several sources, including the foreign state directly through sovereign wealth funds, as well as de facto arms of the state. These funds are typically not disclosed, and funders are able to exert an exorbitant amount of influence on the nature and direction of litigation through their financial contributions. The potential impacts of allowing unfettered and undisclosed foreign TPLF throughout the judiciary could be severe, unless properly addressed.

Most alarmingly, these foreign funders have the potential to provide hostile foreign actors with sufficient sway to exert undisclosed influence on litigation moving through the federal judiciary, including litigation related to critical infrastructure. Foreign actors attempting to capitalize on such influence may seek to, among other things, advance frivolous lawsuits, needlessly and excessively prolong litigation disputes, exacerbate domestic discord, or seize control of the litigation from the case's original parties. Tactics such as these, which seek to exploit the openness of American institutions and undermine critical infrastructure sectors, are frequently done by foreign adversaries, particularly China, are not in the strategic interest of the United States, and serve as an example of the need to defend the U.S. against hostile foreign actors seeking to undermine our national interests.

Lawmakers have an obligation to preserve the integrity of the judiciary and ensure that hostile foreign actors are not obtaining a strategic advantage over the United States. Preventing foreign actors from exploiting the accessibility of the legal system fits squarely into this obligation. As lawmakers consider measures to combat the looming threats posed by foreign TPLF, federal courts have the ability and responsibility to inform the public about the scope of the issue, including by implementing certain common-sense disclosure requirements. Currently, there is no uniform disclosure requirement for foreign TPLF in federal courts, though the Judicial Conference of the United States has previously discussed similar measures and are currently considering changes to the Federal Rules of Civil and Appellate Procedure aimed

requiring increased disclosure. Further, to date, several individual district courts throughout the country have, to varying degrees, implemented disclosure requirements.

The cost of allowing foreign actors, especially foreign adversaries, to take advantage of the American court system is high. As lawmakers seek to address the issue of foreign TPLF and prevent foreign adversaries from exploiting the justice system, we encourage you and your colleagues to consider adopting disclosure requirements related to foreign TPLF in your jurisdiction.

Thank you for your attention to this important matter.

Sincerely,

Marco Rubio
U.S. Senator

Rick Scott
U.S. Senator

**EXHIBIT 3**
Prenda Law Barratry Explanation
Judge Otis Wright Details Extortion and Fraud

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

INGENUITY 13 LLC,

               Plaintiff,

   v.

JOHN DOE,

               Defendant.

Case No. 2:12-cv-8333-ODW(JCx)

**ORDER ISSUING SANCTIONS**

"The needs of the many outweigh the needs of the few."
     —Spock, *Star Trek II: The Wrath of Khan* (1982).

## I.   INTRODUCTION

Plaintiffs[1] have outmaneuvered the legal system.[2] They've discovered the nexus of antiquated copyright laws, paralyzing social stigma, and unaffordable defense costs. And they exploit this anomaly by accusing individuals of illegally downloading a single pornographic video. Then they offer to settle—for a sum

---

[1] The term "Plaintiffs" used in this order refers to AF Holdings LLC, Ingenuity 13 LLC, as well as related entities, individuals, and attorneys that collaborated in the underlying scheme fronted by AF Holdings and Ingenuity 13.

[2] This order concerns conduct committed in the following related cases: *AF Holdings LLC v. Doe*, No. 2:12-cv-6636-ODW(JCx) (C.D. Cal. filed Aug. 1, 2012); *AF Holdings LLC v. Doe*, No. 2:12-cv-6669-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6662-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6668-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333-ODW(JCx) (C.D. Cal. filed Sept. 27, 2012).

1   calculated to be just below the cost of a bare-bones defense.  For these individuals,

2   resistance is futile; most reluctantly pay rather than have their names associated with

3   illegally downloading porn.    So now, copyright laws originally designed to

4   compensate starving artists allow, starving attorneys in this electronic-media era to

5   plunder the citizenry.

6        Plaintiffs do have a right to assert their intellectual-property rights, so long as

7   they do it right.  But Plaintiffs' filing of cases using the same boilerplate complaint

8   against dozens of defendants raised the Court's alert.  It was when the Court realized

9   Plaintiffs engaged their cloak of shell companies and fraud that the Court went to

10  battlestations.

11                    **II.    PROCEDURAL HISTORY**

12        The Court issued its February 7, 2013 Order to Show Cause re Sanctions to

13  allow counsel, Brett Gibbs, to explain why he ignored the Court's discovery-stay

14  Order, filed complaints without reasonable investigation, and defrauded the Court by

15  asserting a copyright assignment secured with a stolen identity.  (ECF No. 48.)  As

16  evidence materialized, it turned out that Gibbs was just a redshirt.

17        Gibbs's behavior in the porno-trolling collective was controlled by several

18  attorneys, under whom other individuals also took their orders.  Because it was

19  conceivable that these attorneys (and others) were culpable for Gibbs's conduct, the

20  Court ordered these parties to appear.

21        The following additional parties were ordered to appear: (a) John Steele, of

22  Steele Hansmeier PLLC, Prenda Law, Inc., and/or Livewire Holdings LLC; (b) Paul

23  Hansmeier, of Steele Hansmeier PLLC and/or Livewire Holdings LLC; (c) Paul

24  Duffy, of Prenda Law, Inc.; (d) Angela Van Den Hemel, of Prenda Law, Inc.;

25  (e) Mark Lutz, of Prenda Law, Inc., AF Holdings LLC, and/or Ingenuity 13 LLC;

26  (f) Alan Cooper, of AF Holdings LLC; (g) Peter Hansemeier, of 6881 Forensics, LLC;

27  (h) Prenda Law, Inc.; (i) Livewire Holdings LLC; (j) Steele Hansmeier PLLC; (k) AF

28  Holdings LLC; (l) Ingenuity 13 LLC; (m) 6881 Forensics, LLC; and (n) Alan Cooper,

of 2170 Highway 47 North, Isle, MN 56342.  (ECF Nos. 66, 86.)  These parties were ordered to show cause why they should not be sanctioned for their behind-the-scenes role in the conduct facially perpetrated by Gibbs.  These parties were also ordered to explain the nature of their operations, relationships, and financial interests.

## III.    LEGAL STANDARD

The Court has a duty to supervise the conduct of attorneys appearing before it. *Erickson v. Newmar Corp.*, 87 F.3d 298, 301 (9th Cir. 1996).  The power to punish contempt and to coerce compliance with issued orders is based on statutes and the Court's inherent authority.  *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994).  Though this power must be exercised with restraint, the Court has wide latitude in fashioning appropriate sanctions to fit the conduct.  *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–65 (1980).

Under the Court's inherent authority, parties and their lawyers may be sanctioned for improper conduct.  *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). This inherent power extends to a full range of litigation abuses, the litigant must have engaged in bad faith or willful disobedience of a court's order.  *Id.* at 992.  Sanctions under the Court's inherent authority are particularly appropriate for fraud perpetrated on the court.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 54 (1991).

## IV.    DISCUSSION

### A.    Findings of fact

Based on the evidence presented on the papers and through sworn testimony, the Court finds the following facts, including those based on adverse inferences drawn from Steele, Hansmeier, Duffy, and Van Den Hemel's blanket refusal to testify.[3]

1.    Steele, Hansmeier, and Duffy ("Principals") are attorneys with shattered law practices.  Seeking easy money, they conspired to operate this enterprise and

---

[3] Even if their refusal was based on the Fifth Amendment privilege against self-incrimination, the Court still may draw adverse inferences against them in this civil proceeding. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).

1    formed the AF Holdings and Ingenuity 13 entities (among other fungible entities) for
2    the sole purpose of litigating copyright-infringement lawsuits.    They created these
3    entities to shield the Principals from potential liability and to give an appearance of
4    legitimacy.

5        2.    AF Holdings and Ingenuity 13 have no assets other than several
6    copyrights to pornographic movies.    There are no official owners or officers for these
7    two offshore entities, but the Principals are the de facto owners and officers.

8        3.    The Principals started their copyright-enforcement crusade in about 2010,
9    through Prenda Law, which was also owned and controlled by the Principals.    Their
10   litigation strategy consisted of monitoring BitTorrent download activity of their
11   copyrighted pornographic movies, recording IP addresses of the computers
12   downloading the movies, filing suit in federal court to subpoena Internet Service
13   Providers ("ISPs") for the identity of the subscribers to these IP addresses, and
14   sending cease-and-desist letters to the subscribers, offering to settle each copyright-
15   infringement claim for about $4,000.

16       4.    This nationwide strategy was highly successful because of statutory-
17   copyright damages, the pornographic subject matter, and the high cost of litigation.
18   Most defendants settled with the Principals, resulting in proceeds of millions of
19   dollars due to the numerosity of defendants.    These settlement funds resided in the
20   Principals' accounts and not in accounts belonging to AF Holdings or Ingenuity 13.
21   No taxes have been paid on this income.

22       5.    For defendants that refused to settle, the Principals engaged in vexatious
23   litigation designed to coerce settlement.    These lawsuits were filed using boilerplate
24   complaints based on a modicum of evidence, calculated to maximize settlement
25   profits by minimizing costs and effort.

26       6.    The Principals have shown little desire to proceed in these lawsuits when
27   faced with a determined defendant.    Instead of litigating, they dismiss the case.    When
28   pressed for discovery, the Principals offer only disinformation—even to the Court.

7.    The Principals have hired willing attorneys, like Gibbs, to prosecute these cases.  Though Gibbs is culpable for his own conduct before the Court, the Principals directed his actions.  In some instances, Gibbs operated within narrow parameters given to him by the Principals, whom he called "senior attorneys."

8.    The Principals maintained full control over the entire copyright-litigation operation.  The Principals dictated the strategy to employ in each case, ordered their hired lawyers and witnesses to provide disinformation about the cases and the nature of their operation, and possessed all financial interests in the outcome of each case.

9.    The Principals stole the identity of Alan Cooper (of 2170 Highway 47 North, Isle, MN 56342).  The Principals fraudulently signed the copyright assignment for "Popular Demand" using Alan Cooper's signature without his authorization, holding him out to be an officer of AF Holdings.  Alan Cooper is not an officer of AF Holdings and has no affiliation with Plaintiffs other than his employment as a groundskeeper for Steele.  There is no other person named Alan Cooper related to AF Holdings or Ingenuity 13.

10.    The Principals ordered Gibbs to commit the following acts before this Court: file copyright-infringement complaints based on a single snapshot of Internet activity; name individuals as defendants based on a statistical guess; and assert a copyright assignment with a fraudulent signature.  The Principals also instructed Gibbs to prosecute these lawsuits only if they remained profitable; and to dismiss them otherwise.

11.    Plaintiffs have demonstrated their willingness to deceive not just this Court, but other courts where they have appeared.  Plaintiffs' representations about their operations, relationships, and financial interests have varied from feigned ignorance to misstatements to outright lies.  But this deception was calculated so that the Court would grant Plaintiffs' early-discovery requests, thereby allowing Plaintiffs to identify defendants and exact settlement proceeds from them.  With these granted requests, Plaintiffs borrow the authority of the Court to pressure settlement.

**B.    Sanctions**

Although the Court originally notified the parties that sanctions would be imposed under Federal Rule of Civil Procedure 11(b)(3) and Local Rule 83-3, the Court finds it more appropriate to sanction the parties under its inherent authority. *See In re DeVille*, 361 F.3d 539, 550 (9th Cir. 2004) ("[T]he bankruptcy court's failure to specify, in advance of the disciplinary proceedings, that its inherent power was a basis for those proceedings, did not serve to undercut its sanctioning authority."). The sanctions for Plaintiffs' misconduct are as follows.

*1.    Rule 11 sanctions*

The Court maintains that its prior analysis of Plaintiffs' Rule 11 violations is accurate. (ECF No. 48.) Plaintiffs can only show that someone, using an IP address belonging to the subscriber, was seen online in a torrent swarm. But Plaintiffs did not conduct a sufficient investigation to determine whether that person actually downloaded enough data (or even anything at all) to produce a viewable video. Further, Plaintiffs cannot conclude whether that person spoofed the IP address, is the subscriber of that IP address, or is someone else using that subscriber's Internet access. Without better technology, prosecuting illegal BitTorrent activity requires substantial effort in order to make a case. It is simply not economically viable to *properly* prosecute the illegal download of a single copyrighted video.

Enter Plaintiffs and their cottage-industry lawsuits. Even so, the Court is not as troubled by their lack of reasonable investigation as by their cover-up. Gibbs argued that a deep inquiry was performed *prior* to filing. Yet these arguments are not credible and do not support Gibbs's conclusions. Instead, Gibbs's arguments suggest a hasty after-the-fact investigation, and a shoddy one at that.

For instance, Gibbs characterized Marvin Denton's property as "a very large estate consisting of a gate for entry and multiple separate houses/structures on the property." (ECF No. 49, at 19.) He stated this to demonstrate the improbability that Denton's Wi-Fi signal could be received by someone outside the residence. But

1  Denton's property is not a large estate; it is a small house in a closely packed
2  residential neighborhood.  There are also no gates visible.



20  Gibbs's statement is a blatant lie.  His statement resembles other statements
21  given by Plaintiffs in this and their other cases: statements that sound reasonable but
22  lack truth.  Thus, the Court concludes that Gibbs, even in the face of sanctions,
23  continued to make factual misrepresentations to the Court.

24  Nevertheless, Rule 11 sanctions are inappropriate here because it is the wrong
25  sanctions vehicle at this stage of litigation.  The cases have already been dismissed
26  and monetary sanctions are not available. Fed. R. Civ. P 11(c)(5)(B) (a court cannot
27  impose a monetary sanction on its own unless it issued the show-cause order before
28  voluntary dismissal).  The more appropriate sanction for these Rule 11 violations is

1   what the Court had already imposed: denial of requests for early discovery. (ECF

2   No. 28.)

3         2.    *Sanctions under the Court's inherent authority*

4       In addition to Gibbs's misrepresentations, there is the matter of the ignored

5   Court Order vacating early discovery. (ECF No. 28.)  The evidence does not show

6   that the Order was ignored because of miscommunication among Plaintiffs.  The

7   Order was purposely ignored—hoping that the ISPs were unaware of the vacatur and

8   would turn over the requested subscriber information.

9       Then there is the Alan Cooper forgery.  Although a recipient of a copyright

10   assignment need not sign the document, a forgery is still a forgery.  And trying to pass

11   that forged document by the Court smacks of fraud.  Unfortunately, other than these

12   specific instances of fraud, the Court cannot make more detailed findings of fraud.

13       Nevertheless, it is clear that the Principals' enterprise relies on deception.  Part

14   of that ploy requires cooperation from the courts, which could only be achieved

15   through deception.   In other words, if the Principals assigned the copyright to

16   themselves, brought suit in their own names, and disclosed that they had the sole

17   financial interest in the suit, a court would scrutinize their conduct from the outset.

18   But by being less than forthcoming, they defrauded the Court.  They anticipated that

19   the Court would blindly approve their early-discovery requests, thereby opening the

20   door to more settlement proceeds.

21       The Principals also obfuscate other facts, especially those concerning their

22   operations, relationships, and financial interests.    The Principals' web of

23   disinformation is so vast that the Principals cannot keep track—their explanations of

24   their operations, relationships, and financial interests constantly vary.  This makes it

25   difficult for the Court to make a concrete determination.

26       Still, the Court adopts as its finding the following chart detailing Plaintiffs'

27   relationships.  Though incomplete, this chart is about as accurate as possible given

28   Plaintiffs' obfuscation.



As for Van Den Hemel, Lutz, and Hansemeier, they are not without fault even though they acted under orders from the Principals. They were not merely assimilated; they knowingly participated in this scheme, reaping the benefits when the going was good. Even so, their status as non-attorneys *and* non-parties severely limits the sanctions that could be levied against them.

Despite these findings, the Court deems these findings insufficient to support a large monetary sanction—a seven-digit sanction adequate to deter Plaintiffs from continuing their profitable enterprise. Even if the Court enters such a sanction, it is certain that Plaintiffs will transfer out their settlement proceeds and plead paucity. Yet Plaintiffs' bad-faith conduct supports other more fitting sanctions.

///

First, an award of attorney's fees to Defendants is appropriate. This award compensates them for expenses incurred in this vexatious lawsuit, especially for their efforts in countering and revealing the fraud perpetrated by Plaintiffs.

So far, only Morgan Pietz and Nicholas Ranallo have appeared.[4] Upon review, the Court finds Pietz's expenditure of 120.5 hours at an hourly rate of $300 reasonable based on his experience, work quality, and quantity of necessary papers filed with the Court. (ECF No. 102.) Although many of these hours were spent after the case was dismissed, these hours were spent in connection with the sanction hearings—time well spent. Similarly, the attorney's fees and costs incurred by Ranallo also appear reasonable.

Therefore, the Court awards attorney's fees and costs in the sum of $40,659.86 to Doe: $36,150.00 for Pietz's attorney's fees; $1,950.00 for Ranallo's attorney's fees; $2,226.26 for Pietz's costs; and $333.60 for Ranallo's costs. As a punitive measure, the Court doubles this award, yielding $81,319.72.[5] This punitive multiplier is justified by Plaintiffs' brazen misconduct and relentless fraud. The Principals, AF Holdings, Ingenuity 13, Prenda Law, and Gibbs are liable for this sum jointly and severally, and shall pay this sum within 14 days of this order.

Second, there is little doubt that that Steele, Hansmeier, Duffy, Gibbs suffer from a form of moral turpitude unbecoming of an officer of the court. To this end, the Court will refer them to their respective state and federal bars.

Third, though Plaintiffs boldly probe the outskirts of law, the only enterprise they resemble is RICO. The federal agency eleven decks up is familiar with their prime directive and will gladly refit them for their next voyage. The Court will refer this matter to the United States Attorney for the Central District of California. The will also refer this matter to the Criminal Investigation Division of the Internal

---

[4] They appeared on behalf of the Doe Defendant in the case *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333-ODW(JCx) (C.D. Cal. filed Sept. 27, 2012).

[5] This punitive portion is calculated to be just below the cost of an effective appeal.

1    Revenue Service and will notify all judges before whom these attorneys have pending

2    cases.  For the sake of completeness, the Court requests Pietz to assist by filing a

3    report, within 14 days, containing contact information for: (1) every bar (state and

4    federal) where these attorneys are admitted to practice; and (2) every judge before

5    whom these attorneys have pending cases.

6        *4.    Local Rule 83-3 sanctions*

7        For the same reasons stated above, the Court will refer Duffy and Gibbs to the

8    Standing Committee on Discipline (for this District) under Local Rule 83-3.

9    **V.    CONCLUSION**

10       Steele, Hansmeier, Duffy, Gibbs, Prenda Law, AF Holdings, and Ingenuity 13

11   shall pay, within 14 days of this order, attorney's fees and costs totaling $81,319.72 to

12   Doe.  The Court enters additional nonmonetary sanctions in accordance with the

13   discussion above.

14   **IT IS SO ORDERED.**

15   May 6, 2013

16

17                                              _____

18                                          **OTIS D. WRIGHT, II**
     **UNITED STATES DISTRICT JUDGE**

19

20

21

22

23

24

25

26

27

28

**EXHIBIT. 4**
Prenda Law Grand Jury Indictment

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CR 16.334 JNE/KMM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **INDICTMENT** |
| | ) | |
| Plaintiff, | ) | 18 U.S.C. § 1349 |
| | ) | 18 U.S.C. § 1341 |
| v. | ) | 18 U.S.C. § 1343 |
| | ) | 18 U.S.C. § 1956(h) |
| PAUL R. HANSMEIER and | ) | 18 U.S.C. § 371 |
| JOHN L. STEELE, | ) | 18 U.S.C. § 2 |
| | ) | |
| Defendants. | ) | |

THE UNITED STATES GRAND JURY CHARGES:

## OVERVIEW

1.     Between 2011 and 2014, defendants Paul R. HANSMEIER and John L. STEELE orchestrated an elaborate scheme to fraudulently obtain millions of dollars in copyright lawsuit settlements by deceiving state and federal courts throughout the country. In order to carry out the scheme, the defendants used sham entities to obtain copyrights to pornographic movies—some of which they filmed themselves—and then uploaded those movies to file-sharing websites in order to lure people to download the movies.  To learn the identities of the people caught in the trap they constructed, HANSMEIER and STEELE filed specious copyright infringement lawsuits and fraudulently procured permission from courts to send subpoenas to internet service providers for subscriber information associated with the IP addresses used to download their pornographic movies.  After receiving this information, the defendants—through extortionate letters and phone calls—threatened the subscribers with enormous financial penalties and public embarrassment unless the

SCANNED
DEC 1 4 2016
U.S. DISTRICT COURT MPLS

U.S. v. Paul Hansmeier et al.

subscribers agreed to pay a settlement, all the while concealing their collusion in the alleged

copyright infringement.    When courts restricted their ability to sue multiple individuals in

the same lawsuit, the defendants shifted tactics.    They filed lawsuits falsely alleging that

computer systems purportedly belonging to their sham clients had been infiltrated by

hackers, and then recruited ruse defendants against whom they brought these illusory

"hacking" lawsuits.    Finally, when courts became suspicious of the defendants' tactics

and motives, the defendants began a long process of lies and deceit designed to conceal the

truth and deflect responsibility from themselves.    In total, the defendants obtained

approximately $6,000,000 made possible by the fraudulent copyright lawsuits they peddled

to courts throughout the country.

## INTRODUCTION

At times relevant to this Indictment:

2.    Defendant Paul R. HANSMEIER was an attorney licensed to practice law in

the State of Minnesota.

3.    Defendant John L. STEELE was an attorney licensed to practice law in the

State of Illinois.

4.    Under both the Minnesota and Illinois rules of professional conduct

governing attorneys, HANSMEIER and STEELE owed a duty of "candor" to the court not

to make false statements or cause false statements to be made to any court, and to correct

any false statements that had already been made.    In an *ex parte* proceeding—where only

2

<u>U.S. v. Paul Hansmeier et al.</u>

one of the parties to a lawsuit are communicating with a judge—HANSMEIER and
STEELE were obligated to advise the court of all material facts, whether or not the facts
were adverse to their position.

5.     In a lawsuit, parties generally participate in a "discovery" process whereby
they are able to obtain potentially relevant information and documents from the opposing
party as well as third parties.   Under certain circumstances, a party to a lawsuit may be
able to obtain "early" discovery—before it would normally be available to the party—
through an *ex parte* proceeding in order to obtain evidence necessary to allow the lawsuit
to proceed, such as the identity of the opposing party.   If the evidence is in the possession
of a third party, the person seeking early discovery must obtain permission from the court
to send a "subpoena" to the third party, which compels the third party to turn over the
evidence.

### *BitTorrent*

6.     BitTorrent websites, including a website named the Pirate Bay, allow users
to share movies or other copyrighted files with one another without paying any fees to the
copyright holder.   Many BitTorrent websites store their servers in foreign countries, allow
users to participate anonymously (only requiring a user-generated screen-name), and take
other measures to cloak the activities taking place on the website.

7.     Under the "BitTorrent" protocol, an initial "seeder" uses BitTorrent software
to divide a video (or other file) into small pieces and creates a "torrent" file, which contains

3

U.S. v. Paul Hansmeier et al.

metadata about the file and about the computer/server that coordinates distribution of the file, which is referred to as the "tracker." The "seeder" then uploads the torrent file to a file-sharing website such as Pirate Bay, and makes the partitioned video available to other users. Individuals interested in obtaining the video—referred to as "peers" or "users"—first download the torrent file from the file-sharing website and open the torrent file with BitTorrent software on their computers. Upon opening the torrent file, BitTorrent software contacts the tracker to find out what computers are online, and then seeks individual pieces of the video from those other computers. Initially, the pieces will be downloaded by peers directly from the seeder, but as more peers obtain pieces of the video, they will share those pieces with one another. Thus, the "seeder" does not actually "upload" the video to a website, but rather uploads a torrent file that makes it possible for individuals to obtain the video from the seeder and others.

### *Defendants' Entities and Associates*

8.     Steele Hansmeier PLLC was a law firm controlled and operated by defendants HANSMEIER and STEELE. Beginning no later than in or about 2010 and continuing at least until in or about November 2011, the defendants utilized Steele Hansmeier PLLC to bring copyright infringement lawsuits on behalf of purported clients.

9.     Prenda Law Inc. was a law firm nominally owned by an Illinois lawyer named P.D., but was in fact substantially controlled and beneficially owned by defendants HANSMEIER and STEELE. Beginning in or about November 2011, and continuing until

4

U.S. v. Paul Hansmeier et al.

2013, defendants HANSMEIER and STEELE used Prenda Law to cause copyright infringement lawsuits to be filed and collect settlements on behalf of purported clients.

10.    Anti-Piracy Law Group was a law firm nominally owned by P.D., but in fact substantially controlled and beneficially owned by defendants HANSMEIER and STEELE.   In or about 2013, defendants HANSMEIER and STEELE used Anti-Piracy Law Group to cause copyright infringement lawsuits to be filed and collect settlements on behalf of purported clients.

11.    M.L. worked for HANSMEIER and STEELE.  M.L. was paid a salary at various times by Steele Hansmeier PLLC and Prenda Law.   M.L. generally worked as a paralegal whose duties included making phone calls and sending letters to purported copyright infringers threatening legal action unless they paid a settlement fee.   M.L. worked in offices located in Chicago, Las Vegas, and Miami with STEELE, and generally took direction from STEELE.

12.    P.H. worked for HANSMEIER and STEELE.   P.H. at times received payment from the defendants through entities named Media Copyright Group and 6881 Forensics.   P.H. generally worked as a computer forensic consultant who monitored BitTorrent file-sharing websites and attempted to track IP addresses that downloaded or attempted to download certain pornographic movies associated with purported clients of Steele Hansmeier PLLC, Prenda Law, and Anti-Piracy Law Group.   P.H. also assisted in the preparation of legal documents, such as affidavits supporting requests for early

5

U.S. v. Paul Hansmeier et al.

discovery for copyright infringement lawsuits filed by Steele Hansmeier PLLC, Prenda

Law, Anti-Piracy Law Group, and their purported clients.   P.H. worked in multiple offices

located in Minneapolis with HANSMEIER, and generally took direction from

HANSMEIER.

13.    AF Holdings LLC and Ingenuity 13 LLC were entities that HANSMEIER

and STEELE caused to be founded under the laws of St. Kitts and Nevis, an island country

located in the Caribbean Sea.   AF Holdings and Ingenuity 13 were purportedly owned by

a trust managed by and benefitting M.L., but HANSMEIER and STEELE were the *de facto*

owners of AF Holdings and Ingenuity 13.   HANSMEIER and STEELE used AF Holdings

and Ingenuity 13 as sham clients that purportedly owned copyrights to pornographic

movies or operated computer systems associated with pornographic movies, but which the

defendants in fact owned and controlled themselves.

14.    Guava LLC, Livewire Holdings LLC, and LW Systems LLC were U.S.-

based entities that HANSMEIER and STEELE caused to be created.   Guava, Livewire,

and LW Systems were purportedly owned and/or controlled by M.L., but HANSMEIER

and STEELE were the *de facto* owners of the entities.   HANSMEIER and STEELE used

Guava, Livewire, and LW Systems as sham clients that purportedly owned copyrights to

pornographic movies or operated computer systems associated with pornographic movies,

but which they in fact owned and controlled themselves.

U.S. v. Paul Hansmeier et al.

## COUNT 1
### (Conspiracy to Commit Mail Fraud and Wire Fraud)
### 18 U.S.C. § 1349

15.    The allegations contained in paragraphs 1 through 14 of this Indictment are re-alleged as if stated in full herein.

16.    Beginning no later than in or about 2011 and continuing at least until in or about 2014, in the State and District of Minnesota and elsewhere, the defendants,

### PAUL R. HANSMEIER and
### JOHN L. STEELE,

did knowingly conspire with each other and with others to devise and participate in a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, and material omissions, and for the purpose of executing such scheme and artifice, and attempting to do so: (a) caused the sending, delivering and receipt of various matters and things by United States Postal Service and private and commercial interstate carrier; and (b) caused the transmission in interstate commerce, by means of wire communications, of certain writings, signs, signals, pictures and sounds.

17.    More specifically, beginning at least as early as 2011, and continuing until in or about 2014, Paul HANSMEIER and John STEELE executed a scheme to fraudulently obtain millions of dollars in copyright lawsuit settlements by deceiving state and federal courts throughout the country.   HANSMEIER and STEELE—both lawyers—used sham

7

<u>U.S. v. Paul Hansmeier et al.</u>

entities they controlled to obtain copyrights to pornographic movies, some of which they

filmed themselves. The defendants then uploaded the movies to file-sharing websites

hoping to lure people into downloading their movies. When HANSMEIER and STEELE

ensnared someone in their trap, they filed false and deceptive copyright infringement

lawsuits that concealed their role in distributing the movies, as well as their significant

personal stake in the outcome of the litigation. After coercing courts into giving them the

power to subpoena internet service providers and thereby identify the subscriber who

controlled the IP address used to download the movie, the defendants used extortionate

tactics to garner quick settlements from individuals who were unaware of the defendants'

role in uploading the movie, and often were either too embarrassed or could not afford to

defend themselves. When these individuals did fight back, the defendants dismissed the

lawsuits rather than risk their scheme being unearthed. After courts began limiting the

number of people that HANSMEIER and STEELE could sue in one lawsuit, they changed

tactics and began filing lawsuits falsely alleging that computer systems belonging to certain

of their sham clients had been "hacked" and recruited ruse defendants to smooth their path

to obtain authority from courts to subpoena internet service providers. Furthermore, when

courts began questioning the defendants' tactics, the defendants repeatedly lied and caused

others to lie in order to conceal the true nature of their scheme.

CASE 0:16-cr-00334-JNE-KMM *SEALED*   Document 1   Filed 12/14/16   Page 9 of 36

U.S. v. Paul Hansmeier et al.

### Initial Copyright Infringement Lawsuits Brought by Defendants

18.    Beginning in or about September 2010, defendants HANSMEIER and STEELE—using the law firm Steele Hansmeier PLLC—began representing individuals and entities that owned copyrights to pornographic movies.   Defendants and their agents monitored file-sharing websites and obtained IP Addresses of individuals who downloaded or attempted to download their clients' movies.   Defendants then filed copyright infringement lawsuits against these anonymous individuals, sometimes referred to as "John Does," and sought authority from the court—often referred to as "early discovery"—to subpoena internet service providers for subscriber information associated with the IP Addresses.

19.    After receiving the subscriber information, defendants engaged in aggressive settlement tactics. . Defendants made phone calls and sent letters to the subscribers associated with targeted IP Addresses in which they threatened overwhelming financial penalties—the copyright statute permits plaintiffs to recover damages of up to $150,000 per infringement—and public disclosure unless the purported infringers agreed to pay a settlement of approximately $4,000.   Many of the individuals who received the defendants' letters and phone calls agreed to pay the settlement rather than incur the expense of defending the lawsuit—which would undoubtedly exceed the settlement amount—or risk being publicly shamed for allegedly downloading pornographic movies.

9

CASE 0:16-cr-00334-JNE-KMM *SEALED*   Document 1   Filed 12/14/16   Page 10 of 36

U.S. v. Paul Hansmeier et al.

## Uploading Clients' Movies to File-Sharing Websites

20.    Beginning in or about April 2011, defendants caused P.H. to upload their clients' pornographic movies to BitTorrent file-sharing websites, including a website named the Pirate Bay, in order to entice people to download the movies and make it easier to catch those who attempted to obtain the movies.  As defendants knew, the BitTorrent websites to which they uploaded their clients' movies were specifically designed to allow users to share files, including movies, without paying any fees to the copyright holders. Thus, defendants knowingly caused their clients' movies to be shared and distributed on BitTorrent websites, and thereby purposely allowed and authorized the BitTorrent users to obtain their clients' movies.

21.    Thereafter, despite colluding in the purported infringement of their clients' copyrights, HANSMEIER and STEELE caused lawsuits to be filed disingenuously alleging that the individuals who purportedly downloaded the movie did so "without authorization" or consent from the copyright holder or its agents.

22.    For example, on or about April 1, 2011, P.H. uploaded a movie named "Sexual Obsession," which was owned by a client of the defendants named Heartbreaker Productions, to the Pirate Bay.  On or about April 28, 2011, after catching approximately 71 IP Addresses engaged in downloading the movie Sexual Obsession, which defendants had caused to be uploaded, the defendants filed a lawsuit in federal court in Illinois on behalf of Heartbreaker Productions misleadingly alleging that the 71 "John Does" had

10

<u>U.S. v. Paul Hansmeier et al.</u>

downloaded the movie without "authorization or license" from Heartbreaker Productions. On or about April 29, 2011, the defendants filed an *ex parte* motion seeking to obtain early discovery regarding the identities of the subscribers associated with the 71 IP addresses, and therein falsely and misleadingly represented to the court that the John Does "without authorization[] used an online peer-to-peer ("P2P") media distribution system to download Plaintiff's copyrighted works and distribute Plaintiff's copyrighted works to the public ... by making Plaintiff's copyrighted works available for distribution to others." After obtaining authority to subpoena internet service providers for subscriber information associated with the 71 IP Addresses, the defendants dismissed the lawsuit in order to "engage in settlement efforts or, if necessary, [file] separate actions."

23.    Thereafter, between April 2011 and approximately December 2012, defendants HANSMEIER and STEELE caused at least approximately 200 fraudulent copyright infringement lawsuits to be filed in courts throughout the country seeking subscriber information associated with more than 3,000 IP Addresses based on the spurious allegation that certain IP Addresses were caught illegally downloading either Sexual Obsession or another movie owned by Heartbreaker Productions named "Popular Demand" from the Pirate Bay or other BitTorrent websites, which defendants themselves uploaded and made available for people to download. After filing each of the fraudulent lawsuits, HANSMEIER and STEELE filed or caused to be filed *ex parte* motions for early discovery that failed to disclose their involvement in uploading the copyrighted movies,

11

<u>U.S. v. Paul Hansmeier et al.</u>

and falsely accused the purported downloader of obtaining the movie without authorization or consent.   Courts throughout the country, relying on the false and misleading representations made or caused to be made by the defendants, granted early discovery and thereby authorized the defendants to subpoena internet service providers for subscriber information associated with the IP Addresses set forth in the motions and/or civil complaints.

24.    After receiving the subscriber information, HANSMEIER and STEELE employed the same tactics they previously used in order to garner quick settlements from the subscribers they identified.   However, defendants falsely represented to the subscribers that they and their clients had legitimate copyright infringement claims against the subscriber when, in fact and as defendants knew, they had uploaded to the BitTorrent website the very movie that they now threatened to sue the subscriber for downloading. By lying to courts in order to obtain subscriber information and deceiving the subscribers, defendants fraudulently obtained numerous settlement payments.

### Defendants Attempt to Obscure Their Involvement in the Scheme

25.    In or about November 2011, in order to distance themselves from the fraudulent copyright infringement lawsuits and any potential fallout, defendants caused Prenda Law to be created.   Although P.D. nominally owned Prenda Law, and at times provided assistance to HANSMEIER and STEELE in filing and overseeing the copyright litigation, HANSMEIER and STEELE exerted *de facto* control over Prenda Law, including

<u>U.S. v. Paul Hansmeier et al.</u>

the primary direction of its employees and dispensation of its finances.    Despite

controlling Prenda Law, and at various times filing appearances for or in connection with

Prenda Law, HANSMEIER and STEELE on multiple occasions falsely denied to various

courts any direct involvement with or control over Prenda Law.    Beginning in or about

2013, defendants at times also used the name Anti-Piracy Law Group, which was

nominally controlled by P.D., to pursue their copyright infringement and associated

litigation.

        26.    Beginning in or about 2011, defendants also created and/or employed various

sham entities, including AF Holdings, Ingenuity 13, Guava, Livewire Holdings, and LW

Systems as plaintiffs or otherwise to further their fraudulent copyright lawsuits.

        a.    **AF Holdings.**    In or about 2011, defendants convinced R.R., the

owner of Heartbreaker Productions, to transfer the copyrights to Sexual Obsession and

Popular Demand to AF Holdings, supposedly to insulate R.R. from negative publicity

surrounding the copyright infringement lawsuits.    In order to disguise their control over

AF Holdings, defendants used the name of an acquaintance of STEELE—whose initials

are A.C.—to purportedly sign on behalf of AF Holdings on the copyright transfer

agreement.    Furthermore, defendants represented and caused to be represented to multiple

courts that AF Holdings was owned by a trust named "Salt Marsh" whose manager and

sole beneficiary was M.L., the paralegal employed by HANSMEIER and STEELE.    In

fact, and as defendants knew, M.L. was nothing more than a figurehead who agreed to pose

U.S. v. Paul Hansmeier et al.

as the owner of AF Holdings in order to help HANSMEIER and STEELE obscure their

ownership and control over the company.

        b.    **Ingenuity 13.**  Defendants caused Ingenuity 13 to be formed, and

beginning in about 2011, defendants used Ingenuity 13 to obtain copyrights over

pornographic films, some of which they filmed themselves.   Thereafter, defendants

caused copyright infringement lawsuits to be filed on behalf of Ingenuity 13.   Defendants

at times used A.C.'s name to sign on behalf of Ingenuity 13, and on other occasions falsely

represented that Ingenuity 13 was owned or controlled by M.L.; in fact, Ingenuity 13 was

at all times controlled by the defendants, and the defendants received the proceeds of

settlement payments generated by lawsuits filed on behalf of Ingenuity 13.

        c.    **Guava.**  Defendants caused Guava to be formed, and beginning in

about 2012, defendants used Guava to file lawsuits alleging that computer systems

belonging to Guava had been hacked into, and seek early discovery regarding IP Addresses

they falsely alleged had participated in the hacking activity.   Defendants at times falsely

represented that Guava was owned or controlled by M.L.; in fact, Guava was at all times

controlled by the defendants.

        d.    **Livewire Holdings / LW Systems.**  Defendants caused Livewire

Holdings and LW Systems to be formed, and beginning in about 2013, defendants used

Livewire and/or LW Systems to file lawsuits alleging that computer systems belonging to

or associated with those entities had been hacked into, and seek early discovery regarding

14

U.S. v. Paul Hansmeier et al.

IP Addresses they falsely alleged had participated in the hacking activity.   Defendants at times falsely represented that Livewire and LW Systems were owned or controlled by M.L.; in fact, those entities were at all times controlled by the defendants.

### Defendants Film Their Own Pornographic Movies and Upload Them to File-Sharing Websites

27.     Beginning no later than in or about May 2012, defendants filmed and caused to be filmed pornographic movies in order to further their fraudulent scheme.   On at least three separate occasions, while attending pornographic film conventions in Chicago, Miami, and Las Vegas, HANSMEIER and STEELE—at times assisted by P.D., M.L., and P.H.—contracted with adult film actresses and produced multiple short pornographic films. Afterwards, HANSMEIER and STEELE caused Ingenuity 13 to obtain copyrights to the films, which bore names such as "Five Fan Favorites" and "A Peek Behind the Scenes at the Show."   HANSMEIER and STEELE did not publicly distribute or commercially release the movies they filmed.   Instead, HANSMEIER instructed P.H. to upload the movies to file-sharing websites such as the Pirate Bay in order to catch, and threaten to sue, people who attempted to download the movies.

28.     When the defendants caught people downloading their movies, they then caused fraudulent copyright infringement lawsuits to be filed in various courts throughout the country, which falsely alleged that certain "John Does" had downloaded Ingenuity 13's movies "without Plaintiff's authorization," and thereby concealed from the courts that the

15

U.S. v. Paul Hansmeier et al.

defendants—the lawyers behind the lawsuits—not only controlled the Plaintiff and

therefore had a significant personal stake in the outcome of the litigation, but also had

colluded to infringe their own copyrights by impliedly authorizing BitTorrent users to

download the movies.   Defendants also caused false representations to be made to the

court in these lawsuits by alleging that Ingenuity 13 had suffered damages as a result of the

John Does' conduct, when in fact the John Does' conduct had been the entire purpose of

Ingenuity 13's existence.

### Defendants Invent Hacking Allegations

29.    Beginning in or about October 2012, after courts had begun limiting the

discovery defendants could obtain through copyright infringement lawsuits, HANSMEIER

and STEELE caused lawsuits to be filed, generally on behalf of Guava LLC, falsely

alleging that their client's computer systems had been "hacked," and that certain John Does

used "hacked usernames/passwords to gain unlawful access to the member's section of [the

client]'s website."   The entirety of defendants' hacking lawsuits was a lie.   In fact, Guava

(and defendants' other phony clients) had no computer systems; they were sham entities

created and controlled by the defendants for the sole purpose of obtaining lawsuit

settlements.

30.    After the Guava lawsuits were filed, defendants caused motions for early

discovery to be filed which sought subscriber information associated with certain IP

Addresses that had supposedly gained illegal access to Guava's computer systems.   In

<u>U.S. v. Paul Hansmeier et al.</u>

fact, and as defendants' knew, the IP Addresses listed in the Guava complaints and motions

for early discovery were IP Addresses that defendants had caught downloading their or

their clients' pornographic movies through file-sharing websites on earlier occasions.

    31.    In order to attempt to make the Guava lawsuits go smoothly and avoid

difficult questions by the court, HANSMEIER and STEELE also recruited one or more

ruse defendants.  The ruse defendants had been caught downloading one of HANSMEIER

and STEELE's clients' movies from a file-sharing website.  The ruse defendants agreed

that, in exchange for HANSMEIER and STEELE waiving a settlement payment, the ruse

defendant would be sued and permit HANSMEIER and STEELE to seek discovery about

his/her supposed "co-conspirators."  As defendants knew, the ruse defendants had not

participated in any hacking activity, nor had they entered Guava's computer systems with

hacked usernames and passwords.  In fact, they had downloaded movies belonging to an

entirely different entity.  Nonetheless, HANSMEIER and STEELE brought several

lawsuits against these fictitious defendants and falsely alleged that they had participated

and/or benefitted from a non-existent cabal of hackers in order to attempt to obtain

authority from the court to issue subpoenas to internet service providers to find additional

people who they could extort.

U.S. v. Paul Hansmeier et al.

## Courts Accuse the Defendants of Deception and
## Defendants Lie to Cover Up Their Fraud

32.    In or about early 2013, courts began scrutinizing the defendant's litigation

tactics.    Upon uncovering certain of the facts described above, courts began denying the

defendants' requests to subpoena internet service providers, dismissing lawsuits that

defendants had caused to be filed, accusing the defendants and their associates of deceptive

and fraudulent behavior, and imposing sanctions against the defendants and their associates

as a result of their misconduct.    For example, on or about May 6, 2013, the District Court

for the Central District of California issued an order imposing sanctions against the

defendants, and found that:

> Plaintiffs [including HANSMEIER and STEELE] have
> demonstrated their willingness to deceive not just this Court,
> but other courts where they have appeared.    Plaintiffs'
> representations about their operations, relationships, and
> financial interests have varied from feigned ignorance to
> misstatements to outright lies.    But this deception was
> calculated so that the Court would grant Plaintiff's early-
> discovery requests, thereby allowing Plaintiffs to identify
> defendants and exact settlement proceeds from them.    With
> these granted requests, Plaintiffs borrow the authority of the
> Court to pressure settlement.

The Court imposed monetary sanctions in the form of awarding attorneys' fees to the

opposing party, referred HANSMEIER and STEELE to their respective state attorney

disciplinary bodies, and notified all judges overseeing other copyright infringement cases

filed by the defendants and their associated entities of the Court's findings.

U.S. v. Paul Hansmeier et al.

33.    In order to evade detection, further their scheme, and protect the illicit profits

they had obtained, defendants repeatedly lied and caused others to lie, including but not

limited to the following:

a.    On or about November 27, 2012, the defendants caused M.L. to attend

a hearing in Sunlust Pictures LLC v. Tuan Nguyen, 12-cv-1685 (M.D. Fla), and purport to

be the corporate representative of Sunlust Pictures.   During the hearing, M.L. falsely and

misleadingly testified under oath that he did not know P.D., when in fact he did, and was

attending the hearing at the request of a woman·named Sunny Leone when, in fact,

STEELE had asked M.L. to attend the hearing.

b.    On or about November 29, 2012, M.L. was deposed in Guava LLC v.

Skylar Case, 2012 L 7363 (Cook Cty Cir. Ct.), and the defendants caused M.L. to falsely

and misleadingly testify under oath that: (i) he was the VP in charge of legal matters for

Guava; and (ii) Guava maintained computer systems that were "regularly" accessed by

hackers, when in fact Guava was a shell company, M.L. had no real involvement with

Guava, and the defendants had simply invented the hacking allegations in the complaint.

c.    On or about January 25, 2013, in a hearing in Guava LLC v. Spencer

Merkel, 27-cv-1220976 (Henn. Cty Dist. Ct.), STEELE falsely and misleadingly informed

the court that Guava had "some computer equipment" in Illinois and Las Vegas and that

certain unknown "John Does" had hacked into the computer equipment, when in fact

Guava was a shell company and the defendants had simply invented the hacking allegations

U.S. v. Paul Hansmeier et al.

in the complaint. In the same hearing, STEELE falsely and misleadingly denied that the defendants had reached a "deal" with Merkel whereby in exchange for the defendants waiving Merkel's payment of any settlement fee, Merkel had agreed to be sued so that the defendants could conduct discovery.

        d.     On or about February 27, 2013, defendants caused M.L. to sign a declaration "under penalty of perjury," later filed in AF Holdings LLC v. Andrew Magsumbol, 12-cv-4221 (N.D. Cal.), falsely and misleadingly representing that he was the "CEO" of AF Holdings when, in fact, M.L. was nothing more than a figurehead used by the defendants to disguise their involvement with AF Holdings.

        e.     On or about March 6, 2013, HANSMEIER was deposed in AF Holdings v. Joe Navasca, 12-cv-2396 (N.D. Cal.), and falsely and misleadingly testified under oath that he had never worked for and had little association with Prenda Law, and that he was not involved in Prenda's finances. In fact, HANSMEIER, along with STEELE, exerted substantial control over Prenda Law as well as its finances. HANSMEIER further falsely and misleadingly testified that M.L. was responsible for creating AF Holdings, M.L. was the sole employee and manager of AF Holdings, M.L. was the person responsible for making "litigation decisions," and that "the marching orders come from" M.L., when in fact HANSMEIER and STEELE caused AF Holdings to be created, and controlled and made decisions on behalf of AF Holdings. HANSMEIER also falsely and misleadingly testified that the purpose of the copyright litigation brought on

U.S. v. Paul Hansmeier et al.

behalf of AF Holdings was not profit but "to generate a deterrent effect in stealing [AF Holdings'] copyrighted works," when in fact the purpose of the litigation was to generate a profit for HANSMEIER and STEELE and the copyrighted works were never made publically available for purchase by AF Holdings.

      f.    On or about May 2, 2013, STEELE and HANSMEIER caused M.L. to sign an affidavit "under penalty of perjury," later filed in AF Holdings v. Joe Navasca, 12-cv-2396 (N.D. Cal.), falsely and misleadingly claiming that M.L. "manage[d] various adult content related companies, including AF Holdings LLC," when in fact HANSMEIER and STEELE controlled AF Holdings.   The defendants further caused M.L. to falsely and misleadingly represent that—as representative of AF Holdings—he previously signed documents certifying that he reviewed Alternative Dispute Resolution policies with the name "Salt Marsh" when, in fact, M.L. neither reviewed any such policies nor signed the certifications as "Salt Marsh."

      g.    On or about May 28, 2013, STEELE signed an affidavit "under penalty of perjury," later filed in AF Holdings v. John Does, 12-cv-1445-49 (D. Minn.), wherein he falsely and misleadingly stated that he merely introduced A.C. to M.L. and that thereafter his "understanding" was that A.C. "participated in a limited number of transactions in 2011 with [M.L.]'s companies," when in fact STEELE used A.C. and M.L.'s names to disguise his control over AF Holdings and Ingenuity 13, and at all relevant times controlled those companies.

U.S. v. Paul Hansmeier et al.

h.    On or about July 8, 2013, STEELE filed a complaint and caused M.L. to file a complaint with the State Bar of California against B.G., an attorney hired by HANSMEIER and STEELE to oversee copyright litigation on behalf of Prenda Law, wherein STEELE falsely and misleadingly claimed (and caused M.L. to claim) that M.L. was the manager of AF Holdings when, in fact, M.L. was merely a figurehead to obscure HANSMEIER and STEELE's control over AF Holdings.    STEELE further falsely and misleading alleged in the bar complaints that B.G. was the primary attorney for AF Holdings, thereby falsely minimizing HANSMEIER and STEELE's affiliation with and control over AF Holdings.

i.    On or about August 26, 2013, the defendants caused M.L. to sign an affidavit "under penalty of perjury," later filed in AF Holdings v. John Does, 12-cv-1445-49 (D. Min.), wherein M.L. falsely and misleadingly represented that the membership interests in AF Holdings are held in a trust named "Salt Marsh," whose sole beneficiaries are M.L.'s unborn children, and that M.L. was AF Holdings' managing member.    In fact, AF Holdings was controlled by STEELE and HANSMEIER, and M.L. merely served as a nominee to conceal the defendant's interest in AF Holdings.

j.    On or about August 27, 2013, STEELE and HANSMEIER caused M.L. to sign a notarized declaration "under penalty of perjury," later filed in AF Holdings v. Joe Navasca, 12-cv-2396 (N.D. Cal.), falsely and misleadingly declaring: (i) M.L. formed AF Holdings in mid-2011; (ii) that he was "the only manager" that AF Holdings,

<u>U.S. v. Paul Hansmeier et al.</u>

LLC ever had; (iii) that "[n]either John Steele, [P.D.] nor Paul Hansmeier ever served as a director, officer, manager, or employee of AF Holdings or otherwise possessed managerial authority or an ownership interest in AF Holdings"; (iv) that "[t]he only role that Steele, [P.D.] and Hansmeier have played with respect to AF Holdings, LLC is that of its attorney." In fact, STEELE and HANSMEIER created AF Holdings and were at all relevant times the *de facto* owners of and controlled AF Holdings. In the same declaration, STEELE and HANSMEIER caused M.L. to falsely and misleadingly declare that he started AF Holdings because (i) he "believed that [he] could purchase copyrights for little-to-nothing, retain attorneys to ward off the piracy and then resell the copyrights for a profit"; (ii) that "[t]he copyrights [AF Holdings] held would be worth significant sums if even a reasonable percentage of the people who stole the content instead purchased it"; and (iii) that litigation was simply "a necessary evil," when in fact, the copyrights owned by AF Holdings were obtained for the sole purpose of litigation and the copyrighted works were never made publically available for purchase by AF Holdings.

k.      On or about August 28, 2013, HANSMEIER signed a declaration "under penalty of perjury," later filed in AF Holdings v. Joe Navasca, 12-cv-2396 (N.D. Cal.), falsely and misleadingly claiming that "I have never served as a director, officer, manager, or employee of AF Holdings or otherwise possessed managerial authority over or an ownership interest in AF Holdings" when in fact HANSMEIER and STEELE owned and controlled AF Holdings. In the same declaration, HANSMEIER falsely and

23

U.S. v. Paul Hansmeier et al.

misleadingly claimed that "I have never created a Pirate Bay account in my life and

categorically deny ever uploading and/or downloading any BitTorrent files of any past

client of mine, including AF Holdings" when in fact HANSMEIER and STEELE caused

P.H. to upload their purported clients' pornographic movies to BitTorrent file-sharing

websites.

      l.    On or about September 30, 2013, STEELE falsely and misleadingly

testified under oath at a hearing in AF Holdings v. John Does, 12-cv-1445-49 (D. Minn.)

that M.L. was the "controlling member" of AF Holdings, and that A.C. had spoken to and

given permission to M.L. for AF Holdings to use A.C.'s name on a copyright transfer

document. STEELE further testified, falsely and misleadingly, that he had "no ownership

interest, never had, in Prenda Law.   I didn't set up a company, bogus or otherwise, AF

Holdings." In fact, STEELE and HANSMEIER exerted control over AF Holdings and

Prenda Law, and M.L. was a pawn used by STEELE and HANSMEIER to conceal their

involvement in the scheme.   During this hearing, HANSMEIER (acting as an attorney for

AF Holdings) asked questions of STEELE and thereby suborned the perjury set forth

above.

      m.    On or about January 28, 2014, STEELE caused M.L. to falsely and

misleadingly testify under oath in a hearing in AF Holdings v. Rajesh Patel, 12-cv-262

(N.D. Ga.), that he was the "trustee" and "owner" of AF Holdings, and that STEELE and

HANSMEIER did not own any part of AF Holdings.   M.L. further falsely and

U.S. v. Paul Hansmeier et al.

misleadingly described B.G. and P.D. as primarily responsible for Prenda Law's copyright

litigation, and falsely downplayed STEELE and HANSMEIER's role in AF Holdings and

in the related copyright litigation.

n.     On or about April 8, 2015, STEELE falsely and misleadingly testified

under oath in a deposition in Alan Cooper v. John Steele et al., 27-cv-13-3463 (Henn. Cty

Dist. Ct.), that: (a) "I did not run or manage in any way AF Holdings;" (b) M.L. "operates"

AF Holdings; and M.L. "runs" Guava LLC.   In fact, STEELE and HANSMEIER

managed, operated, and controlled AF Holdings and Guava LLC.

34.     In total, between 2010 and 2013, defendants and their entities received more

than $6,000,000 in copyright infringement settlement payments.  Of this amount, more

than $3,000,000 was paid to or on behalf of Paul HANSMEIER and John STEELE.   Of

the remaining amount, only approximately $1,000,000 was paid to clients of HANSMEIER

and STEELE, and the rest was spent on expenses associated with carrying out the scheme.

All in violation of Title 18, United States Code, Sections 1349.

## COUNTS 2-6
(Mail Fraud)
18 U.S.C. § 1341

35.     The allegations contained in paragraphs 1 through 34 of this Indictment are

re-alleged as if stated in full herein.

36.     On or about the following dates, in the State and District of Minnesota and

elsewhere, the defendants,

25

<u>U.S. v. Paul Hansmeier et al.</u>

**PAUL R. HANSMEIER and
JOHN L. STEELE,**

having devised and intending to devise the scheme and artifice described above, caused to

be sent, delivered, and moved by the United States Postal Service and private and

commercial interstate carrier various mailings, items and things for the purpose of

executing and attempting to execute such scheme and artifice:

| COUNT | DATE (on or about) | MAILING DETAILS |
|-------|--------------------|------------------|
| 2 | December 29, 2011 | Letter sent by Prenda Law on behalf of AF Holdings to P.M. threatening legal action unless a settlement fee of $3,400 was paid. |
| 3 | August 28, 2012 | Letter sent by Prenda Law on behalf of AF Holdings to S.Y. threatening legal action unless a settlement fee of $4,000 was paid. |
| 4 | November 7, 2012 | Letter sent by Prenda Law on behalf of Ingenuity 13 to D.W. threatening legal action unless a settlement fee of $4,000 was paid. |
| 5 | November 21, 2012 | Letter sent by Prenda Law on behalf of Ingenuity 13 to D.W. threatening legal action unless a settlement fee was paid. |
| 6 | March 26, 2013 | Letter sent by Anti-Piracy Law Group on behalf of LW Systems to P.R. threatening legal action unless a settlement fee was paid. |

All in violation of Title 18, United States Code, Sections 1341 and 2.

U.S. v. Paul Hansmeier et al.

## COUNTS 7-16
### (Wire Fraud)
### 18 U.S.C. § 1343

37.    The allegations contained in paragraphs 1 through 34 of this Indictment are

re-alleged as if stated in full herein.

38.    On or about the following dates, in the State and District of Minnesota, the

defendant,

### PAUL R. HANSMEIER and
### JOHN L. STEELE,

having devised and intending to devise the scheme and artifice described above, caused to

be transmitted by means of wire communication in interstate commerce the following

writings, signs, signals, pictures, and sounds for the purpose of executing and attempting

to execute such scheme and artifice:

| COUNT | DATE (on or about) | WIRE DETAILS |
|---|---|---|
| 7 | January 5, 2012 | Processing and settlement of check in the amount of $2,400 from P.M. to Prenda Law |
| 8 | June 1, 2012 | Uploading of torrent file associated with "Fan Favorite:    Madison Fox – Busty Beauty in Red Lingerie" to the Pirate Bay |
| 9 | June 1, 2012 | Uploading of torrent file associated with "Fan Favorite:    Amy Brooke – Anal Dildo and Squirting" to the Pirate Bay |

27

<u>U.S. v. Paul Hansmeier et al.</u>

| COUNT | DATE<br>(on or about) | WIRE DETAILS |
|---|---|---|
| 10 | June 2, 2012 | Uploading of torrent file associated with "Fan Favorite:   Tory Lane – Pink Heels" to the Pirate Bay |
| 11 | June 2, 2012 | Uploading of torrent file associated with "Fan Favorite:   Rosemary Radiva – Petite, Sexy Asian Plays with Herself" to the Pirate Bay |
| 12 | June 2, 2012 | Uploading of torrent file associated with "Fan Favorite:   Spencer Scott – Playmate on a Motorcycle" to the Pirate Bay |
| 13 | August 21, 2012 | Uploading of torrent file associated with "A Peek Behind the Scenes at the Show" to the Pirate Bay |
| 14 | March 1, 2013 | Processing and settlement of Cashier's Check in the amount of $2,200 from W.W. to Prenda Law |
| 15 | March 8, 2013 | Processing and settlement of check in the amount of $1,500 from P.R. to LW Systems |
| 16 | April 10, 2013 | Processing and settlement of check in the amount of $1,200 from M.B. to Livewire Holdings |

All in violation of Title 18, United States Code, Sections 1343 and 2.

<u>U.S. v. Paul Hansmeier et al.</u>

## COUNT 17
(Conspiracy to Commit Money Laundering)
18 U.S.C. § 1956(h)

39.     The allegations contained in paragraphs 1 through 38 of this Indictment are re-alleged as if stated in full herein.

40.     Beginning no later than in or about 2012 and continuing at least through in or about 2013, in the State and District of Minnesota and elsewhere, the defendants,

**PAUL R. HANSMEIER and
JOHN L. STEELE,**

did knowingly and willfully combine, conspire, and agree to conduct and attempt to conduct financial transactions affecting interstate commerce, namely, transfers of funds related to Under the Bridge Consulting, knowing that the property involved in the financial transactions involved proceeds of a specified unlawful activity, that is, conspiracy to commit mail fraud and wire fraud, in violation of Title 18, United States Code, Section 1349, mail fraud in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343, and knowing that the transactions were designed in whole or in part to conceal or disguise the nature, source, ownership, and control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

29

U.S. v. Paul Hansmeier et al.

## COUNT 18
### (Conspiracy to Commit and Suborn Perjury)
### 18 U.S.C. § 371

41.    The allegations contained in paragraphs 1 through 34 of this Indictment are re-alleged as if stated in full herein.

42.    Beginning no later than in or about 2012 and continuing at least through in or about 2014, in the State and District of Minnesota and elsewhere, the defendants,

### PAUL R. HANSMEIER and
### JOHN L. STEELE,

did unlawfully, knowingly, voluntarily, and intentionally combine, conspire, confederate, and agree with each other and others to commit an offense against the United States, namely to commit and suborn perjury in violation of Title 18, United States Code, Sections 1621 and 1622.

### Purpose of the Conspiracy

43.    The purpose of the conspiracy was to conceal and disguise their involvement in the scheme described in paragraphs 1 through 34 of the Indictment by providing false and misleading testimony and declarations, and causing others to provide false and misleading testimony and declarations, in cases and to courts throughout the country.

### Manner and Means of the Conspiracy

44.    The manner and means of the conspiracy are described in paragraphs 1 through 34 of the Indictment.

30

U.S. v. Paul Hansmeier et al.

## Overt Acts

45.    In order to effect the objects of the conspiracy and in furtherance of the conspiracy, the conspirators committed and caused to be committed the following specific acts, among others:

a.    On or about February 27, 2013, defendants caused M.L. to sign a declaration "under penalty of perjury," later filed in AF Holdings LLC v. Andrew Magsumbol, 12-cv-4221 (N.D. Cal.), falsely and misleadingly representing that he was the "CEO" of AF Holdings when, in fact, M.L. was nothing more than a figurehead used by the defendants to disguise their involvement with AF Holdings.

b.    On or about March 6, 2013, HANSMEIER was deposed in AF Holdings v. Joe Navasca, 12-cv-2396 (N.D. Cal.), and falsely and misleadingly testified under oath that he had never worked for and had little association with Prenda Law, and that he was not involved in Prenda's finances.    In fact, HANSMEIER, along with STEELE, exerted substantial control over Prenda Law as well as its finances. HANSMEIER further falsely and misleadingly testified that M.L. was responsible for creating AF Holdings, M.L. was the sole employee and manager of AF Holdings, M.L. was the person responsible for making "litigation decisions," and that "the marching orders come from" M.L., when in fact HANSMEIER and STEELE caused AF Holdings to be created, and controlled and made decisions on behalf of AF Holdings.    HANSMEIER also falsely and misleadingly testified that the purpose of the copyright litigation brought on

31

U.S. v. Paul Hansmeier et al.

behalf of AF Holdings was not profit but "to generate a deterrent effect in stealing [AF Holdings'] copyrighted works," when in fact the purpose of the litigation was to generate a profit for HANSMEIER and STEELE and the copyrighted works were never made publically available for purchase by AF Holdings.

   c.  On or about May 2, 2013, STEELE and HANSMEIER caused M.L. to sign an affidavit "under penalty of perjury," later filed in AF Holdings v. Joe Navasca, 12-cv-2396 (N.D. Cal.), falsely and misleadingly claiming that M.L. "manage[d] various adult content related companies, including AF Holdings LLC," when in fact HANSMEIER and STEELE controlled AF Holdings.   The defendants further caused M.L. to falsely and misleadingly represent that—as representative of AF Holdings—he previously signed documents certifying that he reviewed Alternative Dispute Resolution policies with the name "Salt Marsh" when, in fact, M.L. neither reviewed any such policies nor signed the certifications as "Salt Marsh."

   d.  On or about May 28, 2013, STEELE signed an affidavit "under penalty of perjury," later filed in AF Holdings v. John Does, 12-cv-1445-49 (D. Minn.), wherein he falsely and misleadingly stated that he merely introduced A.C. to M.L. and that thereafter his "understanding" was that A.C. "participated in a limited number of transactions in 2011 with [M.L.]'s companies," when in fact STEELE used A.C. and M.L.'s names to disguise his control over AF Holdings and Ingenuity 13, and at all relevant times controlled those companies.

U.S. v. Paul Hansmeier et al.

       e.     On or about August 26, 2013, the defendants caused M.L. to sign an

affidavit "under penalty of perjury," later filed in AF Holdings v. John Does, 12-cv-1445-

49 (D. Minn.), wherein M.L. falsely and misleadingly represented that the membership

interests in AF Holdings are held in a trust named "Salt Marsh," whose sole beneficiaries

are M.L.'s unborn children, and that M.L. was AF Holdings' managing member.   In fact,

AF Holdings was controlled by STEELE and HANSMEIER, and M.L. merely served as a

nominee to conceal the defendant's interest in AF Holdings.

       f.     On or about·August 27, 2013, STEELE and HANSMEIER caused

M.L. to sign a notarized declaration "under penalty of perjury," later filed in AF Holdings

v. Joe Navasca, 12-cv-2396 (N.D. Cal.), falsely and misleadingly declaring: (i) M.L.

formed AF Holdings in mid-2011; (ii) that he was "the only manager" that AF Holdings,

LLC ever had; (iii) that "[n]either John Steele, [P.D.] nor Paul Hansmeier ever served as a

director, officer, manager, or employee of AF Holdings or otherwise possessed managerial

authority or an ownership interest in AF Holdings"; (iv) that "[t]he only role that Steele,

[P.D.] and Hansmeier have played with respect to AF Holdings, LLC is that of its attorney."

In fact, STEELE and HANSMEIER created AF Holdings and were at all relevant times

the *de facto* owners of and controlled AF Holdings.   In the same declaration, STEELE and

HANSMEIER caused M.L. to falsely and misleadingly declare that he started AF Holdings

because (i) he "believed that [he] could purchase copyrights for little-to-nothing, retain

attorneys to ward off the piracy and then resell the copyrights for a profit"; (ii) that "[t]he

<u>U.S. v. Paul Hansmeier et al.</u>

copyrights [AF Holdings] held would be worth significant sums if even a reasonable

percentage of the people who stole the content instead purchased it"; and (iii) that litigation

was simply "a necessary evil," when in fact, the copyrights owned by AF Holdings were

obtained for the sole purpose of litigation and the copyrighted works were never made

publically available for purchase by AF Holdings.

        g.     On or about August 28, 2013, HANSMEIER signed a declaration

"under penalty of perjury," later filed in AF Holdings v. Joe Navasca, 12-cv-2396 (N.D.

Cal.), falsely and misleadingly claiming that "I have never served as a director, officer,

manager, or employee of AF Holdings or otherwise possessed managerial authority over

or an ownership interest in AF Holdings" when in fact HANSMEIER and STEELE owned

and controlled AF Holdings. In the same declaration, HANSMEIER falsely and

misleadingly claimed that "I have never created a Pirate Bay account in my life and

categorically deny ever uploading and/or downloading any BitTorrent files of any past

client of mine, including AF Holdings" when in fact HANSMEIER and STEELE caused

P.H. to upload their purported clients' pornographic movies to BitTorrent file-sharing

websites.

        h.     On or about September 30, 2013, STEELE falsely and misleadingly

testified under oath at a hearing in AF Holdings v. John Does, 12-cv-1445-49 (D. Minn.)

that M.L. was the "controlling member" of AF Holdings, and that A.C. had spoken to and

given permission to M.L. for AF Holdings to use A.C.'s name on a copyright transfer

<u>U.S. v. Paul Hansmeier et al.</u>

document. STEELE further testified, falsely and misleadingly, that he had "no ownership interest, never had, in Prenda Law. I didn't set up a company, bogus or otherwise, AF Holdings." In fact, STEELE and HANSMEIER exerted control over AF Holdings and Prenda Law, and M.L. was a pawn used by STEELE and HANSMEIER to conceal their involvement in the scheme. During this hearing, HANSMEIER (acting as an attorney for AF Holdings) asked questions of STEELE and thereby suborned the perjury set forth above.

    i. On or about January 28, 2014, STEELE caused M.L. to falsely and misleadingly testify under oath in a hearing in AF Holdings v. Rajesh Patel, 12-cv-262 (N.D. Ga.), that he was the "trustee" and "owner" of AF Holdings, and that STEELE and HANSMEIER did not own any part of AF Holdings. M.L. further falsely and misleadingly described B.G. and P.D. as primarily responsible for Prenda Law's copyright litigation, and falsely downplayed STEELE and HANSMEIER's role in AF Holdings and in the related copyright litigation.

  All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS

  46. Counts 1-17 of this Indictment are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c).

U.S. v. Paul Hansmeier et al.

47.     As the result of the offenses alleged in Counts 1-16 of this Indictment, the defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violations alleged in Counts 1-16 of this Indictment.

48.     As a result of the offenses alleged in Count 17 of this Indictment, the defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), all property, real or personal, involved in the violations alleged in Count 17 of this Indictment, or any property traceable to such property.

49.     If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), and by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

_____          _____
UNITED STATES ATTORNEY                         FOREPERSON

36