**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE** FILED

2025 JAN 13 AM 9: 51

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | } | Chapter 7 |
| | } | |
| CHICKEN SOUP FOR THE SOUL | } | Case No.: 24-11442 (MFW) |
| ENTERTAINMENT, INC., et al., | } | |
| | } | Jointly Administered |
| Debtors. | } | |
| | } | Related Docs. ####508, 524, 531, 542 |

**OBJECTION TO CERTIFICATION OF COUNSEL REGARDING SUBMISSION OF**
**REVISED ORDER APPROVING TRUSTEE'S APPLICATION FOR APPROVAL OF**
**RETENTION OF CULPEPPER IP, LLLC AS SPECIAL COPYRIGHT LITIGATION**
**COUNSEL AND FOR RELATED RELIEF**
**AND MOTION TO INFORM**

**TO THE HONORABLE COURT:**

1. COMES NOW admitted (without objection) party in interest Charles Muszynski, pro se, ("Movant") and objects to Trustee's Certification Of Counsel Regarding Submission Of Revised Order Approving Trustee's Application For Approval Of Retention Of Culpepper IP, LLC As Special Copyright Litigation Counsel And For Related Relief, Doc. #542, and makes Motion to Inform the Court on behalf of the Estate regarding Nevis law governing Culpepper IP, LLC's ("Culpepper") initiation of litigation for the state without approval of the Court or Trustee.

2. On or about 6 December 2024 the Trustee filed the Trustee's Application for Approval of Retention of Culpepper IP, LLLC as Special Copyright Litigation Counsel and for Related Relief [Docket No. 508] (the "Application") and set a "Hearing".

3. A "Hearing" to consider the entry of an order approving the Application was held before the Honorable Mary F. Walrath on 8 January 2025 (the "Hearing") at which time the Court overruled the Movant's original Objection.

4. In the hearing "Hearing", Wednesday 8 January 2025 at 2:00 p.m. Eastern it was undisputed by Trustee's counsel, John Carroll ("Carroll"), that Movant was notified less than eighteen (18) hours earlier on Tuesday, 7 January 2025, AST that the "Hearing" would include witnesses.

5. Movant stated that had adequate notice of the significant change in "Hearing" bases been provided, Movant could have prepared to examine Carroll's witness(es) and Movant would have

Page 1 of 10

presented his own witnesses and evidence, but due to effectively spontaneous notice by Carroll, was denied the right to examine witnesses effectively and to present his own witnesses.

6. Based on the Culpepper Declaration and admissions by Mr. Culpepper ("Culpepper") in the "Hearing", it was clear neither he nor his firm were disinterested parties as they both held pecuniary interests adverse to the Estate and represent interests materially adverse to the interests of the Estates on behalf of other parties in interest or for dispensation of compensation in connection with the Copyright Litigation Services despite representations otherwise by the Trustee in Doc. #508, p.16, ¶17 and ¶18 – that conflict with Culpepper's "Hearing" statements.

7. The Trustee also requests authorization to enter into settlements relating to the Copyright Litigation Services despite knowledge that SMV is a joined, indispensable party among 38 other entities – without clarification for parsing of fees or "settlement" funds.

8. The Trustee ignores the admitted fact that Culpepper personally and his wholly-owned entity 42 Ventures, LLC, and his law firm, Culpepper IP, LLLC, are creditors of the Estate, see Doc. #508-4, p.4, ¶11 and, despite overwhelming evidence of the other joined creditors' potential claims on the Estate Culpepper claims in ¶14 and ¶15 thereof he "…is not currently representing any other creditor or other party in interest in connection with the above-captioned cases…", and that, "…none of the representations are adverse to the interest of the Estates…", and posits, incorrectly, that he is not disqualified under §327(c) despite overwhelming case law establishing otherwise as shown in Movant's original Objection.

9. After the "Hearing", Movant twice contacted Carroll to clarify Carroll's claimed inability to "understand" Movant's original Objections and to detail with specificity how Culpepper's interests are adverse to those of the Estate, how Culpepper is conflicted, how Culpepper is not a disinterested party, how Culpepper failed disclosing information relevant to the Estate's interests, how Culpepper continues to conceal his partnership and representation of third party litigation funding entity PML Process Management Limited ("PML") in the Republic of Cyprus, and how these facts conflict with Culpepper's statements at the "Hearing". Carroll did not respond.

10. Instead, Carroll modified the original proposed Order to the Application to include new terms and conditions that were not raised, contemplated, or discussed in the "Hearing" nor approved by the Court. The modifications violate Statute and precedent, are detrimental to the best interests of the Estate, and improperly suggest the Court authorized bypassing statutory

requirements to waive the standard of accountability requiring the Court's examination and approval of disbursement(s) made to the "Special Counsel", when the Court did not.

11. Carroll's impermissible modifications permit the Trustee to pay whatever, whenever, to the "Special Counsel" without statutorily required Court oversight and to do so solely in the determination of the Trustee's opinion. In Doc. #508, Sec. B, p.5, ¶15, of Trustee's original Application to employ Culpepper, he requests the Court bypass statute and precedent requiring payments to "Special Counsel" be approved by the Court despite statute and established precedent prohibiting such arrangement besides the Court having never addressed the issue during the 8 January 2025 "Hearing". Additionally, without the Court's permission, the Trustee agreed Culpepper may offset Unpaid Expenses against the Estate's funds in Culpepper's IOLTA, Doc. #508, Sec. B, p.6, ¶16.

12. The Trustee's revised proposed Order for the Application (the "Revised Order") impermissibly includes a host of Statutorily proscribed carve-outs for Culpepper's retroactive, already effective engagement without Court approval, including: 1) no basis to do so without a showing of exceptional circumstances to justify retroactive engagement, 2) despite Culpepper's admissions in the "Hearing" to holding interests materially adverse to those of the Estate, 3) despite Culpepper's admissions in the "Hearing" to ????????, and 4) without the Court having discussed nor ruled on the changes in the "Hearing". Carroll ignored these facts and stated otherwise in the proposed Order and Agreement, 5) despite Culpepper's admissions to representing and partnering with scores of other parties, 6) Culpepper's ownership of 42 Ventures, LLC – one of the dozens of indispensably joined creditors along with Screen Media Ventures, LLC ("SMV"), 7) and despite Culpepper's admissions that dozens of parties, besides SMV, are joined in the judgment but without having provided the Court evidence of how each one's indivisible claim(s) will be settled.

13. Carroll's proposed Order ignores that the Court was never provided substantiating basis for how SMV's expenses and/or any recoveries would be parsed and accounted for relative to the scores of other indispensably joined creditors.

14. Carroll's proposed Order attempts to legitimize PML's involvement, despite Culpepper's false denials sans Oath, and without review and approval by the Court, engagement of third party litigation funding ("TPLF"), adopting Culpepper's undenied business partner's scheme, PML, by obliquely sneaking in the clause in the engagement Agreement, Doc. #508-3,

p.5 ¶1:

"In the event that Client receives funding from a third party such as a Litigation Funding company agreed upon by Client, the law firm is permitted to apply funds received from said Litigation Funding company to the above costs."

Despite Culpepper's false denials of TPLF partnership with PML and concealment of PML's involvement underwriting funding for the scores of indispensably joined partners of the judgment for which he has continued collection actions without the Court's approval, why would such a clause have been included in the agreement but hidden from the Court if not a partnership with the TPLF entity already in place?

15. Carroll's proposed Order also ignores that, despite Culpepper's denials of partnering with the third-party litigation funding entity PML Process Management Limited ("PML") based in the Republic of Cyprus and that he provably concealed doing so from this Court, other bankruptcy Courts, and the S.D. Florida Court from which the judgment emanated, the Court never addressed Culpeper's own statements evidencing that Culpepper did so and Carroll's revision ignored the admitted involvement despite statements such as:

16. The Court referenced administering an oath to Culpepper but did not place him under Oath and penalty of perjury to ensure truthful responses prior to allowing him to make statements and denials that were provably false and which Carroll relied to make revisions.

17. Section 327(e) permits employment of an attorney who has previously represented the debtor for a specified special purpose. the so-called "special counsel" if it is in the best interest of the Estate and the special counsel "does not represent or hold any interest adverse to the debtor or to the Estate with respect to the matter for which such attorney is to be employed." 11 U.S.C. § 327(e). "[A]n `adverse interest' has been described in pragmatic terms as the `possess[ion] or assert[ion] [of] mutually exclusive claims to the same economic interest, thus creating an actual or potential dispute between rival claimants as to which . . . of them the disputed right or title to the interest in question attaches under the valid and applicable law; or (2) [the possession of] a predisposition or interest under circumstances that render such a bias in favor of or against one of the entities." *Rome v. Braunstein*, 19 F.3d 54, 58 n. 1 (1st Cir. 1994). quoting *In re Roberts*, 46 B.R. 815, 826-27 (Bankr D. Utah 1985). Whether the contingent fee arrangement and the Settlement Agreement have created the type of predisposition or interest that rise to the level of

an adverse interest will be left for another day. But the Court notes that the firm's failure to disclose the arrangement from the beginning of these cases only exacerbates the Court's concern.

18. In order to employ counsel under § 327 (e), the trustee—in this case the Debtor, as the debtor in possession—must also show that the proposed employment is in the "best interest of the Estate." 11 USC § 327 (e). - in *In re Johnson*, 2010 and 3 similar citations.

19. A law firm is deemed to hold an interest adverse to the Estate when it "possess [es] a predisposition under circumstances that render such a bias against the Estate." - in *In re Adam Furniture Industries, Inc.*, 1993 and More generally, it includes any interest or relationship, however slight, `that would even faintly color the independence and impartial attitude required ` by the Code and Bankruptcy Rules.'" - in *In re Keller Financial Services of Florida, Inc.*, 1999 and 13 similar citations.

20. The burden is on the person to be employed to come forward and make full, candid, and complete disclosure - in *In re Nunez*, 2019 and 11 similar citations.

21. The professional seeking to be retained must make "full, complete, and timely disclosure" of all of the professional's connections to the debtor, creditors and any other party in interest. - in *In re Vascular Access Centers, LP*, 2020 and 5 similar citations.

22. The Third Circuit instructs, "the attorney's employment must be in the best interest of the Estate, which means property of Estate is threatened and the need for services is real. Employment cannot be based on some `hypothetical or speculative benefit.'" *In re Engel*, 124 F.3d 567, 575 (3d Cir. 1997) (citing *In re Duque*, 48 B.R. 965 (D.C. Fla. 1984)). In addition, the Third Circuit notes that special counsel must provide a benefit to the Estate, not merely a benefit to the debtor. Id.

23. Based on facts presented, it is axiomatic that, to employ Culpepper as a "Special Counsel", the Trustee unequovically will expose the Estate and himself to prior and future costs and fees related to Culpepper's already impermissible activities in the Nevis proceedings initiated by SMV and its joined entities. Carroll's revised Order does not address the already accumulated fees for which Culpepper's activities have exposed the Estate nor Culpepper's impermissible subcontracting of another law firm three (3) years prior without the Court's approval having performed zero conflict checks relative to SMV's Estate.

24. Culpepper's affidavit willfully conceals the tortured case history of his partners and joined Creditors, including entities he owns personally, and his TPLF partner PML.

25. The Court and Carroll ignore that Culpepper's papers in First District BAP case #23-00023, cite his own Motion to Dismiss Movant's bankruptcy proceedings in case #23-02870 where, in Doc. #57, ¶8, Culpepper evidences PML's foundational litigation primacy when, for the first time, he reveals and states:

> "Muszynski seeks *to punish PML for petitioning the S. D. Flo.* to put a stop to his Liquid VPN service…" * (emphasis added).

26. The Court and Carroll ignore that Culpepper disclosed (somewhat) partnership with PML in Doc. #1148362 in the First Dist. BAP Appeal #23-23, pg.9, ¶2, stating (SRIPLaw is his partner Rothman's law firm):

> "STATEMENT REGARDING INTERESTED PARTIES 1st Cir. BAP L.R. 8010-1(b)(4) The undersigned certifies that the following parties have an interest in the outcome of this appeal. These representations are made to enable the judges of the Panel to evaluate possible disqualification or recusal. *The Movants*, Kerry S. Culpepper, Culpepper IP, LLLC, SRIP Law, and *PML Process Management Limited*." (emphasis added)

27. **Motion to Inform regarding Nevis' collectability.**

28. Attached "Exhibit 1" and Exhibit 2" are the Nevis LLC Ordinance, CAP. 7.04(N) of the laws of the Federation of St. Christopher and Nevis and the opinions of Gary A. Forster of ForsterBoughman, a Florida law firm, published in Probate & Property, Sept/Oct 2017, and titled "The New Nevis LLC". The latter highlights facts Culpepper provably knew as detrimental to the interests of pursuing litigation on behalf of the Estate in Nevis yet continued to concealed from the Trustee and Court during the "Hearing".

29. Culpepper failed to disclose *two* U.S. Bankruptcy Trustees' 5009 filings distributed Movant's bankruptcy Estate after finding no money and zero bad faith or failure to timely comply with the Trustees' requirements to investigate the Estate.

30. It is clear from facts established in the Ordinance, opinion article, and by Movant's two bankruptcy Trustees that whatever representations Mr. Culpepper made to induce the Trustee to pay a "Special Counsel" to pursue the judgment based in, as admitted by Culpepper, fraud, in the jurisdiction of Nevis holds no potential for success and, at best, is factually misrepresentative or, worse, a scheme to underwrite Culpepper's and his partners' trolling collection sham.

31. The following screenshot summarizes attorney Forster's conclusions for protections of Nevis' Companies Ordinance and does not mention more significant protections for Nevis domiciled Trusts which Culpepper also failed to disclose to the Trustee and Court:

**Conclusion**

The New Nevis LLC Ordinance clarifies and enhances the Prior Ordinance. Foreign judgments against a member are no longer a threat to assets held in a Nevis LLC if the assets are held in Nevis or in another jurisdiction respecting the New Ordinance. The Nevis Ordinance specifically applies to the single-member LLC. A creditor attempting to collect in Nevis must now relitigate the remedial portion of a foreign judgment in Nevis. The sole remedy against Nevis LLC equity, the charging order, is limited to the amount of the judgment, if it can be collected within three years. Lastly, fraudulent transfers to a Nevis LLC are no longer the major vulnerability they once were. A creditor seeking assets in Nevis or in other jurisdictions respecting the New Ordinance must relitigate a fraudulent transfer claim by proving his case "beyond a reasonable doubt." The creditor is left with a limited and unattractive remedy. For practitioners and their clients, these are welcome additions that strengthen and update the Nevis limited liability company. ∎

32. Mr. Culpepper likely failed to inform the Trustee too, that his imprisoned copyright trolling colleagues, the former lawyer partners administering MaverickEye's (UBOs: Benjamin Perino and Patrick Arache) "Prenda Law" extortion scheme, had based their NPEs in Nevis but, after their criminality came to light, the UBOs moved their nexus to the Republic Of Cyprus by forming PML concurrent with reorganizations of Culpepper's and Rothman's firms' corporate entities. Nevis' protections are inapplicable within criminal activity, hence a new Cyprus nexus.

33. **Conclusion.**

34. At the "Hearing", Culpepper admitted he and his "Firm" represent interests materially adverse to the interests of the Estate, those of other joined parties in connection with the Copyright Litigation. The Court heard no sworn testimony and took no evidence. Other than Movant's Objection's facts and cites, the Carroll offered no facts to impeach the factual evidence establishing

no just cause exists to engage Culpepper IP, LLLC or Carroll offered no argument(s) to overcome scores of case cites and statutory prohibitions proving hiring Culpepper was error prohibited by law and precedent and detrimental to the Estate's interests.

35. Movant's Objection and "Hearing" comments showed the Court, unequovically, that new claims due to Culpepper's frivolous and fraudulent litigation cannot bar Movant from defending himself in litigation the Estate brought by claiming prohibition to do so under the automatic stay.

36. By approving Culpepper's engagement after being informed of the risk of penalties, fees, and Sanctions the Estate will face, the Court unequovically accepts on behalf of the Estate all liabilities related to proceedings thereto while denying other creditors, former employees, and the public the transparency owed them under the U.S. Bankruptcy Statutes.

37. RESPECTFULLY SUBMITTED, 11 January 2025 and signed in the Federation of St. Christopher and Nevis.

Charles Muszynski, pro se
usfilefolder@protonmail.com
P. O. Box 1423
Basseterre
St. Kitts and Nevis
West Indies
1-424-333-0569

## CERTIFICATE OF SERVICE

The undersigned states service herein was provided upon the parties/entities related to the proceedings above by way of the Court's CM/ECF system on the date he submitted the filing below and subsequent to courier delivery at the Court's physical location in Wilmington, DE.

11 January 2025
Respectfully submitted,

Charles Muszynski, pro se
usfilefolder@protonmail.com
P. O. Box 1423
Basseterre
St. Kitts and Nevis
West Indies

**EXHIBIT 1**
**Laws Of The Federation of St. Christopher and Nevis**
**Nevis LLC Ordinance, CAP. 7.04(N)**



# St. Christopher and Nevis

# CHAPTER 7.04 (N)

# NEVIS LIMITED LIABILITY COMPANY ORDINANCE
## and Subsidiary Legislation

**Revised Edition**
showing the law as 31 December 2020

This is a revised edition of the law, prepared by the Law Commission under the authority of the Law Commission Act, Cap 1.03.

This edition contains a consolidation of the following laws—

| | Page |
|---|---|
| **NEVIS LIMITED LIABILITY COMPANY ORDINANCE** | 3 |
| Ordinance 2 of 2017 … in force 1 January 2018 | |
| Amended by:  Ordinance 7 of 2018 | |
| Ordinance 7 of 2019 | |
| | |
| **NEVIS LIMITED LIABILITY COMPANY (FORMS AND FEES)** | |
| **REGULATIONS – Section 101** | 61 |
| S.R.O. 3/2017 | |

Printed under Authority by
The Regional Law Revision Centre Inc.
ANGUILLA

This booklet is published in
2020
Consolidated, Revised and Prepared under the Authority of the Law Commission Act,
on behalf of the Government of Saint Christopher and Nevis
By
The Regional Law Revision Centre Inc.
P.O. Box 1626, 5 Mar Building,
The Valley, AI-2640, Anguilla


Available for purchase from—

Attorney General's Chambers
Government Headquarters, P.O.Box 164,
Church Street, Basseterre, St.Kitts, West Indies


Tel: (869) 465-2521
Ext. 1013
Tel: (869) 465-2127
Fax: (869) 465-5040
Email: attorneygeneral@gov.kn


Printed on the authority and on behalf of the Government of Saint Christopher and Nevis

## CHAPTER 7.04

## NEVIS LIMITED LIABILITY COMPANY ORDINANCE

ARRANGEMENT OF SECTIONS

PART I

GENERAL PROVISIONS

1. Short title
2. Interpretation
3. Application of this Ordinance
4. Form of instruments and filing
5. Certificates and certified copies as evidence
6. Fees on filing Articles of Organisation and other instruments
7. Annual registration fee
8. Waiver of notice
9. Notice to members

PART II

COMPANY PURPOSES AND POWERS

10. Company purposes and duration
11. General powers

PART III

REGISTERED AGENT AND SERVICE OF PROCESS

12. Registered agent
13. Resignation and change of registered agent
14. Registered agent resigned by limited liability company
15. Change of registered office of limited liability company
16. Service of process

PART IV

FORMATION AND NAMES OF LIMITED LIABILITY COMPANIES

17. Formation
18. Company name
19. Non-Latin alphabet characters
20. Register of companies
21. Reservation of name
22. Contents of Articles of Organisation
23. Effect of filing Articles of Organisation
24. Inspection of register of companies
25. Company Search Report

26.    Certificate of Good Standing
27.    Operating agreement

## PART V

### AMENDMENT OF ARTICLES OF ORGANISATION

28.    Amendment of Articles of Organisation
29.    Status of legal action
30.    Restated Articles of Organisation

## PART VI

### COMPANY FINANCE

31.    Capital contributions
32.    Liability for capital contributions
33.    Distributions

## PART VII

### REGISTRATION OF CHARGES

34.    Creation of charges.
35.    Charges of interest or property
36.    Registration of charges
37.    Registration of variation of a registered charge
38.    Registration of satisfaction of a registered charge
39.    Form of application and payment of fees
40.    Maintenance by limited liability company of a Register of Charges
41.    Execution, acknowledgement and attestation
42.    Register of registered charges
43.    Priority of registered charges
44.    Priority of earlier charges
45.    Variation of order of priority of charges
46.    Registration and Records Act
47.    Conflict in translations

## PART VIII

### MANAGEMENT

48.    Management of the business of a limited liability company
49.    Voting
50.    Agency of members
51.    Agency of managers
52.    Qualification of managers
53.    Standard of care to be observed by managers
54.    Disposition of assets

## PART IX

### MEMBERS AND MEMBERS' INTERESTS

55.   Membership
56.   Classes and series of members' interests
57.   Termination of a member's interest
58.   Distributions upon termination of members' interests
59.   Assignment of members' interests and restrictions
60.   Rights of judgement creditor
61.   Avoidance of fraud
62.   Bond

## PART X

### LIABILITY, CONFLICTS OF INTEREST AND INDEMNIFICATION

63.   Liability to third parties
64.   Limited liability company as legal person
65.   Conflicts of interest
66.   Indemnification of members or managers

## PART XI

### LIMITED LIABILITY COMPANY RECORDS AND REPORTS

67.   Books and records of limited liability companies
68.   Right of inspection of books and records

## PART XII

### CONVERSION, MERGER AND CONSOLIDATION

69.   Conversion of a corporation to a limited liability company
70.   Effect of conversion
71.   Merger or consolidation of domestic limited liability company
72.   Effect of merger or consolidation

## PART XIII

### DISSOLUTION

73.   Dissolution on failure to pay annual registration fee or maintain a registered agent and removal from register of companies
74.   Manner of effecting dissolution
75.   Judicial dissolution
76.   Winding up after dissolution
77.   Power of managers after dissolution
78.   Settlement of claims against limited liability company
79.   Distribution of assets upon winding up
80.   Articles of Dissolution

## PART XIV

### CHANGE OF DOMICILE

81.   Transfer of domicile to Nevis
82.   Application to Transfer Domicile to Nevis
83.   Contents of Application to Transfer Domicile to Nevis
84.   Instruments to be submitted with application
85.   Execution of application to Transfer Domicile to Nevis
86.   Certificate of Transfer of Domicile to Nevis
87.   Applicable law
88.   Prior obligations and liabilities
89.   Departure and jurisdiction of courts after departure
90.   Certificate of Departure
91.   Effective date of departure

## PART XV

### EMERGENCY TRANSFER OF DOMICILE INTO NEVIS

92.   Application for emergency transfer of domicile to Nevis
93.   Governing law after emergency transfer of domicile
94.   Service of process after emergency transfer of domicile
95.   Return to foreign domicile

## PART XVI

### CORPORATE TAXATION

96.   Corporate taxation

## PART XVII

### MISCELLANEOUS PROVISIONS

97.   Advisory Committee
98.   Functions of Advisory Committee
99.   Secretary to Advisory Committee
100.  Appointment of Deputy Registrar
101.  Regulations
102.  Penalty for default
113.  Immunity from suit
104.  Repeal and savings
      SCHEDULE:  Nevis Limited Liability Company (Forms and Fees) Regulations

# CHAPTER 7.04

# NEVIS LIMITED LIABILITY COMPANY ORDINANCE

AN ORDINANCE TO REPEAL AND REPLACE THE NEVIS LIMITED LIABILITY COMPANY ORDINANCE, CAP. 7.04(N) AS AMENDED WITH THE NEVIS LIMITED LIABILITY COMPANY ORDINANCE, 2017 TO PROVIDE FOR THE FORMATION OF LIMITED LIABILITY COMPANIES IN THE ISLAND OF NEVIS AND TO PROVIDE FOR MATTERS INCIDENTAL OR CONSEQUENTIAL THERETO.

## PART I

### GENERAL PROVISIONS

**Short Title**

1.     This Ordinance may be cited as the Nevis Limited Liability Company Ordinance.

**Interpretation**

2.     (1) In this Ordinance, unless the context otherwise requires, the term—

"acknowledgement" means the admission, affirmation or declaration as genuine of the affixation of a person's signature to an instrument;

"Advisory Committee" means the Ordinance Advisory Committee established under section 97;

"Articles of Organisation" include—

(a) the original Articles of Organisation or any other instrument filed or issued under any law to form a domestic or foreign limited liability company, amended, supplemented, corrected or restated by Articles of amendment, merger or consolidation, or other instruments of like effect filed or issued under any law; or

(b) a special law or charter creating a domestic or foreign limited liability company as amended, supplemented or restated;

"attestation" means the act of witnessing an acknowledgement, and the term

"attested" shall be construed accordingly;

"attorney-at-law" means a person whose name has been entered on the roll of attorneys at law pursuant to the Legal Profession Act, Cap. 3.28, as amended;

"authenticated translation" means a translation into the English language of an instrument which was drafted in a language other than the English language or a language which does not use Latin alphabet characters and was prepared by a professional translator who is accredited by a court of law, a government agency or a recognised international organisation;

"capital contribution" means any cash, property, services rendered, or a promissory note or other obligation to contribute cash or property or to perform services, which a person contributes to a limited liability company in his capacity as a member;

**8**    **CAP. 7.04(N)**    *Nevis Limited Liability Company Ordinance*

"Certificate of Departure" means the instrument as filed by a limited liability company with the Registrar of Companies to make application for a transfer of domicile to a foreign jurisdiction and shall include any application filed in like manner, howsoever described or named;

"charge" means any instrument which creates a security interest, over a limited liability company's membership interest or property, whether fixed or floating, wherever situated, and any variation of such instrument, which is created after the effective date of this Ordinance, but not an interest arising by operation of law;

"chargee" means a person who holds a charge over the interest or property of a limited liability company;

"chargor" means the member of a limited liability company who pledges their interest or property in a limited liability company as security for a debt owed to a chargee;

"charter" means the instrument which is filed in a foreign domicile to form a foreign limited liability company, which serves the same purposes as the Articles of Organisation under this Ordinance;

"consolidated company" means the new limited liability company into which two (2) or more constituent companies are consolidated;

"consolidation" means a procedure whereby any two (2) or more limited liability companies consolidate into a new limited liability company formed by the consolidation;

"constituent company" means an existing limited liability company that is participating in the merger or consolidation with one (1) or more other limited liability companies;

"corporation" means a corporation incorporated under the Nevis Business Corporation Ordinance, Cap. 7.01(N) or a corporation which was incorporated under the laws of a foreign domicile which has been redomiciled to Nevis under such law;

"creditor" means any person to whom money is owed and includes the creditor of a member, including a judgment creditor and an assignee from such creditor of any claim and includes any person who alleges a cause of action against a member;

"Deputy Registrar of Companies" means the person appointed by the Minister to assist the Registrar of Companies in performing his duties under this Ordinance;

"distribution" means a transfer of money, property from a limited liability company to, or for the benefit of a member in his capacity as a member, or to, or for the benefit of, an assignee of a member's interest in the limited liability company, in respect of their limited liability company interest;

"dollars" or "$" means Eastern Caribbean Currency unless expressly stated otherwise in this Ordinance;

"earlier charge" means any instrument which creates a security interest, over a limited liability company's interest or property, whether fixed or floating, wherever situated, and any variation of such instrument, which is created before the effective date of this Ordinance, but not an interest arising by operation of law;

"emergency condition" shall include but not be limited to any of the following events—

    (a) war or other armed conflict;

    (b) revolution or insurrection;

    (c) invasion or occupation by foreign military forces;

    (d) rioting or civil commotion of an extended nature;

    (e) domination by a foreign power;

    (f) expropriation, nationalisation or confiscation of a material part of the assets or property of the foreign corporation;

    (g) impairment of the institution of private property (including private property held abroad);

    (h) the taking of any action under the laws of Saint Christopher and Nevis whereby persons resident in the foreign domicile might be treated as "enemies" or otherwise restricted under the laws of Saint Christopher and Nevis relating to trading with enemies of Saint Christopher and Nevis; or

    (i) the immediate threat of any of the foregoing; and

    (j) such other event which, under the laws of the foreign domicile, permits the foreign limited liability company to transfer its domicile;

"endorsement" means the seal, stamp or handwritten signature of the Registrar of Companies or any other method now known or hereinafter invented or adopted which may be used to indicate the approval of an instrument by the Registrar of Companies;

"foreign domicile" means the jurisdiction of registration of a foreign limited liability company or such jurisdiction other than Nevis, to which a limited liability company seeks to redomicile;

"foreign limited liability company" means a company which was formed under the laws of any foreign domicile that affords its members, pursuant to the laws under which it is formed, limited liability with respect to the liabilities of the entity;

"High Court" means the High Court of Saint Christopher and Nevis;

"insolvent" means a condition when a person known as a "debtor" is unable to pay their debts as such debts become due;

"in writing" means any form of communication now known or hereinafter invented or adopted, including but not limited to, mechanical, electronic or digital which is used to preserve or record information unaltered for future reference;

"limited liability company", "domestic limited liability company" and "company" means a limited liability company formed under this Ordinance;

"manager" means—

    (a) a person or persons, whether or not a member, designated and authorised in the operating agreement to manage the limited liability company or to otherwise act as agent of the limited liability company, either to execute management duties generally or to execute certain management duties as specified in the operating agreement;

(b) where the operating agreement does not designate a person or persons as a manager or managers, or the operating agreement designates as managers, all of the members, in their capacity as members, references in this Ordinance to managers shall mean each of the members of the limited liability company, to the extent management duties are assigned to the members in the operating agreement, or if not so assigned, then without limitation;

(c) where the operating agreement designates one (1) or more members as a manager or managers, or one (1) or more manager or managers who are not members of the limited liability company, references in this Ordinance to managers shall mean each of the managers of the limited liability company so designated, to the extent management duties are assigned to each such member in the operating agreement, or if not so assigned, then without limitation;

"member" means a person who has been admitted to a limited liability company as a member pursuant to section 55 of this Ordinance, or, in the case of a foreign limited liability company, in accordance with the laws of the foreign domicile;

"member's interest" means a member's share of the profits, losses, income, gain, deductions and credits of the limited liability company, the right to receive distributions from the limited liability company and all of the member's rights and obligations under this Ordinance, the Articles of Organisation, and the operating agreement;

"merger" means a procedure whereby any two (2) or more limited liability companies merge with into a single limited liability company, which is any one (1) of the constituent companies;

"Minister" means the Minister for the time being charged with the responsibility of finance in the Nevis Island Administration;

"Nevis Company" means a company incorporated and registered under the Companies Ordinance, Cap. 7.06 (N);

"operating agreement" means the agreement, and any amendments thereto, between the members of the limited liability company as to the affairs of a limited liability company, the conduct of its business, and the relations among the members;

"organiser" means a person who forms a limited liability company pursuant to section 17;

"pledgee" means a person to whom a pledge is made;

"provisions" includes the provisions of this Ordinance, any Part or any Order hereunder;

"registered agent" means—

(a) an attorney-at-law or law firm; or

(b) a Nevis Company,

which has been duly licensed by the Nevis Island Administration to engage in the business of registered agent of limited liability companies;

"registered office" means the location described in section 12 of this Ordinance;

"Registrar of Companies" means the person appointed by the Minister to perform the duties of Registrar under this Ordinance;

"surviving company" means the constituent limited liability company into which one (1) or more other constituent limited liability companies are merged;

"termination of a member's interest" means a complete cessation of a member's continued membership in a limited liability company for any reason;

"transfer" means the sale, assignment, mortgage, creation or permission to subsist of any pledge, lien, charge or encumbrance over, conveyance, lease, gift, grant of any interest or other rights in or other disposition of any member's interest, any part thereof or any interest therein, whether by agreement, operation of law or otherwise.

(2) A reference in this Ordinance to the masculine shall include the feminine or neuter.

## Application of this Ordinance

3.　　(1) A limited liability company formed or subject to this Ordinance which does business in Saint Christopher and Nevis shall be subject to and comply with all requirements of the Companies Ordinance, Cap. 7.06 (N) in the same manner as a Nevis Company.

(2) In construing this Ordinance, any part or section hereof, the High Court, any court of competent jurisdiction and any other person shall refer to the common law, the Regulations to this Ordinance or to the construction of similar laws in other jurisdictions.

## Form of instruments and filing

4.　　(1) Where any provision of this Ordinance requires an instrument to be filed with the Registrar of Companies, such instrument shall be filed by the registered agent or pursuant to its authority and comply with the provisions of this Part unless otherwise expressly provided for under this Ordinance.

(2) Every instrument referenced herein, filed or required to be filed, shall be in the English language, except that the company name may be in another language and may be written in characters which do not use the Latin alphabet and an authenticated translation of the company name must be provided.

(3) All instruments filed or required to be filed shall be signed by at least—

(a) one manager of the limited liability company; or

(b) the registered agent of the limited liability company; or

(c) a member of the limited liability company; or

(d) such other person duly delegated such authority by a manager or member in whom such authority resides.

(4) An instrument which is signed by the registered agent on behalf of a limited liability company shall be certified by such registered agent to have been signed pursuant to the written authority of the managers, but such written authority may be filed with the Registrar of Companies at the option of the registered agent.

(5) Where a provision of this Ordinance requires an instrument to be acknowledged, such requirement means, in the case of execution of that instrument within Nevis, that the person shall sign the instrument to acknowledge that it is his act and deed or that it is the act and deed of the limited liability company as the case may be, and declare within that instrument that it was so signed in Nevis.

(6) Where a provision of this Ordinance requires an instrument to be acknowledged, such requirement means, in the case of execution of an instrument within Saint Christopher, that—

(a) the person signing the instrument shall acknowledge that it is his act and deed or that it is the act and deed of the limited liability company as the case may be; and

(b) the instrument shall be acknowledged before a notary public, commissioner of oaths or other person authorised to take acknowledgements, who shall attest that he knows the person making the acknowledgement to be the person who executed the instrument.

(7) Where an instrument is executed outside of Saint Christopher and Nevis, an acknowledgement means that the person signing the instrument shall acknowledge that it is his act and deed or the act and deed of the limited liability company as the case may be—

(a) an instrument executed in accordance with subsection (7) shall be acknowledged and executed before—

(i) a notary public or any other person authorised to take acknowledgements according to the laws of the place of execution;

(ii) a consul or vice consul of Saint Christopher and Nevis or other governmental official of Saint Christopher and Nevis authorised to take acknowledgements; or

(iii) in the absence of any of the persons outlined in paragraphs (i) and (ii) of subsection 7*(a)*, a consular official of another government having diplomatic relations with Saint Christopher and Nevis;

(b) a person before whom an instrument is acknowledged under subsection 7*(a)* shall attest that he knows the person making the acknowledgement to be the person who executed the instrument;

(c) when the acknowledgement shall be taken by a notary public or any other person authorised to take acknowledgements, except a government official of Saint Christopher or Nevis or foreign consular official, the signature of such person who has authority shall be attested to by—

(i) a consul or vice consul of Saint Christopher and Nevis; or in his absence;

(ii) a consular official of another government having diplomatic relations with Saint Christopher and Nevis;

(iii) a government official of the place of execution who is authorised to make such attestation; or

(iv) an Apostille according to the Convention de la Haye du 5 Octobre 1961.

(8) Where a provision of this Ordinance requires an instrument to be filed with the Registrar of Companies, such requirement means that—

(a) an appropriate receipt evidencing payment of all appropriate fees shall be delivered to the office of the Registrar of Companies, and within ten (10) days of the date of the receipt, the original instrument together with a duplicate instrument, both signed and acknowledged;