**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHICKEN SOUP FOR THE SOUL ENTERTAINMENT INC., *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 24-11442 (MFW)<br><br>(Jointly Administered)<br><br>Hearing Date: April 10, 2025 at 2:30 p.m.<br>Objection Deadline: March 25, 2025 at 4:00 p.m. |

**CHICKEN SOUP FOR THE SOUL, LLC'S MOTION TO LIFT AUTOMATIC STAY TO TERMINATE LICENSE AGREEMENT**

Chicken Soup for the Soul, LLC (the "Movant") hereby moves this Court (the "Motion"), pursuant to section 362(d) of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), for entry of an order granting relief from or modifying the automatic stay imposed by 11 U.S.C. § 362(a)(1) to the extent necessary to (i) permit Movant to terminate that certain license agreement dated May 12, 2016, as thereafter amended (the "License Agreement") by and between Movant and Chicken Soup for the Soul Entertainment Inc. ("CSSE"); (ii) permit Movant to recover and enforce all of Movant's rights under the License Agreement; (iii) terminate and transfer all license rights from the Debtors, including removal of the "*Chicken Soup for the Soul*" trademark and brand from the Debtors and all related or associated assets and the termination and transfer of all rights of the Debtors in the Branded Assets (as defined herein); (iv) require the Chapter 7 Trustee to remove the name "*Chicken Soup for the Soul*" from the caption of the Chapter 7 cases

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508).

(the "Cases") and to rename the Cases; (v) allow Movant and/or any representative acting on its behalf, including counsel, to obtain information from the Debtors as to all past and future royalties due and owing under the License Agreement; (vi) waive the fourteen (14) day stay pursuant to Rule 4001(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and (vii) grant Movant all such other and further relief as the Court may deem just and proper under the circumstances (the "Order").

In support of this Motion, Movant respectfully states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are sections 362 of the Bankruptcy Code and Bankruptcy Rule 4001(d).

## BACKGROUND

2. Movant is the owner of the "*Chicken Soup for the Soul*" name, trademark and brand, and all related trademarks, copyrights, designs and derivatives thereof, including the stories and themes in existing published works, and all Branded Assets (collectively, the "Property").

3. As the owner of the Property, Movant has the right to Exploit (as defined in the License Agreement) the Property on and in connection with products and services and has the right to license such rights.

4. On May 12, 2016, Movant, as licensor, and CSSE, as licensee, entered into the License Agreement. *See* **Exhibit A.**

5. Pursuant to the License Agreement, Movant licensed to CSSE the right to use the "*Chicken Soup for the Soul*" trademark and brand for use in the production of video content and

related businesses pursuant to the License Agreement, including the right to Exploit the Property owned by Movant in connection with television programming, motion pictures, and online video content (the "Video Content").

6. More specifically, CSSE utilized the rights licensed to it under the License Agreement to:

   a. create video content under the titles listed on **Schedule 1** attached hereto (the "Branded Video Content");

   b. create the brand-identified FAST channels on the streaming platforms listed on **Schedule 2** attached hereto (the "Branded FAST Channels"); and

   c. create the branded apps on the streaming platforms listed on **Schedule 3** attached hereto (the "Branded Apps", and collectively with the Branded Video Content and Branded FAST Channels, the "Branded Assets").

7. The Debtors are no longer operating and did not seek to assume the License Agreement. Consequently, on September 10, 2024, all executory contracts, including the License Agreement, were deemed rejected by operation of § 365(d)(1) of the Bankruptcy Code.

8. As a result of the Debtors' bankruptcy, conversion of these cases from Chapter 11 to Chapter 7, and the rejection of the License Agreement, CSSE has not performed any of its obligations to Movant under the License Agreement.

9. On November 12, 2024, the Court entered the *Order Authorizing The Retention Of Pachulski Stang Ziehl & Jones LLP As Special Litigation And Transactional Counsel To The Chapter 7 Trustee Effective As Of July 11, 2024* [D.I. 481] (the "PSZJ Order"). *See* **Exhibit B.** The Court granted the PSZJ Order subject to and in accordance with the terms of that certain *Stipulation Withdrawing Omnibus Objection [D.I. 283] To Retention Applications [D.I. 225 And 226] And Related Pleadings [D.I. 397, 399, 463 And 465] With Consent To Entry Of Proposed*

*Orders Authorizing Retention Applications* by and among the Debtors and Movant [D.I. 471] (the "Stipulation"). *See Exhibit A* to **Exhibit B.**

10. Pursuant to paragraph 10 of the Stipulation, "[t]he Trustee on behalf of the Chapter 7 estates in accordance with his fiduciary duty, and the Objectors agree to continue good faith negotiations regarding the termination and treatment of the License Agreement with CSS and the assets subject thereto."

11. Despite several "termination proposals" provided by Movant to the Trustee, the Trustee has been unable to negotiate the termination and treatment of the License Agreement with Movant pursuant to the Stipulation and, although rejected by operation of law, the License Agreement has yet to be terminated.

12. Movant thus brings this Motion to terminate the License Agreement, including the exercise of all rights in connection therewith.

13. Paragraph 13 of the License Agreement provides in clear and unequivocal terms:

> **13.** **Termination.**
> (a) If either Party at any time will (i) fail to make any payment of any sum of money herein specified to be made that is not the subject of a good faith dispute, or (ii) fail to observe or perform any of the covenants, agreements, or obligations hereunder (other than the payment of money), the non-defaulting party may terminate this Agreement as follows: as to (i) if such payment is not made within thirty (30) days following a second written request by the non-infringing party, or as to (ii) if such default is not cured within thirty (30) days after the defaulting party will have received a second written notice specifying such default. Any unpaid sum of money due under this Agreement shall incur late charges at the rate of 2.0% of the outstanding balance per month, or the maximum rate permitted by law, whichever is lower, from the date such payment was due until the date paid.
>
> (b) Licensor may terminate this Agreement immediately following written notice to Company, if Company (i) ceases to do business in the normal course, (ii) is the subject of any proceeding related to its liquidation or insolvency (whether voluntary or

involuntary) which is not dismissed within ninety (90) calendar days, (iii) makes an assignment for the benefit of creditors, or (iv) any secured creditor or lender of Company exercises or purports to exercise any foreclosure right or remedy as a secured creditor with respect to any collateral consisting, in whole or in part, of any of any content or products using the Licensed Rights or any of the results, products or proceeds of this Agreement.

(c) Company may terminate this Agreement immediately following written notice to Licensor, if Licensor (i) ceases to do business in the normal course, (ii) is the subject of any proceeding related to its liquidation or insolvency (whether voluntary or involuntary) which is not dismissed within ninety (90) calendar days, or (iii) makes an assignment for the benefit of creditors. For the purpose of this Paragraph 13(c), the license granted to Company by Licensor herein shall be deemed to be, for purposes of § 365(n) of the United States Bankruptcy Code (as it may be amended, the "Bankruptcy Code"), a license to rights to "intellectual property" as defined under the Bankruptcy Code. Company, as licensee of such rights under this Agreement, shall retain and may fully exercise all of its rights and elections under the Bankruptcy Code. In the event of the commencement of proceedings by or against Licensor under the Bankruptcy Code, Company may retain all of the Licenses Rights and its rights and interests under this Agreement.

(d) Failure to terminate this Agreement pursuant to this Paragraph will not affect or constitute a waiver of any remedies the non-defaulting Party would have been entitled to demand in the absence of this paragraph, whether by way of damages, termination or otherwise. Termination of this Agreement for whatever reason will be without prejudice to the rights and liabilities of either Party to the other in respect of any matter arising under this Agreement.

14. CSSE and its affiliated Debtors are no longer operating in the normal course of business, are subject to these Chapter 7 cases, are unable to utilize or commercialize the Branded Assets and related intangible property, and are in breach of the terms of the License Agreement, all to the great harm and detriment of Movant.

15. Movant does not consent or agree to CSSE's, or its affiliated Debtors', continued use of the "*Chicken Soup for the Soul*" trademark and brand, including the use of such trademark

and brand in any Branded Assets, and because the Trustee has been unable to negotiate the termination of the License Agreement with Movant pursuant to the Stipulation, Movant brings this Motion to terminate the License Agreement.

## BASIS FOR RELIEF REQUESTED

16. Section 362(d)(1) of the Bankruptcy Code provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay….

    (1) For cause, including lack of adequate protection of an interest in property of such party in interest;

    (2) With respect to a stay of an act against property under subsection (a) of this section, if –
        (A) the debtor does not have an equity in such property; and

        (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(1) and (2).

17. The term "cause" is not defined in the Bankruptcy Code, but rather must be determined on a case-by-case basis. *In re Rexene Prods. Co.*, 141 B.R. 547, 576 (Bankr. D. Del. 1992) (internal citations and quotations omitted). "Cause is a flexible concept and courts often...examin[e] the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007).

18. Courts in this District rely upon a three-pronged balancing test in determining whether "cause" exists for granting relief from the automatic stay to continue litigation: (i) prejudice to the estate or the debtor, (ii) hardship to the moving party resulting from maintenance of the stay weighed against hardship to the debtor, and (iii) the probability of the moving party's success on the merits. *Trump Entm't Resorts, Inc.*, 526 B.R. 116, 120-21 (Bankr. D. Del. 2015)

(citing *Izzrelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).

   A. ***Cause Exists To Lift The Automatic Stay Pursuant To Section 362(d).***

Here, the facts weigh in Movant's favor on each of these three prongs.

   i)   <u>The Debtors Will Suffer No Prejudice By the Granting of the Relief Requested</u>.

19. As to the first prong, neither the bankruptcy estate nor the Debtors will suffer prejudice should the stay be lifted to allow Movant to terminate the License Agreement. The License Agreement has already been rejected by operation of Section 365(d)(1) of the Bankruptcy Code. Accordingly, the License Agreement is deemed "abandoned and [] no longer property of the estate." *In re Biggs*, 271 F. App'x 286, 288 (3d Cir. 2008).

20. CSSE, and its affiliated Debtors, have no cognizable interest in the License Agreement following the rejection of the License Agreement. The Debtors cannot be prejudiced by the termination of the License Agreement in which they no longer hold an interest. Moreover, the Debtors can no longer perform under the License Agreement.

   ii)   <u>The Balance of Hardships Favors Lifting the Automatic Stay</u>.

21. As to the second prong, the balance of hardships favors lifting the automatic stay. Movant will face substantial hardship if it is denied the ability to terminate the License Agreement. These Cases have languished for approximately eight (8) months. Further, the Trustee is unable to Exploit the Property or protect the "*Chicken Soup for the Soul*" trademark and brand name in accordance with the License Agreement.

   iii)   <u>Movant's Likelihood of Success on the Merits Favors Lifting The Automatic Stay</u>.

22. As to the third prong, Movant has a sufficient probability of success on the merits to justify lifting the automatic stay. "[E]ven a slight probability of success on the merits may be

sufficient to support lifting an automatic stay." *In re Continental Airlines, Inc.*, 152 B.R. 420, 426 (D. Del. 1993). The License Agreement has already been rejected by operation of law. The rejection of the License Agreement constitutes a pre-petition breach occurring "immediately before" bankruptcy. *Mission Prod. Holdings, Inc., v. Tempnology, LLC*, 587 U.S. at 374, 139 S.Ct. 1652 (2019); 11 U.S.C. § 365(g). Moreover, the Trustee, CSSE, and its affiliated Debtors, have failed to, and cannot, Exploit the Property or perform the financial and non-financial contractual obligations to Movant in accordance with the License Agreement, all to the great harm and deteriment of Movant.

23. Upon the lifting or modifying of the automatic stay, Movant can lawfully terminate the License Agreement, recover distribution rights and the right to receive payment for exploitation of the licensed Property, perform or engage third parties to perform distribution and exploitation of the licensed Property, and actually receive the royalties entitled to be received by Movant with respect to the licensed Property.

### B. *The Licensed Property Is Not Necessary For An Effective Reorganization.*

24. Lastly, there is no reasonable prospect of reorganization. The Debtors' Chapter 11 cases were converted to Chapter 7. The Debtors are no longer operating. The Debtors' alleged secured lender has been granted relief from the automatic stay to foreclose on the Debtors' assets. The Debtors hold no equity in the Property and the License Agreement is not "necessary to an effective reorganization." *See* 11 U.S.C. § 362(d)(2)(A) and (B). As a result, relief from the automatic stay is mandatory. *See Nantucket Investors II v. Cal. Fed. Bank. (In re Indian Palms Assocs., Ltd.)*, 61 F.3d 197, 208 (3d Cir. 1995) ("the language of section 362(d)(2) is mandatory, when both factors necessary for relief under section 362(d)(2) are met 'the court shall grant relief.'").

25. Having satisfied its burden under section 362(d)(1) and (2), cause exists to lift the automatic stay to allow Movant to terminate the License Agreement.

### C. Waiver Of The Stay Of Order Pursuant To Bankruptcy Rule 4001(a)(4) Is Appropriate.

26. Movant respectfully submits that any Order granting this Motion should be effective immediately upon its entry, notwithstanding the fourteen (14) day stay contemplated in Bankruptcy Rule 4001(a)(4). Continuance of the automatic stay does not serve any purpose other than to delay termination of the License Agreement and delay Movant's ability to recoup and mitigate against losses caused by the Debtors over an extended period of time during these Cases.

### CONCLUSION

WHEREFORE, Movant respectfully requests entry of an Order in substantially the form attached hereto, and such further additional relief as may be just and proper under the circumstances.

**Womble Bond Dickinson (US) LLP**

/s/ Donald J. Detweiler
Donald J. Detweiler (DE Bar No. 3087)
1313 N. Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email: don.detweiler@wbd-us.com

-and-

Cathy A. Hinger
(admitted *pro hac vice*)
2001 K. Street NW
Suite 400 South
Washington, D.C. 20006
Telephone: (202) 467-6900
Facsimile: (202) 467-6910
Email: cathy.hinger@wbd-us.com

*Counsel for Chicken Soup for the Soul, LLC*