## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| CSSE, Inc. f/k/a<br>CHICKEN SOUP FOR THE SOUL<br>ENTERTAINMENT INC., *et al.*,[1] | Case No. 24-11442 (MFW) |
| | (Jointly Administered) |
| Debtors. | Related to: |
| | **Adv. No. 25-ap-50399 (MFW)**<br>**&**<br>**Adv. No. 25-ap- 50128 (MFW)** |
| | **Hearing Date:  May 28, 2025 at 2:00 p.m. (ET)**<br>**Objection Deadline: May 23, 2025 at 4:00 p.m. (ET)** |

**MOTION OF WILLIAM J. ROUHANA, JR., AMY L. NEWMARK, CHRISTOPHER MITCHELL, FRED M. COHEN, COSMO DENICOLA, MARTIN POMPADUR, CHRISTINA WEISS LURIE, DIANA WILKIN, VIKRAM SOMAYA, JASON MEIER, AND AMANDA R. EDWARDS, FOR RELIEF FROM THE AUTOMATIC STAY TO THE EXTENT APPLICABLE, TO ALLOW PAYMENT OF DEFENSE EXPENSES AND OTHER LOSS UNDER DIRECTORS AND OFFICERS PRIMARY INSURANCE POLICY**

William J. Rouhana, Jr., Amy L. Newmark, Christopher Mitchell, Fred M. Cohen, Cosmo Denicola, Martin Pompadur, Christina Weiss Lurie, Diana Wilkin, Vikram Somaya, Jason Meier, and Amanda R. Edwards, (collectively, the "Movants"), former, or alleged former, directors and officers of one or more of the above-captioned debtors and debtors in possession (the "Debtors"), hereby file this motion (this "Motion")[2] and respectfully state as follows:

---

[1]  The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); CSSE, Inc. f/k/a Chicken Soup for the Soul Entertainment Inc. (0811); CSSS, LLC f/k/a Chicken Soup for the Soul Studios, LLC (9993); CSS Television Group, LLC f/k/a/ Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508).

[2]  Each of Movants, Fred M. Cohen, Cosmo DeNicola, Martin Pompadur, Christina Weiss Lurie, Diana Wilkin and Vikram Somaya and Amanda Edwards are represented by separate counsel from the undersigned counsel, Womble

**RELIEF REQUESTED**

1.     Movants are defendants in the adversary action pending in the United States Bankruptcy Court for the District of Delaware, captioned *George L. Miller v. William J. Rouhana, Jr. et. al.,* Adv. No. 25-ap-50399 (MFW) (the "D&O Action;" D&O Adv. D.I. 1).[3] The D&O Action was commenced by George L. Miller (the "Trustee"), in his capacity as the chapter 7 trustee of the Debtors' estates.

2.     Movants, William J. Rouhana, Jr. and Amy L. Newmark, along with six (6) other defendants who are not named in the D&O Action - (i) three (3) former directors John T. Young, Robert A. Warshauer, and Bart Schwartz; (ii) CSSE Entertainment, Inc. f/k/a Chicken Soup for the Soul Entertainment, Inc.; and (iii) Redbox Automated Retail, LLC - are also named as defendants in a second adversary action pending before the Court, captioned *Brian Skajem et. al. v. Chicken Soup for the Soul Entertainment, Inc. et. al.*, Adv. No. 24-ap-50128 (MFW) (the "Skajem Action;" Skajem Adv. D.I. 1).[4] The Skajem Action was commenced by Brian Skajem ("Skajem"), a former employee of the Debtors, on behalf of himself and other allegedly similarly situated employees. On or about April 30, 2025, the Court granted plaintiffs in the Skajem Action leave to file a First Amended Complaint (the "Skajem Complaint;" Skajem Adv. D.I. 30) in the adversary proceeding.

3.     Movants have incurred, and will incur, substantial professional expenses and costs

---

Bond Dickinson (US) LLP ("Womble"), which is defense counsel as to William J. Rouhana, Amy Newmark, Chicken Soup for the Soul, LLC and Chicken Soup for the Soul Holdings, Inc. Each Movant shares an interest in common in respect of the specific relief sought in this Motion, the Primary Policy (as defined below), the Excess Policies (as defined below), and the Primary Insurer (as defined below), and have joined this Motion, but remain represented in all respects by their own counsel and not by Womble. By the action of filing this Motion jointly, the Movants do not otherwise assert a common interest together in respect of the defense of the D&O Action, but likewise reserve the right to claim such an interest.

[3] The docket in the D&O Action is referred to as "D&O Adv. D.I."

[4] The docket in the Skajem Action is referred to as "Skajem Adv. D.I.").

in connection with the D&O Action and Skajem Action.  Moreover, since the commencement of the Debtors initial chapter 11 proceedings, certain of the Movants have also incurred substantial professional expenses and costs in responding to various other inquiries and investigations relating to their roles as former directors and officers of the Debtors.

4.     Pursuant to sections 105(a) and 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code"), rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedures for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Movants, on behalf of themselves and other **Insured Persons**, respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A**, confirming that the automatic stay does not apply to proceeds of the Debtors' directors and officers primary liability insurance policy (the "Primary Policy" as defined more fully below), or, in the alternative, granting immediate relief from the automatic stay, so that the Movants and other **Insured Persons**[5] may receive payments, advances, and/or reimbursements of their **Defense Expenses** and other amounts, in connection with the D&O Action, the Skajem Action and any other covered **Loss**, consistent with their rights under the Primary Policy.

## JURISDICTION

5.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012.

6.     This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

---

[5] Except for headings, terms in bold are defined in the Primary Policy.

7.      Movants confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order by the Court in connection solely with this Motion, but not in connection with the D&O Action or the Skajem Action, to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment in connection herewith consistent with Article III of the United States Constitution.

8.      Venue of these Chapter 11 Cases and related proceedings is proper in this district pursuant to a 28 U.S.C. §§ 1408 and 1409.

**FACTUAL BACKGROUND**

**A.  General Background**

9.      On March 12, 2025, George L. Miller (the "Plaintiff") commenced the D&O Action by filing a thirteen (13) count complaint (the "D&O Complaint;" D&O Adv. D.I. 1) against the Movants.

10.      The D&O Complaint asserts various claims against the Movants, including alleged breaches of fiduciary duty, aiding and abetting breach of fiduciary duty, avoidance and recovery of insider revenue transfers, avoidance of insider releases as fraudulent transfers, recovery of preferred dividends and internal revenue transfers as illegal dividends, non-payment of employee wages, benefits and tax obligations, disallowance of claims, and equitable subordination.  (D&O Adv. D.I. 1.)

11.      Movants have yet to answer or otherwise respond to the D&O Complaint.  Nor has a pre-trial scheduling conference been scheduled.  It is anticipated that each Movant will likely move to dismiss the D&O Complaint on various grounds and pursuant to separate motions.

12.      On September 6, 2024, Skajem commenced the Skajem Action by filing a nine (9) count complaint (Skajem Adv. D.I. 1) against, among others, certain of the Movants.  On February

3, 2025, Skajem filed a Motion for Leave to File an Amended Complaint (the "Skajem Amended Complaint") with the Court.  (Skajem Adv. D.I. 18).  On April 30, 2025, the Court granted Skajem leave to file the Skajem Amended Complaint.  (Skajem Adv. D.I. 30)  The Skajem Amended Complaint asserts various claims and causes of action, including, fraud, conversion, violations of Labor Code, failure to pay wages, failure to reimburse expenses, and violations of the Fair Labor Standards Act.  *Id.*

13.    Movants William J. Rouhana, Jr. and Amy L. Newmark have yet to answer or otherwise respond to the Skajem Amended Complaint.  Nor has a pre-trial scheduling conference been held.  It is anticipated that Mr. Rouhana and Ms. Newmark will likely move to dismiss the Skajem Amended Complaint on various grounds.

14.    In addition to costs in connection with the D&O Action and the Skajem Action, certain of the Movants have incurred professional fees and expenses in connection with various formal and informal investigations, requests and demands relating to their former roles, and alleged former roles, as officers and directors of the Debtors.

**B.   The Primary Policy**

15.    In the ordinary course of business, the Debtors obtained directors and officers liability insurance policies to protect their directors and officers, and under certain defined circumstances, employees providing services to, or acting on behalf of the Debtors.  Specifically, the Debtors maintain a primary directors and officers liability policy and certain excess layers of D&O insurance.

16.    The Primary Policy, Policy Number ELU177343-21, was issued by XL Specialty Insurance Company (the "Primary Insurer"), with an aggregate coverage limit of $5.0 million.  A copy of the Primary Policy is attached hereto as **Exhibit B**.

17.     In addition to the Primary Policy, the Debtors also maintained multiple levels of excess D&O insurance coverage (collectively, the "Excess Policies").  **Movants do not seek, at this time, relief as it relates to the Excess Policies**.

18.     Subject to all of its terms and conditions, the Primary Policy provides coverage for **Loss** resulting from a **Claim** first made against **Insured Persons** during the **Policy Period** for a **Wrongful Act**.  *See* generally, Ex. B, Primary Policy at I.(A)-(B) Insuring Agreements, and Enorsement No. 5, which expands the definition of **Insured Persons** to include, under specified circumstances, employees acting for, or on behalf of the Company.

19.     The Primary Policy ensures that **Insured Persons** will be protected from the financial burden associated with their involvement in, and defense against, covered **Claims**, up to the applicable limits of liability of the Primary Policy. and is subject to the terms, conditions, exclusions and limitations of the Primary Policy.

20.     The Primary Policy also includes a "Bankruptcy" provision that requires the Primary Insurer and the Debtors "not to oppose or object to any efforts by an Insured Person[,]" including the Movants, "to obtain relief from any stay or injunction." *See id.,* VI.  *General Conditions (M) Bankruptcy.*

### BASIS FOR RELIEF REQUESTED

21.     The automatic stay does not apply to the proceeds of the Primary Policy because the proceeds are not property of the Debtors' estates.  Even if the Court were to find that the automatic stay does apply to the Primary Policy proceeds, cause exists to grant the Movants relief from the automatic stay solely for the purpose of accessing the proceeds.  Accordingly, the Court should grant the relief requested by this Motion.

A. **The Automatic Stay Does Not Apply.**

22.     Here, the proceeds of the Primary Policy are not property of the estate, and, therefore, the Primary Insurer should be permitted to advance covered **Defense Expenses** and other covered **Loss** on behalf of **Insured Persons** in that matters set forth in Paragraphs 9-14 herein.

23.     The automatic stay prohibits "any act to obtain possession of property of the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a).

24.     Section 541(a) of the Bankruptcy Code provides, in turn, that property of estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a).

25.     In determining whether the automatic stay applies to proceeds of the Primary Policy, the "threshold issue" is whether those proceeds are property of the estate.  *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010); *In re World Health Alts., Inc.*, 369 B.R. 805, 811 (Bankr. D. Del. 2007); *In re Allied Digit. Techs. Corp.*, 306 B.R. 505, 509 (Bankr. D. Del. 2004).  "If the proceeds are not property of the estate, then [the provider] . . . would not be violating the automatic stay by paying the [the insured persons'] defenses costs" and other covered losses. *Downey*, 428 B.R. at 602.

26.     Whether the policy proceeds are property of the estate, in turn, is "controlled by the language and scope of the [specific] polic[ies] at issue." *In re Allied Digit.*, 306 B.R. at 511. When a D&O policy provides direct coverage to directors and officers, the proceeds of the insurance policy are not property of the estate because the proceeds are payable to the directors and officers and not to the estate.  *Id*. at 510.

27.     Here, the proceeds are not property of the Debtors' estates because the Primary

Policy is clear that it is first and foremost for the benefit of the **Insured Persons**, including the Movants.  First, Insuring Agreements A and B of the Primary Policy provide coverage on behalf of **Insured Persons** (including the Movants) and not the **Company**.  Second, the Priority of Payments provision requires that coverage be provided on behalf of **Insured Persons** before any coverage is afforded to the **Company**.  Lastly, the Primary Policy requires the **Company** and the **Insurer** to cooperate and "not to oppose or object to any efforts by any Insured Persons," including the Movants, "to obtain relief from any [bankruptcy] stay or injunction."

28.    The theoretical potential for coverage for the Debtors does not alter this conclusion, as the Debtor is unlikely to indemnify any **Insured Person** in connection with the matters set forth in Paragraphs 9-14, above, and no **Securities Claim** against the Debtor triggering coverage under Insuring Agreement C of the Primary Policy has been commenced.  Where a D&O policy "provides direct coverage to both the debtor and the directors and officers, the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other asset from diminution." *In re Downey*, 428 B.R. at 603 (internal quotation omitted).  But even where a debtor is also an insured under a D&O policy, courts hold that the proceeds of that D&O policy are not property of the estate if the debtor's potential claim against the policy is speculative or hypothetical.  *See, e.g.*, *id*. at 607; *In re World Health Alts.*, 369 B.R. at 810 (noting that courts "have found that insurance policy proceeds are not property of the estate where a debtor is covered for indemnification, but indemnification either has not occurred, is hypothetical, or speculative") (internal quotation omitted); *In re Allied Digit.*, 306 B.R. at 512 ("[W]hen the liability policy provides the debtor with indemnification coverage but indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not property of the bankruptcy estate.").

29.     Here, paying **Insured Persons' Defense Expenses** and other covered **Loss** in connection with the D&O Action, the Skajem Action, and other covered **Loss** —consistent with the terms of the Primary Policy—will not have any adverse effect on the Debtors' estates.

30.     Upon information and belief, the Debtors do not intend to advance or indemnify **Insured Persons' Defense Expenses** in connection with the matters set forth in Paragraphs 9-14, above.  Making the policy proceeds available to **Insured Persons** entitled to coverage will reduce or eliminate claims against the estates by **Insured Persons** for advancement and indemnification, while providing for greater recoveries to other creditors in the chapter 11 cases.

31.     Similarly, upon information and belief, the Debtors do not have any pending litigation entitled to coverage under the Primary Policy that would trigger coverage under Insuring Agreement C.  To the extent the Debtors could ever incur future covered **Loss**—which appears unlikely—the Debtors' right to coverage would be subject to the Priority of Payments provision in the Primary Policy.  *See* Ex. B, Primary Policy, Section VI.(L)[6]

32.     This Court's decision in *Downey* is squarely on point.  There, former officers and directors of a Chapter 7 debtor moved for an order that the automatic stay did not preclude their access to proceeds of a D&O insurance policy in connection with a securities action that had been

---

[6] (L) PRIORITY OF PAYMENTS

In the event of Loss, including Defense Expenses, payable under more than one of the Insuring Agreements of the Policy, then the Insurer shall, to the maximum extent practicable and subject at all times to the Insurer's maximum aggregate Limit of Liability as set forth in ITEM 3 of the Declarations, pay such Loss as follows:

    (1)  first, the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Insured Persons which the Company is not permitted nor required to pay on behalf of the Insured Persons as indemnification;

    (2)  second, the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Company which the Company is permitted or required to pay on behalf of the Insured Persons; and

    (3)  third, the Insurer shall make such other payments which the Insurer may be liable to make under Insuring Agreements (C) and/or (F).

filed against them. *Downey*, 428 B.R. at 598. Like the Primary Policy, the debtor's policy in *Downey* provided both insured person and entity coverage. *Id.* at 604. This Court granted the directors' and officers' motion, holding that the policy proceeds were not property of the estate. *Id*. at 604-08. In so holding, this Court relied on an order-of-payments clause under which the debtor's interest in coverage was "under all circumstances, junior to Coverage A, which provide[d] direct coverage to the [directors and officers]." *Id*. at 600-01, 608 (noting that the policy preserved "this chain of priority in the event of bankruptcy"). Noting the established principle that bankruptcy should not expand a debtor's rights "against others beyond what rights existed at the commencement of the case[,]" this Court recognized that the order-of- payments clause "provide[d] a clear chain of priority among the three types of coverage[,]" which was not affected by the bankruptcy filing. *Id*. at 607 (internal quotation marks omitted). "This is significant[,]" the Court explained, "because were the Court to hold that the Policy proceeds are property of the estate and, thus, subject to the automatic stay, the trustee would have 'greater rights in the [policy proceeds] than the debtor had before filing for bankruptcy.'" *Id*. at 608 (*quoting Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487, 492 (3d Cir. BAP 1997)). Thus, the Court concluded that the policy proceeds were "not property of the estate" subject to the automatic stay. *Id*. at 608.

33.    The same reasoning applies here. Like the order-of-payment clause in the policy at issue in *Downey*, the Primary Policy likewise contains a "Priority of Payments" provision prioritizing payment of policy proceeds on behalf of **Insured Persons** before payment to the **Company**. *See* Ex. B, Primary Policy, Section VI.(L).

34.    Outside of bankruptcy, the Debtors' interest in the proceeds of the Primary Policy would be subordinate to the interests of the Movants and other **Insured Persons** in coverage.

Therefore, the Debtors would be granted greater rights in the policy proceeds than they would have had outside of bankruptcy if the policy proceeds were deemed property of the Debtors' estates, contrary to established principles of bankruptcy law.  See *Downey*, 428 B.R. at 608.

35.     For the foregoing reasons, the Court should enter an order confirming that the proceeds of the Primary Policy are not property of the Debtors' estates subject to the automatic stay so that **Insured Persons** may have access to the policy proceeds, consistent with their contractual rights.

**B.     The Court Should, in the Alternative, Grant Relief from the Automatic Stay.**

36.     Even if the proceeds of the Primary Policy are subject to the automatic stay, the Court should grant relief from the stay so that **Insured Persons** can access the policy proceeds to pay for **Defense Expenses** and other covered **Loss**.

37.     Courts in this and other Circuits routinely grant such relief in cases involving similar policies. See *e.g., Downey*, 428 B.R. at 608 (holding in the alternative that, even if the policy proceeds were property of the estate, cause existed to lift the automatic stay); *In re MF Global Holdings Ltd.*, 469 B.R. 177, 192 (Bankr. S.D.N.Y. 2012) ("Courts in this Circuit and other jurisdictions have permitted the advancement of defense costs to a debtor's directors or officers even though the insurance policies provide direct coverage to the debtor."); *In re Enron Corp.*, No. 01–16034, 2002 WL 1008240, at *2 (Bankr. S.D.N.Y. May 17, 2002) (granting relief from stay to the extent applicable, for payment of defense costs); *In re CyberMedica, Inc.*, 280 B.R. 12, 18–19 (Bankr. D. Mass. 2002) (granting relief from stay for cause because directors and officers would suffer irreparable harm if prevented from exercising their rights to defense payments under directors and officers insurance policy); *In re Laminate Kingdom, LLC*, No. 07- 10279, 2008 WL 1766637, at *4 (Bankr. S.D. Fla. Mar. 13, 2008) ("Because of the separate and distinct interests

between the directors and officers and the debtor, numerous courts have granted relief from the automatic stay to permit the advancement of defense costs to a debtor's directors and officers—even though the insurance policies also provided direct coverage to [the] debtor.").

38.    Section 362(d)(1) of the Bankruptcy Code authorizes the Court to grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such property in interest[.]" 11 U.S.C. § 362(d)(1).  In considering whether to grant relief from the stay under this provision, the Court should consider (a) "[w]hether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay" and (b) "[w]hether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor." *Downey*, 428 B.R. at 609.5  As described below, these factors strongly weigh in favor of lifting the automatic stay.

39.    In *Downey*, the court also referenced "[t]he probability of the creditor prevailing on the merits" as a factor in determining whether relief from the automatic stay was appropriate. *Downey*, 428 B.R. at 609. The Movants submit that this factor does not apply here. If the Movants were seeking stay relief to pursue litigation against the Debtors, the merits of that litigation would be relevant to whether the automatic stay should be lifted. *See, e.g., In re Continental Airlines*, 152 B.R. 420, 424 (Bankr. D. Del. 1993). But the Movants do not seek to pursue ligation against the Debtors.  And the relief that the Movants do seek—access to the proceeds of the Primary Policy, consistent with its terms—is not contingent on the merits of any litigation claim, but instead follows from the plain and unambiguous terms of the Primary Policy.

40.    Here, the Trustee, the Debtors and their estates will not suffer any prejudice from lifting the stay to allow the Primary Insurer to pay **Loss** on behalf of **Insured Persons**.  Even if the Debtors are deemed to have an interest in proceeds of the Primary Policy, that interest would

not be impaired by lifting the automatic stay because the Debtors' interest is subordinate to the rights of **Insured Persons**. *See Laminate*, 2008 WL 1766637, at *3 ("[T]he estate has only a contingent, residual interest in the Policy's proceeds; and, payment of the proceeds in accordance with the 'Priority of Payments Endorsement' does not diminish the protection the Policy affords the estate, as such protection is only available after the [directors' and officers'] Costs of Defense are paid."). Stated simply, the Debtors will not be prejudiced by being held to the terms of the Primary Policy. *See, e.g.*, *In re Continental Airlines, Inc.*, 134 B.R. 536, 541 (Bankr. D. Del. 1991) ("To the extent that such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate.") (internal quotation marks and citations omitted). And by making the proceeds available to **Insured Persons**, the Debtors will be able to reduce or eliminate claims against the estates by **Insured Persons** for advancement and indemnification, providing for greater recoveries to other creditors in the chapter 11 cases. Moreover, upon information and belief, there is no currently pending litigation that entitles the Debtors to coverage under the Primary Policy.

41.     Second, absent stay relief, the Movants would suffer substantial and potentially irreparable harm. Without the Primary Policy proceeds, the Movants may not have the resources to pay their attorney's fees and other defense costs, including in connection with the D&O Action, the Skajem Action, ongoing investigations, requests and demands or the chapter 11 cases, thereby undermining their ability to present an effective defense or protect their rights. The Movants thus "may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments." *Downey*, 428 B.R. at 610 (*quoting CyberMedia*, 280 B.R. at 18); *In re Allied Digit.*, 306 B.R. at 514 ("Without funding, the Individual Defendants will be prevented from conducting a meaningful defense to the [plaintiff's] claims and may suffer substantial and irreparable harm.").

42.     In short, the balance of equities is not a close question here. Absent stay relief, the

Movants face significant and potentially irreparable harm by being deprived of the critical funds they need—and to which they are unambiguously entitled—to fund any **Loss** covered by the Primary Policy, including **Defense Expenses**.   The Movants relied upon the existence and availability of insurance coverage when serving in a fiduciary capacity for the Debtors.   By contrast, the Debtors would not be harmed by lifting the stay because they are not entitled to the proceeds payable to the Movants, and would be relieved of any obligation to directly indemnify the Movants and/or satisfy the Primary Policy's $3 million Retention, should estate assets be available in the future to do so.

43.     For the foregoing reasons, the Movants, on behalf of themselves and other **Insured Persons**, respectfully request that the Court enter an Order providing that the automatic stay, to the extent applicable, is lifted to allow the Primary Insurer to advance and/or reimburse **Defense Expenses** and other covered **Loss** pursuant to the terms and conditions of the Primary Policy.

## NOTICE

Notice of this Motion has been given to (i) counsel to the Debtors and Plaintiff; (ii) the Primary Insurer; (iii) the Office of the United States Trustee for the District of Delaware; (iv) all Defendants identified in the D&O Action and their counsel; (iv) counsel to the Skajem Plaintiffs; (vi) all defendants identified in the Skajem Third Amended Complaint; and (v) all parties entitled to receive notice under Bankruptcy Rule 2002.   In light of the nature of the relief requested herein, the Movants submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Movants respectfully request that the Court enter the proposed Order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: May 9, 2025
Wilmington, Delaware

**Womble Bond Dickinson (US) LLP**

_/s/ Donald J. Detweiler_
Donald J. Detweiler (DE Bar No. 3087)
1313 N. Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile:  (302) 252-4330
Email: don.detweiler@wbd-us.com
---and-
Cathy A. Hinger
(admitted _pro hac vice_)
2001 K. Street NW
Suite 400 South
Washington, D.C. 20006
Telephone: (202) 467-6900
Facsimile:  (202) 467-6910
Email: cathy.hinger@wbd-us.com

_Counsel for Chicken Soup for the Soul, LLC_

**TROUTMAN PEPPER LOCKE LLP**

_/s/ Christopher B. Chuff_
David M. Fournier, Esq.
Christopher B. Chuff, Esq.
Tori L. Remington, Esq.
Tyler R. Wilson, Esq.
Hercules Plaza
1313 N. Market Street, Suite 1000
Wilmington, DE 19899-1709
Telephone: (302) 777-6500
Facsimile: (302) 421-8390
David.Fournier@troutman.com
Chris.Chuff@troutman.com
Tori.Remington@troutman.com
Tyler.Wilson@troutman.com

_Counsel for Fred M. Cohen, Martin Pompadur,
Christina Weise Lurie, and Diana Wilkin_

**SAUL EWING LLP**

_/s/ Evan T. Miller_
Evan T. Miller, Esq.
1201 N. Market Street, Suite 2300
Wilmington, Delaware 19801
Telephone: (302) 421-6864
evan.miller@saul.com

_Counsel for Cosmo DeNicola_

-and-

**HOLLAND & KNIGHT LLP**
Jessica Magee, Esq.
Steven J. Levitt, Esq.
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: (214) 969-2522
Jessica.Magee@hklaw.com
Steven.Levitt@hklaw.com

_Counsel for Cosmo DeNicola_

**LAW OFFICES OF THIRU VIGNARAJAH LLC**

*/s/ Thiru Vignarajah*

Thiru Vignarajah, Esq.
Ross Ingram, Esq.
211 Wendover Road
Baltimore, MD 21218
Telephone: (410) 456-7552
thiru@thirulaw.com
ross@thirulaw.com

*Counsel for Vikram Somaya*

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C**

*/s/ Douglas P. Baumstein*

Douglas P. Baumstein, Esq.
919 Third Avenue
New York, NY 10022
Telephone: 212.935.3000
Facsimile: 212.983.3115
DBaumstein@mintz.com

*Counsel for Christopher Mitchell*

**MCCARTER & ENGLISH, LLP**

*/s/ Sarah E. Delia*

Sarah E. Delia, Esq.
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Telephone: (302) 984-6342
sdelia@mccarter.com

*Counsel for Jason Meier*

**ELLIOTT KWOK LEVINE JAROSLAW NEILS LLP**

*/s/ Jared R. Clark*

Jared R. Clark, Esq.
Lynn Neils, Esq.
One Grand Central Place
60 East 42nd Street, Suite 1570
New York, NY 10165
Telephone: (212) 321-0510
jclark@ekljnlaw.com
lneils@ekljnlaw.com

*Counsel for Amanda R. Edwards*