<u>**Exhibit A**</u>

**Sharing Agreement**

Execution Version

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CSS ENTERTAINMENT INC. (f/k/a CHICKEN SOUP FOR THE SOUL ENTERTAINMENT INC.), *et al* [1]<br><br>Debtors. | Chapter 7<br><br>Case No. 24-11442 (MFW)<br>(Jointly Administered) |

**SHARING AGREEMENT BETWEEN CHAPTER 7 TRUSTEE AND AGENT FOR THE PREPETITION LENDERS PROVIDING FOR (I) DETERMINATIONS AND ALLOWANCE OF SECURED LENDER'S PRE-PETITION CLAIMS AND LIENS; (II) TRUSTEE'S SALE OF CERTAIN OF DEBTORS' ASSETS AND SECURED LENDER'S COLLATERAL; (III) SPECIFIED CARVE-OUT FROM SECURED LENDER LIENS; AND OTHER MATTERS CONCERNING THE TRUSTEE'S CONTEMPLATED SALES AND CERTAIN SETTLEMENTS**

This Sharing Agreement (the "Agreement") is entered into effective as of the 5th day of September, 2025, by and between (a) George L. Miller (the "Trustee"), solely in his capacity as the Chapter 7 Trustee for the bankruptcy estates (collectively, the "Estates") of the above-captioned debtors (the "Debtors"), and (b) HPS Investment Partners, LLC (the "Agent" or "HPS"), in its capacity as the administrative and collateral agent under that certain Amended and Restated Credit Agreement, dated as of August 11, 2022 (as amended, amended and restated, supplemented, or otherwise modified from time to time, the "Credit Agreement") and that certain Amended and Restated Collateral Agreement, dated as of August 11, 2022, and the Supplement to the Amended

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); CSS Entertainment, Inc. (f/k/a Chicken Soup for the Soul Entertainment Inc.) (0811); CSS Studios, LLC (f/k/a Chicken Soup for the Soul Studios, LLC) (9993); CSS Television Group, LLC (f/k/a Chicken Soup for the Soul Television Group, LLC); Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508).

1

and Restated Collateral Agreement, dated as of July 26, 2023 (collectively, as amended, amended and restated, supplemented, or otherwise modified from time to time, the "Collateral Agreement")[2], among the Debtors and the HPS-managed lender parties thereto[3]; (collectively, the "Prepetition Lenders", and together with the Agent, the "Prepetition Secured Parties"). The Trustee and the Prepetition Secured Parties (singularly a "Party", collectively, the "Parties") by and through their respective undersigned counsel, intending to be legally bound, for good and valuable consideration the receipt of which is acknowledged hereby stipulate and agree subject to Bankruptcy Court approval (as set forth below) as follows:

## I.    BACKGROUND

1.    On June 28 and 29, 2024 (as applicable the "Petition Date") each of the Debtors filed voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") commencing the above-captioned bankruptcy cases (the "Bankruptcy Cases").

2.    On July 2, 2024, the Bankruptcy Court entered an order [D.I. 73] providing for the joint administration of the Bankruptcy Cases.

3.    On July 10, 2024, the Court entered an *Order Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code and Granting Related Relief* [D.I. 120] (the "Conversion").

---

[2] Copies of the Credit Agreement and Collateral Agreement are extremely voluminous and accordingly are not attached hereto; however such agreements are filed and available of record as Exhibits C and D of the HPS Investment Partners LLC's Motion for Relief from the Automatic Stay [D.I. 243, filed 8/20/2024].

[3] The HPS managed lender parties include: Aiguilles Rouges Sector B Investment Fund, L.P., American United Life Insurance Company, Brickyard Direct Holdings, L.P., Cactus Direct Holdings, L.P., Cactus Direct Lending, L.P., Core Senior Lending Fund (A-A), L.P., Core Senior Lending Fund, L.P., Core Senior Master Fund (PB), L.P., CSL Fund (PB) Holdings C, L.P. CSL Fund (PB) Holdings, B, L.P., CSL Fund (PB) Holdings, L.P., and Falcon Credit Fund, L.P.

2

Execution Version

4.     On July 11, 2024, George L. Miller was appointed as the interim chapter 7 trustee of the Debtor's Estates [D.I. 130] and is currently serving as permanent trustee of the Debtors' Estates.

5.     As referenced above, the Debtors entered into the Credit Agreement, which included provisions for an $80 million revolving credit facility and a $325 million term loan facility.

6.     As part of the borrowing transaction, the Prepetition Secured Parties' obligations to extend credit under the Credit Agreement to the Debtors was conditioned upon execution and delivery of the corresponding Collateral Agreement. As described in the Collateral Agreement, certain collateral has been pledged and/or security interests have been provided to the Agent for the benefit of the Prepetition Lenders (the "Collateral"). *See,* Collateral Agreement Art. II (Pledge of Securities, including Pledged Stock, Pledged Debt, and Proceeds thereof, each as defined therein) and also Art. III (Security Interest in Article 9 Collateral and Intellectual Property Collateral, each as defined therein).[4] The Collateral represents substantially all of the Debtors' assets, including, among other things, the Debtors' intellectual property, bank accounts and accounts receivable, equipment, chattel papers, fixtures, general intangibles, and inventory

7.     Prior to the Conversion, certain of the Prepetition Secured Parties agreed to provide certain debtor-in-possession funding to the Debtors (the "DIP Funding") pursuant to the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [D.I. 85] (the "DIP Order," and the

---

[4] Capitalized terms used but not defined herein shall have the meanings given to such terms in the DIP Order (as defined herein).

lenders thereto, the "DIP Lenders") and the Debtors affirmed the validity, perfection and priority of the liens granted pursuant to the Credit Agreement and Collateral Agreement, including the security interests over certain of the Debtors' bank accounts and cash deposited therein. The Prepetition Secured Parties also funded an additional $200,000 after the Conversion for the sole purpose of paying D&O insurance premiums owed by the Debtors (the "D&O Funding") (collectively, the DIP Funding together with the D&O Funding, the "Postpetition Funding").

8.      Under the DIP Order, the Agent, for the benefit of the DIP Lenders, to the extent of the DIP Funding provided to the Debtors, was afforded (i) superpriority administrative expense claims and (ii) security interests on certain of the Debtors' unencumbered property and, on a priming basis, on the Collateral. *See* DIP Order at para. 4, 5. As adequate protection for the diminution in value of the Prepetition Lenders' interests in the Collateral in connection with the DIP Funding, the Agent received subject to the terms and conditions of the DIP Funding pursuant to the DIP Order (i) replacement security interests in and liens on the DIP Collateral (as defined in the DIP Order) and (ii) an allowed superpriority administrative expense claim. *See* DIP Order at para. 11.

9.      The Trustee acknowledges and agrees based upon an accounting to be provided by the Agent to the Trustee contemporaneously with the executing of this Agreement in the form of the Register under the Credit Agreement in which is recorded the amount outstanding under the Prepetition Senior Credit Facility and amount of principal and interest due and payable by the Debtors thereunder, that the claims of the Prepetition Secured Parties arising under the Credit Agreement and the Postpetition Funding are in the aggregate principal amount of not less than $500,000,000, plus accrued and unpaid interest thereon and any fees, premium, expenses and disbursements (including attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and

4

financial advisors' fees), costs, charges, indemnities, and other obligations thereunder (collectively, the "Allowed HPS Claim").

10.     On August 20, 2024 the Prepetition Secured Parties filed the *HPS Investment Partners' LLC's Motion for Relief from the Automatic Stay* [D.I. 243] (the "HPS Stay Relief Motion") seeking relief to allow the Prepetition Secured Parties to proceed with liquidation of the Collateral.  The HPS Stay Relief Motion was premised in part on the fact that no party, including the Prepetition Secured Parties, was willing to infuse any material amount of cash into the Chapter 7 Bankruptcy Cases to facilitate an orderly administration of the Debtors' Estates.  On September 6, 2024, an order was entered granting the HPS Stay Relief Motion [D.I. 316].

## II.     USE OF CASH COLLATERAL AND CARVE-OUT

11.     The Parties recognize the need for the Trustee's use of cash collateral as defined in §363(a) of the Bankruptcy Code ("Cash Collateral") to permit the administration of the Estates in an orderly manner, including but not limited to enabling the preparation of Bankruptcy Schedules and Statements of Financial Affairs and the identifying and providing of access to the Agent of the Collateral consisting of both tangible assets and largely intangible assets to enable the value of (i) certain of the Collateral to be maintained and realized by HPS and (ii) other unencumbered assets of the Estates to be maintained and realized by the Estates.  Accordingly, the Agent on behalf of the Prepetition Lenders and DIP Lenders agrees to the Trustee's use of Cash Collateral in accordance with the Carve-Out (as defined below) in the amount of approximately $2.3 million of cash currently held by the Trustee (the "$2.3 Million Cash Amount").

12.     The Parties agree, subject to further Bankruptcy Court approval and documentation of a sale agreement in form and substance satisfactory to the Parties, to proceed with a sale of rights to pursue litigation for copyright infringement against various third parties related to, among other claims, violations of the Digital Millenium Copyright Act ("DMCA") for media titles owned

5

or controlled by the Debtors' Estates (the "IP Litigation Assets") free and clear of the security interests of HPS in the IP Litigation Assets to Grove Street Partners LLC or one or more of its affiliated or assignees ("Grove Street") or another purchaser acceptable to the Parties for a purchase price of not less than $100 million payable in five (5) annual installments to the Estates of $20 million each or at such sale price and terms as may otherwise be agreed by the Parties.

13.     The Agent expressly agrees on behalf of the Prepetition Secured Parties and DIP Lenders that any and all liens, security interests (including but not limited to any and all security interests, liens, superpriority administrative expense claims granted under the DIP Order or hereunder) of the Prepetition Secured Parties in Collateral shall be subordinate and subject to carve-outs from Collateral, use by the Trustee and sharing with the Estates for the following (collectively, the "Carve-Out"):

A.     Cash Collateral – The Trustee may use the $2.3 Million Cash Amount in the exercise of his business judgment to fund the costs of administration of the Debtors' Estates. The Trustee agrees that proceeds of accounts receivables and other Collateral received directly into the bank accounts of the Debtors after the date hereof shall be paid over to the Agent.

B.     IP Litigation Assets – The proceeds from IP Litigation Assets shall be shared and applied as follows:

i.     *First,* the proceeds from IP Litigation Assets recoveries shall be used to pay the Trustee's statutory commissions and costs, the Trustee's professional fees and costs, and any other expenses related to the identification, preservation including AWS, maintenance and recovery of IP Litigation Assets (the aggregate amounts paid under this clause (i) the "Administrative Payments");

6

ii.    *Second*, the first $100,000,000 of proceeds from IP Litigation Assets shall be allocated after the payment of (i) above as follows:

(1)    An amount equal to the sum of 20% of Net Proceeds (as defined below) to the Trustee for the benefit of the Debtors' Estates to be distributed in accordance with 11 U.S.C. §726.  Net Proceeds are the gross proceeds from the liquidation of IP Litigation Assets minus the Administrative Payments (the "Net Proceeds"); and

(2)    80% of Net Proceeds to HPS on account of its secured claims until paid in full;

iii.    *Third*, any proceeds recovered from IP Litigation Assets in excess of $100,000,000 shall be allocated after the payment of (i) above as follows:

(1)    An amount equal to the sum of 15% of Net Proceeds to the Trustee for the benefit of the Debtors' Estates to be distributed in accordance with 11 U.S.C. §726, and

(2)    85% of Net Proceeds to HPS on account of its secured claims until paid in full.

In the event that the aggregate claims in any of clauses (1) or (2) above are paid in full then the proceeds otherwise allocable under such clause shall be re-allocated to the other clause until paid in full.

14.    For the avoidance of doubt, the use of the $2.3 Million Cash Amount by the Trustee permitted by HPS under this Agreement shall not reduce any obligation of HPS to reimburse the allowed fees of Pachulski Stang Ziehl & Jones LLP to the extent provided for in the carve-out as defined in the DIP Order (the "Chapter 11 Carve-Out") from the proceeds of Collateral under the DIP Order and the Order granting HPS Stay Relief Motion [D.I. 316].  HPS shall make payment

7

Execution Version

of the allowed Chapter 11 fees of Pachulski Stang Ziehl & Jones LLP upon approval of such fees by the Bankruptcy Court from proceeds of Collateral other than the $2.3 Million Cash Amount.

15.    For the avoidance of doubt, property of the Estates of the Debtors which is not prepetition collateral of HPS (the "Non-Collateral Assets") shall not be subject to any sharing of proceeds or other benefits with HPS on account of its Allowed HPS Claim except to the extent HPS shall be entitled to a distribution under 11 U.S.C. §726(a)(2) as a general unsecured creditor on account of its Allowed HPS Deficiency Claim (as defined below); provided that, for the avoidance of doubt, the HPS Deficiency Claim may include any outstanding amounts on account of its Postpetition Funding.  The Non-Collateral Assets include but are not limited to (i) rights or claims of the Debtors' Estates under Chapter 5 of the Bankruptcy Code, (ii) any rights, claims and actions against former directors and officers of the Debtors, and entities affiliated with the Debtors' Estates including but not limited to those claims and actions set forth in, In re: Miller v. William J. Rouhana, Jr. et al, Adv. No. 25-50399 (the "D&O Litigation"), and (iii) any commercial tort claims.  In furtherance of the foregoing, the Trustee and HPS agree in the event an interim distribution is made by the Trustee from proceeds of Non-Collateral Assets to general unsecured creditors under 11 U.S.C. §726(a)(2) before the Collateral is liquidated and the proceeds thereof are distributed to enable a final calculation of the Allowed HPS Deficiency Claim, then the Trustee will reserve or holdback sufficient funds from such interim distributions, as reasonably determined between the Trustee and HPS, on an estimated basis to enable a distribution on the HPS Deficiency Claim in an amount proportionally the same as is being made in such interim distribution to other general unsecured creditors.

16.    To the extent the proceeds from the Collateral of HPS are not sufficient to fully pay the Allowed HPS Claim, then HPS shall be entitled to receive a distribution as a prepetition general

unsecured claim for any unpaid deficiency amount (the "Allowed HPS Deficiency Claim"). HPS shall provide the Trustee with statements of the outstanding balance of the Allowed HPS Claim and confirmation as to whether or not the Collateral of HPS has been fully liquidated by HPS within ten (10) days of the Trustee's written requests for such information to enable the Trustee to make distributions from the Estates; provided, however, that to the extent the Trustee wishes to make distributions from the Estates at a time when the Collateral of HPS has not been fully liquidated by HPS, HPS shall provide the Trustee with a good faith estimate of the value of any remaining Collateral of HPS for purposes of calculating the Allowed HPS Deficiency Claim. In making such distributions, the Trustee shall be entitled to rely on the foregoing statements. In the event the Trustee makes a distribution to other holders of allowed general unsecured claims then HPS shall be entitled to receive a pro-rata distribution on account of its Allowed HPS Deficiency Claim. HPS shall not be required to file a proof of claim evidencing the Allowed HPS Deficiency Claim and such claim shall be deemed allowed and not subject to any challenge. HPS upon execution of this Agreement shall provide the Trustee with a report of all funds received by HPS after June 21, 2024 from Collateral and Non-Collateral on account of the Debtors. In the event HPS has received proceeds from Non-Collateral Assets (except with respect to its Postpetition Funding), such proceeds shall be promptly remitted to the Trustee upon Court approval of this Agreement.

17.     Upon execution of this Agreement, the Trustee agrees to (i) upon HPS' written request (which may be via e-mail), provide consents, authorizations, and instructions directed to Amazon Web Services Inc. ("AWS"), Dropbox, Cloudfare and Outlook Exchange and, also upon HPS' written request (which may be via e-mail), any other digital accounts of the Debtors

Execution Version

(collectively, the "Digital Accounts"),[5] authorizing the Digital Accounts to provide HPS with full administrative access to such Digital Accounts and (ii) provide HPS with all credentials, registration information, and administration rights related to the Digital Accounts that are readily available and known to the Trustee.    In addition, with respect to the account of Apto Solutions maintained with Dropbox (the "Apto Solutions Dropbox Account"), the Trustee agrees that upon HPS providing consent to the Trustee to use a portion of the $2.3 Million Cash Amount to pay the outstanding fees and costs of Apto, the Trustee will cause Apto to provide HPS with full administrative access to the Apto Solutions Dropbox Account.  Any fees required to be paid to the Digital Accounts for data accessed by HPS shall be the responsibility of HPS and not the Estates.

18.      HPS and the Trustee and their respective counsel will work in good faith to (i) obtain reasonable access to information necessary or desirable to allow value to be realized from the Collateral, the IP Litigation Assets and Non-Collateral Assets, including resolution of AWS issues, if possible (including, without limitation, the materials and deliverables specified in Annex II to the Notice of Foreclosure Sale By Credit Bid dated June 17, 2025 delivered to the Trustee by HPS) and (ii) maintain standing to enable the IP Litigation Assets to proceed to be pursued for the benefit of the Parties hereto.

19.      **Mutual Releases**.  The following mutual releases shall become effective upon Bankruptcy Court approval of this Agreement:

A.      HPS, on behalf of itself and the Prepetition Lenders (collectively, the "Claimant Parties"), hereby releases, remises and forever discharges the Debtors' Estates and the

---

[5] The Digital Accounts shall include, without limitation, (i) cloud storage accounts, (ii) domain name registrar accounts, (iii) social media accounts, (iv) email accounts used in connection with the Debtors' business, (v) software development, project management, and collaboration accounts, and (vi) any other digital platform, online service, or account used or maintained by the Debtors for business, media, communications, or operations.

Trustee and his financial advisors, attorneys, accountants and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such, but excluding any of the Debtors' current or former directors and officers of the Debtors' Estates and entities affiliated with the Debtors' Estates (specifically including but not limited to the Defendants named in the D&O Litigation) (collectively, the <u>Trustee Parties</u>"), of and from any and all claims, debts, refunds, demands, liabilities, agreements, obligations, controversies, actions, causes of action, suits, costs, attorneys' fees, expenses, damages, liens, and judgments, of any nature whatsoever, at law or in equity or otherwise, whether asserted or unasserted, whether known or unknown, that the Claimant Parties may have against any or all of the Trustee Parties as of the date hereof, with the exception of the Allowed HPS Claim (including the Allowed HPS Deficiency Claim), the claims arising under the Postpetition Funding, and the Trustee's obligations under this Agreement; provided, however, that the foregoing release shall not limit the Claimant Parties from asserting any released claim as a defense against a non-Party to this Agreement in any litigation brought by such Non-Party.

B.      The Trustee, on behalf of itself and the Trustee Parties, hereby releases, remises and forever discharges the Claimant Parties and each of their Representatives of and from any and all claims, debts, refunds, demands, liabilities, agreements, obligations, controversies, actions, causes of action, suits, costs, attorneys' fees, expenses, damages, liens, and judgments, of any nature whatsoever, at law or in equity or otherwise, whether asserted or unasserted, whether known or unknown, that the Trustee Parties may have against any or all of the Claimant Parties as of the date hereof, with the exception of the Claimant Parties' obligations under this Agreement. Without limiting the foregoing, the Trustee Parties waive any right to surcharge the Collateral pursuant to section 506(c) of the Bankruptcy Code except to the extent provided in the Carve-Out

Error! Unknown document property name.

or otherwise in this Agreement.  As used herein, "Representatives" shall refer to the Claimant Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such.

20.    Any notices in connection herewith may be transmitted by personal delivery, overnight courier, or, email with first class mail:

|  |  |
|---|---|
| If to the Trustee: | George L. Miller, Trustee<br>8 Penn Center<br>1628 John F. Kennedy Blvd.<br>Suite 950<br>Philadelphia, PA 19103-2110<br>Email:  gmiller@mctllp.com |
| with a copy to<br>Trustee's Counsel: | John T. Carroll, III<br>Cozen O'Connor<br>1201 North Market Street<br>Suite 1001<br>Wilmington, DE  19801<br>Tel: (302) 295-2028<br>Fax: (215) 701-2140<br>Email:  jcarroll@cozen.com |
| If to the Agent: | Daniel Wallitt<br>HPS Investment Partners, LLC<br>40 West 57th Street, 33rd Floor<br>New York, NY 10019<br>Tel:  (212) 287-5133<br>Email:  daniel.wallitt@hpspartners.com |

Error! Unknown document property name.

with a copy to Agent's    Matthew Brod
Counsel:                  Milbank LLP
                              55 Hudson Yards
                              New York, NY 10001-2163
                              Tel: (212) 530-5460
                              Fax: (212) 530-5219
                              Email: MBrod@milbank.com

Notices shall be effective (a) immediately upon personal delivery, (b) one day after deposit with an overnight courier, or (c) upon receipt of email if during normal business hours (so long as notice by first class mail is deposited with the United States Postal Service on the same day as the email is sent).

21.     This Agreement may be executed in any number of separate counterparts, any of which may be transmitted by facsimile or email, and each of which when so executed and delivered shall be an original, but all of which shall together constitute, one and the same agreement.

22.     Headings, if any, used in the Agreement are for reference purposes only and do not comprise part of the terms hereof.

23.     No failure of the Prepetition Secured Parties or the Trustee to enforce any right granted under this Agreement, any of the Prepetition Loan Documents, or otherwise shall represent a waiver of such right.

24.     The Parties hereto agree to execute any and all documents that are reasonably necessary to implement the terms and provisions of this Agreement.

25.     No modification or amendment of any of the provisions hereof shall be effective unless set forth in writing and signed by the Parties hereto and approved by the Bankruptcy Court.

26.     This Agreement between the Parties is subject in all respects to the approval of the Bankruptcy Court, which Trustee will promptly seek after the execution hereof.

27.    The Bankruptcy Court shall have jurisdiction over all matters arising from or relating to this Agreement and order approving same.

28.    This Agreement shall become effective as follows:

(i)    Paragraph 17 of this Agreement, and any related provision of this Agreement necessary to accomplish the matters set forth in paragraph 17, shall be implemented by the Trustee and HPS upon the execution of this Agreement by counsel to the Trustee and counsel to the Agent respectively; and

(ii)    All other provisions of this Agreement are subject to Bankruptcy Court approval of this Agreement.

*[Remainder of page intentionally left blank; signature pages to follow]*

**Error! Unknown document property name.**

**IN WITNESS WHEREOF**, the Parties have executed this Agreement, intending to be legally bound, as of the date first above written.


**COZEN O'CONNOR**                                    **MILBANK LLP**

By: _____            By: _____
     John T. Carroll, III                                          Matthew Brod
     (Del. Bar No. 4060)                                        55 Hudson Yards
     Suite 1001                                                       New York, NY  10001-2163
     1201 North Market Street                               Tel: (212) 530-5460
     Wilmington, Delaware  19801                         Fax: (212) 530-5219
     Tel: (302) 295-2028                                          Email: MBrod@milbank.comm
     Fax: (302) 295-2013                                          *Counsel to Agent (HPS Investment*
     Email:  jcarroll@cozen.com                            *Partners LLC) for itself and on behalf of*
     *Counsel to the Trustee,*                                 *Prepetition Secured Parties*
     *George L. Miller*

15