IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC., *et al.*, | ) ) ) | Case No. 24-11442 (MFW) |
| | ) | (Jointly Administered) |
| *Debtors.* | ) ) | |

**CONSOLIDATED OBJECTION OF CHARLES MUSZYNSKI, PARTY-IN-INTEREST, TO TRUSTEE'S MOTION FOR APPROVAL OF SHARING AGREEMENT [D.I. 687]**

1. Charles Muszynski ("Muszynski" or "Objectant"), a party-in-interest and the holder of a significant pending first-priority administrative expense claim, respectfully submits this Consolidated Objection to the *Trustee's Motion for Approval of Sharing Agreement* [D.I. 687] (the "Motion"). For the reasons set forth herein, the proposed Sharing Agreement (the "Agreement") is a flagrant and impermissible assault on the fundamental tenets of bankruptcy law and must be denied.

**I.    INTRODUCTION**

2. The Trustee seeks this Court's imprimatur on a collusive, private arrangement with a single prepetition creditor, HPS Investment Partners, LLC ("HPS"), that makes a mockery of the Bankruptcy Code's mandatory distribution scheme. The Agreement is not a settlement negotiated in the best interests of the estate; it is a textbook example of self-dealing designed to

guarantee payment for the Trustee and his professionals and provide a windfall to HPS, all at the direct and devastating expense of creditors holding first-priority administrative expense claims.

3. The Agreement directs millions of dollars from the sale of an estate asset—the intellectual property litigation assets (the "IP Litigation Assets")—to HPS and the Trustee's professionals while leapfrogging the absolute priority claims of administrative creditors, including Muszynski. Muszynski's claim arises directly from the Trustee's post-petition litigation conduct and is entitled to payment under 11 U.S.C. §§ 503(b) and 726(a)(1) before any prepetition creditor receives a dollar.

4. This Agreement must be denied. It engineers a *de facto* distribution that the Supreme Court has unequivocally forbidden. It represents a gross breach of the Trustee's non-delegable fiduciary duties of loyalty and care to *all* creditors. It fails every meaningful test for approval of a settlement under the Federal Rules of Bankruptcy Procedure. And it is the tainted fruit of a professional retention procured through a material failure to disclose a prohibited litigation funding arrangement. The Court must reject this blatant attempt to contract around the Bankruptcy Code and protect the integrity of the bankruptcy process.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N), and (O). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

### III. BACKGROUND

6. Muszynski's status as an administrative claimant arises directly from the Trustee's post-petition business decision to pursue litigation against Muszynski in a foreign jurisdiction. The substantial legal fees and costs Muszynski has been forced to incur to defend against the estate's post-petition action, the costs the estate were ordered to pay by the court in the action already amount ot $30,000.00 USD, and forthcoming costs in excess of $6,000,000.00 USD constitute "actual, necessary costs and expenses of preserving the estate" entitled to first-priority payment under 11 U.S.C. § 503(b)(1)(A).

7. Now, the Trustee seeks to monetize that very litigation through the Agreement with HPS, the Debtors' prepetition secured lender. The Agreement's key terms reveal its improper purpose:

   a. **Priority-Skipping Distribution**: The Agreement funnels 80% to 85% of the net proceeds from the sale of the IP Litigation Assets directly to HPS, a prepetition creditor, in blatant disregard of senior administrative claims. (Motion, ¶ 14.B).

   b. **Self-Serving Carve-Out**: The Agreement carves out $2.3 million from HPS's cash collateral, not for the benefit of the estate or its creditors generally, but exclusively to fund the administration and pay the Trustee's own statutory commissions and professional fees. (Motion, ¶ 14.A).

   c. **Waiver of Estate Rights**: The Trustee unilaterally waives the

estate's valuable right to surcharge HPS's collateral under 11 U.S.C. § 506(c) for costs incurred to preserve or dispose of it. (Motion, ¶ 14.x.B).

    d.  **Premature Global Release**: The Trustee grants HPS a broad, global release from any and all claims the estate may have against it, without any apparent investigation into the validity, perfection, or extent of HPS's liens or potential avoidance actions. (Motion, ¶ 14.x.B).

### IV. OBJECTANT HAS STANDING AS A "PERSON AGGRIEVED"

8. The Third Circuit employs the "person aggrieved" standard to determine standing in bankruptcy matters, a prudential requirement that "limits standing to persons with a financial stake in the bankruptcy court's order." *In re PWS Holding Corp.*, 228 F.3d 224, 249 (3d Cir. 2000). To qualify, an objectant must demonstrate that the challenged order will "diminish their property, increase their burdens, or impair their rights." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004). The party's pecuniary interests must be "directly and adversely affected." *In re Dykes*, 10 F.3d 184, 187 (3d Cir. 1993).

9. Muszynski is the quintessential "person aggrieved." The Agreement, if approved, would cause him direct and concrete financial injury. It proposes to divert millions of dollars from the unencumbered proceeds of the IP Litigation Assets—the only significant source of funds to pay administrative claims—to HPS, a junior prepetition creditor. This diversion would directly impair and likely eliminate the ability of the Estate to satisfy Muszynski's first-priority administrative expense claim under 11 U.S.C. §§ 503(b) and 726(a)(1). By

diminishing the property available to pay his claim, the Agreement directly and adversely affects his pecuniary interests and impairs his statutory right to payment. Accordingly, Muszynski has standing to object.

## V. LEGAL ARGUMENT

### A. *The Sharing Agreement Is a Per Se Violation of the Bankruptcy Code's Absolute Priority Rule.*

10. The Bankruptcy Code establishes a clear, mandatory, and non-negotiable hierarchy for the distribution of estate property. In a Chapter 7 liquidation, 11 U.S.C. § 726(a) creates a strict payment "waterfall." At the very top of this waterfall, with first-priority status, are administrative expenses allowed under § 503(b). *See* 11 U.S.C. § 726(a)(1) (incorporating priorities from § 507(a)(2)). These claims, which include both the Trustee's professional fees and Muszynski's pending claim, must be paid in full before junior creditors receive any distribution from unencumbered estate assets. If the estate is administratively insolvent, § 726(b) requires that all administrative claims be paid *pro rata*.

11. The proposed Agreement is a flagrant attempt to dismantle this statutory scheme. The proceeds from the sale of the IP Litigation Assets are property of the estate under 11 U.S.C. § 541. Yet the Agreement seeks to funnel 80-85% of these unencumbered funds directly to HPS, a prepetition creditor, unlawfully elevating HPS's claim over senior administrative claims.

12. The Supreme Court has unequivocally condemned such priority-skipping

arrangements. In *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451 (2017), the Court held that bankruptcy courts cannot approve settlements that distribute estate assets in a manner that contravenes the Code's fundamental priority rules. While *Jevic* involved a structured dismissal, its core holding—that the Code's distribution scheme is paramount—applies with even greater force to a Chapter 7 liquidation, where the sole purpose is to distribute assets according to the § 726 waterfall. The proposed Agreement is precisely the type of priority-violating distribution that *Jevic* prohibits.

13. The Trustee cannot do by private agreement what he is statutorily forbidden from doing in a distribution. The Agreement is an impermissible *de facto* plan of distribution that subordinates first-priority administrative claimants to a prepetition creditor and grants the Trustee's own professionals a super-priority status not authorized by the Code. This Court lacks the authority to approve a settlement that so brazenly violates the plain language and core principles of the Bankruptcy Code.

### B. The Trustee Has Breached His Fiduciary Duties of Loyalty and Care.

14. A Chapter 7 trustee is a fiduciary for the estate and *all* of its creditors. *See* 11 U.S.C. § 704(a)(1). The Third Circuit has stressed that a trustee's "most important duty is to maximize the value of the estate for the benefit of all creditors." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996). This requires the trustee to treat all creditor classes with fairness and to avoid any hint of self-dealing. *See In re BH & P Inc.*, 949 F.2d 1300, 1315 (3d Cir.

1991) (discussing the "lofty responsibility" of a trustee and the need to avoid even the appearance of a conflict of interest). The Agreement before this Court is a manifest breach of these duties.

### C. The Agreement Constitutes a Rehypothecation Nightmare.

15. The Trustee's actions are analogous to the prohibited financial practice of rehypothecation. In a rehypothecation scheme, a financial intermediary improperly uses assets pledged by a client as collateral for its own purposes, shifting risk to the client while securing its own benefit. Here, the Trustee is acting as an intermediary who has taken control of estate assets—assets in which *all* creditors have an interest according to their statutory priority—and is attempting to re-pledge and re-use them for his own benefit and the benefit of a single favored creditor. By structuring a deal that guarantees payment of his own and related fees from HPS's collateral while diverting other estate assets away from senior administrative creditors, the Trustee shifts the entire risk of an administratively insolvent estate onto those very creditors he is duty-bound to protect. This is a profound breach of trust that perverts the Trustee's role from a fiduciary for all to a liquidating agent for one.

### D. The Waiver of Surcharge Rights and Grant of Releases is an Abdication of Duty.

16. The Trustee's breaches are further evidenced by his gratuitous waiver of the estate's rights under 11 U.S.C. § 506(c). A surcharge is permitted when a trustee expends estate funds to preserve or dispose of a secured creditor's

collateral. The very administrative expenses being incurred—including special counsel fees and Muszynski's resulting administrative claim—are ostensibly for the purpose of monetizing assets for the primary benefit of HPS. This is the classic scenario for which § 506(c) was designed. The Trustee's waiver of this valuable estate right for no discernible consideration is an indefensible breach of his duty to maximize the estate. Likewise, granting HPS a global release before conducting any meaningful investigation into its claims and liens is a premature abdication of the Trustee's duty under § 704(a) to scrutinize claims and pursue estate causes of action.

### E. The Agreement Fails the Standard for Approval Under Bankruptcy Rule 9019.

17. Before approving a settlement, this Court must find that it is "fair, reasonable, and in the interests of the estate." *In re Martin*, 91 F.3d at 393. This requires an independent judgment after considering four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved…; and (4) the paramount interest of the creditors." *Id.* (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)). The proposed Agreement fails this test spectacularly.

18. The fourth factor—"the paramount interest of the creditors"—is dispositive. A settlement that provides a 100% payout to the Trustee and his professionals from a dedicated fund, an 80-85% recovery to one prepetition

creditor, and a 0% payout to all other administrative creditors cannot, by any rational measure, be in the "paramount interest of the creditors." It is in the interest of no one but the Trustee and HPS. Such a result is fundamentally unfair, inequitable, and contrary to the public policy underpinning the Bankruptcy Code.

19. The Trustee asks this Court to approve a deal that is nothing more than a capitulation to HPS in exchange for a guaranteed fee. This falls far "below the lowest point in the range of reasonableness" and cannot be approved. *See In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 497 (Bankr. S.D.N.Y. 1991).

### *F. The Agreement is the Fruit of a Poisoned Tree Due to Improper Disclosure Regarding Litigation Funding.*

19. The integrity of the bankruptcy system depends on complete and candid disclosure by professionals. Federal Rule of Bankruptcy Procedure 2014(a) and this District's Local Rule 2014-1 impose an "uncompromising" affirmative duty on professionals to disclose "all of the person's connections with the debtor, creditors, [and] any other party in interest." This is not a passive requirement; it is a "continuing obligation" to ensure transparency and allow the Court and all parties to scrutinize potential conflicts. *In re Arazi*, 492 B.R. 587, 592 (Bankr. D. Mass. 2013) [e5442cdd:18]. A third-party litigation funder who finances estate litigation and stands to share in the recovery is unequivocally a "party in interest" whose connection must be disclosed.

20. As detailed in Muszynski's prior objections, the IP Litigation is bankrolled by a concealed foreign entity, PML Process Management Limited, LLC of Cyprus ("PML"). Special Counsel's verified statement under Rule 2014 was materially false and misleading for its complete omission of PML's role. The failure to make a "full, candid, and complete disclosure" is, by itself, a sufficient ground for the disqualification of the professional and disgorgement of all fees. *In re Park-Helena Corp.*, 63 F.3d 877, 882 (9th Cir. 1995).

21. A secret arrangement where counsel's loyalty is divided between the estate and an outside funder is the very definition of such an adverse interest. *See In re Intech Capital Corp.*, 87 B.R. 232, 236 (Bankr. D. Conn. 1988) [e5442cdd:6].

22. The "Special Counsel" admittedly is the ultimate beneficial owner of 42 Ventures, LLC, one of 39 indispensably joined creditors including Screen Media Ventures, LLC, and represents Benjamin Perino, the ultimate beneficial owner of PML Process Management Limited, LLC of Cyprus ("PML").

23. A search of Trustee Miller's PACER records evidences no other matter involved contracting with a Special Counsel that considered the forward-looking requirements for third=party litigation funding. Mr. Culpepper's un-sworn hearing statements on 8 January 2025 were carefully parsed so as not to invite inquiry regarding mandatory disclosures yet unquestionably confirm he represents, at least, one party with interests adverse to the estate among the group of thirty-nine (39) indispensably joined creditors (including Screen Media Ventures, LLC), in addition to PML. In transcript, Doc. #552, p.20:2-11, Mr. Culpepper makes pyrrhic

distinctions between Screen Media Ventures, LLC to ignore his and the Trustee's relationship to PML (which is not an attorney, finances his litigation, fee-splits his revenue, and directs the litigation), disclosure of which is mandatory. Screen Media Ventures is indispensably joined with thirty-eight (38) other entities (39 total), and likewise, PML. Culpepper's tap dancing obfuscates truthful disclosure:

```
 2        MR. MUSZYNSKI:  Is PML going to receive a split of
 3   revenues from those that you collect by settlement demand
 4   letters on behalf of Screen Media Ventures or Chicken Soup for
 5   the Soul or the other joined creditors, nearly 38 of them?
 6        MR. CULPEPPER:  For Screen Media Ventures or Chicken
 7   Soup, not to the extent I know.  I don't believe so.  As
 8   respect to your other claimants, nothing has to do with this
 9   case and I don't think it's relevant to the question here.  So
10   I would, I decline to answer that part because it's subject to
11   attorney-client privilege.
```

24. In related litigation in S.D. Florida, E.D. Texas, and D. Puerto Rico, Culpepper's filings admit PML to be *the* interested party exerting litigation control.

25. The ramifications for such a profound failure to disclose are severe and absolute. The failure to make a "full, candid, and complete disclosure" is, by itself, a sufficient ground for the disqualification of the professional and disgorgement of all fees, even if the omission was negligent and regardless of whether an actual conflict of interest existed. *Smith v. Marshall (In re Hot Tin Roof, Inc.)*, 205 B.R. 1000, 1003 (B.A.P. 1st Cir. 1997) [e5442cdd:3]. This is a punitive measure designed to uphold the integrity of the system. *In re Park-Helena Corp.*, 63 F.3d 877, 882 (9th Cir. 1995) [e5442cdd:7]. In this District, courts have held that a

professional's failure to comply with the disclosure requirements of Rule 2014 warrants the denial of all compensation. *In re eToys, Inc.*, 331 B.R. at 196.

26. The Trustee permitted Special Counsel access to nearly $70,000.00 in estate funds encumbered in his IOLTA, ahead of preferred creditors' claims and without an accounting proving the $70,000.00 was solely Screen Media Ventures, LLC's fees and costs versus the thirty-eight (38) other indispensably joined creditors' money.

27. This foundational defect renders the proposed Sharing Agreement void. The Agreement seeks to distribute proceeds from litigation managed by a professional whose very retention was procured through a defective and misleading disclosure. This Court cannot approve a settlement that flows from a retention order that is itself voidable for failure to comply with the mandatory disclosure rules. The Agreement is the fruit of a poisoned tree and must be rejected.

## VI. CONCLUSION

28. The proposed Sharing Agreement is a textbook example of an impermissible settlement that seeks to reorder the Bankruptcy Code's priorities to favor a single creditor and the estate's own fiduciaries. It violates the absolute priority rule, represents a profound breach of the Trustee's most basic duties, fails the standard for approval under Rule 9019, and is tainted by a failure to disclose a prohibited litigation funding arrangement. It is not fair, reasonable, or in the best interest of the Estate.

29. **WHEREFORE**, Charles Muszynski respectfully requests that this Court DENY the Trustee's Motion for Approval of Sharing Agreement in its entirety, require the Trustee and his Special Counsel to disclose all information related to third-party litigation funding related to the 39 indispensably joined creditors in Muszynski's (and others') litigation, and grant such other and further relief as is just and proper.

October 10, 2025

Respectfully submitted,

*/s/ Charles Muszynski/*
Charles Muszynski, pro se
usfilefolder@protonmail.com
P. O. Box 1423
Basseterre
St. Kitts and Nevis
West Indies

## CERTIFICATE OF SERVICE

The undersigned respectfully submits this filing and certifies it was served on the parties and entities named in the case by way of the Court's CM/ECF system and/or email after courier delivery to the Clerk of Court on the date below for upload and inclusion in the Court's record as of the date indicated.

10 October 2025

*/s/ Charles Muszynski/*
Charles Muszynski, pro se
usfilefolder@protonmail.com
P. O. Box 1423
Basseterre
St. Kitts and Nevis
West Indies