# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| CSS ENTERTAINMENT INC. (f/k/a CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC.) *et al.* [1], | Case No. 24-11442 (MFW) |
| | (Jointly Administered) |
| Debtors. | Re. Dkt. No. 687 |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS TO TRUSTEE'S MOTION FOR APPROVAL OF SHARING AGREEMENT BETWEEN CHAPTER 7 TRUSTEE AND AGENT FOR THE PREPETITION LENDERS PROVIDING FOR (I) DETERMINATIONS AND ALLOWANCE OF SECURED LENDER'S PRE-PETITION CLAIMS AND LIENS; (II) TRUSTEE'S SALE OF CERTAIN OF DEBTORS' ASSETS AND SECURED LENDER'S COLLATERAL; (III) SPECIFIED CARVE-OUT FROM SECURED LENDER LIENS; AND OTHER MATTERS CONCERNING THE TRUSTEE'S CONTEMPLATED SALES AND CERTAIN SETTLEMENTS**

Brian Skajem, Lisa Papatzimas, Erin Tuttle, David Ellender, Dara Cohen, Matt Loze, Jessica Stoeckeler, Heather Bundy, Carey Campbell, Kelly Burke Hopkins, Courtney Smith (collectively, the "Former Employee Putative Class"), by and through their undersigned counsel, representing former employees and others similarly situated, hereby file this limited objection and reservation of rights ("Limited Objection") to the *Trustee's Motion for Approval of Sharing Agreement Between Chapter 7 Trustee and Agent for the Prepetition Lenders Providing for (I) Determinations and Allowance of Secured Lender's Pre-Petition Claims and Liens; (II) Trustee's Sale of Certain of Debtors' Assets and Secured Lender's Collateral; (III) Specified Carve-Out*

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); CSS Entertainment, Inc. (f/k/a Chicken Soup for the Soul Entertainment Inc.) (0811); CSS Studios, LLC (f/k/a Chicken Soup for the Soul Studios, LLC) (9993); CSS Television Group, LLC (f/k/a Chicken Soup for the Soul Television Group, LLC); Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508).

17581730/4

*from Secured Lender Liens; and Other Matters Concerning the Trustee's Contemplated Sales and Certain Settlements* [D.I. 687] (the "Sharing Agreement") and respectfully states as follows:

## RELEVANT BACKGROUND

1. On June 28 and 29, 2024 (as applicable, the "Petition Date"), each of the debtors (the "Debtors") filed voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Court") for relief under Chapter 11 of the Bankruptcy Code, commencing the above-captioned bankruptcy cases (the "Bankruptcy Cases"). On July 10, 2024, the Court entered an *Order Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code and Granting Related Relief* [D.I. 120], making July 10, 2024, the "Conversion Effective Date."

2. On July 11, 2024, George L. Miller (the "Trustee") was appointed as the interim chapter 7 trustee for the estates (the "Estates") of the Debtors and is currently serving in that role permanently pursuant to section 702(d) of the Bankruptcy Code.

3. Prior to the Conversion Effective Date, the Debtors operated one of the largest ad-supported video-on-demand platforms in the U.S., offering premium entertainment content to value-conscious consumers through multiple streams. The Debtors had ceased all operations by the Conversion Effective Date.

4. On September 6, 2024, the Former Employee Putative Class commenced adversary proceeding number 24-50128 against Chicken Soup for the Soul Entertainment, Inc., Redbox Automated Retail, LLC, William J. Rouhana, Jr., Amy Newmark, HPS Partners, LLC Anthem Blue Cross, and Does 1-500 (collectively, the "Defendants") [Skajem Adv. D.I. 1]. On February 3, 2025, the Former Employee Putative Class moved for leave to amend its complaint [Skajem Adv. D.I. 18], which the Court granted on May 6, 2025 [Skajem Adv. D.I. 29]. The First Amended Complaint was filed on May 8, 2025 [Skajem Adv. D.I. 30] (the "First Amended Complaint").

5.      On October 4, 2024, the Former Employee Putative Class filed proof of claim no. 157 ("Claim No. 157") asserting wage, severance, and related claims arising from the Debtors' prepetition and postpetition conduct. The Former Employee Putative Class holds significant unsecured claims against the Estates and thus constitutes a creditor constituency with a direct and substantial interest in the administration and value of the Estates' remaining assets. The Former Employee Putative Class previously pursued class litigation asserting, among other things, violations of employment and wage laws. While that litigation provides factual context for the claims asserted in Claim No. 157, the Former Employee Putative Class appears here solely in its capacity as creditors of the Estates.

6.      On March 12, 2025 the Trustee filed the *Complaint for (I) Breach Of Fiduciary Duty; (II) Aiding and Abetting Breach of Fiduciary Duty; (III) Avoidance of Fraudulent Transfers; (IV) Recovery of Illegal Dividends; (V) Damages for Non-Payment of Employee Wages, Benefits and Payroll Taxes; (VI) Equitable Subordination; And (VII) Disallowance Of Claims,* thereby commencing an adversary proceeding against former officers and directors, including William J. Rouhana, Jr. and Amy L. Newmark. Adv. Case No. 25-50399 (MFW) [Miller Adv. D.I 1] (the "Trustee's Complaint"). Specifically, the Trustee's Complaint seeks relief related to thirteen causes of action, including claims for, among other things, the Defendants' alleged breach of fiduciary duties, fraudulent transfers under the Bankruptcy Code, violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), and failure to pay wages, medical benefits and payroll taxes.

7.      On October 1, 2025, the Trustee filed the Sharing Agreement, which provides that the Trustee acknowledges and agrees, based upon a certain accounting to be provided by the

Agent[2] to the Trustee, that the claims of the Prepetition Secured Parties arising under the Credit Agreement and the Postpetition Funding are in the aggregate principal amount of not less than $500,000,000, plus accrued and unpaid interest thereon and any fees, premiums, expenses and disbursements (including attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees), costs, charges, indemnities, and other obligations thereunder (collectively, the "Allowed HPS Claim").

## LIMITED OBJECTION

8. The Former Employee Putative Class acknowledges that the Trustee's complaint alleges, among other causes of action, claims under the FLSA against certain former officers, including William Rouhana Jr., and Amy Newmark for alleged unpaid employee wages, medical benefits, and payroll taxes. The Former Employee Putative Class intends to cooperate with the Trustee regarding any overlapping factual or legal issues. However, the Former Employee Putative Class's claims are more expansive in scope, encompassing multiple years of unpaid wages, salaries, and related compensation continuing through the Conversion Effective Date. While areas of overlap may exist, the Former Employee Putative Class maintains independent and more expansive claims that must be separately preserved. Notably, both the Trustee's Complaint and the Former Employee Putative Class's claims seek recovery from similar groups of defendants and, if successful, will give rise to competing interests in the proceeds available under the Estates' director and officer liability insurance policies (the "D&O Policies").

9. Given these overlapping but distinct interests, the Former Employee Putative Class has a strong interest in ensuring that (a) potential estate assets, including claims against third parties

---

[2] Capitalized terms not otherwise defined in this Limited Objection shall have the meanings provided in the Sharing Agreement.

Case 24-11442-MFW   Doc 692   Filed 10/16/25   Page 5 of 9

such as HPS Investment Partners, LLC ("HPS"), are preserved and maximized for the benefit of all creditors, and (b) the Estates' D&O Policies remain available to respond to potential claims against insureds, including those asserted or to be asserted for the benefit of the Former Employee Putative Class.

10. The Former Employee Putative Class does not object to the Trustee's efforts to coordinate information sharing in connection with overlapping matters, provided that such coordination does not prejudice other stakeholders or impair third-party rights. However, the proposed Sharing Agreement appears to include provisions that could (a) release or compromise potential claims the Estates may have against HPS relating to the failure to provide interim DIP financing—which directly contributed to the discharge of employees without pay, and is reportedly valued at approximately $500 million; and (b) adversely affect access to or availability of the Estates' D&O Policies, which may provide a source of recovery for the Former Employee Putative Class.

11. To the extent the proposed Sharing Agreement or any related release could impair, limit, or "lock up" proceeds of the D&O Policies, the Former Employee Putative Class expressly objects. Those policies may provide coverage for claims asserted, or to be asserted, by the Former Employee Putative Class against certain insureds. Any agreement that could prejudice such rights, whether directly or indirectly, should not be approved without appropriate notice, disclosure, and opportunity to be heard by affected parties.

12. The Former Employee Putative Class further objects to any provision that could restrict their ability to obtain, through appropriate discovery channels, materials to which the Trustee or HPS may have access under the proposed Sharing Agreement. The Trustee's digital

5
17581730/4

access to documents and data must not interfere with, limit, or delay the Former Employee Putative Class's discovery in the pending litigation or in any future actions they may pursue.

        **A.    The Proceeds of the D&O Policies Is a Pool of Recovery for the Former Employee Putative Class.**

13. While courts assess whether D&O policy proceeds are property of the estate based on the specific policy language and coverage scope, that question is not the central issue here. *See, e.g., In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010); *In re CyberMedica, Inc.*, 280 B.R. 12, 16 (Bankr. D. Mass. 2002).

14. The Former Employee Putative Class holds claims that may be covered under the D&O Policies. Accordingly, any agreement that could impair, restrict, or "lock up" access to the D&O proceeds should be scrutinized and not approved absent full disclosure and a showing that the arrangement benefits all creditors, including the Former Employee Putative Class.

15. The stay relief motion filed by certain former officers [D.I. 635] (the "Stay Relief Motion") further highlights the need for transparency. The Stay Relief Motion explains that the Debtors obtained a primary D&O policy and several excess layers of coverage to protect their directors, officers, and, in certain defined circumstances, employees acting on behalf of the Debtors. It further states that the primary policy requires both the insurer and the Debtors "not to oppose or object to any efforts by an Insured Person to obtain relief from any stay or injunction." *See* Stay Relief Motion ¶¶16-20.

16. The Former Employee Putative Class takes no position on the merits of the Stay Relief Motion but notes that it underscores the need for transparency and caution before approving any agreement that could affect rights to D&O proceeds. The D&O Policies appear to provide coverage to multiple categories of insureds (including the Debtors) raising potential tension among parties with competing claims to the available coverage. Accordingly, any sharing arrangement

that could alter, restrict, or prioritize access to D&O proceeds should not be approved absent clear evidence that it will not prejudice the rights of other insureds or creditors, including the Former Employee Putative Class.

### B. The Proposed Settlement is Unfair to Non-Settling Creditors

17. Courts addressing whether to approve a compromise under Bankruptcy Rule 9019 must determine if the settlement is "fair, reasonable, and in the interest of the estate." *In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) (citing *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)); *see also In re Exide Techs.*, 303 B.R. 48, 67 (Bankr. D. Del. 2003) (stating "the Bankruptcy Court [must] determine that a proposed compromise forming part of a reorganization plan is fair and equitable") (internal citations omitted). The Debtors, or here, the Trustee—bear the burden of showing, by a preponderance of the evidence, that the settlement satisfies the factors set forth in *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also In re Capmark Fin. Group, Inc.*, 438 B.R. 471, 509 (Bankr. D. Del. 2010).

18. Under the "fair and equitable" standard, courts consider the impact of a settlement not only on the settling parties, but also on non-settling creditors. *See, e.g., Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 645 (3d Cir. 2006). Courts are especially sensitive to creditors who were not part of any negotiations, but whose rights were nonetheless affected by the settlement. *See, e.g., In re Nutritional Sourcing Corp.*, 398 B.R. 816, 836-38 (Bankr. D. Del. 2008) (denying plan confirmation because certain trade creditors whose rights were severely impacted by settlement were not afforded "meaningful participation" in negotiation of settlement).

19. As a constituency whose recovery depends on the preservation and maximation of Estate assets—the Former Employee Putative Class submits that the proposed Sharing Agreement fails to demonstrate that it is fair and equitable to all affected parties. Releasing potential estate

claims against HPS—particularly those related to the failure to fund interim DIP financing—without disclosure of the underlying analysis or valuation deprives stakeholders of the ability to assess whether the proposed compromise is reasonable or in the best interests of the Estates.

## RESERVATION OF RIGHTS

20. The Former Employee Putative Class reserves all rights with respect to (i) any proposed release of claims against HPS or other third parties; (ii) any future allocation or use of any of the D&O Policies' proceeds; (iii) discovery and information-sharing issues arising under or in connection with the Sharing Agreement; and (iv) any additional objections that may become apparent upon further review of the proposed agreement or related materials.

WHEREFORE, for the foregoing reasons, the Former Employee Putative Class respectfully requests that the Court (a) deny approval of the Sharing Agreement absent modifications addressing the concerns set forth herein, or alternatively, (b) condition approval on express preservation of the Former Employee Putative Class's rights and interests, and (c) grant such other and further relief as is appropriate.

[*Signature page to follow*]

Dated: October 16, 2025
Wilmington, Delaware

**MORRIS JAMES LLP**

*/s/ Siena B. Cerra*
Eric J. Monzo (DE Bar No. 5214)
Tara C. Pakrouh (DE Bar No. 6192)
Cortlan S. Hitch (DE Bar No. 6720)
Siena B. Cerra (DE Bar No. 7290)
3205 Avenue North Blvd., Suite 100
Wilmington, DE 19803
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: emonzo@morrisjames.com
tpakrouh@morrisjames.com
chitch@morrisjames.com
scerra@morrisjames.com

-and-

**ALDERLAW, PC**
Michael Alder (CA Bar No. 170381)
Elana R. Levine, Esq. (CA Bar No. 234155)
12800 Riverside Drive, Second Floor
Valley Village, CA 91607
Telephone: (310) 275-9131
Facsimile: (310) 275-9132
E-mail: cmalder@alderlaw.com
llevine@alderlaw.com
mtanzer@alderlaw.com

*Counsel to the Former Employee Putative Class*