**Exhibit A**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHICKEN SOUP FOR THE SOUL<br>ENTERTAINMENT, INC., *et al.*<br><br>Debtors.[1] | Chapter 7<br><br>Case No. 24-11442 (MFW)<br><br>(Jointly Administered) |

**DECLARATION OF ALEXEY PAZUKHA IN SUPPORT OF**
**HPS INVESTMENT PARTNERS, LLC'S OMNIBUS REPLY TO OBJECTIONS**
**TO TRUSTEE'S MOTION FOR APPROVAL OF SHARING AGREEMENT**
**BETWEEN CHAPTER 7 TRUSTEE AND AGENT FOR THE PREPETITION LENDERS**

I, Alexey Pazukha, hereby make this declaration pursuant to 28 U.S.C. § 1746:

1. I submit this declaration (the "Declaration") in support of *HPS Investment Partners, LLC's Omnibus Reply to Objections to Trustee's Motion for Approval of Sharing Agreement Between Chapter 7 Trustee and Agent for the Prepetition Lenders*, filed contemporaneously herewith (the "Reply").[2]

2. I am a Managing Director at HPS Investment Partners, LLC ("HPS" or the "Agent"). I am authorized to submit this Declaration on behalf of HPS.

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Reply or in the *Trustee's Motion for Approval of Sharing Agreement Between Chapter 7 Trustee and Agent for the Prepetition Lenders Providing for (I) Determinations and Allowance of Secured Lender's Prepetition Claims and Liens; (II) Trustee's Sale of Certain of Debtors' Assets and Secured Lender's Collateral; (III) Specified Carve-Out from Secured Lender Liens; and Other Matters Concerning the Trustee's Contemplated Sales and Certain Settlements* [Docket No. 687] (the "Motion").

3. I am over the age of 18 years. Except as otherwise indicated, the statements in this Declaration are based on my personal knowledge, my discussions with other individuals at HPS, my review of relevant documents, and my opinion based on my experience. If called upon to testify, I would testify competently to the facts set forth herein.

4. HPS serves as the administrative agent under that certain Amended and Restated Credit Agreement, dated as of August 11, 2022 (as amended, amended and restated, supplemented, or otherwise modified from time to time, the "Credit Agreement") and that certain Amended and Restated Collateral Agreement, dated as of August 11, 2022, and the Supplement to the Amended and Restated Collateral Agreement, dated as of July 26, 2023 (collectively, as amended, amended and restated, supplemented, or otherwise modified from time to time, the "Collateral Agreement") among Debtor Chicken Soup for the Soul Entertainment, Inc. ("CSSE" and, together with its Debtor affiliates, the "Debtors") and Redbox Automated Retail, LLC as borrowers (together with CSSE, the "Borrowers"); certain lender parties thereto, including certain HPS-managed lender parties (the "Prepetition Lenders"); and the Agent (together with the Prepetition Lenders, the "Prepetition Secured Parties").

## The Credit Agreement and Collateral Agreement

5. Pursuant to the Credit Agreement, HPS administers an $80 million revolving credit facility and a $325 million term loan facility, each provided by the Prepetition Lenders. The Prepetition Secured Parties' obligations to extend credit under the Credit Agreement were conditioned upon execution and delivery of the corresponding Collateral Agreement.

6. Pursuant to the Collateral Agreement, the Debtors pledged certain collateral, and/or provided certain security interests, to the Agent for the benefit of the Prepetition Lenders (the "Pledged Collateral"). I understand that the Pledged Collateral accounts for substantially all of the Debtors' assets, including, among other things, the Debtors' intellectual property, accounts and

accounts-receivables, and books and records. The Prepetition Secured Parties' security interests in the Pledged Collateral were perfected. *See, e.g.*, *HPS Investment Partners, LLC's Motion for Relief from the Automatic Stay* and exhibits thereto [Docket No. 243]. I understand that the Debtors affirmed the validity, perfection, and priority of the liens granted pursuant to the Credit Agreement and the Collateral Agreement.

7. To my knowledge, the Prepetition Lenders represent the primary holders of the senior secured debt of the Debtors. As of the Petition Date the Debtors owed the Prepetition Lenders in excess of $500 million, plus accrued and unpaid interest thereon and any fees, premium, expenses, costs, charges, and other obligations incurred under the Credit Agreement.

### The Postpetition Funding

8. Before the Court converted the Debtors' chapter 11 cases to these cases under chapter 7 of the Bankruptcy Code, certain of the Prepetition Secured Parties agreed to provide the only debtor-in-possession financing to the Debtors in these cases (the "DIP Funding"). The DIP Funding was extended pursuant to the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 85] (the "Interim DIP Order").

9. I understand that the Interim DIP Order authorized the DIP Funding to be used only for certain permitted uses, as described in the Interim DIP Order. I further understand that the Interim DIP Order authorized the Debtors to obtain the DIP Funding subject to the terms and conditions set forth in the term sheet attached to the Interim DIP Order (the "DIP Term Sheet"). Pursuant to the DIP Term Sheet, I understand that a condition precedent to the Prepetition Secured

Parties' funding of any portion of the DIP Funding was HPS's receipt of a borrowing notice from the Debtors.

10. Based on my review of records, HPS received three such borrowing notices from the Debtors, each in July 2024, totaling $3,295,656.60. HPS funded all such amounts in response to the borrowing notices. HPS did not receive any further borrowing notices.

11. Separately, on July 31, 2024, the Prepetition Secured Parties funded $200,000 to the chapter 7 trustee (the "Trustee") for the sole purpose of paying outstanding D&O insurance premiums owed by the Debtors.

## The Sharing Agreement

12. For more than a year, the Agent, on behalf of itself and the Prepetition Lenders, has engaged in extensive arm's-length negotiations and discussions with the Trustee concerning a consensual resolution to these chapter 7 cases. I was involved in those negotiations. The negotiations culminated in the Sharing Agreement.

13. Absent the Sharing Agreement, I understand that the Trustee would be unable to administer the Debtors' estates for the benefit of creditors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Date: November 7, 2025

/s/ *Alexey Pazukha*
Alexey Pazukha
Managing Director
HPS Investment Partners, LLC