IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CSS ENTERTAINMENT INC. (f/k/a CHICKEN SOUP FOR THE SOUL ENTERTAINMENT INC.), *et al* [1]<br><br>Debtors. | Chapter 7<br><br>Case No. 24-11442 (MFW)<br>(Jointly Administered)<br><br>Re D.I.  687 |

**ORDER GRANTING TRUSTEE'S MOTION FOR APPROVAL OF SHARING AGREEMENT BETWEEN CHAPTER 7 TRUSTEE AND AGENT FOR THE PREPETITION LENDERS PROVIDING FOR (I) DETERMINATIONS AND ALLOWANCE OF SECURED LENDER'S PRE-PETITION CLAIMS AND LIENS; (II) TRUSTEE'S SALE OF CERTAIN OF DEBTORS' ASSETS AND SECURED LENDER'S COLLATERAL; (III) SPECIFIED CARVE-OUT FROM SECURED LENDER LIENS; AND OTHER MATTERS CONCERNING THE TRUSTEE'S CONTEMPLATED SALES AND CERTAIN SETTLEMENTS**

Upon consideration of the *Trustee's Motion for Approval of Sharing Agreement Between Chapter 7 Trustee and Agent for the Prepetition Lenders Providing for (I) Determinations and Allowance of Secured Lender's Pre-Petition Claims and Liens; (II) Trustee's Sale of Certain of Debtors' Assets and Secured Lender's Collateral; (III) Specified Carve-Out From Secured Lender Liens; and Other Matters Concerning the Trustee's Contemplated Sales and Certain Settlements* [D.I. 687] (the "Motion"),[2] the Court having reviewed the Motion; the Court finding that the relief

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); CSS Entertainment, Inc. (f/k/a Chicken Soup for the Soul Entertainment Inc.) (0811); CSS Studios, LLC (f/k/a Chicken Soup for the Soul Studios, LLC) (9993); CSS Television Group, LLC (f/k/a Chicken Soup for the Soul Television Group, LLC); Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508).

[2] Unless otherwise defined herein, capitalized terms shall have the meanings given in the Motion or in the *Motion of Midcap Financial Trust for Relief from the Automatic Stay Under 11 U.S.C. § 362(d) To Permit MidCap to Exercise Rights and Remedies* [D.I. 245], as applicable.

requested in the Motion is in the best interests of the Debtors' Estates, creditors, and other parties in interest; notice of the Motion and the hearing thereon having been appropriate under the circumstances; and after due deliberation and cause appearing therefor

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED as set forth herein. Except as otherwise expressly provided in this Order, any objection to the Motion that has not been withdrawn, waived, resolved, or settled, is hereby denied and overruled on the merits.

2. The Sharing Agreement attached hereto as Exhibit "1" (the "Sharing Agreement"), incorporated herein, and as amended by this Order is hereby APPROVED.

3. The Sharing Agreement is hereby amended as follows:

    i. MidCap shall be a Party to the Sharing Agreement.

    ii. The Trustee acknowledges and agrees that the claims of MidCap arising under the MidCap Sonar Facility and the Prepetition APA Documents are in the aggregate principal amount of not less than $20,706,784, plus accrued and unpaid interest thereon and any fees, premium, expenses and disbursements (including attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees), costs, charges, indemnities, and other obligations thereunder (collectively, the "Allowed MidCap Claim").

    iii. Paragraph 12 is modified to state that the sale described therein shall be free and clear of the security interests of MidCap (in addition to HPS).

    iv. The 80% of Net Proceeds in Paragraph 13.B.ii.(2) and the 85% of Net Proceeds in Paragraph 13.B.iii.(2) shall be allocated to HPS and MidCap, respectively, pro rata based on the relative amounts of the Allowed HPS Claim and Allowed MidCap Claim at the time of distribution; provided, however, that the first $500,000 of Net Proceeds payable to HPS and MidCap shall, prior to such pro rata allocation to HPS and MidCap, be payable to HPS as reimbursement for amounts paid by HPS to AWS for access to the AWS Accounts.[3]

    v. Paragraphs 15 and 16 are modified to (i) provide that MidCap shall also be entitled to a distribution as a general unsecured creditor to the extent the

---

[3] "AWS" and "AWS Accounts" are as defined in the *Order Granting Amazon Web Services, Inc.'s Motion for Relief from the Automatic Stay to Terminate Executory Contract with Chicken Soup for the Soul Entertainment, Inc.* [Docket No. 576]

      proceeds from the MidCap Debtor Collateral are not sufficient to fully pay the Allowed MidCap Claim (the "<u>Allowed MidCap Deficiency Claim</u>") and (ii) incorporate MidCap, the Allowed MidCap Claim, the MidCap Debtor Collateral, and the Allowed MidCap Deficiency Claim, where applicable.

    vi.    MidCap shall provide a release, on behalf of itself and the other lenders under the MidCap Sonar Facility, of the Trustee Parties consistent with the release provided by HPS in Paragraph 19.A.

    vii.    Paragraph 20 is modified to include the following noticing information for MidCap:

> MidCap Financial Trust
> c/o MidCap Financial Services, LLC
> 7255 Woodmont Avenue, Suite 300
> Bethesda, Maryland 20814
> Attention: Matthew Pappano with a copy to Lisa Lenderman
> Email: mpappano@midcapfinancial.com; llenderman@midcapfinacial.com
>
> with a copy to MidCap's counsel:
>
> Paul Hastings LLP
> 1999 Avenue of the Stars
> Los Angeles, California 90067
> Attention: Susan Z. Williams, Esq. and Paul Sagan, Esq.
> Email: susanwilliams@paulhastings.com; paulsaga@paulhastings.com

    viii.    Paragraph 28 is modified to provide that Paragraph 17 shall be implemented by the Trustee, HPS, and MidCap.

4.     Nothing in this Order, or the Sharing Agreement, shall be construed to release, waive or discharge, any and all direct claims (including any claims for contribution or indemnity), debts, refunds, demands, liabilities, agreements, obligations, controversies, actions, causes of action, suits, costs, attorneys' fees, expenses, damages, liens, and judgments, of any nature whatsoever, at law or in equity or otherwise, whether asserted or unasserted, whether known or unknown, that any party in interest or other third-party may have or hold against any or all of the Trustee, the Trustee Parties (as defined in the Motion), the Prepetition Secured Parties (as defined in the Motion), or the Claimant Parties (as defined in the Motion), all of which are fully preserved

and not being released, waived or discharged. Nothing in this Order, or the Sharing Agreement, shall prejudice, limit or otherwise modify the rights, interests or remedies of the Directors Guild of America, Inc., Screen Actors Guild-American Federation of Television and Radio Artists, or Writers Guild of America, West, Inc. (collectively, the "<u>Guilds</u>"); *provided however,* that this reservation for the Guilds shall not be construed to prejudice the Trustee's use of Cash Collateral and Carve-Out as provided in the Sharing Agreement.

5. The Trustee is authorized to enter into, and take any and all actions necessary to implement, the Sharing Agreement in accordance with the terms and conditions set forth in the Sharing Agreement.

6. Notwithstanding any Bankruptcy Rule or other applicable law that may be interpreted to the contrary, this Order shall take effect and be fully enforceable immediately upon entry.

Dated: March 5th, 2026  
Wilmington, Delaware

MARY F. WALRATH  
UNITED STATES BANKRUPTCY JUDGE

LEGAL\113397484\4 6010823/00617521