## EXHIBIT 1

**Stipulation**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| CSS ENTERTAINMENT INC. (f/k/a CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC.) *et al.*, | Case No. 24-11442-MFW |
| | (Jointly Administered) |
| Debtors.[1] | |

## STIPULATION BETWEEN AND AMONG
## THE CHAPTER 7 TRUSTEE, AMAZON WEB SERVICES, INC.,
## AND SLF 2016 RB HOLDINGS, L.P REGARDING ACCESS AGREEMENT

Chapter 7 Trustee George L. Miller, in his capacity as Chapter 7 Trustee for the Debtors (the "Chapter 7 Trustee"), SLF 2016 RB Holdings, L.P ("HPS"), and Amazon Web Services, Inc. ("AWS," and together with the Chapter 7 Trustee and HPS collectively, the "Parties") hereby agree and enter into this stipulation (this "Stipulation") as follows:

## RECITALS

1.     On June 28, 2024 (the "Petition Date"), the CSS Entertainment, Inc. ("CSS") and several of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et. seq.* in the United States Bankruptcy Court for the District of Delaware (the "Court"). On July 10, 2024, the Court entered the *Order Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code and Granting Related Relief* (the "Conversion Order") [Dkt. 120]. Thereafter, the Chapter 7 Trustee was appointed as the chapter 7 Trustee for the Debtors' bankruptcy estates.

---

[1]    The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); CSS Entertainment, Inc. (f/k/a Chicken Soup for the Soul Entertainment Inc.) (0811); CSS Studios, LLC (f/k/a Chicken Soup for the Soul Studios, LLC) (9993); CSS Television Group, LLC (f/k/a Chicken Soup for the Soul Television Group, LLC); Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508).

2.      AWS is a worldwide leader in the provision of cloud computing and storage services.  AWS provided cloud computing and storage services to the Debtors according to the terms of an AWS Customer Agreement (the "AWS Agreement"), a copy of which can found at the following link: https://aws.amazon.com/agreement/.  Certain of the Debtors' cloud computing and storage accounts with AWS are identified by account numbers ending in "9831", "9114", "9701", "7966", "9742", "7899", "6353", and "1264".  The AWS Account identified by main payor account number ending in "29114" has certain linked accounts ending in the following numbers: "91635", "75283", "20549", "29876", "49408", "65040", "20253", "70846", "22957", "41012", "33530", "87868", "77566", "55348", "50694".  The AWS Account identified by main payor account number ending in "89831" has certain linked accounts ending in the following numbers: "53637", "30865", "57301", "22842","18890", "76612", "82133", "01037", "52570", "06667".  Together the main payor accounts, together with all linked accounts are hereafter defined as the "AWS Accounts."

3.      Pursuant to 11 U.S.C. § 365(d)(1), the AWS Agreement was deemed rejected on September 8, 2024, which was sixty days from the Conversion Order.

4.      Pursuant to the *Order Granting Amazon Web Services, Inc.'s Motion for Relief from the Automatic Stay to Terminate Executory Contract with Chicken Soup for the Soul Entertainment, Inc.* [Dkt. No. 576] in the Bankruptcy Case, which provided for the rejection of the AWS Agreement, AWS thereafter suspended the AWS Accounts.

5.      In connection with the Debtors' chapter 11 cases converting to chapter 7, HPS obtained relief from the automatic stay of 11 U.S.C. § 362 and subsequently by foreclosure acquired certain of the Debtors' assets, including the information contained in the AWS accounts set forth on Exhibit B to that certain Access Agreement attached to this Stipulation as **Exhibit A** (such agreement, the "Agreement").

7.      The Chapter 7 Trustee consented to AWS providing HPS access to those AWS Accounts identified in the Agreement. In order for HPS to access the AWS Accounts, it is

necessary for AWS to reset associated AWS account credentials and provide new credentials to HPS.

8.    Pursuant to AWS internal policy to maintain security concerns, AWS will not disclose, reset, or provide account credentials and information associated with an AWS customer account to a party absent entry of an appropriate court order.

9.    Notwithstanding the fact that the AWS Agreement was rejected and the AWS Accounts were suspended, AWS has entered into the Agreement with HPS to set forth the terms on which HPS can obtain access to one or more AWS Accounts.  The Agreement provides that HPS' access to the "Remaining AWS Accounts" requires entry of an order in a form acceptable to AWS that authorizes AWS to reset account credentials in order to facilitate HPS' access.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED:**

A.    The Parties agree to perform under the terms and conditions of the Agreement upon the Court's entry of an order approving this Stipulation (the "Order").

B.    AWS shall have no further obligation of performance under the AWS Agreement with respect to the AWS Accounts other than as specified in the Order and the Agreement.

Dated: February 11, 2026

**COZEN O'CONNOR**

By: */s/ John T. Carroll*
John T. Carroll, III (DE No. 4060)
1201 North Market Street, Suite 1001
Wilmington, DE 19801
Tel: (302) 295-2028
Email:  jcarroll@cozen.com

*Counsel for Chapter 7 Trustee*

**MILBANK LLP**

By: */s/ Matt Brod*
Matt Brod
55 Hudson Yards
New York, NY 10001
Tel: (212) 530-5460
Email:  mbrod@milbank.com

*Counsel for SLF 2016 RB Holdings, L.P*

**K&L GATES LLP**

By: */s/ Matthew B. Goeller*
Matthew B. Goeller (#6283)
600 N. King St, Suite 901
Wilmington, DE 19801
Tel: (302) 416-7080
Email: matthew.goeller@klgates.com

*Counsel for Amazon Web Services, Inc.*

1605878245.7

## **EXHIBIT A**

**Access Agreement**

## ACCESS AGREEMENT

**THIS ACCESS AGREEMENT** ("Agreement") is made and entered into as of January 28, 2026 (the "Effective Date"), by and between SLF 2016 RB Holdings, L.P, ("HPS"), and Amazon Web Services, Inc. ("AWS").

**WHEREAS**, AWS and CSS Entertainment, Inc. ("CSS") entered into the AWS Customer Agreement related to the AWS Accounts (as defined below), a copy of which is attached to this Agreement as Exhibit A (and together with all appendices, order forms, subsequent service orders, exhibits, addenda, schedules and amendments thereto are collectively referred to herein as the "AWS Agreement");

**WHEREAS**, according to the terms of the AWS Agreement, AWS provided cloud services, technology products, and computing services to CSS in connection with AWS account number(s) set forth on Exhibit B hereto (collectively, the "AWS Account(s)"), and as more particularly described in the AWS Agreement;

**WHEREAS**, CSS and several of its affiliates (collectively, the "Debtors") filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code on June 28, 2024 ("Filing Date"), in the United States Bankruptcy Court for the District of Delaware (the "Court"), which cases are being jointly administered under Bankruptcy Case No. 24-11442 (the "Bankruptcy Case");

**WHEREAS**, in connection with the Bankruptcy Case converting to a Chapter 7 liquidation proceeding, HPS acquired certain of the Debtors' assets in the Bankruptcy Case, including the information contained in the AWS accounts set forth on Exhibit B hereto (the "AWS Accounts");

**WHEREAS**, AWS obtained entry of the *Order Granting Amazon Web Services, Inc.'s Motion for Relief from the Automatic Stay to Terminate Executory Contract with Chicken Soup for the Soul Entertainment, Inc.* [Dkt. No. 576] in the Bankruptcy Case, which provided for the rejection of the AWS Agreement, and AWS thereafter suspended the AWS Accounts;

**WHEREAS**, by email dated September 10, 2025, the Court-appointed Trustee of the Debtors' bankruptcy estates, George L Miller, consented to AWS to providing HPS access to the AWS Accounts;

**WHEREAS**, after negotiations between AWS and HPS regarding amounts to be paid by HPS to afford access to the AWS Accounts, AWS and HPS have entered into this Agreement to govern the terms by which HPS may access the AWS Accounts;

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, HPS and AWS, intending to be legally bound, hereby agree as follows:

1.    (A) Upon (I) receipt of an Email Adress Change identity Verification Form and Affidavit for AWS Account ending in *9831 and (II) payment of the Cure Amount,



and subject to the obligations in this Agreement, AWS shall (x) provide the email account listed in Part I of Exhibit B hereto access to the AWS Account ending in *9831, with such access being subject to the terms of the AWS Agreement.

(B) From and after the assumption of the AWS Accounts in accordance with Section 3(a) below, AWS shall promptly prepare and submit to the Court a stipulation or motion requesting a court order which, among other things, provides that AWS is authorized to reset account credentials for the AWS Accounts listed in Part II of Exhibit B (such AWS Accounts, the "<u>Remaining AWS Accounts</u>") and provide access to the Remaining AWS Accounts to HPS pursuant to the terms hereof. The first date on which access is provided pursuant to this clause (B), the "<u>AWS Remaining Account Access Date</u>").

2.     HPS agrees to be bound by all terms and conditions of the AWS Agreement. HPS agrees to fulfill all obligations under the AWS Agreement, including payment obligations set forth in the AWS Agreement and (without duplication) this Agreement, and will timely pay all invoices received from AWS.  All invoices will be sent to the notice address set forth on the signature page hereto.

3.     HPS and AWS agree as follows:

   a. **The Cure Amount**.   HPS shall pay AWS $250,000.00 (the "<u>Cure Amount</u>") in full satisfaction of the Debtors' cure obligations for all amounts owed under the AWS Accounts.  Upon payment of the Cure Amount all obligations of the Debtors under the AWS Agreements shall be deemed satisfied and HPS shall assume the Debtor's AWS Accounts.

   b. **Monthly Payments for Service Charges**.  For each month that the AWS Accounts remain active, HPS shall make payments in respect of each active AWS Account in accordance with the applicable AWS Agreement.

   c. For the avoidance of doubt, (i) AWS shall not charge and HPS shall not be responsible for any service or use charges associated with the Remaining AWS Accounts prior to the Remaining AWS Account Access Date and (ii) payment of the Cure Amount shall constitute a full and complete payment and cure of all amounts owing in respect of the AWS Accounts (including the Remaining AWS Accounts) prior to the AWS Remaining Account Access Date.

4.     HPS agrees to waive, release and discharge AWS from any and all claims, liabilities, causes of action, damages, obligations, costs and attorneys' fees, arising out of or related to the AWS Agreements that exist as of the date of this Agreement, including but not limited to any and all avoidance action claims under chapter 5 of the Bankruptcy Code.

5.     HPS further agree that AWS is not obligated to provide any services related to the

1603663467.16



AWS Accounts, other than the obligations set forth herein, following the date of the Agreement.  To the extent HPS requires further services related to the AWS Accounts beyond those set forth in this Agreement or the AWS Agreement, such services shall require a subsequent agreement agreed to by AWS.

6.    This Agreement and all of the rights and obligations hereunder, including matters of construction, validity and performance, shall be governed by the laws of the State of Washington.

7.    This Agreement and the representations, warranties and covenants herein contained shall inure to the benefit of the Parties hereto, their successors and assigns as permitted by the AWS Agreement and shall survive the execution and delivery hereof.

8.    This Agreement may be terminated by HPS on two (2) business days' prior written notice. HPS' payment obligations in Section 3 shall survive the termination of this Agreement.

9.    This Agreement may be executed in two or more counterparts and shall be effective when one or more of such counterparts has been executed and delivered by all parties hereto (although it is not necessary that any single counterpart be executed by all parties hereto, and all such counterparts shall be deemed to constitute but one and the same instrument). This Agreement may be executed by digital (*i.e.*, PDF or DocuSign) signature and such signature will constitute an original for all purposes.

1603663467.16

legal

**IN WITNESS WHEREOF,** HPS and AWS have executed this Agreement by and through their respective duly authorized officers as of the Effective Date.

**SLF 2016 RB Holdings, L.P.**

By: _Alexey Pazukha_____

Name: _Alexey Pazukha_____

Title: _Managing Director_____

Address:

SLF 2016 RB Holdings, L.P.
Attn: Alexey Pazukha
Tel: 1 (212) 287-6845
Email: alexey.pazukha@hpspartners.com

w/ a copy to

TOA Advisors
Attn: Asher Cohen
Tel: 1 (310) 595-4418
Email: asher.cohen@toaadvisors.com

**Amazon Web Services, Inc.**

DocuSigned by:

By: _E1317158A2424B3..._____

Name: _Antonio Masone_____

Title: _Authorized Signatory_____

4/4

legal

**Exhibit A**

**<u>AWS Agreement</u>**



TROTH 00053491 2026 TR



# AWS Customer Agreement

**For additional information related to each AWS Contracting Party, see the AWS Contracting Party FAQs.

*Please note that as of August 1, 2025, customers located in Indonesia contract with our Indonesia based AWS Contracting Party, as provided in Section 12. See the AWS Indonesia FAQs for more information.

## Last Updated: September 09, 2025

See What's Changed

This AWS Customer Agreement (this "**Agreement**") contains the terms and conditions that govern your access to and use of the Services (as defined below) and is an agreement between the applicable AWS Contracting Party specified in Section 12 below (also referred to as "**AWS**," "**we**," "**us**," or "**our**") and you or the entity you represent ("**you**" or "**your**"). This Agreement takes effect when you click an "I Accept" button or check box presented with these terms or, if earlier, when you use any of the Services (the "**Effective Date**"). You represent to us that you are lawfully able to enter into contracts (e.g., you are not a minor). If you are entering into this Agreement for an entity, such as the company you work for, you represent to us that you have legal authority to bind that entity. Please see Section 12 for definitions of certain capitalized terms used in this Agreement.



## 1. AWS Responsibilities

1.1 General. You may access and use the Services in accordance with this Agreement. Service Level Agreements and Service Terms apply to certain Services.

1.2 Third-Party Content. Third-Party Content may be used by you at your election. Third-Party Content is governed by this Agreement and, if applicable, separate terms and conditions accompanying such Third-Party Content, which terms and conditions may include separate fees and charges.

1.3 AWS Security. Without limiting Section 8 or your obligations under Section 2.2, we will implement reasonable and appropriate measures designed to help you secure Your Content against accidental or unlawful loss, access or disclosure.

1.4 Data Privacy. You may specify the AWS regions in which Your Content will be stored. You consent to the storage of Your Content in, and transfer of Your Content into, the AWS regions you select. We will not access or use Your Content except as necessary to maintain or provide the Services, or as necessary to comply with the law or a binding order of a governmental body. We will not (a) disclose Your Content to any government or third party or (b) move Your Content from the AWS regions selected by you; except in each case as necessary to comply with the law or a binding order of a governmental body. Unless it would violate the law or a binding order of a governmental body, we will give you notice of any legal requirement

or order referred to in this Section 1.4. We will only use your Account Information in accordance with the Privacy Notice, and you consent to such usage. The Privacy Notice does not apply to Your Content.

1.5 Notice of Changes to the Services. We may change or discontinue any of the Services from time to time. We will provide you at least 12 months' prior notice before discontinuing a material functionality of a Service that we make generally available to customers and that you are using. AWS will not be obligated to provide such notice under this Section 1.5 if the discontinuation is necessary to (a) address an emergency, or risk of harm to the Services or AWS, (b) respond to claims, litigation, or loss of license rights related to third party intellectual property rights, or (c) comply with law, but should any of the preceding occur AWS will provide you with as much prior notice as is reasonably practicable under the circumstances.

1.6 Notice of Changes to the Service Level Agreements. We may change, discontinue or add Service Level Agreements, provided, however, that we will provide at least 90 days' advance notice for adverse changes to any Service Level Agreement.

# 2. Your Responsibilities.

2.1 Your Accounts. You will comply with the terms of this Agreement and all laws, rules and regulations applicable to your use of the Services. To access the Services, you must have an AWS account associated with a valid email address and a valid form of payment. Unless explicitly permitted by the Service Terms, you will only create one account per email address. Except to the extent caused by our breach of this Agreement, (a) you are responsible for all activities that occur under your account, regardless of whether the activities are authorized by you or undertaken by you, your employees or a third party (including your contractors, agents or End Users), and (b) we and our affiliates are not responsible for unauthorized access to your account.

2.2 Your Content. You are responsible for Your Content. You will ensure that Your Content and your and End Users' use of Your Content or the Services will not violate any of the Policies or any applicable law.

2.3 Your Security and Backup. You are responsible for properly configuring and using the Services and otherwise taking appropriate action to secure, protect and backup your accounts and Your Content in a manner that will provide appropriate security and protection, which might include use of encryption to protect Your Content from unauthorized access and routinely archiving Your Content.

2.4 Log-In Credentials and Account Keys. AWS log-in credentials and private keys generated by the Services are for your internal use only and you will not sell, transfer or sublicense them to any other entity or person, except that you may disclose your private key to your agents and subcontractors performing work on your behalf.

2.5 End Users. You will be deemed to have taken any action that you permit, assist or facilitate any person or entity to take related to this Agreement, Your Content or use of the Services. You are responsible for End Users' use of Your Content and the Services, and for their compliance with your obligations under this Agreement. If you become aware of any violation of your obligations under this Agreement caused by an End User, you will immediately suspend access to Your Content and the Services by such End User. We do not provide any support or services to End Users unless we have a separate agreement with you or an End User obligating us to provide such support or services.



# 3. Fees and Payment.

3.1 Service Fees. We calculate and bill fees and charges monthly. We may bill you more frequently for fees accrued if we reasonably suspect that your account is fraudulent or at risk of non-payment. You will pay us the applicable fees and charges for use of the Services as described on the AWS Site using one of the payment methods we support. If there is a problem charging your default payment method, we may charge any other valid payment method associated with your account. All amounts payable by you under this Agreement will be paid to us without setoff or counterclaim, and without any deduction or withholding. Fees and charges for any new Service or new feature of a Service will be effective when we post updated fees and charges on the AWS Site, unless we expressly state otherwise in a notice. We may increase or add new fees and charges for any existing Services you are using by giving you at least 30 days' prior notice. We may elect to charge you interest at the rate of 1.5% per month (or the highest rate permitted by law, if less) on all late payments. If we suspend your account under Section 4.1 or terminate your use of the Services pursuant to Section 5.2(b)(ii), we may elect not to bill you for fees and charges after suspension unless your account is reinstated.

3.2 Taxes.

(a) Each party will be responsible, as required under applicable law, for identifying and paying all taxes and other governmental fees and charges (and any penalties, interest, and other additions thereto) that are imposed on that party upon or with respect to the transactions and payments under this Agreement. All fees payable by you are exclusive of Indirect Taxes, except where applicable law requires otherwise. We may charge and you will pay applicable Indirect Taxes that we are legally obligated or authorized to collect from you. You will provide such information to us as reasonably required to determine whether we are obligated to collect Indirect Taxes from you. We will not collect, and you will not pay, any Indirect Tax for which you furnish us a properly completed exemption certificate or a direct payment permit certificate for which we can claim an available exemption from such Indirect Tax. All payments made by you to us under this Agreement will be made free and clear of any deduction or withholding, as required by law. If any such deduction or withholding (including cross-border withholding taxes) is required on any payment, you will pay such additional amounts as are necessary so that the net amount received by us is equal to the amount then due and payable under this Agreement. We will provide you with such tax forms as are reasonably requested in order to reduce or eliminate the amount of any withholding or deduction for taxes in respect of payments made under this Agreement.

(b) If the applicable AWS Contracting Party is Amazon Web Services India Private Limited ("AWS India") (formerly known as Amazon Internet Services Private Limited), the parties agree that the provisions of this Section 3.2(b) will apply.

You acknowledge that AWS India may display the applicable fees and charges for the Services on the Site in USD (or such other currency as AWS India may deem fit). However, AWS India will invoice you in INR calculated and converted in accordance with the conversion rate determined by us on the date of invoice ("INR Equivalent Fees"). You will only be liable to pay the INR Equivalent Fees indicated in each invoice.

We will invoice you from our registered office at the address of your establishment (as registered with the tax authorities, if applicable) receiving the Services in accordance with the applicable indirect tax laws.

All fees and charges payable under this Agreement will be exclusive of applicable national, state or local indirect taxes ("Taxes") that AWS India is legally obligated to charge under applicable law. For the purpose of this clause, local indirect taxes include Goods and Services Tax ("GST"), which includes the Central Goods and Services Tax ("CGST"), the State Goods and Services Tax ("SGST"), the Union Territory Goods



and Services Tax ("UGST"), the Integrated Goods and Services Tax ("IGST") as may be applicable. The Taxes charged by AWS India will be stated in the invoice pursuant to applicable laws. AWS India may charge and you will pay any applicable Taxes, which are stated separately on the invoice. As per the statutory requirement under GST, you will provide all necessary information such as the correct GST registered address, legal name and GSTIN ("GST Information") in order for AWS India to issue correct GST invoices as per the applicable legal requirements. In the event, the GST invoice is incorrect, you will inform us in a timely manner, to enable AWS India to correct the GST tax invoice. AWS India will determine the place of supply for the Services based on the GST Information provided by you and accordingly, charge GST (CGST and SGST/UTGST or IGST) on its invoice. Any withholding taxes that may be applicable to the fees and charges payable to us are for our account. You will pay the fees and charges in our invoice in full (gross) without applying any withholding taxes. If you separately deposit applicable withholding taxes on such fees and charges to the applicable government treasury and issue us a withholding tax certificate evidencing such deposit, following receipt of the withholding tax certificate in original form, we will reimburse to you an amount equal to the taxes that are evidenced as deposited.

## 4. Temporary Suspension.

4.1 Generally. We may suspend your or any End User's right to access or use any portion or all of the Services immediately upon notice to you if we reasonably determine:

(a) your or an End User's use of the Services (i) poses a security risk to the Services or any third party, (ii) could adversely impact our systems, the Services or the systems or Content of any other AWS customer, (iii) could subject us, our affiliates, or any third party to liability, or (iv) could be fraudulent;



(b) you are, or any End User is, in material breach of this Agreement;

(c) you are in breach of your payment obligations under Section 3; or

(d) you have ceased to operate in the ordinary course, made an assignment for the benefit of creditors or similar disposition of your assets, or become the subject of any bankruptcy, reorganization, liquidation, dissolution or similar proceeding.

4.2 Effect of Suspension. If we suspend your right to access or use any portion or all of the Services:

(a) you will be responsible for all fees and charges you incur during the period of suspension that we bill to you; and

(b) you will not be entitled to any service credits under the Service Level Agreements for any period of suspension.

## 5. Term; Termination.

5.1 Term. The term of this Agreement will commence on the Effective Date and will remain in effect until terminated under this Section 5. Any notice of termination of this Agreement by either party to the other must include a Termination Date that complies with the notice periods in Section 5.2.

5.2 Termination.



(a) Termination for Convenience. You may terminate this Agreement for any reason by providing us notice and closing your account for all Services for which we provide an account closing mechanism. We may terminate this Agreement for any reason by providing you at least 30 days' advance notice.

(b) Termination for Cause.

(i) By Either Party. Either party may terminate this Agreement for cause if the other party is in material breach of this Agreement and the material breach remains uncured for a period of 30 days from receipt of notice by the other party. No later than the Termination Date, you will close your account.

(ii) By Us. We may also terminate this Agreement immediately upon notice to you:

(A) for cause if we have the right to suspend under Section 4 and the issue giving us the right to suspend either:

a. is not capable of being remedied; or

b. has not been remedied within 30 days of us suspending your service under Section 4.1;

(B) if our relationship with a third-party partner who provides software or other technology we use to provide the Services expires, terminates or requires us to change the way we provide the software or other technology as part of the Services; or

(C) in order to comply with the law or requests of governmental entities.

5.3 Effect of Termination.

(a) Generally. Upon the Termination Date:

(i) except as provided in Sections 5.3(a)(iv) and 5.3(b), all your rights under this Agreement immediately terminate;

(ii) you remain responsible for all fees and charges you have incurred through the Termination Date and are responsible for any fees and charges you incur during the post-termination period described in Section 5.3(b) that we bill to you;

(iii) you will immediately return or, if instructed by us, destroy all AWS Content in your possession; and

(iv) Sections 2.1, 3, 5.3, 6 (except Section 6.3), 7, 8, 9, 11 and 12 will continue to apply in accordance with their terms.

(b) Post-Termination. Unless we terminate your use of the Services pursuant to Section 5.2(b), during the 30 days following the Termination Date:

(i) we will not take action to remove from the AWS systems any of Your Content as a result of the termination; and

(ii) we will allow you to retrieve Your Content from the Services only if you have paid all amounts due under this Agreement.

For any use of the Services after the Termination Date, the terms of this Agreement will apply and you will pay the applicable fees at the rates under Section 3.



NORTH 00053491 2026 TR

# 6. Proprietary Rights.

6.1 Your Content. Except as provided in this Section 6, we obtain no rights under this Agreement from you (or your licensors) to Your Content. You consent to our use of Your Content to provide the Services to you and any End Users.

6.2 Adequate Rights. You represent and warrant to us that: (a) you or your licensors own all right, title, and interest in and to Your Content and Suggestions; (b) you have all rights in Your Content and Suggestions necessary to grant the rights contemplated by this Agreement; and (c) none of Your Content or End Users' use of Your Content or the Services will violate the Acceptable Use Policy.

6.3 Intellectual Property License. The Intellectual Property License applies to your use of AWS Content and the Services.

6.4 Restrictions. Neither you nor any End User will use the AWS Content or Services in any manner or for any purpose other than as expressly permitted by this Agreement. Neither you nor any End User will, or will attempt to (a) reverse engineer, disassemble, or decompile the Services or AWS Content or apply any other process or procedure to derive the source code of any software included in the Services or AWS Content (except to the extent applicable law doesn't allow this restriction), (b) access or use the Services or AWS Content in a way intended to avoid incurring fees or exceeding usage limits or quotas, or (c) resell the Services or AWS Content. The AWS Trademark Guidelines apply to your use of the AWS Marks. You will not misrepresent or embellish the relationship between us and you (including by expressing or implying that we support, sponsor, endorse, or contribute to you or your business endeavors). You will not imply any relationship or affiliation between us and you except as expressly permitted by this Agreement.

6.5 Suggestions. If you provide any Suggestions to us or our affiliates, we and our affiliates will be entitled ☆ to use the Suggestions without restriction. You hereby irrevocably assign to us all right, title, and interest in and to the Suggestions and agree to provide us any assistance we require to document, perfect, and maintain our rights in the Suggestions.

# 7. Indemnification.

7.1 General. To the extent permitted by applicable law, you will defend, indemnify, and hold harmless us, our affiliates and licensors, and each of their respective employees, officers, directors, and representatives from and against any Losses arising out of or relating to any third-party claim concerning: (a) your or any End Users' use of the Services (including any activities under your AWS account and use by your employees and personnel); (b) breach of this Agreement or violation of applicable law by you, End Users or Your Content; or (c) a dispute between you and any End User. You will reimburse us for reasonable attorneys' fees, as well as our employees' and contractors' time and materials spent responding to any third party subpoena or other compulsory legal order or process associated with third party claims described in (a) through (c) above at our then-current hourly rates.

7.2 Intellectual Property.

(a) Subject to the limitations in this Section 7, AWS will defend you and your employees, officers, and directors against any third-party claim alleging that the Services infringe or misappropriate that third party's intellectual property rights, and will pay the amount of any adverse final judgment or settlement.



(b) Subject to the limitations in this Section 7, you will defend AWS, its affiliates, and their respective employees, officers, and directors against any third-party claim alleging that any of Your Content infringes or misappropriates that third party's intellectual property rights, and will pay the amount of any adverse final judgment or settlement.

(c) Neither party will have obligations or liability under this Section 7.2 arising from infringement by combinations of the Services or Your Content, as applicable, with any other product, service, software, data, content or method. In addition, AWS will have no obligations or liability arising from your or any End User's use of the Services after AWS has notified you to discontinue such use. The remedies provided in this Section 7.2 are the sole and exclusive remedies for any third-party claims of infringement or misappropriation of intellectual property rights by the Services or by Your Content.

(d) For any claim covered by Section 7.2(a), AWS will, at its election, either: (i) procure the rights to use that portion of the Services alleged to be infringing; (ii) replace the alleged infringing portion of the Services with a non-infringing alternative; (iii) modify the alleged infringing portion of the Services to make it non-infringing; or (iv) terminate the allegedly infringing portion of the Services or this Agreement.

7.3 Process. The obligations under this Section 7 will apply only if the party seeking defense or indemnity: (a) gives the other party prompt written notice of the claim; (b) permits the other party to control the defense and settlement of the claim; and (c) reasonably cooperates with the other party (at the other party's expense) in the defense and settlement of the claim. In no event will a party agree to any settlement of any claim that involves any commitment, other than the payment of money, without the written consent of the other party.

# 8. Disclaimers.

THE SERVICES AND AWS CONTENT ARE PROVIDED "AS IS." EXCEPT TO THE EXTENT PROHIBITED BY LAW, OR TO THE EXTENT ANY STATUTORY RIGHTS APPLY THAT CANNOT BE EXCLUDED, LIMITED OR WAIVED, WE AND OUR AFFILIATES AND LICENSORS (A) MAKE NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE REGARDING THE SERVICES OR AWS CONTENT OR THE THIRD-PARTY CONTENT, AND (B) DISCLAIM ALL WARRANTIES, INCLUDING ANY IMPLIED OR EXPRESS WARRANTIES (I) OF MERCHANTABILITY, SATISFACTORY QUALITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT, OR QUIET ENJOYMENT, (II) ARISING OUT OF ANY COURSE OF DEALING OR USAGE OF TRADE, (III) THAT THE SERVICES OR AWS CONTENT OR THIRD-PARTY CONTENT WILL BE UNINTERRUPTED, ERROR FREE OR FREE OF HARMFUL COMPONENTS, AND (IV) THAT ANY CONTENT WILL BE SECURE OR NOT OTHERWISE LOST OR ALTERED.

# 9. Limitations of Liability.

9.1 Liability Disclaimers. EXCEPT FOR PAYMENT OBLIGATIONS UNDER SECTION 7, NEITHER AWS NOR YOU, NOR ANY OF THEIR AFFILIATES OR LICENSORS, WILL HAVE LIABILITY TO THE OTHER UNDER ANY CAUSE OF ACTION OR THEORY OF LIABILITY, EVEN IF A PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LIABILITY, FOR (A) INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES, (B) THE VALUE OF YOUR CONTENT, (C) LOSS OF PROFITS, REVENUES, CUSTOMERS, OPPORTUNITIES, OR GOODWILL, OR (D) UNAVAILABILITY OF THE SERVICES OR AWS CONTENT (THIS DOES NOT LIMIT ANY SERVICE CREDITS UNDER SERVICE LEVEL AGREEMENTS).



9.2 Damages Cap. EXCEPT FOR PAYMENT OBLIGATIONS UNDER SECTION 7, THE AGGREGATE LIABILITY UNDER THIS AGREEMENT OF EITHER AWS OR YOU, AND ANY OF OUR RESPECTIVE AFFILIATES OR LICENSORS, WILL NOT EXCEED THE AMOUNTS PAID BY YOU TO AWS UNDER THIS AGREEMENT FOR THE SERVICES THAT GAVE RISE TO THE LIABILITY DURING THE 12 MONTHS BEFORE THE LIABILITY AROSE; EXCEPT THAT NOTHING IN THIS SECTION 9 WILL LIMIT (A) YOUR OBLIGATION TO PAY AWS FOR YOUR USE OF THE SERVICES PURSUANT TO SECTION 3, OR ANY OTHER PAYMENT OBLIGATIONS UNDER THIS AGREEMENT, OR (B) ANY PARTY'S LIABILITY TO THE EXTENT SUCH LIABILITY CANNOT BE LIMITED UNDER APPLICABLE LAW.

# 10. Modifications to the Agreement.

We may modify this Agreement (including any Policies) at any time by posting a revised version on the AWS Site or by otherwise notifying you in accordance with Section 11.10. The modified terms will become effective upon posting or, if we notify you by email, as stated in the email message. By continuing to use the Services or AWS Content after the effective date of any modifications to this Agreement, you agree to be bound by the modified terms. It is your responsibility to check the AWS Site regularly for modifications to this Agreement. We last modified this Agreement on the date listed at the beginning of this Agreement.

# 11. Miscellaneous.

11.1 Assignment. You will not assign or otherwise transfer this Agreement or any of your rights and obligations under this Agreement, without our prior written consent. Any assignment or transfer in violation of this Section 11.1 will be void. We may assign this Agreement without your consent (a) in connection with a merger, acquisition or sale of all or substantially all of our assets, or (b) to any affiliate or as part of a corporate reorganization; and effective upon such assignment, the assignee is deemed substituted for AWS as a party to this Agreement and AWS is fully released from all of its obligations and duties to perform under this Agreement. Subject to the foregoing, this Agreement will be binding upon, and inure to the benefit of the parties and their respective permitted successors and assigns.

11.2 Entire Agreement. This Agreement incorporates the Policies by reference and is the entire agreement between you and us regarding the subject matter of this Agreement. This Agreement supersedes all prior or contemporaneous representations, understandings, agreements, or communications between you and us, whether written or verbal, regarding the subject matter of this Agreement (but does not supersede prior commitments to purchase Services such as Amazon EC2 Reserved Instances). None of the parties will be bound by any term, condition or other provision that is different from or in addition to the provisions of this Agreement (whether or not it would materially alter this Agreement) including for example, any term, condition or other provision (a) submitted by you in any order, receipt, acceptance, confirmation, correspondence or other document, (b) related to any online registration, response to any Request for Bid, Request for Proposal, Request for Information, or other questionnaire, or (c) related to any invoicing process that you submit or require us to complete. If the terms of this document are inconsistent with the terms contained in any Policy, the terms contained in this document will control, except that the Service Terms will control over this document.

11.3 Force Majeure. Except for payment obligations, neither party nor any of their affiliates will be liable for any delay or failure to perform any obligation under this Agreement where the delay or failure results



EXTH 00053491 2026 TR

from any cause beyond its reasonable control, including acts of God, labor disputes or other industrial disturbances, electrical or power outages, utilities or other telecommunications failures, earthquake, storms or other elements of nature, blockages, embargoes, riots, acts or orders of government, acts of terrorism, or war.

11.4 Governing Law. The Governing Laws, without reference to conflict of law rules, govern this Agreement and any dispute of any sort that might arise between you and us. The United Nations Convention for the International Sale of Goods does not apply to this Agreement.

11.5 Disputes. Any dispute or claim relating in any way to your use of the Services, or to any products or services sold or distributed by AWS will be adjudicated in the Governing Courts, and you consent to exclusive jurisdiction and venue in the Governing Courts, subject to the additional provisions below.

(a) If the applicable AWS Contracting Party is Amazon Web Services, Inc., Amazon Web Services Canada, Inc., Amazon Web Services Korea LLC, Amazon Web Services Singapore Private Limited or PT Amazon Web Services Indonesia, the parties agree that the provisions of this Section 11.5(a) will apply. Disputes will be resolved by binding arbitration, rather than in court, except that either party may elect to proceed in small claims court if your claims qualify. The Federal Arbitration Act and federal arbitration law apply to this Agreement, except that if Amazon Web Services Canada, Inc. is the applicable AWS Contracting Party the Ontario Arbitration Act will apply to this Agreement. There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow the terms of this Agreement as a court would. Before you may begin an arbitration proceeding, you must send a letter notifying us of your intent to pursue arbitration and describing your claim to our registered agent Corporation Service Company, 300 Deschutes Way SW, Suite 304, Tumwater, WA 98501. The arbitration will be conducted by the American Arbitration Association (AAA) under its commercial rules, which are available at www.adr.org or by calling 1-800-778-7879. Payment of filing, administration and arbitrator fees will be governed by the AAA commercial fee schedule. We and you agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action. We and you further agree that the underlying award in arbitration may be appealed pursuant to the AAA's Optional Appellate Arbitration Rules. If for any reason a claim proceeds in court rather than in arbitration we and you waive any right to a jury trial. Notwithstanding the foregoing we and you both agree that you or we may bring suit in court to enjoin infringement or other misuse of intellectual property rights.



(b) If the applicable AWS Contracting Party is Amazon Web Services South Africa Proprietary Limited, the parties agree that the provisions of this Section 11.5(b) will apply. Disputes will be resolved by arbitration in accordance with the then-applicable rules of the Arbitration Foundation of Southern Africa, and judgment on the arbitral award must be entered in the Governing Court. The Arbitration Act, No. 42 of 1965 applies to this Agreement. The arbitration will take place in Johannesburg. There will be three arbitrators. The fees and expenses of the arbitrators and the administering authority, if any, will be paid in equal proportion by the parties.

**(c) If the applicable AWS Contracting Party is Amazon AWS Serviços Brasil Ltda., the parties agree that the provisions of this Section 11.5(c) will apply. Disputes will be resolved by binding arbitration, rather than in court, in accordance with the then-applicable Rules of Arbitration of the International Chamber of Commerce, and judgment on the arbitral award may be entered in any court having jurisdiction. The arbitration will take place in the City of São Paulo, State of São Paulo, Brazil. There will be three arbitrators. The fees and expenses of the arbitrators and the administering authority, if any, will be paid in equal proportion by the parties. The parties agree that the existence of and**

legal

**information relating to any such arbitration proceedings will not be disclosed by either party and will constitute confidential information. The Governing Courts will have exclusive jurisdiction for the sole purposes of (i) ensuring the commencement of the arbitral proceedings; and (ii) granting conservatory and interim measures prior to the constitution of the arbitral tribunal.**

(d) If the applicable AWS Contracting Party is Amazon Web Services Australia Pty Ltd, the parties agree that the provisions of this Section 11.5(d) will apply. Disputes will be resolved by arbitration administered by the Australian Center for International Commercial Arbitration ("ACICA") in accordance with the then-applicable ACICA Arbitration Rules, and judgment on the arbitral award may be entered in any court having jurisdiction. The arbitration will take place in Sydney, Australia. There will be three arbitrators. The fees and expenses of the arbitrators and the administering authority, if any, will be paid in equal proportion by the parties. The parties agree that the existence of and information relating to any such arbitration proceedings will not be disclosed by either party and will constitute confidential information.

(e) If the applicable AWS Contracting Party is Amazon Web Services New Zealand Limited, the parties agree that the provisions of this Section 11.5(e) will apply. Disputes will be resolved by arbitration administered by the New Zealand Dispute Resolution Centre ("NZDRC") in accordance with the then-applicable Arbitration Rules of NZDRC, and judgment on the arbitral award may be entered in any court having jurisdiction. The arbitration will take place in Auckland, New Zealand. There will be three arbitrators. The fees and expenses of the arbitrators and the administering authority, if any, will be paid in equal proportion by the parties. The parties agree that the existence of and information relating to any such arbitration proceedings will not be disclosed by either party and will constitute confidential information.

(f) If the applicable AWS Contracting Party is Amazon Web Services Malaysia Sdn. Bhd. (Registration No. 201501028710 (1154031-W)), the parties agree that the provisions of this Section 11.5(f) will apply.  Disputes will be resolved by arbitration administered by the Singapore International Arbitration Centre ("SIAC") in accordance with the then-applicable Arbitration Rules of SIAC, and judgment on the arbitral award may be entered in any court having jurisdiction. The arbitration will take place in Singapore. There will be three arbitrators. The fees and expenses of the arbitrators and the administering authority, if any, will be paid in equal proportion by the parties. The parties agree that the existence of and information relating to any such arbitration proceedings will not be disclosed by either party and will constitute confidential information.

(g) If the applicable AWS Contracting Party is AWS India, the parties agree that the provisions of this Section 11.5(g) will apply. Disputes will be resolved by binding arbitration, rather than in court. Arbitration will be conducted by a panel consisting of three (3) arbitrators, with one (1) nominated by each party and the third chosen by the two (2) arbitrators so nominated. The decision and award will be determined by the majority of the panels and shall be final and binding upon the parties. The arbitration will be conducted in accordance with the provisions of the Arbitration and Conciliation Act, 1996 of India, as may be in force from time to time. The arbitration proceedings will be conducted in English, and the seat of the arbitration will be New Delhi. The cost of the arbitration, including fees and expenses of the arbitrator, shall be shared equally by the parties, unless the award otherwise provides. The courts at New Delhi shall have the exclusive jurisdiction for all arbitral applications. The Parties agree that the existence of and information relating to any such arbitration proceedings will not be disclosed by either party. Notwithstanding the foregoing, any party may seek injunctive relief in any court of competent jurisdiction for any actual or alleged infringement of such party's, its affiliates' or any third party's intellectual property or other proprietary rights.

(h) If the applicable AWS Contracting Party is AWS Turkey Pazarlama Teknoloji ve Danışmanlık Hizmetleri Limited Şirketi, the parties agree that the provisions of this Section 11.5(h) will apply. Disputes will be resolved by arbitration administered by the International Chamber of Commerce International Court of Arbitration (the "ICC Court") in accordance with the then-applicable arbitration rules (the "ICC Rules").The arbitration proceedings will be conducted in English, and the seat of arbitration will be Zurich. There will be three arbitrators. Each party will appoint one arbitrator in accordance with the ICC Rules. Within 30 days of the appointment of the co-arbitrators, the two appointed arbitrators will appoint the third arbitrator as the president of the arbitral tribunal. If the twoappointed arbitrators fail to appoint a third arbitrator as the president within such 30 day period, then the ICC Court will appoint the president. The parties agree that the existence of and information relating to any such arbitration proceedings will not be disclosed by either party and will constitute confidential information.

11.6 Trade Compliance. In connection with this Agreement, each party will comply with all applicable import, re-import, sanctions, anti-boycott, export, and re-export control laws and regulations, including all such laws and regulations that apply to a U.S. company, such as the Export Administration Regulations, the International Traffic in Arms Regulations, and economic sanctions programs implemented by the Office of Foreign Assets Control. For clarity, you are solely responsible for compliance related to the manner in which you choose to use the Services or AWS Content, including your transfer and processing of Your Content, the provision of Your Content to End Users, and the AWS region in which any of the foregoing occur. You represent and warrant that you and your financial institutions, or any party that owns or controls you or your financial institutions, are not subject to sanctions or otherwise designated on any list of prohibited or restricted parties, including but not limited to the lists maintained by the United Nations Security Council, the U.S. Government (e.g., the Specially Designated Nationals List and Foreign Sanctions Evaders List of the U.S. Department of Treasury, and the Entity List of the U.S. Department of Commerce), the European Union or its Member States, or other applicable government authority.

11.7 Independent Contractors; Non-Exclusive Rights. We and you are independent contractors, and this Agreement will not be construed to create a partnership, joint venture, agency, or employment relationship. Neither party, nor any of their respective affiliates, is an agent of the other for any purpose or has the authority to bind the other. Both parties reserve the right (a) to develop or have developed for it products, services, concepts, systems, or techniques that are similar to or compete with the products, services, concepts, systems, or techniques developed or contemplated by the other party, and (b) to assist third party developers or systems integrators who may offer products or services which compete with the other party's products or services.

11.8 Language. All communications and notices made or given pursuant to this Agreement must be in the English language. If we provide a translation of the English language version of this Agreement, the English language version of the Agreement will control if there is any conflict.

11.9 Confidentiality and Publicity. You may use AWS Confidential Information only in connection with your use of the Services or AWS Content as permitted under this Agreement. You will not disclose AWS Confidential Information during the Term or at any time during the 5-year period following the end of the Term. You will take all reasonable measures to avoid disclosure, dissemination or unauthorized use of AWS Confidential Information, including, at a minimum, those measures you take to protect your own confidential information of a similar nature. You will not issue any press release or make any other public communication with respect to this Agreement or your use of the Services or AWS Content.

11.10 Notice.

(a) To You. We may provide any notice to you under this Agreement by:



(i) posting a notice on the AWS Site; or

(ii) sending a message to the email address then associated with your account.

Notices we provide by posting on the AWS Site will be effective upon posting and notices we provide by email will be effective when we send the email. It is your responsibility to keep your email address current. You will be deemed to have received any email sent to the email address then associated with your account when we send the email, whether or not you actually receive the email.

(b) To Us. To give us notice under this Agreement, you must contact AWS by facsimile transmission or personal delivery, overnight courier or registered or certified mail to the facsimile number or mailing address, as applicable, listed for the applicable AWS Contracting Party in Section 12 below. We may update the facsimile number or address for notices to us by posting a notice on the AWS Site. Notices provided by personal delivery will be effective immediately. Notices provided by facsimile transmission or overnight courier will be effective one business day after they are sent. Notices provided registered or certified mail will be effective three business days after they are sent.

11.11 No Third-Party Beneficiaries. Except as set forth in Section 7, this Agreement does not create any third-party beneficiary rights in any individual or entity that is not a party to this Agreement.

11.12 U.S. Government Rights. The Services and AWS Content are provided to the U.S. Government as "commercial services," "commercial computer software," "commercial computer software documentation," and "technical data" with the same rights and restrictions generally applicable to the Services and AWS Content. If you are using the Services and AWS Content on behalf of the U.S. Government and these terms fail to meet the U.S. Government's needs or are inconsistent in any respect with federal law, you will immediately discontinue your use of the Services and AWS Content. The terms "commercial service" "commercial computer software," "commercial computer software documentation," and "technical data" are defined in the Federal Acquisition Regulation and the Defense Federal Acquisition Regulation Supplement. 

11.13 No Waivers. The failure by us to enforce any provision of this Agreement will not constitute a present or future waiver of such provision nor limit our right to enforce such provision at a later time. All waivers by us must be in writing to be effective.

11.14 Severability. If any portion of this Agreement is held to be invalid or unenforceable, the remaining portions of this Agreement will remain in full force and effect. Any invalid or unenforceable portions will be interpreted to effect and intent of the original portion. If such construction is not possible, the invalid or unenforceable portion will be severed from this Agreement but the rest of the Agreement will remain in full force and effect.

11.15 Account Country Specific Terms. You agree to the following modifications to the Agreement that apply to your AWS Contracting Party as described below:

(a) If the applicable AWS Contracting Party is Amazon Web Services Australia Pty Ltd, the parties agree as follows:

(i) If the Services are subject to any statutory guarantees under the Australian Competition and Consumer Act 2010, then to the extent that any part of this Agreement is unenforceable under such Act, you agree that a fair and reasonable remedy to you will be limited to, at our election, either: (i) supplying the Services again; or (ii) paying for the cost of having the Services supplied again.



(ii) If this Agreement is a "consumer contract" or "small business contract" as defined in the Australian Competition and Consumer Act 2010:

a. Section 7.1 will not apply to the extent the applicable Losses or damages are caused by AWS's gross negligence or criminal misconduct. For these purposes, "gross negligence" means an act or omission by an employee who has authority to bind AWS that is negligent and a wilful and significant disregard of an obvious and material risk.

b. If we are required to give prior notice under Section 1.5 or Section 3, we will give you this notice by email or a reasonably substitutable alternative means. If we modify this Agreement under Section 10 in a way that is materially adverse to you (as reasonably determined by AWS), we will give you at least 30 days' prior notice of the modification by email or a reasonably substitutable alternative means.

(b) If the applicable AWS Contracting Party is Amazon Web Services Japan G.K., the parties agree as follows:

(i) The following sentence is added at the end of Section 6.5 (Suggestions):

"The foregoing assignment includes the assignment of the rights provided under Article 27 (Rights of Translation, Adaptation, etc.) and Article 28 (Right of the Original Author in the Exploitation of a Derivative Work) of the Copyright Act of Japan, and you agree not to exercise your moral rights against us, our affiliates or persons who use the Suggestions through the consent of us or our affiliates."

(ii) The following sentences are added at the end of Section 9 (Limitation of Liability):

"THE DISCLAIMER OR THE DAMAGES CAP IN THIS SECTION MAY NOT BE APPLIED TO DAMAGES CAUSED BY EITHER PARTY'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT IF SUCH DISCLAIMER OR THE  DAMAGES CAP ARE DEEMED AGAINST PUBLIC POLICY UNDER ARTICLE 90 OF THE CIVIL CODE. IN THAT EVENT, THE SCOPE OF THE DISCLAIMER SHALL BE NARROWLY CONSTRUED IN SUCH MANNER AND THE DAMAGES CAP MAY BE INCREASED BY SUCH MINIMUM AMOUNT SO THAT THE DISCLAIMER OR THE DAMAGES CAP HEREUNDER WOULD NOT BE DEEMED AGAINST PUBLIC POLICY UNDER ARTICLE 90 OF THE CIVIL CODE."

(c) If the applicable AWS Contracting Party is AWS Turkey Pazarlama Teknoloji ve Danışmanlık Hizmetleri Limited Şirketi, the parties agree as follows:

(i) The following sentence is added at the end of Section 3.2(a) (Taxes):

"If we are required to pay any stamp tax in relation to this Agreement or any other document related to this Agreement, we may charge you and you will pay us 50% of the amounts of any stamp tax paid by us."

(d) If the applicable AWS Contracting Party is Amazon Web Services Malaysia Sdn. Bhd., the parties agree as follows:

Section 9.1 (Liability Disclaimers) is deleted and replaced with the following:

"9.1 Liability Disclaimers. EXCEPT FOR PAYMENT OBLIGATIONS UNDER SECTION 7, NEITHER AWS NOR YOU, NOR ANY OF THEIR AFFILIATES OR LICENSORS, WILL HAVE LIABILITY TO THE OTHER UNDER ANY CAUSE OF ACTION OR THEORY OF LIABILITY, EVEN IF A PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LIABILITY, FOR (A) INDIRECT, INCIDENTAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES, (B) THE VALUE OF YOUR CONTENT, (C) LOSS OF PROFITS, REVENUES, CUSTOMERS, OPPORTUNITIES, OR



GOTH 00053491 2026 TR

GOODWILL, OR (D) UNAVAILABILITY OF THE SERVICES OR AWS CONTENT (THIS DOES NOT LIMIT ANY SERVICE CREDITS UNDER SERVICE LEVEL AGREEMENTS)."

(e) If the applicable AWS Contracting Party is Amazon Web Services EMEA SARL, and your Account Country is located within the European Union, the parties agree as follows:

Section 7.1 (Indemnification; General) will not apply to the extent the applicable Losses or damages are caused by AWS's gross negligence or willful misconduct. In addition, none of the disclaimers or damage caps set forth in Section 9 (Limitations of Liability) will exclude or limit either party's liability for such party's gross negligence or willful misconduct.

# 12. Definitions.

"Acceptable Use Policy" means the policy located at https://aws.amazon.com/aup (and any successor or related locations designated by us), as may be updated by us from time to time.

"Account Country" is the country associated with your account. If you have provided a valid tax registration number for your account, then your Account Country is the country associated with your tax registration. If you have not provided a valid tax registration, then your Account Country is the country where your billing address is located, except if you have a credit card associated with your AWS account that is issued in a different country and your contact address is also in that country, then your Account Country is that different country.

"Account Information" means information about you that you provide to us in connection with the creation or administration of your AWS account. For example, Account Information includes names, usernames, phone numbers, email addresses and billing information associated with your AWS account.

"API" means an application program interface.

"AWS Confidential Information" means all nonpublic information disclosed by us, our affiliates, business partners, or our or their respective employees, contractors or agents that is designated as confidential or that, given the nature of the information or circumstances surrounding its disclosure, reasonably should be understood to be confidential. AWS Confidential Information includes: (a) nonpublic information relating to our or our affiliates or business partners' technology, customers, business plans, promotional and marketing activities, finances and other business affairs; (b) third-party information that we are obligated to keep confidential; and (c) the nature, content and existence of any discussions or negotiations between you and us or our affiliates. AWS Confidential Information does not include any information that: (i) is or becomes publicly available without breach of this Agreement; (ii) can be shown by documentation to have been known to you at the time of your receipt from us; (iii) is received from a third party who did not acquire or disclose the same by a wrongful or tortious act; or (iv) can be shown by documentation to have been independently developed by you without reference to the AWS Confidential Information.

"AWS Content" means APIs, WSDLs, sample code, software libraries, command line tools, proofs of concept, templates, advice, information, programs (including credit programs) and any other Content made available by us and our affiliates related to use of the Services or on the AWS Site and other related technology (including any of the foregoing that are provided by our personnel). AWS Content does not include the Services or Third-Party Content.

"AWS Contracting Party" means the party identified in the table below, based on your Account Country. If you change your Account Country to one that is identified with a different AWS Contracting Party, you



agree that the AWS Contracting Party identified with your new Account Country is your AWS Contracting Party, without any further action required by either party.

# AWS Contracting Party

| Account Country | AWS Contracting Party | Facsimile | Mailing Address |
|---|---|---|---|
| Australia | Amazon Web Services Australia Pty Ltd (ABN: 63 605 345 891) | N/A | Level 37, 2-26 Park Street, Sydney, NSW, 2000, Australia |
| Brazil* | Amazon AWS Serviços Brasil Ltda. | N/A | A. Presidente Juscelino Kubitschek, 2.041, Torre E - 18th and 19th Floors, Vila Nova Conceicao, São Paulo, Brasil |
| Canada | Amazon Web Services Canada, Inc. | N/A | 120 Bremner Blvd, 26th Floor, Toronto, Ontario, M5J 0A8, Canada |
| India | Amazon Web Services India Private Limited (formerly known as Amazon Internet Services Private Limited), having its registered office at | 011-47985609 | Unit Nos. 1401 to 1421 International Trade Tower, Nehru Place, Delhi 110019, India. |



*Brazil is your Account Country only if you have provided a valid Brazilian Tax Registration Number (CPF/CNPJ number) for your account. If your billing address is located in Brazil but you have not provided a valid Brazilian Tax Registration Number (CPF/CNPJ number), then Amazon Web Services, Inc. is the AWS Contracting Party for your account.

**See https://aws.amazon.com/legal/aws-emea-countries for a full list of EMEA countries.

"AWS Marks" means any trademarks, service marks, service or trade names, logos, and other designations of AWS and its affiliates that we may make available to you in connection with this Agreement.

"AWS Site" means http://aws.amazon.com (and any successor or related locations designated by us), as may be updated by us from time to time.

"AWS Trademark Guidelines" means the guidelines and trademark license located at http://aws.amazon.com/trademark-guidelines/ (and any successor or related locations designated by us), as may be updated by us from time to time.

"Content" means software (including machine images), data, text, audio, video, or images.

"End User" means any individual or entity that directly or indirectly through another user (a) accesses or uses Your Content, or (b) otherwise accesses or uses the Services under your account. The term "End User" does not include individuals or entities when they are accessing or using the Services or any Content under their own AWS account, rather than under your account.

"Governing Laws" and "Governing Courts" mean, for each AWS Contracting Party, the laws and courts set forth in the following table:

☆

# Governing Laws and Governing Courts

| AWS Contracting Party | Governing Laws | Governing Courts |
| --- | --- | --- |
| Amazon AWS Serviços Brasil Ltda | The laws of Brazil | The courts of the City of São Paulo, State of São Paulo |
| Amazon Web Services Australia Pty Ltd (ABN: 63 605 345 891) | The laws of New South Wales | The courts of New South Wales |



| AWS Contracting Party | Governing Laws | Governing Courts |
| --- | --- | --- |
| Amazon Web Services Canada, Inc | The laws of the Province of Ontario, Canada and federal laws of Canada applicable therein | The provincial or federal courts located in Toronto, Ontario, Canada |
| Amazon Web Services EMEA SARL | The laws of the Grand Duchy of Luxembourg | The courts in the district of Luxembourg City |
| Amazon Web Services, | The laws of the State of | The state or Federal courts in |

"Indirect Taxes" means applicable taxes and duties, including, without limitation, VAT, service tax, GST, excise taxes, sales and transactions taxes, and gross receipts tax.

"Intellectual Property License" means the separate license terms that apply to your access to and use of AWS Content and Services located at https://aws.amazon.com/legal/aws-ip-license-terms (and any successor or related locations designated by us), as may be updated by us from time to time.

"Losses" means any claims, damages, losses, liabilities, costs, and expenses (including reasonable attorneys' fees).

"Policies" means the Acceptable Use Policy, Privacy Notice, the Site Terms, the Service Terms, and the AWS Trademark Guidelines.

"Privacy Notice" means the privacy notice located at http://aws.amazon.com/privacy (and any successor or related locations designated by us), as may be updated by us from time to time.

"Service" means each of the services made available by us or our affiliates, including those web services described in the Service Terms. Services do not include Third-Party Content.

"Service Level Agreement" means all service level agreements that we offer with respect to the Services and post on the AWS Site, as they may be updated by us from time to time. The service level agreements we offer with respect to the Services are located at https://aws.amazon.com/legal/service-level-agreements/ (and any successor or related locations designated by us), as may be updated by us from time to time.

"Service Terms" means the rights and restrictions for particular Services located at http://aws.amazon.com/serviceterms (and any successor or related locations designated by us), as may be updated by us from time to time.



"Site Terms" means the terms of use of the AWS Site located at http://aws.amazon.com/terms/ (and any successor or related locations designated by us), as may be updated by us from time to time.

"Suggestions" means all suggested improvements to the Services or AWS Content that you provide to us.

"Term" means the term of this Agreement described in Section 5.1.

"Termination Date" means the effective date of termination provided in a notice from one party to the other in accordance with Section 5.

"Third-Party Content" means Content made available to you by any third party on the AWS Site or in conjunction with the Services.

"Your Content" means Content that you or any End User transfers to us for processing, storage or hosting by the Services in connection with your AWS account and any computational results that you or any End User derive from the foregoing through their use of the Services. For example, Your Content includes Content that you or any End User stores in Amazon Simple Storage Service. Your Content does not include Account Information.

Prior Version

**Learn**

**Resources**

**Developers**

**Help**



Amazon is an Equal Opportunity Employer: Minority / Women / Disability / Veteran / Gender Identity / Sexual Orientation / Age.

Back to top

Privacy    Site terms    Your Privacy Choices     Cookie Preferences

© 2025, Amazon Web Services, Inc. or its affiliates. All rights reserved.



TH 00053491 2026 TR

## Exhibit B

### Part I

|  | Access Credentials | AWS Account Numbers |
|---|---|---|
| 1. | aws3@crackle.com | 110183989831 |

### Part II

|  | Access Credentials | AWS Account Numbers |
|---|---|---|
| 2. | To come | 182120529114 |
| 3. | To come | 159269709701 |
| 4. | To come | 991161757966 |
| 5. | To come | 464518539742 |
| 6. | To come | 197771987899 |
| 7. | To come | 068697666353 |
| 8. | To come | 126827381264 |

6/4