**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| CSSE, Inc. f/k/a<br>CHICKEN SOUP FOR THE SOUL<br>ENTERTAINMENT INC., *et al.,*[1] | Case No. 24-11442 (MFW)<br><br>(Jointly Administered) |
| Debtors. | **Hearing Date:  April 22, 2026 at 2:00 p.m. (ET)**<br>**Objection Deadline: April 15, at 4:00 p.m. (ET)** |

**MOTION OF WILLIAM J. ROUHANA, JR. FOR RELIEF FROM THE AUTOMATIC
STAY, TO THE EXTENT APPLICABLE, TO ALLOW PAYMENT OR SETTLEMENT
OF DEFENSE EXPENSES, CLAIMS OR OTHER LOSS UNDER DIRECTORS AND
OFFICERS INSURANCE POLICY**

William J. Rouhana, Jr. ("Movant"), a former director and officer of one or more of the

above-captioned debtors and debtors in possession (the "Debtors"), hereby file this motion (this

"Motion") and respectfully state as follows:

**RELIEF REQUESTED**

1.      Movant respectfully requests, pursuant to sections 105(a) and 362(d)(1) of title 11

of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rules of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules"), entry of an order, substantially

in the form attached hereto as **Exhibit A**, confirming that the automatic stay does not apply to

---

[1]  The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); CSSE, Inc. f/k/a Chicken Soup for the Soul Entertainment Inc. (0811); CSSS, LLC f/k/a Chicken Soup for the Soul Studios, LLC (9993); CSS Television Group, LLC f/k/a/ Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508).

proceeds of that certain Executive and Corporate Securities Liability Insurance Policy No. ELU192110-23 (the "Policy"; **Exhibit B** hereto)[2] maintained by the Debtors with XL Specialty Insurance Company (the "Insurer").

2.      The relief requested is necessary and appropriate as on September 9, 2024, Cedar Advance, LLC ("Cedar Advance") filed a Verified Statement of Claim with the American Arbitration Association (the "Arbitration Demand"), asserting a breach of contract claim against Movant pursuant to an alleged February 9, 2024 "Standard Merchant Cash Advance Agreement" (the "Agreement") by and among Debtors Redbox Automated Retail, LLC, CSSE, Crackle Plus, LLC, and Screen Media Ventures LLC, and Cedar Advance.

3.      Neither the Trustee, nor any of the Debtors, identified as the "Merchant" parties in the Agreement, are identified or named as respondents/defendants in the Arbitration Demand.

4.      Movant denies any liability to Cedar Advance under the alleged Agreement or under any other contract or agreement.

5.      Movant filed an answering statement to the Arbitration Demand and has been defending himself in the Arbitration.

6.      Movant has incurred, and will incur, substantial expenses and costs in connection with the Arbitration Demand.

7.      Movant, as a former director and officer of certain of the Debtors, is an insured under the Policy.

---

[2]  The Policy is separate and distinct from the D&O insurance policies applicable to the D&O adversary proceeding (Adv Pro. No. 24-11442 (MFW)) and Skajem adversary proceeding (Adv. Pro. No. 24-50128 (MFW), and separate and distinct from the insurance policies that were the subject of the Court's two (2) prior Orders lifting the automatic stay to allow the payment of defense costs and other losses of certain of the Debtors' former directors and officers (*see* Docket Nos.  642, 733).

8.      Movant has made a demand for defense, indemnification and reimbursement under the Policy to the Insurer.

### JURISDICTION

9.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.

10.     This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

11.     Movant confirms his consent, pursuant to Local Rule 9013-1(f), to the entry of a final order by the Court solely in connection with this Motion, and not in connection with any other matter, adversary proceeding or any other covered loss Movant may be insured under, to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment in connection herewith consistent with Article III of the United States Constitution.

12.     Venue of these Chapter 11 Cases and related proceedings is proper in this district pursuant to a 28 U.S.C. §§ 1408 and 1409.

### FACTUAL BACKGROUND

**A.  The Policy.**

13.     The Policy covers losses that directors and officers incur on account of certain claims asserted during the policy period.  The Policy further provides for the advancement of defense costs in connection with such claims and with governmental investigations. See generally, **Exhibit B**, *Policy at I.(A) Insuring Agreements* (" The Insurer shall pay on behalf of the Insured Persons Loss resulting from a Claim first made against the Insured Persons during the Policy

Period for a Wrongful Act, except for Loss which the Company is permitted or required to pay on behalf of the Insured Persons as indemnification.") and V.(C) *Defense, Settlement and Allocation of Loss and Endorsement No. 48* ("Upon the written request of an Insured, the Insurer will advance Defense Expenses on a current basis, but no less so than sixty (60) days, excess of the applicable Retention, before the disposition of the Claim, Interview or Investigation Demand for which this Policy provides coverage.")

14.     The Policy ensures that directors and officers will be protected from the financial burden associated with their involvement in, and defense against, covered legal proceedings, up to the applicable limits of liability of the Policy and is subject to the terms, conditions, exclusions and limitations of the Policy.

15.     The Policy provides among other coverages, coverage for the "Insured Persons," which include any past, present or future natural person director or officer, or member or manager of the board of managers, of the Company and those persons serving in a functionally equivalent role, including the Movant. *See id*., *I.(A) Insuring Agreements, II. Definition (J) (Insured Person).*

16.     The Policy's Side A coverage provides protection directly to directors and officers where the company has not indemnified, or will not indemnify, the directors and/or officers. The Policy's Side B coverage allows the Company to receive reimbursement when it indemnifies a Insured Person for covered Losses. The Policy's Side C coverage applies to any covered Loss suffered by the Company as a result of a Securities Claim. *See id*., *I(A)-(C), Insuring Agreements*.

17.     The Policy includes an "Order of Payments" provision that provides that the insurer must first provide coverage to the directors and officers under Side A and then, <u>and</u> only to the extent that the policy limits have not been exhausted, to the Company under other coverage parts. *See id., VI. General Conditions (L) Priority of Payments*.

**BASIS FOR RELIEF REQUESTED**

18.     The automatic stay does not apply to the proceeds of the subject Policy because the proceeds are not property of the Debtors' estates.  Even if the Court were to find that the automatic stay does apply to the Policy proceeds, cause exists to grant the Movant relief from the automatic stay solely for the purpose of accessing the proceeds.  Accordingly, the Court should grant the relief requested by this Motion.

**A.   The Stay Does Not Apply.**

19.     Here, the Proceeds of the Policy are not property of the estate, and, therefore, the Insurer should be permitted to advance and pay defense costs and other covered Losses on behalf of Movant.

20.     The automatic stay prohibits "any act to obtain possession of property of the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a).

21.     Section 541(a) of the Bankruptcy Code provides, in turn, that property of estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a).

22.     In determining whether the automatic stay applies to proceeds of the Policy, the "threshold issue" is whether those proceeds are property of the estate. *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010); *In re World Health Alts., Inc.*, 369 B.R. 805, 811 (Bankr. D. Del. 2007); *In re Allied Digit. Techs. Corp.*, 306 B.R. 505, 509 (Bankr. D. Del. 2004). "If the proceeds are not property of the estate, then [the provider] . . . would not be violating the automatic stay by paying the [the insured persons'] defenses costs" and other covered losses.  *Downey*, 428 B.R. at 602.

23.    Whether the policy proceeds are property of the estate, in turn, is "controlled by the language and scope of the [specific] polic[ies] at issue." *In re Allied Digit.*, 306 B.R. at 511. When a D&O policy provides direct coverage to directors and officers, the proceeds of the insurance policy are not property of the estate because the proceeds are payable to the directors and officers and not to the estate. *Id*. at 510.

24.    Here, the proceeds are not property of the Debtors' estates because the Policy is clear that it is first and foremost for the benefit of the Insured Persons, including Movant.  First, Side A of the Policy provides coverage only for the Insured Persons (including the Movant) and not the Company.  Second, the Order of Payments provision requires that coverage be provided to the Insured Persons under Side A before any coverage is afforded to the Company.  Lastly, the Policy requires the Company and Insurer to cooperate in obtaining access for the Insured Persons, including the Movant.

25.    The theoretical potential for coverage of the Debtors under other sections of the Policy does not alter this conclusion, as the Debtors are unlikely to indemnify Movant for the claims asserted in the Arbitration Demand.  Where a D&O policy "provides direct coverage to both the debtor and the directors and officers, the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other asset from diminution." *In re Downey*, 428 B.R. at 603 (internal quotation omitted). But even where a debtor is also an insured under a D&O policy, courts hold that the proceeds of that D&O policy are not property of the estate if the debtor's potential claim against the policy is speculative or hypothetical. *See*, *e.g.*, *id*. at 607; *In re World Health Alts.*, 369 B.R. at 810 (noting that courts "have found that insurance policy proceeds are not property of the estate where a debtor is covered for indemnification, but indemnification either has not occurred, is

hypothetical, or speculative") (internal quotation omitted); *In re Allied Digit.*, 306 B.R. at 512 ("[W]hen the liability policy provides the debtor with indemnification coverage but indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not property of the bankruptcy estate.").

26.     Here, paying the Movant's defense costs and other covered losses in connection with the Arbitration Demand and other covered Losses under the Policy—consistent with the terms of the Policy—will not have any adverse effect on the Debtors' estates.

27.     There is no indication that any other coverage part under the Policy is implicated in connection with this matter.  Upon information and belief, the Debtors do not intend to advance or indemnify Movant his defense costs in the Arbitration Demand, eliminating the potential for coverage under Side B for the Company's costs of indemnifying Movant.  Making the proceeds available to the Movant will reduce or eliminate claims against the estates by the Movant for advancement and indemnification, while providing for greater recoveries to other creditors in the Chapter 11 cases. Because indemnification coverage is speculative at best, the Side B coverage provisions do not give the Debtors a property interest in the proceeds of the Policy.

28.     Similarly, even if the Company were to seek coverage under Side C for a securities claim against the Company directly, that would be contractually subordinated to the Movant's right to coverage under the Side A provisions pursuant to the Order of Payments Clause. Accordingly, the Debtors lack a property interest in the proceeds of the Policy being paid for Movant.  Thus, to the extent the Debtors could ever incur future Loss (as defined in the Policy),

the Debtors could have only a contingent right to proceeds, limited to the extent the non-indemnified Loss incurred by the Movant under Side A did not exceed the Policy's limits of liability. Such speculative and contingent coverage is insufficient to render the proceeds of the Policy property of the Debtors' estates.

29.     This Court's decision in *Downey* is squarely on point. There, former officers and directors of a Chapter 7 debtor moved for an order that the automatic stay did not preclude their access to proceeds of a D&O insurance policy in connection with a securities action that had been filed against them. *Downey*, 428 B.R. at 598. Like the Policy, the debtor's policy in *Downey* provided for Side A direct coverage for non-indemnified directors and officers, as well as coverage for loss incurred by the company. *Id*. at 604. This Court granted the directors' and officers' motion, holding that the policy proceeds were not property of the estate. *Id*. at 604-08.  In so holding, this Court relied on an order-of-payments clause under which the debtor's interest in the coverages specific to the company was "under all circumstances, junior to Coverage A, which provide[d] direct coverage to the [directors and officers]." *Id*. at 600-01, 608 (noting that the policy preserved "this chain of priority in the event of bankruptcy"). Noting the established principle that bankruptcy should not expand a debtor's rights "against others beyond what rights existed at the commencement of the case[,]" this Court recognized that the order-of- payments clause "provide[d] a clear chain of priority among the three types of coverage[,]" which was not affected by the bankruptcy filing. *Id*. at 607 (internal quotation marks omitted). "This is significant[,]" the Court explained, "because were the Court to hold that the Policy proceeds are property of the estate and, thus, subject to the automatic stay, the trustee would have 'greater rights in the [policy proceeds] than the debtor had before filing for bankruptcy.'" *Id*. at 608 (*quoting Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487, 492 (3d Cir. BAP 1997)). Thus, the

8

Court concluded that the policy proceeds were "not property of the estate" subject to the automatic stay. *Id*. at 608.

30. The same reasoning applies here. The "Order of Payments" clause in the Policy is materially identical to the order-of-payment clause in the policy at issue in *Downey*. See Ex. B, *VI General Conditions (L) Priority of Payments.*3

31. Outside of bankruptcy, the Debtors' interest in the proceeds of the Policy would be subordinate to the interests of the Movant in the Side A coverage. Therefore, the Debtors would be granted greater rights in the policy proceeds than they would have had outside of bankruptcy if the policy proceeds were deemed property of the Debtors' estates, contrary to established principles of bankruptcy law. See *Downey*, 428 B.R. at 608.

32. For the foregoing reasons, the Court should enter an order confirming that the proceeds of the Policy are not property of the Debtors' estates subject to the automatic stay so that the Movant may have access to the policy proceeds, consistent with his contractual rights.

**B. The Court Should, in the Alternative, Grant Relief from the Automatic Stay.**

33. Even if the proceeds of the Policy are subject to the automatic stay, the Court should grant relief from the stay so that the Movant can access the policy proceeds to pay for defense costs and other covered losses.

---

3 (L) PRIORITY OF PAYMENTS

In the event of Loss, including Defense Expenses, payable under more than one of the Insuring Agreements of the Policy, then the Insurer shall, to the maximum extent practicable and subject at all times to the Insurer's maximum aggregate Limit of Liability as set forth in ITEM 3 of the Declarations, pay such Loss as follows:

    (1) first, the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Insured Persons which the Company is not permitted nor required to pay on behalf of the Insured Persons as indemnification;

    (2) second, the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Company which the Company is permitted or required to pay on behalf of the Insured Persons; and

    (3) third, the Insurer shall make such other payments which the Insurer may be liable to make under Insuring Agreements (C) and/or (F) or otherwise.

34.     Courts in this and other Circuits routinely grant such relief in cases involving similar policies. See *e.g., Downey*, 428 B.R. at 608 (holding in the alternative that, even if the policy proceeds were property of the estate, cause existed to lift the automatic stay); *In re MF Global Holdings Ltd.*, 469 B.R. 177, 192 (Bankr. S.D.N.Y. 2012) ("Courts in this Circuit and other jurisdictions have permitted the advancement of defense costs to a debtor's directors or officers even though the insurance policies provide direct coverage to the debtor."); *In re Enron Corp.*, No. 01–16034, 2002 WL 1008240, at *2 (Bankr. S.D.N.Y. May 17, 2002) (granting relief from stay to the extent applicable, for payment of defense costs); *In re CyberMedica, Inc.*, 280 B.R. 12, 18–19 (Bankr. D. Mass. 2002) (granting relief from stay for cause because directors and officers would suffer irreparable harm if prevented from exercising their rights to defense payments under directors and officers insurance policy); *In re Laminate Kingdom, LLC*, No. 07- 10279, 2008 WL 1766637, at *4 (Bankr. S.D. Fla. Mar. 13, 2008) ("Because of the separate and distinct interests between the directors and officers and the debtor, numerous courts have granted relief from the automatic stay to permit the advancement of defense costs to a debtor's directors and officers— even though the insurance policies also provided direct coverage to [the] debtor.").

35.     Section 362(d)(1) of the Bankruptcy Code authorizes the Court to grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such property in interest[.]" 11 U.S.C. § 362(d)(1). In considering whether to grant relief from the stay under this provision, the Court should consider (a) "[w]hether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay" and (b) "[w]hether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor." *Downey*, 428 B.R. at 609.5 As described below, these factors strongly weigh in favor of lifting the automatic stay.

36.     In *Downey*, the court also referenced "[t]he probability of the creditor prevailing on the merits" as a factor in determining whether relief from the automatic stay was appropriate. *Downey*, 428 B.R. at 609. Movant submits that this factor does not apply here. If Movant were seeking stay relief to pursue litigation against the Debtors, the merits of that litigation would be relevant to whether the automatic stay should be lifted. *See, e.g., In re Continental Airlines*, 152 B.R. 420, 424 (Bankr. D. Del. 1993). But the Movant does not seek to pursue ligation against the Debtors. And the relief that the Movant seeks—access to the proceeds of the Policy, consistent with their terms—is not contingent on the merits of any litigation claim, but instead follows from the plain and unambiguous terms of the Policy.

37.     Here, the Trustee, the Debtors and their estates will not suffer any prejudice from lifting the stay to allow the Insurer to pay their coverage obligations to the Movant. Even if the Debtors are deemed to have an interest in proceeds of the Policy, that interest would not be impaired by lifting the automatic stay because the Debtors' interest is subordinate to the rights of the Movant and other Insured Persons. *See Laminate*, 2008 WL 1766637, at *3 ("[T]he estate has only a contingent, residual interest in the Policy's proceeds; and, payment of the proceeds in accordance with the 'Priority of Payments Endorsement' does not diminish the protection the Policy affords the estate, as such protection is only available after the [directors' and officers'] Costs of Defense are paid."). Stated simply, the Debtors will not be prejudiced by being held to the terms of the Policy. *See, e.g.*, *In re Continental Airlines, Inc.*, 134 B.R. 536, 541 (Bankr. D. Del. 1991) ("To the extent that such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate.") (internal quotation marks and citations omitted). And by making the proceeds available to Movant, the Debtors will be able to reduce or eliminate claims against the estates by the Movant for advancement and indemnification, providing for greater

recoveries to other creditors in the chapter 11 cases. Moreover, upon information and belief, there is no currently pending litigation that entitles the Debtors to coverage under the Policy.

38.     Second, absent stay relief, Movant will suffer substantial and potentially irreparable harm. Without the Policy proceeds, the Movant's ability to present an effective defense or protect his rights is impaired. The Movant thus "may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments." *Downey*, 428 B.R. at 610 (*quoting CyberMedia*, 280 B.R. at 18); *In re Allied Digit.*, 306 B.R. at 514 ("Without funding, the Individual Defendants will be prevented from conducting a meaningful defense to the [plaintiff's] claims and may suffer substantial and irreparable harm.").

39.     In short, the balance of equities is not a close question here. Absent stay relief, the Movant faces significant and potentially irreparable harm by being deprived of the critical funds his need—and to which he is entitled—to fund any Losses covered by the Policy. Movant relied upon the existence and availability of insurance coverage when serving in a fiduciary capacity for the Debtors. By contrast, the Debtors would not be harmed by lifting the stay because they are not entitled to the proceeds payable to the Movant.

40.     For the foregoing reasons, the Movant respectfully request that the Court enter an Order providing that the automatic stay, to the extent applicable, is lifted to allow the Insurer to advance, reimburse or settle the Movant's defense costs and other losses pursuant to the terms and conditions of the Policy.

**NOTICE**

Notice of this Motion has been given to (i) counsel to the Debtors and Cedar Advance; (ii) the Insurer; (iii) the Office of the United States Trustee for the District of Delaware; and (iv) all parties entitled to receive notice under Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Movant respectfully submits that no other or further notice is necessary.

**CONCLUSION**

WHEREFORE, Movant respectfully requests that the Court enter the proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: March 20, 2026
      Wilmington, Delaware

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Donald J. Detweiler*
Donald J. Detweiler (DE Bar No. 3087)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile:  (302) 252-4330
Email: don.detweiler@wbd-us.com

—and—

Cathy A. Hinger
(admitted *pro hac vice*)
2001 K. Street NW
Suite 400 South
Washington, D.C. 20006
Telephone: (202) 467-6900
Facsimile:  (202) 467-6910
Email: cathy.hinger@wbd-us.com

*Counsel for William J. Rouhana*