Execution Version

or controlled by the Debtors' Estates (the "IP Litigation Assets") free and clear of the security interests of HPS in the IP Litigation Assets to Grove Street Partners LLC or one or more of its affiliated or assignees ("Grove Street") or another purchaser acceptable to the Parties for a purchase price of not less than $100 million payable in five (5) annual installments to the Estates of $20 million each or at such sale price and terms as may otherwise be agreed by the Parties.

13.    The Agent expressly agrees on behalf of the Prepetition Secured Parties and DIP Lenders that any and all liens, security interests (including but not limited to any and all security interests, liens, superpriority administrative expense claims granted under the DIP Order or hereunder) of the Prepetition Secured Parties in Collateral shall be subordinate and subject to carve-outs from Collateral, use by the Trustee and sharing with the Estates for the following (collectively, the "Carve-Out"):

A.    Cash Collateral – The Trustee may use the $2.3 Million Cash Amount in the exercise of his business judgment to fund the costs of administration of the Debtors' Estates. The Trustee agrees that proceeds of accounts receivables and other Collateral received directly into the bank accounts of the Debtors after the date hereof shall be paid over to the Agent.

B.    IP Litigation Assets – The proceeds from IP Litigation Assets shall be shared and applied as follows:

i.    First, the proceeds from IP Litigation Assets recoveries shall be used to pay the Trustee's statutory commissions and costs, the Trustee's professional fees and costs, and any other expenses related to the identification, preservation including AWS, maintenance and recovery of IP Litigation Assets (the aggregate amounts paid under this clause (i) the "Administrative Payments");

6

Error! Unknown document property name.

Execution Version

ii.    *Second*, the first $100,000,000 of proceeds from IP Litigation Assets shall be allocated after the payment of (i) above as follows:

(1)    An amount equal to the sum of 20% of Net Proceeds (as defined below) to the Trustee for the benefit of the Debtors' Estates to be distributed in accordance with 11 U.S.C. §726.  Net Proceeds are the gross proceeds from the liquidation of IP Litigation Assets minus the Administrative Payments (the "Net Proceeds"); and

(2)    80% of Net Proceeds to HPS on account of its secured claims until paid in full;

iii.    *Third*, any proceeds recovered from IP Litigation Assets in excess of $100,000,000 shall be allocated after the payment of (i) above as follows:

(1)    An amount equal to the sum of 15% of Net Proceeds to the Trustee for the benefit of the Debtors' Estates to be distributed in accordance with 11 U.S.C. §726, and

(2)    85% of Net Proceeds to HPS on account of its secured claims until paid in full.

In the event that the aggregate claims in any of clauses (1) or (2) above are paid in full then the proceeds otherwise allocable under such clause shall be re-allocated to the other clause until paid in full.

14.    For the avoidance of doubt, the use of the $2.3 Million Cash Amount by the Trustee permitted by HPS under this Agreement shall not reduce any obligation of HPS to reimburse the allowed fees of Pachulski Stang Ziehl & Jones LLP to the extent provided for in the carve-out as defined in the DIP Order (the "Chapter 11 Carve-Out") from the proceeds of Collateral under the DIP Order and the Order granting HPS Stay Relief Motion [D.I. 316].  HPS shall make payment

7

Error! Unknown document property name.

Execution Version

of the allowed Chapter 11 fees of Pachulski Stang Ziehl & Jones LLP upon approval of such fees by the Bankruptcy Court from proceeds of Collateral other than the $2.3 Million Cash Amount.

15.    For the avoidance of doubt, property of the Estates of the Debtors which is not prepetition collateral of HPS (the "Non-Collateral Assets") shall not be subject to any sharing of proceeds or other benefits with HPS on account of its Allowed HPS Claim except to the extent HPS shall be entitled to a distribution under 11 U.S.C. §726(a)(2) as a general unsecured creditor on account of its Allowed HPS Deficiency Claim (as defined below); provided that, for the avoidance of doubt, the HPS Deficiency Claim may include any outstanding amounts on account of its Postpetition Funding. The Non-Collateral Assets include but are not limited to (i) rights or claims of the Debtors' Estates under Chapter 5 of the Bankruptcy Code, (ii) any rights, claims and actions against former directors and officers of the Debtors, and entities affiliated with the Debtors' Estates including but not limited to those claims and actions set forth in, In re: Miller v. William J. Rouhana, Jr. et al, Adv. No. 25-50399 (the "D&O Litigation"), and (iii) any commercial tort claims. In furtherance of the foregoing, the Trustee and HPS agree in the event an interim distribution is made by the Trustee from proceeds of Non-Collateral Assets to general unsecured creditors under 11 U.S.C. §726(a)(2) before the Collateral is liquidated and the proceeds thereof are distributed to enable a final calculation of the Allowed HPS Deficiency Claim, then the Trustee will reserve or holdback sufficient funds from such interim distributions, as reasonably determined between the Trustee and HPS, on an estimated basis to enable a distribution on the HPS Deficiency Claim in an amount proportionally the same as is being made in such interim distribution to other general unsecured creditors.

16.    To the extent the proceeds from the Collateral of HPS are not sufficient to fully pay the Allowed HPS Claim, then HPS shall be entitled to receive a distribution as a prepetition general

8

Execution Version

unsecured claim for any unpaid deficiency amount (the "Allowed HPS Deficiency Claim"). HPS shall provide the Trustee with statements of the outstanding balance of the Allowed HPS Claim and confirmation as to whether or not the Collateral of HPS has been fully liquidated by HPS within ten (10) days of the Trustee's written requests for such information to enable the Trustee to make distributions from the Estates; provided, however, that to the extent the Trustee wishes to make distributions from the Estates at a time when the Collateral of HPS has not been fully liquidated by HPS, HPS shall provide the Trustee with a good faith estimate of the value of any remaining Collateral of HPS for purposes of calculating the Allowed HPS Deficiency Claim. In making such distributions, the Trustee shall be entitled to rely on the foregoing statements. In the event the Trustee makes a distribution to other holders of allowed general unsecured claims then HPS shall be entitled to receive a pro-rata distribution on account of its Allowed HPS Deficiency Claim. HPS shall not be required to file a proof of claim evidencing the Allowed HPS Deficiency Claim and such claim shall be deemed allowed and not subject to any challenge. HPS upon execution of this Agreement shall provide the Trustee with a report of all funds received by HPS after June 21, 2024 from Collateral and Non-Collateral on account of the Debtors. In the event HPS has received proceeds from Non-Collateral Assets (except with respect to its Postpetition Funding), such proceeds shall be promptly remitted to the Trustee upon Court approval of this Agreement.

17.     Upon execution of this Agreement, the Trustee agrees to (i) upon HPS' written request (which may be via e-mail), provide consents, authorizations, and instructions directed to Amazon Web Services Inc. ("AWS"), Dropbox, Cloudfare and Outlook Exchange and, also upon HPS' written request (which may be via e-mail), any other digital accounts of the Debtors

Error! Unknown document property name.

Execution Version

(collectively, the "Digital Accounts"),[5] authorizing the Digital Accounts to provide HPS with full administrative access to such Digital Accounts and (ii) provide HPS with all credentials, registration information, and administration rights related to the Digital Accounts that are readily available and known to the Trustee.   In addition, with respect to the account of Apto Solutions maintained with Dropbox (the "Apto Solutions Dropbox Account"), the Trustee agrees that upon HPS providing consent to the Trustee to use a portion of the $2.3 Million Cash Amount to pay the outstanding fees and costs of Apto, the Trustee will cause Apto to provide HPS with full administrative access to the Apto Solutions Dropbox Account. Any fees required to be paid to the Digital Accounts for data accessed by HPS shall be the responsibility of HPS and not the Estates.

18.    HPS and the Trustee and their respective counsel will work in good faith to (i) obtain reasonable access to information necessary or desirable to allow value to be realized from the Collateral, the IP Litigation Assets and Non-Collateral Assets, including resolution of AWS issues, if possible (including, without limitation, the materials and deliverables specified in Annex II to the Notice of Foreclosure Sale By Credit Bid dated June 17, 2025 delivered to the Trustee by HPS) and (ii) maintain standing to enable the IP Litigation Assets to proceed to be pursued for the benefit of the Parties hereto.

19.    **Mutual Releases**.  The following mutual releases shall become effective upon Bankruptcy Court approval of this Agreement:

A.    HPS, on behalf of itself and the Prepetition Lenders (collectively, the "Claimant Parties"), hereby releases, remises and forever discharges the Debtors' Estates and the

---

[5] The Digital Accounts shall include, without limitation, (i) cloud storage accounts, (ii) domain name registrar accounts, (iii) social media accounts, (iv) email accounts used in connection with the Debtors' business, (v) software development, project management, and collaboration accounts, and (vi) any other digital platform, online service, or account used or maintained by the Debtors for business, media, communications, or operations.

10

Error! Unknown document property name.

Execution Version

Trustee and his financial advisors, attorneys, accountants and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such, but excluding any of the Debtors' current or former directors and officers of the Debtors' Estates and entities affiliated with the Debtors' Estates (specifically including but not limited to the Defendants named in the D&O Litigation) (collectively, the Trustee Parties"), of and from any and all claims, debts, refunds, demands, liabilities, agreements, obligations, controversies, actions, causes of action, suits, costs, attorneys' fees, expenses, damages, liens, and judgments, of any nature whatsoever, at law or in equity or otherwise, whether asserted or unasserted, whether known or unknown, that the Claimant Parties may have against any or all of the Trustee Parties as of the date hereof, with the exception of the Allowed HPS Claim (including the Allowed HPS Deficiency Claim), the claims arising under the Postpetition Funding, and the Trustee's obligations under this Agreement; provided, however, that the foregoing release shall not limit the Claimant Parties from asserting any released claim as a defense against a non-Party to this Agreement in any litigation brought by such Non-Party.

B.      The Trustee, on behalf of itself and the Trustee Parties, hereby releases, remises and forever discharges the Claimant Parties and each of their Representatives of and from any and all claims, debts, refunds, demands, liabilities, agreements, obligations, controversies, actions, causes of action, suits, costs, attorneys' fees, expenses, damages, liens, and judgments, of any nature whatsoever, at law or in equity or otherwise, whether asserted or unasserted, whether known or unknown, that the Trustee Parties may have against any or all of the Claimant Parties as of the date hereof, with the exception of the Claimant Parties' obligations under this Agreement. Without limiting the foregoing, the Trustee Parties waive any right to surcharge the Collateral pursuant to section 506(c) of the Bankruptcy Code except to the extent provided in the Carve-Out

11

Error! Unknown document property name.

Execution Version

or otherwise in this Agreement.  As used herein, "Representatives" shall refer to the Claimant Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such.

20.     Any notices in connection herewith may be transmitted by personal delivery, overnight courier, or, email with first class mail:

| If to the Trustee: | George L. Miller, Trustee<br>8 Penn Center<br>1628 John F. Kennedy Blvd.<br>Suite 950<br>Philadelphia, PA 19103-2110<br>Email: gmiller@mctllp.com |
| --- | --- |
| with a copy to<br>Trustee's Counsel: | John T. Carroll, III<br>Cozen O'Connor<br>1201 North Market Street<br>Suite 1001<br>Wilmington, DE 19801<br>Tel: (302) 295-2028<br>Fax: (215) 701-2140<br>Email: jcarroll@cozen.com |
| If to the Agent: | Daniel Wallitt<br>HPS Investment Partners, LLC<br>40 West 57th Street, 33rd Floor<br>New York, NY 10019<br>Tel: (212) 287-5133<br>Email: daniel.wallitt@hpspartners.com |

12

Error! Unknown document property name.

Execution Version

with a copy to Agent's    Matthew Brod
Counsel:    Milbank LLP
55 Hudson Yards
New York, NY 10001-2163
Tel: (212) 530-5460
Fax: (212) 530-5219
Email: MBrod@milbank.com

Notices shall be effective (a) immediately upon personal delivery, (b) one day after deposit with an overnight courier, or (c) upon receipt of email if during normal business hours (so long as notice by first class mail is deposited with the United States Postal Service on the same day as the email is sent).

21.     This Agreement may be executed in any number of separate counterparts, any of which may be transmitted by facsimile or email, and each of which when so executed and delivered shall be an original, but all of which shall together constitute, one and the same agreement.

22.     Headings, if any, used in the Agreement are for reference purposes only and do not comprise part of the terms hereof.

23.     No failure of the Prepetition Secured Parties or the Trustee to enforce any right granted under this Agreement, any of the Prepetition Loan Documents, or otherwise shall represent a waiver of such right.

24.     The Parties hereto agree to execute any and all documents that are reasonably necessary to implement the terms and provisions of this Agreement.

25.     No modification or amendment of any of the provisions hereof shall be effective unless set forth in writing and signed by the Parties hereto and approved by the Bankruptcy Court.

26.     This Agreement between the Parties is subject in all respects to the approval of the Bankruptcy Court, which Trustee will promptly seek after the execution hereof.

13

Error! Unknown document property name.

Execution Version

27.     The Bankruptcy Court shall have jurisdiction over all matters arising from or relating to this Agreement and order approving same.

28.     This Agreement shall become effective as follows:

(i)     Paragraph 17 of this Agreement, and any related provision of this Agreement necessary to accomplish the matters set forth in paragraph 17, shall be implemented by the Trustee and HPS upon the execution of this Agreement by counsel to the Trustee and counsel to the Agent respectively; and

(ii)     All other provisions of this Agreement are subject to Bankruptcy Court approval of this Agreement.

*[Remainder of page intentionally left blank; signature pages to follow]*

14

Error! Unknown document property name.

Execution Version

**IN WITNESS WHEREOF**, the Parties have executed this Agreement, intending to be legally bound, as of the date first above written.

| | |
|---|---|
| **COZEN O'CONNOR** | **MILBANK LLP** |
| By: _____ 9/8/25 | By: _____ |
| John T. Carroll, III | Matthew Brod |
| (Del. Bar No. 4060) | 55 Hudson Yards |
| Suite 1001 | New York, NY 10001-2163 |
| 1201 North Market Street | Tel: (212) 530-5460 |
| Wilmington, Delaware 19801 | Fax: (212) 530-5219 |
| Tel: (302) 295-2028 | Email: MBrod@milbank.comm |
| Fax: (302) 295-2013 | *Counsel to Agent (HPS Investment* |
| Email: jcarroll@cozen.com | *Partners LLC) for itself and on behalf of* |
| *Counsel to the Trustee,* | *Prepetition Secured Parties* |
| *George L. Miller* | |

15

**EXHIBIT D**

American Films Revocation (FL SOS 2024)



Department of State / Division of Corporations / Search Records / Search by Entity Name /

## Detail by Entity Name

Foreign Profit Corporation
AMERICAN FILMS, INC.

**Filing Information**

| | |
|---|---|
| **Document Number** | F22000005623 |
| **FEI/EIN Number** | 80-0978149 |
| **Date Filed** | 09/07/2022 |
| **State** | NV |
| **Status** | INACTIVE |
| **Last Event** | REVOKED FOR ANNUAL REPORT |
| **Event Date Filed** | 09/27/2024 |
| **Event Effective Date** | NONE |

**Principal Address**

1132 KANE CONCOURSE, SUITE 201
BAY HARBOR ISLANDS, FL 33154

**Mailing Address**

1132 KANE CONCOURSE, SUITE 201
BAY HARBOR ISLANDS, FL 33154

**Registered Agent Name & Address**

TAMAROFF, DAVID
1132 KANE CONCOURSE, SUITE 201
BAY HARBOR ISLANDS, FL 33154

**Officer/Director Detail**

**Name & Address**

Title CHRM/D

CAMPBELL, CRAIG
1132 KANE CONCOURSE, SUITE 201
BAY HARBOR ISLANDS, FL 33154

Title D/CEO

LEE, GEOFF
1132 KANE CONCOURSE, SUITE 201
BAY HARBOR ISLANDS, FL 33154

Title D

SAFALOW, BRADLEY
1132 KANE CONCOURSE, SUITE 201
BAY HARBOR ISLANDS, FL 33154

Title D

FAULK, MARSHALL
1132 KANE CONCOURSE, SUITE 201
BAY HARBOR ISLANDS, FL 33154

Title VP/S/GC

TAMAROFF, DAVID
1132 KANE CONCOURSE, SUITE 201
BAY HARBOR ISLANDS, FL 33154

Title VP/CFO

WARREN, JAMIE
1132 KANE CONCOURSE, SUITE 201
BAY HARBOR ISLANDS, FL 33154

### Annual Reports

| Report Year | Filed Date |
| --- | --- |
| 2023 | 04/30/2023 |

### Document Images

| | |
| --- | --- |
| 04/30/2023 -- ANNUAL REPORT | View image in PDF format |
| 09/07/2022 -- Foreign Profit | View image in PDF format |

**EXHIBIT E**

Culpepper SDFL Motion (Doc. #594)

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

Case No.: 21-cv-20862-BLOOM/Otazo-Reyes

MILLENNIUM FUNDING, INC., et al.,

    Plaintiffs,

    vs.

1701 MANAGEMENT LLC, et al.,

    Defendants,

---

## PLAINTIFFS' OPPOSED MOTION TO LIFT STAY OF POST-JUDGMENT PROCEEDINGS

Plaintiffs/Judgment Creditors MILLENNIUM FUNDING, INC., VOLTAGE HOLDINGS, LLC, AMBI DISTRIBUTION CORP., AFTER PRODUCTIONS, LLC, AFTER II MOVIE, LLC, MORGAN CREEK PRODUCTIONS, INC., MILLENNIUM FUNDING, INC., BEDEVILED LLC, MILLENNIUM MEDIA, INC., COLOSSAL MOVIE PRODUCTIONS, LLC, YAR PRODUCTIONS, INC., FSMQ FILM, LLC, FW PRODUCTIONS, LLC, MILLENNIUM IP, INC., I AM WRATH PRODUCTION, INC., KILLING LINK DISTRIBUTION, LLC, BADHOUSE STUDIOS, LLC, LF2 PRODUCTIONS, INC., LHF PRODUCTIONS, INC., VENICE PI, LLC, RAMBO V PRODUCTIONS, INC., RUPTURE CAL, INC., MON, LLC, SF FILM, LLC, SPEED KILLS PRODUCTIONS, INC., MILLENNIUM IP, INC., NIKOLA PRODUCTIONS, INC., WONDER ONE, LLC, BODYGUARD PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., GLACIER FILMS 1, LLC, DEFINITION DELAWARE LLC, HANNIBAL CLASSICS INC., JUSTICE EVERYWHERE PRODUCTIONS LLC, STATE OF THE UNION DISTRIBUTION AND COLLECTIONS, LLC, PARADOX STUDIOS, LLC, DALLAS BUYERS CLUB, LLC, HITMAN TWO PRODUCTIONS, INC., SCREEN MEDIA VENTURES, LLC and 42 VENTURES, LLC (collectively "Plaintiffs"), move this honorable Court to lift the Stays of Post-Judgment Proceedings the Court issued on June 7, 2023 and Oct. 25, 2023. *See* Docs. ##502, 576.

20-023DBa



## I.    BRIEF RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

1.    On March 28, 2022, this Court granted Plaintiffs' motion for default judgment and awarded a money judgment of $15,172,403.00 in favor of Plaintiffs and against Defendants Charles Muszynski ("Muszynski"), 1701 Management LLC, and AUH2O LLC. *See* Doc. #213.

2.    On March 14, 2023, the Court referred all post-judgment matters to Magistrate Judge Alicia M. Otazo-Reyes. *See* Doc. #432.

3.    On May 30, 2023, Defendant Muszynski filed an Amended Motion to Stay and Second Notice of Bankruptcy. *See* Doc. #496.

4.    On June 7, 2023, the Court granted Muszynski's motion [Doc. #496] and stayed the case to the extent Plaintiffs seek to collect on the judgment against Muszynski. *See* Docs. #502.

5.    On Sept. 12, 2023, the Court ordered that following the stay being lifted, that the Parties "file a Joint Notice of Pending Motions and advise the Court of the outstanding motions which require adjudication." Doc. #543.

6.    On Oct. 25, 2023, the Court granted Plaintiffs' motion [Doc. #572] and ordered a "General Stay of Post-Judgment Proceedings Pending Resolution of Muszynski Bankruptcy." Doc. #576.

7.    On Mar. 4, 2026, the First Circuit Court of Appeals ("First Circuit") [No. 25-9003] issued a judgment affirming the decision of the First Circuit Bankruptcy Appellate Panel [BAP NO. PR 24-011] which denied Muszynski's appeal and affirmed the opinion and order of the United States Bankruptcy Court for the District of Puerto Rico dismissing Defendant Muszynski's bankruptcy petition [23-02870-MCF7]. *See* Doc. #593.

8.    On April 28, 2026, the First Circuit issued the mandate. *See* Ex. "1".

## II.    ARGUMENT

9.    The purpose of the Court's first limited stay and second general stay, *see* Docs. ##502, 576, was to allow Muszynski's bankruptcy proceedings to conclude before holding a trial on the writs of garnishments. Now that the First Circuit has issued its mandate affirming the dismissal of his bankruptcy petition, the case can resume. *See* Ex. "1".

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court lift the stays, *see* Docs. ##502, 576. Plaintiffs' counsel can file a status of pending motions which require adjudication.

2

### RULE 7.1(a)(3) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), Local Rules of the District Court of the Southern District of Florida, I, Kerry Culpepper, counsel for the movants, attempted to confer with Muszynski and counsels for Garnishees Terry Lacy, Buhosabio LLC and Antilles Management, LLC on their position on this motion.

Counsel for Terry Lacy (Louis R. Gigliotti) stated by email that he objected to the motion without any reason. When asked to meet and confer, counsel for Lacy stated that he intended to withdraw as representative.

Counsel for Buhosabio stated that he intended to withdraw as representative.

I sent email to Muszynski on 4/28/2026. As of the date of the motion, he has not responded to my email, despite sending me emails about different matters.

I sent email to counsel for Antilles Management, LLC (Mr. Palomares-Starbuck) on 4/28/2026. As of the date of the motion, he has not responded.


DATED:      April 29, 2026         Respectfully submitted,


                                   /s/ Joel B. Rothman
                                   JOEL B. ROTHMAN
                                   Florida Bar No. 98220
                                   joel.rothman@sriplaw.com


                                   **SRIPLAW**
                                   21301 Powerline Road, Suite 212
                                   Boca Raton, FL 33433
                                   561.404.4335 – Telephone
                                   561.404.4353 – Facsimile

                                   and

                                   Kerry S. Culpepper
                                   *Admitted pro hac vice*
                                   **CULPEPPER IP, LLLC**
                                   75-5915 Walua Road, Unit 128
                                   Kailua-Kona, HI 96740
                                   808.464.4047 – Telephone
                                   kculpepper@culpepperip.com


3

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on <u>April 29, 2026</u> and by the methods of service noted below, a true and correct copy of the foregoing was served on Defendants 1701 MANAGEMENT LLC d/b/a LIQUIDVPN, AUH2O LLC, and CHARLES MUSZYNSKI a/k/a FREDERICK DOUGLAS.

<u>Via Airmail</u>
CHARLES MUSZYNSKI
Post Office Box 1423, Basseterre, St. Kitts & Nevis

<u>Via E-mail</u>
usfilefolder@protonmail.com

DATED: April 29, 2026

/s/ *Joel B. Rothman*
JOEL B. ROTHMAN
Florida Bar No. 98220
joel.rothman@sriplaw.com

**SRIPLAW**
21301 Powerline Road, Suite 212
Boca Raton, FL 33433
561.404.4335 – Telephone
561.404.4353 – Facsimile

and

Kerry S. Culpepper
*Admitted pro hac vice*
**CULPEPPER IP, LLLC**
75-5915 Walua Road, Unit 128
Kailua-Kona, HI 96740

4

**EXHIBIT F**

Heirl Letter (TPLF Evidence)

| | |
|---|---|
| **From:** | Michael A. Hierl <mhierl@HSPLEGAL.COM> |
| **Sent:** | Thursday, March 7, 2024 9:33 AM |
| **To:** | Victor J. Pioli |
| **Cc:** | John K. Hughes; Garrett Kern; Joseph R. Marconi |
| **Subject:** | FW: CMS/PML/Millennium |
| **Attachments:** | Millennium v. Hierl complaint as served.pdf |

Victor – A copy of the 11/17/21 email from Kozacky follows.  Mike

**From:** Paul J. Kozacky <pkozacky@kwmlawyers.com>
**Sent:** Wednesday, November 17, 2021 8:13 AM
**To:** Michael A. Hierl <mhierl@HSPLEGAL.COM>
**Cc:** John K. Hughes <JHughes@HSPLEGAL.COM>; Matthew J. Piers <MPiers@HSPLEGAL.COM>; Christine Blank <cblank@HSPLEGAL.COM>
**Subject:** RE: CMS/PML/Millennium

Dear Mr. Hierl—

Attached is a complaint my clients intend to file in the absence of hearing from you in the next seven days.  Please let me know if you and your firm would be amenable to service of process and this complaint via email.  Thank you,

**Paul J. Kozacky**
Attorney at Law – Proctor in Admiralty



Kozacky Weitzel McGrath, P.C.
77 West Wacker Drive, Suite 4500
Chicago, IL 60601
312.696.0900 (General Office)
312.907.0651 (Cell)
312.696.0901 (Direct Dial)
pkozacky@kwmlawyers.com
www.kwmlawyers.com



1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Millennium Media, Inc. and<br>PML Process Management Ltd., | )<br>)<br>) |
| plaintiffs, | )<br>) |
| vs. | )    Case No. 21-cv-_____<br>) |
| Michael A. Hierl, Esq. and<br>Hughes Sokol Piers Resnick & Dym, Ltd., | )<br>)<br>) |
| defendants. | ) |

## COMPLAINT

### Facts Common to All Counts

1.    Millennium Media, Inc. (Millennium") is a Nevada corporation with its principal place of business in Los Angeles, California.

2.    PML Process Management Ltd. ("PML") is a corporation organized under the laws of Cyprus with its principal place of business in Larnaca, Cyprus.

3.    Michael A. Hierl, Esq. ("Hierl") is a citizen of Illinois and an Illinois attorney who practices as a partner with Hughes Sokol Piers Resnick & Dym, Ltd.

4.    Hughes Sokol Piers Resnick & Dym, Ltd. ("HSPR&D") is an Illinois corporation with its principal place of business in Chicago, Illinois. Hierl and HSPR&D collectively are referred to herein as "the lawyers."

5.    This Court has jurisdiction under 28 U.S.C. § 1332 as the action is between citizens of different states and countries and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1).

7. Beginning around February 2012, Hierl and HSPR&D, under the direction and supervision of Hierl, undertook legal representation of various copyright owners (termed "rightsholders") whose copyrights may have been infringed. The rightsholder's agent would supply the lawyers with the internet protocol addresses of suspected infringers, the lawyers would then file a John Doe complaint and propound subpoenas to non-party internet service providers to determine the identity of the suspected infringer based on his or her internet address, and upon learning the identity of the suspected infringer, the lawyers were to amend the complaint to name that individual as a defendant. Thereafter the lawyers were to settle the claim with the amended defendant, retaining certain percentages as their contingency fee and for reimbursable costs, and remitting the balance to the rightsholder's agent for distribution to the agent, the rightsholder and the data processing companies which collected information about suspected infringer internet addresses.

8. Millennium became one of Hierl and HSPR&D's rightsholder clients pursuant to an engagement entered into by its prior agent.

9. In late 2019, Millennium switched agents to PML. On December 7, 2020, the lawyers received an email from Millennium's general counsel formally confirming that it had appointed a new agent, and providing:

> notice to HSPRD that PML has assumed the former obligations and liabilities in respect of the copyright enforcement matters and that all payments for past infringements and going forward shall be remitted to PML on behalf of Millenium.

10. The lawyers also agreed to provide Millennium and its agent a monthly report of actions undertaken, expenses incurred, and collections made.

2

11. On April 23, 2019, the lawyers and Millennium's prior agent agreed that, going forward, the lawyers' contingency fee would be based on net collections as opposed to gross collections. In other words, reimbursable expenses such as the court filing fee and subpoena fees would be deducted from any settlement first, and the lawyers' contingency fee then would be calculated based on the lower, or "net," collections.

12. On August 16, 2021, the lawyers also agreed to send counsel for Millennium and PML twelve specified case files so a review of the lawyers' activities and settlements could be further evaluated.

13. Millennium and PML have performed all conditions required of them under the parties' agreement.

## COUNT I
### Breach of Contract

14. Millennium and PML reallege paragraphs 1 through 13, inclusive, as though fully set forth herein.

15. Despite the December 7, 2020 instruction and subsequent demands, the lawyers have refused to remit to PML $69,765.78, which remains due and owing.

16. Despite demand, the lawyers also have refused to remit to PML approximately $61,358.73 that remains owed to Millennium, and in part to PML, based on the calculation of the lawyers' contingency fee from net collections (gross collections minus reimbursable expenses) as opposed to gross collections (the total amount of monies received from amended defendants in settlement).

17. Despite demand, the lawyers have refused to turn over to counsel for Millennium and PML the twelve requested case files, specifically, Northern District of Illinois

3

Case Nos. 18-cv-2370, 18-cv-4271, 18-cv-5068, 18-cv-5073, 19-cv-3796, 19-cv-5777, 19-cv-7163, 19-cv-7514, 20-cv-0369, 20-cv-1394, 20-cv-1395 and 20-cv-1401.

18.     Millennium and PML have been damaged by the lawyers' breach of contract in the amount of $131,124.51 and possibly more as might be shown by a review of the requested case files and other case files.

WHEREFORE, for the foregoing reasons, Millennium Media, Inc. and PML Process Management Ltd. request that judgment be entered in their favor and against Michael A. Hierl, Esq. and Hughes Sokol Piers Resnick & Dym, Ltd., jointly and severally, for at least $131,124.51 in money damages and whatever other damages as may be proven at trial, their costs, their attorneys' fees and whatever other relief this Court deems appropriate.

### COUNT II
### Accounting

19.     Millennium and PML reallege paragraphs 1 through 13, inclusive, as though fully set forth herein.

20.     As lawyers for their client Millennium, the lawyers owe Millennium a fiduciary duty as a matter of law and, accordingly, a duty to account.

21.     Whether the lawyers owe Millennium and its agent PML more money from settlements with amended defendants is complex and cannot be determined without review of the case files.  Due to the unascertainable quantum of unaccounted-for settlements, Millennium and PML lack an adequate remedy at law.

22.     Millennium and PML have demanded the case files for the twelve civil actions listed in paragraph 17 and, despite an early indication that the case files would be tendered to counsel for Millennium and PML, the lawyers continue to withhold the requested case files.

4

WHEREFORE, for the foregoing reasons, Millennium Media, Inc. requests that judgment be entered in its favor and against Michael A. Hierl, Esq. and Hughes Sokol Piers Resnick & Dym, Ltd., jointly and severally, requiring them to account for all matters they undertook on behalf of Millennium, and whatever other damages as may be proven at trial following that accounting, plus costs, attorneys' fees and whatever other relief this Court deems appropriate.

Respectfully submitted,

MILLENNIUM MEDIA, INC. and
PML PROCESS MANAGEMENT LTD.

By: /s/ Paul J. Kozacky
One of their attorneys

Paul J. Kozacky
Brian P. O'Connor
Caitlin Brown
Kozacky Weitzel McGrath, P.C.
77 West Wacker Drive, Suite 4500
Chicago, Illinois 60601
312-696-0900
pkozacky@kwmlawyers.com
boconnor@kwmlawyers.com
cbrown@kwmlawyers.com

5