**Exhibit 4:**

**January 8, 2025 Hearing Transcript (D.I. 552)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                              .    Chapter 7
                                    .
Chicken Soup for the Soul           .    Case No. 24-11442(MFW)
Entertainment, Inc., *et al.*       .    (Jointly Administered)
                                    .
    Debtors.                        .    January 8, 2025
                                    .    2:00 p.m.

. . . . . . . . . . . . . . . . . .

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE MARY F. WALRATH
UNDERLINE UNITED STATES BANKRUPTCY JUDGE

Appearances:

| | |
|---|---|
| Counsel to Chapter 7 Trustee: | Cozen O'Connor BY: JOHN T. CARROLL, ESQ. 1101 N. Market Street, Suite 1001 Wilmington, DE 19801 Phone: (302) 295-2028 Email: carroll@cozen.com |
| Audio Operator: | LESA NEAL, ECRO |
| Transcription Company: | Reliable 1007 N. Orange Street Wilmington, Delaware 19801 (302)654-8080 Email: gmatthews@reliable-co.com |

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

2

**Hearing Regarding:**

Trustee's Application for Approval of Retention of Culpepper IP
LLC as Special Copyright Litigation Counsel (DI 508);

Motion of 800 Third Party Associates, LLC for Allowing Chapter
7 and Chapter 11 Administrative Claims (DI 515).

**RULINGS:** Granted

(Recorded proceedings commence at 2:00 p.m.)

THE COURT:  Good afternoon.  This is Judge Walrath. We're here in my chapter 7 hearings.  The only matter I have going forward is the Chicken Soup case, and I will turn it over to counsel for the trustee to take us through that agenda.

MR. CARROLL:  Thank you, Your Honor.  John Carroll, counsel for the trustee, George Miller.

Your Honor, with respect to the agenda, there really are only two items that are going forward.  I'll start with Item No. 3 which is the trustee's application for the approval of the retention of Culpepper IP as special copyright litigation counsel.

Your Honor, with respect to this application, I received certain informal comments from the Office of the United States Trustee which related to the provisions permitting association with, of the Culpepper firm with other counsel in different jurisdictions to enable the IP litigation to be pursued.

The Office of the United States Trustee requested that we modify the order to provide that basically a verified statement under Bankruptcy Rule 2014 setting forth any connections with the debtor, creditors, parties in interest, their attorneys, accountants of the Office of the U.S. Trustee be filed with respect to any of those associated counsel for those other jurisdictions which the trustee has agreed to do.

4

We need to come up with a language and put it in the order. What I contemplated doing was submitting it under certification of counsel to Your Honor.

We also received an objection which was filed by Mr. Charles Muszynski on a pro se basis. Mr. Muszynski I believe is present on the call.

Mr. Muszynski is a judgment debtor with respect to these debtors in connection with a $250,000 judgment which is held by the debtors. He interposed an objection to Mr. Culpepper's retention. I asked Mr. Culpepper to attend this hearing and he is present, Your Honor.

Candidly, I really have a very difficult time in following the objection, and I'm not sure I understand the objection that was interposed, so I thought I would let Mr. Muszynski put forth his objection and we can respond accordingly if that's okay.

THE COURT: That's fine.

Mr. Muszynski, are you present?

MR. MUSZYNSKI: Good afternoon, Your Honor. Yes, I am. And just as a point of order, it was less than 24 hours ago that the notice was sent out adding witnesses to this. I've had no prior notice of that until nine hours ago when I awoke and found it in my box.

Also, there are intermittent power outages in my country today. And I am not at my normal location. I'm not

normally attired for your appearance, for my appearance in front of you, so I'm at a neighbor's house where they have generator capacity.

I am a little perplexed as to what Mr. Carroll finds confusing about the objection. There's six ways to Sunday proving that Mr. Culpepper is not a disinterested party. He owns 42 Ventures. Although SMV's estate has a $250,000 interest that Mr. Carroll refers to, it is an indispensably joined party with scores of other alleged movie company creditors.

And the objection that I filed thoroughly briefs caselaw and statute, ABA rules, everything that for how frequently and how Mr. Culpepper simply does not qualify to be selected as a special counsel. There are plenty of copyright attorneys.

Mr. Culpepper also has appeared as a fact witness. He has volunteered twice as a witness in the case. He will be called in Nevis, an appended case. He has continuously continued his collection activities despite your automatic stay and the automatic stays of other federal courts. I have documentation of all of that included in the objection.

The -- bear with me just a moment, I have to reference my notes.

And also as far as in the last couple of days, I wanted to make sure that before we proceeded any further, I put

all the parties on notice that I have been cooperating with Chief Inspector Watt (phonetic) with the Royal St. Kitts and Nevis Police White Crimes, White Crimes Division, White Collar Crimes Division and will be working with them on the criminal investigation that will be open into Mr. Culpepper for his violation of the privacy and confidentiality laws under the company's act in Nevis.

Also, it occurred to me that the objection did not include information about the minimum $100,000 bond that will have to be posted if he continues to attempt to make to press his attempt to collect in Nevis. That bond will have to be posted by the estate.

And when the estate loses, which they will, because as a matter of public policy foreign judgements based on statutory damages, and if Mr. Culpepper's case, they're unargued and unnoticed. There was an unnoticed case, it's a default judgment. It doesn't stand a chance here.

If Mr. Carroll has other questions, I'm happy to provide, I mean it's a 38 page brief, there's everything in there.

And when I spoke with the U.S. Trustee, Richard, I apologize, I can't, his last name doesn't immediately come to mind, his concern was that the conflict check hadn't been run with the firm that Mr. Culpepper had subcontracted three years ago in Nevis to pursue his collections. And I'm kind of

curious how an attorney is going to perform a conflicts check after the fact when Mr. Culpepper, without your Court's authorization, has been engaged in collection actions contemptuous of the automatic stay and has already hired not only that subcontractor, but another subcontractor in Puerto Rico.

So I mean there's, there's a multitude of vectors here to go down and I don't think it's worth the Court's time to rehash the 38 pages of legal cites and statutory cites. It's kind of self-explanatory.

So if Mr. Carroll is confused, I'd be happy to answer any questions that may have left him in the dark about my pleading. I'm just a pro se ignorant Pollock who is trying to fend off an attack. And I've done my best to provide all the background.

THE COURT: Mr. Carroll?

MR. CARROLL: Your Honor, I've parsed through pretty carefully the objection, and candidly I think that it's not really comprehensible, nor does it make sense. He is not a creditor, nor is he a party in interest. But what I would suggest is Mr. Culpepper who is represented in the debtors and in connection with the judgment that was previously obtained, should probably respond to some of the comments that were just made.

MR. MUSZYNSKI: Well, I would object to Mr.

Culpepper's entry here.  He is neither, well, there's also a question that Mr. Culpepper himself may be a pro se creditor, so he would be a party of interest.

And I should also say I may not be a creditor of the estate yet, but when he presses the case in Nevis and it loses, they lose, I will become a creditor.  And that money, those monies will be paid out of the hundred thousand cash bond that has to be posted into the court in Nevis before that case can proceed by plaintiffs.

THE COURT:  Well, you're not currently a creditor, Mr. Muszynski.  You have no claim against the estate that's been confirmed by any court or by this Court.

MR. MUSZYNSKI:  Yes, ma'am.

THE COURT:  Right.  And I will hear Mr. Culpepper.  You've made a lot of allegations, some of which are factual and I haven't put you under oath, so I'm not sure I can rely on the facts as you've recited them.

But let me hear Mr. Culpepper's response since Mr. Carroll is not aware of the situation between the debtor and you as you articulate anyway.

Mr. Culpepper?

MR. CULPEPPER:  May it please the Court, Kerry Culpepper of the law firm Culpepper IP LLC.

I previously represented Screen Media Ventures in law suits against certain service providers.  One of those service

providers was a company Mr. Muszynski owned called Liquid VPN. We obtained a judgment in the Southern District of Florida for roughly $225,000 plus attorneys fees and costs based upon Mr. Muszynski's company's willful service for copyright infringement.

We later sought to have that judgment recognized in Nevis. That's when Mr. Muszynski began filing all of his motion practice and allegations against my firm. The subcontracting firm he refers to is the firm that we hired to assert our claim in Nevis where Mr. Muszynski resides.

I disagree with allegations about conflicts of interest in the Screen Media Ventures, full disclosures were made of the other clients that I represent.

In the Southern District Florida litigation, there were other movie companies that were joined with Screen Media Ventures as plaintiffs, you know, that was disclosed.

I'm sorry, does Your Honor have a question for me?

THE COURT: No. Go ahead.

MR. CULPEPPER: The other point. I think he mentioned Puerto Rico. Mr. Muszynski declared bankruptcy and sought to have the judgment discharged in Puerto Rico. So Screen Media Ventures, on behalf of Screen Media Ventures we engaged local counsel to represent Screen Media Ventures to dispute Mr. Muszynski's allegation that the judgment should be discharged. That's ongoing. Mr. Muszynski has appealed the

District of Puerto Rico's denial of his bankruptcy petition.

I don't really know how to respond to his other allegations. If he has a problem with the estate, he can pay the judgment back and he can be done with this entire thing.

If Your Honor has any questions for me, I'm willing to answer anything about this matter.

THE COURT: Well, you did state that you represented other plaintiffs in the new York action as well. Is that correct?

MR. CULPEPPER: Southern District of Florida action, yes.

THE COURT: I'm sorry, the Southern District of Florida action.

Did they have any conflict with the debtors?

MR. CULPEPPER: No, Your Honor.

THE COURT: They were both seeking actions against the defendant, excuse me, for breach of IP rights. Is that right?

MR. CULPEPPER: Sorry, the connection became choppy. They were seeking actions against the defendants?

THE COURT: Against the defendants in the Southern District of Florida action. They all brought the same type of action.

MR. CULPEPPER: Yes, Your Honor, it was the same action.

THE COURT:  Okay.

All right.  Mr. Muszynski, do you have any questions of Mr. Culpepper that are relevant to conflicts of interest?

MR. MUSZYNSKI:  If I may be permitted, yes, ma'am.

THE COURT:  Yes.

MR. MUSZYNSKI:  May I proceed?

THE COURT:  Yes.

MR. MUSZYNSKI:  Okay.  Thank you.

Mr. Culpepper, you just stated that I owned the ISP Company, Liquid VPN.  Is that correct?

MR. CULPEPPER:  My position is yes, that you own the company, Liquid VPN.  You may not have owned it directly, but you owned it through the (indiscernible).

MR. MUSZYNSKI:  Is your testimony to this court that I owned Liquid VPN.  That's what you just told the court.

MR. CULPEPPER:  Yes, Mr. Muszynski, believe you own Liquid VPN.

MR. MUSZYNSKI:  So you've spent the last four years investigating me and the best you can say is I believe.  It is not in your knowledge that AUH20 and 1701 Management owned Liquid VPN?

MR. CULPEPPER:  As I just said, you could own the entity that owns it, but you still own it.

MR. MUSZYNSKI:  So in your knowledge, are you testifying that I own the entity that owns it?

MR. CULPEPPER: There's a judgment in the Southern District of Florida that agrees with me in which you were represented by counsel, Mr. Mackler (phonetic). So yes, you controlled Liquid VPN. You're the manager of Liquid VPN. You signed the asset purchase agreement when you purchased, when your company, 1701 Management, purchased the assets of Liquid VPN from the previous party.

MR. MUSZYNSKI: Is it not true that Richard Mackler represented me to have the case thrown out in the Southern District of Florida without agreeing to jurisdiction or venue because I'm a foreign citizen and was never provided proper service, and that you later admitted that I did not live in Texas where you provided the service?

MR. CULPEPPER: The -- I'm willing to answer his questions, Your Honor. Should I try to answer to the best of my ability because he, that was really a packed question?

THE COURT: I think at this point, Mr. Muszynski, I don't think that going into the merits of the judgment against you is relevant to whether or not he has a conflict in representing the estate in pursuing either collection of that judgment or other rights that the estate may have. So I --

MR. MUSZYNSKI: Yes, ma'am. So if I may be --

THE COURT: I'll limit you to conflicts of interest that you allege.

MR. MUSZYNSKI: Understood. Thank you, ma'am.

13

Mr. Culpepper, do you own 42 Ventures LLC?

MR. CULPEPPER:  Yes.

MR. MUSZYNSKI:  Is 42 Ventures LLC a joined member of the final judgment in which Screen Media Ventures LLC is also a joined member?

MR. CULPEPPER:  They're a judgment creditor, yes. Well, they were a plaintiff also in the case.  They had a claim against 1701 and you.  So to that extent, yes.  I wouldn't use the word, joined.

MR. MUSZYNSKI:  Did you write the final judgment that joined these parties?

MR. CULPEPPER:  No.

MR. MUSZYNSKI:  Did you represent the final judgment that joined these parties between, including 42 Ventures LLC and Screen Media Ventures?

MR. CULPEPPER:  Could you repeat your question?

MR. MUSZYNSKI:  Did you represent the parties as joined members to a final judgment in the Southern District of Florida which joined your company which you wholly own, 42 Ventures LLC, and Screen Media Ventures, LLC along with approximately 38 other nonperforming entities that you represented?

MR. CULPEPPER:  I represented the plaintiffs in the case in the Southern District of Florida, including 42 Ventures.

14

MR. MUSZYNSKI: And 42 Ventures is a joined party in the judgment with Screen Media Ventures.

MR. CULPEPPER: Yes.

MR. MUSZYNSKI: And have you appeared in my cases as a fact witness and pro se?

MR. CULPEPPER: I, in the evidentiary hearing --

MR. MUSZYNSKI: Be careful, this is in all in transcript.

THE COURT: Let him answer your question, Mr. Muszynski.

Go ahead, Mr. Culpepper.

MR. CULPEPPER: In the, in your bankruptcy, when you say your case, I assume you're referring to your bankruptcy. Am I correct?

MR. MUSZYNSKI: Yes.

MR. CULPEPPER: In your bankruptcy, we had an evidentiary hearing in the Eastern District of Texas and I did, I listed myself as a fact witness but I didn't, I wasn't, I didn't ask any questions or I didn't give any testimony if I remember correctly.

MR. MUSZYNSKI: But if you're a pro se.

MR. CULPEPPER: You listed, yeah, because you included me as a creditor in your bankruptcy, my name personally. So I did appear pro se for myself.

MR. MUSZYNSKI: Did you list PML Process Management

15

Limited as a party that you represent and as an interested party in my bankruptcy?

MR. CULPEPPER:  I didn't list them as, I think what you're referring to is in the, when your bankruptcy was dismissed, you appealed to the bankruptcy appeal panel or the First Circuit, and we're required to include a certificate of any interested parties.  And I think that's what you are referring to.  PML was included as an interested party.  Is that what you're talking about?

MR. MUSZYNSKI:  Yes.  Did you disclose to the Delaware District Bankruptcy Court that PML is an interested party as well?

MR. CULPEPPER:  I haven't filed anything in the Delaware Bankruptcy Court.

MR. MUSZYNSKI:  Did you make representations to the trustee that PML was an interested party as required under statute?

MR. CULPEPPER:  PML is not an interested party of Screen Media Ventures.

MR. MUSZYNSKI:  I'll be with you in just a moment.

Did you provide the trustee notice that you will have, the estate will have to post $100,000 bond in order to litigate in Nevis?

MR. CULPEPPER:  I don't believe that's the case.

MR. MUSZYNSKI:  So that's a no?

MR. CULPEPPER:  No.

MR. MUSZYNSKI:  Did you inform the trustee that as a matter of public policy in the Federation of St. Kitts to Nevis, foreign statutory judgments are not honored?

MR. CULPEPPER:  I did not say that because I don't agree with what you're saying.

MR. MUSZYNSKI:  Are you and/or your firm a partner with PML Process Management and are you fee splitting with them as part of a third party litigation funding agreement?  PML being located in the Republic of Cyprus?

MR. CULPEPPER:  No.

MR. MUSZYNSKI:  Is there, on behalf of the estate for Screen Media Ventures, is there an accounting for the fees that you have assessed so far in your collection actions for the joined parties in the judgment?  And how are those fees split amongst the other joined parties relative to SMV's interest?

MR. CULPEPPER:  You need to ask the estate how they're doing their accountings.  I don't know anything about that.  I think what you're asking is how are those costs split among the plaintiffs in the litigation against you.  Is that what you're asking?

MR. MUSZYNSKI:  Yes.

MR. CULPEPPER:  There's an agreement to that, that the costs are allocated based upon the number of titles in the law suit.

MR. MUSZYNSKI:  Are you continuing to collect settlements on behalf of Screen Media Ventures?

MR. CULPEPPER:  I don't believe that question is relevant to what you're asking.  And there are confidential issues --

THE COURT:  What is, what was the question?

MR. MUSZYNSKI:  I asked Mr. Culpepper if he is continuing to extract settlement amounts from people that he is sending demand letters to on behalf of Screen Media Ventures and the other joined movie alleged movie company creditors. The scheme that Mr. Culpepper is running --

THE COURT:  I understand.  I understand.

MR. MUSZYNSKI:  Okay.  So those revenues would belong to Screen Media Ventures' estate and he has not said, he has not denied continuing to collect them.

MR. CULPEPPER:  May I answer this question, Your Honor?

THE COURT:  You may.

MR. CULPEPPER:  If I received money on behalf of Screen Media Ventures since the bankruptcy, I have informed the trustee.  I have not received any money on behalf of Screen Media Ventures since the chapter 7, or since the chapter 11 filing.

MR. MUSZYNSKI:  Have you proceeded in other courts with your collection actions even though this court has not

approved your engagement as a special counsel?  Have you proceeded in other courts with collection actions even though this court has not approved you as a special counsel?

MR. CULPEPPER:  With respect to your, the judgment against you, there was an appeal to the bankruptcy appellant panel.  So to the extent that I continue to represent Screen Media Ventures in that issue, the answer would be yes.  You phrased it as collection activities.

MR. MUSZYNSKI:  Okay.  I'll broaden the question.  Have you continued litigating in Frontier Communications Corporation's chapter 11 on behalf of Screen Media Ventures in the Southern District of New York?

MR. CULPEPPER:  Yes.

MR. MUSZYNSKI:  Did you have approval from this court to do so on behalf of Screen Media Ventures?

MR. CULPEPPER:  No.  That's why we're here today.

MR. MUSZYNSKI:  How long have you been litigating on behalf of Screen Media Ventures without this court's approval?

MR. CULPEPPER:  The case has been going on since 2020, so the bankruptcy was filed in July when the chapter 7, when the case was converted to chapter 7.  I notified the Southern, I notified the Southern District of New York of the chapter 7 liquidation, requested a stay while this was resolved.  The judge never decided on whether or not the stay would happen.  The case has been ongoing.  So to the extent

that something needed to be done, did I proceed with the case, I did proceed with the case.

MR. MUSZYNSKI: Have you continued to litigate in the case of subpoena to Reddit Inc and Voltage Holdings in the Ninth Circuit?

MR. CULPEPPER: Yes. And I filed a motion to substitute the Screen Media Ventures for the chapter, for the chapter 7 trustee that was approved.

MR. MUSZYNSKI: And when did you do that?

MR. CULPEPPER: I don't remember the exact date. I do remember that the motion was approved a week or so ago.

MR. MUSZYNSKI: What is PML's involvement from a financial standpoint as a third party litigation funder on behalf of Screen Media Ventures?

MR. CULPEPPER: Nothing.

MR. MUSZYNSKI: Why is Screen, why is PML appearing as a party of interest?

MR. CULPEPPER: They're not a party in interest in this case. If you're asking why I included them as a party of interest in the bankruptcy appeal panel, that's because they have an interest in the matter. But the interest has nothing to do with Screen Media Ventures or Chicken Soup.

MR. MUSZYNSKI: Does PML provide any funding of any kind to Chicken Soup or Screen Media Ventures?

MR. CULPEPPER: Not to the extent I know of, not for

the cases I've been involved in.

MR. MUSZYNSKI:  Is PML going to receive a split of revenues from those that you collect by settlement demand letters on behalf of Screen Media Ventures or Chicken Soup for the Soul or the other joined creditors, nearly 38 of them?

MR. CULPEPPER:  For Screen Media Ventures or Chicken Soup, not to the extent I know.  I don't believe so.  As respect to your other claimants, nothing has to do with this case and I don't think it's relevant to the question here.  So I would, I decline to answer that part because it's subject to attorney-client privilege.

THE COURT:  Okay.

MR. MUSZYNSKI:  Your Honor, that's the basic route. I can go on and on in other cases where he has continued to litigate in violation of the contempt.  And I don't know that it does any benefit to the court to hear.

THE COURT:  Violation, violation of what contempt?

MR. MUSZYNSKI:  Of the automatic stay in this case.

THE COURT:  Well this, the automatic stay protects the debtor, not the defendants that he is suing.  A debtor can continue to prosecute actions against others.  The automatic stay protects the debtor and the debtor's estate.  So I think you have it in reverse.  It doesn't protect you.

Mr. Carroll, do you want to be heard on --

MR. MUSZYNSKI:  I'm sorry.

MR. CARROLL: No, Your Honor. I don't believe that Mr. Culpepper has a conflict. He was counsel of record in some cases. Candidly, that's what made sense for the trustee to continue in a large part to utilize his services going forward which is why we filed the application to have him employed as special counsel on basically a contingent fee basis.

THE COURT: Mr. Muszynski?

MR. MUSZYNSKI: Your Honor, I believe my filing is fully briefed with statute, ABA rules and precedent and clearly shows examples of how Mr. Culpepper has continued to litigate without the authorization from this court and is conflicted and not a disinterested party. He owns 42 Ventures which is a part of the roughly 41 other joined creditors in this case. He is absolutely not disinterested. He is absolutely conflicted.

THE COURT: Mr. Carroll?

MR. CARROLL: Your Honor, I don't see a conflict in representing another party. He's undertaking to represent the debtor and is doing so based on a percentage of recovery on behalf of the debtor. So I really don't see a conflict at all.

THE COURT: And this is a retention under 327(e). Is that not correct, Mr. Carroll?

MR. CARROLL: Yes.

THE COURT: Well, I will rule this way. I do not see any conflict that Mr. Culpepper has with respect to representing the estate and -- could you turn that down -- with

respect to -- just a minute.  All right, let me try again.  I do not find any conflict --

(audio issue)

THE COURT:  Mr. Muszynski, can you mute your line?  I think that's why I'm getting an echo?  Okay.

I do not find any conflict in Mr. Culpepper representing this estate and the other plaintiffs in pursuing other parties that the other plaintiffs and the estate have similar claims against.

As the trustee has stated, it appears there is a savings in having that retention rather than getting another attorney to start from scratch.  Mr. Culpepper has continued to represent those parties prepetition and continuing to protect the interest of the plaintiffs and the estate while his retention application is pending is not a conflict.

As I stated, the automatic stay does not protect the defendants in that action, it only protects the debtor and its estate.  I further do not find any conflict in the retention, the terms of the retention which is that Mr. Culpepper and his firm will receive a percentage of funds collected on behalf of the estate only.

Section 327(e) allows a party who has previously represented the debtor to now represent the trustee in that same manner.  And I think it's perfectly appropriate that the trustee has selected to continue Mr. Culpepper's

representation.

So I will overrule the objection and grant the retention application.

All right. The next matter, Mr. Carroll?

MR. CARROLL: Thank you, Your Honor. The next matter is Item No. 5 on the agenda which is the motion of 800 Third Avenue Associates for entry of an order allowing both a chapter 7 administrative claim and a chapter 11 administrative claim.

The trustee filed a limited objection with respect to the motion, and submitted a revised form of proposed order which would allow the chapter 11 administrative claim in the amount sought and also allow the chapter 7 administrative claim.

The basis for the trustee's objection was the request for an order compelling the trustee to make immediate payment of the chapter 7 administrative claim. The limited objection sets forth the reasons why we would oppose that. The primary reason is that this is a case where there are not any unencumbered funds presently with which to make such a payment.

Additionally, under the case law, it's really discretionary in terms of the trustee when he's going to make those payment. It's detrimental to the estate in that if he were to make the payments, he may not have the ability to pursue other causes of action which would enure to the benefit of the estate and to all of the creditors in this matter.

24

We don't have a problem with allowing the claim, but we have difficulty with respect to the making of an immediate payment, Your Honor.

THE COURT:  Thank you.  Anyone here on behalf of the landlord.

MR. MANN:  Yes, Your Honor, Kevin Mann on behalf of the landlord.  I apologize, my screen says Cross & Simon and I haven't been able to change that.  So you'll just have to bear with me.

Kevin Mann on behalf of 800 Third Avenue Associates LLC.  800 was the landlord for the debtors' New York offices. The debtors filed their chapter 11 petition on June 28th of 2024 and remained in the premises after that.  And then on July 10th, the case was converted, the chapter 7 trustee was appointed.  And then on July 29th, the trustee cleared out the premises and surrendered possession to the landlord.

So, and then I'm not sure if it was Your Honor or Judge Horan, but an order was entered rejecting the lease as of July 31st.  So between the petition date and the conversion date, the debtors accrued rent of $42,519.54.  And then between conversion and surrender, the estate accrued rent of $70,500.40.  And none of this post-petition rent has been paid.

The landlords moved under 365(d)(3) and 503(b)(1)(a) for allowance of the admin claim and for immediate payment of the chapter 7 portion.  As Mr. Carroll noted, the trustee has

indicted does not have an objection to the allowance of the admin claim or the amount and no other objections were filed, they didn't hear from anybody else. But the trustee has objection to the immediate payment so I did want to address that.

First, Your Honor, as Mr. Carroll said, the trustee asserts he has no unencumbered cash and making payment now would be inequitable.

The cases that the trustee cites in his objection give the trustee discretion as to when to pay administrative claims. And he says that there's nothing in the code that requires immediate payment and that the landlord is not special. And I think this argument completely ignores Section 365(d)(3). The landlord is special because it was a post-petition lesser of non-residential real property.

So under 365(d)(3), the trustee is required to timely perform all the obligations of the debtor arising from and after the order for relief under any unexpired lease of non-residential real property until such lease is assumed or rejected.

And under Montgomery Ward, the court, the Third Circuit held the clear and express of 365(d)(3) is to require the trustee to perform the lease in accordance with its terms. So 365(d)(3) ensures prompt payment of lease obligations so the landlord is not required to provide use of the leased premises

26

to a debtor without receiving timely compensation under the terms of the lease. And it operates to prevent landlords from becoming involuntary creditors of a debtors' estate.

There is a New Jersey case, in re Pelican Pool and Ski Center, but it does cite to Montgomery Ward that said, "In other words, if the obligations under the lease become due following the petition date and prior to the rejection of the lease, the obligations are payable immediately."

As far as I can tell, there's no Third Circuit case law that says otherwise. Montgomery Ward also held that, "Congress intended the debtor perform all the obligations at the time required by the lease."

As far as the trustee's assertion that he doesn't have unencumbered cash, and no offense to Mr. Carroll, but we haven't seen any evidence of that or that any evidence of the case of administrative insolvent. It doesn't appear from my review of the docket that the debtors ever filed schedules, and there's nothing that appears on the docket showing the debtors' liens or the estate's financial position as far as I've been able to tell as well.

But even if the case is administratively insolvent or in danger of becoming administratively solvent, that really shouldn't matter here. In the other, I'm sorry, other cases in this circuit have upheld the requirement of immediate payment and the landlord's right to retain such payments even when

27

faced with an estate's later administrative insolvency. And that comes from the Valley Media case from this court, Your Honor.

Finally, if the Court is concerned about how 365(d)(3) operates in chapter 7 versus chapter 11, there's a recent case out of New Jersey called Junk Handle Brewing Company, and it's unpublished but it's at 2024 WL 2819626. It takes on this issue and that court specifically says, "The structure of 365 as a whole does not support a different application of 365(d)(3) in chapter 7 cases versus chapter 11 cases." It goes on to say, "If congress had intended for different treatment of unexpired leases of non-residential real property in those chapters, it could have made a similar distinction, but it did not." This evidences an intent on the part of Congress to protect landlords in both chapter 11 cases as well as chapter 7 cases.

So, with that, Your Honor, 800 Third Avenue Associates respectfully requests that the Court grant it its administrative expense claim and direct, I'm sorry, and direct immediate payment of the chapter 7 portion.

THE COURT: Well, let me ask you this. Montgomery Ward says it's due when, it's due on the first of the month is it not?

MR. MANN: I'm not sure under this lease, Your Honor, but I believe so.

28

THE COURT:  The case was converted July 10th and it was rejected July, the lease was rejected July 31st, so what amounts are due under the lease for the chapter 7 period before rejection?

MR. MANN:  Your Honor, that's broken down in the motion.  From the time of the petition date through the date of conversion it was $42,519.

THE COURT:  I understand.  But my question is what specific performance, i.e., the payment of rent, if it was due July 1st, it wasn't due July 10th, 11th, 12th, etc.  You're giving me a pro rata assessment of the rent rather than a when it's due analysis.

MR. MANN:  Your Honor, if that's the case, then the rent would have been due July 1st and it was never paid.

THE COURT:  Correct.  But the trustee was not, the case had not been converted July 1st.  So there's no performance that the trustee has not made.  You may have a chapter 7 claim on a pro rata basis as an administrative claim, but I don't think you have a 365(d)(3) claim, do you?

MR. MANN:  Well, Your Honor, I ask why is the debtor not, I'm sorry, why is the trustee not required to timely perform?  If the, if the rent was due and it was never paid by the debtor, shouldn't it have been paid by the trustee even if it was ten days late?

THE COURT:  Mr. Carroll?

MR. CARROLL: One issue that we did not get into is the, you know, there was no post-petition post-conversion agreement with the trustee. The trustee inherited this lease. I'm not sure there was any true benefit. And you know candidly I dealt with this situation many number of times, and this is an amazingly quick resolution. You have the main office of Chicken Soup which the trustee manages to get out of almost immediately, manages to reject almost immediately and it's a fantastic sort of result.

But, you know, we're willing to allow the administrative claim but the reality is there are not funds with which to make the payment. The trustee did to the best of his ability immediately reject, immediately got out by hook or crook and that's where we stand.

The other issue I might want to point out is there is no administrative claim bar date in this case so we do not know what the universe of additional claims might be, that would have to share in parity. That's the reason why it shouldn't be paid at this point in time from a practical perspective either.

THE COURT: Yeah. I think that the landlord may have an administrative claim, but I don't think that the landlord has the right to demand payment under 365(d)(3). In fact, I think that was the whole point of the Montgomery Ward case was that if the bankruptcy was filed on the 10th of July itself, all of the rent for July that was due on July 1st would be a

prepetition claim.  I don't know why it's different for the conversion date.

MR. MANN:  Your Honor, July 1st was after the petition date.

THE COURT:  I understand.  I'm doing it by analogy.

MR. MANN:  Okay.

THE COURT:  I'm analogizing the Montgomery Ward ruling to a conversion date.  And I think that the analysis applies equally here that because the amount of the rent for July was due July 1st, the trustee had no obligation to pay it promptly.

MR. MANN:  So essentially, Your Honor, you're treating, you would treat the post-conversion amount as equivalent to stub rent?

THE COURT:  Correct, correct.

MR. MANN:  Okay.

THE COURT:  You'd have a claim for the stub rent as an administrative expense.  Okay?  So I will I guess sustain the trustee's objection which is not to allowance of the claim, but to any payment of it immediately.

MR. MANN:  Thank you, Your Honor.  I'll get with Mr. Carroll and we'll put a, we'll put an order in.

THE COURT:  All right.

Anything else then, Mr. Muszynski, do you have something further?

Case 24-11442-MFW   Doc 806-6   Filed 05/28/26   Page 32 of 33

31

MR. MUSZYNSKI: Yes, Your Honor. Thank you. How long will it be before transcripts are available to order?

THE COURT: Before what are available?

MR. MUSZYNSKI: Transcripts of this proceeding. I'm not familiar with your district, how long those usually take.

THE COURT: I think they have to be ordered, and then I think --

MR. MUSZYNSKI: Yes, ma'am.

THE COURT: -- then I think it takes, I don't know, I'm not sure.

MR. MUSZYNSKI: Also, I wanted to ensure that the court understood that in the case of Nevis, a $100,000 cash bond must be deposited with the court in Nevis to proceed. I just want to make sure that was on the record.

THE COURT: You can say that, but there's no evidence of that and that is not before me today so I don't really --

MR. MUSZYNSKI: Understand.

THE COURT: -- need to know that.

MR. MUSZYNSKI: I just want to make sure I got it preserved on the record. Thank you.

THE COURT: Understood. All right. We'll stand adjourned then. Thank you.

(Proceedings adjourned 2:47 p.m.)

* * * * *

32

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of our knowledge and ability.

/s/ Theresa Pullan                          January 17, 2025

Theresa Pullan, CET-780

Certified Court Transcriptionist

For Reliable