**Exhibit 22:**

*In re Martin*, 91 F.3d 389 (3d Cir. 1996)

**91 F.3d 389 (1996)**

### In re John C. MARTIN; Sally A. Martin, Debtors.
### Jo Ann MYERS; Melvin Morane
### v.
### John C. MARTIN; Sally A. Martin, John C. Martin and Sally Martin, husband and wife, Appellants.

No. 95-1581.

**United States Court of Appeals, Third Circuit.**

Argued March 12, 1996.
Decided May 7, 1996.
Publication Ordered July 26, 1996.

*390 *391 Michael B. Goodman, Steven H. Lupin (argued) and Carl N. Weiner, Hamburg, Rubin, Mullin, Maxwell & Lupin, Lansdale, PA, for appellants.

Kevin J. Sommar (argued), Sommar, Tracy & Sommar, Lansdale, PA, for appellees.

Before: NYGAARD, SAROKIN and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This appeal by a creditor arises from a district court judgment reversing a bankruptcy court's order disapproving a stipulation of settlement entered into by the Appellees and the trustee for the debtors that mutually released all claims between them relating to the sale of the debtors' home to the Appellees without any payment by either party.

The question for decision is whether the bankruptcy court abused its discretion by disapproving the stipulation after a jury verdict was entered in favor of the debtors and against the Appellees in a non-core proceeding in state court properly remanded there by the bankruptcy court. *Eichenholtz v. Brennan, 52 F.3d 478, 487 (3d Cir.1995)* (standard of review). The district court had jurisdiction under 28 U.S.C. § 158(a), and reversed the bankruptcy court. We have jurisdiction under 28 U.S.C. § 158(d), and find no abuse of discretion by the bankruptcy court. We therefore will reverse the district court judgment.

## I.

This contest began with a mine-run dispute between parties to a real estate contract. In the spring of 1988, John and Sally Martin contracted to sell their house in Green Lane, Pennsylvania to Jo Ann Myers and Melvin Morane (hereafter jointly referred to as "the Myers"). After the contract was executed, the Myers refused to complete the purchase of the house, alleging, *inter alia,* that the septic system was in need of repair. Both parties eventually initiated actions in the Pennsylvania Court of Common Pleas for breach of contract; the Martins prayed for damages, and the Myers sought specific performance. In addition, the Myers filed a *lis pendens* against the Martins' property, preventing its sale and limiting its value as a source of loan collateral.

Because the Martins were relying on the real estate sale proceeds to service accumulated debts, this dispute caused them to suffer extreme economic hardship. Indeed, on February 12, 1992, the Martins filed a voluntary Chapter 7 bankruptcy petition. The Chapter 7 filing stayed the Myers' action, and the Martins' action became property of the estate. Both actions subsequently were labeled non-core proceedings and were remanded to the Court of Common Pleas.

The series of events that followed disclose some tension between the debtors and the trustee for the estate, or at least a fundamental breakdown in communications. The trustee announced to the bankruptcy judge on September 14, 1993, that she had reached an agreement with the Myers, resolving their dispute with the debtors, and providing for a mutual release of the two state court actions. Assuming that there was an open-ended trial date for the state court action (as this had been true for approximately a year-and-a-half), and that delay was detrimental to the estate, the trustee believed that she was acting in the best interests of the creditors by entering into this compromise. The terms were memorialized in a written stipulation of settlement filed by the trustee and *392 the Myers on December 17, 1993. On December 23, 1993, the bankruptcy court approved the stipulation.

The Martins then filed an objection to the stipulation, on the ground that the bankruptcy court had approved the stipulation in violation of Rule 9019(a), Federal Rules of Bankruptcy Procedure, which provides:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

The bankruptcy court acknowledged that its prior approval was premature, and vacated the prior approval. The bankruptcy court formally noticed the debtors and, on January 13, 1994, held a hearing on the trustee's motion to approve the stipulation.

At the hearing, the debtors objected to the stipulation because their state court action against the Myers was ready for trial. Apparently, the trustee had not informed the debtors of her negotiations with the Myers regarding the possibility of a mutual release of claims. And meanwhile, unbeknownst to the trustee and the bankruptcy court, the Martins had convinced the state court to grant an expedited trial date of January 31, 1994. Recognizing the potential to recover additional property for the estate, the trustee "did not argue in favor of its ... [m]otion" to approve the stipulation. Brief of Appellees at 5. When called to testify by the Myers' counsel, who argued in favor of the trustee's motion, the trustee's counsel stated that, although she [the trustee] believed the stipulation was in the best interest of the estate at the time she signed it, she would not have agreed to the stipulation had she known of the expedited trial date arranged by the Martins. N.T. (1/25/94) at 3-8.

After hearing extensive testimony on the merits of both pending state court suits, the bankruptcy court engaged in a discussion with counsel regarding the forthcoming trial in the state court. In this dialogue, the Myers' counsel indicated that resolution of the state trial would have no effect on the validity of the stipulation. The bankruptcy court deferred ruling on the trustee's motion to approve the stipulation until a date certain, to wit, February 8, 1994.

Meanwhile, the Martins' state court action proceeded to trial on January 31, 1994, and the Martins obtained a jury verdict of $150,500 against the Myers. Thereafter, on February 8, 1994, the bankruptcy court informed the parties that the court was aware that the state court trial had occurred, and inquired as to the results. The Myers' counsel objected to the introduction of the jury verdict into the record because "the hearing had concluded on the trustee's motion to approve the stipulation" and because the trustee had acted "in contravention of that stipulation [by] authoriz[ing] special counsel to proceed with the action that [s]he agreed was ended with respect to us." N.T. (2/8/94) at 3.

Faced with the potential increase of $150,500 in the bankruptcy estate, the bankruptcy court denied the pending motion to approve the stipulation, explaining:

> [T]he result's pretty obvious what I have to do. If I were going to grant that motion, and I felt sure it should be granted, I would have granted it. I wouldn't have made the poor Court go through a jury trial. I mean I wouldn't have wasted the taxpayers' money to that extent if I had a question. But I wanted to see whether it was actually going to come off, because I thought there was a possibility. It may not come off again. And then I wasn't going to piddle around anymore. But it did come off, apparently. And I had no idea what the result would be, obviously, although the Judge did call me beforehand because he wanted to make sure that he should go forward with it. And I said, yeah, as far as I know you can. And I assumed they would, and they did, obviously. So I won't approve that stipulation.

N.T. (2/8/94) at 8. An order denying the motion was filed the following day.

On February 18, 1994, the Myers filed a notice of appeal with the district court, challenging the bankruptcy court's order denying the trustee's motion. The district judge scheduled a telephone conference with the counsel for the parties on May 19, 1995, after *393 which the district court entered an order reversing the bankruptcy court's order and remanding the matter back to the bankruptcy court with instructions to approve the stipulation entered into between the trustee and the Myers. The district court determined that the trustee had violated her duty of good faith and fair dealing by refusing to support her own motion to approve the stipulation and by authorizing the Martins to pursue a state court claim subsequent to entering into a valid settlement agreement with the Myers. This appeal by the debtors followed.

## II.

To minimize litigation and expedite the administration of a bankruptcy estate, "[c]ompromises are favored in bankruptcy." 9 *Collier on Bankruptcy* ¶ 9019.03[1] (15th ed.1993). Indeed, it is an unusual case in which there is not some litigation that is settled between the representative of the estate and an adverse party. Under Bankruptcy Rule 9019, a bankruptcy judge has the authority to approve a compromise of a claim, provided that the debtor, trustee and creditors are given twenty days' notice of the hearing on approval of a compromise or settlement by the trustee. Bankruptcy Rule 2002(a)(3).

Here, the ultimate issue on appeal is whether the bankruptcy court abused its discretion when it disapproved the compromise. This particular process of bankruptcy court approval requires a bankruptcy judge to assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal. Taking our cue from *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25, 88 S.Ct. 1157, 1163-64, 20 L.Ed.2d 1 (1968), we recognize four criteria that a bankruptcy court should consider in striking this balance: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. See *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D.Pa.1986).

Our consideration of these four factors supports the bankruptcy court's decision to disapprove the stipulation. First, when the stipulation was disapproved, the debtors' probability of success was 100 percent, because the verdict already had been obtained. Second, the record reveals no expected difficulty in collection. Third, again because the verdict already had been obtained, there was neither inconvenience nor delay. And fourth, the interest of all creditors was served by collecting an additional $150,500 as property of the estate. Considered together, these factors clearly militate in favor of the bankruptcy court's decision to disapprove the stipulation, and thus suggest that there was no abuse of discretion.

## III.

The district court reversed the bankruptcy court, however, because "the trustee did not act consistently with her obligation of good faith and fair dealing." 1995 WL 389592 at *11. The district court reasoned that the trustee was obliged to honor the compromise she had struck with the Myers, and that her failure to do so constituted a breach of the duty of good faith and fair dealing. The district court concluded therefrom that the bankruptcy court should not have taken the expedited trial date or the outcome of the state court trial into consideration in deciding the motion to approve the stipulation.

We have no quarrel with the district court's statement that the trustee was required to deal with the Myers with "honesty in fact in the conduct or transaction concerned ... and [to] refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract." 1995 WL 389592 at *11 (citations and quotations omitted). The *Restatement (Second) of Contracts* § 205 implies a duty of good faith and fair dealing for all contracts; the Restatement position has been adopted in Pennsylvania in limited situations, including a trustee's duty as a fiduciary to the creditors of an estate. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, *394 354-55, 105 S.Ct. 1986, 1993-94, 85 L.Ed.2d 372 (1985); *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 701 (3d Cir.1993). Accordingly, the district court was correct in emphasizing the role of the trustee as a fiduciary.

However, a trustee has a fiduciary relationship with *all* creditors of the estate. See *Weintraub*, 471 U.S. at 354-55, 105 S.Ct. at 1993-94. Indeed, under the Code a trustee must investigate all sources of income for the estate and "collect and reduce to money the property of the estate." 11 U.S.C. § 704(1). She has the duty to maximize the value of the estate, *Weintraub*, 471 U.S. at 353, 105 S.Ct. at 1993, and in so doing is "bound to be vigilant and attentive in advancing [the estate's] interests." *In re Baird*, 112 F. 960, 960 (E.D.Pa.1902). In sum, "it is the trustee's duty to both the debtor and the creditor to realize from the estate all that is possible for distribution among the creditors." 4 *Collier on Bankruptcy* ¶ 704.01 (15th ed.1993). Thus, this trustee was faced with a conflict between her fiduciary duty to the creditor body as a whole and the alleged duty to go forward with a settlement agreement favoring one creditor but otherwise detrimental to the estate.

We cannot require a trustee herself to choose between these conflicting legal obligations. Rather, Rule 9019(a) demonstrates the legislature's intent to place this responsibility with the bankruptcy court. In order to make such a determination, the bankruptcy court must be apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate. Accordingly, the trustee should inform the court and the parties of any changed circumstances since the entry into the stipulation of settlement. The trustee may even opt not to argue in favor of the stipulation, as was done here, if she no longer believes the settlement to be in the best interest of the estate. The trustee does not breach any term of the stipulation by doing so, for the bankruptcy court may nonetheless approve the settlement.

Hence, we reject the proposition that a trustee is required to champion a motion to approve a stipulation that is no longer in the best interest of the estate. This trustee did not flout or breach any term of the stipulation.[1] Nor did she withdraw the motion to approve the stipulation. Rather, at the hearing, the trustee simply elected not to argue in favor of her motion. Thus, the very nice question before us is the proper conduct of a trustee in her responsibility to all creditors, the debtor and the court. This appeal raises a very narrow issue, and we will not expand the matter beyond its perimeters. Accordingly, we will not constrain a bankruptcy trustee from fulfilling her statutory duty to the estate and the creditor body as a whole by preventing her from informing the court and the parties of changed circumstances.

This interpretation comports with our understanding of the Bankruptcy Rules and Code. Settlement agreements frequently involve the disposition of assets of the estate. The Code contemplates these transactions, but restricts a trustee's ability to use and sell such assets. Section 363 provides:

> The trustee, *after notice and a hearing,* may use, sell, or lease, other than in the ordinary course of business, property of the estate.

11 U.S.C. § 363(b)(1) (emphasis added);[2] *see In re Roth American, Inc.,* 975 F.2d 949, 953 *395 (3d Cir.1992) (post-petition extension of collective bargaining agreement was outside ordinary course of business and was not enforceable where not approved under Section 363). The instant agreement compromised an asset of the debtors' estate. And clearly, this act ventured beyond the domain of transactions that the Martins encountered in the ordinary course of business prior to the filing of bankruptcy, thereby implicating Section 363. *See In re Roth American, Inc.,* 975 F.2d at 954. The import of Section 363 is that a trustee is prohibited from acting unilaterally; this schema is intended to protect both debtors and creditors (as well as trustees) by subjecting a trustee's actions to complete disclosure and review by the creditors of the estate and by the bankruptcy court.

The approval process thus is integral to the proper functioning of a liquidation, and the court relies heavily on the trustee, who is entrusted to represent the creditor body. Indeed, under normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification. *In re Schipper,* 933 F.2d 513, 515 (7th Cir.1991). If, however, a trustee is prohibited from informing the court of changed circumstance, or from advocating on behalf of creditors in light of changed circumstances, a bankruptcy court could proceed without full information, and the creditor body could suffer.

Accordingly, we conclude that the better course is to allow a trustee who fulfills her statutory duty to maximize assets of the estate the opportunity to report the change in circumstances to the court and to the creditors; such an act without more would not constitute a breach of contract. What the trustee did here was to fulfill her obligations to *all* creditors, as required by, *inter alia,* 11 U.S.C. § 704(1). Although a party to the stipulation, the trustee was not bound to vigorously urge the court to accept it in light of changed circumstances that added $150,500 to the corpus of the bankruptcy estate. Indeed, had she done so, a serious question of breach of a fiduciary responsibility to all creditors would have arisen. Moreover, she took no affirmative steps to withdraw the motion to approve, but simply supplied additional information to the court, disclosing the state court verdict.

Thus we conclude that the trustee did not breach the settlement by allowing the Martins to proceed with the trial pending the bankruptcy court's approval of the settlement. While we recognize that some jurisdictions have concluded that a stipulation of settlement is binding upon the parties pending approval of the settlement by the bankruptcy court, *see, e.g., In re Lyons Trans. Lines, Inc.,* 163 B.R. 474, 476 (Bankr. W.D.Pa.1994); *In re Columbus Plaza, Inc.,* 79 B.R. 710, 715 (Bankr.S.D.Ohio 1987); *In re Tidewater Group,* 8 B.R. 930, 933 (Bankr. N.D.Ga.1981); *but see In re Sparks,* 190 B.R. 842, 845 (Bankr.N.D.Ill.1996) (holding bankruptcy court approval a prerequisite to enforceability), we think that such a rule is inapplicable to the unique facts of this case.

Here, the bankruptcy judge deferred his determination of whether to approve the settlement for the express purpose of seeing whether the trial would actually take place. The judge thus essentially issued a stamp of approval to behavior on the part of the trustee that is violative of the settlement — i.e., permitting the Martins to proceed with the trial despite the agreement to settle the litigation. We conclude that where a bankruptcy court formally endorses a course of action pending its approval of a stipulation of settlement, no party who follows this course of action can be found to have breached the settlement. We emphasize that in reaching this conclusion we do not decide the broader issue of whether, absent intervention of a bankruptcy court, parties are bound by the terms of a settlement pending final approval of the bankruptcy court.[3]

*396 Accordingly, we conclude that the conduct of this trustee did not constitute a breach of her duty of good faith and fair dealing. In ruling that such a breach occurred, the district court erred. The bankruptcy court's subsequent disapproval of the stipulation agreement was within the sound discretion of the bankruptcy court.

## IV.

We have considered all arguments advanced by the parties and conclude that no further discussion is necessary.

We will reverse the judgment of the district court reversing the bankruptcy court.

[1] The district court also found that the trustee breached her duty of good faith by authorizing the Martins to pursue the state court action after she had entered into the stipulation of settlement with the Myers, a mere week before the trial was to begin. It does not appear from the record, however, that the Myers ever raised before the bankruptcy court an objection that the Martins had not been authorized to proceed to trial on their own behalf. Furthermore, we suspect the Myers made no such objection because, as is evident from a letter the Martins submitted to the district court with their motion for a stay, the trustee had actually authorized the Martins to proceed a year and a half earlier. The letter from the Martins' counsel to the trustee's counsel dated November 5, 1992 reads: "It is my understanding that you have already spoken with Carl N. Weiner, Esq. of this office and you have agreed that we may proceed with prosecuting the claims that have been raised in the aforementioned case." App. at 86-87.

[2] Section 363 of the Code is the substantive provision requiring a hearing and court approval; Bankruptcy Rule 9019 sets forth the procedure for approving an agreement to settle or compromise a controversy.

[3] We note that the starting point of the district court's reasoning was predicated on the proposition that the trustee was contractually bound to the appellees pending approval by the bankruptcy court. However, the district court relied only on bankruptcy court cases supporting the notion of contractual liability prior to court approval, and did not discuss contrary authority. Moreover, there was no discussion of 11 U.S.C. § 363 or of the teachings of *In re Roth American, Inc.*, 975 F.2d 949, 953 (3d Cir.1992). Thus the district court's reasoning is somewhat enthymematic, relying on premises both stated and assumed, and such reasoning "will only lead to a correct conclusion if the assumed and stated premises are also correct. " Aldisert, *Logic For Lawyers: A Guide to Clear Legal Thinking* 55 (1989). Indeed, it is well established that "an argument fails to be sound, and we ought not to accept its conclusion, if ... one or more of its premises is false." Aldisert, *The Judicial Process: Text, Materials and Cases* 433 (2d ed.1996). We leave for another day evaluation of the district court's abstract premise that parties to a stipulation are contractually bound *inter sese* pending approval by a bankruptcy judge.

Save trees - read court opinions online on Google Scholar.