UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE: ) Chapter 7

CHICKEN SOUP FOR THE SOUL )
ENTERTAINMENT, INC., *et al.*, ) Case No. 24-11442 (MFW)
)
) (Jointly Administered)
     *Debtors*. ) (Re: D.I. 789 Emergency Motion
) Hearing, 10 June 2026)

**NOTICE OF FILING DELAYED AND SUPPLEMENTAL EXHIBITS IN
SUPPORT OF PENDING EMERGENCY MOTION AND SUPPLEMENTAL
MOTION; APOLOGY FOR DELAYED SUBMISSION**

**TO THE HONORABLE MARY F. WALRATH, U. S. BANKRUPTCY JUDGE:**

  Charles Muszynski ("Movant"), a creditor and party-in-interest, appearing *pro se*, respectfully submits this notice to formally file delayed and new supplemental exhibits in further support of his pending **Emergency Motion (D.I. 789)** and **Revised Enhanced Supplemental Motion (D.I. 806)**, both of which are scheduled for hearing on June 10, 2026.

**SECTION I - LIMITED APPEARANCE**

  Movant makes this Limited Appearance pursuant to Fed. R. Bankr. P. 7004 and this Court's inherent authority SOLELY for the purpose of submitting these supplemental exhibits and bolstering the pending motions. Movant expressly reserves and does not waive any defense, objection, or privilege, including but not limited to: (a) challenges to personal jurisdiction; (b) improper venue; (c) forum non conveniens; (d) all defenses under the Eleventh Amendment; (e) immunity from service of process; and (f) all appellate rights under FRBP 8002. This appearance is strictly

limited to the specific purpose of seeking emergency relief and shall not be construed as a general appearance or submission to this Court's jurisdiction for any other purpose.

## SECTION II - PRO SE PROTECTIONS

Movant appears *pro se* and respectfully reminds the Court that his filings must be construed under the liberal standards mandated by the Supreme Court. *See Haines v. Kerner*, 404 U.S. 519 (1972) (*pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers"); *Erickson v. Pardus*, 551 U.S. 89 (2007). This Court is charged with interpreting such filings to allow for the development of a potentially meritorious claim. *Boag v. MacDougall*, 454 U.S. 364 (1982). As this District has recognized, because Movant proceeds *pro se*, his "pleading is liberally construed." *Smith v. Laurel Police Dept.*, No. 21-1279-LPS, 2022 WL 1155823 (D. Del. Apr. 19, 2022).

## SECTION III - INTRODUCTION AND APOLOGY FOR DELAY

This Notice serves two important procedural purposes. First, it formally submits exhibits that were previously identified in Movant's **Emergency Motion (D.I. 789)** but were not then attached and delivered in a consolidated, substantively complete form. Second, this Notice provides **new supplemental exhibits** that provide direct, documentary evidence of the fraud and misrepresentation underlying the S.D.F.L. proceedings.

Movant respectfully apologizes to the Court and opposing counsel for the delayed formal submission of these exhibits. This delay was the unintentional result of Movant's *pro se* status, his remote location in the island Federation of St. Christopher

and Nevis, intermittent courier, power, and connectivity issues, and his unfamiliarity with certain ECF filing protocols. Movant has acted quickly in good faith to correct this procedural deficiency and respectfully requests that the Court accept all exhibits filed herewith as supplemental to the pending motions. The exhibits attached hereto are true and correct copies of documents in Movant's possession or control, or obtained from public court records, submitted upon information and belief as indicated.

**SECTION IV - DELAYED EXHIBITS (PREVIOUSLY IDENTIFIED)**

Movant hereby formally files the following exhibits, continuing the sequential numeric numbering from his Revised Enhanced Supplemental Motion (D.I. 806), which listed Exhibits 1-25:

- **Exhibit 26:** January 8, 2025 Hearing Transcript (D.I. 552); previously cited as Exhibit A to D.I. 789

- **Exhibit 27:** Nevis High Court Order (May 15, 2025) (D.I. 680-1); previously cited as Exhibit B to D.I. 789

- **Exhibit 28:** HPS Sharing Agreement (D.I. 687-4); previously cited as Exhibit C to D.I. 789

- **Exhibit 29:** American Films, Inc. Revocation (Florida Secretary of State, 2024); previously cited as Exhibit D to D.I. 789

- **Exhibit 30:** Culpepper SDFL Motion (S.D.F.L. Case No. 21-cv-20862, Doc. #594, April 29, 2026); previously cited as Exhibit E to D.I. 789

- **Exhibit 31:** Heirl Letter / Third-Party Litigation Funding Evidence — previously cited as Exhibit F to D.I. 789

## SECTION V - NEW SUPPLEMENTAL EXHIBITS[1]

Movant hereby files the following new supplemental exhibits, continuing the sequential numbering:

- **Exhibit 32:** S.D.F.L. Order Sanctioning Kerry S. Culpepper in the amount of $11,700 (S.D.F.L. Case No. 1:21-cv-20862, Doc. #532); previously submitted as part of Exhibit 11 in D.I. 806

- **Exhibit 33:** S.D.F.L. Order Sanctioning Joel B. Rothman in the amount of $249,357.50 (S.D.F.L. Case No. 21-cv-80740, D.E. 66); previously submitted as part of Exhibit 12 in D.I. 806

- **Exhibit 34:** Email Admissions Regarding PML Process Management Limited; previously submitted as Exhibit 15 in D.I. 806

## SECTION VI - EXPLANATION OF NEW EXHIBITS

The new exhibits (32-34) are not cumulative. **Exhibits 32 and 33** are judicial findings establishing a pattern of "vexatious litigation" and "bad faith" by Special Counsel and his associate, corroborating the arguments for disqualification already extensively briefed in D.I. 789 and D.I. 806. **Exhibit 34** confirms the adverse financial interest of the third-party litigation funder, PML, directly contradicting Special Counsel's sworn testimony before this Court on January 8, 2025. Because these exhibits merely corroborate arguments already briefed, extensive rehashed legal argument is unnecessary and the documents speak for themselves.

---

[1] *These exhibits were previously submitted as part of D.I. 806 (Revised Enhanced Supplemental Motion) and are now attached as standalone exhibits for the Court's convenience.*

## SECTION VII - CONCLUSION

WHEREFORE, Movant Charles Muszynski respectfully requests that this Court enter an order: (a) Accepting the supplemental exhibits filed herewith; and (b) Considering these exhibits in connection with the hearing scheduled for June 10, 2026.

Respectfully submitted
June 2, 2026,

Charles Muszynski, pro se
usfilefolder@protonmail.com
P. O. Box 1423
Basseterre
St. Kitts and Nevis
West Indies

## VERIFICATION

I, Charles Muszynski, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed June 2, 2026,

Charles Muszynski, pro se
usfilefolder@protonmail.com
P. O. Box 1423
Basseterre
St. Kitts and Nevis
West Indies

## EXHIBIT LIST

**Exhibit 26:** January 8, 2025 Hearing Transcript (D.I. 552); previously cited as Exhibit A to D.I. 789

**Exhibit 27:** Nevis High Court Order (May 15, 2025) (D.I. 680-1); previously cited as Exhibit B to D.I. 789

**Exhibit 28:** HPS Sharing Agreement (D.I. 687-4); previously cited as Exhibit C to D.I. 789

**Exhibit 29:** American Films, Inc. Revocation (Florida Secretary of State, 2024); previously cited as Exhibit D to D.I. 789

**Exhibit 30:** Culpepper SDFL Motion (S.D.F.L. Case No. 21-cv-20862, Doc. #594, April 29, 2026); previously cited as Exhibit E to D.I. 789

**Exhibit 31:** Heirl Letter / Third-Party Litigation Funding Evidence — previously cited as Exhibit F to D.I. 789

**Exhibit 32:** S.D.F.L. Order Sanctioning Kerry S. Culpepper in the amount of $11,700 (S.D.F.L. Case No. 1:21-cv-20862, Doc. #532); previously submitted as part of Exhibit 11 in D.I. 806

**Exhibit 33:** S.D.F.L. Order Sanctioning Joel B. Rothman in the amount of $249,357.50 (S.D.F.L. Case No. 21-cv-80740, D.E. 66); previously submitted as part of Exhibit 12 in D.I. 806

**Exhibit 34:** Email Admissions Regarding PML Process Management Limited; previously submitted as Exhibit 15 in D.I. 806

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of June, 2026, a true and correct copy of the foregoing was served upon counsel for Trustee and other parties via courier delivery to the Clerk of Court for upload to the CM/ECF system and copies by email to the following parties:

George L. Miller
Chapter 7 Trustee
c/o John T. Carroll, III
Cozen O'Connor
1201 N. Market Street
Suite 1001
Wilmington, DE 19801
jcarroll@cozen.com

HPS Investment Partners, LLC
c/o Matthew Brod
Milbank LLP
55 Hudson Yards
New York, NY 10001-2163
MBrod@milbank.com

Executed June 2, 2026,

Charles Muszynski, pro se
usfilefolder@protonmail.com
P. O. Box 1423
Basseterre
St. Kitts and Nevis
West Indies

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| CHICKEN SOUP FOR THE SOUL | ) | Case No. 24-11442 (MFW) |
| ENTERTAINMENT, INC., *et al.*, | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | (Re: D.I. 789 Emergency Motion |
| | ) | Hearing, 10 June 2026) |

### [PROPOSED]

### ORDER GRANTING MOVANT'S NOTICE OF FILING SUPPLEMENTAL EXHIBITS AND REQUEST FOR ENTRY OF WRITTEN ORDER

Upon consideration of the *Notice of Filing Supplemental Exhibits and Brief in Further Support of Pending Motions; Apology for Delayed Delivery; Preservation of Limited Appearance; and Request for Reduction of Oral Ruling to Writing* (the "Notice") filed by Charles Muszynski, *pro se*; the Court having reviewed the Notice and the record in this case; and for good cause shown;

**IT IS HEREBY ORDERED THAT:**

1. The supplemental exhibits attached to the Notice are accepted and shall be considered as part of the record for the hearing scheduled on June 10, 2026.

2. Within fourteen (14) days of the date of this Order, the Court shall enter a separate written order memorializing its oral ruling of January 8, 2025, regarding Movant's administrative claim status, pursuant to Fed. R. Bankr. P. 9021.

3. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**HONORABLE MARY F. WALRATH,
U. S. BANKRUPTCY JUDGE**

Respectfully submitted
June 2, 2026,

Charles Muszynski, pro se
usfilefolder@protonmail.com
P. O. Box 1423
Basseterre
St. Kitts and Nevis
West Indies

**Exhibit 26**

January 8, 2025 Hearing Transcript (D.I. 552)

Previously cited as Exhibit A to D.I. 789

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                              .    Chapter 7
                                    .
Chicken Soup for the Soul           .    Case No. 24-11442(MFW)
Entertainment, Inc.; et al.         .    (Jointly Administered)
                                    .
     Debtors.                       .    January 8, 2025
                                    .    2:00 p.m.

. . . . . . . . . . . . . . . . . .


TRANSCRIPT OF HEARING
BEFORE THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE


Appearances:


Counsel to Chapter 7      Cozen O'Connor
Trustee:                  BY:  JOHN T. CARROLL, ESQ.
                          1101 N. Market Street, Suite 1001
                          Wilmington, DE  19801
                          Phone:     (302) 295-2028
                          Email:     carroll@cozen.com




Audio Operator:           LESA NEAL, ECRO


Transcription Company:    Reliable
                          1007 N. Orange Street
                          Wilmington, Delaware 19801
                          (302)654-8080
                          Email:  gmatthews@reliable-co.com


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

2

**Hearing Regarding:**

Trustee's Application for Approval of Retention of Culpepper IP LLC as Special Copyright Litigation Counsel (DI 508);

Motion of 800 Third Party Associates, LLC for Allowing Chapter 7 and Chapter 11 Administrative Claims (DI 515).

**RULINGS:** Granted

3

(Recorded proceedings commence at 2:00 p.m.)

THE COURT: Good afternoon. This is Judge Walrath. We're here in my chapter 7 hearings. The only matter I have going forward is the Chicken Soup case, and I will turn it over to counsel for the trustee to take us through that agenda.

MR. CARROLL: Thank you, Your Honor. John Carroll, counsel for the trustee, George Miller.

Your Honor, with respect to the agenda, there really are only two items that are going forward. I'll start with Item No. 3 which is the trustee's application for the approval of the retention of Culpepper IP as special copyright litigation counsel.

Your Honor, with respect to this application, I received certain informal comments from the Office of the United States Trustee which related to the provisions permitting association with, of the Culpepper firm with other counsel in different jurisdictions to enable the IP litigation to be pursued.

The Office of the United States Trustee requested that we modify the order to provide that basically a verified statement under Bankruptcy Rule 2014 setting forth any connections with the debtor, creditors, parties in interest, their attorneys, accountants of the Office of the U.S. Trustee be filed with respect to any of those associated counsel for those other jurisdictions which the trustee has agreed to do.

4

We need to come up with a language and put it in the order. What I contemplated doing was submitting it under certification of counsel to Your Honor.

We also received an objection which was filed by Mr. Charles Muszynski on a pro se basis.  Mr. Muszynski I believe is present on the call.

Mr. Muszynski is a judgment debtor with respect to these debtors in connection with a $250,000 judgment which is held by the debtors.  He interposed an objection to Mr. Culpepper's retention.  I asked Mr. Culpepper to attend this hearing and he is present, Your Honor.

Candidly, I really have a very difficult time in following the objection, and I'm not sure I understand the objection that was interposed, so I thought I would let Mr. Muszynski put forth his objection and we can respond accordingly if that's okay.

THE COURT:  That's fine.

Mr. Muszynski, are you present?

MR. MUSZYNSKI:  Good afternoon, Your Honor.  Yes, I am.  And just as a point of order, it was less than 24 hours ago that the notice was sent out adding witnesses to this. I've had no prior notice of that until nine hours ago when I awoke and found it in my box.

Also, there are intermittent power outages in my country today.  And I am not at my normal location.  I'm not

5

normally attired for your appearance, for my appearance in front of you, so I'm at a neighbor's house where they have generator capacity.

I am a little perplexed as to what Mr. Carroll finds confusing about the objection. There's six ways to Sunday proving that Mr. Culpepper is not a disinterested party. He owns 42 Ventures. Although SMV's estate has a $250,000 interest that Mr. Carroll refers to, it is an indispensably joined party with scores of other alleged movie company creditors.

And the objection that I filed thoroughly briefs caselaw and statute, ABA rules, everything that for how frequently and how Mr. Culpepper simply does not qualify to be selected as a special counsel. There are plenty of copyright attorneys.

Mr. Culpepper also has appeared as a fact witness. He has volunteered twice as a witness in the case. He will be called in Nevis, an appended case. He has continuously continued his collection activities despite your automatic stay and the automatic stays of other federal courts. I have documentation of all of that included in the objection.

The -- bear with me just a moment, I have to reference my notes.

And also as far as in the last couple of days, I wanted to make sure that before we proceeded any further, I put

6

all the parties on notice that I have been cooperating with Chief Inspector Watt (phonetic) with the Royal St. Kitts and Nevis Police White Crimes, White Crimes Division, White Collar Crimes Division and will be working with them on the criminal investigation that will be open into Mr. Culpepper for his violation of the privacy and confidentiality laws under the company's act in Nevis.

Also, it occurred to me that the objection did not include information about the minimum $100,000 bond that will have to be posted if he continues to attempt to make to press his attempt to collect in Nevis. That bond will have to be posted by the estate.

And when the estate loses, which they will, because as a matter of public policy foreign judgements based on statutory damages, and if Mr. Culpepper's case, they're unargued and unnoticed. There was an unnoticed case, it's a default judgment. It doesn't stand a chance here.

If Mr. Carroll has other questions, I'm happy to provide, I mean it's a 38 page brief, there's everything in there.

And when I spoke with the U.S. Trustee, Richard, I apologize, I can't, his last name doesn't immediately come to mind, his concern was that the conflict check hadn't been run with the firm that Mr. Culpepper had subcontracted three years ago in Nevis to pursue his collections. And I'm kind of

7

curious how an attorney is going to perform a conflicts check after the fact when Mr. Culpepper, without your Court's authorization, has been engaged in collection actions contemptuous of the automatic stay and has already hired not only that subcontractor, but another subcontractor in Puerto Rico.

So I mean there's, there's a multitude of vectors here to go down and I don't think it's worth the Court's time to rehash the 38 pages of legal cites and statutory cites. It's kind of self-explanatory.

So if Mr. Carroll is confused, I'd be happy to answer any questions that may have left him in the dark about my pleading. I'm just a pro se ignorant Pollock who is trying to fend off an attack. And I've done my best to provide all the background.

THE COURT: Mr. Carroll?

MR. CARROLL: Your Honor, I've parsed through pretty carefully the objection, and candidly I think that it's not really comprehensible, nor does it make sense. He is not a creditor, nor is he a party in interest. But what I would suggest is Mr. Culpepper who is represented in the debtors and in connection with the judgment that was previously obtained, should probably respond to some of the comments that were just made.

MR. MUSZYNSKI: Well, I would object to Mr.

8

Culpepper's entry here.  He is neither, well, there's also a question that Mr. Culpepper himself may be a pro se creditor, so he would be a party of interest.

And I should also say I may not be a creditor of the estate yet, but when he presses the case in Nevis and it loses, they lose, I will become a creditor.  And that money, those monies will be paid out of the hundred thousand cash bond that has to be posted into the court in Nevis before that case can proceed by plaintiffs.

THE COURT:  Well, you're not currently a creditor, Mr. Muszýnski.  You have no claim against the estate that's been confirmed by any court or by this Court.

MR. MUSZYNSKI:  Yes, ma'am.

THE COURT:  Right.  And I will hear Mr. Culpepper.  You've made a lot of allegations, some of which are factual and I haven't put you under oath, so I'm not sure I can rely on the facts as you've recited them.

But let me hear Mr. Culpepper's response since Mr. Carroll is not aware of the situation between the debtor and you as you articulate anyway.

Mr. Culpepper?

MR. CULPEPPER:  May it please the Court, Kerry Culpepper of the law firm Culpepper IP LLC.

I previously represented Screen Media Ventures in law suits against certain service providers.  One of those service

providers was a company Mr. Muszynski owned called Liquid VPN. We obtained a judgment in the Southern District of Florida for roughly $225,000 plus attorneys fees and costs based upon Mr. Muszynski's company's willful service for copyright infringement.

We later sought to have that judgment recognized in Nevis. That's when Mr. Muszynski began filing all of his motion practice and allegations against my firm. The subcontracting firm he refers to is the firm that we hired to assert our claim in Nevis where Mr. Muszynski resides.

I disagree with allegations about conflicts of interest in the Screen Media Ventures, full disclosures were made of the other clients that I represent.

In the Southern District Florida litigation, there were other movie companies that were joined with Screen Media Ventures as plaintiffs, you know, that was disclosed.

I'm sorry, does Your Honor have a question for me?

THE COURT: No. Go ahead.

MR. CULPEPPER: The other point. I think he mentioned Puerto Rico. Mr. Muszynski declared bankruptcy and sought to have the judgment discharged in Puerto Rico. So Screen Media Ventures, on behalf of Screen Media Ventures we engaged local counsel to represent Screen Media Ventures to dispute Mr. Muszynski's allegation that the judgment should be discharged. That's ongoing. Mr. Muszynski has appealed the

10

District of Puerto Rico's denial of his bankruptcy petition.

I don't really know how to respond to his other allegations. If he has a problem with the estate, he can pay the judgment back and he can be done with this entire thing.

If Your Honor has any questions for me, I'm willing to answer anything about this matter.

THE COURT: Well, you did state that you represented other plaintiffs in the new York action as well. Is that correct?

MR. CULPEPPER: Southern District of Florida action, yes.

THE COURT: I'm sorry, the Southern District of Florida action.

Did they have any conflict with the debtors?

MR. CULPEPPER: No, Your Honor.

THE COURT: They were both seeking actions against the defendant, excuse me, for breach of IP rights. Is that right?

MR. CULPEPPER: Sorry, the connection became choppy. They were seeking actions against the defendants?

THE COURT: Against the defendants in the Southern District of Florida action. They all brought the same type of action.

MR. CULPEPPER: Yes, Your Honor, it was the same action.

11

THE COURT: Okay.

All right. Mr. Muszynski, do you have any questions of Mr. Culpepper that are relevant to conflicts of interest?

MR. MUSZYNSKI: If I may be permitted, yes, ma'am.

THE COURT: Yes.

MR. MUSZYNSKI: May I proceed?

THE COURT: Yes.

MR. MUSZYNSKI: Okay. Thank you.

Mr. Culpepper, you just stated that I owned the ISP Company, Liquid VPN. Is that correct?

MR. CULPEPPER: My position is yes, that you own the company, Liquid VPN. You may not have owned it directly, but you owned it through the (indiscernible).

MR. MUSZYNSKI: Is your testimony to this court that I owned Liquid VPN. That's what you just told the court.

MR. CULPEPPER: Yes, Mr. Muszynski, believe you own Liquid VPN.

MR. MUSZYNSKI: So you've spent the last four years investigating me and the best you can say is I believe. It is not in your knowledge that AUH20 and 1701 Management owned Liquid VPN?

MR. CULPEPPER: As I just said, you could own the entity that owns it, but you still own it.

MR. MUSZYNSKI: So in your knowledge, are you testifying that I own the entity that owns it?

12

MR. CULPEPPER:   There's a judgment in the Southern District of Florida that agrees with me in which you were represented by counsel, Mr. Mackler (phonetic).. So yes, you controlled Liquid VPN.  You're the manager of Liquid VPN.  You signed the asset purchase agreement when you purchased, when your company, 1701 Management, purchased the assets of Liquid VPN from the previous party.

MR. MUSZYNSKI:   Is it not true that Richard Mackler represented me to have the case thrown out in the Southern District of Florida without agreeing to jurisdiction or venue because I'm a foreign citizen and was never provided proper service, and that you later admitted that I did not live in Texas where you provided the service?

MR. CULPEPPER:   The -- I'm willing to answer his questions, Your Honor.  Should I try to answer to the best of my ability because he, that was really a packed question?

THE COURT:   I think at this point, Mr. Muszynski, I don't think that going into the merits of the judgment against you is relevant to whether or not he has a conflict in representing the estate in pursuing either collection of that judgment or other rights that the estate may have.  So I --

MR. MUSZYNSKI:   Yes, ma'am.  So if I may be --

THE COURT:   I'll limit you to conflicts of interest that you allege.

MR. MUSZYNSKI:   Understood.  Thank you, ma'am.

13

Mr. Culpepper, do you own 42 Ventures LLC?

MR. CULPEPPER:  Yes.

MR. MUSZYNSKI:  Is 42 Ventures LLC a joined member of the final judgment in which Screen Media Ventures LLC is also a joined member?

MR. CULPEPPER:  They're a judgment creditor, yes. Well, they were a plaintiff also in the case.  They had a claim against 1701 and you.  So to that extent, yes.  I wouldn't use the word, joined.

MR. MUSZYNSKI:  Did you write the final judgment that joined these parties?

MR. CULPEPPER:  No.

MR. MUSZYNSKI:  Did you represent the final judgment that joined these parties between, including 42 Ventures LLC and Screen Media Ventures?

MR. CULPEPPER:  Could you repeat your question?

MR. MUSZYNSKI:  Did you represent the parties as joined members to a final judgment in the Southern District of Florida which joined your company which you wholly own, 42 Ventures LLC, and Screen Media Ventures, LLC along with approximately 38 other nonperforming entities that you represented?

MR. CULPEPPER:  I represented the plaintiffs in the case in the Southern District of Florida, including 42 Ventures.

MR. MUSZYNSKI:  And 42 Ventures is a joined party in the judgment with Screen Media Ventures.

MR. CULPEPPER:  Yes.

MR. MUSZYNSKI:  And have you appeared in my cases as a fact witness and pro se?

MR. CULPEPPER:  I, in the evidentiary hearing --

MR. MUSZYNSKI:  Be careful, this is in all in transcript.

THE COURT:  Let him answer your question, Mr. Muszynski.

Go ahead, Mr. Culpepper.

MR. CULPEPPER:  In the, in your bankruptcy, when you say your case, I assume you're referring to your bankruptcy. Am I correct?

MR. MUSZYNSKI:  Yes.

MR. CULPEPPER:  In your bankruptcy, we had an evidentiary hearing in the Eastern District of Texas and I did, I listed myself as a fact witness but I didn't, I wasn't, I didn't ask any questions or I didn't give any testimony if I remember correctly.

MR. MUSZYNSKI:  But if you're a pro se.

MR. CULPEPPER:  You listed, yeah, because you included me as a creditor in your bankruptcy, my name personally. So I did appear pro se for myself.

MR. MUSZYNSKI:  Did you list PML Process Management

15

Limited as a party that you represent and as an interested party in my bankruptcy?

MR. CULPEPPER: I didn't list them as, I think what you're referring to is in the, when your bankruptcy was dismissed, you appealed to the bankruptcy appeal panel or the First Circuit, and we're required to include a certificate of any interested parties. And I think that's what you are referring to. PML was included as an interested party. Is that what you're talking about?

MR. MUSZYNSKI: Yes. Did you disclose to the Delaware District Bankruptcy Court that PML is an interested party as well?

MR. CULPEPPER: I haven't filed anything in the Delaware Bankruptcy Court.

MR. MUSZYNSKI: Did you make representations to the trustee that PML was an interested party as required under statute?

MR. CULPEPPER: PML is not an interested party of Screen Media Ventures.

MR. MUSZYNSKI: I'll be with you in just a moment.

Did you provide the trustee notice that you will have, the estate will have to post $100,000 bond in order to litigate in Nevis?

MR. CULPEPPER: I don't believe that's the case.

MR. MUSZYNSKI: So that's a no?

16

MR. CULPEPPER:  No.

MR. MUSZYNSKI:  Did you inform the trustee that as a matter of public policy in the Federation of St. Kitts to Nevis, foreign statutory judgments are not honored?

MR. CULPEPPER:  I did not say that because I don't agree with what you're saying.

MR. MUSZYNSKI:  Are you and/or your firm a partner with PML Process Management and are you fee splitting with them as part of a third party litigation funding agreement?  PML being located in the Republic of Cyprus?

MR. CULPEPPER:  No.

MR. MUSZYNSKI:  Is there, on behalf of the estate for Screen Media Ventures, is there an accounting for the fees that you have assessed so far in your collection actions for the joined parties in the judgment?  And how are those fees split amongst the other joined parties relative to SMV's interest?

MR. CULPEPPER:  You need to ask the estate how they're doing their accountings.  I don't know anything about that.  I think what you're asking is how are those costs split among the plaintiffs in the litigation against you.  Is that what you're asking?

MR. MUSZYNSKI:  Yes.

MR. CULPEPPER:  There's an agreement to that, that the costs are allocated based upon the number of titles in the law suit.

MR. MUSZYNSKI:  Are you continuing to collect settlements on behalf of Screen Media Ventures?

MR. CULPEPPER:  I don't believe that question is relevant to what you're asking.  And there are confidential issues --

THE COURT:  What is, what was the question?

MR. MUSZYNSKI:  I asked Mr. Culpepper if he is continuing to extract settlement amounts from people that he is sending demand letters to on behalf of Screen Media Ventures and the other joined movie alleged movie company creditors.  The scheme that Mr. Culpepper is running --

THE COURT:  I understand.  I understand.

MR. MUSZYNSKI:  Okay.  So those revenues would belong to Screen Media Ventures' estate and he has not said, he has not denied continuing to collect them.

MR. CULPEPPER:  May I answer this question, Your Honor?

THE COURT:  You may.

MR. CULPEPPER:  If I received money on behalf of Screen Media Ventures since the bankruptcy, I have informed the trustee.  I have not received any money on behalf of Screen Media Ventures since the chapter 7, or since the chapter 11 filing.

MR. MUSZYNSKI:  Have you proceeded in other courts with your collection actions even though this court has not

18

approved your engagement as a special counsel?  Have you proceeded in other courts with collection actions even though this court has not approved you as a special counsel?

MR. CULPEPPER:  With respect to your, the judgment against you, there was an appeal to the bankruptcy appellant panel.  So to the extent that I continue to represent Screen Media Ventures in that issue, the answer would be yes.  You phrased it as collection activities.

MR. MUSZYNSKI:  Okay.  I'll broaden the question. Have you continued litigating in Frontier Communications Corporation's chapter 11 on behalf of Screen Media Ventures in the Southern District of New York?

MR. CULPEPPER:  Yes.

MR. MUSZYNSKI:  Did you have approval from this court to do so on behalf of Screen Media Ventures?

MR. CULPEPPER:  No.  That's why we're here today.

MR. MUSZYNSKI:  How long have you been litigating on behalf of Screen Media Ventures without this court's approval?

MR. CULPEPPER:  The case has been going on since 2020, so the bankruptcy was filed in July when the chapter 7, when the case was converted to chapter 7.  I notified the Southern, I notified the Southern District of New York of the chapter 7 liquidation, requested a stay while this was resolved.  The judge never decided on whether or not the stay would happen.  The case has been ongoing.  So to the extent

19

that something needed to be done, did I proceed with the case, I did proceed with the case.

MR. MUSZYNSKI:  Have you continued to litigate in the case of subpoena to Reddit Inc and Voltage Holdings in the Ninth Circuit?

MR. CULPEPPER:  Yes.  And I filed a motion to substitute the Screen Media Ventures for the chapter, for the chapter 7 trustee that was approved.

MR. MUSZYNSKI:  And when did you do that?

MR. CULPEPPER:  I don't remember the exact date.  I do remember that the motion was approved a week or so ago.

MR. MUSZYNSKI:  What is PML's involvement from a financial standpoint as a third party litigation funder on behalf of Screen Media Ventures?

MR. CULPEPPER:  Nothing.

MR. MUSZYNSKI:  Why is Screen, why is PML appearing as a party of interest?

MR. CULPEPPER:  They're not a party in interest in this case.  If you're asking why I included them as a party of interest in the bankruptcy appeal panel, that's because they have an interest in the matter.  But the interest has nothing to do with Screen Media Ventures or Chicken Soup.

MR. MUSZYNSKI:  Does PML provide any funding of any kind to Chicken Soup or Screen Media Ventures?

MR. CULPEPPER:  Not to the extent I know of, not for

the cases I've been involved in.

MR. MUSZYNSKI:  Is PML going to receive a split of revenues from those that you collect by settlement demand letters on behalf of Screen Media Ventures or Chicken Soup for the Soul or the other joined creditors, nearly 38 of them?

MR. CULPEPPER:  For Screen Media Ventures or Chicken Soup, not to the extent I know.  I don't believe so.  As respect to your other claimants, nothing has to do with this case and I don't think it's relevant to the question here.  So I would, I decline to answer that part because it's subject to attorney-client privilege.

THE COURT:  Okay.

MR. MUSZYNSKI:  Your Honor, that's the basic route. I can go on and on in other cases where he has continued to litigate in violation of the contempt.  And I don't know that it does any benefit to the court to hear.

THE COURT:  Violation, violation of what contempt?

MR. MUSZYNSKI:  Of the automatic stay in this case.

THE COURT:  Well this, the automatic stay protects the debtor, not the defendants that he is suing.  A debtor can continue to prosecute actions against others.  The automatic stay protects the debtor and the debtor's estate.  So I think you have it in reverse.  It doesn't protect you.

Mr. Carroll, do you want to be heard on --

MR. MUSZYNSKI:  I'm sorry.

MR. CARROLL: No, Your Honor. I don't believe that Mr. Culpepper has a conflict. He was counsel of record in some cases. Candidly, that's what made sense for the trustee to continue in a large part to utilize his services going forward which is why we filed the application to have him employed as special counsel on basically a contingent fee basis.

THE COURT: Mr. Muszynski?

MR. MUSZYNSKI: Your Honor, I believe my filing is fully briefed with statute, ABA rules and precedent and clearly shows examples of how Mr. Culpepper has continued to litigate without the authorization from this court and is conflicted and not a disinterested party. He owns 42 Ventures which is a part of the roughly 41 other joined creditors in this case. He is absolutely not disinterested. He is absolutely conflicted.

THE COURT: Mr. Carroll?

MR. CARROLL: Your Honor, I don't see a conflict in representing another party. He's undertaking to represent the debtor and is doing so based on a percentage of recovery on behalf of the debtor. So I really don't see a conflict at all.

THE COURT: And this is a retention under 327(e). Is that not correct, Mr. Carroll?

MR. CARROLL: Yes.

THE COURT: Well, I will rule this way. I do not see any conflict that Mr. Culpepper has with respect to representing the estate and -- could you turn that down -- with

22

respect to -- just a minute.  All right, let me try again.  I do not find any conflict --

(audio issue)

THE COURT:  Mr. Muszynski, can you mute your line?  I think that's why I'm getting an echo?  Okay.

I do not find any conflict in Mr. Culpepper representing this estate and the other plaintiffs in pursuing other parties that the other plaintiffs and the estate have similar claims against. .

As the trustee has stated, it appears there is a savings in having that retention rather than getting another attorney to start from scratch.  Mr. Culpepper has continued to represent those parties prepetition and continuing to protect the interest of the plaintiffs and the estate while his retention application is pending is not a conflict.

As I stated, the automatic stay does not protect the defendants in that action, it only protects the debtor and its estate.  I further do not find any conflict in the retention, the terms of the retention which is that Mr. Culpepper and his firm will receive a percentage of funds collected on behalf of the estate only.

Section 327(e) allows a party who has previously represented the debtor to now represent the trustee in that same manner.  And I think it's perfectly appropriate that the trustee has selected to continue Mr. Culpepper's

representation.

So I will overrule the objection and grant the retention application.

All right.  The next matter, Mr. Carroll?

MR. CARROLL:  Thank you, Your Honor.  The next matter is Item No. 5 on the agenda which is the motion of 800 Third Avenue Associates for entry of an order allowing both a chapter 7 administrative claim and a chapter 11 administrative claim.

The trustee filed a limited objection with respect to the motion, and submitted a revised form of proposed order which would allow the chapter 11 administrative claim in the amount sought and also allow the chapter 7 administrative claim.

The basis for the trustee's objection was the request for an order compelling the trustee to make immediate payment of the chapter 7 administrative claim.  The limited objection sets forth the reasons why we would oppose that.  The primary reason is that this is a case where there are not any unencumbered funds presently with which to make such a payment.

Additionally, under the case law, it's really discretionary in terms of the trustee when he's going to make those payment.  It's detrimental to the estate in that if he were to make the payments, he may not have the ability to pursue other causes of action which would enure to the benefit of the estate and to all of the creditors in this matter.

24

We don't have a problem with allowing the claim, but we have difficulty with respect to the making of an immediate payment, Your Honor.

THE COURT:  Thank you.  Anyone here on behalf of the landlord.

MR. MANN:  Yes, Your Honor, Kevin Mann on behalf of the landlord.  I apologize, my screen says Cross & Simon and I haven't been able to change that.  So you'll just have to bear with me.

Kevin Mann on behalf of 800 Third Avenue Associates LLC.  800 was the landlord for the debtors' New York offices. The debtors filed their chapter 11 petition on June 28th of 2024 and remained in the premises after that.  And then on July 10th, the case was converted, the chapter 7 trustee was appointed.  And then on July 29th, the trustee cleared out the premises and surrendered possession to the landlord.

So, and then I'm not sure if it was Your Honor or Judge Horan, but an order was entered rejecting the lease as of July 31st.  So between the petition date and the conversion date, the debtors accrued rent of $42,519.54.  And then between conversion and surrender, the estate accrued rent of $70,500.40.  And none of this post-petition rent has been paid.

The landlords moved under 365(d)(3) and 503(b)(1)(a) for allowance of the admin claim and for immediate payment of the chapter 7 portion.  As Mr. Carroll noted, the trustee has

indicted does not have an objection to the allowance of the admin claim or the amount and no other objections were filed, they didn't hear from anybody else. But the trustee has objection to the immediate payment so I did want to address that.

First, Your Honor, as Mr. Carroll said, the trustee asserts he has no unencumbered cash and making payment now would be inequitable.

The cases that the trustee cites in his objection give the trustee discretion as to when to pay administrative claims. And he says that there's nothing in the code that requires immediate payment and that the landlord is not special. And I think this argument completely ignores Section 365(d)(3). The landlord is special because it was a post-petition lesser of non-residential real property.

So under 365(d)(3), the trustee is required to timely perform all the obligations of the debtor arising from and after the order for relief under any unexpired lease of non-residential real property until such lease is assumed or rejected.

And under Montgomery Ward, the court, the Third Circuit held the clear and express of 365(d)(3) is to require the trustee to perform the lease in accordance with its terms. So 365(d)(3) ensures prompt payment of lease obligations so the landlord is not required to provide use of the leased premises

26

to a debtor without receiving timely compensation under the terms of the lease. And it operates to prevent landlords from becoming involuntary creditors of a debtors' estate.

There is a New Jersey case, in re Pelican Pool and Ski Center, but it does cite to Montgomery Ward that said, "In other words, if the obligations under the lease become due following the petition date and prior to the rejection of the lease, the obligations are payable immediately."

As far as I can tell, there's no Third Circuit case law that says otherwise. Montgomery Ward also held that, "Congress intended the debtor perform all the obligations at the time required by the lease."

As far as the trustee's assertion that he doesn't have unencumbered cash, and no offense to Mr. Carroll, but we haven't seen any evidence of that or that any evidence of the case of administrative insolvent. It doesn't appear from my review of the docket that the debtors ever filed schedules, and there's nothing that appears on the docket showing the debtors' liens or the estate's financial position as far as I've been able to tell as well.

But even if the case is administratively insolvent or in danger of becoming administratively solvent, that really shouldn't matter here. In the other, I'm sorry, other cases in this circuit have upheld the requirement of immediate payment and the landlord's right to retain such payments even when

27

faced with an estate's later administrative insolvency. And that comes from the <u>Valley Media</u> case from this court, Your Honor.

Finally, if the Court is concerned about how 365(d)(3) operates in chapter 7 versus chapter 11, there's a recent case out of New Jersey called <u>Junk Handle Brewing Company</u>, and it's unpublished but it's at 2024 WL 2819626. It takes on this issue and that court specifically says, "The structure of 365 as a whole does not support a different application of 365(d)(3) in chapter 7 cases versus chapter 11 cases." It goes on to say, "If congress had intended for different treatment of unexpired leases of non-residential real property in those chapters, it could have made a similar distinction, but it did not." This evidences an intent on the part of Congress to protect landlords in both chapter 11 cases as well as chapter 7 cases.

So, with that, Your Honor, 800 Third Avenue Associates respectfully requests that the Court grant it its administrative expense claim and direct, I'm sorry, and direct immediate payment of the chapter 7 portion.

THE COURT: Well, let me ask you this. <u>Montgomery Ward</u> says it's due when, it's due on the first of the month is it not?

MR. MANN: I'm not sure under this lease, Your Honor, but I believe so.

28

THE COURT:  The case was converted July 10th and it was rejected July, the lease was rejected July 31st, so what amounts are due under the lease for the chapter 7 period before rejection?

MR. MANN:  Your Honor, that's broken down in the motion.  From the time of the petition date through the date of conversion it was $42,519.

THE COURT:  I understand.  But my question is what specific performance, i.e., the payment of rent, if it was due July 1st, it wasn't due July 10th, 11th, 12th, etc.  You're giving me a pro rata assessment of the rent rather than a when it's due analysis.

MR. MANN:  Your Honor, if that's the case, then the rent would have been due July 1st and it was never paid.

THE COURT:  Correct.  But the trustee was not, the case had not been converted July 1st.  So there's no performance that the trustee has not made.  You may have a chapter 7 claim on a pro rata basis as an administrative claim, but I don't think you have a 365(d)(3) claim, do you?

MR. MANN:  Well, Your Honor, I ask why is the debtor not, I'm sorry, why is the trustee not required to timely perform?  If the, if the rent was due and it was never paid by the debtor, shouldn't it have been paid by the trustee even if it was ten days late?

THE COURT:  Mr. Carroll?

MR. CARROLL: One issue that we did not get into is the, you know, there was no post-petition.post-conversion agreement with the trustee. The trustee inherited this lease. I'm not sure there was any true benefit. And you know candidly I dealt with this situation many number of times, and this is an amazingly quick resolution. You have the main office of Chicken Soup which the trustee manages to get out of almost immediately, manages to reject almost immediately and it's a fantastic sort of result.

But, you know, we're willing to allow the administrative claim but the reality is there are not funds with which to make the payment. The trustee did to the best of his ability immediately reject, immediately got out by hook or crook and that's where we stand. .

The other issue I might want to point out is there is no administrative claim bar date in this case so we do not know what the universe of additional claims might be, that would have to share in parity. That's the reason why it shouldn't be paid at this point in time from a practical perspective either.

THE COURT: Yeah. I think that the landlord may have an administrative claim, but I don't think that the landlord has the right to demand payment under 365(d)(3). In fact, I think that was the whole point of the Montgomery Ward case was that if the bankruptcy was filed on the 10th of July itself, all of the rent for July that was due on July 1st would be a

30

prepetition claim.  I don't know why it's different for the conversion date.

MR. MANN:. Your Honor, July 1st was after the petition date.

THE COURT:  I understand.  I'm doing it by analogy.

MR. MANN:  Okay.

THE COURT:  I'm analogizing the Montgomery Ward ruling to a conversion date.  And I think that the analysis applies equally here that because the amount of the rent for July was due July 1st, the trustee had no obligation to pay it promptly.

MR. MANN:  So essentially, Your Honor, you're treating, you would treat the post-conversion amount as equivalent to stub rent?

THE COURT:  Correct, correct.

MR. MANN:  Okay.

THE COURT:  You'd have a claim for the stub rent as an administrative expense.  Okay?  So I will I guess sustain the trustee's objection which is not to allowance of the claim, but to any payment of it immediately.

MR. MANN:  Thank you, Your Honor.  I'll get with Mr. Carroll and we'll put a, we'll put an order in.

THE COURT:  All right.

Anything else then, Mr. Muszynski, do you have something further?

MR. MUSZYNSKI:  Yes, Your Honor.  Thank you.  How long will it be before transcripts are available to order?

THE COURT:  Before what are available?

MR. MUSZYNSKI:  Transcripts of this proceeding.  I'm not familiar with your district, how long those usually take.

THE COURT:  I think they have to be ordered, and then I think --

MR. MUSZYNSKI:  Yes, ma'am.

THE COURT:  -- then I think it takes, I don't know, I'm not sure.

MR. MUSZYNSKI:  Also, I wanted to ensure that the court understood that in the case of Nevis, a $100,000 cash bond must be deposited with the court in Nevis to proceed.  I just want to make sure that was on the record.

THE COURT:  You can say that, but there's no evidence of that and that is not before me today so I don't really --

MR. MUSZYNSKI:  Understand.

THE COURT:  -- need to know that.

MR. MUSZYNSKI:  I just want to make sure I got it preserved on the record.  Thank you.

THE COURT:  Understood.  All right.  We'll stand adjourned then.  Thank you.

(Proceedings adjourned 2:47 p.m.)

* * * * *

32

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of our knowledge and ability.

/s/ Theresa Pullan                    January 17, 2025

Theresa Pullan, CET-780

Certified Court Transcriptionist

For Reliable

**Exhibit 27**

Nevis High Court Order (May 15, 2025) (D.I. 680-1)

Previously cited as Exhibit B to D.I. 789

Case Number :NEVHCV2022/0183

**FILED**
HIGH COURT
ST.CHRISTOPHER / NEVIS
(NEVIS CIRCUIT)

THE EASTERN CARIBBEAN SUPREME COURT
ST. CHRISTOPHER AND NEVIS
NEVIS CIRCUIT

**Submitted Date:20/05/2025 16:23**

IN THE HIGH COURT OF JUSTICE    **Filed Date:21/05/2025 08:30**

CLAIM NO. NEVHCV2022/0183

**Fees Paid:27.00**

BETWEEN:

MILLENNIUM FUNDING, INC.
VOLTAGE HOLDINGS, LLC
AMBI DISTRIBUTION CORP
AFTER PRODUCTIONS, LLC
AFTER II MOVIE, LLC
MORGAN CREEK PRODUCTIONS, INC
BEDEVILED LLC
MILLENNIUM MEDIA, INC
COLOSSAL MOVIE PRODUCTIONS, LLC
YAR PRODUCTIONS, INC.
FSMQ FILM, LLC
FW PRODUCTIONS, LLC
MILLENNIUM IP, INC.
I AM WRATH PRODUCTIONS, INC
KILLING LINK DISTRIBUTION, LLC
BADHOUSE STUDIOS, LLC
LF2 PRODUCTIONS, INC
LHF PRODUCTIONS, INC
VENICE PI, LLC
RAMBO V PRODUCTIONS, INC
RUPTURE CAL, INC
MON, LLC
SF FILM, LLC
SPEED KILLS PRODCUTIONS, LLC
MILLENIUM SPVH, INC.
NIKOLA PRODUCTIONS, INC.
WONDER ONE, LLC
BODYGUARD PRODUCTIONS INC.
OUTPOST PRODUCTIONS, INC.
GLACIER FILMS 1, LLC
DEFINITION DELAWARE, LLC
HANNIBAL CLASSICS INC.
JUSTICE EVERYWHERE PRODUCTIONS LLC
STATE OF THE UNION DISTRIBUTION AND COLLECTIONS, LLC
PARADOX STUDIOS, LLC
DALLAS BUYERS CLUB, LLC
HITMAN TWO PRODUCTIONS, INC.
SCREEN MEDIA VENTURES, LLC
42 VENTURES LLC

**Claimants/ Applicants**

and

AUH2O LLC
CHARLES MUSZYNSKI also known as FREDERICK DOUGLAS

**Defendants/ Respondents**

## ORDER

**BEFORE** The Honourable Justice Patrick Thompson Jr

**DATED** the 15th May 2025

**ENTERED** the      day of May 2025

**Appearances:** Edisha K. Greene for the Claimants
Angela Cozier for the Defendants

**Present:**      Kerry Culpepper, representative of the Claimants
Charles Muszynski, 2nd Defendant and representative of the 1st Defendant

**UPON** this matter coming on for the hearing of the Claimants' Notice of Application for Costs to be Assessed, the Defendants' Notice of Application to set aside the world-wide freezing order and strike out the Claimants' Claim, and the Defendants' Application for Security of Costs.

**AND UPON HEARING** Counsels for the Claimants and the Defendants.

**AND UPON** the Court being satisfied the Defendants were not successful on their Application to strike out the Claimants' Claim, but were successful on their Application for Security of Costs.

**AND UPON** the Court finding that although the Defendants succeeded on their Application for Security of Costs, the Court was clear that CPR Rule 24 applied as the Claimants were ordinarily resident outside of the jurisdiction. Consequently, the only matter for determination was the quantum of such costs and ensuring that the Claimants' representative was present to advise on the sum. Further, considering that any order for costs against the Claimants would be swallowed up by the extant orders for costs to be assessed against the Defendants and the extant applications, the court is not minded to grant costs to the Defendants on this application.

**AND UPON** the Court considering its order of 25th April 2025 and being satisfied that its order was not complied with by the Defendants.

**AND UPON** the Court being shown a sworn, but unfiled affidavit of Charles Muszynski dated 7th May 2025.

**AND UPON** the Court being satisfied that the affidavit of the 2nd Defendant, Charles Muszynski of 7th May 2025 does not appear to comply with the Court's order of 25th April 2025.

**AND UPON** the Court not being satisfied with the explanation provided by the Defendants' Counsel Ms. Cozier, as to why the affidavit was not filed within the timeline provided in the

Court's order of 25th April 2025, and further why the affidavit contains details that do not comply with the said order.

**AND UPON** this Court being minded to consider whether Ms. Cozier or the 2nd Defendant wilfully disobeyed the Court's order of 25th April 2025, and upon this court stating that it is minded to proceed with proceedings for civil contempt.

## IT IS HEREBY ORDERED THAT:

1. The Defendants' Application to strike out the Claimants' Claim is dismissed.

2. The Claimants are awarded costs against the Defendants' on the Application to strike out the Claimants' Claim; to be assessed if not agreed in 7 days.

3. The Defendants are to file any affidavits on the matters raised in the Court's order of 25th April 2025 together with any explanation as to why that order was not complied with by the Defendants on or before Monday 19th May 2025.

4. The Claimants are at liberty to file any reply by 23rd May 2025.

5. The Claimants are ordered to pay the sum of US$30,000.00 into Court on or before 15th June 2025.

6. The Claimants' Notice of Application for Costs to be Assessed and the Defendants' application to set aside the freezing order are fixed for a further blended hearing on 27th May 2025 at 1:30pm.

7. The freezing order shall continue until the adjourned hearing of this matter.

8. The Claimants shall have carriage of this Order.

**BY ORDER OF THE COURT**

M Flemming
**ASST REGISTRAR**

THE EASTERN CARIBBEAN SUPREME COURT
ST. CHRISTOPHER AND NEVIS
NEVIS CIRCUIT
IN THE HIGH COURT OF JUSTICE
CLAIM NO. NEVHCV2022/0183

BETWEEN:

MILLENNIUM FUNDING, INC.
VOLTAGE HOLDINGS, LLC
AMBI DISTRIBUTION CORP
AFTER PRODUCTIONS, LLC
AFTER II MOVIE, LLC
MORGAN CREEK PRODUCTIONS, INC
BEDEVILED LLC
MILLENNIUM MEDIA, INC
COLOSSAL MOVIE PRODUCTIONS, LLC
YAR PRODUCTIONS, INC.
FSMQ FILM, LLC
FW PRODUCTIONS, LLC
MILLENNIUM IP, INC.
I AM WRATH PRODUCTIONS, INC
KILLING LINK DISTRIBUTION, LLC
BADHOUSE STUDIOS, LLC
LF2 PRODUCTIONS, INC
LHF PRODUCTIONS, INC
VENICE PI, LLC
RAMBO V PRODUCTIONS, INC
RUPTURE CAL, INC
MON, LLC
SF FILM, LLC
SPEED KILLS PRODCUTIONS, LLC
MILLENIUM SPVH, INC.
NIKOLA PRODUCTIONS, INC.
WONDER ONE, LLC
BODYGUARD PRODUCTIONS INC.
OUTPOST PRODUCTIONS, INC.
GLACIER FILMS 1, LLC
DEFINITION DELAWARE, LLC
HANNIBAL CLASSICS INC.
JUSTICE EVERYWHERE PRODUCTIONS LLC
STATE OF THE UNION DISTRIBUTION AND COLLECTIONS, LLC
PARADOX STUDIOS, LLC
DALLAS BUYERS CLUB, LLC
HITMAN TWO PRODUCTIONS, INC.
SCREEN MEDIA VENTURES, LLC
42 VENTURES LLC

Claimants/ Applicants

and

AUH2O LLC
CHARLES MUSZYNSKI also known as FREDERICK DOUGLAS

Defendants/ Respondents

## ORDER

Edisha K. Greene
**JOSEPH ROWE**
Attorneys-at-Law for the Claimants
Unit 5, Long Stone House,
Main Street, Charlestown, Nevis
Telephone: (869)469-1015
Email: e.greene@josephrowelaw.com

**Exhibit 28**

HPS Sharing Agreement (D.I. 687-4)

Previously cited as Exhibit C to D.I. 789

Execution Version

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CSS ENTERTAINMENT INC. (f/k/a CHICKEN SOUP FOR THE SOUL ENTERTAINMENT INC.), *et al* [1]<br><br>Debtors. | Chapter 7<br><br>Case No. 24-11442 (MFW)<br>(Jointly Administered) |

**SHARING AGREEMENT BETWEEN CHAPTER 7 TRUSTEE AND AGENT FOR THE PREPETITION LENDERS PROVIDING FOR (I) DETERMINATIONS AND ALLOWANCE OF SECURED LENDER'S PRE-PETITION CLAIMS AND LIENS; (II) TRUSTEE'S SALE OF CERTAIN OF DEBTORS' ASSETS AND SECURED LENDER'S COLLATERAL; (III) SPECIFIED CARVE-OUT FROM SECURED LENDER LIENS; AND OTHER MATTERS CONCERNING THE TRUSTEE'S CONTEMPLATED SALES AND CERTAIN SETTLEMENTS**

This Sharing Agreement (the "Agreement") is entered into effective as of the 5th day of September, 2025, by and between (a) George L. Miller (the "Trustee"), solely in his capacity as the Chapter 7 Trustee for the bankruptcy estates (collectively, the "Estates") of the above-captioned debtors (the "Debtors"), and (b) HPS Investment Partners, LLC (the "Agent" or "HPS"), in its capacity as the administrative and collateral agent under that certain Amended and Restated Credit Agreement, dated as of August 11, 2022 (as amended, amended and restated, supplemented, or otherwise modified from time to time, the "Credit Agreement") and that certain Amended and Restated Collateral Agreement, dated as of August 11, 2022, and the Supplement to the Amended

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); CSS Entertainment, Inc. (f/k/a Chicken Soup for the Soul Entertainment Inc.) (0811); CSS Studios, LLC (f/k/a Chicken Soup for the Soul Studios, LLC) (9993); CSS Television Group, LLC (f/k/a Chicken Soup for the Soul Television Group, LLC); Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508).

Error! Unknown document property name.

Execution Version

and Restated Collateral Agreement, dated as of July 26, 2023 (collectively, as amended, amended and restated, supplemented, or otherwise modified from time to time, the "Collateral Agreement")[2], among the Debtors and the HPS-managed lender parties thereto[3]; (collectively, the "Prepetition Lenders", and together with the Agent, the "Prepetition Secured Parties"). The Trustee and the Prepetition Secured Parties (singularly a "Party", collectively, the "Parties") by and through their respective undersigned counsel, intending to be legally bound, for good and valuable consideration the receipt of which is acknowledged hereby stipulate and agree subject to Bankruptcy Court approval (as set forth below) as follows:

## I.    BACKGROUND

1.    On June 28 and 29, 2024 (as applicable the "Petition Date") each of the Debtors filed voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") commencing the above-captioned bankruptcy cases (the "Bankruptcy Cases").

2.    On July 2, 2024, the Bankruptcy Court entered an order [D.I. 73] providing for the joint administration of the Bankruptcy Cases.

3.    On July 10, 2024, the Court entered an *Order Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code and Granting Related Relief* [D.I. 120] (the "Conversion").

---

[2] Copies of the Credit Agreement and Collateral Agreement are extremely voluminous and accordingly are not attached hereto; however such agreements are filed and available of record as Exhibits C and D of the HPS Investment Partners LLC's Motion for Relief from the Automatic Stay [D.I. 243, filed 8/20/2024].

[3] The HPS managed lender parties include: Aiguilles Rouges Sector B Investment Fund, L.P., American United Life Insurance Company, Brickyard Direct Holdings, L.P., Cactus Direct Holdings, L.P., Cactus Direct Lending, L.P., Core Senior Lending Fund (A-A), L.P., Core Senior Lending Fund, L.P., Core Senior Master Fund (PB), L.P., CSL Fund (PB) Holdings C, L.P. CSL Fund (PB) Holdings, B, L.P., CSL Fund (PB) Holdings, L.P., and Falcon Credit Fund, L.P.

2

Error! Unknown document property name.

Execution Version

4.      On July 11, 2024, George L. Miller was appointed as the interim chapter 7 trustee of the Debtor's Estates [D.I. 130] and is currently serving as permanent trustee of the Debtors' Estates.

5.      As referenced above, the Debtors entered into the Credit Agreement, which included provisions for an $80 million revolving credit facility and a $325 million term loan facility.

6.      As part of the borrowing transaction, the Prepetition Secured Parties' obligations to extend credit under the Credit Agreement to the Debtors was conditioned upon execution and delivery of the corresponding Collateral Agreement. As described in the Collateral Agreement, certain collateral has been pledged and/or security interests have been provided to the Agent for the benefit of the Prepetition Lenders (the "Collateral"). *See*, Collateral Agreement Art. II (Pledge of Securities, including Pledged Stock, Pledged Debt, and Proceeds thereof, each as defined therein) and also Art. III (Security Interest in Article 9 Collateral and Intellectual Property Collateral, each as defined therein).[4] The Collateral represents substantially all of the Debtors' assets, including, among other things, the Debtors' intellectual property, bank accounts and accounts receivable, equipment, chattel papers, fixtures, general intangibles, and inventory

7.      Prior to the Conversion, certain of the Prepetition Secured Parties agreed to provide certain debtor-in-possession funding to the Debtors (the "DIP Funding") pursuant to the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [D.I. 85] (the "DIP Order," and the

---

[4] Capitalized terms used but not defined herein shall have the meanings given to such terms in the DIP Order (as defined herein).

3

Execution Version

lenders thereto, the "DIP Lenders") and the Debtors affirmed the validity, perfection and priority of the liens granted pursuant to the Credit Agreement and Collateral Agreement, including the security interests over certain of the Debtors' bank accounts and cash deposited therein. The Prepetition Secured Parties also funded an additional $200,000 after the Conversion for the sole purpose of paying D&O insurance premiums owed by the Debtors (the "D&O Funding") (collectively, the DIP Funding together with the D&O Funding, the "Postpetition Funding").

8.    Under the DIP Order, the Agent, for the benefit of the DIP Lenders, to the extent of the DIP Funding provided to the Debtors, was afforded (i) superpriority administrative expense claims and (ii) security interests on certain of the Debtors' unencumbered property and, on a priming basis, on the Collateral. *See* DIP Order at para. 4, 5. As adequate protection for the diminution in value of the Prepetition Lenders' interests in the Collateral in connection with the DIP Funding, the Agent received subject to the terms and conditions of the DIP Funding pursuant to the DIP Order (i) replacement security interests in and liens on the DIP Collateral (as defined in the DIP Order) and (ii) an allowed superpriority administrative expense claim. *See* DIP Order at para. 11.

9.    The Trustee acknowledges and agrees based upon an accounting to be provided by the Agent to the Trustee contemporaneously with the executing of this Agreement in the form of the Register under the Credit Agreement in which is recorded the amount outstanding under the Prepetition Senior Credit Facility and amount of principal and interest due and payable by the Debtors thereunder, that the claims of the Prepetition Secured Parties arising under the Credit Agreement and the Postpetition Funding are in the aggregate principal amount of not less than $500,000,000, plus accrued and unpaid interest thereon and any fees, premium, expenses and disbursements (including attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and

4

Error! Unknown document property name.

Execution Version

financial advisors' fees), costs, charges, indemnities, and other obligations thereunder (collectively, the "Allowed HPS Claim").

10.    On August 20, 2024 the Prepetition Secured Parties filed the *HPS Investment Partners' LLC's Motion for Relief from the Automatic Stay* [D.I. 243] (the "HPS Stay Relief Motion") seeking relief to allow the Prepetition Secured Parties to proceed with liquidation of the Collateral. The HPS Stay Relief Motion was premised in part on the fact that no party, including the Prepetition Secured Parties, was willing to infuse any material amount of cash into the Chapter 7 Bankruptcy Cases to facilitate an orderly administration of the Debtors' Estates. On September 6, 2024, an order was entered granting the HPS Stay Relief Motion [D.I. 316].

## II.    USE OF CASH COLLATERAL AND CARVE-OUT

11.    The Parties recognize the need for the Trustee's use of cash collateral as defined in §363(a) of the Bankruptcy Code ("Cash Collateral") to permit the administration of the Estates in an orderly manner, including but not limited to enabling the preparation of Bankruptcy Schedules and Statements of Financial Affairs and the identifying and providing of access to the Agent of the Collateral consisting of both tangible assets and largely intangible assets to enable the value of (i) certain of the Collateral to be maintained and realized by HPS and (ii) other unencumbered assets of the Estates to be maintained and realized by the Estates. Accordingly, the Agent on behalf of the Prepetition Lenders and DIP Lenders agrees to the Trustee's use of Cash Collateral in accordance with the Carve-Out (as defined below) in the amount of approximately $2.3 million of cash currently held by the Trustee (the "$2.3 Million Cash Amount").

12.    The Parties agree, subject to further Bankruptcy Court approval and documentation of a sale agreement in form and substance satisfactory to the Parties, to proceed with a sale of rights to pursue litigation for copyright infringement against various third parties related to, among other claims, violations of the Digital Millenium Copyright Act ("DMCA") for media titles owned

Error! Unknown document property name.

or controlled by the Debtors' Estates (the "IP Litigation Assets") free and clear of the security interests of HPS in the IP Litigation Assets to Grove Street Partners LLC or one or more of its affiliated or assignees ("Grove Street") or another purchaser acceptable to the Parties for a purchase price of not less than $100 million payable in five (5) annual installments to the Estates of $20 million each or at such sale price and terms as may otherwise be agreed by the Parties.

13.    The Agent expressly agrees on behalf of the Prepetition Secured Parties and DIP Lenders that any and all liens, security interests (including but not limited to any and all security interests, liens, superpriority administrative expense claims granted under the DIP Order or hereunder) of the Prepetition Secured Parties in Collateral shall be subordinate and subject to carve-outs from Collateral, use by the Trustee and sharing with the Estates for the following (collectively, the "Carve-Out"):

A.    Cash Collateral – The Trustee may use the $2.3 Million Cash Amount in the exercise of his business judgment to fund the costs of administration of the Debtors' Estates. The Trustee agrees that proceeds of accounts receivables and other Collateral received directly into the bank accounts of the Debtors after the date hereof shall be paid over to the Agent.

B.    IP Litigation Assets – The proceeds from IP Litigation Assets shall be shared and applied as follows:

i.    First, the proceeds from IP Litigation Assets recoveries shall be used to pay the Trustee's statutory commissions and costs, the Trustee's professional fees and costs, and any other expenses related to the identification, preservation including AWS, maintenance and recovery of IP Litigation Assets (the aggregate amounts paid under this clause (i) the "Administrative Payments");

Error! Unknown document property name.

ii.    *Second*, the first $100,000,000 of proceeds from IP Litigation Assets shall be allocated after the payment of (i) above as follows:

(1)    An amount equal to the sum of 20% of Net Proceeds (as defined below) to the Trustee for the benefit of the Debtors' Estates to be distributed in accordance with 11 U.S.C. §726. Net Proceeds are the gross proceeds from the liquidation of IP Litigation Assets minus the Administrative Payments (the "Net Proceeds"); and

(2)    80% of Net Proceeds to HPS on account of its secured claims until paid in full;

iii.    *Third*, any proceeds recovered from IP Litigation Assets in excess of $100,000,000 shall be allocated after the payment of (i) above as follows:

(1)    An amount equal to the sum of 15% of Net Proceeds to the Trustee for the benefit of the Debtors' Estates to be distributed in accordance with 11 U.S.C. §726, and

(2)    85% of Net Proceeds to HPS on account of its secured claims until paid in full.

In the event that the aggregate claims in any of clauses (1) or (2) above are paid in full then the proceeds otherwise allocable under such clause shall be re-allocated to the other clause until paid in full.

14.    For the avoidance of doubt, the use of the $2.3 Million Cash Amount by the Trustee permitted by HPS under this Agreement shall not reduce any obligation of HPS to reimburse the allowed fees of Pachulski Stang Ziehl & Jones LLP to the extent provided for in the carve-out as defined in the DIP Order (the "Chapter 11 Carve-Out") from the proceeds of Collateral under the DIP Order and the Order granting HPS Stay Relief Motion [D.I. 316]. HPS shall make payment

7

Error! Unknown document property name.

Execution Version

of the allowed Chapter 11 fees of Pachulski Stang Ziehl & Jones LLP upon approval of such fees

by the Bankruptcy Court from proceeds of Collateral other than the $2.3 Million Cash Amount.

15.     For the avoidance of doubt, property of the Estates of the Debtors which is not

prepetition collateral of HPS (the "Non-Collateral Assets") shall not be subject to any sharing of

proceeds or other benefits with HPS on account of its Allowed HPS Claim except to the extent

HPS shall be entitled to a distribution under 11 U.S.C. §726(a)(2) as a general unsecured creditor

on account of its Allowed HPS Deficiency Claim (as defined below); provided that, for the

avoidance of doubt, the HPS Deficiency Claim may include any outstanding amounts on account

of its Postpetition Funding. The Non-Collateral Assets include but are not limited to (i) rights or

claims of the Debtors' Estates under Chapter 5 of the Bankruptcy Code, (ii) any rights, claims and

actions against former directors and officers of the Debtors, and entities affiliated with the Debtors'

Estates including but not limited to those claims and actions set forth in, In re: Miller v. William

J. Rouhana, Jr. et al, Adv. No. 25-50399 (the "D&O Litigation"), and (iii) any commercial tort

claims. In furtherance of the foregoing, the Trustee and HPS agree in the event an interim

distribution is made by the Trustee from proceeds of Non-Collateral Assets to general unsecured

creditors under 11 U.S.C. §726(a)(2) before the Collateral is liquidated and the proceeds thereof

are distributed to enable a final calculation of the Allowed HPS Deficiency Claim, then the Trustee

will reserve or holdback sufficient funds from such interim distributions, as reasonably determined

between the Trustee and HPS, on an estimated basis to enable a distribution on the HPS Deficiency

Claim in an amount proportionally the same as is being made in such interim distribution to other

general unsecured creditors.

16.     To the extent the proceeds from the Collateral of HPS are not sufficient to fully pay

the Allowed HPS Claim, then HPS shall be entitled to receive a distribution as a prepetition general

8

Error! Unknown document property name.

Execution Version

unsecured claim for any unpaid deficiency amount (the "Allowed HPS Deficiency Claim"). HPS shall provide the Trustee with statements of the outstanding balance of the Allowed HPS Claim and confirmation as to whether or not the Collateral of HPS has been fully liquidated by HPS within ten (10) days of the Trustee's written requests for such information to enable the Trustee to make distributions from the Estates; provided, however, that to the extent the Trustee wishes to make distributions from the Estates at a time when the Collateral of HPS has not been fully liquidated by HPS, HPS shall provide the Trustee with a good faith estimate of the value of any remaining Collateral of HPS for purposes of calculating the Allowed HPS Deficiency Claim. In making such distributions, the Trustee shall be entitled to rely on the foregoing statements. In the event the Trustee makes a distribution to other holders of allowed general unsecured claims then HPS shall be entitled to receive a pro-rata distribution on account of its Allowed HPS Deficiency Claim. HPS shall not be required to file a proof of claim evidencing the Allowed HPS Deficiency Claim and such claim shall be deemed allowed and not subject to any challenge. HPS upon execution of this Agreement shall provide the Trustee with a report of all funds received by HPS after June 21, 2024 from Collateral and Non-Collateral on account of the Debtors. In the event HPS has received proceeds from Non-Collateral Assets (except with respect to its Postpetition Funding), such proceeds shall be promptly remitted to the Trustee upon Court approval of this Agreement.

17.    Upon execution of this Agreement, the Trustee agrees to (i) upon HPS' written request (which may be via e-mail), provide consents, authorizations, and instructions directed to Amazon Web Services Inc. ("AWS"), Dropbox, Cloudfare and Outlook Exchange and, also upon HPS' written request (which may be via e-mail), any other digital accounts of the Debtors

Error! Unknown document property name.

Execution Version

(collectively, the "Digital Accounts"),[5] authorizing the Digital Accounts to provide HPS with full administrative access to such Digital Accounts and (ii) provide HPS with all credentials, registration information, and administration rights related to the Digital Accounts that are readily available and known to the Trustee.   In addition, with respect to the account of Apto Solutions maintained with Dropbox (the "Apto Solutions Dropbox Account"), the Trustee agrees that upon HPS providing consent to the Trustee to use a portion of the $2.3 Million Cash Amount to pay the outstanding fees and costs of Apto, the Trustee will cause Apto to provide HPS with full administrative access to the Apto Solutions Dropbox Account.  Any fees required to be paid to the Digital Accounts for data accessed by HPS shall be the responsibility of HPS and not the Estates.

18.     HPS and the Trustee and their respective counsel will work in good faith to (i) obtain reasonable access to information necessary or desirable to allow value to be realized from the Collateral, the IP Litigation Assets and Non-Collateral Assets, including resolution of AWS issues, if possible (including, without limitation, the materials and deliverables specified in Annex II to the Notice of Foreclosure Sale By Credit Bid dated June 17, 2025 delivered to the Trustee by HPS) and (ii) maintain standing to enable the IP Litigation Assets to proceed to be pursued for the benefit of the Parties hereto.

19.     **Mutual Releases**.  The following mutual releases shall become effective upon Bankruptcy Court approval of this Agreement:

A.      HPS, on behalf of itself and the Prepetition Lenders (collectively, the "Claimant Parties"), hereby releases, remises and forever discharges the Debtors' Estates and the

---

[5] The Digital Accounts shall include, without limitation, (i) cloud storage accounts, (ii) domain name registrar accounts, (iii) social media accounts, (iv) email accounts used in connection with the Debtors' business, (v) software development, project management, and collaboration accounts, and (vi) any other digital platform, online service, or account used or maintained by the Debtors for business, media, communications, or operations.

10

Error! Unknown document property name.

Execution Version

Trustee and his financial advisors, attorneys, accountants and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such, but excluding any of the Debtors' current or former directors and officers of the Debtors' Estates and entities affiliated with the Debtors' Estates (specifically including but not limited to the Defendants named in the D&O Litigation) (collectively, the Trustee Parties"), of and from any and all claims, debts, refunds, demands, liabilities, agreements, obligations, controversies, actions, causes of action, suits, costs, attorneys' fees, expenses, damages, liens, and judgments, of any nature whatsoever, at law or in equity or otherwise, whether asserted or unasserted, whether known or unknown, that the Claimant Parties may have against any or all of the Trustee Parties as of the date hereof, with the exception of the Allowed HPS Claim (including the Allowed HPS Deficiency Claim), the claims arising under the Postpetition Funding, and the Trustee's obligations under this Agreement; provided, however, that the foregoing release shall not limit the Claimant Parties from asserting any released claim as a defense against a non-Party to this Agreement in any litigation brought by such Non-Party.

B.     The Trustee, on behalf of itself and the Trustee Parties, hereby releases, remises and forever discharges the Claimant Parties and each of their Representatives of and from any and all claims, debts, refunds, demands, liabilities, agreements, obligations, controversies, actions, causes of action, suits, costs, attorneys' fees, expenses, damages, liens, and judgments, of any nature whatsoever, at law or in equity or otherwise, whether asserted or unasserted, whether known or unknown, that the Trustee Parties may have against any or all of the Claimant Parties as of the date hereof, with the exception of the Claimant Parties' obligations under this Agreement. Without limiting the foregoing, the Trustee Parties waive any right to surcharge the Collateral pursuant to section 506(c) of the Bankruptcy Code except to the extent provided in the Carve-Out

**Error! Unknown document property name.**

Execution Version

or otherwise in this Agreement. As used herein, "Representatives" shall refer to the Claimant Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such.

20.    Any notices in connection herewith may be transmitted by personal delivery, overnight courier, or, email with first class mail:

| | |
|---|---|
| If to the Trustee: | George L. Miller, Trustee |
| | 8 Penn Center |
| | 1628 John F. Kennedy Blvd. |
| | Suite 950 |
| | Philadelphia, PA 19103-2110 |
| | Email: gmiller@mctllp.com |
| | |
| with a copy to | John T. Carroll, III |
| Trustee's Counsel: | Cozen O'Connor |
| | 1201 North Market Street |
| | Suite 1001 |
| | Wilmington, DE 19801 |
| | Tel: (302) 295-2028 |
| | Fax: (215) 701-2140 |
| | Email: jcarroll@cozen.com |
| | |
| If to the Agent: | Daniel Wallitt |
| | HPS Investment Partners, LLC |
| | 40 West 57th Street, 33rd Floor |
| | New York, NY 10019 |
| | Tel: (212) 287-5133 |
| | Email: daniel.wallitt@hpspartners.com |

12

Error! Unknown document property name.

|  |  |
|---|---|
| with a copy to Agent's Counsel: | Matthew Brod |
|  | Milbank LLP |
|  | 55 Hudson Yards |
|  | New York, NY 10001-2163 |
|  | Tel: (212) 530-5460 |
|  | Fax: (212) 530-5219 |
|  | Email: MBrod@milbank.com |

Notices shall be effective (a) immediately upon personal delivery, (b) one day after deposit with an overnight courier, or (c) upon receipt of email if during normal business hours (so long as notice by first class mail is deposited with the United States Postal Service on the same day as the email is sent).

21.    This Agreement may be executed in any number of separate counterparts, any of which may be transmitted by facsimile or email, and each of which when so executed and delivered shall be an original, but all of which shall together constitute, one and the same agreement.

22.    Headings, if any, used in the Agreement are for reference purposes only and do not comprise part of the terms hereof.

23.    No failure of the Prepetition Secured Parties or the Trustee to enforce any right granted under this Agreement, any of the Prepetition Loan Documents, or otherwise shall represent a waiver of such right.

24.    The Parties hereto agree to execute any and all documents that are reasonably necessary to implement the terms and provisions of this Agreement.

25.    No modification or amendment of any of the provisions hereof shall be effective unless set forth in writing and signed by the Parties hereto and approved by the Bankruptcy Court.

26.    This Agreement between the Parties is subject in all respects to the approval of the Bankruptcy Court, which Trustee will promptly seek after the execution hereof.

Error! Unknown document property name.

Execution Version

27.     The Bankruptcy Court shall have jurisdiction over all matters arising from or relating to this Agreement and order approving same.

28.     This Agreement shall become effective as follows:

(i)     Paragraph 17 of this Agreement, and any related provision of this Agreement necessary to accomplish the matters set forth in paragraph 17, shall be implemented by the Trustee and HPS upon the execution of this Agreement by counsel to the Trustee and counsel to the Agent respectively; and

(ii)     All other provisions of this Agreement are subject to Bankruptcy Court approval of this Agreement.

*[Remainder of page intentionally left blank; signature pages to follow]*

14

Execution Version

**IN WITNESS WHEREOF,** the Parties have executed this Agreement, intending to be legally bound, as of the date first above written.

**·COZEN O'CONNOR**

By: _____ 9/8/25

John T. Carroll, III
(Del. Bar No. 4060)
Suite 1001
1201 North Market Street
Wilmington, Delaware  19801
Tel: (302) 295-2028
Fax: (302) 295-2013
Email: jcarroll@cozen.com
*Counsel to the Trustee,*
*George L. Miller*

**MILBANK LLP**

By: _____

Matthew Brod
55 Hudson Yards
New York, NY  10001-2163
Tel: (212) 530-5460
Fax: (212) 530-5219
Email: MBrod@milbank.comm
*Counsel to Agent (HPS Investment*
*Partners LLC) for itself and on behalf of*
*Prepetition Secured Parties*

15

**Error! Unknown document property name.**

**Exhibit 29**

American Films, Inc. Revocation (Florida Secretary of State, 2024)
P
reviously cited as Exhibit D to D.I. 789



Department of State  /  Division of Corporations  /  Search Records  /  Search by Entity Name  /

## Detail by Entity Name

Foreign Profit Corporation
AMERICAN FILMS, INC.

**Filing Information**

| | |
|---|---|
| **Document Number** | F22000005623 |
| **FEI/EIN Number** | 80-0978149 |
| **Date Filed** | 09/07/2022 |
| **State** | NV |
| **Status** | INACTIVE |
| **Last Event** | REVOKED FOR ANNUAL REPORT |
| **Event Date Filed** | 09/27/2024 |
| **Event Effective Date** | NONE |

**Principal Address**

1132 KANE CONCOURSE, SUITE 201
BAY HARBOR ISLANDS, FL 33154

**Mailing Address**

1132 KANE CONCOURSE, SUITE 201
BAY HARBOR ISLANDS, FL 33154

**Registered Agent Name & Address**

TAMAROFF, DAVID
1132 KANE CONCOURSE, SUITE 201
BAY HARBOR ISLANDS, FL 33154

**Officer/Director Detail**

**Name & Address**

Title CHRM/D

CAMPBELL, CRAIG
1132 KANE CONCOURSE, SUITE 201
BAY HARBOR ISLANDS, FL 33154

Title D/CEO

LEE, GEOFF
1132 KANE CONCOURSE, SUITE 201
BAY HARBOR ISLANDS, FL 33154

Title D

SAFALOW, BRADLEY
1132 KANE CONCOURSE, SUITE 201
BAY HARBOR ISLANDS, FL 33154

Title D

FAULK, MARSHALL
1132 KANE CONCOURSE, SUITE 201
BAY HARBOR ISLANDS, FL 33154

Title VP/S/GC

TAMAROFF, DAVID
1132 KANE CONCOURSE, SUITE 201
BAY HARBOR ISLANDS, FL 33154

Title VP/CFO

WARREN, JAMIE
1132 KANE CONCOURSE, SUITE 201
BAY HARBOR ISLANDS, FL 33154

**Annual Reports**

| **Report Year** | **Filed Date** |
| --- | --- |
| 2023 | 04/30/2023 |

**Document Images**

| | |
| --- | --- |
| 04/30/2023 -- ANNUAL REPORT | View image in PDF format |
| 09/07/2022 -- Foreign Profit | View image in PDF format |

**Exhibit 30**

Culpepper SDFL Motion

(S.D.F.L. Case No. 21-cv-20862, Doc. #594, April 29, 2026)

Previously cited as Exhibit E to D.I. 789

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF FLORIDA

Case No.: 21-cv-20862-BLOOM/Otazo-Reyes

MILLENNIUM FUNDING, INC., et al.,

Plaintiffs,

vs.

1701 MANAGEMENT LLC, et al.,

Defendants,

---

## PLAINTIFFS' OPPOSED MOTION TO LIFT STAY OF POST-JUDGMENT PROCEEDINGS

Plaintiffs/Judgment Creditors MILLENNIUM FUNDING, INC., VOLTAGE HOLDINGS, LLC, AMBI DISTRIBUTION CORP., AFTER PRODUCTIONS, LLC, AFTER II MOVIE, LLC, MORGAN CREEK PRODUCTIONS, INC., MILLENNIUM FUNDING, INC., BEDEVILED LLC, MILLENNIUM MEDIA, INC., COLOSSAL MOVIE PRODUCTIONS, LLC, YAR PRODUCTIONS, INC., FSMQ FILM, LLC, FW PRODUCTIONS, LLC, MILLENNIUM IP, INC., I AM WRATH PRODUCTION, INC., KILLING LINK DISTRIBUTION, LLC, BADHOUSE STUDIOS, LLC, LF2 PRODUCTIONS, INC., LHF PRODUCTIONS, INC., VENICE PI, LLC, RAMBO V PRODUCTIONS, INC., RUPTURE CAL, INC., MON, LLC, SF FILM, LLC, SPEED KILLS PRODUCTIONS, INC., MILLENNIUM IP, INC., NIKOLA PRODUCTIONS, INC., WONDER ONE, LLC, BODYGUARD PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., GLACIER FILMS 1, LLC, DEFINITION DELAWARE LLC, HANNIBAL CLASSICS INC., JUSTICE EVERYWHERE PRODUCTIONS LLC, STATE OF THE UNION DISTRIBUTION AND COLLECTIONS, LLC, PARADOX STUDIOS, LLC, DALLAS BUYERS CLUB, LLC, HITMAN TWO PRODUCTIONS, INC., SCREEN MEDIA VENTURES, LLC and 42 VENTURES, LLC (collectively "Plaintiffs"), move this honorable Court to lift the Stays of Post-Judgment Proceedings the Court issued on June 7, 2023 and Oct. 25, 2023. *See* Docs. ##502, 576.

20-023DBa

## I.     BRIEF RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

1.      On March 28, 2022, this Court granted Plaintiffs' motion for default judgment and awarded a money judgment of $15,172,403.00 in favor of Plaintiffs and against Defendants Charles Muszynski ("Muszynski"), 1701 Management LLC, and AUH2O LLC. *See* Doc. #213.

2.      On March 14, 2023, the Court referred all post-judgment matters to Magistrate Judge Alicia M. Otazo-Reyes. *See* Doc. #432.

3.      On May 30, 2023, Defendant Muszynski filed an Amended Motion to Stay and Second Notice of Bankruptcy. *See* Doc. #496.

4.      On June 7, 2023, the Court granted Muszynski's motion [Doc. #496] and stayed the case to the extent Plaintiffs seek to collect on the judgment against Muszynski. *See* Docs. #502.

5.      On Sept. 12, 2023, the Court ordered that following the stay being lifted, that the Parties "file a Joint Notice of Pending Motions and advise the Court of the outstanding motions which require adjudication." Doc. #543.

6.      On Oct. 25, 2023, the Court granted Plaintiffs' motion [Doc. #572] and ordered a "General Stay of Post-Judgment Proceedings Pending Resolution of Muszynski Bankruptcy." Doc. #576.

7.      On Mar. 4, 2026, the First Circuit Court of Appeals ("First Circuit") [No. 25-9003] issued a judgment affirming the decision of the First Circuit Bankruptcy Appellate Panel [BAP NO. PR 24-011] which denied Muszynski's appeal and affirmed the opinion and order of the United States Bankruptcy Court for the District of Puerto Rico dismissing Defendant Muszynski's bankruptcy petition [23-02870-MCF7]. *See* Doc. #593.

8.      On April 28, 2026, the First Circuit issued the mandate. *See* Ex. "1".

## II.     ARGUMENT

9.      The purpose of the Court's first limited stay and second general stay, *see* Docs. ##502, 576, was to allow Muszynski's bankruptcy proceedings to conclude before holding a trial on the writs of garnishments. Now that the First Circuit has issued its mandate affirming the dismissal of his bankruptcy petition, the case can resume. *See* Ex. "1".

## III.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court lift the stays, *see* Docs. ##502, 576. Plaintiffs' counsel can file a status of pending motions which require adjudication.

2

## RULE 7.1(a)(3) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), Local Rules of the District Court of the Southern District of Florida, I, Kerry Culpepper, counsel for the movants, attempted to confer with Muszynski and counsels for Garnishees Terry Lacy, Buhosabio LLC and Antilles Management, LLC on their position on this motion.

Counsel for Terry Lacy (Louis R. Gigliotti) stated by email that he objected to the motion without any reason. When asked to meet and confer, counsel for Lacy stated that he intended to withdraw as representative.

Counsel for Buhosabio stated that he intended to withdraw as representative.

I sent email to Muszynski on 4/28/2026. As of the date of the motion, he has not responded to my email, despite sending me emails about different matters.

I sent email to counsel for Antilles Management, LLC (Mr. Palomares-Starbuck) on 4/28/2026. As of the date of the motion, he has not responded.

DATED:      April 29, 2026                Respectfully submitted,

*/s/ Joel B. Rothman*
JOEL B. ROTHMAN
Florida Bar No. 98220
joel.rothman@sriplaw.com


**SRIPLAW**
21301 Powerline Road, Suite 212
Boca Raton, FL 33433
561.404.4335 – Telephone
561.404.4353 – Facsimile

and

Kerry S. Culpepper
*Admitted pro hac vice*
**CULPEPPER IP, LLLC**
75-5915 Walua Road, Unit 128
Kailua-Kona, HI  96740
808.464.4047 – Telephone
kculpepper@culpepperip.com

3

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on <u>April 29, 2026</u> and by the methods of service noted below, a true and correct copy of the foregoing was served on Defendants 1701 MANAGEMENT LLC d/b/a LIQUIDVPN, AUH2O LLC, and CHARLES MUSZYNSKI a/k/a FREDERICK DOUGLAS.

<u>Via Airmail</u>
CHARLES MUSZYNSKI
Post Office Box 1423, Basseterre, St. Kitts & Nevis

<u>Via E-mail</u>
usfilefolder@protonmail.com

DATED: April 29, 2026

<u>/s/ Joel B. Rothman</u>
JOEL B. ROTHMAN
Florida Bar No. 98220
joel.rothman@sriplaw.com

**SRIPLAW**
21301 Powerline Road, Suite 212
Boca Raton, FL 33433
561.404.4335 – Telephone
561.404.4353 – Facsimile

and

Kerry S. Culpepper
*Admitted pro hac vice*
**CULPEPPER IP, LLLC**
75-5915 Walua Road, Unit 128
Kailua-Kona, HI 96740

**Exhibit 31**

Heirl Letter / Third-Party Litigation Funding Evidence

Previously cited as Exhibit F to D.I. 789

| | |
|---|---|
| **From:** | Michael A. Hierl <mhierl@HSPLEGAL.COM> |
| **Sent:** | Thursday, March 7, 2024 9:33 AM |
| **To:** | Victor J. Pioli |
| **Cc:** | John K. Hughes; Garrett Kern; Joseph R. Marconi |
| **Subject:** | FW: CMS/PML/Millennium |
| **Attachments:** | Millennium v. Hierl complaint as served.pdf |

Victor – A copy of the 11/17/21 email from Kozacky follows. Mike

**From:** Paul J. Kozacky <pkozacky@kwmlawyers.com>
**Sent:** Wednesday, November 17, 2021 8:13 AM
**To:** Michael A. Hierl <mhierl@HSPLEGAL.COM>
**Cc:** John K. Hughes <JHughes@HSPLEGAL.COM>; Matthew J. Piers <MPiers@HSPLEGAL.COM>; Christine Blank <cblank@HSPLEGAL.COM>
**Subject:** RE: CMS/PML/Millennium

Dear Mr. Hierl—

Attached is a complaint my clients intend to file in the absence of hearing from you in the next seven days. Please let me know if you and your firm would be amenable to service of process and this complaint via email. Thank you,

**Paul J. Kozacky**
Attorney at Law – Proctor in Admiralty


Kozacky Weitzel McGrath

Kozacky Weitzel McGrath, P.C.
77 West Wacker Drive, Suite 4500
Chicago, IL 60601
312.696.0900 (General Office)
312.907.0651 (Cell)
312.696.0901 (Direct Dial)
pkozacky@kwmlawyers.com
www.kwmlawyers.com


Primerus
Member, Society of Primerus Law Firms

1

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Millennium Media, Inc. and | ) | |
| PML Process Management Ltd., | ) | |
| | ) | |
| plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 21-cv-_____ |
| | ) | |
| Michael A. Hierl, Esq. and | ) | |
| Hughes Sokol Piers Resnick & Dym, Ltd., | ) | |
| | ) | |
| defendants. | ) | |

## COMPLAINT

### Facts Common to All Counts

1.     Millennium Media, Inc. (Millennium") is a Nevada corporation with its principal place of business in Los Angeles, California.

2.     PML Process Management Ltd. ("PML") is a corporation organized under the laws of Cyprus with its principal place of business in Larnaca, Cyprus.

3.     Michael A. Hierl, Esq. ("Hierl") is a citizen of Illinois and an Illinois attorney who practices as a partner with Hughes Sokol Piers Resnick & Dym, Ltd.

4.     Hughes Sokol Piers Resnick & Dym, Ltd. ("HSPR&D") is an Illinois corporation with its principal place of business in Chicago, Illinois. Hierl and HSPR&D collectively are referred to herein as "the lawyers."

5.     This Court has jurisdiction under 28 U.S.C. § 1332 as the action is between citizens of different states and countries and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.    Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1).

7.    Beginning around February 2012, Hierl and HSPR&D, under the direction and supervision of Hierl, undertook legal representation of various copyright owners (termed "rightsholders") whose copyrights may have been infringed. The rightsholder's agent would supply the lawyers with the internet protocol addresses of suspected infringers, the lawyers would then file a John Doe complaint and propound subpoenas to non-party internet service providers to determine the identity of the suspected infringer based on his or her internet address, and upon learning the identity of the suspected infringer, the lawyers were to amend the complaint to name that individual as a defendant. Thereafter the lawyers were to settle the claim with the amended defendant, retaining certain percentages as their contingency fee and for reimbursable costs, and remitting the balance to the rightsholder's agent for distribution to the agent, the rightsholder and the data processing companies which collected information about suspected infringer internet addresses.

8.    Millennium became one of Hierl and HSPR&D's rightsholder clients pursuant to an engagement entered into by its prior agent.

9.    In late 2019, Millennium switched agents to PML. On December 7, 2020, the lawyers received an email from Millennium's general counsel formally confirming that it had appointed a new agent, and providing:

> notice to HSPRD that PML has assumed the former obligations and liabilities in respect of the copyright enforcement matters and that all payments for past infringements and going forward shall be remitted to PML on behalf of Millenium.

10.    The lawyers also agreed to provide Millennium and its agent a monthly report of actions undertaken, expenses incurred, and collections made.

2

11.    On April 23, 2019, the lawyers and Millennium's prior agent agreed that, going forward, the lawyers' contingency fee would be based on net collections as opposed to gross collections. In other words, reimbursable expenses such as the court filing fee and subpoena fees would be deducted from any settlement first, and the lawyers' contingency fee then would be calculated based on the lower, or "net," collections.

12.    On August 16, 2021, the lawyers also agreed to send counsel for Millennium and PML twelve specified case files so a review of the lawyers' activities and settlements could be further evaluated.

13.    Millennium and PML have performed all conditions required of them under the parties' agreement.

## COUNT I.
### Breach of Contract

14.    Millennium and PML reallege paragraphs 1 through 13, inclusive, as though fully set forth herein.

15.    Despite the December 7, 2020 instruction and subsequent demands, the lawyers have refused to remit to PML $69,765.78, which remains due and owing.

16.    Despite demand, the lawyers also have refused to remit to PML approximately $61,358.73 that remains owed to Millennium, and in part to PML, based on the calculation of the lawyers' contingency fee from net collections (gross collections minus reimbursable expenses) as opposed to gross collections (the total amount of monies received from amended defendants in settlement).

17.    Despite demand, the lawyers have refused to turn over to counsel for Millennium and PML the twelve requested case files, specifically, Northern District of Illinois

3

Case Nos. 18-cv-2370, 18-cv-4271, 18-cv-5068, 18-cv-5073, 19-cv-3796, 19-cv-5777, 19-cv-7163, 19-cv-7514, 20-cv-0369, 20-cv-1394, 20-cv-1395 and 20-cv-1401.

18. Millennium and PML have been damaged by the lawyers' breach of contract in the amount of $131,124.51 and possibly more as might be shown by a review of the requested case files and other case files.

WHEREFORE, for the foregoing reasons, Millennium Media, Inc. and PML Process Management Ltd. request that judgment be entered in their favor and against Michael A. Hierl, Esq. and Hughes Sokol Piers Resnick & Dym, Ltd., jointly and severally, for at least $131,124.51 in money damages and whatever other damages as may be proven at trial, their costs, their attorneys' fees and whatever other relief this Court deems appropriate.

## COUNT II
### Accounting

19. Millennium and PML reallege paragraphs 1 through 13, inclusive, as though fully set forth herein.

20. As lawyers for their client Millennium, the lawyers owe Millennium a fiduciary duty as a matter of law and, accordingly, a duty to account.

21. Whether the lawyers owe Millennium and its agent PML more money from settlements with amended defendants is complex and cannot be determined without review of the case files. Due to the unascertainable quantum of unaccounted-for settlements, Millennium and PML lack an adequate remedy at law.

22. Millennium and PML have demanded the case files for the twelve civil actions listed in paragraph 17 and, despite an early indication that the case files would be tendered to counsel for Millennium and PML, the lawyers continue to withhold the requested case files.

4

WHEREFORE, for the foregoing reasons, Millennium Media, Inc. requests that judgment be entered in its favor and against Michael A. Hierl, Esq. and Hughes Sokol Piers Resnick & Dym, Ltd., jointly and severally, requiring them to account for all matters they undertook on behalf of Millennium, and whatever other damages as may be proven at trial following that accounting, plus costs, attorneys' fees and whatever other relief this Court deems appropriate.

Respectfully submitted,

MILLENNIUM MEDIA, INC. and
PML PROCESS MANAGEMENT LTD.

By: /s/ Paul J. Kozacky
One of their attorneys

Paul J. Kozacky
Brian P. O'Connor
Caitlin Brown
Kozacky Weitzel McGrath, P.C.
77 West Wacker Drive, Suite 4500
Chicago, Illinois 60601
312-696-0900
pkozacky@kwmlawyers.com
boconnor@kwmlawyers.com
cbrown@kwmlawyers.com

5

**Exhibit 32**

S.D.F.L. Order Sanctioning Kerry S. Culpepper in the amount of $11,700

(S.D.F.L. Case No. 1:21-cv-20862, Doc. #532)

Previously submitted as part of Exhibit 11 in D.I. 806

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-20862-BLOOM/Otazo-Reyes**

MILLENNIUM FUNDING, INC.,
a Nevada corporation, *et al.*,
        Plaintiffs,

v.

1701 MANAGEMENT LLC d/b/a
LIQUIDVPN, a Puerto Rico limited
liability company, *et. al.*,

        Defendants.

_____/

## REPORT AND RECOMMENDATION RE: D.E. 438

THIS CAUSE came before the Court upon Garnishees Glo-Jet International Corp. and Glo-Jet International Holdings (Puerto Rico) LLC (collectively, "Garnishees") Motion for Attorney's Fees (hereafter, "Motion for Fees") [D.E. 438]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Beth Bloom, United States District Judge [D.E. 432]. For the reasons stated below, the undersigned respectfully recommends that Plaintiff's Motion for Fees be GRANTED IN PART.

## PROCEDURAL AND FACTUAL BACKGROUND

On March 28, 2022, the Court granted Final Default Judgment in favor of Plaintiffs, MILLENNIUM FUNDING, INC., VOLTAGE HOLDINGS, LLC, AMBI DISTRIBUTION CORP., AFTER PRODUCTIONS, LLC, AFTER II MOVIE, LLC, MORGAN CREEK PRODUCTIONS, INC., MILLENNIUM FUNDING, INC., BEDEVILED LLC, MILLENNIUM MEDIA, INC., COLOSSAL MOVIE PRODUCTIONS, LLC, YAR PRODUCTIONS, INC., FSMQ FILM, LLC, FW PRODUCTIONS, LLC, MILLENNIUM IP, INC., I AM WRATH

PRODUCTION, INC., KILLING LINK DISTRIBUTION, LLC, 2 BADHOUSE STUDIOS, LLC, LF2 PRODUCTIONS, INC., LHF PRODUCTIONS, INC., VENICE PI, LLC, RAMBO V PRODUCTIONS, INC., RUPTURE CAL, INC., MON, LLC, SF FILM, LLC, SPEED KILLS PRODUCTIONS, INC., MILLENNIUM IP, INC., NIKOLA PRODUCTIONS, INC., WONDER ONE, LLC, BODYGUARD PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., GLACIER FILMS 1, LLC, DEFINITION DELAWARE LLC, HANNIBAL CLASSICS INC., JUSTICE EVERYWHERE PRODUCTIONS LLC, STATE OF THE UNION DISTRIBUTION AND COLLECTIONS, LLC, PARADOX STUDIOS, LLC, DALLAS BUYERS CLUB, LLC, HITMAN TWO PRODUCTIONS, INC., SCREEN MEDIA VENTURES, LLC and 42 VENTURES, LLC's (collectively, "Plaintiffs") and entered judgment in the amount of $15,172,403.00 in favor of Plaintiffs and against Defendants 1701 Management, LLC ("1701"), Charles Muszynski ("Muszynski"), and AUH20 LLC ("AUH20") (together, "Defendants"). See Final Default Judgment [D.E. 213]..

On August 19, 2022, the Court issued Writs of Garnishments [D.E. 260, 261] against Garnishees. Plaintiffs served the Garnishees with the Writs on September 12 and 29 of 2022 [D.E. 276 and 278]. On October 26, 2022, Plaintiffs filed a Motion for Entry of Clerk's Default after Garnishees failed to respond to the Writs [D.E. 291]. A Clerk's Default was entered against Garnishees on October 27, 2022 [D.E. 292]. On November 7, 2022, Plaintiffs filed a Motion for Default Judgment seeking final default judgment against Garnishees in the amount of $15,433.950.27. See Mot. for Default Judgment [D.E. 297]. On December 8, 2022, the undersigned held a show cause hearing on Plaintiffs' Motion for Default Judgment [D.E. 316]. Following the show cause hearing, the undersigned issued a Report and Recommendation finding that Garnishees failed to respond to the Motion for Default Judgment and failed to appear at the

2

show cause' hearing; and recommending that Final Default Judgment be entered in favor of Plaintiffs and against Garnishees. See Report and Recommendation [D.E. 326].

On December 14, 2022, Garnishees objected to the Report and Recommendation, moved to set aside the default, and answered the Writs of Garnishment by stating that they were not indebted to Defendants. See Mot. to Set Aside Default and Answer (hereafter, "Motion to Set Aside Default") [D.E. 331 at 4].

On February 1, 2023, the Court issued its Order granting Garnishee's Motion to Set Aside Default and declined to adopt the Report and Recommendation. See Order [D.E. 383]. On February 2, 2023, Garnishees filed their Answer to Writs and Motion to Dissolve the Writs [D.E. 384] and requested an award of reasonable attorney's fees pursuant to Florida Statute § 77.28 (hereafter, "Section 77.28"). On February 6, 2023, Plaintiffs moved to voluntarily dissolve the Writs [D.E. 391] and stated that they had sent Garnishees' counsel $200.00 in compliance with Section 77.28.[1] On February 7, 2023, the Court entered an order: granting Garnishees' Motion to Dissolve the Writs; granting Plaintiffs' Motion to Voluntarily Dissolve Writs of Garnishment; and reserving jurisdiction on Garnishees' claim for additional fees and costs. See Omnibus Order [D.E. 396].

On February 17, 2023, Garnishees filed their Motion for Summary Judgment and Request for Dismissal with Prejudice and Award of Attorneys' Fees [D.E. 412]. On February 21, 2023, the Court issued a paperless Order denying the motion and stating; "If Garnishees seek to recover attorneys' fees they must file a Motion for Attorneys' Fees that complies with Local Rule 7.3."

---

[1] Section 77.28 requires that, "[u]pon issuance of a writ of garnishment, the party applying for it shall pay $100 to [each] garnishee on the garnishee's demand at any time after the service of the writ for the payment or part payment of his or her attorney fee which the garnishee expends or agrees to expend in obtaining representation in response to the writ." Id.

See Order [D.E..413].   On March 25, 2023, Garnishees filed the instant Motion for Fees seeking a fee award in the amount of $21,180.00 pursuant to Section 77.28.  See Mot. for Fees [D.E. 438 at 6].  Garnishees also seek the same amount of fees as sanctions against Plaintiffs pursuant to 28 U.S.C. §.1927 (hereafter, "Section 1927").  See id.

## DISCUSSION

### 1. Entitlement to Attorney's Fees under Section 77.28

Garnishees argue that they are entitled to an award of attorney's fees pursuant to Section 77.28 of the Florida Statutes.  Section 77.28 provides, in relevant part:

> On rendering final judgment, the court shall determine the garnishee's costs and expenses, including a reasonable attorney fee, and in the event of a judgment in favor of the plaintiff, the amount is subject to offset by the garnishee against the defendant whose property or debt owing is being garnished.

Id.  Plaintiffs argue that Section 77.28 requires that a final judgment be rendered in the case before an award of attorney's fees can be issued and that, because no final judgment was entered, Garnishees are not entitled to recover fees under the statute.  See Response in Opposition to Garnishee's Mot. for Fees (hereafter, "Response") [D.E. 453 at 13].  Garnishees counter that the Court's dissolution of the Writs of Garnishment [D.E. 396] operates like a final judgment within the meaning of Section 77.28.  See Mot. for Fees [D.E. 438 at 3 (citing Matthews v. First Fed. Sav. & Loan, 571 So. 2d 2, 3 (Fla. 2d DCA 1990)).

In Matthews, the garnishees filed a motion for attorney's fees pursuant to Section 77.28. Id. at 2.  Although no final judgment had been entered in the case, the garnishees argued that they were entitled to fees because the court's prior order granting their motion to dismiss and dissolving the writs of garnishment was in effect a final judgment.  Id.  The appellate court agreed with the garnishees, finding that the order granting the garnishees' motion to dismiss and dissolving the

4

writs of garnishment "was tantamount to a final judgment" because it was "a final decision appealable as a final judgment." Id. at 3.

Plaintiffs argue that this case is distinguishable from Matthews in that Garnishees never filed a motion to dismiss but instead "improperly" moved to dissolve the writs pursuant to Fla. Stat. § 77.07(1). See Response at 20. However, this is a distinction without a difference. Thus, applying Matthews, the undersigned finds that the Court's Order granting Garnishees' Motion to Dissolve Writs of Garnishment and reserving jurisdiction to address their claim for fees is "tantamount to a final judgment". See Omnibus Order [D.E. 396 at 2]; Matthews, 571 So. 2d at 3; see also Tosto v. Zelaya, No. 06-21213-CIV, 2012 WL 12849956, at *3 (S.D. Fla. Aug. 16, 2012) ("In line with Matthews, the Court concludes that the dissolution of the writs of garnishment in this case constituted a final judgment in the garnishment proceedings permitting an assessment of fees and costs . . . ."); Armenteros v. Nat. Chicken Grill of Am., LLC, No. 12-22616-CIV, 2020 WL 9458737, at *2 (S.D. Fla. Feb. 5, 2020) ("An order that dissolves a writ of garnishment is a final judgment for purposes of Fla. Stat. § 77.28.") (internal quotations and citations omitted). Moreover, in denying Garnishees' Motion for Summary Judgment, the Court nevertheless directed Garnishees to "file a Motion for Attorney's Fees that complies with [Southern District of Florida] Local Rule 7.3" if they sought to recover fees. See Order [D.E. 413]. In light of the foregoing, the undersigned concludes that Garnishees may seek to recover fees pursuant to Section 77.28 and turns to Plaintiffs' additional argument that Garnishees failed to comply with Southern District of Florida Local Rule 7.3 (hereafter, "Local Rule 7.3").

## 2. Compliance with Local Rule 7.3

Plaintiffs further argue that Garnishees are not entitled to recover attorney's fees because they failed to comply with sections (a) and (b) Local Rule 7.3. Local Rule 7.3(a) requires the party

seeking fees to confer in good faith with the opposing party prior to filing a motion for fees. S.D. Fla. L.R. 7.3(a). The Rule also requires that the motion for fees *inter alia*: "disclose the terms of the applicable fee agreement"; "describe and document with invoices all incurred and claimed fees"; and "be verified". Id. Local Rule 7.3(b) requires the movant to serve but not file a draft motion for fees at least 30 days prior to the deadline for filing any motion for fees. S.D. Fla. 7.3(b). Courts have discretion to deny recovery of attorney's fees if the movant fails to strictly comply with the local rules. See, e.g., Jackson v. Waste Pro of Florida, Inc., No. 22-CV-60330, 2022 WL 4631096, at *6 (S.D. Fla. Sept. 13, 2022).

Plaintiffs argue that Garnishees violated Local Rule 7.3(a) on several grounds. First, Plaintiffs contend that Garnishees failed to comply with the conferral requirement by filing a different fee motion than the draft sent to Plaintiffs. See Response [D.E. 453 at 14–15]. Although Plaintiffs argue that the "differences between the draft and filed fee motions are not mere formal changes", it appears that the parties did confer over the amount of fees and discussed substantive arguments prior to Garnishees' filing their Motion for Fees. Id. at 14. As Plaintiffs concede, the filed fee motion differs by a mere 2 pages from the draft, with the only apparent difference being the addition of arguments presented in an apparent attempt to "preempt arguments Plaintiffs made in their objections to the draft fee motion and a second affidavit." Id. Thus, the undersigned concludes that the parties did engage in a meaningful conferral prior to the filing of the Motion for Fees, and that the addition of counterarguments in the filed motion is not sufficient grounds for the Court in its discretion to deny Garnishees' Motion for Fees.

Next, Plaintiffs argue that Garnishees failed to disclose the applicable fee agreement and failed to serve a copy of the invoices. However, as Plaintiffs again concede, Garnishees did disclose to Plaintiffs during their conferral that counsel for Garnishees was "retained by Garnishees

at a fee rate of $300/hour" and later sent an affidavit including details of the fee agreement. See id. at 16. While it appears that the actual fee agreement was not provided, the undersigned finds these disclosures sufficient to support a finding of substantial compliance with Local Rule 7.3(a). Moreover, the invoices that were sent to Plaintiffs' counsel appear identical to the ones attached to the Motion for Fees. Indeed, the invoices contain all of the pertinent information needed to assess their validity, including the date and description of each entry, the timekeeper, the rate, amount of time spent, and a line-item total of fees. Compare Ex. A to Plfs.' Response [D.E. 453-2] with Invoices [D.E. 438-1]. Finally, the undersigned finds that Garnishees' affidavits sent to Plaintiffs' counsel in support of the Motion for Fees substantially complied with the verification requirements of Local Rule 7.3(a).

With respect to Local Rule 7.3(b), Plaintiffs argue that Garnishees failed to serve a copy of the draft fee motion prior to filing it. See Response [D.E. 453 at 15]. Specifically, Plaintiffs argue that Garnishees' counsel "merely emailed a copy to Plaintiffs' counsel" but Plaintiffs' counsel never consented in writing to accept papers from Garnishees via email. Id. For this argument, Plaintiffs cite Rule 5 of the Federal Rules of Civil Procedure, which requires that consent be given in writing to serve by electronic means. See Fed. R. Civ. P. 5(b)(2)(E). In response to Plaintiffs' objection to receiving service of the draft fees motion by email, Garnishees mailed a certified copy on March 14, 2023, which Plaintiffs argue was untimely under Local Rule 7.3(b) because the 30-day deadline to serve the draft motion was March 9, 2023, calculated from the date of the Court's Omnibus Order [D.E. 396] dissolving the writs. See Response [D.E. 453 at 15].

Although Plaintiffs are correct that service of the draft fee motion by email was technically improper under Fed. R. Civ. P. 5 because Plaintiffs did not consent in writing to such service, the

Court finds "in the interests of fairness" and because Garnishees "made good faith efforts to resolve the dispute" prior to the end of the 30-day deadline to serve the motion under Local Rule 7.3(b), that this technical error is not sufficient to deny Garnishees' request for fees. See Rocky Mountain Holdings v. Johnson, No. 5:13-cv-58-RS-GRJ, 2013 WL 5928550, at *2 (S.D. Fla. Oct. 31, 2013).

### 3. Calculation of Attorney's Fees

Garnishees seek $21,180.00 in attorney's fees for 70.6 hours of work performed by their attorney, Allan A. Rivera, Esq. ("Attorney Rivera") at a rate of $300 per hour. See Mot. for Fees [D.E. 438 at 6]. To determine an award of attorney's fees, "the Court must first determine the 'lodestar,' which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate." See James v. Wash Depot Holdings, Inc., 489 F.Supp.2d 1341, 1346 (S.D. Fla. 2007). "The fee applicant bears the burden of establishing entitlement to the award and documenting the appropriate hours and hourly rates." Parness v. Piazza Benvenuto Ristorante, Pizzeria & Mkt., Inc., No. 08-61604-CIV, 2009 WL 1117362, at *1 (S.D. Fla. Apr. 24, 2009) (citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)).

A. *Reasonable Hourly Rate*

When determining a reasonable hourly rate, the rate should be "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing Blum v. Stenson, 465 U.S. 886, 895-96 (1984)). "The party seeking attorney's fees bears the burden of producing 'satisfactory evidence that the requested rate is in line with prevailing market rates.'" Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994) (quoting Norman, 836 F.2d at 1299). Here, Attorney Rivera provided an affidavit stating that he

was retained at a rate of $300/hour and has been a licensed attorney since 2014. See Aff. [D.E. 438-2]. Despite his nearly 10 years of experience, Plaintiffs argue that Attorney Rivera's rate is unreasonable and should be reduced to $200/hour. Based on the undersigned's own experience and knowledge of the typical hourly rates in this District, the undersigned finds the hourly rate of $300 for Attorney Rivera is reasonable and appropriate.

B. *Number of Hours Expended*

"As in the analysis of reasonable hourly rates, the Court is presumed to be an expert in reviewing the number of hours expended on litigation for the purpose of attorney's fees." Capdevila v. S. Miami Rehab., Inc., No. 11-24005-CIV, 2012 WL 13134212, at *2 (S.D. Fla. Dec. 5, 2012) (citing Norman, 836 F.2d at 1303). "[A] district court must determine whether the hours expended are reasonable. Again, a fee applicant bears the burden of documenting the appropriate hours expended so that the Court may properly assess the time claimed for each activity." Parness, 2009 WL 1117362, at *2. "A fee applicant must set out the general subject matter of the time expended by the attorney 'with sufficient particularity so that the court can assess the time claimed for each activity.'" Diaz v. Solmar Rest., Inc., No. 08-21379-CIV, 2009 WL 10667781, at *4 (S.D. Fla. Aug. 7, 2009) (quoting Norman, 836 F.2d at 1303). "Excessive, redundant or otherwise unnecessary hours should be excluded from the amount claimed." Eckerhart, 461 U.S. 424, 434 (1983).

Upon review of Attorney Rivera's invoices, seven entries have partially or completely redacted task descriptions such that the Court cannot determine the nature of those tasks. See Invoices [D.E. 438-1]; Oxford Asset Mgtmt., Ltd. v. Jaharis, 297 F.3d 1182, 1197 (11th Cir. 2002) (abuse of discretion to award fees based on severely redacted fee entries). Accordingly, Garnishees.

are not entitled to recover fees based on the redacted entries, thereby reducing Attorney Rivera's hours by 11.1 hours.

Moreover, several entries appear to be excessive or duplicative in nature, including four entries involving drafting a "reply" and affidavits, for a total of 22 hours. See Invoices [D.E. 438-1]. The undersigned finds these hours to be excessive and lacking a sufficient description to distinguish one task from the other. Likewise, an entry dated January 10, 2023, for "Study of motion to withdraw or correct for safe harbor proceedings under Rule 11 and Rule 15. See OConnor Rules pages 444, 437, 670, 662" appears excessive at 1.5 hours. Id. Therefore, the undersigned reduces Attorney Rivera's time spent drafting a "reply" and affidavits from 22 hours to 10 hours and declines to award fees for the aforementioned 1.5-hour entry on January 10, 2023, for an additional reduction of 13.5 hours.

Similarly, Attorney Rivera's entries on January 19, 2023, for "Final editing and research of motion in opposition to reply" is not sufficiently descriptive to distinguish this task from the four other entries for drafting and finalizing a "reply". See Invoices [D.E. 438-1]. Similarly, the entry dated December 29, 2022, for "2 calls and email with client providing all attachm[]" appears to be cutoff and not sufficiently descriptive for the undersigned to determine whether this entry was reasonable. Id. Therefore, the undersigned finds the time entries for December 29, 2022, and January 19, 2023, not reasonable and further reduces Attorney Rivera's time by 2.5 hours.

The undersigned also finds Attorney Rivera billed for the clerical task of filing a motion for extension of time on December 29, 2022, which is not recoverable. Id.; Martin v. Italian Cabinetry, Inc., No. 18-CV-24958, 2019 WL 3429919, at *3–4 (S.D. Fla. June 6, 2019) (clerical tasks are not compensable as attorney's fees). Similarly, the undersigned finds the time spent by Attorney Rivera emailing Attorney Culpepper on December 29, 2022, January 19, 2023, and on

January 26, 2023, are either excessive or include improper block billing such that they are not recoverable. Ovalle v. Perez, No. 16-CV-62134, 2017 WL 7792719, at *4 (S.D. Fla. Nov. 9, 2017) (prohibiting fee award for block billing). Therefore, the undersigned further reduces Attorney Rivera's time by 4.5 hours.

Applying the foregoing reductions, the undersigned reduces Attorney Rivera's time by 31.6 hours and the corresponding amount of fees by $9,480 for a total fee award of $11,700.00.

**4. Sanctions Pursuant to Section 1927**

As previously noted, Garnishees also seek attorney's fees as sanctions pursuant to Section 1927, which allows a party to seek attorney's fees against any party who "so multiplies the proceedings in any case unreasonably and vexatiously". 28 U.S.C. § 1927. The imposition of Section 1927 sanctions is not based on who wins or loses but is "concerned only with limiting the abuse of court processes." Roadway Express, Inc. v. Piper, 447 U.S. 752, 762 (1980). Here, Garnishees argue that Plaintiffs' attorneys should be sanctioned for "pursuing a cause of action unreasonably against Garnishees by filing motion after motion [that] created undue burden and expense". See Mot. for Fees [D.E. 438 at 9]. However, Garnishees fail to acknowledge that it took a Motion for Default, a Motion for Default Judgment, a Show Cause Hearing, at which they did not appear, and a Report and Recommendation that Default Judgment be entered before Garnishees finally answered the Writs. Therefore, the undersigned finds no merit in Garnishees' argument that Plaintiffs unreasonably and vexatiously litigated this case. Accordingly, the undersigned finds no basis for an award of fees as Section 1927 sanctions against Plaintiffs.

## **RECOMMENDATION**

Based on the foregoing, the undersigned RESPECTFULLY RECOMMENDS that Garnishees' Motion for Fees [D.E. 438] be GRANTED IN PART as to their request for attorney's

11

fees solely pursuant to Section 77.28; and that Garnishees be AWARDED fees in the amount of

**$11,700.00.**

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Beth Bloom, United States District Judge. Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P.-3).

**RESPECTFULLY SUBMITTED** in Miami, Florida, this 27th day of June, 2023.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

Copies via CM/ECF to:

United States District Judge Beth Bloom
Counsel of Record

12

**Exhibit 33**

S.D.F.L. Order Sanctioning Joel B. Rothman in the amount of $249,357.50

(S.D.F.L. Case No. 21-cv-80740, D.E. 66)

Previously submitted as part of Exhibit 12 in D.I. 806

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 21-80740-CV-MIDDLEBROOKS

CELSIUS HOLDINGS, INC.,

      Plaintiff,

v.

A SHOC BEVERAGE, LLC, *et al,*

      Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SANCTIONS AND FEES

THIS CAUSE comes before the Court on Defendants' Motion for Sanctions and Fees, filed on November 5, 2021. (DE 54). The Motion is fully briefed. (DE 57; DE 60). A hearing on the Motion was held on May 12, 2022. For the reasons explained below, Defendants' Motion is granted.

### I.     Background

Plaintiff initiated this lawsuit on April 20, 2021, asserting nine counts[1] against Defendants for violations of the Lanham Act, the California Unfair Competition Law, the Florida Unfair and Deceptive Trade Practices Act, and common law unfair competition under California and Florida law based on the trade dress and labeling on Defendant's A SHOC energy drink. (DE 1). Put simply, Plaintiff alleges that A SHOC infringed its trade dress, and that the label on A SHOC's product is false and misleading. On May 5, 2021, I set this case for trial during the two-week period beginning January 18, 2022. (DE 11). And on May 11, 2021, Magistrate Judge Brannon issued a

---

[1] The numerical counts in Plaintiff's Complaint are hard to follow. They are listed as Count I, Count II, Count III, Count IV, Count VII, Count XI, Count XII, Count VIII, and Count X, with no Counts V, VI, or IX.

Pretrial Scheduling Order that set, *inter alia*, August 9, 2021 as Plaintiff's deadline to furnish expert reports or summaries, and November 1, 2021 as the deadline to complete all discovery. (DE 20).

On May 28, 2021, Defendants filed a Motion to Dismiss Plaintiff's Complaint, arguing that "(I) Celsius's trade dress claims rely entirely on functional (and common) industry conventions like the use of different colors to denote different flavors, rather than anything that is unique to Celsius; and (II) the scientific studies cited in Celsius's own Complaint definitely establish that Defendants have used the terms at issue properly." (DE 27 at 1). Defendants also filed a number of discovery motions, including a Motion to Compel Production of Documents (DE 34), Motion to Compel Answers to Requests for Admission and Interrogatories (DE 35), and Motion to Exclude Testimony of Ralph Blessing and Christopher Lockwood (DE 39), Plaintiff's experts. A hearing on Defendants' discovery motions was set for September 20, 2021. (DE 37). But one week prior to that hearing, Plaintiff voluntarily dismissed this action without prejudice. (DE 50).

This Motion for Sanctions and Fees followed. (DE 54). Defendants request that I convert Plaintiff's voluntary dismissal into a dismissal with prejudice, and that I award them their attorneys' fees and expert fees pursuant to 28 U.S.C. § 1927, the Court's inherent powers, and 15 U.S.C. § 1117(a). They contend that this "case is in a class all by itself" because of the "bad faith under which it was brought and conducted," as evidenced by: (1) the fact that Plaintiff's false advertising claims were contradicted by the studies cited in its own Complaint; (2) Plaintiff's failure to meaningfully participate in discovery; and (3) the timing of Plaintiff's dismissal of this action, a week before a hearing was scheduled to be held on Defendants' discovery motions. (DE 54 at 2–3). Plaintiff responds that its false advertising claims are supported by the fact that A SHOC did not test its formula like Plaintiff had done, that its discovery objections were made in

good faith, and that it dismissed the case because A SHOC announced it was rebranding. For the reasons explained below, I agree with Defendants that this is an extraordinary case, and Defendants' Motion is therefore granted.

## II.   Discussion

In the present Motion, Defendants seek two forms of relief. First, Defendants request that I convert Plaintiff's voluntary dismissal *without* prejudice into a dismissal *with* prejudice as a discovery sanction. And second, they request their attorneys' fees and expert fees as a sanction for Plaintiff's pursuit of frivolous claims and bad faith litigation conduct. I address each in turn.

### A.   Dismissal with Prejudice

"[D]ismissal with prejudice is a permissible sanction if a party" litigates in "bad faith." *Zow v. Regions Fin. Corp.*, 595 F. App'x 887, 888–89 (11th Cir. 2014). In support of their argument that Plaintiff litigated this case in bad faith, Defendants point to the fact that Plaintiff failed to abide by nearly all of the discovery deadlines in this matter and failed to participate in any meaningful discovery: just weeks before the end of the discovery period, Plaintiff had produced no documents and refused to respond to almost all written discovery. Then, just days before a hearing before Judge Matthewman on Defendants' discovery motions, Plaintiff dismissed this case without prejudice. Plaintiff acknowledges that it did not produce documents but maintains that Defendants' discovery requests were objectionable. (DE 57 at 8). Plaintiff further argues that it dismissed this action because Defendant announced it was rebranding certain products, not because of the discovery hearing before Judge Matthewman, although Plaintiff's counsel stated at the hearing on this Motion that he had not reviewed the new designs prior to the dismissal. (DE 65 at 21:11–15).

"The Federal Rules of Civil Procedure provide a district court with authority to impose sanctions, including dismissal, on a party for failing to comply with a court's discovery order." *Shortz v. City of Tuskegee, Ala.*, 352 Fed. App'x 355, 359 (11th Cir. 2009) (citing Fed. R. Civ. P. 37(b)(2)). "Dismissal with prejudice is the most severe Rule 37 sanction," but it "may be appropriate when a plaintiff's recalcitrance is due to willfulness, bad faith or fault." *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993). Dismissal is not an abuse of discretion "[w]hen a party demonstrates a flagrant disregard for the court and the discovery process." *Aztec Steel Co. v. Florida Steel Corp.*, 691 F.2d 480, 481 (11th Cir. 1982).

Here, I find that Plaintiff flagrantly disregarded the discovery process by refusing to meaningfully participate in discovery, serving boilerplate objections to even the most straightforward discovery requests, and repeatedly failing to comply with this Court's deadlines. Plaintiff responded to almost every request for inspection and production with a lengthy, generic, substance-free objection that the request was broad and vague. *See, e.g.*, DE 54-2, Ex. G., Responses to Requests 1, 2, 3, 4, 5, 6 and 7). This does not reflect a good faith effort to participate in the discovery process. Plaintiff also failed to answer Requests for Admission as to basic, undisputable facts, such as the appearances of competing products or what certain documents say. *See, e.g.*, DE 54-2. Ex. E at Request 2-3 (refusing to answer whether "the following image accurately depicts a can of Rowdy Energy as it currently appears in the marketplace"); Ex. E. at 197 (refusing to admit that "the study referred to in Request No. 169 says that 'caffeine increases energy metabolism,'" when the study plainly states that "caffeine increases energy metabolism through [a scientific process]"). I am persuaded that these objections, combined with Plaintiff's failure to produce any documents or other evidence, and the timing of Plaintiff's dismissal on the eve of the hearing before Judge Matthewman, rise to the level of bad faith. Thus, I find that it is

appropriate to convert the dismissal without prejudice in this matter to a dismissal with prejudice. *See Shortz*, 352 Fed. App'x at 359; *Stimson v. Stryker Sales Corp.*, 835 F. App'x 993, 998 (11th Cir. 2020) ("Appropriate sanctions" for bad faith conduct "include dismissal or an award of attorney's fees").

### B. Attorneys' Fees

Next, Defendants seek an award of attorneys' fees pursuant to 28 U.S.C. § 1927, under the Court's inherent powers, or under the Lanham Act. Under § 1927, any attorney who so "multiplies court proceedings unreasonably and vexatiously" may be required by the court "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions are warranted where an attorney "knowingly or recklessly pursue[s] a frivolous claim," or where "the attorney's conduct is so egregious that it is tantamount to bad faith." *Amlong*, 500 F.3d at 1241–42 (11th Cir.). Defendants contend that this standard is met here because Plaintiff "brought claims with no basis in law or fact and dragged out discovery with frivolous objections" and "willfully disregarded the Court's scheduling order" before "finally withdrawing its claims only to avoid appearing before this Court to justify its conduct." (DE 54 at 11).

I agree. I find that the weakness of Plaintiff's claims, combined with its conduct throughout the discovery process, rise to the level of bad faith, and I will therefore award Defendants their attorneys' fees as a sanction.[2] The fatal flaws in Plaintiff's case should have been apparent at least from the date on which Defendants filed their motion to dismiss. As to Plaintiff's false advertising claim, at the very minimum, Plaintiff needed to identify a false statement. *Warren Tech., Inc. v.*

---

[2] Because I have concluded that Defendants are entitled to recover their attorneys' fees under § 1937, I do not reach their arguments under the Court's inherent powers or the Lanham Act.

*UL LLC*, 962 F.3d 1324, 1328 (11th Cir. 2020). Plaintiff's Complaint asserted that the false statements were "A SHOC's claims that its A SHOC ACCELLERATOR products are 'thermogenic' and 'accelerates metabolism,' when in fact they [are not and] do not." (DE 1 at ¶¶ 60, 111). But Plaintiff's own studies suggest that these claims were *not* false, as caffeine is an active ingredient in Defendants' product, and Plaintiff's studies unambiguously explain that "caffeine increases energy metabolism."[3] (DE 54-2, Ex. F at 4). And even if not for these studies, Plaintiff's claims are directly undercut by well-established research on caffeine and thermogenesis. *See Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (affirming sanctions where counsel "failed to make a reasonable inquiry into the facts on which [Plaintiffs'] claim[s] w[ere] predicated"); *see also Barnes v Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). Given the scientific consensus in this area, it is no wonder that Plaintiff did not—and likely was unable to—produce any evidence to support its allegations.

Plaintiff's FDCA and trade dress claims fair no better. First, Plaintiff's FDCA claims were not legally cognizable because the FDCA provides the United States, not private parties, with sole enforcement authority under that Act. *See* 21 U.S.C. § 3337(a). As a result, courts do not have jurisdiction to hear Lanham Act or state law claims that "exist solely by virtue of the FDCA," *see Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 241, 252 (2001), or would require litigation of an underlying FDCA violation, *see Amarin Pharma, Inc. v. Int'l Trade Comm'n*, 923 F.3d 959, 969 (Fed. Cir. 2019). As to Plaintiff's trade dress claims, they appear to be premised on standard

---

[3] The studies further explain that "single 100 mg doses of caffeine have been shown to increase metabolic rate 3–4%, while a titrated dosing pattern of 6 x 100 mg over a 12 h period may increase expenditure 8–12%" and that "[n]utritional supplements containing [caffeine] purportedly facilitate thermogenesis and lipolysis. For instance, administering as little as 100 mg of caffeine has been shown to acutely increase energy expenditure by 3–4% in humans." (DE 54-2. Ex. F at; DE 54-2 Ex. H at 2).

conventions that are not source identifying and communicate practical information to consumers—i.e., a "no sugar" label in a prominent position on the top of the can and using color to identify the flavor of the beverage below the logo. (*See* DE 1 at ¶¶ 38–39). To state a claim under this cause of action, Plaintiff must point to some non-functional design elements that communicate a specific source. The practical features that Plaintiff references in its Complaint in support of this claim are not protectible trade dress, and Plaintiff and its counsel should have known as much. *See Miller Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1324 (11th Cir. 2012). That Defendants indicated that their product contains no sugar at the top of the can—just as most other energy drinks in the market do—presents no cognizable violation, nor does identifying the product flavor on the can. *See Dippin' Dots, Inc., v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1205 (11th Cir. 2004). Plaintiff does not have a monopoly right to the use of specific color/flavor combinations.

Moreover, as already discussed above, Plaintiff has failed to offer any justification for its failure to meaningfully participate in discovery, which caused Defendants to file multiple discovery motions, unnecessarily and vexatiously multiplying litigation and driving up Defendants' attorneys' fees. Plaintiff did not meaningfully participate in the discovery process, despite being the one to initiate this lawsuit. Plaintiff voluntarily dismissed this case only six weeks before the end of discovery, and even at that advanced stage had not produced a single document, answered a single interrogatory, or produced any evidence supporting its allegations. Based on this conduct, I find that Plaintiff "needlessly obstruct[ed] the litigation" of its own claims, and sanctions in the form of Defendants' attorneys' and expert fees are therefore appropriate. *See, e.g., Amlong*, 500 F.3d at 1242.

7

## C. Reasonableness of Fees

Having determined that Defendants are entitled to recover their attorneys' fees, I must now evaluate whether the amount requested by Defendants is reasonable. Defendants represent that they have expended in excess of $350,000 litigating this case, but they only seek to recover $249,357.50, which constitutes their reasonable fees and costs incurred following the filing of their motion to dismiss because "[a]t that point, it should have been apparent that [Plaintiff's] claims were meritless."

"The starting point for determining the amount of a 'reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). That "lodestar" may be adjusted after considering other factors. *See id.* (citations omitted). Under this method, the Court must determine whether the fee applicant has satisfied the burden of establishing that the requested hourly rate is reasonable. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citations omitted). "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Id.*

Turning to the number of hours, in determining the number of hours "reasonably expended," the Supreme Court requires fee applicants to exercise "billing judgment." *Hensley*, 461 U.S. at 434 (citations omitted). Therefore, attorneys "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* Here, Defendants break down the rates and hours expended on this matter as follows:

| Attorney | Hours | Rate | Fees Requested |
|----------|-------|------|----------------|
|          |       |      |                |

| Kevin Kaplan (Partner at Coffey Burlington) | 31.1 | $625 | $19,437.50 |
|---|---|---|---|
| Dorothy Kafka (Associate at Coffey Burlington) | 45.2 | $300 | $13,560.00 |
| Howard Hogan (Partner at Gibson Dunn) | 110 | $700 | $77,000.00 |
| Christopher Kopp (Senior Associate at Gibson Dunn) | 40 | $450 | $18,000.00 |
| Laura Mumm (Senior Associate at Gibson Dunn) | 10.3 | $450 | $4,635.00 |
| Austin Donohue (Associate at Gibson Dunn) | 71.4 | $375 | $26,777.00 |
| **Total** | | | **$159,407.50** |

In light of counsel's experience and the prevailing market rates, I find that the proposed hourly rates listed above[4] are reasonable based on the facts and circumstances of this case. (*See* DE 54-2. Ex. J); *see also Domond v. PeopleNetwork APS*, 750 Fed. App'x 844, 848 (11th Cir. 2018) (finding $655 to be a reasonable rate in Miami for trademark litigation services). And upon review of the detailed billing records submitted by Defendants, I conclude that the attorneys at Coffey Burlington and Gibson Dunn exercised sound billing judgment. (*See* DE 54-2 Ex. K, L). Therefore, I conclude that the amount of attorneys' fees requested is reasonable.

Defendants also seek to recover their expert fees expended in this matter. Both attorneys' fees and expert fees are appropriate sanctions under § 1927. *See Wachovia Bank v. Tien*, 406 F.

---

[4] I note that the rates of the Gibson Dunn attorneys have been discounted 30–56% percent from the firm's customary rates actually charged to the client, which I find further supports their reasonableness.

App'x 378, 383 (11th Cir. 2010); *Barnes v. Dalton*, 158 F.3d 1212, 1215 (11th Cir. 1998). Those

fees are broken down as follows:

| Expert | Hours | Rate | Fees Requested |
|---|---|---|---|
| Richard Kreider | 49.25 | $595 | $29,303.75 |
| Ron Goodstein | 25 | $800 | $20,000.00 |
| Andrew Bernstein | 4.7 | $525 | $2,467.50 |
| Nichole Zakowicz | 8.2 | $525 | $4,305.00 |
| Graham Rogers | 1.5 | $580 | $870.00 |
| Basil Englis | 29.67 | $750 | $22,252.50 |
| Mary Borrowman | 28.67 | $375 | $10,751.25 |
| **Total** | | | $89,950.00 |

The fees requested by Defendants are supported by the invoices they have attached to their Motion.

(*See* DE 54-2 at Exs. M–P). Thus, I find that they are reasonable.

## III.    Conclusion

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

(1) Defendants' Motion for Sanctions and Fees (DE 54) is **GRANTED**.

(2) Defendants are **AWARDED** their reasonable attorneys' and experts' fees in the amount of

$249,357.50. This amount is entered against Plaintiff's counsel.

(3) An Order converting the dismissal of this matter from a dismissal without prejudice to a

dismissal with prejudice will be entered separately.

SIGNED in Chambers at West Palm Beach, Florida, this *18* day of July, 2022.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

cc:      Counsel of Record

**Exhibit 34**

Email Admissions Regarding PML Process Management Limited

Previously submitted as Exhibit 15 in D.I. 806

# improper contact of my clients

From    Kerry Culpepper <kculpepper@culpepperip.com>

To      usfilefolder@protonmail.com

Date    Wednesday, January 22nd, 2025 at 2:29 PM

Mr. Muszynski,

It has come to my attention that you have been improperly contacting my clients and mentioning subpoenas despite you knowing that your bankruptcy case was dismissed.  Please explain the legal basis and from which case you are issuing "subpoena" .

Kerry Culpepper

**(i) This message needs your attention**

• This is a personal email address.

• This is their first email to your company.

( Report or Mark Safe )

Good day Mr. Veregin:

As you represent Mr. Perino of PML Process Management Limited in the Republic of Cyprus ("PML") and PML has partnered with Kerry Culpepper in Hawaii to engage in barratry throughout the U.S., and a both are subjects of a criminal investigation proceeding in the Federation of St. Christopher and Nevis as predicate to filing of fraud charges in U.S. courts, might we schedule a brief chat to determine when it would be convenient to schedule acceptance of a subpoena for Mr. Perino for deposition?

Sincerely,


Charles Muszynski

**From:** usfilefolder <usfilefolder@protonmail.com>
**Sent:** Sunday, January 19, 2025 4:33 PM
**To:** Lawrence Veregin <lveregin@airdberlis.com>
**Subject:** Re: Benjamin Perino and Kerry Culpepper