**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------------------x

In re:

CHICKEN SOUP FOR THE SOUL
ENTERTAINMENT, INC., *et al.*,

Debtors.[1]

-----------------------------------------------------------------x

:
:
:
:
:
:
:
:
:
:
:
:
:

Chapter 7

Case No. 24-11442 (MFW)

(Jointly Administered)

**Re: Docket No. 789**

**HPS INVESTMENT PARTNERS, LLC'S LIMITED OBJECTION
TO EMERGENCY MOTION OF CHARLES MUSZYNSKI FOR
I) INJUNCTIVE RELIEF TO HALT PARALLEL SDFL PROCEEDINGS;
II) DISQUALIFICATION OF CONFLICTED SPECIAL COUNSEL FOR FAILURE
TO OBTAIN REQUIRED CONSENT; III) RECOGNITION OF AUTOMATIC
PRIORITY ADMINISTRATIVE EXPENSE STATUS; IV) IMPOSITION OF
CONSTRUCTIVE TRUST ON HPS ASSETS; V) ORDER DIRECTING ENTRY OF
WRITTEN ORDER UNDER FRBP 9012; AND VI) APPOINTMENT OF COUNSEL**

HPS Investment Partners, LLC ("HPS" or the "Agent"),[2] by and through its undersigned

counsel, respectfully submits this limited objection (the "Limited Objection") to the *Emergency*

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); CSS Entertainment, Inc. (f/k/a Chicken Soup for the Soul Entertainment Inc.) (0811); CSS Studios, LLC (f/k/a Chicken Soup for the Soul Studios, LLC) (9993); CSS Television Group, LLC (f/k/a Chicken Soup for the Soul Television Group, LLC); Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508).

[2] HPS submits this Limited Objection solely in its capacity as the administrative agent under the Amended and Restated Credit Agreement, dated as of August 11, 2022 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), and the Amended and Restated Collateral Agreement, dated as of August 11, 2022, and the Supplement to the Amended and Restated Collateral Agreement, dated as of July 26, 2023 (collectively, as amended, amended and restated, supplemented, or otherwise modified from time to time, the "Collateral Agreement"), among Debtor Chicken Soup for the Soul Entertainment, Inc. ("CSSE" and, together with its subsidiaries, the "Company" and, together with its Debtor affiliates, the "Debtors") and Redbox Automated Retail, as borrowers, and the

RLF1 36036352v.1

*Motion of Charles Muszynski for I) Injunctive Relief to Halt Parallel SDFL Proceedings; II) Disqualification of Conflicted Special Counsel for Failure to Obtain Required Consent; III) Recognition of Automatic Priority Administrative Expense Status; IV) Imposition of Constructive Trust on HPS Assets; V) Order Directing Entry of Written Order under FRBP 9012; and VI) Appointment Of Counsel* [Docket No. 789] (the "Motion").  HPS specifically objects to "Ground 5" of the Motion: the request to impose a constructive trust "to remedy the . . . transfer of assets" to HPS by the Bankruptcy Trustee (the "Trustee") appointed in the above-captioned bankruptcy cases (the "Constructive Trust Request").  *See* Motion at 5.  In support of the Limited Objection, HPS represents the following:

## BACKGROUND

1.     On either June 28 or June 29, 2024 (as applicable, the "Petition Date"), each of the Debtors filed voluntary petitions for relief in the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") under chapter 11 of the Bankruptcy Code.  On July 10, 2024, the Court granted the Debtors' motion to convert these bankruptcy cases from chapter 11 to chapter 7.

2.     HPS, as the administrative agent and collateral agent for the Prepetition Lenders,[3] administers an $80 million revolving credit facility and a $325 million term loan facility under the Credit Agreement.[4]  In addition, certain of the Prepetition Secured Parties (the "DIP Lenders")

---

HPS-managed lender parties thereto (collectively, the "Prepetition Lenders," and together with the Agent, the "Prepetition Secured Parties").

[3] The HPS-managed lender parties include: Aiguilles Rouges Sector B Investment Fund, L.P., American United Life Insurance Company, Brickyard Direct Holdings, L.P., Cactus Direct Holdings, L.P., Cactus Direct Lending, L.P., Core Senior Lending Fund (A-A), L.P., Core Senior Lending Fund, L.P., Core Senior Master Fund (PB), L.P., CSL Fund (PB) Holdings C, L.P., CSL Fund (PB) Holdings, B, L.P., CSL Fund (PB) Holdings, L.P., and Falcon Credit Fund, L.P.

[4] *See Declaration of Alexey Pazukha in Support of HPS Investment Partners, LLC's Omnibus Reply to Objections to Trustee's Motion for Approval of Sharing Agreement Between Chapter 7 Trustee and Agent for the Prepetition Lenders* [Docket No. 700-1] ¶ 5.

2

provided the Debtors with both debtor-in-possession funding (the "DIP Funding") and additional funds to enable the Debtors to pay certain D&O insurance premiums (together, the "Postpetition Funding").[5]

3.      On October 1, 2025, the Trustee filed a motion [Docket No. 687] (the "Sharing Agreement Motion") to approve the *Sharing Agreement Between Chapter 7 Trustee and Agent for the Prepetition Lenders Providing for (I) Determinations and Allowance of Secured Lender's Pre-Petition Claims and Liens; (II) Trustee's Sale of Certain of Debtors' Assets and Secured Lender's Collateral; (III) Specified Carve-Out From Secured Lender Liens; and Other Matters Concerning the Trustee's Contemplated Sales and Certain Settlements* [Docket No. 687-1] (the "Sharing Agreement").  Among other things, the Sharing Agreement (1) authorized the Trustee to use a portion of what otherwise would be the DIP Lenders' and/or the Prepetition Secured Parties' cash collateral to fund the estates' orderly administration, including the liquidation of the estates' assets; and (2) established a framework for the sharing of net proceeds (the "Proceeds") following a sale of certain estate property (the "IP Litigation Assets") for the benefit of the estates' stakeholders. *See* Sharing Agreement Motion ¶ 14(ii) and (iv).

4.      On October 10, 2025, Charles Muszynski ("Movant"), *pro se*, filed an objection [Docket No. 689] to the Sharing Agreement Motion (the "Muszynski Objection").  On November 11, 2025, Movant filed a motion for leave to file a sur-reply in further opposition to the Sharing Agreement Motion [Docket No. 706].  Movant attached a copy of the proposed sur-reply to that motion.  *See id.*, Ex. 1.

5.      On March 5, 2026, the Court held a hearing on the Sharing Agreement Motion. The Trustee, HPS, and Movant (among others) all attended that hearing.  Movant actively

---

[5] *See id*. ¶¶ 8-11.

participated in such hearing, including by cross examining the Trustee (Mar. 5, 2026, Hr'g Tr. ("Hr'g Tr.") at 59:21-68:14) and making a lengthy closing statement (*id.* at 105:18-110:16). Echoing the points made in his objection, Movant alleged that, with respect to the Sharing Agreement, the Trustee suffered from a "disqualifying conflict of interest"—purportedly arising from the Trustee's and Trustee's retained counsel's involvement in certain litigation against Movant in Saint Kitts and Nevis, where Movant holds citizenship—and that the Trustee was acting in violation of his fiduciary duties by advocating the Sharing Agreement. *See id.* at 107:14–108:05. Movant further alleged that distribution of the Proceeds, particularly the distributions to HPS, violated the priority scheme of title 11 of the United States Code (the "Bankruptcy Code"). *See*, *e.g.*, *id.* at 107:6-13.

6.      After hearing from Movant and other parties in interest, the Court granted the Sharing Agreement Motion, overruling all remaining objections thereto. *Id.* at 114:4-11. Specifically responding to Movant's objection, the Court found that "the [T]rustee has, in his fiduciary duty, considered all the factors in this case which warrant his entry into the [S]haring [A]greement" (*id.* at 111:20-22) and that the Sharing Agreement did not violate the priority scheme of the Bankruptcy Code by providing for distributions to HPS and the Prepetition Secured Lenders (*id.* at 110:22-05 ("Mr. Muszynski, again, misunderstands the Bankruptcy Code priority scheme . . . . [S]ecured claims have first priority to recovery from their collateral in the bankruptcy setting . . . . The secured claims of HPS have not been avoided.")).

7.      Accordingly, on March 5, 2026, the Court entered an order granting the Sharing Agreement Motion (as amended by the Order) and overruling any remaining objections [Docket No. 750] (the "Order").

8.      On May 18, 2026, Movant filed the Motion.  Through the Motion, Movant seeks,

4

among other things, the imposition of the constructive trust "to remedy the Trustee's reckless transfer of assets to a financially questionable HPS." Motion at 5. The Constructive Trust Request is scant (as is the remainder of the Motion) and wrongly alleges that the elements for the imposition of a constructive trust are met because "the Trustee breached his duty by transferring assets without due diligence" and "this will result in unjust enrichment if HPS fails." *Id.*

## ARGUMENT

**A. The Constructive Trust Request Constitutes an Impermissible Collateral Attack on the Order and is Barred by the Doctrine of Issue Preclusion.**

9.      In the Third Circuit, it is well established that the doctrine of issue preclusion prohibits parties from re-litigating a claim or cause of action that was actually litigated and then decided by a valid and final judgment. *See*, *e.g.*, *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006). Under federal law, the elements of issue preclusion are: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Id.* (internal quotation marks and citations omitted). When evaluating the first element—identity of issues—courts review the substance of the issues to determine whether they share identity; the identity of the issues need not be absolute or perfect. *See*, *e.g.*, *Raytech Corp. v. White*, 54 F.3d 187, 193 (3d Cir. 1995) (finding that the identity of issues requirement is satisfied where the issues in the current case are "in substance the same" as those previously resolved (quoting *Montana v. United States*, 440 U.S. 147, 155 (1979)); *Witkowski v. Welch*, 173 F.3d 192, 203 (3d Cir. 1999) (noting that, for issue preclusion to apply, the causes of action do not need to share "a precise identity . . . . Only the issues need be the same").

RLF1 36036352v.1

10.     A corollary to the issue preclusion doctrine is the prohibition on collateral attacks, that is, "attempt[s] to impeach the judgment by matters outside the record to avoid, defeat, or evade it or deny its force and effect, in some incidental proceeding not provided by law for the purpose of attacking it." *In re RTI Holding Co., LLC*, No. 20-12456, 2021 Bankr. LEXIS 2952, at *9 (Bankr. D. Del. Oct. 27, 2021) (citation modified) (quoting *Agape Motorcoach Retreat, LLC v. Brintle*, 523 F. App'x 948, 955 (4th Cir. 2013)).  In general, collateral attacks are not permitted (*see id.*), and courts apply issue preclusion to bar such attacks.  *See Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 416 (2020) (noting that, in a case involving a collateral attack on a prior judgment, "courts simply apply . . . issue preclusion to prohibit a claim or defense that would attack a previously decided claim"); *Hartford Ins. Co. v. Dana Transp. Inc.*, No. 16-cv-9091-KM-JBC, 2018 U.S. Dist. LEXIS 88659, at *6 (D.N.J. May 21, 2018) (finding that the collateral attack at issue was barred by issue preclusion).

11.     Here, the Constructive Trust Request plainly is a collateral attack on the Order.  In support of the request, Movant raises the exact same concerns he previously raised in the Muszynski Objection and at the hearing on the Sharing Agreement—that "the Trustee breached his duty by transferring assets [to HPS] without due diligence" and that such purported transfer of assets to HPS was "reckless" and somehow improper.  Motion at 5.  The Court already rejected these very contentions after notice and a full hearing.

12.     Through the Order, this Court approved the Sharing Agreement, finding that the Trustee had exercised his fiduciary duty and considered all relevant factors warranting entry into the Sharing Agreement.  The Order authorized the Trustee to allocate a portion of the proceeds from the IP Litigation Assets to HPS on account of HPS's secured claims.  Movant now asks the Court effectively to repudiate its own Order by finding that the allocation of proceeds that it

6

RLF1 36036352v.1

authorized is somehow wrongful; to state the obvious, it cannot be wrongful for a trustee to make distributions that a court order specifically authorized.

13.     Accordingly, issue preclusion bars the Constructive Trust Request.    All the elements plainly are met:

- ***The Issues Share Identity***.  The Constructive Trust Request raises the issue of whether the Trustee's "transfer of assets" to HPS was reckless, a breach of the Trustee's fiduciary duties, and/or otherwise wrongful.  But as evidenced by the Order, the Court has already addressed and determined that the Trustee acted in accordance with his fiduciary duties when he entered into the Sharing Agreement and that HPS and the Prepetition Secured Lenders were entitled to the recoveries provided therein.  Although Movant now purports to seek a new remedy—the imposition of a constructive trust—in substance, the issues at bar remain the same.  *See In re REFCO, Inc.*, No. 07 CIV. 4784 (DLC), 2008 WL 140956, at *8 (S.D.N.Y. Jan. 14, 2008) (rejecting appellant's constructive trust claim as an "untimely collateral attack" on the bankruptcy court's grant of motion for judgment on the pleadings).

- ***The Issue Was Litigated***. As evidenced by the record, the issue that Movant raises again through the Motion has already been briefed, litigated, and decided after a full evidentiary hearing.

- ***The Previous Determination Was Necessary***. Overruling Movant's prior objections to the approval of the Sharing Agreement, which implicated core issues, was plainly necessary to the Order.

- ***The Precluded Party Was Fully Represented***. It is beyond dispute that Movant had a full and fair opportunity to litigate the issue.  As reflected by the record, Movant filed both an objection [Docket No. 689] and a proposed sur-reply [Docket No. 706] concerning his objections to the Sharing Agreement and allocations provided therein.  Movant appeared at the March 5, 2026 hearing on the Sharing Agreement's approval, and the Court permitted Movant to both cross examine the Trustee and provide a lengthy closing statement.  *See* Mar. 5, 2026, Hr'g Tr. at 64:20–68:03; 105:18–110:16.

14.     Accordingly, the Court should apply the doctrine of issue preclusion and deny the Constructive Trust Request.

## B. Movant Fails to Justify the Constructive Trust Request, Including By Citing to Nonexistent Caselaw.

15.     Even if the Constructive Trust Request was not barred by collateral estoppel (it is), Movant wholly fails to justify such request.  The Motion contains just two sentences in support of

7

the Constructive Trust Request. And although Movant falsely asserts that the Trustee's "transfer of assets" to HPS somehow violates the Trustee's fiduciary duties and will result in HPS's unjust enrichment, Movant fails to support such assertions with any evidence or analysis. Nor could he; in light of the Court's close consideration and authorization of allocation of proceeds via the Order, such assertions are demonstrably false.

16.     More concerning still, the purported caselaw Movant cites in support of these objectively false assertions do not appear to exist. *See* Motion at 5. The reporter citation of each purported "case" returns an opinion with a different title and which is wholly unrelated to the issue of the imposition of a constructive trust.

- "*Pearson v. First Westroads Bank*, 868 F.2d 162 (8th Cir. 1989)" – in both Westlaw and Lexis, this reporter citation is for *Taylor v. Green*, a Fifth Circuit decision relating to criminal law that has no connection to the imposition of constructive trusts.

- "*In re Pileggi*, 72 B.R. 568 (Bankr. E.D. Pa. 1987)" – this reporter citation does not have an exact match in either Westlaw or Lexis. But 72 B.R. 565, which includes 72 B.R. 568, corresponds to *In re McKillips*, a decision from the Bankruptcy Court for the Northern District of Illinois concerning a bankruptcy under Chapter 12 of the Bankruptcy Code, which deals with reorganization for family farmers and family fishermen. This case has no relationship to the imposition of constructive trusts.

17.     The above not only further establishes that Movant fails to justify the Constructive Trust Request but also strongly suggests that Movant failed to satisfy his burden under Federal Rule of Bankruptcy Procedure 9011 to ensure that his "legal contentions are warranted by existing law." Fed. R. Bankr. P. 9011(b)(2). The fact that Movant is a *pro se* litigant does not excuse such noncompliance. *See Hill v. Sloppy Vinyl, LLC*, No. 2:25-cv-15238-BRM-AME, 2026 Lexis 197404, at *11 n.2 (D.N.J. Mar. 5, 2026) ("[W]hile courts afford *pro se* litigants considerable leeway, that leeway does not relieve *pro se* litigants of their obligation under Rule 11 to confirm the validity of any cited legal authority.") (internal quotation marks and citations omitted); *Murawski v. Pataki*, 514 F. Supp. 2d 577, 590 (S.D.N.Y. 2007) ("[T]he fact that a litigant appears

8

*pro se* 'does not shield him from Rule 11 sanctions because one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.'") (citation omitted).

18.    In any event, even a properly pled claim for the imposition of a constructive trust here would fail on the merits: among other reasons, HPS is plainly not being unjustly enriched. The distributions to HPS under the Sharing Agreement are, pursuant to the Order, on account of an allowed prepetition secured claim of at least $500 million.  *See* Hr'g Tr. at 33:14-21; 67:9-13; 111:6-12.

## CONCLUSION

19.    For these reasons, HPS respectfully requests that the Court deny the Motion and grant such other and further relief as the Court may deem just and proper.

[*Remainder of page intentionally left blank*]

RLF1 36036352v.1

Dated: June 3, 2026
Wilmington, Delaware

/s/ Russell C. Silberglied
Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Alexander R. Steiger (No. 7139)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Email:  collins@rlf.com
silberglied@rlf.com
steiger@rlf.com

-and-

Dennis F. Dunne (admitted *pro hac vice*)
Matthew Brod (admitted *pro hac vice*)
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone:  (212) 530-5000
Email:  ddunne@milbank.com
mbrod@milbank.com

Andrew M. Leblanc (admitted *pro hac vice*)
**MILBANK LLP**
1101 New York Ave. NW
Washington, D.C. 20005
Telephone:  (202) 835-7500
Email:  aleblanc@milbank.com

*Counsel to HPS Investment Partners, LLC*

10

RLF1 36036352v.1