**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>CSS ENTERTAINMENT INC. (f/k/a CHICKEN SOUP FOR THE SOUL ENTERTAINMENT INC.), *et al* [1]<br><br>      Debtors. | Chapter 7<br><br>Case No. 24-11442 (MFW)<br>(Jointly Administered)<br><br>Re D.I. 789, 790, 791,793, 794, 795, 796, 797, 798, 799, 800, 806 |

**TRUSTEE'S OMNIBUS OBJECTION TO MOTIONS FILED BY CHARLES
MUSZYNSKI FROM MAY 15, 2026 THROUGH MAY 28, 2026**

George L. Miller, in his capacity as the chapter 7 trustee (the "Trustee") of the estates (the "Estates") of the above-captioned debtors (the "Debtors"), hereby objects to the following motions filed by Charles Muszynski: the *Emergency Motion of Charles Muszynski for I) Injunctive Relief to Halt Parallel SDFL Proceedings; II) Disqualification of Conflicted Special Counsel for Failure to Obtain Required Consent; III) Recognition of Automatic Priority Administrative Expense Status; IV) Imposition of Constructive Trust on HPS Assets; V) Order Directing Entry of Written Order under FRBP 9021; and VI) Appointment of Counsel* [D.I. 789 and 790] (the "Lead Motion"); the *Limited Notice of Special Appearance, Reservation of Rights, and Motion to Strike Unreduced Oral Ruling* [D.I. 793] (the "Motion to Strike"); the *Motion for Judicial Notice* [D.I. 795]; the *Revised Enhanced Supplemental Motion in Support of Pending Emergency Motion [D.I. 789] for Order to Show Cause Why Special Counsel Should not be Sanctioned, and for Protective Order*

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); CSS Entertainment, Inc. (f/k/a Chicken Soup for the Soul Entertainment Inc.) (0811); CSS Studios, LLC (f/k/a Chicken Soup for the Soul Studios, LLC) (9993); CSS Television Group, LLC (f/k/a Chicken Soup for the Soul Television Group, LLC); Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508).

115788541\2

(the "Supplemental Motion") [D.I. 806]; and, to the extent that they may be interpreted as motions pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the purported "Interrogatories" that Mr. Muszynski filed on the docket at D.I. 796 and 800 (together, the "Purported Interrogatories") and the purported "Subpoenas" that Mr. Muszynski filed at D.I. 797, 798, and 799 (the "Purported Subpoenas", and all together with the foregoing filings, the "Motions"). In support of this Omnibus Objection, the Trustee respectfully states:

**Background**

A.    **The Florida Action and Screen Media's Judgment Against Mr. Muszynski**

1.    On March 3, 2021, a number of plaintiffs, including now-Debtor Screen Media Ventures, LLC ("Screen Media Ventures"), commenced a civil action in the United States District Court for the Southern District of Florida (the "Florida District Court") at Case No. 21-cv-20862 against defendants including Mr. Muszynski[2] (the "Florida Action"). On March 28, 2022, the Florida District Court entered a judgment in the Florida Action in favor of the plaintiffs, and against Mr. Muszynski, in the amount of $15,172,403 (the "Florida Judgment"). The portion of the Florida Judgment allocable to Screen Media Ventures is approximately $225,000. A copy of the Florida Judgment is attached as Exhibit "A."

2.    Despite the plaintiffs' ongoing collection attempts, Mr. Muszynski has thus far paid not a penny of the Florida Judgment. His efforts to evade this and other debts[3] have included the

---

[2] The operative complaint names "Charles Muszynski a/k/a Frederick Douglas, Individually and as Co-Trustee of 120@53 Trust." See First Amended Complaint and Demand for Jury Trial [D.I. 24]. References herein to Mr. Muszynski shall mean Charles Muszynski individually and/or in any such other capacity as may be applicable, and shall refer to him whether going by the name Charles Muszynski or the name Frederick Douglas.

[3] Mr. Musynzki's ex-wife holds a judgment against him in the amount of $1,941,225, which appears to be unpaid. See *Memorandum Decision and Order Denying Motion for Sanctions*, D.I. 39, In re Marcia E. Waddell, Case No. 24-11769 (Bankr. S.D.N.Y) ("Charles Muszynski (the "Movant") is the Debtor's ex-husband. The Debtor [i.e., Ms. Waddell] holds a judgment against Movant in the sum of $1.941,255 (the "Judgment") for past due alimony and attorneys' fees."). At one point in time the Florida state court overseeing Mr. Muszynski's divorce proceedings issued an order finding him in contempt of court and, among other things, sentencing him to 90 days in the Orange County (Florida) jail. See *Order Granting Former Wife's Verified Amended Motion for Contempt and Enforcement of*

2

drastic step of fleeing the United States to take up permanent residency in St. Kits and Nevis, and renouncing his United States Citizenship.

3.    On August 26, 2022, the Florida District Court entered an order requiring Mr. Muszynski to complete certain forms providing certain information to the plaintiffs, including Screen Media Ventures, in aid of execution.  See *Order Granting Motion for Court Order Requiring Judgment Debtors to Complete Form 1.977* [D.I. 265].  A copy of this Order is attached as Exhibit "D."  Mr. Muszynski failed to comply with this Order.

4.    On December 12, 2022, following the plaintiffs' filing of a motion to show cause why Mr. Muszynski should not be held in contempt and the Florida District Court's referral of the matter to a U.S. Magistrate Judge, the Magistrate Judge issued a *Report and Recommendation and Certification of Facts Constituting Contempt Re D.E. 295* [D.I. 322] in which the Magistrate Judge recommended, among other things, that:

> Judgment Debtor Muszynski be found in contempt of Court based upon his failure to complete Form 1.977 in accordance with Florida Rule of Civil Procedure 1.560, as required, failure to respond to the Motion for Contempt, and failure to appear at the Contemtp [sic] Hearing; and
>
> a fine of $500 per day be imposed upon each of the Judgment Debtors, respectively, until they purge themselves of the contempt.

See *Report and Recommendation and Certification of Facts Constituting Contempt Re D.E. 295* at p. 2.  A copy of the Magistrate Judge's Report is attached as Exhibit "E."

---

*Alimony and Attorneys' Fees*, a copy of which is attached as Exhibit "B," at ¶15.  See also, *Second Amended Writ of Bodily Attachment*, a copy of which is attached hereto as Exhibit "C," at pp. 1-2 ("This Court finds Former Husband to be in contempt of court for willfully failing to make alimony payments as previously ordered by this Court.  Former husband is found to be able to presently pay the amount of $152,731.68 the source of funds being monies held in various Charles Schwab accounts entered into evidence, investment funds held in St. Kitts and/or assets held by the 12@53 Trust as described more fully in the Final Judgment.  IT IS THEREFORE ADJUDGED as follows:  Former Husband, CHARLES A. MUSZYNSKI, is in willful contempt of this Court.  TO ALL AND SINGULAR SHERIFFS AND OTHER AUTHORIZED LAW ENFORCEMENT PERSONNEL OF THE STATE OF FLORIDA YOU ARE ORDERED to take custody of Former Husband CHARLES A. MUSZYNSKI, (see attached description sheet) and confine him to the county jail.").

115788541\2

5.      On January 24, 2023, the Florida District Court entered an order adopting the Magistrate Judge's recommendations, holding Mr. Muszynski in civil contempt, and imposing a fine of $500 per day upon him until he purges himself of the contempt.  See *Order Adopting Magistrate Judge's Report and Recommendations* [D.I. 368].  A copy of this Order is attached as Exhibit "F"  To this day, Mr. Muszynski has failed to purge himself of the contempt, and has been accruing a daily $500 fine ever since.

6.      The next day, on January 25, 2023, the Florida District Court entered an *Order Granting Expedited Motion for Worldwide Asset Restraint* [D.I. 370], in which the Florida District Court imposed a temporary restraining order freezing Mr. Muszynski's assets, concluding, among other things, "Because Judgment Debtors are concealing assets and moving assets so as to be unreachable by Plaintiffs, Plaintiffs are likely to suffer immediate and irreparable injury if a temporary restraining order is not granted."  See *Order Granting Expedited Motion for Worldwide Asset Restraint* at p. 5.  A copy of this Order is attached as Exhibit "G"

7.      On February 9, 2023, the Florida District Court entered an *Order Granting Preliminary Injunction Restraining Assets* [D.I. 399], in which the Florida District Court, among other things, imposed an injunction extending the asset freeze "until further order of this Court to be entered after each Judgment Debtor submits completed Forms 1.977 to  Plaintiffs' counsel and this Court concludes that those forms are complete and accurate."  See *Order Granting Preliminary Injunction Restraining Assets* at p. 10.  A copy of this Order is attached as Exhibit "H."

8.      In both the *Order Granting Expedited Motion for Worldwide Asset Restraint* [D.I. 370] and the *Order Granting Preliminary Injunction Restraining Assets* [D.I. 399], the Florida Court found:

Less than 10 days after this action was filed and widely discussed in the media, Muszynski made five large withdrawals from the LiquidVPN PayPal account and subsequently, Muszynski made two $4,452.00 withdrawals two days after his motion to quash was denied. ECF No. [360-2] at ¶¶ 4-5. On March 28, 2022, the Court granted Plaintiffs' Motion for Default Judgment and awarded a money judgment of more than $15,000,000.00. ECF Nos. [212]-[213].

Communications from Muszynski to Robert Pola[4] indicate that Muszynski is using legal structures such as trusts to conceal his assets from Plaintiffs. *See* ECF No. [311-3]. One email states in relevant part "…MAJOR caution is the ex-wife's continued use of parasitic collection attorneys - the latest is Kerry Culpepper, the copyright troll, that cost me $300K is [sic] losses." Id. at 1.

Another, earlier email reads in part

> Besides tax elimination and privacy maximization objectives, a higher barrier to parasites (attorneys' claims) is desired. Wouldn't a multi-jurisdictional structure be more difficult for such claims by obscuring ownership (post founding), slow discovery, and income cases establish cash barriers to litigation (such as $100K bond in Nevis) vs. all UK based?

ECF No. [360-8] at 2.

In October of 2021, Muszynski ceased paying Broward Harbor, Inc. for dockage and other services for his M/Y Smiling Dog, a 1991 model 105-foot Chediek motor yacht registered in the Cayman Islands as Official Number 748072, its engines, tackle, furniture, furnishings, and appurtenances, including a 17-foot Boston Whaler tender ("yacht") and abandoned it at Broward Harbor. ECF No. [360-2] at ¶¶ 12-14. Muszynski shut down 1701's LiquidVPN and wrote off his $300,000 investment rather than continuing a venture that likely could have generated funds to pay off at least a part of the money judgment. Id. at ¶ 32.

Additionally, Plaintiffs have provided evidence that Muszynski shifted profitable ventures owned by 1701 such as WasteWiser to his other controlled entity Buhosabio LLC and placed the bank accounts in the name of Terry Lacy to attempt to conceal his ownership. See ECF No. [311-3] ( "AUH2O holds…1701 that has been abandoned - it used to own Liquid VPN but due to the DMCA action brought

---

[4] Mr. Robert Pola is a chartered accountant based in King's Lynn, England, who helped Mr. Muszynski to hide his assets. Examples of correspondence between them on this subject are attached as Exhibit "I." This correspondence includes discussion of some of the trusts and other offshore vehicles in which Mr. Muszynski has placed his assets to evade his creditors (e.g., Mr. Pola to Mr. Muszynski: "What is the function of each entity underneath each trust?" Mr. Muszynski responding: "Robert: Under Dusko Popov: Antilles is an LLC that hold an LLC that owns a boat I'm trying to sell (105' MY); EVKLeddihn owns a Nevis LLC that owns a house; The account at UBP is held directly by Dusko Popov Trust[;] Under F. A. Hayek: AUH2O holds the PR LLC called 1701 that has been abandoned – it used to own Liquid VPN but due to the DMCA action brought by the copyright troll - total loss [;] Solzhenitzyn holds the PR LLC called Buhosabio that is Wastewiser.com - it's just starting the sales cycle and has produced its first monitor units for trial - Buhosabio's account is in Terry Lacy's name and SSN. Not averse to simplifying these but MAJOR caution is the ex- wife's continued use of parasitic collection attorneys . . . .").

115788541\2

by the copyright troll - total loss...Buhosabio's account is in Terry Lacy's name and SSN.").

. . . .

On Jan. 19, 2022, the Registrar of the High Court of Justice of the Eastern Caribbean Supreme Court St. Christopher and Nevis Circuit Court granted Plaintiffs' application and ordered a worldwide asset freeze ("TRO") of AUH2O and Muszynski's assets that was dated Jan. 18, 2022. 1 ECF No. [360-4]. On Jan. 20, 2022, Muszynski was personally served the TRO in Nevis. ECF No. [360-2] at ¶26. On Jan. 20, 2022, Plaintiffs' counsel served a copy of the TRO on the counsels for Garnishees and Muszynski via email. Id. at ¶27.

See D.I. 399 at pp. 2-4.  See also D.I. 370 at pp. 2-3 (reciting same facts).

9.     To this day, Mr. Muszynski has still not complied with the Florida District Court's Orders, and the injunction/asset freeze, as well as the ever-accruing daily $500 fine, remain in place.

**B.     The Nevis Action**

10.     As mentioned, Mr. Muszynski fled the United States and renounced his citizenship, ultimately to take up permanent residency in St. Kits and Nevis.  On December 30, 2022, the plaintiffs in the Florida Action, including Screen Media Ventures, commenced a civil action in St. Kitts & Nevis, titled Millennium Funding, Inc. et al. v. AUH2O LLC, and Charles Muszynski also known as Frederick Douglas, which is pending at case No. NEVHCV2022/0183 in the Eastern Caribbean Supreme Court, High Court of Justice division, St. Christopher and Nevis, Nevis Circuit (the "Nevis Action" in the "Nevis Court").  On that date, the plaintiffs, including Screen Media Ventures, filed in the Nevis Action an Ex Parte Application seeking a world wide freezing order pursuant to the Nevis Court Civil Proceeding Rules to freeze Mr. Muszynski's assets.  A copy of the Ex Parte Application is attached as Exhibit "J."

115788541\2

11.     On January 19, 2023, the Nevis Court entered a worldwide freeze order, imposing a worldwide asset freeze on Mr. Muszynski.  A copy of this order (the "Worldwide Freeze Order") is attached as Exhibit "K."

12.     On January 20, 2023, the plaintiffs, including Screen Media Ventures, filed a *Statement of Claim*, *Claim Form*, and accompanying Exhibits in the Nevis Action seeking to enforce the Florida Judgment in the Nevis Court.  These filings are attached as Exhibit "L."

13.     Mr. Muszynski has attempted unsuccessfully to overturn the Worldwide Freeze Order.  In approximately February 2023, Mr. Muszynski, through counsel, filed an application to set aside the Worldwide Freeze Order.  On April 3, 2023, the Nevis Court issued a Judgment denying the application to set aside, and awarding costs in favor of the plaintiffs and against Mr. Muszynski.  A copy of the Judgment is attached as Exhibit "M."  The Judgment stated, "The freezing order, as modified is thus expressed to continue until trial or other further order of this Court."  See Judgment at ¶39.  As a factor in its decision, the Nevis Court expressly noted, "There is no dispute that Mr. Muszynski's economy with the truth permits this court to arrive at the foregoing findings of fact that are adverse to him and [co-defendant and seeming alter ego] AUH20."  Id. at ¶38.

14.     In approximately December 2024, Mr. Muszynski, through counsel, attempted again to overturn the Worldwide Freeze Order, filing an *Application to Set Aside Worldwide Freezing Order & Dismiss Claim*, in which he also sought to dismiss the Nevis Action altogether.  In an Order dated May 15, 2025 (the "May 15th Order"), the Nevis Court denied Mr. Muszynski's requests to strike out the plaintiffs' Claim and to set aside the Worldwide Freezing Order, and awarded costs in favor of the plaintiffs and against Mr. Muszynski.  A copy of the May 15th Order is attached hereto as Exhibit "N."  In accordance with the Nevis Court's Civil Procedure Rule 24,

115788541\2

the May 25th Order required the plaintiff's counsel, Culpepper IP, LLLC  (the "Culpepper Firm"), to post a bond of $30,000 into the Nevis Court's registry due to the fact that the plaintiffs in the Nevis Action, including Screen Media Ventures, are not residents of that jurisdiction.  The Nevis Action includes a number of different plaintiffs, and the bond was attributable to all of them. Screen Media Ventures' share of the bond is $453.78.  The Culpepper Firm advanced this sum of $453.78 to the Nevis Court.  To be clear, these funds do not represent costs that have been assessed in the Nevis Action, and Mr. Muszynski has no entitlement to them.  They exist in the Nevis Court's registry solely to fulfill for the procedural requirement of Nevis Civil Procedure Rule 24. Indeed, the Nevis Court noted that "any order for costs against the Claimants [i.e., the plaintiffs] would be swallowed up by the extant orders for costs to be assessed against the Defendants and the extant applications . . . ." See  May 25th Order at p. 2.

15.    In the May 25th Order, the Nevis Court also addressed a recent failure of Mr. Muszynski's to comply with an April 25, 2025 order of the Nevis Court to provide information about his assets.  The Nevis Court wrote "that it is minded to proceed with proceedings for civil contempt" against Mr. Muszynski.  Id. at p. 3.

16.    However, before the Nevis Court had a chance to proceed with proceedings for civil contempt, Mr. Muszynski appealed the May 15th Order to the Eastern Caribbean Supreme Court. On April 22, 2026, the Eastern Caribbean Supreme Court denied Mr. Muszynski's appeal, with the exception of the issue of the amount of the security that the plaintiffs would need to post pursuant to Nevis Civil Procedure Rule 24.  Among other things, the Eastern Caribbean Supreme Court's Order required Mr. Muszynski to pay the plaintiffs' costs.  A copy of the Eastern Caribbean Supreme Court's Order is attached as Exhibit "O."

8

17.     All the while, the Worldwide Freeze Order has remained in place, and Mr. Muszynski has yet to satisfy any portion of the Florida Judgment or disclose any information about his assets.

**C.      Mr. Muszynski's Own Bankruptcy Case**

18.     On May 11, 2023, Mr. Muszynski filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Texas.[5] On August 23, 2023 the United States Bankruptcy Court for the Eastern District of Texas transferred the bankruptcy case to the District of Puerto Rico, where it was then referred to the United States Bankruptcy Court for the District of Puerto Rico.

19.     On May 21, 2024, the United States Bankruptcy Court for the District of Puerto Rico entered an *Opinion and Order* dismissing Mr. Muszynski's bankruptcy case, on grounds including his having filed "incomplete and inaccurate schedules and statement of financial affairs," his having "failed to fully comply with our court order at the hearing to provide all the required information," and his "lack of eligibility to be a bankruptcy debtor."  See *Opinion and Order* at p. 9.  A copy of the court's *Opinion and Order* is attached as Exhibit "P."

20.     The grounds for dismissal included Mr. Muszynski's refusal to provide information about the trusts of which he is a beneficiary.  The court wrote in the Opinion and Order:

> On Schedule A/B filed with the petition, Debtor informed that he was "a beneficiary of a trust" but failed to disclose any information about the trust. Consequently, the court ordered Debtor to disclose: the name of the trust, the trust tax ID number (EIN), the trust address, the date in which the trust was created, who created the trust, how the trust is funded, details of the trust's assets, the name of the trustee or trustees and their addresses.
>
> On March 20, 2024, Debtor filed an amended Schedule A/B which disclosed, for the first time, that he is a beneficiary, of not one but of two trusts, as follows 1) F.A. Hayek Irrevocable Settlement Trust, created by Rubilee Muszynski (Debtor's mother) in year 2009; and 2) Dusko Popov Irrevocable Trust, created by Debtor in

---

[5] The case was docketed at Case No. 23-90112.

115788541\2

year 2019.  As to the information on how the trusts are funded, Debtor limited his disclosure by stating that "[e]ach trust was funded when established."  The Debtor omitted disclosure of the amount of funds transferred to each of the trusts upon their creation and their current balance.

In addition, Debtor was ordered to disclose the assets of the trust(s). Debtor failed to comply with this court order and did not provide the required information in Amended Schedule A/B.  It is notable to point out that we do not have any information regarding the funds in each of trusts nor their source of income.

Furthermore, on question 19 of the statement of financial affairs, debtors are required to disclose specific information regarding any property transferred within ten (10) years before filing for bankruptcy on any self-settled trust or similar entity in which the debtor is the beneficiary.  As revealed in Amended Schedule A/B in response to court order, the Debtor created a trust in year 2019.  However, Debtor's original statement of financial affairs nor his amended statement of financial affairs disclose any information in relation to question 19.

See Opinion and Order at pp. 7-8.

21.     Mr. Muszynski appealed this order to the Bankruptcy Appellate Panel for the First Circuit.  On March 7, 2025 the B.A.P. entered a Judgment affirming the bankruptcy court's dismissal of Mr. Muszynski's bankruptcy case.  See Judgment, March 7, 2025 entered in BAP No. PR 24-011.  Following the BAP's denial of Mr. Muszynski's motion for a rehearing, he appealed to the United States Court of Appeals for the First Circuit.  On March 4, 2026, the First Circuit entered a Judgment affirming the dismissal of Mr. Muszynski's bankruptcy case.  He never did provide any of the required information, including the information about the trusts of which he is a beneficiary.

**D.     The Debtors' Bankruptcy Cases, the Trustee's Retention of the Culpepper Firm,  and Mr. Muszynski's Attempts to Interfere Therewith**

22.     On June 28, 2024 and June 29, 2024 (as applicable, the "Petition Date"), the Debtors commenced the above-captioned cases by filing voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "Court").  On July 10, 2024, the Court entered an order converting these

115788541\2

cases to cases under chapter 7 of the Bankruptcy Code (the "Chapter 7 Cases").  The Trustee was appointed on or shortly after that date, and is now serving as the permanent chapter 7 trustee.  Screen Media Ventures' portion of the Florida Judgment, at this point, was obviously an asset of its bankruptcy estate.

23.     As mentioned, throughout the above-described saga, the Culpepper Firm, had been doggedly pursuing Mr. Muszynski on behalf of Screen Media Ventures and the other plaintiffs, including in the still-pending Nevis Action.

24.     On December 6, 2024, the Trustee filed an *Application for Approval of Retention of Culpepper IP, LLLC as Special Copyright Litigation Counsel and for Related* Relief [D.I. 508] (the "Culpepper Application").  The Trustee sought to retain the Culpepper Firm pursuant to section 327(e) of the Bankruptcy Code to pursue certain copyright infringement litigation on behalf of the Estates, and to continue Screen Media Ventures' efforts to enforce the Florida Judgment against Mr. Muszynski in the Nevis Action.

25.     On December 26, 2024, Mr. Muszynski filed an objection to the Culpepper Application [D.I. 524], seeking to disrupt the Trustee's efforts to enforce the Florida Judgment on behalf of Screen Media Ventures' estate.  On January 8, 2025, the Court held a hearing on the Culpepper Application, at which Mr. Muszynski appeared telephonically.  The transcript of the hearing [D.I. 552] is attached hereto as Exhibit "Q."

26.     At the hearing, the Trustee's counsel raised the fact that Mr. Muszynski "is not a creditor, nor is he a party in interest."  See Transcript of Hearing at p. 7, 19:20 [D.I. 552].  Mr. Muszynski responded, "And I should also say I may not be a creditor of the estate yet, but when he [Mr. Culpepper] presses the case in Nevis[6] and it loses, they lose, I will become a creditor."  Id.

---

[6] Mr. Muszynski was referring to the Nevis Action.

115788541\2

at p.8, 4:6.  The Court then stated, "Well, you're not currently a creditor, Mr. Muszynski.  You have no claim against the estate that's been confirmed by any court or by this Court," to which Mr. Muszynski responded, "Yes, ma'am."  Id. at p.8, 10:13.

27.     The Court went on to overrule Mr. Muszynski's objection, and enter an order approving the Culpepper Application [D.I. 547] (the "Culpepper Retention Order").   Mr. Muszynski then filed a notice of appeal of the Culpepper Retention Order with the United States District Court for the District of Delaware (the "District Court") [D.I. 540].  The Trustee filed a motion with the District Court to dismiss the appeal.

28.     On July 22, 2025, the District Court entered an Order dismissing the appeal [Dist. Ct. D.I. 15], together and an accompanying Memorandum explaining its decision [Dist. Ct. D.I. 14].  Copies of the Order and Memorandum are attached, together, as Exhibit "R" hereto.  In its Memorandum, the District Court pointed to the fact that Mr. Muszynski is not a creditor of the Estates, and held, accordingly, that Mr. Muszynski lacked standing to appeal the Culpepper Retention Order.  See Memorandum at pp. 4, 7-9.

29.     In responding to an assertion that Mr. Muszynski had made in his pleadings that he held "pending claims" against the Estates, the District Court stated:

> Appellant asserts his "pending claims" against the Debtors' estates, but he points to no proof of claim he has filed against the Debtors nor does he explain how retention of special counsel affects those claims.  It appears that Appellant's "pending claims" are in the nature of possible claims against the Estates that he speculates may arise out of a possible dismissal of the *already filed* Nevis action to recognize and enforce the Judgment.  (*See* D.I. 9 at p. 16 of 21[7] (asserting "the Nevis case will be thrown out," and as a result, "costs, fees, and penalties will be assessed to the Estates, the Trustee, and Culpepper.").

> Id. at p. 7.

---

[7] D.I. 9 is Mr. Muszynski's response to the Trustee's motion to dismiss the appeal.

115788541\2

30.    On July 31, 2025 – 316 days after the bar date, and seemingly only in response to the District Court's Memorandum – Mr. Muszynski filed a proof of claim on the claims register of Debtor Chicken Soup for the Soul Entertainment, Inc. at claim No. 457 (the "Proof of Claim"). The Proof of Claim asserts a priority claim pursuant to section 507(a)(3) of the Bankruptcy Code in the amount of $6,130,000.  It attaches no support or explanation of how this amount was derived, and no explanation for why the claim should be entitled to priority under section 507(a)(3), which is applicable only to "gap claims" arising under section 502(f) in involuntary cases.  Among other defects, it is unsigned, and it does not identify the Debtor against which the claim is asserted.[8]

31.    On that same day, Mr. Muszynski filed a *Motion to Request Entry of Order Allowing Late Filed Proof of Claim and to Inform* [D.I. 665], in which he sought relief including entry of an order deeming his Proof of Claim timely filed.  On September 10, 2025, the Court held a hearing on this Motion, at which it denied the motion.  The Court again informed Mr. Muszynski that he is not a creditor in these cases, stating, among other things:

> I think I said the same thing to you, Mr. Muszynski, last time that currently the current status of the facts are that the estate has a judgment against you from, I believe, the Southern District of Florida but a Florida judgment against you that the action in Nevis is to enforce that judgment. It in no way represents an action by you against the trustee and certainly it is not an action on which you have received a final judgment that would support any claim against this estate.
>
> So, premature comes to mind again.  I won't allow any claim in your favor at this time.

See Transcript of Hearing at p. 17, 12:20.  A copy of this transcript is attached as Exhibit "S."

32.    To say that Mr. Muszynski has ignored this Court's, and the District Court's, rulings, and explanations to him of the law, is an understatement.  Between May 15, 2026 and May 28th, he filed 10 separate pleadings and other documents in these Chapter 7 Cases, in many places

---

[8] In the box at the top of the form for the name of the applicable debtor, Mr. Muszynski inserted only his own name. Regardless, he does not possess any claims against any of the Debtors.

115788541\2

seeming to flout these rulings and explanations.  See, e.g., Supplemental Motion at p. 5 ("Movant is a **creditor of the estate** with an economic interest in preventing waste of estate assets.") (bolded text in original).  To be clear, nothing has changed since the September 10, 2025 hearing.  Mr. Muszynski was not a creditor of any of the Debtors' estates then, and he still isn't a creditor of any of the Debtors' estates.

33.     Mr. Muszynski makes numerous requests for relief in the Motions, many of which are simply collateral attacks on the Culpepper Retention Order, some of which seem to be based on a fundamental misunderstanding of the "automatic stay" of section 362(a) of the Bankruptcy Code and/or other principles of law, some of which are based on factual assertions that are either patently false or, at best, without evidentiary support, and some of which are little more than *ad hominem* attacks on Kerry Culpepper, the principal of the Culpepper Firm.  The Trustee will endeavor to address each in turn below.

### Analysis

#### A.     Collateral Attacks on the Culpepper Retention Order

34.     As described above, Mr. Muszynski objected to the Culpepper Application.  The Court overruled his objection and entered the Culpepper Retention Order.  Mr. Muszynski appealed from the Culpepper Retention Order and the District Court dismissed his appeal.

35.     By his Motions, Mr. Muszynski now makes a number of collateral attacks on the Culpepper Retention Order, including the following requests:

(i)   In the Lead Motion:

> i.   He requests that the Court enter an "emergency order" "disqualifying Culpepper as Special Counsel for failure to obtain required written consent."  See Lead Motion at p. 6.

> ii.  He requests that this same "emergency order" [enjoin[] the Trustee and Culpepper from proceeding in SDFL Case No. 21-cv-20862" [i.e., the Florida Action].  Id.

115788541\2

(ii)   In the Motion to Strike, referring to Mr. Culpepper, he refers to "[M]oving for disqualification of conflicted counsel under 11 U.S.C. §327(e) and FRBP 2014." See Motion to Strike at pp. 1-2.

(iii)  In the Supplemental Motion, he requests:

   i.   "Disqualification of Conflicted Special Counsel (§327; Rule 2014)," referring to Mr. Culpepper. See Supplemental Motion at p. 13.

   ii.  "Injunctive Relief to Halt Parallel Proceedings (§ 105), referring to unspecified legal proceedings, presumably the Nevis Action and/or the Florida Action. Id.

   iii. That the Court "Compel accounting and disgorgement with specific findings for res judicata," [this item apparently refers to Mr. Muszynski's false assertion that the Culpepper form has paid $30,000 in estate funds into the Nevis Court]. Id. at p. 14.

   iv.  Entry of an "order to show cause why special counsel should not be sanctioned." Id.

   v.   A "protective order" providing that "Special Counsel and the Trustee must seek pre-approval from this Court before filing any further motions or proceedings against" Mr. Muszynski.

   vi.  "Damages for breach of fiduciary duty" "against Special Counsel personally for: (1) the $30,000 unauthorized expenditure (disgorgement to the estate); (2) costs of this motion including reasonable investigation expenses; (3) sanctions under 28 U.S.C. § 1927 for Culpepper's vexatious multiplication of proceedings; and (4) attorneys' fees as the prevailing party if counsel is appointed under § 330(a)(4)(B).

   vii. An "order directing disclosure of 38 claimant ownership structures."

(iv)   In the Purported Interrogatories he requests information seemingly related to the Culpepper firm and/or its efforts to enforce the Florida Judgment against Mr. Muszynski.

36.   In the context of many of these items, Mr. Muszynski does not provide a legal basis for the Court's reopening the Culpepper Retention Order. In his Supplemental Motion Mr. Muszynski refers to Rule 60(b)(3) of the Federal Rule of Civil Procedure (the "Federal Rules"). For the sake of argument, the Trustee will assume that Mr. Muszynski intended Federal Rule 60(b)(3) as the basis for all of his collateral attacks on the Culpepper Retention Order.

37.     Federal Rule 60(b)(3), made applicable by Bankruptcy Rule 9024, provides:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party.

38.     Mr. Muszynski is not entitled to attack the Culpepper Retention Order under Rule 60(b)(3) for several reasons.  First, pursuant to Federal Rule 60(c)(1), applicable by Bankruptcy Rule 9024, a motion under Rule 60(b)(3) must be made, if at all, no more than one year after the entry of the subject judgment or order.  The Court entered the Culpepper Retention Order on January 14, 2025.  Mr. Muszynski filed the first of his Motions on May 15, 2026, which is longer than one year after January 14, 2025.  Accordingly, Federal Rule 60(c)(1) forbids Mr. Muszynski from seeking to disturb the Culpepper Retention Order.  Moreover, as both this Court and the District Court have pointed out, Mr. Muszynski is not a creditor of any of the Debtors' estates.  See, e.g., District Court's Memorandum at p. 9 ("Appellant has failed to show that he is 'directly and adversely affected pecuniarily' by the Retention Order and therefore lacks appellate standing to pursue the appeal.").  He is not a party in interest, and does not have standing to seek to overturn the Culpepper Retention Order under Rule 60(b).  See, e.g., Bridgeport Music, Inc. v. Smith, 714 F.3d 932, 940 (6th Cir. 2013)  ("The general rule is that one must either be a party or a party's legal representative in order to have standing to bring any Rule 60(b) motion.") (citing Kem Mfg. Corp. v. Wilder, 817 F.2d 1517, 1519–20 (11th Cir. 1987)); In re Silverman, 603 B.R. 498, 504 (Bankr. D.N.M. 2019)  ("Thus, the general rule is that only a party to a final judgment, or someone in privity to such a party, may seek relief from that judgment under 60(b).").

39.     Even putting the foregoing aside and applying the substantive standards under the caselaw applying Federal Rule 60(b)(3), Mr. Muszynski is clearly not entitled to attack the Culpepper Retention Order.  "The Third Circuit has stated that 'when a court is considering its

16

own judgment, 'extraordinary circumstances' must be present to justify the use of Rule 60(b) to vacate the judgment.'" In re Energy Future Holdings Corp., 575 B.R. 616, 630 (Bankr. D. Del. 2017) (quoting Budget Blinds, Inc. v. White, 536 F.3d 244, 251 (3d Cir. 2008)). "'The framers of Rule 60(b) set a higher value on the social interest in the finality of litigation.' A movant 'bears a heavy burden' in showing that relief is appropriate under Rule 60." *Id.* (quoting Bohus v. Beloff, 950 F.2d 919, 930 (3d Cir. 1991); In re Syntax–Brillian Corp., 551 B.R. 156, 160 (Bankr. D. Del. 2016)).

40.     Mr. Muszynski has not alleged any plausible facts demonstrating "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party," much less any such facts that the Court has not already rejected. For instance, Mr. Muszynski devoted much of his 38 page December 26, 2024 objection to the Culpepper Application [D.I. 524] to his conspiracy theories regarding Process Management Limited ("PML"), a company that provides various anti-piracy services, including piracy detection and the sending of DMCA notices to ISPs when piracy is detected. To be clear, to the best of the Trustee's knowledge, information, and belief, Screen Media Ventures is not, and has not been, a party to any contract with PML. The Trustee is informed that the Culpepper Firm has not entered into a contract of any sort with PML with regard to Screen Media Ventures, and does not have any sort of fee-splitting relationship with PML. See attached *Declaration of Kerry Culpepper in Support of Trustee's Omnibus Objection to Motions Filed By Charles Muszynski From May 15, 2026 Through May 28, 2026.* The Court rejected these baseless theories when it granted the Culpepper Application. Similarly, Mr. Muszynski has previously raised his argument that the Culpepper firm is supposedly "conflicted" by virtue of its representation of the co-plaintiffs in the Florida Action. As the Court found at the hearing on the Culpepper Application, "I do not find any conflict in Mr. Culpepper representing

115788541\2

this estate and the other plaintiffs in pursuing other parties that the other plaintiffs and the  estate have similar claims against." See Transcript of Hearing, Jan. 23, 2025, at p. 22, 6:9 [D.I. 552].

41.    Mr. Muszynski asserts that the Culpepper Firm was sanctioned $11,700 for "vexatious litigation."  See Supplemental Motion at p. 16.  In support, he cites to Docket Item No. 532 in the Florida Litigation, which is an *Order Adopting Report and Recommendation* issues by the Florida District Court.  A copy of this *Order Adopting Report and Recommendation*¸ together with the Magistrate Judge's underlying *Report and Recommendation* [D.I. 505] is attached as Exhibit "T."  As the *Order Adopting Report and Recommendation* makes clear, this is absolutely not a "sanction" for "vexatious litigation."  Rather, this is an award in favor of a garnishee pursuant to Florida Statutes 77.28, which provides:

> **Garnishment; attorney fees, costs, expenses**.—Upon issuance of any writ of garnishment, the party applying for it shall pay $100 to the garnishee on the garnishee's demand at any time after the service of the writ for the payment or part payment of his or her attorney fee which the garnishee expends or agrees to expend in obtaining representation in response to the writ.  On rendering final judgment, the court shall determine the garnishee's costs and expenses, including a reasonable attorney fee, and in the event of a judgment in favor of the plaintiff, the amount is subject to offset by the garnishee against the defendant whose property or debt owing is being garnished.  In addition, the court shall tax the garnishee's costs and expenses as costs.  The plaintiff may recover in this manner the sum advanced by him or her, and, if the amount allowed by the court is greater than the amount paid together with any offset, judgment for the garnishee shall be entered against the party against whom the costs are taxed for the deficiency.

Florda Statutes 77.28.

In this instance, as part of its efforts to enforce the Florida Judgment on behalf of the plaintiffs, including Screen Media Ventures, in late 2022 the Culpepper Firm served write of garnishment on certain garnishees and, after their deadline to answer had passed, obtained a default and a default judgment against the garnishees.  See *Order Adopting Report and Recommendation* at p. 2-3.  The garnishees subsequently moved successfully to vacate the default, and the plaintiffs moved to voluntarily dissolve the writs of garnishment.  Id. at p. 3.  The court dissolved the writs, which in

18

115788541\2

turn triggered section the plaintiffs' duty under section 77.28 to pay to the garnishee the "garnishee's costs and expenses, including a reasonable attorney fee." Mr. Muszynski neglected to mention the fact that the garnishees had originally moved for an award of sanctions against the plaintiffs pursuant to 28 U.S.C. §1927 – in addition to the fees awarded by operations of section 77.28 – and that in arriving at her total recommended award of $11,700 the Magistrate Judge explicitly rejected the garnishee's section 1927 request, and wrote in the *Report and Recommendation*, "Therefore, the undersigned finds no merit in Garnishees' argument that Plaintiffs unreasonably and vexatiously litigated this case. Accordingly, the undersigned finds no basis for an award of fees under Section 1927 as sanctions against Plaintiffs." See Report and Recommendation [D.I. 505] at p. 11. The Florida District Court explicitly adopted the Magistrate Judge's Report and Recommendations including its determination of the amount of the award, and denied the garnishees' motion for attorneys' fees in part to reflect the Florida District Court's refusal to award sanctions under section 1927. See Order Adopting Report and Recommendations at p. 14.

42.     Mr. Muszynski's characterization of this episode as the Culpepper firm being "sanctioned $11,700 for 'vexatious litigation' is, for all intents and purposes, a lie. In reality, the Magistrate Judge explicitly found that no vexatious litigation had occurred.

43.     Mr. Muszynski's Motions appear to be rife with these sorts of falsehoods, lies by omission, mischaracterizations, statements out of context, and the like. As another example, in the Supplemental Motion, Mr. Muszynski wrote that "Special Counsel's" "partner" [presumably meaning Mr. Culpepper's partner] "was sanctioned $249,357.50 for 'bad faith.'" See Supplemental Motion at p. 16. This statement is incorrect in multiple respects. First, Mr. Culpepper does not have a partner. His is a solo practice. Rather, the sanction to which Mr.

115788541\2

Muszynski referred was awarded against an attorney from another firm, a Joel Rothman of SRIPLAW, PLLC.  SRIPLAW, LLC is the local counsel that the Culpepper Firm has engaged in the Florida Action.  Next, the sanctions order to which Mr. Muszynski referred was not issued in the Florida litigation, but in different case, in which the Culpepper firm was not involved (Celsius Holings, Inc. v. A SHOC Beverage, LLC, No. 21-80740 (Bankr. S.D. Fla.)).  In short, this sanction has nothing whatsoever to do with the Culpepper Firm.  Finally, for good measure, Mr. Muszynski also neglected to mention that the sanction award to which he referred was vacated on appeal.  See Celsius Holdings, Inc. v. A SHOC Beverage, LLC, No. 22-12687, 2025 WL 2887300 (11th Cir. Oct. 10, 2025).

44.     If the Trustee were to comb methodically through the Motions and debunk every falsehood, this Omnibus Objection would end up being impracticably long.  The Trustee trusts that the foregoing is a sufficient sampling to convey a sense of the unreliability of anything that Mr. Muszynski submits to the Court.

45.     Moving on, as well as broad collateral attacks on the Culpepper Retention Order (e.g., disqualification of the Culpepper Firm), many of Mr. Muszynski's more specific items of requested relief sounding in the nature of collateral attacks on the Culpepper Retention Order are patently absurd, and should not be humored with much discussion.  For example, he asks that the Court: "halt parallel proceedings," referring presumably to either the Florida Action and/or the Nevis Action; compel an "accounting" and "disgorgement" from the Culpepper Firm; issue an order to show cause why the Culpepper Firm should not be sanctioned; issue a filing bar against the Culpepper Firm and the Trustee such that they "must seek pre-approval from this Court before filing any further motions or proceedings against Movant;" and assess "damages for breach of fiduciary duty" against the Culpepper Firm "personally."

115788541\2

46.     Mr. Muszynski does not provide any coherent reasons in support of these requests, and the Trustee submits that they should be dismissed out of hand.  From a both a legal and factual standpoint, these items of requested relief are absurd.

47.     Finally, Mr. Muszynski's Purported Interrogatories appear primarily to seek support for his collateral attacks on the Culpepper Retention Order (as opposed to his other points of requested relief).  Accordingly, the reasons why the Purported Interrogatories are invalid include the fact that they were created to further an improper purpose.

48.     For all of these reasons, the Trustee submits that Mr. Muszynski's requested relief in the nature of collateral attacks on the Culpepper Retention Order should be denied.

**B.      Mr. Muszynski's Failure to Understand the Scope and Purpose of the Automatic Stay of Section 362(a) of the Bankruptcy Code**

49.     Several of Mr. Muszynski's arguments are based on the false premise that the automatic stay of section 362(a) of the Bankruptcy Code prevents the estate of Screen Media Ventures from pursuing litigation as a plaintiff, including without limitation efforts to enforce the Florida Judgment.  See, e.g., Lead Motion at p. 4 ("The SDFL judgment [i.e., the Florida Judgment] is property of the estate under § 541.  The Trustee's prosecution of the SDFL is a clear violation of § 362(a)(3)."); Supplemental Motion at p. 6 (Referring to Screen Media Ventures' collection efforts, and stating, "On June 29, 2024, Screen Media Ventures and related entities filed Chapter 11 Bankruptcy in this Court.  On July 10, 2024, the cases converted to Chapter 7.  Under 11 U.S.C. § 362(a), an automatic stay immediately applied to all collection activities.").

50.     At the hearing on January 8, 2025, the Court explained to Mr. Muszynski that he had the concept of the automatic stay backwards, stating, "[T]he automatic stay protects the debtor, not the defendants that he is suing.  A debtor can continue to prosecute actions against others.  The

115788541\2

automatic stay protects the debtor and the debtor's estate.  So I think you have it in reverse.  It doesn't protect you."  See Transcript of Hearing, Jan. 8, 2025, at p. 20, 19:23.

51.    Mr. Muszynski's Motions are unclear, but he may be using his "reverse automatic stay" argument to underpin his request that the Court enjoin the Florida Action and/or the Nevis Action.  In any event, those requests are totally unsupported by law or fact, and should be denied.

52.    On another note, Mr. Muszynski may also be using his "reverse automatic stay" argument to justify the sanctions and other relief he seeks against the Trustee and the Culpepper Firm.  For example, he accuses the Culpepper Firm of engaging in wrongdoing by pursuing post-petition collection efforts on behalf of Screen Media Ventures' estate, and accuses the Trustee of wrongdoing by his "approval of retention [of the Culpepper Firm] despite July 2024 knowledge of stay violations."  See Supplemental Motion at pp. 12-13.

53.    In any event, Mr. Muszynski's requested relief against the Culpepper Firm and the Trustee is totally unsupported in law and fact.

**C.    Mr. Muszynski's Arguments Regarding the Culpepper Firm's Expenses**

54.    In several places, Mr. Muszynski asserts that the Culpepper Firm has paid $30,000 in estate funds into the Nevis Court.  See, e.g., Supplemental Motion at p. 10 ("On May 26, 2025, Culpepper caused Joseph Rowe to pay $30,000 from the estate IOLTA account to satisfy a Nevis High Court order; $5,000 over the contractual cap.").  This statement is false.  In reality, neither the Culpepper Firm nor anybody else has paid $30,000 in estate funds into the Nevis Court.  Mr. Muszynski is basing this accusation on the Nevis Court's May 15th Order.  As described above, Screen Media Ventures' portion of the security is $453.78.  The Culpepper firm advanced $453.78 to the Nevis Court.

55.    Mr. Muszynski's Motions are unclear as to which items of his requested relief depend on this falsehood.  This falsehood obviously cannot support any relief whatsoever.

115788541\2

**D.**     **Mr. Muszynski's "Eleven Requests for Relief" in his Supplemental Motion**

56.     Throughout his Motions, Mr. Muszynski makes his requests for relief in a scattershot manner, with many of them overlapping.  At section VIII of his Supplemental Motion Mr. Muszynski lists "eleven requests for relief," numbered A through K.  As this list is something of a distillate of Mr. Muszynski's various requests throughout his Motions, The Trustee will address each in turn, taking them in the order presented in Mr. Muszynski's list.  See Supplemental Motion at pp. 13-15.

57.     Mr. Muszynski requests an "Order directing entry of written order (FRBP 9021)." He states, "For 17 months, the oral ruling concerning Movant's administrative claim has not be memorialized in a written order as required by FRBP 9021."  The Trustee presumes that Mr. Muszynski is referring to the January 5, 2025 hearing, as that hearing took place approximately 17 months ago.  However, that hearing did not concern any asserted administrative claims, whether by Mr. Muszynski or anybody else.  Moreover, Mr. Muszynski has not filed a motion for allowance of an administrative expense claim, and clearly possesses no such claim.  Accordingly, the Trustee is unsure how to respond to this item other than simply to request that the Court deny it.

58.     Mr. Muszynski requests, "Recognition of priority administrative expense or disgorgement."  He states, "The $30,000 post-petition payment qualifies as an 'actual, necessary cost' under §503(b)(1)(A) and should be paid from Non-Collateral Assets (as defined in the HPS Sharing Agreement, ¶15) before HPS receives its $500 M+ secured claim.  If unauthorized, the $30,000 must be disgorged under §328(c)."  The Trustee is similarly unsure how to respond to this, as none of the estates of have made a $30,000 payment.  Mr. Muszynski may be referring to the $453.78 that the Culpepper Firm advanced to the Nevis Court pursuant to Nevis Civil Procedure Rule 24.  Nothing about that advancement justifies any of Mr. Muszynski's requested relief.

115788541\2

59.     Mr. Muszynski requests, "Disqualification of Conflicted Special Counsel. (§ 327; Rule 2014)," and states, "Culpepper's material omissions and fraudulent procurement of his retention violate FRBP 2014 and §327(e)."  For the reasons described above, this argument has no basis in law or fact, and so is frivolous.

60.     Mr. Muszynski requests, "Injunctive relief to halt parallel proceedings (§ 105)," and states, "The Trustee, through Special Counsel, is expending estate assets on litigation benefitting 38 non-debtor parties without their on-record consent or Bankruptcy Court approval."  Whether referring to the Nevis Action, the Florida Action, or any other civil action pending anywhere, for the reasons described above this request has no basis in law or fact, and so is frivolous.

61.     Mr. Muszynski requests, "Imposition of Constructive Trust on HPS Assets (§ 105)," stating, "Given HPS's $400-552M fraud loss and risk of asset dissipation, a constructive trust is warranted on HPS share of IP Litigation Proceeds."  The Trustee does not understand the basis for this requested relief, but as it appears to relate only to property of HPS, the Trustee will deter to the response of HPS.

62.     Mr. Muszynski requests, "Appointment of Counsel," stating, "The complexity of the TPLF schemes, multi-jurisdictional concealment, and sanctionable conduct are beyond the capacity of a *pro se* litigant to fully prosecute."  The Trustee does not understand exactly what Mr. Muszynski is asking the Court to do, but notes that Mr. Muszynski is free to retain any counsel of his choosing willing to represent him.

63.     Mr. Muszynski requests that the Court "Compel accounting and disgorgement with specific findings for res judicata."  Under this heading, he requests that the Court make four

24

115788541\2

specific "findings" with no basis in fact or law.  Having no basis in fact or law, this request is frivolous.

64.    Mr. Muszynski requests an "Order to show cause why special counsel should not be sanctioned."  As discussed above, this request has no basis in law or fact, and so is frivolous.

65.    Mr. Muszynski requests that the Court enter "a protective order against further vexatious conduct."  Frankly, the Trustee is presently considering the same thing.

66.    Mr. Muszynski requests "damages for breach of fiduciary duty" seemingly in the form of "damages against Special Counsel personally."  As discussed above, this request has no basis in law or fact, and so is frivolous.

67.    Finally, Mr. Muszynski requests an "Order directing disclosure of 38 claimant ownership structures," presumably referring to the co-plaintiffs in the Florida Action.  As the Court has already found, no conflict exists between the any of the Debtors' estates and these co-plaintiffs.  No basis in fact or law exists to support this request.

**E.    The requested relief in Mr. Muszynski's Lead Motion**

68.    The Lead Motion concludes with a list of seven items of requested relief, which largely overlap with the items of relief in the Supplemental Motion discussed above.  However, three of them appear sufficiently distinct to warrant separate mention:

(i)    Mr. Muszynski requests that the Court issue an "emergency order" "Recognizing the $30,000 payment as an automatic priority administrative expense."  See Lead Motion at p. 6.  The Trustee is not sure how to respond to this, except to stress that Mr. Muszynski does not possess an administrative expense claim in any amount, against any of the Estates.  If Mr. Muszynski is referring to Screen Media Ventures' obligation pursuant to Nevis Civil Procedure Rule 24 to pay $453.78 into the Nevis

115788541\2

Court, then the Trustee again repeats that the Culpepper firm has already advanced this sum.

(ii) Next, Mr. Muszynski requests that this same "emergency order" also order "the Trustee to post a bond and/or show cause why he should not be surcharged for gross negligence." Id. at pp. 6-7. This request has no basis in law or fact, and is patently frivolous. Moreover, Mr. Muszynski appears unaware of the existence of section 322 of the Bankruptcy Code setting forth the qualification of trustees, with which the Trustee is in compliance.

(iii) Finally, in an elaboration on the request that he makes in the Supplemental Motion, Mr. Muszynski requests that the same "emergency order" appoint counsel for him under section 330 of the Bankruptcy Code. Obviously, neither section 330, nor any other section of the Bankruptcy Code or Rules *entitle* him to counsel. However, as noted above, Mr. Muszynski is free to retain any counsel of his choosing willing to represent him.

**F.**    **The requested relief in Mr. Muszynski's Motion to Strike**

69.    Turning to the Motion to Strike, Mr. Muszynski appears to request several items of relief, most of which overlap with the ones discussed above. Mr. Muszynski does make one request here that he doesn't make in his other filings. Mr. Muszynski states that he is appearing for purposes including, "Moving to strike any evidence or argument relying on the Court's January 8, 2025 oral ruling, which was never reduced to writing under FRBP 9021 and therefore constitutes no judicial determination of Movant's administrative expense status." It's unclear whether the Motion to Strike is itself such a request, or whether in it Mr. Muszynski is simply stating his intent to someday make such a motion. However, as the Court has stressed repeatedly, and as the District Court has ruled, Mr. Muszynski is not a creditor of any of the Debtors' Estates, period. And most

26

certainly, he has not been granted an allowed administrative expense claim in the Chapter 7 Cases. As to Rule 9021, the Court obviously *did* enter a written order following the January 8, 2025 hearing – the Culpepper Retention Order, which is on the docket at D.I. 547, and which states, among other things, that "the Muszynski Objection is overruled." See Culpepper Retention Order at ¶1.

**G.      The requested relief in Mr. Muszynski's Motion for Judicial Notice**

70.      Here, Mr. Muszynski lists five items, and states that he "moves this Court for judicial notice pursuant to Federal Rule of Evidence 201 of the following facts." He attaches five exhibits to this Motion.

71.      The Trustee does <u>not</u> agree to the authenticity of any of these five exhibits. The Trustee reserves all rights, and holds Mr. Muszynski to his proofs with respect to their authenticity.

72.      Similarly, the Trustee reserves all rights to object on any applicable basis to the introduction of any of these documents into evidence, including without limitation on the bases of hearsay, relevance, and lack of authentication.[9]

**H.      Mr. Muszynski's citations to non-existent or patently inapplicable caselaw**

73.      The Trustee shares the concerns expressed by HPS Investment Partners, LLC ("<u>HPS</u>") in paragraph 16 of its Limited Objection to Mr. Muszynski's Lead Motion filed earlier today [D.I. 811]. The two examples mentioned by HPS are not the only non-existent, or patently inapplicable, citations in Mr. Muszynski's Motions. As another example, on page 2 of his Motion to Strike, Mr. Muszynski includes the following citation, "See *In re Brittain*, 613 B.R. 114, 121 (Bankr. D. Del. 2020) (Walrath, J)," purportedly in support of his request to strike "any evidence

---

[9] The Trustee may be willing to agree that the Court may take judicial notice of pleadings in the Nevis Action and/or the Florida Action of which he or his counsel have personal knowledge of the authenticity. However, due to Mr. Muszynski's past conduct, some of which is described above, the Trustee intends to hold him to his proofs with regard to any document that he may seek to introduce into evidence.

115788541\2

or argument relying on the court's January 8, 2025 oral ruling." <u>See</u> Motion to Strike at p. 2. Entering this citation into Westlaw takes one to the second page of a decision from the United States Bankruptcy Court for the Eastern District of Michigan called <u>In re Holly Frances Jackson</u>, which begins at page 113 of the Bankruptcy Reporter and concludes at page 119.

74.     The Trustee surmises that Mr. Muszynski is using artificial intelligence to draft his pleadings, and agrees with HPS's suggestion that Bankruptcy Rule 9011 is implicated.  The Trustee reserves all rights in connection with Mr. Muszynski's false statements of legal authorities, including without limitation the right to seek appropriate sanctions.

## I.     <u>The Purported Interrogatories and the Purported Subpoenas</u>

75.     Pursuant to Federal Rule 45(a)(2), applicable via Bankruptcy Rule 9016, "a subpoena must issue from the court where the action is pending."  Pursuant to Federal Rule 45(a)(3), applicable via Bankruptcy Rule 9016, a subpoena may only be issued by either the clerk of the court or an attorney authorized to practice before the issuing court."  The Purported Subpoenas are invalid, as they were not issued form this Court, and were not issued by either the clerk of the Court or by an attorney admitted to practice before the Court.  Accordingly, they are a legal nullity.

76.     The Trustee submits that the purported Interrogatories are facially invalid, as they have been served for improper purposes, including in furtherance of Mr. Muszynski's frivolous and vexatious arguments discussed above.  Moreover, on they are based on patently flawed legal and/or factual premises.  Accordingly, the Trustee requests that the Court rule that he is not required to respond.  If the Court prefers that he file a separate motion to quash, he will, of course, do so.

115788541\2

77.    To the extent that the Purported Subpoenas and the Purported Interrogatories may be interpreted as motions pursuant to Bankruptcy Rule 2004, the Trustee submits that such motions should be denied.  Pursuant to the text of Bankruptcy Rule 2004(a), only a "party in interest" may move for a Rule 2004 examination.  Mr. Muszynski is not a party in interest under Bankruptcy Rule 2004(a).  Moreover, "[t]he party seeking Rule 2004 discovery has the burden to show good cause for the examination it seeks, and relief lies within the sound discretion of the Bankruptcy Court."  In re SunEdison, Inc., 562 B.R. 243, 249 (Bankr. S.D.N.Y. 2017).  For all of the reasons described above, Mr. Muszynski has not shown that good cause exists for his requested examinations.

78.    Last year, Mr. Muszynski attempted to inject himself similarly into the chapter 7 bankruptcy case of his ex-wife, Marcia Waddell, which was pending in the United States Bankruptcy Court for the Southern District of New York at Case No. 24-11769.  Ms. Waddell holds an unpaid judgment against Mr. Muszynski for past due alimony and attorneys' fees in the amount of approximately $1.94 million.  In that case, as is the instant case, Mr. Muszynski was not a creditor.  Rather, it was he who owed a large sum of money to the Debtor.  See, e.g., *Memorandum Decision and Order Denying Motion for Sanctions* issued in the Marica Waddell case (attached as Exhibit "U") at p. 2. (Bankr. S.D.N.Y) ("The Debtor holds a judgment against Movant [i.e., Mr. Muszynski] in the sum of $1.941,255 (the "Judgment") for past due alimony and attorneys' fees. The Movant is not a creditor of the Debtor and does not assert any financial interest in the Chapter 7 Case.").  As with the Florida Judgment, he appeared to have more than sufficient wherewithal to satisfy the judgment.  Mr. Muszynski simply chose not to satisfy the judgment held by Ms. Waddell.[10]

---

[10] See, e.g., *Order Granting Former Wife's Verified Amended Motion for Contempt and Enforcement of Alimony and Attorneys' Fees* (attached as Exhibit "B"), at ¶¶ 9-14 ("Former Husband has admitted to a monthly income of at least

115788541\2

79.     In that case, Mr. Muszynski moved for leave to conduct an examination of the debtor under Rule 2004.  The court denied his motion on the basis that he was not a party in interest, and that he was not seeking the examination for a proper purpose.  See *Memorandum Decision and Order Denying Motion for 2004 Examination* [D.I. 34].  A copy of the court's *Memorandum Decision and Order Denying Motion for 2004 Examination* is attached as Exhibit "V."

80.     There, as in the present case, Mr. Muszynski appeared to have brought the motion to further his interests in other cases and to revisit matters already decided by the court.  The bankruptcy court wrote in its *Memorandum Decision and Order Denying Motion for 2004 Examination*:

> Movant's request to essentially rehash matters already addressed during the administration of the case demonstrates it is not brought to advance legitimate bankruptcy purposes. In seeking leave to conduct a Rule 2004 examination, Movant plainly seeks to harass the Trustee, the Debtor, and Debtor's counsel. Movant has failed to meet his burden of showing good cause and proper purpose for a Rule 2004 examination. Accordingly, the Court finds no justification for granting the relief sought.

See *Memorandum Decision and Order Denying Motion for 2004 Examination*, at p. 16.

81.     In his ex-wife's case, as here, Mr. Muszynski had argued that he was an "unobjected and admitted party of interest." Id. at p. 14.  The court disagreed, explaining that Mr. Muszynski was not a creditor, that he "had no pecuniary interest in this case," and that "the administration of the estate will not impact him at all financially." Id. at 13.  "At best," the court continued, "Movant

---

$13,500 and now owes over $55,250 in arrears per the clerk's records as of November 26, 2019.  Further Charles Schwab statements indicate that Former Husband has had access to tens of thousands of dollars a month for his own personal use.  In fact, sometimes his statements show deposits of over $100,000 in a single month and in 2019 there were deposits of over $600,000 to which he had access.  With this money he has had no problem funding his lifestyle and has paid American Express bills in excess of $50,000.  In fact August of this year after he had stopped paying alimony, Former Husband wired $300,000 to St. Kitts for what appear to be investments.  Thus, the evidence is overwhelming that Former Husband is willfully and intentionally withholding support to Former Wife out of spite.").

115788541\2

is attempting to assert the rights of creditors rather than any concrete interest of his own." Id. at 15.

82.    For these same reasons, as well as the reasons described above, to the extent that the Purported Subpoenas and the Purported Interrogatories may be interpreted as motions pursuant to Bankruptcy Rule 2004, the Trustee submits that such motions should be denied.

WHEREFORE, the Trustee respectfully requests that the Court enter an order, in substantially in the form attached: (i) denying the Motions in full with prejudice; and (ii) providing any such other relief as may be appropriate.

Dated:   June 3, 2026                                  COZEN O'CONNOR

                                                By:    /s/  Simon E. Fraser
                                                       John T. Carroll, III (No. 4060)
                                                       Simon E. Fraser (No. 5335)
                                                       1201 N. Market Street
                                                       Suite 1001
                                                       Wilmington, DE  19801
                                                       Tel: (302) 295-2000
                                                       jcarroll@cozen.com
                                                       sfraser@cozen.com

                                                       *Counsel to George L. Miller,*
                                                       *Chapter 7 Trustee*

115788541\2