**EXHIBIT "A"**



## KIOSK OPERATING AGREEMENT

### Summary Page

| | |
|---|---|
| **Client:** | Stater Bros. Markets |
| **Primary Client Contact:** | John Peterson. VP Merchandising/Procurement; 909-733-5279 |
| **Form of Organization:** | A California Corporation |

| **Client Addresses:** | Stater Bros. Markets | *For Notices*: |
|---|---|---|
| | 301 S. Tippecanoe Ave. | Same |
| | San Bernardino, CA 92408 | |

| | |
|---|---|
| **Effective Date:** | The date upon which Redbox and Client have both executed this contract. |
| **Term:** | 3 years beginning on March 1, 2015 and expiring on February 28, 2018. |
| **Placements:** | ☒ Indoor                                    ☒ Outdoor |
| **Commission:** | 10.5% per Kiosk for DVD rental applied against Net Rental Revenue up to $80,000; 12% per Kiosk for DVD rental applied against Net Rental Revenue in excess of $80,000; 5% per Kiosk for video game rental applied against video game Net Rental Revenue; 3% per Kiosk for Sell Through and Previously viewed Sell Through Net Sales Revenue.  Commission payment is calculated in accordance with Section 7. |
| **Products:** | ☒ DVD Rental |
| | ☒ DVD Sell Through |
| | ☒ DVD Previously-Viewed Sell Through |
| | ☒ Video Game Rental |
| | ☒ Video Game Sell Through |
| | ☒ Video Game Previously-Viewed Sell Through |
| **Issuance of Commission Payments:** | Monthly |
| **Cancellation of Prior Contracts:** | This contract, on and after its Effective Date, supersedes and cancels the prior contracts (except with respect to any outstanding payment obligations) identified as follows:<br><br>DVD Kiosk Operating Agreement dated March 19, 2009 |

| **CLIENT** | **REDBOX AUTOMATED RETAIL, LLC** |
|---|---|
| By: _____ | By: _____ |
| Name: PETER J VAN HELDEN | Name: TARYN ARONSON |
| Title: PRESIDENT & COO | Title: VP. FINANCE |
| Date: 2-13-18 | Date: 4-17-15 |

redbox
Approved by Legal
SB

150402

# KIOSK OPERATING AGREEMENT

## Contents

1. Definitions
2. Nature of Our Agreement
3. Identification of Sites and Premises
4. Kiosk Installation
5. Kiosk Operation and Maintenance
6. Kiosk Relocation, Removal and Re-Installation
7. Commission Payments

8. Marketing
9. Term and Termination
10. Confidential Information
11. Assumption of Loss; Insurance
12. Indemnification
13. Limitations of Liability
14. Miscellaneous

This Kiosk Operating Agreement (this "**contract**") is entered into between **Stater Bros. Markets**, a California corporation ("**you**," "**your**" or "**Client**") with its principal offices at 301 S. Tippecanoe Avenue, San Bernardino, California 92408 and **Redbox Automated Retail, LLC**, a Delaware limited liability company ("**we**," "**our**" or "**Redbox**"), with its principal offices at One Tower Lane, Suite 900, Oakbrook Terrace, Illinois 60181. The term "**us**" refers to both Client and Redbox. The contract consists of the Summary Page, the following terms and conditions, and the exhibits to the contract.

## Terms and Conditions

### 1. Definitions

"**Commissions**" refers to the sums payable to you under this contract, as detailed in the Section entitled "Commission Payments."

"**Kiosk**" means a Redbox® branded machine that vends Media (a) selected by a customer on the Kiosk's touch screen monitor (b) after the presentment of a valid payment card accepted by Redbox. The Kiosk also has a card reader, a lighted panel for displaying Media cover art that is mounted on the side of the Kiosk (unless the parties mutually agree to remove or change the configuration of the light panel mounted to the Kiosk), and may have a flat screen video monitor mounted above the Kiosk to play promotional or advertising materials. The Kiosk specifications are substantially similar to those displayed on Exhibit "A."

"**Media**" means DVD movies (in both standard and Blu-ray formats) and video games

"**Premises**" means prominent and visible space measuring approximately three (3) feet by seven (7) feet (unless the parties have mutually agreed to change the configuration of the light panel which may reduce the Premises size) in a mutually agreed, strategic location at each Site, together with non-exclusive access rights over, upon and across those areas designated by Client and Redbox for the installation, operation, maintenance and repair of the Kiosks.

"**Sites**" means the retail locations which you own or operate within the United States.

### 2. Nature of Our Agreement

**2.1 Kiosk Deployment.** Redbox operates automated Kiosks offering customers a convenient way to rent or buy Media, and an efficient way for you to generate income from your Premises. You have requested, and we have agreed, that Redbox will install and operate Kiosks at eligible Sites. You grant Redbox the right of first refusal to install and operate automated media rental and sales machines, and to rent Media, at your Sites. In return, Redbox will pay you the Commissions detailed in the Section entitled "Commission Payments."

**2.2 Access to Sites.** You grant Redbox (for its use and the use of its employees and agents) a limited license over your Sites when the Sites are open to the public for business. This license allows Redbox to enter and exit the Sites, and to perform any necessary installation, service, maintenance, repair, relocation and removal of the Kiosks. You will not cause or permit any unreasonable interference to or from the Kiosks.

**2.3 Ownership of Kiosks and Media.** As between the two of us, you acknowledge that we own all right, title and interest in the Kiosks and the Media. You will not interfere with our ownership.



150402

**2.4    Media Content.** With respect to Media content, no Media having a rating of "NC-17", "X", "Adults Only" or similar rating by the Ratings Board of the Motion Picture Association of America (or its equivalent for video games) or similar authority may be rented from the Kiosk. This restriction shall include films which have not been rated by a ratings authority but contain content that would reasonably qualify them for such ratings.  Further, Redbox agrees that it will use "all audience" artwork in any display of Media titles.  Notwithstanding the above, Client, at a corporate-level only, reserves the right to cause Redbox to remove, and Redbox agrees to remove, from the Kiosk any Media title which Client reasonably believes in its sole discretion would be offensive or unsuitable to Client's business or customers. Requests for removal of a Media title may not be made by the individual Sites.

## 3.    Identification of Sites and Premises

**3.1    Site Identification.** The parties have previously identified eligible Sites on Exhibit B.

**3.2    Site Eligibility.** To be eligible for the installation of a Kiosk, a Site must be within a feasible Redbox Kiosk service area, as defined by Redbox, support Redbox's model for economic viability and be accessible to individuals pursuant to the requirements of the Americans with Disabilities Act of 1990 ("ADA"). If a Site does not meet these criteria, Client and Redbox must mutually agree to install a Kiosk at the Site.  .

**3.3    Selection of Premises.** After identifying the mutually acceptable Sites, the parties will work together to select Premises at the Sites to install the Kiosks. The order of installing Kiosks and the selection of Premises are largely determined by satisfying the goals of maximizing foot traffic, visibility, revenue and Commissions.

**3.4    Permits.**  At our expense, the parties will work together to obtain any necessary permits, licenses or other governmental authorizations.

**3.5    New and Newly Acquired Sites.** To the extent you desire to have Kiosks at new or newly acquired locations, you will use good faith efforts to provide Redbox throughout the term with a rolling forecast of your projected openings to determine eligibility according to section 3.2 above. Redbox agrees to install Kiosks at up to ten (10) of your new and newly acquired Sites during year one of the contract and at up to five (5) of your new and newly acquired Sites during year two of the contract, provided the new and newly acquired Sites  meet eligibility requirements.  During year three of the contract, Redbox agrees to install Kiosks at up to five (5) of your new and newly acquired Sites provided that Redbox and Client are in discussions for contract renewal and the Sites meet eligibility requirements.

**3.6    Installation and Access Authority.** Subject to applicable law, regulation, or the terms of any agreement for any new Site (which is in effect prior to the time you own or operate the new Site) and subject to all legal requirements to which Redbox must comply to operate a Kiosk, you represent and warrant that you have the authority (a) to grant Redbox the right to install and operate Kiosks at the

Sites, and (b) to grant access to Redbox, and its invitees, from and to the Kiosks so we can perform our obligations under this contract.

## 4.    Kiosk Installation

**4.1    Our Installation Responsibilities.** We will install Kiosks at the Sites according to a mutually agreed deployment schedule. Kiosk specifications are substantially similar to those described in Exhibit A. We shall minimize disturbances to your Site operations during our installation of the Kiosks. For security reasons, we may bolt an outdoor Kiosk to the pavement provided that we will comply with all applicable laws and regulations and shall ensure that such bolting does not materially compromise the concrete slab.

**4.2    Your Preparation of the Premises.** Before the scheduled date of Kiosk delivery, you will prepare the Premises for installation by removing any structures, machinery, or displays located on the Premises. Due to the potential variation of deployment options, any additional preparation of a Site for the deployment of an outdoor Kiosk will be determined following a Site visit by Redbox personnel.

**4.3    Utilities.** With the exception of electrical power, our Kiosks normally have "plug and play" capability. Before the scheduled date of Kiosk delivery, you will provide two (2) electrical outlets from a dedicated circuit providing 120 volt, 20 Amp A.C. electrical power service to operate the Kiosk. We are responsible for communication or data connectivity. Should two (2) electrical outlets from a dedicated circuit providing 120 volt, 20 Amp A.C. electrical power service to operate the Kiosk, not exist, Redbox agrees to install and pay for such installation subject to Redbox.

## 5.    Kiosk Operation and Maintenance

**5.1    Our Responsibilities.**

(a)    We have exclusive rights over the operation, use and control of the Kiosks, including but not limited to their hardware and software. Your personnel have only the same limited right of access to the Kiosks as are granted to the general public. We will provide all hardware and software support, maintenance and repairs for the Kiosks. We will maintain the Kiosks in an attractive and good state of repair, and in proper working order.

(b)    Redbox represents and warrants that the operation of the Kiosk is constantly monitored by electronic sensors and that if the Kiosk fails to perform, Redbox shall promptly take action without notice from Client to correct a malfunction which may include remote diagnostic repair or a service representative sent to the Site. Redbox shall be solely responsible for cleaning and servicing the Kiosk. In the event Redbox fails to maintain the Kiosks, then Client shall have the right to provide Redbox notice of Redbox's failure to satisfy any agreed service criteria; which notice shall specify the Site, or Sites, where such failure(s) occurred.  Redbox shall have fourteen (14) days after receipt of such notice to remedy such failed service criteria as required herein. Redbox shall cause the Kiosk to be serviced/inspected within forty eight (48) hours of receipt of such notice of

150402

failure, and shall use diligent efforts to cure such failure. If the Kiosk is operating as designed and permitted herein for a period of forty-eight (48) hours or more after receipt of such notice of failure, such failure shall be deemed to have been cured. Should Redbox fail to so remedy a failed service criteria or if Redbox persistently (for purposes of the Agreement "persistently" shall be defined as Redbox's failure to maintain a Kiosk at a given Site and Client has provided notice of such on more than three (3) occasions in any twenty-four (24) month period) fails to maintain a Kiosk at any given Site, then Client may terminate this contract as it applies to the affected Sites, as determined in Client's sole discretion, and Redbox shall remove all the Kiosks from those Sites within thirty (30) days of Client's election to terminate.

(c)     The Redbox personnel assigned to perform Redbox's obligations under this contract will be qualified for the services they are assigned to perform. They will perform Redbox's obligations with promptness and diligence, and in a good and workmanlike manner. Redbox employees, agents and contractors shall comply with all policy and procedures of Client, as are communicated to Redbox in writing by Client, when installing, operating, maintaining and repairing the Kiosk, including without limitation conduct and appearance. Redbox's officers, agents, contractors and employees shall at all times during the term of this Agreement, park their vehicles in parking spaces approved by Client or otherwise designated for employee parking and they shall not, in any event, park their vehicles in the customer parking spaces for the Stores unless pre-approved by Client.

**5.2     Your Responsibilities.** You will maintain the area immediately surrounding the Premises in a neat, clean and good condition, so as to provide an attractive and suitable environment for the use of the Kiosks by customers consistent with your past practices for the area surrounding Premises. You will provide all electrical service. For indoor Kiosk locations, you are responsible for heating and air conditioning services. However, Redbox and Client hereby acknowledge that Client does not have control over electrical, communication and other utility outages that may be caused directly or indirectly by utility providers or their equipment and therefore agree that Client is not responsible in any way for interruptions to electrical, communication or other utility services to the Kiosk that may be caused directly or indirectly by utility providers or their equipment.

**5.3     Security and Access to Stores.** Each of us will take reasonable precautions to ensure safe working procedures and conditions during and in connection with such our operations at a Site. While on-Site, Redbox's personnel will comply with your security and access policies as may be in effect (and as are identified or provided in writing to Redbox) at the Sites. At your request, our personnel will check in with Site management when they arrive to perform maintenance or operations at a Site. Redbox's officers, agents, contractors and employees shall at all times during the term of this contract, park their vehicles in parking spaces approved by Client or otherwise designated for employee parking and they shall not, in any event, park their vehicles in the customer parking spaces for the Sites unless pre-

approved by Client.

**5.4     Customer Queuing.** You will use commercially reasonable efforts to keep the area immediately adjacent to the Premises open so individuals waiting to use the Kiosks may queue. Client reserves the right to police the area immediately adjacent to the Premises to ensure the queuing of individuals waiting to use the Kiosk does not interfere with Store operations.

**5.5     Customer Service.** We will maintain a toll free customer service phone number which will be prominently displayed on the Kiosk. We will handle all customer calls and other issues relating to the operation of the Kiosks.

**5.6     PCI Compliance.** Redbox shall implement and maintain certification of Payment Card Industry ("PCI") compliance standards regarding data security. Redbox shall provide from time to time at the request of Client, current evidence of compliance with data security standards which has been properly certified by an authority recognized by the payment card industry for that purpose. Redbox shall maintain and protect, in accordance with all applicable federal, state, local and PCI laws, rules and regulations the security of cardholder data when performing this contract.

## 6.   Kiosk Relocation, Removal and Re-Installation

We understand that, under certain circumstances, a Kiosk may need to be moved or relocated. This Section details the procedures governing movement and relocation of a Kiosk.

**6.1     Movement of a Kiosk.** It is critical that only Redbox – and not you – physically moves a Kiosk. Redbox needs to handle any move for several reasons, including: (a) the Kiosk is our property; (b) the Kiosk contains sensitive electronic equipment and precision machinery; (c) the Kiosk needs to remain powered and have consistent internet connectivity to conduct transactions, monitor inventory and status, and to receive programming updates; (d) due to its size, weight, and various components, the Kiosk requires specialized equipment for handling by trained personnel to prevent damage to and shifting of contents, personal injury, unnecessary service calls and lost revenue; and (e) because a sub-optimal location may result in less revenue, the new location must be mutually agreed upon between us. You agree to communicate these points to your personnel.

**6.2     Process for Movement, Relocation and Reinstallation of a Kiosk.** The agreed-upon process for relocation, removal or reinstallation ("3R") of Kiosks is as follows:

(a)     You must request in writing the relocation, removal or reinstallation of any Kiosk by submitting your request to our deployment team no less than five (5) business days prior to the requested relocation, removal or reinstallation date.

(b)     Because Kiosk location is by mutual agreement, we will promptly respond with our agreement or disagreement as to the proposed Premises. Any relocated placement must be similar to the original location. In the unlikely event that the parties cannot agree on new Premises at a Site, then

150402

either party may terminate this contract with respect to that Site.

(c)    Once the parties reach agreement on relocation, removal or reinstallation, we will coordinate with your representative at the Site and will mutually determine the schedule (date and time) for it to take place. We – and not you – are responsible for the relocation, removal or reinstallation of the Kiosk.

(d)    The costs associated with any relocation, removal or reinstallation of the Kiosk made at your request will be at your sole cost and expense (I) If the request is made within the first two (2) years after the Kiosk has been initially installed at the Site, or (ii) within two (2) years after any prior relocation, removal or reinstallation of the Kiosk made at your request.

(e)    Your responsibility for the costs associated with a relocation, removal or reinstallation of the Kiosk are limited to the relocation of the utility lines, which include any communication lines (DSL or otherwise), electrical lines and any other necessary utilities to the Kiosk.

(f)    Notwithstanding any other provision in this contract, as to all indoor Sites where the square footage of Client's store is Forty Thousand (40,000) square feet or less (the "Dollhouse Stores"), the parties agree as follows: (i) after initial placement of a Kiosk, if Client in its reasonable discretion determines that the Kiosk placement interferes with Client's business operations, the parties will work together to reconfigure the location of the Kiosk's lighted panel; (ii) if reconfiguration of the Kiosk's lighted panel is impractical, the parties will mutually select a new Premises at the Site; and (iii) if the parties cannot find or reach agreement as to a new Premises at the Site, Redbox will remove the Kiosk's lighted panel at up to fifteen percent (15%) of Dollhouse Stores during the Term.

**6.3    Disclaimer of Liability.** We are not liable, and disclaim all assumption of loss, for any damages, personal or otherwise, should you or any of your agents take it upon themselves to relocate, remove, or re-install a Kiosk. If you move a Kiosk without following the procedures set forth in Section 6.2, you will defend and indemnify Redbox for any Claims that result from the unauthorized movement according to the provisions of Section 12 ("Indemnification") below. If you move a Kiosk a second time at a Site without following the procedures set forth in this Section 6.3, we may immediately terminate this contract with respect to that Site.

**6.4    Remodels and Rebuilds.** Should your operations continue during any period of remodeling or rebuilding of a Site, reasonable accommodations will be made to attempt to keep the Kiosk operating at the Site during that period. However, we may remove a Kiosk from a Site or suspend service at a Kiosk during that period if, in our reasonable opinion, the remodeling or rebuilding would have a material adverse effect upon (a) the number of customer transactions conducted at the Kiosk or (b) the Kiosk's condition.

**6.5    Vandalism or Burglary.** Either party may request approval of the other party for the exclusion of any Site from these obligations if the Kiosk has repeatedly been vandalized or burglarized. The other party's approval of this

request will not be unreasonably withheld, conditioned or delayed.  Client disclaims any responsibility for any vandalism or burglary unless intentionally caused by Client's employees and Redbox's sole remedy with respect to the same shall be the termination of the Agreement as to the affected Site.

**6.6    Removal for Failure to Generate Income.** If a Kiosk fails to generate average net rental revenue in excess of six hundred dollars ($600.00) per week for any four (4) consecutive weeks occurring eight (8) weeks or more after the initial installation of a Kiosk at the Site, we may remove the Kiosk. Net rental revenue is calculated according to Section 7.4(b) ("Commission Calculation and Payment") below. Upon removal of the Kiosk, this contract automatically terminates with respect to that Site. Notwithstanding the foregoing, it is within our sole discretion to remove a second Kiosk from a Site for any reason.

**6.7    Surrender of Premises; Transitional Operation.** Upon the termination of this contract for any Site, Redbox shall (i) remove the Kiosk and other personal property of Redbox in compliance with all applicable laws, and (ii) properly repair, cap, cover, insulate or seal all holes, cuts, wiring, conduits and other exposed work in, on or about the Premises, leaving the Premises in substantially their pre-existing condition, safe and in compliance with all applicable laws. Redbox covenants that all repairs to the Premises and other improvements performed by Redbox in connection with the expiration or termination of Redbox's rights under this contract shall be performed in a good and workmanlike manner so as to match as nearly as possible the surrounding area, reasonable wear and tear associated with the installation and operation of a Kiosk excepted. If Redbox fails to remove the Kiosk and other personal property of Redbox in compliance with the provisions of this Section 6.7, Client may elect to remove such property and Redbox shall pay Client all expenses incurred in connection therewith, including, without limitation, expenses in connection with the storage or other disposition of such property.  This Section 6.7 and Redbox's obligations hereunder shall survive the expiration or other termination of this Agreement. We will consult with you to mutually agree upon a reasonable schedule to accomplish these tasks, which should not exceed thirty (30) days from expiration or termination. Unless we terminate this contract for your breach, we will continue to operate the Kiosks and pay you commissions upon the same terms and conditions until removal of the Kiosks is complete.

## 7.    Commission Payments

**7.1    Rental Commissions.** We offer Media in the Kiosks for rental by end-customers. We will pay you a commission based on a percentage of net revenue received by Redbox from both the rental of Media and from the failure by customers to return Media, as detailed in Section 7.4 below. The Commission percentage is specified on the Summary Page.

**7.2    Sell Through Commissions.** We may offer new Media for direct sale from the Kiosks. We will pay you a commission based on a percentage of the net revenue



Approved by Legal
SB

150402

received by Redbox for the sale of new Media as detailed in Section 7.4 below. Redbox will determine the sale price of the Media. The sell through commission percentage is specified on the Summary Page.

**7.3    Previously-Viewed Sell Through Commissions.** We may offer previously-viewed Media for direct sale from the Kiosks. We will pay you a commission based on a percentage of the  net revenue received by Redbox for the sale of previously viewed Media as detailed in Section 7.4 below.  We reserve the right to determine the selection and pricing for previously-viewed Media. The previously-viewed sell through commission percentage is specified on the Summary Page.

**7.4    Commission Calculation and Payment.**  For all Kiosks installed and operating at the Sites, we will pay you your commissions within thirty (30) days of the end of each calendar month. Commission payments will:

(a)    be calculated in accordance with generally accepted accounting principles;

(b)    include all gross revenues from paid rentals (or if applicable, Sales) of Media and from the failure by customers to return rented Media, less customer refunds, credit card charge backs, declined transactions, promotional discounts, rental and sales taxes, and in the case of Section 7.2, new Media costs and Section 7.3, the amount that Redbox could sell previously-viewed Media back to its distributor; and

(c)    be accompanied by a report which itemizes revenue by Kiosk and Site.

**7.5    Inspection of Records.** It is your right to inspect our accounts and reports relating to the calculation of that commission. Inspections can occur at reasonable intervals upon reasonable advance written notice, and during our regular business hours.

**7.6    Taxes.**  The amounts paid by Redbox to Client under this contract include all taxes, fees, surcharges, assessments and other amounts assessable by any government authority on the Kiosks or services offered under this contract, including any sales, use, gross receipts or value-added tax ("**Taxes**"). Redbox will have no liability to separately reimburse Client for any gross receipts, B&O, rental, sales & use tax on amounts paid by Redbox under this contract. Redbox and Client will each bear sole responsibility for all taxes and assessments upon their respective real and personal property and net incomes. In addition, Redbox and Client will reasonably cooperate with the other to more accurately determine a party's tax liability and to minimize such liability, to the extent legally permissible.

## 8.    Marketing

Recognizing that marketing is critically important to increasing customer awareness, which in turn substantially impacts revenue, subject to Redbox complying with all applicable laws, the parties agree to engage in the following marketing efforts:

**8.1    Location Guide.** You authorize Redbox to use your name and address of the Sites for the purpose of providing a location guide for customers. This guide may be in interactive media form or Internet-based, such as but not limited to a locator guide on our website.

**8.2    Banners and Signage.** Upon mutual agreement, Client will provide Redbox access and permission to place banners and signage which may include but not be limited to the following categories at each Client Site:

☒ Banners

☒ Pole Signs

☒ Ceiling Danglers

☒ Window Clings

☒ Door Decals

☒ Lane Dividers

☒ Cashier Stickers and Handouts

☒ Breakroom Poster

**8.3    Point of Purchase Merchandising.** Subject to compliance with all law, regulations and other restrictions governing each Site, we reserve the right to use a digital merchandising screen for point of purchase merchandising within the Sites. The screen would be directly attached and secured to the Kiosks, and would have a visual component as well as an audio component. The screen may display (but not be limited to displaying):

☒ Cover art from the currently offered Media;

☒ Movie trailers from new movie releases and upcoming releases; and

☒ External advertising.

**8.5    Trademarks.**  Redbox may include Client's name and logo among its list of Clients on its website and in general sales presentations, and may disclose Client's name during its quarterly earnings announcement in fulfillment of any SEC disclosure requirements if such should become required.  Neither party shall use the name, registered trademark, or proprietary product names of the other party for the purpose of advertising, or other such purposes without the prior written approval of the other party. Client's name shall remain the property of Client and, upon termination of this contract, Redbox agrees to immediately cease all use of the Client name, except as required with any governmental filings.  Redbox shall take such measures as Client may reasonably require to protect Client's name, including without limitation, affixing any appropriate notice of claim to copyright or trademark registration.

**8.6    Other.** Upon mutual agreement the parties will participate in quarterly marketing promotions which may include the following: Circular advertising, Out Of Home (OOH) advertising, radio sponsorships, cross promotions, demo programs, text messaging programs, email marketing programs, and vend screen advertisements.  Also included are any programs involving promo code distribution via cross promotions (Catalina or POS System), circular advertising,

150402

text programs and incremental in-store signage via a 3ʳᵈ party vendor.

## 9. Term and Termination

### 9.1 Term.

This contract goes into effect on the "**Effective Date**," which is identified on the Summary Page. The term of this contract expires at 11:59 p.m. (Central time) on the date identified on the Summary Page.

**9.2 Termination for Cause.** Either of us may terminate this contract as a result of a material breach by the other party of any of its obligations. The termination will be effective upon the breaching party's receipt of notice of the breach, subject to a thirty (30) day cure period. If the breaching party fails to cure or to initiate a plan to cure the breach within thirty (30) days after its receipt of the notice, the non-breaching party may terminate the contract.

**9.3 Immediate Termination.** Notwithstanding the foregoing paragraph, either of us may terminate this contract immediately upon written notice if any of the following events occur: (a) the other party ceases or is likely to cease to carry on all or any principal part of its business; (b) the other party is unable to pay its debts as and when they become due; (c) due to an encumbrance, a third party takes possession of all or any part of the business, property or asset of the other party, or any liquidator or receiver is appointed in respect thereof; (d) the other party makes a general assignment for the benefit of its creditors; or (e) any order has been made or any resolution has been passed for the winding up of the other party.

## 10. Confidential Information

**10.1 Definition of "Confidential Information."** "Confidential Information" means information, whether received before or after the Effective Date, marked or otherwise identified in writing by one of us as proprietary or confidential, or information that, under the circumstances surrounding the disclosure, the receiving party reasonably should recognize as being confidential. It includes non-public information regarding either party's products, software, marketing or promotions, business methods, cost information, forecasts, sales, revenues, profits, customer information (including personally identifiable information, rental transactions, and rental history), supplier information, and the terms of this contract.

**10.2 Information Not Considered Confidential.** Confidential Information does not include information which: (a) the recipient developed independently; (b) the recipient knew before receiving it from the other party; or (c) is or subsequently becomes publicly available or is received from another source, in both cases other than by a breach of an obligation of confidentiality. The burden of proof to establish that one of the above exceptions applies will be upon the recipient.

**10.3 Use of Confidential Information.** For a period of three (3) years after initial disclosure, neither party will:

(a) use the other's Confidential Information without the other's written consent, except in furtherance of this business relationship or as expressly permitted by this contract; or

(b) disclose the other's Confidential Information, except to obtain advice from its professional advisors, legal or financial consultants, or if compelled by law (including disclosure necessary or appropriate in filings with the U.S. Securities Exchange Commission) or generally accepted accounting principles, in which case the party compelled to make the disclosure will use its best efforts to give the other party notice of the requirement so that the disclosure can be contested.

**10.4 Protection of Confidential Information.** Each party will take reasonable precautions to safeguard the other party's Confidential Information. Those precautions will be at least as great as the precautions that the other party takes to protect its own Confidential Information. Each party will disclose the other's Confidential Information to its employees, consultants or subcontractors only on a need-to-know basis and subject to the confidentiality obligations imposed here. When Confidential Information is no longer necessary to perform any obligation under this agreement, each party will return it to the other party or destroy it at the other's request.

**10.5 Cooperation in the Event of Disclosure.** Each party will immediately notify the other party upon discovery of any unauthorized use or disclosure of Confidential Information, and will help the other party regain possession of the Confidential Information and prevent further unauthorized use or disclosure.

**10.6 Right to Use Feedback.** If one party provides suggestions for changes or improvements, or other feedback, to the other party about the other party's products or services, the party receiving the feedback may use it for any purpose without obligation of any kind, except that the receiving party will not disclose the source of feedback without the consent of the party providing it.

## 11. Assumption of Loss; Insurance

**11.1 Assumption of Loss.** Except as otherwise stated in this contract and except for the intentional or grossly negligent acts of you, your employees or agents, we will assume responsibility for all physical loss or damage to our Kiosks, their contents, signs and other personal property.

**11.2 Insurance Coverages.** We will maintain basic commercial general liability insurance coverage in the minimum amount of $1 million per occurrence and $2 million in the aggregate, workers compensation insurance coverage in an amount equal to at least statutory limits, and employers liability coverage in the minimum amount of $1 million per accident and per employee and Automobile Liability (Combined single limit) in the minimum amount of $1,000,000. At your request, we will supply certificates evidencing the insurance coverages specified in this paragraph. All Redbox's insurance is primary and Client's insurance is non-contributory. "Waiver of Subrogation" provisions shall be incorporated into each of the Commercial

150402

General Liability, Automobile Liability, Workers' Compensation & Employer's Liability policies. Thirty (30) day advance written notice of cancellation will be provided to Client by Redbox or their insurers, as commercially available. Client shall be named as an additional insured with respect to the General Commercial Liability Coverage and the Automobile Liability Coverage by Redbox's insurance provider(s), including the actual endorsement executed by Redbox's insurance provider evidencing such insurer's obligation to cover Client. Such additional insured status may be provided under a blanket endorsement, as required by written contract.

**11.3   Claims Cooperation.** You agree to (a) promptly notify Redbox in writing of any claim or loss after any potentially insurable loss is discovered, and (b) cooperate in the investigation and adjustment of any such loss.

## 12.   Indemnification

**12.1   Third-Party Claims.** Each party (the "**Indemnifying party**") will indemnify and defend the other party, its officers, affiliates, employees and agents, against and hold them harmless from, without limitation, any and all liabilities, injury, death, penalties, losses, costs, damages, claims, expenses, attorneys' fees, expenses of litigation, suits, judgments, liens and encumbrances brought, suffered or incurred by the other party or third parties (collectively, "**Claims**") attributable to the respective acts or omissions of the indemnifying party, its officers, affiliates, employees, agents or subcontractors, while engaged in their business or in the performance of their duties under this contract. A party will have no obligations under this paragraph to the extent a Claim relates to or arises from the intentional acts or omissions of the other party, its officers, employees, affiliates, subcontractors, or agents. The obligations of the indemnifying party hereunder arising by reason of a Claim arising while this contract is in effect shall survive any termination of this contact.

**12.2   Landlord Claims.** You will further indemnify and defend Redbox against and hold it harmless from the Claims of any landlord or property manager who claims that we do not have the right to install or operate a Kiosk at a Site.

**12.3   Indemnity Claims.** If any Claim is made by a third party which results in a right to an indemnification hereunder, (a) the party seeking such indemnification (the "Indemnitee") shall give written notice thereof to the party against whom indemnification is sought (the "Indemnitor"), promptly after the Indemnitee has actual knowledge of such Claim, (b) the Indemnitor shall have the right defend or settle such Claim at its expense, with counsel reasonably acceptable to the Indemnitee, provided that it does so diligently and in good faith, and (c) the Indemnitee shall cooperate with the Indemnitor in the defense or settlement of such Claim.

## 13.   Limitations of Liability

**13.1   Limitation of Liability.** IN NO EVENT WILL A PARTY OR ANY OF ITS DIRECTORS, OFFICERS, MEMBERS, EMPLOYEES, AGENTS OR SUBCONTRACTORS BE LIABLE UNDER ANY THEORY OF TORT, CONTRACT, STRICT LIABILITY OR OTHER LEGAL OR EQUITABLE THEORY FOR LOST PROFITS, EXEMPLARY, PUNITIVE, SPECIAL, INCIDENTAL, INDIRECT, CONSEQUENTIAL DAMAGES, LOSS OF USE OF DATA OR THE LIKE, EACH OF WHICH IS HEREBY EXCLUDED BY AGREEMENT OF THE PARTIES REGARDLESS OF WHETHER SUCH DAMAGES WERE FORESEEABLE OR WHETHER EITHER PARTY OR ANY ENTITY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**13.2   Exclusions to the Limitation of Liability.** The limitations of liability in the preceding paragraph will not apply to liabilities arising under the Sections governing "Confidential Information," "Indemnification," or to acts or omissions involving a party's intentional misconduct or fraud.

**13.3   Disclaimer of Warranties.** EXCEPT AS EXPRESSLY STATED IN THIS CONTRACT, NEITHER PARTY MAKES ANY WARRANTY OF ANY KIND TO THE OTHER PARTY, AND DISCLAIMS ALL WARRANTIES, INCLUDING WITHOUT LIMITATION ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

## 14.   Miscellaneous

**14.1      Notices.** Notices, authorizations, and requests in connection with this contract must be sent by personal delivery, certified mail (return receipt requested), or express courier to the addresses listed in this contract. Notices will be treated as delivered on the date shown on the return receipt or on the courier confirmation of delivery. Notices sent to Redbox must be separately copied and sent to the "Legal Department."

**14.2      Governing Law.** The laws of the State of California, excluding the rules of conflicts of law, will govern this contract.

**14.3      Dispute resolution.** When bringing an action to enforce this contract, the parties agree to the jurisdiction of California courts.

**14.4      Reserved.**

**14.5      Independent Contractors.** Redbox acts as an independent contractor, and will be responsible for any and all social security, unemployment, workers' compensation and other withholding taxes for all of its employees. Nothing in this contract will be deemed to establish a partnership, joint venture, employment, agency or other legal relationship other than that of independent contractors.

**14.6      Subcontracting.** We may subcontract certain of our obligations under this contract, including but not limited to, installation, maintenance, supplying, servicing, relocation or removal of our Kiosks. However, we will remain primarily liable to you for any and all such subcontracted services.

**14.7      Assignment.** This contract cannot be assigned without the express written consent of the other, which consent will not be unreasonably withheld, conditioned or



150402

delayed. However, a party may withhold consent if an assignee is in or plans to be in competition with that party. Additionally, a party does not need to obtain the consent of the other party to assign this contract to a parent, subsidiary, or affiliated corporation or to a corporation or entity, which acquires all or, substantially all of the assets or stock of such party, parent, subsidiary or affiliate.

**14.8     Entire Agreement.** This contract and all exhibits contain the entire agreement between the parties with respect to the subject matter of this contract, and supersede any previous understandings or agreements, whether written or oral, in respect of such subject matter. However, if this contract does not include a section governing the confidential nature of information exchanged by the parties, then the terms of any separate confidentiality or nondisclosure agreement signed by the parties will not be superseded by this contract.

**14.9     Interpretation.** If a court holds any provision of this agreement to be illegal, invalid or unenforceable, the rest of the document will remain in effect and this agreement will be amended to give effect to the eliminated provision to the maximum extent possible. The term "may" indicates that something is permissive and optional in a party's discretion, not mandatory or automatic. The language used in this contract has been mutually chosen by the parties to express their intent, and no rule of strict construction will be used against either party.

**14.10     Modification; Waiver.** No amendment, change, waiver or discharge of this contract is valid unless it is set forth in writing and signed by an authorized representative of the party (which in the case of Redbox is a Vice President) against whom the amendment, change, waiver or discharge is sought to be enforced.

**14.11     Third Party Beneficiaries and No Partnership.**

There are no third-party beneficiaries who are intended to benefit in any way from this contract. Client is not and shall not be deemed to be in any way or for any purpose, an agent, employer, principal, partner, joint venturer or member of any joint enterprise with Redbox or any entity comprising Redbox.

**14.12     Force Majeure.** Neither of us will be liable to each other for any loss, damage, delay or failure of performance that is attributable to acts of God, armed conflicts, war, insurrection, acts of terrorism or acts committed in furtherance of terrorism, riots, earthquakes, hurricanes, floods, unusually severe weather, conditions or events of nature that cannot be predicted, civil disturbances, power or communications failures, strikes, fire, the acts of any governmental authority, or other causes beyond a party's reasonable control. A party's performance will be excused during the pendency of any such event, but that party will take all steps reasonable, practical and necessary to effect prompt resumption of its obligations under this contract in full or in part.

**14.13     Survival.** Provisions regarding payment of commissions, limitations of liability, confidentiality, indemnification, obligations on termination or expiration and the other provisions in this Section entitled "Miscellaneous" survive termination or expiration of this contract.

**14.14     Execution.** This contract is effective when it is signed in "pen and ink" by authorized representatives of each party. The contract may be executed in one or more counterparts, each of which will constitute an original agreement, but is not enforceable until delivery and exchange of the executed counterparts. Copies of this contract (including facsimiles) have the same force and effect as a signed original document.

CLIENT

By: _____

Name: Peter J Van Heuden

Title: President & COO

Date: 4-17-15

**REDBOX AUTOMATED RETAIL, LLC**

By: _____

Name: TARYN ARONSON

Title: VP FINANCE

Date: 4-17-15

150402

## EXHIBIT A

## Redbox Physical/Technology Overview

### Physical Specifications



FRONT VIEW

SIDE VIEW

redbox
Approved by Legal
SB

150402

1. **Electricity Connection**
   a. **Interior Kiosk**
      1. Power – 120v. 20 amp **dedicated electric line**
      2. The light box and the header that sits on top of the machine have a total electric load of 1.2 amps. The machine has a total electric load of 4.9 amps for a total connected load of 6.1 amps.
   b. **Exterior Kiosk**
      1. Power: 20 Amp **dedicated** circuit
      2. The light box and the header that sits on top of the machine have a total electric load of 2.1 amps. The machine has a total electric load of 8.5 amps for a total connected load of 10.6 amps.

150402

## EXHIBIT B

## STORE LIST

| Store # | Address | City | State | Zipcode |
|---|---|---|---|---|
| 1 | 9225 Magnolia Ave | Riverside | CA | 92503-3858 |
| 2 | 444 E Base Line St | San Bernardino | CA | 92410-3919 |
| 3 | 151 E Valley Blvd | Colton | CA | 92324-2935 |
| 5 | 8228 Sierra Ave | Fontana | CA | 92335-3527 |
| 6 | 1830 E Route 66 | Glendora | CA | 91740-3868 |
| 8 | 1085 W Highland Ave | San Bernardino | CA | 92405-3207 |
| 12 | 571 E Foothill Blvd | Rialto | CA | 92376-5223 |
| 14 | 5571 Mission Blvd | Riverside | CA | 92509-4503 |
| 15 | 14212 Mulberry Dr | Whittier | CA | 90604-1204 |
| 17 | 9954 Sierra Ave | Fontana | CA | 92335-6721 |
| 18 | 11 E Colton Ave | Redlands | CA | 92374-3323 |
| 19 | 1045 N Garey Ave | Pomona | CA | 91767-3801 |
| 22 | 4680 la Sierra Ave | Riverside | CA | 92505-2763 |
| 23 | 34460 Yucaipa Blvd | Yucaipa | CA | 92399-2412 |
| 24 | 1522 E Highland Ave | San Bernardino | CA | 92404-4614 |
| 25 | 2180 Newport Blvd | Costa Mesa | CA | 92627-1710 |
| 27 | 8522 Westminster Blvd | Westminster | CA | 92683-4605 |
| 28 | 1800 E Collins Ave | Orange | CA | 92867-6517 |
| 29 | 2630 W Edinger Ave | Santa Ana | CA | 92704-3522 |
| 30 | 3430 W Lincoln Ave | Anaheim | CA | 92801-6032 |
| 32 | 8888 Chapman Ave | Garden Grove | CA | 92841-2344 |
| 33 | 2603 Westminster Ave | Santa Ana | CA | 92706-2130 |
| 35 | 1175 Baker St Ste C | Costa Mesa | CA | 92626-4139 |
| 36 | 161 E 40th St | San Bernardino | CA | 92404-1301 |
| 37 | 14171 Red Hill Ave | Tustin | CA | 92780-5833 |
| 38 | 1230 E McFadden Ave | Santa Ana | CA | 92705-4106 |
| 40 | 2360 N Tustin Ave | Santa Ana | CA | 92705-1603 |
| 41 | 14600 Brookhurst St | Westminster | CA | 92683-5752 |
| 42 | 6160 Arlington Ave | Riverside | CA | 92504-1944 |
| 43 | 168 E Base Line Rd | Rialto | CA | 92376-3607 |
| 44 | 2790 Hamner Ave | Norco | CA | 92860-1926 |
| 45 | 919 N Mountain Ave | Upland | CA | 91786-3635 |
| 46 | 210 E Stetson Ave | Hemet | CA | 92543-7176 |
| 48 | 2090 Foothill Blvd | La Verne | CA | 91750-3559 |
| 49 | 1055 W Foothill Blvd | Claremont | CA | 91711-3306 |
| 52 | 4721 Riverside Dr | Chino | CA | 91710-3337 |
| 53 | 8770 Baseline Rd | Rancho Cucamonga | CA | 91701-5503 |
| 54 | 1025 E Amar Rd | West Covina | CA | 91792-1300 |
| 56 | 1425 W Arrow Hwy | San Dimas | CA | 91773-2331 |
| 57 | 1145 E Alosta Ave | Azusa | CA | 91702-2740 |

150402

| | | | | |
|---|---|---|---|---|
| 58 | 3633 Highland Ave | Highland | CA | 92346-2635 |
| 59 | 1105 W Philadelphia St | Ontario | CA | 91762-6147 |
| 60 | 18527 Yorba Linda Blvd | Yorba Linda | CA | 92886-4135 |
| 61 | 1045 Bloomington Ave | Bloomington | CA | 92316-2006 |
| 62 | 1288 Border Ave | Corona | CA | 92882-3801 |
| 65 | 1619 N Mountain Ave | Upland | CA | 91784-1732 |
| 66 | 1741 N Kellogg Dr | Anaheim | CA | 92807-1201 |
| 67 | 19756 Colima Rd | Rowland Heights | CA | 91748-3298 |
| 68 | 1999 River Rd | Norco | CA | 92860-3306 |
| 69 | 9155 Jurupa Rd | Riverside | CA | 92509-3117 |
| 70 | 12523 Alondra Blvd | Norwalk | CA | 90650-7351 |
| 71 | 1155 Calimesa Blvd | Calimesa | CA | 92320-1549 |
| 73 | 9575 Central Ave | Montclair | CA | 91763-2424 |
| 75 | 41849 E Florida Ave | Hemet | CA | 92544 |
| 76 | 3200 W Florida Ave | Hemet | CA | 92545-3622 |
| 77 | 11085 Warner Ave | Fountain Valley | CA | 92708-4007 |
| 78 | 9750 19th St | Rancho Cucamonga | CA | 91737-3538 |
| 79 | 10370 Arlington Ave | Riverside | CA | 92505-1102 |
| 80 | 17050 Van Buren Blvd | Riverside | CA | 92504-5939 |
| 81 | 25630 Barton Rd | Loma Linda | CA | 92354-3110 |
| 82 | 24931 Sunnymead Blvd | Moreno Valley | CA | 92553-3701 |
| 83 | 27160 Sun City Blvd | Sun City | CA | 92586-5505 |
| 84 | 13200 Palm Dr | Desert Hot Springs | CA | 92240-5946 |
| 85 | 1939 E 4th St | Ontario | CA | 91764-2603 |
| 86 | 1661 E 6th St # B | Beaumont | CA | 92223-2509 |
| 87 | 1904 N Rancho Ave | Colton | CA | 92324-1201 |
| 88 | 11070 Limonite Ave | Mira Loma | CA | 91752-2120 |
| 90 | 7770 Limonite Ave | Riverside | CA | 92509-5314 |
| 91 | 42171 Big Bear Blvd | Big Bear Lake | CA | 92315-1518 |
| 92 | 28100 Highway 189 | Lake Arrowhead | CA | 92352-9800 |
| 94 | 81056 Us Highway 111 | Indio | CA | 92201-6664 |
| 95 | 18140 Arrow Blvd | Fontana | CA | 92335-4170 |
| 96 | 57075 29 Palms Hwy | Yucca Valley | CA | 92284-2933 |
| 97 | 15757 Main St | Hesperia | CA | 92345-3410 |
| 98 | 16750 Lakeshore Dr | Lake Elsinore | CA | 92530-4902 |
| 101 | 957 Armory Rd | Barstow | CA | 92311-5461 |
| 102 | 16920 State Highway 14 | Mojave | CA | 93501-1226 |
| 103 | 1193 Magnolia Ave | Corona | CA | 92879-3202 |
| 105 | 71727 29 Palms Hwy | 29 Palms | CA | 92277-2084 |
| 106 | 375 N Azusa Ave | West Covina | CA | 91791-1346 |
| 107 | 977 Kendall Dr | San Bernardino | CA | 92407-4104 |
| 108 | 646 W Holt Blvd | Ontario | CA | 91762-3714 |
| 109 | 800 N China Lake Blvd | Ridgecrest | CA | 93555-3544 |
| 110 | 21602 Bear Valley Rd | Apple Valley | CA | 92308-5507 |
| 111 | 25904 Newport Rd | Menifee | CA | 92584-9130 |

150402

| | | | | |
|---|---|---|---|---|
| 112 | 1536 Barton Rd | Redlands | CA | 92373-5439 |
| 113 | 47 W Nuevo Rd | Perris | CA | 92571-0831 |
| 114 | 2995 Iowa Ave | Riverside | CA | 92507-2810 |
| 115 | 3420 la Sierra Ave | Riverside | CA | 92503-5203 |
| 116 | 4059 Phelan Rd | Phelan | CA | 92371-8912 |
| 117 | 2053 E Washington St | Colton | CA | 92324-4704 |
| 118 | 13760 Bear Valley Rd | Victorville | CA | 92392-8713 |
| 119 | 43396 E Florida Ave | Hemet | CA | 92544-5220 |
| 120 | 58060 29 Palms Hwy | Yucca Valley | CA | 92284-5857 |
| 121 | 1537 S San Jacinto Ave | San Jacinto | CA | 92583-5107 |
| 122 | 14466 Main St | Hesperia | CA | 92345-4664 |
| 123 | 15235 Hook Blvd | Victorville | CA | 92394-2118 |
| 124 | 24336 El Toro Rd | Laguna Hills | CA | 92637-2775 |
| 125 | 11365 Bryant St | Yucaipa | CA | 92399-3133 |
| 126 | 1717 E Vista Chino | Palm Springs | CA | 92262-3569 |
| 127 | 69255 Ramon Rd | Cathedral City | CA | 92234-3346 |
| 128 | 78630 Highway 111 # Us | La Quinta | CA | 92253-2031 |
| 129 | 1040 E Bastanchury Rd | Fullerton | CA | 92835-2786 |
| 130 | 2535 E Avenue S | Palmdale | CA | 93550-6402 |
| 131 | 1131 N State College Blvd | Anaheim | CA | 92806-2704 |
| 132 | 7511 Orangethorpe Ave | Buena Park | CA | 90621-3428 |
| 133 | 851 N Harbor Blvd | La Habra | CA | 90631-3101 |
| 134 | 12800 la Mirada Blvd | La Mirada | CA | 90638-2215 |
| 135 | 1111 E Imperial Hwy | Placentia | CA | 92870-1700 |
| 136 | 333 N Euclid St | Fullerton | CA | 92832-1622 |
| 137 | 11750 Whittier Blvd | Whittier | CA | 90601-3938 |
| 138 | 31813 Temecula Pkwy | Temecula | CA | 92592-5870 |
| 139 | 25050 Hancock Ave | Murrieta | CA | 92562-5932 |
| 140 | 635 N Broadway | Escondido | CA | 92025-1801 |
| 141 | 26900 Sierra Hwy | Newhall | CA | 91321-2253 |
| 142 | 22351 El Toro Rd | Lake Forest | CA | 92630-5053 |
| 143 | 26892 la Paz Rd | Laguna Hills | CA | 92656-3038 |
| 144 | 1840 E Avenue J | Lancaster | CA | 93535-4475 |
| 145 | 37218 47th St E | Palmdale | CA | 93552-4421 |
| 146 | 2845 W Avenue L | Lancaster | CA | 93536-4022 |
| 147 | 10114 Adams Ave | Huntington Beach | CA | 92646-4907 |
| 148 | 7101 Warner Ave | Huntington Beach | CA | 92647-5429 |
| 149 | 616 Camino de Los Mares | San Clemente | CA | 92673-2802 |
| 150 | 3770 Mission Ave | Oceanside | CA | 92058-1417 |
| 151 | 2170 Vista Way | Oceanside | CA | 92054-5600 |
| 152 | 1330 E Mission Rd | San Marcos | CA | 92069-3038 |
| 153 | 8640 Alondra Blvd | Paramount | CA | 90723-5203 |
| 154 | 11300 Firestone Blvd | Norwalk | CA | 90650-2202 |
| 155 | 7814 Firestone Blvd | Downey | CA | 90241-4221 |
| 156 | 780 Sycamore Ave | Vista | CA | 92083-7934 |

150402

| 157 | 1451 N Santa Fe Ave | Vista | CA | 92084-3702 |
|---|---|---|---|---|
| 158 | 1048 N El Camino Real | Encinitas | CA | 92024-1320 |
| 159 | 10051 Valley View St | Cypress | CA | 90630-4601 |
| 160 | 6501 E Spring St | Long Beach | CA | 90808-4023 |
| 161 | 11815 Artesia Blvd | Artesia | CA | 90701-4002 |
| 162 | 13589 Poway Rd | Poway | CA | 92064-4715 |
| 163 | 1674 Main St | Ramona | CA | 92065-5240 |
| 164 | 17220 Lakewood Blvd | Bellflower | CA | 90706-6222 |
| 165 | 3325 E Chapman Ave | Orange | CA | 92869-3810 |
| 166 | 610 S Brookhurst St | Anaheim | CA | 92804-3546 |
| 167 | 9909 Carmel Mountain Rd | San Diego | CA | 92129-2813 |
| 168 | 20677 Amar Rd | Walnut | CA | 91789-5037 |
| 169 | 14250 Chino Hills Pkwy | Chino Hills | CA | 91709-4832 |
| 170 | 2243 Eagle Glen Pkwy | Corona | CA | 92883-0785 |
| 171 | 550 Hidden Valley Pkwy | Corona | CA | 92879-8601 |
| 172 | 25900 Iris Ave | Moreno Valley | CA | 92551-1655 |
| 173 | 1430 Beaumont Ave | Beaumont | CA | 92223-4704 |
| 174 | 36010 Hidden Springs Rd | Wildomar | CA | 92595-7622 |
| 175 | 15222 Summit Ave | Fontana | CA | 92336-0231 |
| 176 | 14168 Us Highway 395 | Adelanto | CA | 92301-6700 |
| 177 | 30712 Benton Rd | Winchester | CA | 92596-8466 |
| 178 | 12253 Apple Valley Rd | Apple Valley | CA | 92308-1701 |
| 179 | 11225 Sierra Ave | Fontana | CA | 92337-7579 |
| 180 | 1271 N State St | San Jacinto | CA | 92583-6315 |
| 181 | 78210 Varner Rd | Palm Desert | CA | 92211-4134 |
| 182 | 28988 Greenspot Rd | Highland | CA | 92346-4423 |
| 183 | 67800 Vista Chino | Cathedral City | CA | 92234-3536 |
| 184 | 6989 Schaefer Ave | Chino | CA | 91710-9126 |
| 185 | 14425 Moreno Beach Dr | Moreno Valley | CA | 92555-5704 |
| 186 | 2687 Gateway Rd | Carlsbad | CA | 92009-1726 |
| 187 | 29995 Canyon Hills Rd | Lake Elsinore | CA | 92532-2576 |
| 188 | 22201 Barton Rd | Grand Terrace | CA | 92313-5004 |
| 190 | 16904 Main St | Hesperia | CA | 92345-6032 |
| 191 | 1775 E Lugonia Ave | Redlands | CA | 92374 |
| 192 | 2841 Mary St | Riverside | CA | 92506-4247 |
| 193 | 11875 Pigeon Pass Rd | Moreno Valley | CA | 92557-6039 |
| 194 | 1023 N Grand Ave | Covina | CA | 91724-2048 |
| 6789 | 32281 Mission Trail | Lake Elsinore | CA | 92530-4524 |