**IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| **CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC**., *et al*,[1] | Case No. 24-11442 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:** July 8, 2026, 2:00 p.m. (ET) |
| | **Objection Deadline:** July 1, 2026, 4:00 p.m. (ET) |

**CELL CONTENT, INC.'S MOTION FOR ORDER COMPELLING ABANDONMENT
AND SURRENDER OF PERSONAL PROPERTY UNDER 11 U.S.C. § 554(b)**

Cell Content, Inc., successor in interest to Crosstown, LLC (together with its agents, as context requires, "**Cell Content**"), by and through its undersigned counsel, respectfully files this *Motion for Order Compelling Abandonment and Surrender of Personal Property under 11 U.S.C. § 554(b)* and states the following in support thereof:

**I.
RELIEF REQUESTED**

1.      By this Motion, Cell Content seeks entry of an Order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"): (a) confirming that the *Motion Picture Distribution Agreement* between Screen Media Ventures, LLC ("**Debtor Screen Media**") and

---

[1]     The Debtors in these chapter 7 cases (collectively, the "**Debtors**"), along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises, LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508).  The Debtors' corporate headquarters and service address is purported to be 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

Crosstown, LLC concerning the motion picture entitled *Greencard Warriors* (the **"Film"**) (as it may have been amended from time to time, the **"Distribution Agreement"**) was deemed rejected by operation of law pursuant to 11 U.S.C. § 365(d)(1) as of August 9, 2024 (the **"Rejection Date"**), and is treated as terminated as of that date; (b) compelling the Chapter 7 Trustee (the **"Trustee"**) to abandon, pursuant to 11 U.S.C. § 554(b), any and all estate interests in the Personal Property (as defined below) related to the Film, including the masters and other deliverables, and all books and records related thereto; (c) directing the Trustee to surrender to Cell Content any such Personal Property in the Trustee's possession, custody, or control; (d) directing the Trustee to provide Cell Content with any information the Trustee has regarding the location of any Personal Property not in the Trustee's possession, custody, or control and to promptly surrender any such Personal Property hereafter obtained; and (e) providing that, to the extent that the Trustee has or obtains access to the Debtors' electronic records regarding the Distribution Agreement and the Film, the Trustee must provide Cell Content with reasonable access to such records and must cooperate in good faith in granting such access.

## II.
## JURISDICTION AND VENUE

2.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.

3.      Venue before this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b).

5.      Pursuant to Rule 9013-1(f) of the *Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware*, Cell Content confirms its consent to the entry of a final order or judgment by this Court with respect to this

2

Motion to the extent it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### III.
### STATUTORY BASIS FOR THE RELIEF REQUESTED

6. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 365(d)(1) (deemed rejection in Chapter 7 cases), and 554(b) (court-ordered abandonment upon motion of a party in interest), as supplemented by Federal Rules of Bankruptcy Procedure 6007 and 9014, and Local Rules 6007-1 and 9014-1.

### IV.
### GENERAL BACKGROUND

**A. The Debtors and the Bankruptcy Cases**

7. On June 28, 2024 and June 29, 2024 (collectively, the "**Petition Date**"), Chicken Soup for the Soul Entertainment Inc. and 21 affiliated debtors (collectively, the "**Debtors**") each filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. On July 10, 2024, the Bankruptcy Court entered an *Order Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code and Granting Related Relief* [Dkt No. 120] (the "**Conversion Order").** The conversion constituted an order for relief under Chapter 7 as of July 10, 2024. The Chapter 7 Trustee was appointed effective as of July 11, 2024.

8. Prior to the Petition Date, the Debtors provided entertainment content to consumers. The Debtors' flagship services were Redbox, Crackle, and Chicken Soup for the Soul. In addition, through debtor Redbox Automated Retail, LLC, the Debtors operated Redbox Free Live TV, a streaming television service; a transaction video-on-demand service; and a network of approximately 24,000 kiosks across the United States for DVD rentals. The Debtors also provided other entertainment-related services, such as distribution-related services outside of their Redbox

live TV, video-on-demand, and DVD rental services. On July 30, 2024, the Trustee filed a letter notifying all employees that the Debtors had ceased operations and all employees had been terminated [Docket No. 192].

**B. The Distribution Agreement and Debtor Screen Media's Default**

9.  Cell Content is a small, independent company owned and operated by independent filmmaker Miriam Kruishoop. Cell Content is the owner of a motion picture film by the name of *Greencard Warriors*, which was written, produced, and directed by Ms. Kruishoop. Prior to the Petition Date, Debtor Screen Media and Cell Content's predecessor-in-interest, Crosstown, LLC, entered into a Distribution Agreement with respect to the Film.[2] Pursuant to the terms of the Distribution Agreement, Debtor Screen Media was granted the rights to distribute the Film.

10.  The distribution territory granted to Debtor Screen Media consists of: "… the United States and all of its territories and possessions (including, without limitation Puerto Rico, Guam, Midway Islands, the U.S. Virgin Islands, American Samoa, Wake Island), and all military and governmental establishments and reservations (regardless of location) operated by the United States; Canada and all of its territories and possessions, and all military and governmental establishments and reservations (regardless of location) operated by Canada, and the nonexclusive throughout the Caribbean."[3] The term of the Distribution Agreement is approximately 15 years, specifically through December 31, 2029.[4]

11.  In consideration of the rights granted to it under the Distribution Agreement, Debtor Screen Media agreed to market the Film and to account for and pay, on a quarterly basis, the

---

[2]  An unexecuted copy of the Distribution Agreement is attached hereto as **Exhibit B**. Cell Content's hard and electronic executed copies of the Distribution Agreement were destroyed as a consequence of the Woolsey Fire in Malibu, California in November 2018.

[3]  *See* Exhibit B, Schedule C.

[4]  *See Id.*

remaining "Gross Receipts" derived from the exploitation of the licensed rights to the Film after deduction of a 27.5% "Distribution Fee" payable to Debtor Screen Media and reimbursement to Debtor Screen Media of any reasonable, third-party "Distribution Expenses" expended with respect to the Film.[5]

12.    In connection with the Distribution Agreement, Cell Content provided one or more of the Debtors with certain tangible and intangible personal property related to the Film, including: (a) the "masters" of the Film, all physical and digital copies of the Film, any assets, equipment, or materials used in connection with the distribution or exploitation of the Film, and any other "deliverables" owned by Cell Content; and (b) books and records related to the Film, including copies of all of the agreements entered into between the Debtors and third party platforms, streaming services, distribution channels, aggregators, and all others with respect to the Film (collectively, the "**Personal Property**").

**C. Debtor Screen Media's Default and Continued Exploitation of the Film**

13.    Prepetition, Debtor Screen Media defaulted under the Distribution Agreement by failing to make timely quarterly payments of Cell Content's share of Gross Receipts. As of the Petition Date, Debtor Screen Media was in arrears on its payment obligations to Cell Content under the Distribution Agreement in the amount of not less than $7,207. Upon information and belief, the Debtors continued to distribute and exploit the Film after the Petition Date without remitting any post-petition amounts owed to Cell Content.

14.    The Film remains widely available on streaming platforms notwithstanding the bankruptcy. As of the date of this Motion, a simple Google search reveals that the Film is available for free, without Cell Content's authorization, on multiple streaming services, including Google

---

[5]    *See* Exhibit B, ¶¶ 8, 10, and 13.

Play, Amazon Prime Video, Roku, Fandango At Home, YouTube, Plex, Pluto TV, and Tubi. Cell Content has recently learned that at least two companies claim to have acquired licenses from Debtor Screen Media prepetition to use or distribute the Film, with rights purportedly extending through approximately 2029—the same end date as the Distribution Agreement. These companies apparently believe their rights are unaffected by the bankruptcy. Cell Content does not yet have copies of those license agreements but has requested them from the Debtors, the Trustee, and the purported counterparties.

15. Upon information and belief, Debtor Screen Media entered into numerous similar sublicense or subdistribution agreements that allowed it to profit from the Film while bypassing its payment obligations to Cell Content. The existence of these undisclosed agreements likely explains the Film's continued presence on streaming platforms. Cell Content has been unable to locate the masters and other deliverables, and it is unclear whether the Trustee is aware of these third-party agreements or the current location of the Personal Property. What is clear is that the Debtors and the Trustee have failed to protect the Film from unauthorized exploitation.

16. In the course of attempting to locate the masters and other deliverables, Cell Content learned that, shortly before the Petition Date, Debtor Screen Media entered into agreements with FilmRise and WestSide Pictures purporting to grant those entities certain rights to distribute the Film. Cell Content has received copies of certain of these agreements, but they are heavily redacted and remain under review. Based on Cell Content's investigation to date, it does not appear that either FilmRise or WestSide Pictures has possession of the masters or other deliverables. Cell Content has further been informed that these entities may have paid a flat fee for their purported rights, although the redacted agreements have not confirmed the consideration paid. Cell Content reserves all rights with respect to these agreements and the parties thereto.

17.     Since at least December 2025, Cell Content has made repeated, good-faith efforts to resolve this matter consensually with the Trustee, including outreach via telephone, email, and a proposed stipulation modeled on the orders already entered for other licensors in these cases. These efforts were aimed at obtaining a consensual order that would address the deemed rejection of the Distribution Agreement and authorize turnover of Cell Content's property, including information regarding the sublicense agreements. Despite these efforts, the Trustee has failed to respond to any of Cell Content's outreach, leaving Cell Content with no option but to file the present Motion.

**D. The Distribution Agreement Was Deemed Rejected by Operation of Law**

18.     Pursuant to Bankruptcy Code section 365(a), "the trustee, subject to the court's approval, may assume or reject any executory contract . . . of the debtor."[6] With respect to executory contracts in a Chapter 7 case, the trustee's decision to assume or reject must ordinarily be made by the date that is 60 days after the order for relief.[7] If an executory contract is not assumed or rejected during this period, it is deemed rejected by operation of law.[8]

19.     The Distribution Agreement is an executory contract that was not assumed by the Trustee within 60 days of the order for relief. The Conversion Order was entered on July 10, 2024, constituting the order for relief under Chapter 7. Accordingly, pursuant to § 365(d)(1) of the Bankruptcy Code, the Distribution Agreement was deemed rejected by operation of law as of August 9, 2024. Consistent with the stipulations and orders already entered in these cases for similarly situated licensors [D.I. 441 and 582], the Distribution Agreement should be treated as terminated as of the Rejection Date.

---

[6]     11 U.S.C. § 365(a).

[7]     11 U.S.C. § 365(d)(1).

[8]     *Id*.

20. To the extent third parties are exploiting the Film pursuant to sublicenses or other agreements with Debtor Screen Media, the rejection and termination of the Distribution Agreement extinguished Debtor Screen Media's authority to grant or maintain such sublicenses. While third-party sublicensees may attempt to invoke the protections of 11 U.S.C. § 365(n), which permits licensees of intellectual property to retain their rights notwithstanding rejection if they make a timely election, the docket in these cases does not reflect any such election having been made by any sublicensee with respect to the Film. Moreover, any such election would require the sublicensee to continue making royalty payments to the licensor—here, Cell Content—and to waive any right of setoff. Absent a valid § 365(n) election, any sublicenses granted by Debtor Screen Media terminated upon rejection of the Distribution Agreement, and continued exploitation of the Film by such parties constitutes infringement of Cell Content's intellectual property rights. Although third party rights are outside the scope of this Motion, Cell Content reserves all rights to challenge the validity, scope, or continued effectiveness of any such agreements and to pursue claims against third parties who continue to exploit the Film without Cell Content's authorization.

### V.
### LEGAL ARGUMENT

**A. Abandonment Should Be Ordered Under 11 U.S.C. § 554(B)**

22. Bankruptcy Code section 554 governs the abandonment of property of the estate. Under Section 554(b), "[o]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."[9] The party seeking abandonment bears the burden of proving by a preponderance of the evidence that the property is either burdensome to

---

[9]   11 U.S.C. § 554.

the estate or of inconsequential value and benefit to the estate.[10] The purpose of this provision is to prevent the trustee from unnecessarily administering property that does not benefit the estate or its creditors, thereby ensuring the efficient administration of the bankruptcy estate. Courts may defer to the trustee's decision not to abandon property if it is shown that the trustee acted in good faith and made a reasonable business judgment.[11]

23.    In the District of Delaware, abandonment is routinely granted by motion in a contested matter in the main case.[12] Notably, in the present Chapter 7 cases, the Court has already approved substantially identical relief-combining confirmation of deemed rejection with abandonment and return of film-related personal property for other similarly situated licensors. *See* D.I. 441 and 582.

**A. The Personal Property Is of Inconsequential Value and Benefit to the Estate**

26.    The Personal Property related to the Film is of inconsequential value and benefit to the estate. The Distribution Agreement has been deemed rejected by operation of law as of August 9, 2024 and is treated as terminated as of that date. As a result, the estate no longer has any right to exploit or distribute the Film. Without a valid distribution agreement, the Personal Property in the Trustee's possession has no independent value to the estate—it is merely the physical and digital means by which the Film was distributed pursuant to a now-terminated contract.

27.    Moreover, the Personal Property is owned by Cell Content as licensor, not by the Debtors. The Distribution Agreement clearly identifies these materials as licensor-provided

---

[10]    *See In re Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot*., 474 U.S. 494, 506 n.9 (1986); *In re K.C. Machine & Tool Co*., 816 F.2d 238, 244 (6th Cir. 1987).

[11]    *See In re Dewsnup*, 908 F.2d 588, 590 (10th Cir. 1990), aff'd, 502 U.S. 410 (1992).

[12]    See Fed. R. Bankr. P. 6007(b) (providing that "[a] party in interest may file a motion requiring the trustee or debtor in possession to abandon property of the estate"); *In re SCR Corp*., Case No. 05-14337 (KG) (Bankr. D. Del.); *In re DG Liquidation Inc.*, Case No. 21-10619 (JTD) (Bankr. D. Del.).

property. The estate's interest, if any, in such materials is possessory only, not proprietary. Abandonment of this possessory interest will not diminish the estate because the estate holds no beneficial ownership. Abandonment does not transfer ownership or create new rights—it simply removes the estate's hand from the property. Title remains where nonbankruptcy law places it. Accordingly, the Personal Property is of inconsequential value and benefit to the estate within the meaning of § 554(b). Continued administration of the Personal Property provides no benefit to creditors and only delays Cell Content's ability to regain possession of its own property. Accordingly, abandonment is warranted under § 554(b).

**B. The Personal Property Is Burdensome to the Estate**

28.     In addition, the Personal Property is burdensome to the estate within the meaning of § 554(b). The Debtors have ceased operations, and the Trustee is not operating any business that would utilize the Film or the related Personal Property. Continued retention of these materials serves no administrative purpose and exposes the estate to potential liability and ongoing litigation costs.

29.     The Trustee's failure to engage with Cell Content's good-faith settlement efforts has directly caused unnecessary legal fees and costs to be incurred by both Cell Content and the Debtors' estates. The filing of this Motion is itself a product of the Trustee's non-responsiveness and continued retention of the Personal Property. By continuing to exercise control over non-debtor property without resolving this dispute, the estate remains exposed to ongoing and accruing litigation costs that will persist, and likely increase. Other licensors in these cases have obtained consensual orders addressing substantially similar issues, and there is no apparent justification for the Trustee's refusal to extend the same treatment to Cell Content. Prompt resolution through a the proposed Order granting this Motion will reduce burdens on the estate.

30.     Furthermore, to the extent the Film continues to be exploited through streaming platforms without proper authorization or accounting, the estate's continued possession of the Personal Property creates ambiguity regarding rights and responsibilities that serves neither the estate nor Cell Content. Abandonment will clarify that the estate has no further interest in the property and will allow Cell Content, as the rightful owner, to reassert control over its intellectual property and associated materials.

31.     The purpose of abandonment under § 554 is to protect the estate from the costs and burdens of administering property that does not provide a meaningful benefit to creditors. This principle ensures the efficient administration of the bankruptcy estate and equitable distribution to creditors.

## C. Abandonment Does Not Prejudice the Estate or Creditors

31.     Abandonment of the Personal Property will not prejudice the estate or its creditors. It is well established that abandonment does not transfer ownership or create new rights—it simply removes the estate's hand from the property.[13] Title to the property remains where non-bankruptcy law places it. Here, the Personal Property was provided by Cell Content and identified as licensor-owned in the parties' agreement. The estate's abandonment of any interest it may have had in those materials, coupled with an order to surrender any such materials in the Trustee's possession, restores Cell Content's practical control without adjudicating new ownership.

32.     Because the Distribution Agreement has been deemed rejected and is treated as terminated, the estate has no continuing right to exploit the Film or benefit from the Personal Property. Rejection by operation of law extinguished the estate's ability to assume and perform under the executory distribution agreement and, with it, the debtor-distributor's license rights going

---

[13]     *See In re K.C. Machine & Tool Co.*, 816 F.2d at 246.

forward. The Debtors are in Chapter 7 and have ceased operations. The Trustee has not sought authority to operate their businesses or to assume the Distribution Agreement. Under these circumstances, there is no reasonable expectation that the estate could derive any value from continued possession of the Personal Property. Creditors will not be harmed by abandonment because the property provides no distributable value.

33.     Conversely, Cell Content—as the owner of the Film and the Personal Property—is significantly prejudiced by the estate's continued possession. The Film appears to remain freely available on various streaming platforms, yet Cell Content is receiving no accounting or payment. Cell Content is unable to take steps to protect its intellectual property, pursue new distribution arrangements, or prevent unauthorized exploitation while the estate retains possession. Abandonment and surrender will allow Cell Content to reassert control and mitigate its ongoing damages. In short, rejection ends the estate's license to exploit; abandonment and surrender clear the estate's hand from licensor-owned materials and put them back in licensor's possession.

34.     For the foregoing reasons, Cell Content has satisfied its burden under Bankruptcy Code section 554(b) to demonstrate that the Personal Property is either burdensome to the estate or of inconsequential value and benefit to the estate. The Court should order the Trustee to abandon any estate interests in the Personal Property and to surrender any such property in the Trustee's possession, custody, or control.

**V. Surrender of Personal Property Should Be Ordered**

35.     Upon abandonment, the Personal Property will no longer be property of the estate, and the Trustee will be divested of any interest therein. Accordingly, the Trustee should be directed to surrender to Cell Content any Personal Property in the Trustee's possession, custody, or control. This relief is consistent with the orders already entered in these cases for other similarly situated licensors, which have directed the trustee to abandon and return film materials and related property.

36.     Cell Content further requests that the Trustee be directed to: (i) provide Cell Content with any information the Trustee has regarding the location of any Personal Property related to the Film that is not in the Trustee's possession, custody, or control; (ii) promptly surrender to Cell Content any Personal Property hereafter obtained by the Trustee; (iii) to the extent the Trustee has or obtains access to the Debtors' electronic records regarding the Film, provide Cell Content with reasonable access to such records and cooperate in good faith in granting such access; and (iv) provide Cell Content with copies of all sublicense, subdistribution, licensing, or other agreements between the Debtors and any third parties concerning the Film, to the extent such agreements are in the Trustee's possession, custody, or control, or become available to the Trustee. These provisions mirror the relief granted to other licensors in these cases and are necessary to ensure Cell Content can fully regain control of its property.

## VI.
## NOTICE

39.     Notice of this Motion has been provided to the following parties or their counsel of record: (i) counsel to the Debtors; (ii) the Office of the United States Trustee; (iii) the Chapter 7 Trustee and his counsel; and (iv) all parties that have filed in these cases a request for service under Bankruptcy Rule 2002. As required by Federal Rule of Bankruptcy Procedure 6007(b), notice has been given to creditors and other parties in interest. Cell Content submits that, in light of the nature of the relief requested, no other or further notice need be given.

## VIII.
## CONCLUSION

**WHEREFORE**, Cell Content respectfully requests entry of an order, substantially in the form of the Proposed Order and granting such other relief as is reasonable and necessary.

Dated: June 18, 2026

PIERSON FERDINAND LLP

*/s/ Mette H. Kurth*

Mette H. Kurth (DE Bar No. 6491)
3411 Silverside Road
Baynard Building, Suite 104-13
Wilmington, DE 19810
Email: mette.kurth@pierferd.com
Telephone: (302) 907-9262
*Counsel for Cell Content, Inc.*