## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC., *et al.*,[1] | Case No. 24-11442 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Re: 917** |

### NOTICE OF FILING OF TOLLING AGREEMENTS

**PLEASE TAKE NOTICE** that George L. Miller, Chapter 7 Trustee (the "Trustee"), for

the estates of the above-captioned Debtors (the "Debtors") by and through undersigned counsel,

hereby files this Notice of Filing of Tolling Agreements entered into by the Trustee and the

parties attached as **Exhibit A**.

Dated: June 26, 2026
Wilmington, Delaware

**CIARDI, CIARDI & ASTIN**
*/s/ John D. McLaughlin, Jr.*
John D. McLaughlin, Jr. (No. 4123)
Ciardi Ciardi & Astin
1204 N. King Street
Wilmington, DE 19801
Tel:  ( 484) 437-2676
Email: jmclaughlin@ciardilaw.com

-and-

Albert A. Ciardi, III, Esquire
Sonali N. Doshi, Esquire
1905 Spruce Street
Philadelphia, PA 19103
Tel: (215) 557-3550
Fax: (215) 557-3551
Email: aciardi@ciardilaw.com
          sdoshi@ciardilaw.com

*Counsel for Chapter 7 Trustee*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300), Chicken Soup for the Soul Entertainment Inc. (0811), Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC, Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312), Halcyon Television, LLC (9873), Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094), Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754), Redbox Automated Retail, LLC (0436), Redbox Entertainment, LLC (7085), Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123), Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466), and TOFG LLC (0508) (collectively referred to as the "Debtors"). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

# EXHIBIT A

(Tolling Agreements)

## Tolling Agreement

This tolling agreement (this "Tolling Agreement") is made on the 22nd day of June, 2026 between Plaintiff George L. Miller, ("Trustee") the Chapter 7 Trustee for the bankruptcy estate of Chicken Soup for the Soul Entertainment, Inc., *et. al.* (the "Debtor") by and through his attorneys, Ciardi Ciardi & Astin, and ReedSmith LLP ("Defendant"). Defendant and the Trustee (the "Parties") stipulate and agree as follows:

WHEREAS, on June 28, 2024, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

WHEREAS, on July 11, 2024, the Court entered an *Order Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code and Granting Related Relief* (the "Chapter 7 Cases") [ECF No. 120].

WHEREAS, on July 11, 2024, George L. Miller was appointed as the Chapter 7 Trustee of the Debtors' estates. The Trustee is the Plaintiff in this action and brings this action on behalf of the Debtors' estates [ECF No. 130].

WHEREAS, the Trustee alleges that Defendant was, at all relevant times, a vendor or creditor that provided goods and/or services to or for the Debtor prior to the Petition Date.

WHEREAS, prior to the Petition Date, the Trustee alleges that Defendant and the Debtor were engaged in one or more business transactions pursuant to the terms of agreements entered in connection therewith, which are evidenced by one or more contracts, purchase orders, invoices, communications, and other documents (collectively, the "Agreements").

WHEREAS, the Trustee alleges that, the Debor made one or more transfers of an interest of the Debtor's property through payments aggregating not less than $935,027.20 to Defendant during the Preference Period (the "Transfer" or "Transfers"). The Trustee further alleges that the Open A/P Report also reveals that Defendant received payment(s) on account of debts related to the Debtor's operation of its business (the "Preference Period Payment") within ninety (90) days prior to the filing of the Debtor's bankruptcy petitions, and that the Transfers were for goods or services provided by Defendant and made pursuant to invoices or statements submitted by Defendant reflecting such goods or services previously provided, and, as a result, the Trustee alleges that the said Transfers are or may be avoidable.

WHEREAS, the Trustee is in the process of marshaling assets for the benefits of all creditors and is evaluating potential claims to avoid and recover alleged preferential transfers pursuant to 11 U.S.C. §§ 547 and 550 (the "Preference Claims") in connection with the above-captioned bankruptcy case.

WHEREAS, on June 10, 2026, the Trustee sent a demand letter to Defendant (the "Demand Letter"), providing details of the alleged Preference Period Payments and requesting that Defendant

review its records to determine whether they agree with the information in the letter. The Demand Letter purported to detail each of the Transfers by providing transferor, alleged transferee, transfer date, check number (where applicable), transfer type (i.e. wire, check, etc.), and transfer amount.

WHEREAS, the Trustee indicated in the Demand Letter that potential factual and statutory defenses may be available to Defendant pursuant to section 547(c) of the Bankruptcy Code. The Trustee requested that either Defendant voluntarily repay the amount of the Preference Period Payment or provide evidence to support any defenses to the Trustee by June 22, 2026, so the Trustee can review same prior to filing the Complaint ("Complaint").

WHEREAS, in response to the Demand Letter, Defendant requested additional time to investigate the validity of the asserted claims, collect relevant documentation, assess potential defenses, and engage in settlement discussions with the Trustee; and

WHEREAS, unless tolled or otherwise extended, the statute of limitations for the Trustee to commence an action under section 547 of the Bankruptcy Code will expire on June 28, 2026.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises set forth herein, the Parties agree as follows:

1. The parties agree that the statute of limitations set forth in 11 U.S.C. § 546(a), or any other applicable time-based defense or limitations period relating to the Trustee's ability to commence an action to recover the Preference Claims, including but not limited to applicable statutes of limitation, repose, and laches, are hereby tolled and suspended as of the Effective Date of this Agreement. This tolling shall continue through and including August 31, 2026 (the "Tolling Period").

2. The Parties further agree that the entire Tolling Period shall be excluded from any calculation of the statute of limitations, similar time-based defenses, or limitations period applicable to the Preference Claims and that no party shall assert that any claim is time-barred, waived, or prejudiced by the passage of time, and the tolling shall be deemed continuous and uninterrupted.

3. During the Tolling Period, the Trustee may not file a complaint or commence a formal proceeding to recover any alleged Preferential Transfers in the Bankruptcy Court.

4. The Trustee may commence an action following the expiration of the Tolling Period and through and including seven (7) days after the expiration of the Tolling Period if Defendant does not voluntarily repay the amount of the Preference Period Payment or does not inform the Trustee of the basis of Defendant's disagreement and/or details of any defenses and/or the Parties have not otherwise resolved the alleged Preference Claims. If the Trustee files an action against the Defendant during the seven (7) days following the expiration of the Tolling Period, the Defendant shall not assert any defense based on the expiration of the statute of limitations that would not have been available as of the Effective Date of this Agreement.

5. Each party represents and warrants that it has full power and authority to enter into this Agreement, that this Agreement constitutes a valid and binding obligation enforceable against in accordance with its terms, and that it is entering into this Agreement voluntarily, without duress, or undue influence.

6.    The Parties irrevocably acknowledge and agree that they are now forever estopped and precluded from contesting or denying the validity and enforceability of this Agreement. This Agreement shall be binding on the Parties hereto and their respective successors and assigns, together with their respective past, present and future officers, directors, employees, agents, representatives, attorneys, controlling persons, shareholders, partners, owners and affiliates.

7.    The Parties acknowledge and agree that the conditions, validity, and enforceability of any term or provision of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to its conflicts of law principles. The Parties consent to the exclusive jurisdiction and venue of the Bankruptcy Court for the District of Delaware with respect to any disputes arising out of or relating to this Agreement.

8.    The Parties each represent that they have read this Agreement in its entirety, know and understand its contents, have had the opportunity to consult with legal counsel of their choice, and understand and agree to all its terms, conditions, and meanings freely, knowingly, and willingly.

9.    This Agreement constitutes the entire understanding between the Parties relating to the subject matter hereof and supersedes all prior agreements, understandings, negotiations, and discussions, whether oral or written.

10.    This Agreement may not be enlarged, amended, modified, supplemented, or extended except by a written agreement signed by both Parties.

11.    This Agreement does not impact, change, or modify any other rights or remedies the Parties have against one another.

12.    Nothing contained in this Agreement shall be deemed or construed as an admission of liability or wrongdoing by any party, nor as a waiver of any rights, claims, or defenses, except as expressly set forth herein.

13.    Except as expressly provided herein, nothing in this Agreement shall affect any defense or response thereto that may be available to any party, and this Agreement shall not be deemed to revive any claim that is or was barred as of the date of this Agreement.

14.    For the avoidance of any doubt, nothing herein shall prejudice, limit, or otherwise affect the rights of any of the Parties to seek or oppose any further extension or tolling of any statute of limitations beyond the extended date, and the rights of the Parties with respect thereto are expressly reserved.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

By: /s/ Sonali N. Doshi, Esq.

Counsel to Plaintiff

June 22, 2026

Date

By:

Authorized Counsel to Defendant

6/24/25

Date

## Tolling Agreement

This tolling agreement (this "Agreement") is made on June 22, 2026 (the "Effective Date") between Plaintiff George L. Miller, ("Trustee") the Chapter 7 Trustee for the bankruptcy estate of Chicken Soup for the Soul Entertainment, Inc., *et. al.* (the "Debtor") by and through his attorneys, Ciardi Ciardi & Astin, and Deloitte Tax LLP ("Potential Defendant"). Potential Defendant and the Trustee (each a "Party" and together the "Parties") stipulate and agree as follows:

WHEREAS, on June 28, 2024, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

WHEREAS, on July 11, 2024, the Court entered an *Order Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code and Granting Related Relief* (the "Chapter 7 Cases") [ECF No. 120].

WHEREAS, on July 11, 2024, George L. Miller was appointed as the Chapter 7 Trustee of the Debtors' estates.

WHEREAS, the Trustee alleges that Potential Defendant was, at all relevant times, a professional services provider that provided goods and/or services to or for the Debtor prior to the Petition Date.

WHEREAS, prior to the Petition Date, the Trustee alleges that Potential Defendant and the Debtor were engaged in one or more business transactions pursuant to the terms of agreements entered in connection therewith, which are evidenced by one or more contracts, purchase orders, invoices, communications, and other documents.

WHEREAS, the Trustee alleges that the Debtor made one or more transfers of an interest of the Debtor's property through payments aggregating not less than $79,173.16 to Potential Defendant during the Preference Period (as defined below) (the "Transfer" or "Transfers"). The Trustee further alleges that the Debtor's Open A/P Report also reveals that Potential Defendant received the Transfer(s) on account of debts related to the Debtor's operation of its business within ninety (90) days prior to the filing of the Debtor's bankruptcy petition (the "Preference Period"), and that the Transfers were for goods or services provided by Potential Defendant and made pursuant to invoices or statements submitted by Potential Defendant reflecting such goods or services previously provided, and, as a result, the Trustee alleges that the said Transfers are or may be avoidable under chapter 5 of the Bankruptcy Code.

WHEREAS, the Trustee is in the process of marshaling assets for the benefits of all creditors and is evaluating potential claims to avoid and recover alleged preferential transfers pursuant to 11 U.S.C. §§ 547 and 550 in connection with the Chapter 7 Cases.

WHEREAS, on June 9, 2026, the Trustee sent a demand letter to Potential Defendant (the "Demand Letter"), providing details of the alleged preferential Transfers and requesting that Potential

Defendant review its records to determine whether they agree with the information in the Demand Letter. The Demand Letter purported to provide certain details regarding each of the Transfers.

WHEREAS, the Trustee indicated in the Demand Letter that potential factual and statutory defenses may be available to Potential Defendant pursuant to section 547(c) of the Bankruptcy Code. The Trustee requested that either Potential Defendant voluntarily repay the amount of the Transfers or provide evidence to support any defenses to the Trustee by June 22, 2026, so the Trustee can review same prior to filing the Complaint ("Complaint").

WHEREAS, in response to the Demand Letter, Potential Defendant requested additional time to investigate the validity of the asserted claims, collect relevant documentation, assess potential defenses, and engage in settlement discussions with the Trustee;

WHEREAS, the Parties, without admitting any liability, wrongdoing, or responsibility, or lack thereof, wish to avoid the cost, expense and disruption of unnecessary litigation and believe that it would be mutually beneficial to delay the commencement of any action or proceeding relating to the Transfers to allow for, among other things, an opportunity for further analysis and settlement; and

WHEREAS, unless tolled or otherwise extended, the statute of limitations for the Trustee to commence an action under section 547 of the Bankruptcy Code will expire on June 28, 2026.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises set forth herein, the Parties agree as follows:

1. The Parties agree that the statute of limitations set forth in 11 U.S.C. § 546(a), or any other applicable time-based defense or limitations period relating to the Trustee's ability to commence an action to recover the Transfers under section 547 of the Bankruptcy, including but not limited to applicable statutes of limitation, repose, and laches, are hereby tolled and suspended as of the Effective Date of this Agreement. This tolling shall continue through and including August 30, 2026 (the "Tolling Period").

2. The Parties further agree that the entire Tolling Period shall be excluded from any calculation of the statute of limitations, similar time-based defenses, or limitations period applicable to the Transfers and that no party shall assert that any claim is time-barred, waived, or prejudiced by the passage of time, and the tolling shall be deemed continuous and uninterrupted.

3. In consideration of the Potential Defendant's agreement to toll the statutes or periods of limitation (as set forth in paragraph 1 of this Agreement), the Trustee agrees not to commence, file or initiate any adversary proceeding or other action seeking to avoid, recover or otherwise pursue the Transfers against the Potential Defendant prior to August 30, 2026.

4. The Trustee may file an action following the expiration of the Tolling Period, and Potential Defendant shall not assert any defense based on the expiration of the statute of limitations that would not have been available as of the Effective Date of this Agreement. Nothing contained in this Agreement shall be deemed to renew, revive, or resurrect any claim on behalf of Trustee which, on the

Effective Date of this Tolling Agreement, was already time-barred by statute, court rule, contract or case law.

5. Each Party represents and warrants that it has full power and authority to enter into this Agreement, that this Agreement constitutes a valid and binding obligation enforceable against in accordance with its terms, and that it is entering into this Agreement voluntarily, without duress, or undue influence.

6. The Parties irrevocably acknowledge and agree that they are now forever estopped and precluded from contesting or denying the validity and enforceability of this Agreement. This Agreement shall be binding on the Parties hereto and their respective successors and assigns, together with their respective past, present and future officers, directors, employees, agents, representatives, attorneys, controlling persons, shareholders, partners, owners and affiliates.

7. The Parties acknowledge and agree that the conditions, validity, and enforceability of any term or provision of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to its conflicts of law principles. The Parties consent to the exclusive jurisdiction and venue of the Bankruptcy Court for the District of Delaware with respect to any disputes arising out of or relating to this Agreement.

8. The Parties each represent that they have read this Agreement in its entirety, know and understand its contents, have had the opportunity to consult with legal counsel of their choice, and understand and agree to all its terms, conditions, and meanings freely, knowingly, and willingly.

9. This Agreement constitutes the entire understanding between the Parties relating to the subject matter hereof and supersedes all prior agreements, understandings, negotiations, and discussions, whether oral or written.

10. This Agreement may not be enlarged, amended, modified, supplemented, or extended except by a written agreement signed by both Parties.

11. This Agreement does not impact, change, or modify any other rights or remedies the Parties have against one another.

12. Nothing contained in this Agreement shall be deemed or construed as an admission of liability or wrongdoing by any Party, nor as a waiver of any rights, claims, or defenses, except as expressly set forth herein.

13. Except as expressly provided herein, nothing in this Agreement shall affect any defense or response thereto that may be available to any Party, and this Agreement shall not be deemed to revive any claim that is or was barred as of the date of this Agreement. Except as otherwise expressly provided herein, the Parties reserve all rights and defenses they may have under any applicable law, to prosecute or defend the matter described herein.

14. For the avoidance of any doubt, nothing herein shall prejudice, limit, or otherwise affect the rights of any of the Parties to seek or oppose any further extension or tolling of any statute of limitations beyond the extended date, and the rights of the Parties with respect thereto are expressly reserved.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the Effective Date.


By: */s/ **Sonali N. Doshi, Esq.**
Counsel to Plaintiff

June 22, 2026
Date


By: */s/ Meryl Rothchild, Esq.*
Counsel to Potential Defendant,
Deloitte Tax LLP


June 22, 2026
Date

## Tolling Agreement

This tolling agreement (this "Tolling Agreement") is made on the 19th day of June, 2026 between Plaintiff George L. Miller, ("Trustee") the Chapter 7 Trustee for the bankruptcy estate of Chicken Soup for the Soul Entertainment, Inc., *et. al.* (the "Debtor") by and through his attorneys, Ciardi Ciardi & Astin, and FIRST Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A. ("Defendant"). Defendant and the Trustee (the "Parties") stipulate and agree as follows:

WHEREAS, on June 28, 2024, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

WHEREAS, on July 11, 2024, the Court entered an *Order Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code and Granting Related Relief* (the "Chapter 7 Cases") [ECF No. 120].

WHEREAS, on July 11, 2024, George L. Miller was appointed as the Chapter 7 Trustee of the Debtors' estates. The Trustee is the Plaintiff in this action and brings this action on behalf of the Debtors' estates [ECF No. 130].

WHEREAS, the Trustee alleges that Defendant was, at all relevant times, a creditor that provided goods and/or services to or for the Debtor prior to the Petition Date.

WHEREAS, prior to the Petition Date, the Trustee alleges that Defendant and the Debtor were engaged in one or more business transactions pursuant to the terms of agreements entered in connection therewith, which are evidenced by one or more contracts, purchase orders, invoices, communications, and/or other documents.

WHEREAS, the Trustee alleges that, the Debtor made one or more transfers of an interest of the Debtor's property through payments aggregating not less than $195,912.03 to Defendant during the Preference Period (the "Transfer" or "Transfers"). The Trustee further alleges that the Open A/P Report also reveals that Defendant received payment(s) on account of debts related to the Debtor's operation of its business (the "Preference Period Payment") within ninety (90) days prior to the filing of the Debtor's bankruptcy petitions, and that the Transfers were for goods or services provided by Defendant and made pursuant to invoices or statements submitted by Defendant reflecting such goods or services previously provided, and, as a result, the Trustee alleges that the said Transfers are or may be avoidable.

WHEREAS, the Trustee is in the process of marshaling assets for the benefits of all creditors and is evaluating potential claims to avoid and recover alleged preferential transfers pursuant to 11 U.S.C. §§ 547 and 550 (the "Preference Claims") in connection with the above-captioned bankruptcy case.

WHEREAS, on June 9, 2026, the Trustee sent a demand letter to Defendant (the "Demand Letter"), providing details of the alleged Preference Period Payments and requested that Defendant review its records to determine whether they agree with the information in the letter. The Demand Letter purported to detail the alleged Transfer by providing transferor, alleged transferee, transfer date, check number (where applicable), transfer type (i.e. wire, check, etc.), and transfer amount.

WHEREAS, the Trustee indicated in the Demand Letter that potential factual and statutory defenses may be available to Defendant pursuant to section 547(c) of the Bankruptcy Code. The Trustee requested that either Defendant voluntarily repay the amount of the Preference Period Payment or provide evidence to support any defenses to the Trustee by June 19, 2026, so the Trustee can review same prior to filing a Complaint.

WHEREAS, in response to the Demand Letter, Defendant requested additional time to investigate the validity of the asserted claims, collect relevant documentation, assess potential defenses, and engage in settlement discussions with the Trustee; and

WHEREAS, unless tolled or otherwise extended, the statute of limitations for the Trustee to commence an action under section 547 of the Bankruptcy Code will expire on June 28, 2026.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises set forth herein, the Parties agree as follows:

1.      The parties agree that the statute of limitations set forth in 11 U.S.C. § 546(a), or any other applicable time-based defense or limitations period relating to the Trustee's ability to commence an action to recover the Preference Claims, including but not limited to applicable statutes of limitation, repose, and laches, are hereby tolled and suspended as of the Effective Date of this Agreement. This tolling shall continue through and including August 30, 2026 (the "Tolling Period").

2.      The Parties further agree that the entire Tolling Period shall be excluded from any calculation of the statute of limitations, similar time-based defenses, or limitations period applicable to the Preference Claims and that no party shall assert that any claim is time-barred, waived, or prejudiced by the passage of time, and the tolling shall be deemed continuous and uninterrupted.

3.      The Trustee may commence an action following the expiration of the Tolling Period if Defendant does not voluntarily repay the amount of the Preference Period Payment or does not inform the Trustee of the basis of Defendant's disagreement and/or details of any defenses. The Trustee may file an action thereafter, and Defendant shall not assert any defense based on the expiration of the statute of limitations that would not have been available as of the Effective Date of this Agreement.

4.      Each party represents and warrants that it has full power and authority to enter into this Agreement, that this Agreement constitutes a valid and binding obligation enforceable against in accordance with its terms, and that it is entering into this Agreement voluntarily, without duress, or undue influence.

5.      The Parties irrevocably acknowledge and agree that they are now forever estopped and precluded from contesting or denying the validity and enforceability of this Agreement. This Agreement shall be binding on the Parties hereto and their respective successors and assigns, together

with their respective past, present and future officers, directors, employees, agents, representatives, attorneys, controlling persons, shareholders, partners, owners and affiliates.

6.      The Parties acknowledge and agree that the conditions, validity, and enforceability of any term or provision of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to its conflicts of law principles. The Parties consent to the exclusive jurisdiction and venue of the Bankruptcy Court for the District of Delaware with respect to any disputes arising out of or relating to this Agreement.

7.      The Parties each represent that they have read this Agreement in its entirety, know and understand its contents, have had the opportunity to consult with legal counsel of their choice, and understand and agree to all its terms, conditions, and meanings freely, knowingly, and willingly.

8.      This Agreement constitutes the entire understanding between the Parties relating to the subject matter hereof and supersedes all prior agreements, understandings, negotiations, and discussions, whether oral or written.

9.      This Agreement may not be enlarged, amended, modified, supplemented, or extended except by a written agreement signed by both Parties.

10.     This Agreement does not impact, change, or modify any other rights or remedies the Parties have against one another.

11.     Nothing contained in this Agreement shall be deemed or construed as an admission of liability or wrongdoing by any party, nor as a waiver of any rights, claims, or defenses, except as expressly set forth herein.

12.     Except as expressly provided herein, nothing in this Agreement shall affect any defense or response thereto that may be available to any party, and this Agreement shall not be deemed to revive any claim that is or was barred as of the date of this Agreement.

13.     For the avoidance of any doubt, nothing herein shall prejudice, limit, or otherwise affect the rights of any of the Parties to seek or oppose any further extension or tolling of any statute of limitations beyond the extended date, and the rights of the Parties with respect thereto are expressly reserved.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

By: Sonali N. Doshi, Esq.
Counsel to Plaintiff

June 22, 2026
Date

By: /s/ *Meredith Osika*
Authorized Counsel to Defendant

6/22/26
Date

## Tolling Agreement

This tolling agreement (this "Tolling Agreement") is made on the 17th day of June, 2026 between Plaintiff George L. Miller, ("Trustee") the chapter 7 Trustee for the bankruptcy estate of Chicken Soup for the Soul Entertainment, Inc., *et. al.* (the "Debtor") by and through his attorneys, Ciardi Ciardi & Astin, and Lebowitz Law Office, LLC. ("Defendant"). Defendant and the Trustee (the "Parties") stipulate and agree as follows:

WHEREAS, on June 28, 2024, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

WHEREAS, on July 11, 2024, the Court entered an *Order Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code and Granting Related Relief* (the "Chapter 7 Cases") [ECF No. 120].

WHEREAS, on July 11, 2024, George L. Miller was appointed as the Chapter 7 Trustee of the Debtors' estates. The Trustee is the Plaintiff in this action and brings this action on behalf of the Debtors' estates [ECF No. 130].

WHEREAS, the Trustee alleges that Defendant was, at all relevant times, a vendor or creditor that provided goods and/or services to or for the Debtor prior to the Petition Date.

WHEREAS, prior to the Petition Date, the Trustee alleges that Defendant and the Debtor were engaged in one or more business transactions pursuant to the terms of agreements entered in connection therewith, which are evidenced by one or more contracts, purchase orders, invoices, communications, and other documents (collectively, the "Agreements").

WHEREAS, the Trustee alleges that, the Debor made one or more transfers of an interest of the Debtor's property through payments aggregating not less than $60,000.00 to Defendant during the Preference Period (the "Transfer" or "Transfers"). The Trustee further alleges that the Open A/P Report also reveals that Defendant received payment(s) on account of debts related to the Debtor's operation of its business (the "Preference Period Payment") within ninety (90) days prior to the filing of the Debtor's bankruptcy petitions, and that the Transfers were for goods or services provided by Defendant and made pursuant to invoices or statements submitted by Defendant reflecting such goods or services previously provided, and, as a result, the Trustee alleges that the said Transfers are or may be avoidable.

WHEREAS, the Trustee is in the process of marshaling assets for the benefits of all creditors and is evaluating potential claims to avoid and recover alleged preferential transfers pursuant to 11 U.S.C. §§ 547 and 550 (the "Preference Claims") in connection with the above-captioned bankruptcy case.

WHEREAS, on June 11, 2026, the Trustee sent a demand letter to Defendant (the "Demand Letter"), providing details of the alleged Preference Period Payments and requesting that Defendant

review its records to determine whether they agree with the information in the letter. The Demand Letter purported to detail each of the Transfers by providing transferor, alleged transferee, transfer date, check number (where applicable), transfer type (i.e. wire, check, etc.), and transfer amount.

WHEREAS, the Trustee indicated in the Demand Letter that potential factual and statutory defenses may be available to Defendant pursuant to section 547(c) of the Bankruptcy Code. The Trustee requested that either Defendant voluntarily repay the amount of the Preference Period Payment or provide evidence to support any defenses to the Trustee by June 22, 2026, so the Trustee can review same prior to filing the Complaint ("Complaint").

WHEREAS, in response to the Demand Letter, Defendant disputes the allegations and requested additional time to investigate the validity of the asserted claims, collect relevant documentation, assess potential defenses, and engage in settlement discussions with the Trustee; and

WHEREAS, unless tolled or otherwise extended, the statute of limitations for the Trustee to commence an action under section 547 of the Bankruptcy Code will expire on June 28, 2026.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises set forth herein, the Parties agree as follows:

1. The parties agree that the statute of limitations set forth in 11 U.S.C. § 546(a), or any other applicable time-based defense or limitations period relating to the Trustee's ability to commence an action to recover the Preference Claims, including but not limited to applicable statutes of limitation, repose, and laches, are hereby tolled and suspended as of the Effective Date of this Agreement. This tolling shall continue through and including August 30, 2026 (the "Tolling Period").

2. The Parties further agree that the entire Tolling Period shall be excluded from any calculation of the statute of limitations, similar time-based defenses, or limitations period applicable to the Preference Claims and that no party shall assert that any claim is time-barred, waived, or prejudiced by the passage of time, and the tolling shall be deemed continuous and uninterrupted.

3. During the Tolling Period, the Trustee may file a complaint or commence a formal proceeding to recover any alleged Preferential Transfers in the Bankruptcy Court.

4. The Trustee may commence an action following the expiration of the Tolling Period if Defendant does not voluntarily repay the amount of the Preference Period Payment or does not inform the Trustee of the basis of Defendant's disagreement and/or details of any defenses. The Trustee may file an action thereafter, and Defendant shall not assert any defense based on the expiration of the statute of limitations that would not have been available as of the Effective Date of this Agreement.

5. Each party represents and warrants that it has full power and authority to enter into this Agreement, that this Agreement constitutes a valid and binding obligation enforceable against in accordance with its terms, and that it is entering into this Agreement voluntarily, without duress, or undue influence.

6. The Parties irrevocably acknowledge and agree that they are now forever estopped and precluded from contesting or denying the validity and enforceability of this Agreement. This Agreement shall be binding on the Parties hereto and their respective successors and assigns, together

with their respective past, present and future officers, directors, employees, agents, representatives, attorneys, controlling persons, shareholders, partners, owners and affiliates.

7.      The Parties acknowledge and agree that the conditions, validity, and enforceability of any term or provision of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to its conflicts of law principles. The Parties consent to the exclusive jurisdiction and venue of the Bankruptcy Court for the District of Delaware with respect to any disputes arising out of or relating to this Agreement.

8.      The Parties each represent that they have read this Agreement in its entirety, know and understand its contents, have had the opportunity to consult with legal counsel of their choice, and understand and agree to all its terms, conditions, and meanings freely, knowingly, and willingly.

9.      This Agreement constitutes the entire understanding between the Parties relating to the subject matter hereof and supersedes all prior agreements, understandings, negotiations, and discussions, whether oral or written.

10.     This Agreement may not be enlarged, amended, modified, supplemented, or extended except by a written agreement signed by both Parties.

11.     This Agreement does not impact, change, or modify any other rights or remedies the Parties have against one another.

12.     Nothing contained in this Agreement shall be deemed or construed as an admission of liability or wrongdoing by any party, nor as a waiver of any rights, claims, or defenses, except as expressly set forth herein.

13.     Except as expressly provided herein, nothing in this Agreement shall affect any defense or response thereto that may be available to any party, and this Agreement shall not be deemed to revive any claim that is or was barred as of the date of this Agreement.

14.     For the avoidance of any doubt, nothing herein shall prejudice, limit, or otherwise affect the rights of any of the Parties to seek or oppose any further extension or tolling of any statute of limitations beyond the extended date, and the rights of the Parties with respect thereto are expressly reserved.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.


By: Sonali N. Doshi, Esq.
Counsel to Plaintiff

June 17, 2026
Date


By: ⁓ a. ℱ
Authorized Counsel to Defendant


Date

### Tolling Agreement

This tolling agreement (this "Tolling Agreement") is made on the 24th day of June, 2026 between Plaintiff George L. Miller, ("Trustee") the Chapter 7 Trustee for the bankruptcy estate of Chicken Soup for the Soul Entertainment, Inc., *et. al.* (the "Debtor") by and through his attorneys, Ciardi Ciardi & Astin, and The Locksmith Film LLC ("Defendant"). Defendant and the Trustee (the "Parties") stipulate and agree as follows:

WHEREAS, on June 28, 2024, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

WHEREAS, on July 11, 2024, the Court entered an *Order Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code and Granting Related Relief* (the "Chapter 7 Cases") [ECF No. 120].

WHEREAS, on July 11, 2024, George L. Miller was appointed as the Chapter 7 Trustee of the Debtors' estates. The Trustee is the Plaintiff in this action and brings this action on behalf of the Debtors' estates [ECF No. 130].

WHEREAS, the Trustee alleges that Defendant was, at all relevant times, a vendor or creditor that provided goods and/or services to or for the Debtor prior to the Petition Date.

WHEREAS, prior to the Petition Date, the Trustee alleges that Defendant and the Debtor were engaged in one or more business transactions pursuant to the terms of agreements entered in connection therewith, which are evidenced by one or more contracts, purchase orders, invoices, communications, and other documents (collectively, the "Agreements").

WHEREAS, the Trustee alleges that, the Debor made one or more transfers of an interest of the Debtor's property through payments aggregating not less than $10,000.00 to Defendant during the Preference Period (the "Transfer" or "Transfers"). The Trustee further alleges that the Open A/P Report also reveals that Defendant received payment(s) on account of debts related to the Debtor's operation of its business (the "Preference Period Payment") within ninety (90) days prior to the filing of the Debtor's bankruptcy petitions, and that the Transfers were for goods or services provided by Defendant and made pursuant to invoices or statements submitted by Defendant reflecting such goods or services previously provided, and, as a result, the Trustee alleges that the said Transfers are or may be avoidable.

WHEREAS, the Trustee is in the process of marshaling assets for the benefits of all creditors and is evaluating potential claims to avoid and recover alleged preferential transfers pursuant to 11 U.S.C. §§ 547 and 550 (the "Preference Claims") in connection with the above-captioned bankruptcy case.

WHEREAS, the Trustee has provided details of the alleged Preference Period Payments and requested that Defendant review its records to determine whether they agree with the information.

WHEREAS, the Trustee indicated that potential factual and statutory defenses may be available to Defendant pursuant to section 547(c) of the Bankruptcy Code. The Trustee requested that either Defendant voluntarily repay the amount of the Preference Period Payment or provide evidence to support any defenses to the Trustee by June 22, 2026, so the Trustee can review same prior to filing the Complaint ("Complaint").

WHEREAS, in response, Defendant requested additional time to investigate the validity of the asserted claims, collect relevant documentation, assess potential defenses, and engage in settlement discussions with the Trustee; and

WHEREAS, unless tolled or otherwise extended, the statute of limitations for the Trustee to commence an action under section 547 of the Bankruptcy Code will expire on June 28, 2026.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises set forth herein, the Parties agree as follows:

1.   The parties agree that the statute of limitations set forth in 11 U.S.C. § 546(a), or any other applicable time-based defense or limitations period relating to the Trustee's ability to commence an action to recover the Preference Claims, including but not limited to applicable statutes of limitation, repose, and laches, are hereby tolled and suspended as of the Effective Date of this Agreement. This tolling shall continue through and including August 31, 2026 (the "Tolling Period").

2.   ·The Parties further agree that the entire Tolling Period shall be excluded from any calculation of the statute of limitations, similar time-based defenses, or limitations period applicable to the Preference Claims and that no party shall assert that any claim is time-barred, waived, or prejudiced by the passage of time, and the tolling shall be deemed continuous and uninterrupted.

3.   During the Tolling Period, the Trustee may not file a complaint or commence a formal proceeding to recover any alleged Preferential Transfers in the Bankruptcy Court.

4.   The Trustee may commence an action following the expiration of the Tolling Period and through and including seven (7) days after the expiration of the Tolling Period if Defendant does not voluntarily repay the amount of the Preference Period Payment or does not inform the Trustee of the basis of Defendant's disagreement and/or details of any defenses and/or the Parties have not otherwise resolved the alleged Preference Claims. If the Trustee files an action against the Defendant during the seven (7) days following the expiration of the Tolling Period, the Defendant shall not assert any defense based on the expiration of the statute of limitations that would not have been available as of the Effective Date of this Agreement.

5.   Each party represents and warrants that it has full power and authority to enter into this Agreement, that this Agreement constitutes a valid and binding obligation enforceable against in accordance with its terms, and that it is entering into this Agreement voluntarily, without duress, or undue influence.

6.   The Parties irrevocably acknowledge and agree that they are now forever estopped and precluded from contesting or denying the validity and enforceability of this Agreement. This Agreement shall be binding on the Parties hereto and their respective successors and assigns, together

with their respective past, present and future officers, directors, employees, agents, representatives, attorneys, controlling persons, shareholders, partners, owners and affiliates.

7.     The Parties acknowledge and agree that the conditions, validity, and enforceability of any term or provision of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to its conflicts of law principles. The Parties consent to the exclusive jurisdiction and venue of the Bankruptcy Court for the District of Delaware with respect to any disputes arising out of or relating to this Agreement.

8.     The Parties each represent that they have read this Agreement in its entirety, know and understand its contents, have had the opportunity to consult with legal counsel of their choice, and understand and agree to all its terms, conditions, and meanings freely, knowingly, and willingly.

9.     This Agreement constitutes the entire understanding between the Parties relating to the subject matter hereof and supersedes all prior agreements, understandings, negotiations, and discussions, whether oral or written.

10.    This Agreement may not be enlarged, amended, modified, supplemented, or extended except by a written agreement signed by both Parties.

11.    This Agreement does not impact, change, or modify any other rights or remedies the Parties have against one another.

12.    Nothing contained in this Agreement shall be deemed or construed as an admission of liability or wrongdoing by any party, nor as a waiver of any rights, claims, or defenses, except as expressly set forth herein.

13.    Except as expressly provided herein, nothing in this Agreement shall affect any defense or response thereto that may be available to any party, and this Agreement shall not be deemed to revive any claim that is or was barred as of the date of this Agreement.

14.    For the avoidance of any doubt, nothing herein shall prejudice, limit, or otherwise affect the rights of any of the Parties to seek or oppose any further extension or tolling of any statute of limitations beyond the extended date, and the rights of the Parties with respect thereto are expressly reserved.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.


By: /s/ Sonali N. Doshi, Esq.
Counsel to Plaintiff

June 24, 2026
Date


By: _____
Authorized Counsel to Defendant

6/24/26
Date

## Tolling Agreement

This tolling agreement (this "Tolling Agreement") is made on the 22nd day of June, 2026 between Plaintiff George L. Miller, ("Trustee") the Chapter 7 Trustee for the bankruptcy estate of Chicken Soup for the Soul Entertainment, Inc., *et. al.* (the "Debtor") by and through his attorneys, Ciardi Ciardi & Astin, and Nasdaq, Inc. ("Defendant"). Defendant and the Trustee (the "Parties") stipulate and agree as follows:

WHEREAS, on June 28, 2024, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

WHEREAS, on July 11, 2024, the Court entered an *Order Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code and Granting Related Relief* (the "Chapter 7 Cases") [ECF No. 120].

WHEREAS, on July 11, 2024, George L. Miller was appointed as the Chapter 7 Trustee of the Debtors' estates. The Trustee is the Plaintiff in this action and brings this action on behalf of the Debtors' estates [ECF No. 130].

WHEREAS, the Trustee alleges that Defendant was, at all relevant times, a vendor or creditor that provided goods and/or services to or for the Debtor prior to the Petition Date.

WHEREAS, prior to the Petition Date, the Trustee alleges that Defendant and the Debtor were engaged in one or more business transactions pursuant to the terms of agreements entered in connection therewith, which are evidenced by one or more contracts, purchase orders, invoices, communications, and other documents (collectively, the "Agreements").

WHEREAS, the Trustee alleges that, the Debor made one or more transfers of an interest of the Debtor's property through payments aggregating not less than $100,500.00 to Defendant during the Preference Period (the "Transfer" or "Transfers"). The Trustee further alleges that the Open A/P Report also reveals that Defendant received payment(s) on account of debts related to the Debtor's operation of its business (the "Preference Period Payment") within ninety (90) days prior to the filing of the Debtor's bankruptcy petitions, and that the Transfers were for goods or services provided by Defendant and made pursuant to invoices or statements submitted by Defendant reflecting such goods or services previously provided, and, as a result, the Trustee alleges that the said Transfers are or may be avoidable.

WHEREAS, the Trustee is in the process of marshaling assets for the benefits of all creditors and is evaluating potential claims to avoid and recover alleged preferential transfers pursuant to 11 U.S.C. §§ 547 and 550 (the "Preference Claims") in connection with the above-captioned bankruptcy case.

WHEREAS, on June 10, 2026, the Trustee sent a demand letter to Defendant (the "Demand Letter"), providing details of the alleged Preference Period Payments and requesting that Defendant

review its records to determine whether they agree with the information in the letter. The Demand Letter purported to detail each of the Transfers by providing transferor, alleged transferee, transfer date, check number (where applicable), transfer type (i.e. wire, check, etc.), and transfer amount.

WHEREAS, the Trustee indicated in the Demand Letter that potential factual and statutory defenses may be available to Defendant pursuant to section 547(c) of the Bankruptcy Code. The Trustee requested that either Defendant voluntarily repay the amount of the Preference Period Payment or provide evidence to support any defenses to the Trustee by June 22, 2026, so the Trustee can review same prior to filing the Complaint ("Complaint").

WHEREAS, in response to the Demand Letter, Defendant requested additional time to investigate the validity of the asserted claims, collect relevant documentation, assess potential defenses, and engage in settlement discussions with the Trustee; and

WHEREAS, unless tolled or otherwise extended, the statute of limitations for the Trustee to commence an action under section 547 of the Bankruptcy Code will expire on June 28, 2026.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises set forth herein, the Parties agree as follows:

1.      The parties agree that the statute of limitations set forth in 11 U.S.C. § 546(a), or any other applicable time-based defense or limitations period relating to the Trustee's ability to commence an action to recover the Preference Claims, including but not limited to applicable statutes of limitation, repose, and laches, are hereby tolled and suspended as of the Effective Date of this Agreement. This tolling shall continue through and including August 30, 2026 (the "Tolling Period").

2.      The Parties further agree that the entire Tolling Period shall be excluded from any calculation of the statute of limitations, similar time-based defenses, or limitations period applicable to the Preference Claims and that no party shall assert that any claim is time-barred, waived, or prejudiced by the passage of time, and the tolling shall be deemed continuous and uninterrupted.

3.      During the Tolling Period, the Trustee may not file a complaint or commence a formal proceeding to recover any alleged Preferential Transfers in the Bankruptcy Court.

4.      The Trustee may commence an action following the expiration of the Tolling Period and through and including seven (7) days after the expiration of the Tolling Period if Defendant does not voluntarily repay the amount of the Preference Period Payment or does not inform the Trustee of the basis of Defendant's disagreement and/or details of any defenses and/or the Parties have not otherwise resolved the alleged Preference Claims. If the Trustee files an action against the Defendant during the seven (7) days following the expiration of the Tolling Period, the Defendant shall not assert any defense based on the expiration of the statute of limitations that would not have been available as of the Effective Date of this Agreement.

5.      Each party represents and warrants that it has full power and authority to enter into this Agreement, that this Agreement constitutes a valid and binding obligation enforceable against in accordance with its terms, and that it is entering into this Agreement voluntarily, without duress, or undue influence.

6. The Parties irrevocably acknowledge and agree that they are now forever estopped and precluded from contesting or denying the validity and enforceability of this Agreement. This Agreement shall be binding on the Parties hereto and their respective successors and assigns, together with their respective past, present and future officers, directors, employees, agents, representatives, attorneys, controlling persons, shareholders, partners, owners and affiliates.

7. The Parties acknowledge and agree that the conditions, validity, and enforceability of any term or provision of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to its conflicts of law principles. The Parties consent to the exclusive jurisdiction and venue of the Bankruptcy Court for the District of Delaware with respect to any disputes arising out of or relating to this Agreement.

8. The Parties each represent that they have read this Agreement in its entirety, know and understand its contents, have had the opportunity to consult with legal counsel of their choice, and understand and agree to all its terms, conditions, and meanings freely, knowingly, and willingly.

9. This Agreement constitutes the entire understanding between the Parties relating to the subject matter hereof and supersedes all prior agreements, understandings, negotiations, and discussions, whether oral or written.

10. This Agreement may not be enlarged, amended, modified, supplemented, or extended except by a written agreement signed by both Parties.

11. This Agreement does not impact, change, or modify any other rights or remedies the Parties have against one another.

12. Nothing contained in this Agreement shall be deemed or construed as an admission of liability or wrongdoing by any party, nor as a waiver of any rights, claims, or defenses, except as expressly set forth herein.

13. Except as expressly provided herein, nothing in this Agreement shall affect any defense or response thereto that may be available to any party, and this Agreement shall not be deemed to revive any claim that is or was barred as of the date of this Agreement.

14. For the avoidance of any doubt, nothing herein shall prejudice, limit, or otherwise affect the rights of any of the Parties to seek or oppose any further extension or tolling of any statute of limitations beyond the extended date, and the rights of the Parties with respect thereto are expressly reserved.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.


By: /s/ *Sonali N. Doshi, Esq.*
Counsel to Plaintiff

June 22, 2026
Date


By:
Authorized Counsel to Defendant

6/22/26
Date

### Tolling Agreement

This tolling agreement (this "Tolling Agreement") is made on the 22nd day of June, 2026 between Plaintiff George L. Miller, ("Trustee") the Chapter 7 Trustee for the bankruptcy estate of Chicken Soup for the Soul Entertainment, Inc., et. al. (the "Debtor") by and through his attorneys, Ciardi Ciardi & Astin, and Bluefin Payment Systems LLC ("Defendant"). Defendant and the Trustee (the "Parties") stipulate and agree as follows:

WHEREAS, on June 28, 2024, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

WHEREAS, on July 11, 2024, the Court entered an *Order Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code and Granting Related Relief* (the "Chapter 7 Cases") [ECF No. 120].

WHEREAS, on July 11, 2024, George L. Miller was appointed as the Chapter 7 Trustee of the Debtors' estates. [ECF No. 130].

WHEREAS, the Trustee alleges that Defendant was, at all relevant times, a vendor or creditor that provided goods and/or services to or for the Debtor prior to the Petition Date.

WHEREAS, prior to the Petition Date, the Trustee alleges that Defendant and the Debtor were engaged in one or more business transactions pursuant to the terms of agreements entered in connection therewith, which are evidenced by one or more contracts, purchase orders, invoices, communications, and other documents (collectively, the "Agreements").

WHEREAS, the Trustee alleges that, the Debor made one or more transfers of an interest of the Debtor's property through payments aggregating not less than $126,666.66 to Defendant during the Preference Period (the "Transfer" or "Transfers"). The Trustee further alleges that the Open A/P Report also reveals that Defendant received payment(s) on account of debts related to the Debtor's operation of its business (the "Preference Period Payment") within ninety (90) days prior to the filing of the Debtor's bankruptcy petitions, and that the Transfers were for goods or services provided by Defendant and made pursuant to invoices or statements submitted by Defendant reflecting such goods or services previously provided, and, as a result, the Trustee alleges that the said Transfers are or may be avoidable.

WHEREAS, the Trustee is in the process of marshaling assets for the benefits of all creditors and is evaluating potential claims to avoid and recover alleged preferential transfers pursuant to 11 U.S.C. §§ 547 and 550 (the "Preference Claims") in connection with the above-captioned bankruptcy case.

WHEREAS, on June 9, 2026, the Trustee sent a demand letter to Defendant (the "Demand Letter"), providing details of the alleged Preference Period Payments and requesting that Defendant review its records to determine whether they agree with the information in the letter. The Demand

Letter purported to detail each of the Transfers by providing transferor, alleged transferee, transfer date, check number (where applicable), transfer type (i.e. wire, check, etc.), and transfer amount.

WHEREAS, the Trustee indicated in the Demand Letter that potential factual and statutory defenses may be available to Defendant pursuant to section 547(c) of the Bankruptcy Code. The Trustee requested that either Defendant voluntarily repay the amount of the Preference Period Payment or provide evidence to support any defenses to the Trustee by June 22, 2026, so the Trustee can review same prior to filing a complaint.

WHEREAS, in response to the Demand Letter, Defendant requested additional time to investigate the validity of the asserted claims, collect relevant documentation, assess potential defenses, and engage in settlement discussions with the Trustee; and

WHEREAS, unless tolled or otherwise extended, the statute of limitations for the Trustee to commence an action under section 547 of the Bankruptcy Code will expire on June 28, 2026.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises set forth herein, the Parties agree as follows:

1.   The parties agree that the statute of limitations set forth in 11 U.S.C. § 546(a), or any other applicable time-based defense or limitations period relating to the Trustee's ability to commence an action to recover the Preference Claims, including but not limited to applicable statutes of limitation, repose, and laches, are hereby tolled and suspended as of the Effective Date of this Agreement. This tolling shall continue through and including August 31, 2026 (the "Tolling Period").

2.   The Parties further agree that the entire Tolling Period shall be excluded from any calculation of the statute of limitations, similar time-based defenses, or limitations period applicable to the Preference Claims and that no party shall assert that any claim is time-barred, waived, or prejudiced by the passage of time, and the tolling shall be deemed continuous and uninterrupted.

3.   During the Tolling Period, the Trustee may file a complaint or commence a formal proceeding to recover any alleged Preferential Transfers in the Bankruptcy Court.

4.   The Trustee may commence an action following the expiration of the Tolling Period if Defendant does not voluntarily repay the amount of the Preference Period Payment or does not inform the Trustee of the basis of Defendant's disagreement and/or details of any defenses. The Trustee may file an action thereafter, and Defendant shall not assert any defense based on the expiration of the statute of limitations that would not have been available as of the Effective Date of this Agreement.

5.   Each party represents and warrants that it has full power and authority to enter into this Agreement, that this Agreement constitutes a valid and binding obligation enforceable against in accordance with its terms, and that it is entering into this Agreement voluntarily, without duress, or undue influence.

6.   The Parties irrevocably acknowledge and agree that they are now forever estopped and precluded from contesting or denying the validity and enforceability of this Agreement. This Agreement shall be binding on the Parties hereto and their respective successors and assigns, together

with their respective past, present and future officers, directors, employees, agents, representatives, attorneys, controlling persons, shareholders, partners, owners and affiliates.

7.     The Parties acknowledge and agree that the conditions, validity, and enforceability of any term or provision of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to its conflicts of law principles. The Parties consent to the exclusive jurisdiction and venue of the Bankruptcy Court for the District of Delaware with respect to any disputes arising out of or relating to this Agreement.

8.     The Parties each represent that they have read this Agreement in its entirety, know and understand its contents, have had the opportunity to consult with legal counsel of their choice, and understand and agree to all its terms, conditions, and meanings freely, knowingly, and willingly.

9.     This Agreement constitutes the entire understanding between the Parties relating to the subject matter hereof and supersedes all prior agreements, understandings, negotiations, and discussions, whether oral or written.

10.    This Agreement may not be enlarged, amended, modified, supplemented, or extended except by a written agreement signed by both Parties.

11.    This Agreement does not impact, change, or modify any other rights or remedies the Parties have against one another.

12.    Nothing contained in this Agreement shall be deemed or construed as an admission of liability or wrongdoing by any party, nor as a waiver of any rights, claims, or defenses, except as expressly set forth herein.

13.    Except as expressly provided herein, nothing in this Agreement shall affect any defense or response thereto that may be available to any party, and this Agreement shall not be deemed to revive any claim that is or was barred as of the date of this Agreement.

14.    For the avoidance of any doubt, nothing herein shall prejudice, limit, or otherwise affect the rights of any of the Parties to seek or oppose any further extension or tolling of any statute of limitations beyond the extended date, and the rights of the Parties with respect thereto are expressly reserved.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

By: /s/ Sonali N. Doshi, Esq.
Counsel to Plaintiff

June 22, 2026
Date

By:
Authorized Counsel to Defendant

June 23, 2026
Date

## Tolling Agreement

This tolling agreement (this "Tolling Agreement") is made on the 23rd day of June, 2026 between Plaintiff George L. Miller, ("Trustee") the Chapter 7 Trustee for the bankruptcy estate of Chicken Soup for the Soul Entertainment, Inc., *et. al.* (the "Debtor") by and through his attorneys, Ciardi Ciardi & Astin, and Cooksey Toolen Gage Duffy & Woog ("Defendant"). Defendant and the Trustee (the "Parties") stipulate and agree as follows:

WHEREAS, on June 28, 2024, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

WHEREAS, on July 11, 2024, the Court entered an *Order Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code and Granting Related Relief* (the "Chapter 7 Cases") [ECF No. 120].

WHEREAS, on July 11, 2024, George L. Miller was appointed as the Chapter 7 Trustee of the Debtors' estates. The Trustee is the Plaintiff in this action and brings this action on behalf of the Debtors' estates [ECF No. 130].

WHEREAS, the Trustee alleges that Defendant was, at all relevant times, a vendor or creditor that provided goods and/or services to or for the Debtor prior to the Petition Date.

WHEREAS, prior to the Petition Date, the Trustee alleges that Defendant and the Debtor were engaged in one or more business transactions pursuant to the terms of agreements entered in connection therewith, which are evidenced by one or more contracts, purchase orders, invoices, communications, and other documents (collectively, the "Agreements").

WHEREAS, the Trustee alleges that, the Debor made one or more transfers of an interest of the Debtor's property through payments aggregating not less than $20,000.00 to Defendant during the Preference Period (the "Transfer" or "Transfers"). The Trustee further alleges that the Open A/P Report also reveals that Defendant received payment(s) on account of debts related to the Debtor's operation of its business (the "Preference Period Payment") within ninety (90) days prior to the filing of the Debtor's bankruptcy petitions, and that the Transfers were for goods or services provided by Defendant and made pursuant to invoices or statements submitted by Defendant reflecting such goods or services previously provided, and, as a result, the Trustee alleges that the said Transfers are or may be avoidable.

WHEREAS, the Trustee is in the process of marshaling assets for the benefits of all creditors and is evaluating potential claims to avoid and recover alleged preferential transfers pursuant to 11 U.S.C. §§ 547 and 550 (the "Preference Claims") in connection with the above-captioned bankruptcy case.

WHEREAS, on June 9, 2026, the Trustee sent a demand letter to Defendant (the "Demand Letter"), providing details of the alleged Preference Period Payments and requesting that Defendant

review its records to determine whether they agree with the information in the letter. The Demand Letter purported to detail each of the Transfers by providing transferor, alleged transferee, transfer date, check number (where applicable), transfer type (i.e. wire, check, etc.), and transfer amount.

WHEREAS, the Trustee indicated in the Demand Letter that potential factual and statutory defenses may be available to Defendant pursuant to section 547(c) of the Bankruptcy Code. The Trustee requested that either Defendant voluntarily repay the amount of the Preference Period Payment or provide evidence to support any defenses to the Trustee by June 22, 2026, so the Trustee can review same prior to filing the Complaint ("Complaint").

WHEREAS, in response to the Demand Letter, Defendant requested additional time to investigate the validity of the asserted claims, collect relevant documentation, assess potential defenses, and engage in settlement discussions with the Trustee; and

WHEREAS, unless tolled or otherwise extended, the statute of limitations for the Trustee to commence an action under section 547 of the Bankruptcy Code will expire on June 28, 2026.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises set forth herein, the Parties agree as follows:

1.      The parties agree that the statute of limitations set forth in 11 U.S.C. § 546(a), or any other applicable time-based defense or limitations period relating to the Trustee's ability to commence an action to recover the Preference Claims, including but not limited to applicable statutes of limitation, repose, and laches, are hereby tolled and suspended as of the Effective Date of this Agreement. This tolling shall continue through and including August 31, 2026 (the "Tolling Period").

2.      The Parties further agree that the entire Tolling Period shall be excluded from any calculation of the statute of limitations, similar time-based defenses, or limitations period applicable to the Preference Claims and that no party shall assert that any claim is time-barred, waived, or prejudiced by the passage of time, and the tolling shall be deemed continuous and uninterrupted.

3.      During the Tolling Period, the Trustee may file a complaint or commence a formal proceeding to recover any alleged Preferential Transfers in the Bankruptcy Court.

4.      The Trustee may commence an action following the expiration of the Tolling Period and through and including seven (7) days after the expiration of the Tolling Period if Defendant does not voluntarily repay the amount of the Preference Period Payment or does not inform the Trustee of the basis of Defendant's disagreement and/or details of any defenses and/or the Parties have not otherwise resolved the alleged Preference Claims. If the Trustee files an action against the Defendant during the seven (7) days following the expiration of the Tolling Period, the Defendant shall not assert any defense based on the expiration of the statute of limitations that would not have been available as of the Effective Date of this Agreement.

5.      Each party represents and warrants that it has full power and authority to enter into this Agreement, that this Agreement constitutes a valid and binding obligation enforceable against in accordance with its terms, and that it is entering into this Agreement voluntarily, without duress, or undue influence.

6. The Parties irrevocably acknowledge and agree that they are now forever estopped and precluded from contesting or denying the validity and enforceability of this Agreement. This Agreement shall be binding on the Parties hereto and their respective successors and assigns, together with their respective past, present and future officers, directors, employees, agents, representatives, attorneys, controlling persons, shareholders, partners, owners and affiliates.

7. The Parties acknowledge and agree that the conditions, validity, and enforceability of any term or provision of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to its conflicts of law principles. The Parties consent to the exclusive jurisdiction and venue of the Bankruptcy Court for the District of Delaware with respect to any disputes arising out of or relating to this Agreement.

8. The Parties each represent that they have read this Agreement in its entirety, know and understand its contents, have had the opportunity to consult with legal counsel of their choice, and understand and agree to all its terms, conditions, and meanings freely, knowingly, and willingly.

9. This Agreement constitutes the entire understanding between the Parties relating to the subject matter hereof and supersedes all prior agreements, understandings, negotiations, and discussions, whether oral or written.

10. This Agreement may not be enlarged, amended, modified, supplemented, or extended except by a written agreement signed by both Parties.

11. This Agreement does not impact, change, or modify any other rights or remedies the Parties have against one another.

12. Nothing contained in this Agreement shall be deemed or construed as an admission of liability or wrongdoing by any party, nor as a waiver of any rights, claims, or defenses, except as expressly set forth herein.

13. Except as expressly provided herein, nothing in this Agreement shall affect any defense or response thereto that may be available to any party, and this Agreement shall not be deemed to revive any claim that is or was barred as of the date of this Agreement.

14. For the avoidance of any doubt, nothing herein shall prejudice, limit, or otherwise affect the rights of any of the Parties to seek or oppose any further extension or tolling of any statute of limitations beyond the extended date, and the rights of the Parties with respect thereto are expressly reserved.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.


By: /s/ Sonali N. Doshi, Esq.
Counsel to Plaintiff

June 23, 2026
Date


By: /s/ Phil Woog, Esq.
Authorized Counsel to Defendant


June 23, 2026
Date

Docusign Envelope ID: DC6A453A-4E0C-8A40-83AE-D4CCBD0DF324

## Tolling Agreement

This tolling agreement (this "Tolling Agreement") is made on the 25th day of June, 2026 (the "Effective Date") between Plaintiff George L. Miller, ("Trustee") the chapter 7 Trustee for the bankruptcy estate of Chicken Soup for the Soul Entertainment, Inc., *et. al.* (the "Debtor") by and through his attorneys, Ciardi Ciardi & Astin, and Softeon, Inc. ("Defendant"). Defendant and the Trustee (the "Parties") stipulate and agree as follows:

WHEREAS, on June 28, 2024, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

WHEREAS, on July 11, 2024, the Court entered an *Order Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code and Granting Related Relief* (the "Chapter 7 Cases") [ECF No. 120].

WHEREAS, on July 11, 2024, George L. Miller was appointed as the Chapter 7 Trustee of the Debtors' estates. The Trustee is the Plaintiff in this action and brings this action on behalf of the Debtors' estates [ECF No. 130].

WHEREAS, the Trustee alleges that Defendant was, at all relevant times, a vendor or creditor that provided goods and/or services to or for the Debtor prior to the Petition Date.

WHEREAS, prior to the Petition Date, the Trustee alleges that Defendant and the Debtor were engaged in one or more business transactions pursuant to the terms of agreements entered in connection therewith, which are evidenced by one or more contracts, purchase orders, invoices, communications, and other documents (collectively, the "Agreements").

WHEREAS, the Trustee alleges that, the Debor made one or more transfers of an interest of the Debtor's property through payments aggregating $122,588.20 to Defendant during the Preference Period, as specifically identified in the Demand Letter (the "Transfer" or "Transfers"). The Trustee further alleges that the Open A/P Report also reveals that Defendant received payment(s) on account of debts related to the Debtor's operation of its business (the "Preference Period Payment") within ninety (90) days prior to the filing of the Debtor's bankruptcy petitions, and that the Transfers were for goods or services provided by Defendant and made pursuant to invoices or statements submitted by Defendant reflecting such goods or services previously provided, and, as a result, the Trustee alleges that the said Transfers are or may be avoidable.

WHEREAS, the Trustee is in the process of marshaling assets for the benefits of all creditors and is evaluating potential claims to avoid and recover alleged preferential transfers pursuant to 11 U.S.C. §§ 547 and 550 (the "Preference Claims") in connection with the above-captioned bankruptcy case.

WHEREAS, on June 11, 2026, the Trustee sent a demand letter to Defendant (the "Demand Letter"), providing details of the alleged Preference Period Payments and requesting that Defendant

Docusign Envelope ID: DC6A453A-4E0C-8A40-83AE-D4CCBD0DF324

review its records to determine whether they agree with the information in the letter. The Demand Letter purported to detail each of the Transfers by providing transferor, alleged transferee, transfer date, check number (where applicable), transfer type (i.e. wire, check, etc.), and transfer amount.

WHEREAS, the Trustee indicated in the Demand Letter that potential factual and statutory defenses may be available to Defendant pursuant to section 547(c) of the Bankruptcy Code. The Trustee requested that either Defendant voluntarily repay the amount of the Preference Period Payment or provide evidence to support any defenses to the Trustee by June 22, 2026, so the Trustee can review same prior to filing the Complaint ("Complaint").

WHEREAS, in response to the Demand Letter, Defendant requested additional time to investigate the validity of the asserted claims, collect relevant documentation, assess potential defenses, and engage in settlement discussions with the Trustee; and

WHEREAS, Defendant disputes the Trustee's characterization of the Transfers and expressly reserves all defenses available under section 547(c) of the Bankruptcy Code, including without limitation the ordinary course of business defense under section 547(c)(2) and the subsequent new value defense under section 547(c)(4); and

WHEREAS, unless tolled or otherwise extended, the statute of limitations for the Trustee to commence an action under section 547 of the Bankruptcy Code will expire on June 28, 2026.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises set forth herein, the Parties agree as follows:

1.      The parties agree that the statute of limitations set forth in 11 U.S.C. § 546(a), or any other applicable time-based defense or limitations period relating to the Trustee's ability to commence an action to recover the Preference Claims, including but not limited to applicable statutes of limitation, repose, and laches, are hereby tolled and suspended as of the Effective Date of this Agreement. This tolling shall continue through and including August 30, 2026 (the "Tolling Period").

2.      The Parties further agree that the entire Tolling Period shall be excluded from any calculation of the statute of limitations, similar time-based defenses, or limitations period applicable to the Preference Claims and that no party shall assert that any claim is time-barred, waived, or prejudiced by the passage of time, and the tolling shall be deemed continuous and uninterrupted.

3.      During the Tolling Period, the Trustee shall not file a complaint or commence any formal proceeding to recover any alleged Preferential Transfers in the Bankruptcy Court, provided that Defendant is engaging in good-faith settlement discussions with the Trustee.

4.      During the Tolling Period, the Parties shall engage in good-faith settlement discussions regarding the Preference Claims, including the exchange of relevant information and documentation reasonably requested by either Party.

5.      The Trustee may commence an action following the expiration of the Tolling Period if Defendant does not voluntarily repay the amount of the Preference Period Payment or does not inform the Trustee of the basis of Defendant's disagreement and/or details of any defenses. The Trustee may

Docusign Envelope ID: DC6A453A-4E0C-8A40-83AE-D4CCBD0DF324

file an action thereafter, and Defendant shall not assert any defense based on the expiration of the statute of limitations that would not have been available as of the Effective Date of this Agreement.

6.      Each party represents and warrants that it has full power and authority to enter into this Agreement, that this Agreement constitutes a valid and binding obligation enforceable against in accordance with its terms, and that it is entering into this Agreement voluntarily, without duress, or undue influence.

7.      This Agreement shall be binding on the Parties hereto and their respective successors and assigns.

8.      The Parties acknowledge and agree that the conditions, validity, and enforceability of any term or provision of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to its conflicts of law principles. The Parties consent to the exclusive jurisdiction and venue of the Bankruptcy Court for the District of Delaware with respect to any disputes arising out of or relating to this Agreement.

9.      The Parties each represent that they have read this Agreement in its entirety, know and understand its contents, have had the opportunity to consult with legal counsel of their choice, and understand and agree to all its terms, conditions, and meanings freely, knowingly, and willingly.

10.      This Agreement constitutes the entire understanding between the Parties relating to the subject matter hereof and supersedes all prior agreements, understandings, negotiations, and discussions, whether oral or written.

11.      This Agreement may not be enlarged, amended, modified, supplemented, or extended except by a written agreement signed by both Parties.

12.      This Agreement does not impact, change, or modify any other rights or remedies the Parties have against one another.

13.      Nothing contained in this Agreement shall be deemed or construed as an admission of liability or wrongdoing by any party, nor as a waiver of any rights, claims, or defenses, except as expressly set forth herein.

14.      Except as expressly provided herein, nothing in this Agreement shall affect any defense or response thereto that may be available to any party, and this Agreement shall not be deemed to revive any claim that is or was barred as of the date of this Agreement.

15.      For the avoidance of any doubt, nothing herein shall prejudice, limit, or otherwise affect the rights of any of the Parties to seek or oppose any further extension or tolling of any statute of limitations beyond the extended date, and the rights of the Parties with respect thereto are expressly reserved.

Docusign Envelope ID: DC6A453A-4E0C-8A40-83AE-D4CCBD0DF324

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

By: _____
Counsel to Plaintiff

June 25, 2026 | 12:37:17 PM EDT
_____
Date


By: _____
Authorized Counsel to Defendant


June 25, 2026 | 10:23:46 AM PDT
_____
Date

**Tolling Agreement**

This tolling agreement (this "Tolling Agreement") is made on the 22th day of June, 2026 between Plaintiff George L. Miller, ("Trustee") the chapter 7 Trustee for the bankruptcy estate of Chicken Soup for the Soul Entertainment, Inc., *et. al.* (the "Debtor") by and through his attorneys, Ciardi Ciardi & Astin, and IQVIA, Inc. ("IQVIA"). IQVIA and the Trustee (the "Parties") stipulate and agree as follows:

WHEREAS, on June 28, 2024, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

WHEREAS, on July 11, 2024, the Court entered an *Order Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code and Granting Related Relief* (the "Chapter 7 Cases") [ECF No. 120].

WHEREAS, on July 11, 2024, George L. Miller was appointed as the Chapter 7 Trustee of the Debtors' estates. The Trustee is the Plaintiff in this action and brings this action on behalf of the Debtors' estates [ECF No. 130].

WHEREAS, the Trustee alleges that IQVIA was, at all relevant times, a vendor or creditor that provided goods and/or services to or for the Debtor prior to the Petition Date.

WHEREAS, prior to the Petition Date, the Trustee alleges that IQVIA and the Debtor were engaged in one or more business transactions pursuant to the terms of agreements entered in connection therewith, which are evidenced by one or more contracts, purchase orders, invoices, communications, and other documents (collectively, the "Agreements").

WHEREAS, the Trustee alleges that the Debtor made one or more transfers of an interest of the Debtor's property through payments aggregating not less than $16,200.00 to IQVIA during the Preference Period (the "Transfer" or "Transfers"). The Trustee further alleges that the Open A/P Report also reveals that IQVIA received payment(s) on account of debts related to the Debtor's operation of its business (the "Preference Period Payment") within ninety (90) days prior to the filing of the Debtor's bankruptcy petitions, and that the Transfers were for goods or services provided by IQVIA and made pursuant to invoices or statements submitted by IQVIA reflecting such goods or services previously provided, and, as a result, the Trustee alleges that the said Transfers are or may be avoidable.

WHEREAS, the Trustee is in the process of marshaling assets for the benefits of all creditors and is evaluating potential claims to avoid and recover alleged preferential transfers pursuant to 11 U.S.C. §§ 547 and 550 (the "Preference Claims") in connection with the above-captioned bankruptcy case.

WHEREAS, on June 11, 2026, the Trustee sent a demand letter to IQVIA (the "Demand Letter"), providing details of the alleged Preference Period Payments and requesting that IQVIA

review its records to determine whether they agree with the information in the letter. The Demand Letter purported to detail each of the Transfers by providing transferor, alleged transferee, transfer date, check number (where applicable), transfer type (i.e. wire, check, etc.), and transfer amount.

WHEREAS, the Trustee indicated in the Demand Letter that potential factual and statutory defenses may be available to IQVIA pursuant to section 547(c) of the Bankruptcy Code. The Trustee requested that either IQVIA voluntarily repay the amount of the Preference Period Payment or provide evidence to support any defenses to the Trustee by June 22, 2026, so the Trustee can review same prior to filing the Complaint ("Complaint").

WHEREAS, in response to the Demand Letter, IQVIA requested additional time to investigate the validity of the asserted claims, collect relevant documentation, assess potential defenses, and engage in discussions regarding resolution with the Trustee; and

WHEREAS, unless tolled or otherwise extended, the statute of limitations for the Trustee to commence an action under section 547 of the Bankruptcy Code will expire on June 28, 2026.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises set forth herein, the Parties agree as follows:

1. The parties agree that the statute of limitations set forth in 11 U.S.C. § 546(a), or any other applicable time-based defense or limitations period relating to the Trustee's ability to commence an action to recover the Preference Claims, including but not limited to applicable statutes of limitation, repose, and laches, are hereby tolled and suspended as of the Effective Date of this Agreement. This tolling shall continue through and including August 30, 2026 (the "Tolling Period").

2. The Parties further agree that the entire Tolling Period shall be excluded from any calculation of the statute of limitations, similar time-based defenses, or limitations period applicable to the Preference Claims and that no party shall assert that any claim is time-barred, waived, or prejudiced by the passage of time, and the tolling shall be deemed continuous and uninterrupted.

3. During the Tolling Period, the Trustee may file a complaint or commence a formal proceeding to recover any alleged Preferential Transfers in the Bankruptcy Court.

4. The Trustee may commence an action following the expiration of the Tolling Period if IQVIA does not voluntarily repay the amount of the Preference Period Payment or does not inform the Trustee of the basis of IQVIA's disagreement and/or details of any defenses. The Trustee may file an action thereafter as per his rights under 11 U.S.C. § 546(a) and IQVIA shall not assert any defense based on the expiration of the statute of limitations that would not have been available as of the Effective Date of this Agreement.

5. Each party represents and warrants that it has full power and authority to enter into this Agreement, that this Agreement constitutes a valid and binding obligation enforceable against in accordance with its terms, and that it is entering into this Agreement voluntarily, without duress, or undue influence.

6. The Parties irrevocably acknowledge and agree that they are now forever estopped and precluded from contesting or denying the validity and enforceability of this Agreement. This

Agreement shall be binding on the Parties hereto and their respective successors and assigns, together with their respective past, present and future officers, directors, employees, agents, representatives, attorneys, controlling persons, shareholders, partners, owners and affiliates.

7.      The Parties acknowledge and agree that the conditions, validity, and enforceability of any term or provision of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to its conflicts of law principles. The Parties consent to the exclusive jurisdiction and venue of the Bankruptcy Court for the District of Delaware with respect to any disputes arising out of or relating to this Agreement.

8.      The Parties each represent that they have read this Agreement in its entirety, know and understand its contents, have had the opportunity to consult with legal counsel of their choice, and understand and agree to all its terms, conditions, and meanings freely, knowingly, and willingly.

9.      This Agreement constitutes the entire understanding between the Parties relating to the subject matter hereof and supersedes all prior agreements, understandings, negotiations, and discussions, whether oral or written.

10.     This Agreement may not be enlarged, amended, modified, supplemented, or extended except by a written agreement signed by both Parties.

11.     This Agreement does not impact, change, or modify any other rights or remedies the Parties have against one another.

12.     Nothing contained in this Agreement shall be deemed or construed as an admission of liability or wrongdoing by any party, nor as a waiver of any rights, claims, or defenses, except as expressly set forth herein.

13.     Except as expressly provided herein, nothing in this Agreement shall affect any defense or response thereto that may be available to any party, and this Agreement shall not be deemed to revive any claim that is or was barred as of the date of this Agreement.

14.     This Agreement may be executed in any number of counterparts each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. Additionally, signature pages delivered via facsimile or email attachment or executed by any form of electronic means, including DocuSign or DocVerify, shall be deemed original.

15.     For the avoidance of any doubt, nothing herein shall prejudice, limit, or otherwise affect the rights of any of the Parties to seek or oppose any further extension or tolling of any statute of limitations beyond the extended date, and the rights of the Parties with respect thereto are expressly reserved.


IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.


By: Sonali N. Doshi, Esq.

Counsel to Plaintiff

June 22, 2026
Date

By: Randy Gray
Authorized Counsel to IQVIA Inc.

22-Jun-2026

Date

## Tolling Agreement

This tolling agreement (this "Tolling Agreement") is made on the 23rd day of June, 2026 between Plaintiff George L. Miller, ("Trustee") the Chapter 7 Trustee for the bankruptcy estate of Chicken Soup for the Soul Entertainment, Inc., *et. al.* (the "Debtor") by and through his attorneys, Ciardi Ciardi & Astin, and Back House Entertainment Advisors, LLC ("Defendant"). Defendant and the Trustee (the "Parties") stipulate and agree as follows:

WHEREAS, on June 28, 2024, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

WHEREAS, on July 11, 2024, the Court entered an *Order Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code and Granting Related Relief* (the "Chapter 7 Cases") [ECF No. 120].

WHEREAS, on July 11, 2024, George L. Miller was appointed as the Chapter 7 Trustee of the Debtors' estates. The Trustee is the Plaintiff in this action and brings this action on behalf of the Debtors' estates [ECF No. 130].

WHEREAS, the Trustee alleges that Defendant was, at all relevant times, a vendor or creditor that provided goods and/or services to or for the Debtor prior to the Petition Date.

WHEREAS, prior to the Petition Date, the Trustee alleges that Defendant and the Debtor were engaged in one or more business transactions pursuant to the terms of agreements entered in connection therewith, which are evidenced by one or more contracts, purchase orders, invoices, communications, and other documents (collectively, the "Agreements").

WHEREAS, the Trustee alleges that, the Debor made one or more transfers of an interest of the Debtor's property through payments aggregating not less than $36,500.00 to Defendant during the Preference Period (the "Transfer" or "Transfers"). The Trustee further alleges that the Open A/P Report also reveals that Defendant received payment(s) on account of debts related to the Debtor's operation of its business (the "Preference Period Payment") within ninety (90) days prior to the filing of the Debtor's bankruptcy petitions, and that the Transfers were for goods or services provided by Defendant and made pursuant to invoices or statements submitted by Defendant reflecting such goods or services previously provided, and, as a result, the Trustee alleges that the said Transfers are or may be avoidable.

WHEREAS, the Trustee is in the process of marshaling assets for the benefits of all creditors and is evaluating potential claims to avoid and recover alleged preferential transfers pursuant to 11 U.S.C. §§ 547 and 550 (the "Preference Claims") in connection with the above-captioned bankruptcy case.

WHEREAS, on June 9, 2026, the Trustee sent a demand letter to Defendant (the "Demand Letter"), providing details of the alleged Preference Period Payments and requesting that Defendant

review its records to determine whether they agree with the information in the letter. The Demand Letter purported to detail each of the Transfers by providing transferor, alleged transferee, transfer date, check number (where applicable), transfer type (i.e. wire, check, etc.), and transfer amount.

WHEREAS, the Trustee indicated in the Demand Letter that potential factual and statutory defenses may be available to Defendant pursuant to section 547(c) of the Bankruptcy Code. The Trustee requested that either Defendant voluntarily repay the amount of the Preference Period Payment or provide evidence to support any defenses to the Trustee by June 22, 2026, so the Trustee can review same prior to filing the Complaint ("Complaint").

WHEREAS, in response to the Demand Letter, Defendant requested additional time to investigate the validity of the asserted claims, collect relevant documentation, assess potential defenses, and engage in settlement discussions with the Trustee; and

WHEREAS, unless tolled or otherwise extended, the statute of limitations for the Trustee to commence an action under section 547 of the Bankruptcy Code will expire on June 28, 2026.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises set forth herein, the Parties agree as follows:

1.     The parties agree that the statute of limitations set forth in 11 U.S.C. § 546(a), or any other applicable time-based defense or limitations period relating to the Trustee's ability to commence an action to recover the Preference Claims, including but not limited to applicable statutes of limitation, repose, and laches, are hereby tolled and suspended as of the Effective Date of this Agreement. This tolling shall continue through and including August 31, 2026 (the "Tolling Period").

2.     The Parties further agree that the entire Tolling Period shall be excluded from any calculation of the statute of limitations, similar time-based defenses, or limitations period applicable to the Preference Claims and that no party shall assert that any claim is time-barred, waived, or prejudiced by the passage of time, and the tolling shall be deemed continuous and uninterrupted.

3.     During the Tolling Period, the Trustee may not file a complaint or commence a formal proceeding to recover any alleged Preferential Transfers in the Bankruptcy Court.

4.     The Trustee may commence an action following the expiration of the Tolling Period and through and including seven (7) days after the expiration of the Tolling Period if Defendant does not voluntarily repay the amount of the Preference Period Payment or does not inform the Trustee of the basis of Defendant's disagreement and/or details of any defenses and/or the Parties have not otherwise resolved the alleged Preference Claims. If the Trustee files an action against the Defendant during the seven (7) days following the expiration of the Tolling Period, the Defendant shall not assert any defense based on the expiration of the statute of limitations that would not have been available as of the Effective Date of this Agreement.

5.     Each party represents and warrants that it has full power and authority to enter into this Agreement, that this Agreement constitutes a valid and binding obligation enforceable against in accordance with its terms, and that it is entering into this Agreement voluntarily, without duress, or undue influence.

6.      The Parties irrevocably acknowledge and agree that they are now forever estopped and precluded from contesting or denying the validity and enforceability of this Agreement. This Agreement shall be binding on the Parties hereto and their respective successors and assigns, together with their respective past, present and future officers, directors, employees, agents, representatives, attorneys, controlling persons, shareholders, partners, owners and affiliates.

7.      The Parties acknowledge and agree that the conditions, validity, and enforceability of any term or provision of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to its conflicts of law principles. The Parties consent to the exclusive jurisdiction and venue of the Bankruptcy Court for the District of Delaware with respect to any disputes arising out of or relating to this Agreement.

8.      The Parties each represent that they have read this Agreement in its entirety, know and understand its contents, have had the opportunity to consult with legal counsel of their choice, and understand and agree to all its terms, conditions, and meanings freely, knowingly, and willingly.

9.      This Agreement constitutes the entire understanding between the Parties relating to the subject matter hereof and supersedes all prior agreements, understandings, negotiations, and discussions, whether oral or written.

10.     This Agreement may not be enlarged, amended, modified, supplemented, or extended except by a written agreement signed by both Parties.

11.     This Agreement does not impact, change, or modify any other rights or remedies the Parties have against one another.

12.     Nothing contained in this Agreement shall be deemed or construed as an admission of liability or wrongdoing by any party, nor as a waiver of any rights, claims, or defenses, except as expressly set forth herein.

13.     Except as expressly provided herein, nothing in this Agreement shall affect any defense or response thereto that may be available to any party, and this Agreement shall not be deemed to revive any claim that is or was barred as of the date of this Agreement.

14.     For the avoidance of any doubt, nothing herein shall prejudice, limit, or otherwise affect the rights of any of the Parties to seek or oppose any further extension or tolling of any statute of limitations beyond the extended date, and the rights of the Parties with respect thereto are expressly reserved.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.


By: /s/ Sonali N. Doshi, Esq.
Counsel to Plaintiff

June 23, 2026
Date


By: /s/ Michael G. Pepin, Esq.
Authorized Counsel to Defendant


June 23, 2026
Date

**Tolling Agreement**

This tolling agreement (this "Tolling Agreement") is made on the 24th day of June, 2026 between Plaintiff George L. Miller, ("Trustee") the Chapter 7 Trustee for the bankruptcy estate of Chicken Soup for the Soul Entertainment, Inc., *et. al.* (the "Debtor") by and through his attorneys, Ciardi Ciardi & Astin, and Prologis ("Defendant"). Defendant and the Trustee (the "Parties") stipulate and agree as follows:

WHEREAS, on June 28, 2024, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

WHEREAS, on July 11, 2024, the Court entered an *Order Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code and Granting Related Relief* (the "Chapter 7 Cases") [ECF No. 120].

WHEREAS, on July 11, 2024, George L. Miller was appointed as the Chapter 7 Trustee of the Debtors' estates. The Trustee is the Plaintiff in this action and brings this action on behalf of the Debtors' estates [ECF No. 130].

WHEREAS, the Trustee alleges that Defendant was, at all relevant times, a vendor or creditor that provided goods and/or services to or for the Debtor prior to the Petition Date.

WHEREAS, prior to the Petition Date, the Trustee alleges that Defendant and the Debtor were engaged in one or more business transactions pursuant to the terms of agreements entered in connection therewith, which are evidenced by one or more contracts, purchase orders, invoices, communications, and other documents (collectively, the "Agreements").

WHEREAS, the Trustee alleges that, the Debor made one or more transfers of an interest of the Debtor's property through payments aggregating not less than $25,000.00 to Defendant during the Preference Period (the "Transfer" or "Transfers"). The Trustee further alleges that the Open A/P Report also reveals that Defendant received payment(s) on account of debts related to the Debtor's operation of its business (the "Preference Period Payment") within ninety (90) days prior to the filing of the Debtor's bankruptcy petitions, and that the Transfers were for goods or services provided by Defendant and made pursuant to invoices or statements submitted by Defendant reflecting such goods or services previously provided, and, as a result, the Trustee alleges that the said Transfers are or may be avoidable.

WHEREAS, the Trustee is in the process of marshaling assets for the benefits of all creditors and is evaluating potential claims to avoid and recover alleged preferential transfers pursuant to 11 U.S.C. §§ 547 and 550 (the "Preference Claims") in connection with the above-captioned bankruptcy case.

WHEREAS, on June 10, 2026, the Trustee sent a demand letter to Defendant (the "Demand Letter"), providing details of the alleged Preference Period Payments and requesting that Defendant

review its records to determine whether they agree with the information in the letter. The Demand Letter purported to detail each of the Transfers by providing transferor, alleged transferee, transfer date, check number (where applicable), transfer type (i.e. wire, check, etc.), and transfer amount.

WHEREAS, the Trustee indicated in the Demand Letter that potential factual and statutory defenses may be available to Defendant pursuant to section 547(c) of the Bankruptcy Code. The Trustee requested that either Defendant voluntarily repay the amount of the Preference Period Payment or provide evidence to support any defenses to the Trustee by June 22, 2026, so the Trustee can review same prior to filing the Complaint ("Complaint").

WHEREAS, in response to the Demand Letter, Defendant requested additional time to investigate the validity of the asserted claims, collect relevant documentation, assess potential defenses, and engage in settlement discussions with the Trustee; and

WHEREAS, unless tolled or otherwise extended, the statute of limitations for the Trustee to commence an action under section 547 of the Bankruptcy Code will expire on June 28, 2026.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises set forth herein, the Parties agree as follows:

1. The parties agree that the statute of limitations set forth in 11 U.S.C. § 546(a), or any other applicable time-based defense or limitations period relating to the Trustee's ability to commence an action to recover the Preference Claims, including but not limited to applicable statutes of limitation, repose, and laches, are hereby tolled and suspended as of the Effective Date of this Agreement. This tolling shall continue through and including August 31, 2026 (the "Tolling Period").

2. The Parties further agree that the entire Tolling Period shall be excluded from any calculation of the statute of limitations, similar time-based defenses, or limitations period applicable to the Preference Claims and that no party shall assert that any claim is time-barred, waived, or prejudiced by the passage of time, and the tolling shall be deemed continuous and uninterrupted.

3. This Tolling Agreement may be terminated by either Party on fifteen (15) days written notice to counsel for the non-terminating Party, which notice may be sent via email.

4. The Trustee may commence an action following the termination of this Tolling Agreement or expiration of the Tolling Period if Defendant does not voluntarily repay the amount of the Preference Period Payment or does not inform the Trustee of the basis of Defendant's disagreement and/or details of any defenses and/or the Parties have not otherwise resolved the alleged Preference Claims.

5. Each party represents and warrants that it has full power and authority to enter into this Agreement, that this Agreement constitutes a valid and binding obligation enforceable against in accordance with its terms, and that it is entering into this Agreement voluntarily, without duress, or undue influence.

6. The Parties irrevocably acknowledge and agree that they are now forever estopped and precluded from contesting or denying the validity and enforceability of this Agreement. This Agreement shall be binding on the Parties hereto and their respective successors and assigns, together

with their respective past, present and future officers, directors, employees, agents, representatives, attorneys, controlling persons, shareholders, partners, owners and affiliates.

7.      The Parties acknowledge and agree that the conditions, validity, and enforceability of any term or provision of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to its conflicts of law principles. The Parties consent to the exclusive jurisdiction and venue of the Bankruptcy Court for the District of Delaware with respect to any disputes arising out of or relating to this Agreement.

8.      The Parties each represent that they have read this Agreement in its entirety, know and understand its contents, have had the opportunity to consult with legal counsel of their choice, and understand and agree to all its terms, conditions, and meanings freely, knowingly, and willingly.

9.      This Agreement constitutes the entire understanding between the Parties relating to the subject matter hereof and supersedes all prior agreements, understandings, negotiations, and discussions, whether oral or written.

10.      This Agreement may not be enlarged, amended, modified, supplemented, or extended except by a written agreement signed by both Parties.

11.      This Agreement does not impact, change, or modify any other rights or remedies the Parties have against one another.

12.      Nothing contained in this Agreement shall be deemed or construed as an admission of liability or wrongdoing by any party, nor as a waiver of any rights, claims, or defenses, except as expressly set forth herein.

13.      Except as expressly provided herein, nothing in this Agreement shall affect any defense or response thereto that may be available to any party, and this Agreement shall not be deemed to revive any claim that is or was barred as of the date of this Agreement.

14.      For the avoidance of any doubt, nothing herein shall prejudice, limit, or otherwise affect the rights of any of the Parties to seek or oppose any further extension or tolling of any statute of limitations beyond the extended date, and the rights of the Parties with respect thereto are expressly reserved.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.


By: /s/ Sonali N. Doshi, Esq.
Counsel to Plaintiff

June 25, 2026
Date



By: /s/ Brian P. Morgan
Authorized Counsel to Defendant


June 24, 2026
Date

## Tolling Agreement

This tolling agreement (this "Tolling Agreement") is made on the 25th day of June, 2026 between Plaintiff George L. Miller, ("Trustee") the Chapter 7 Trustee for the bankruptcy estate of Chicken Soup for the Soul Entertainment, Inc., *et. al.* (the "Debtor") by and through his attorneys, Ciardi Ciardi & Astin, and Clear Treasury UK Trading ("Defendant"). Defendant and the Trustee (the "Parties") stipulate and agree as follows:

WHEREAS, on June 28, 2024, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

WHEREAS, on July 11, 2024, the Court entered an *Order Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code and Granting Related Relief* (the "Chapter 7 Cases") [ECF No. 120].

WHEREAS, on July 11, 2024, George L. Miller was appointed as the Chapter 7 Trustee of the Debtors' estates. The Trustee is the Plaintiff in this action and brings this action on behalf of the Debtors' estates [ECF No. 130].

WHEREAS, the Trustee alleges that Defendant was, at all relevant times, a vendor or creditor that provided goods and/or services to or for the Debtor prior to the Petition Date.

WHEREAS, prior to the Petition Date, the Trustee alleges that Defendant and the Debtor were engaged in one or more business transactions pursuant to the terms of agreements entered in connection therewith, which are evidenced by one or more contracts, purchase orders, invoices, communications, and other documents (collectively, the "Agreements").

WHEREAS, the Trustee alleges that, the Debor made one or more transfers of an interest of the Debtor's property through payments aggregating not less than $160,000.00 to Defendant during the Preference Period (the "Transfer" or "Transfers"). The Trustee further alleges that the Open A/P Report also reveals that Defendant received payment(s) on account of debts related to the Debtor's operation of its business (the "Preference Period Payment") within ninety (90) days prior to the filing of the Debtor's bankruptcy petitions, and that the Transfers were for goods or services provided by Defendant and made pursuant to invoices or statements submitted by Defendant reflecting such goods or services previously provided, and, as a result, the Trustee alleges that the said Transfers are or may be avoidable.

WHEREAS, the Trustee is in the process of marshaling assets for the benefits of all creditors and is evaluating potential claims to avoid and recover alleged preferential transfers pursuant to 11 U.S.C. §§ 547 and 550 (the "Preference Claims") in connection with the above-captioned bankruptcy case.

WHEREAS, the Trustee has provided details of the alleged Preference Period Payments and requested that Defendant review its records to determine whether they agree with the information.

WHEREAS, the Trustee indicated that potential factual and statutory defenses may be available to Defendant pursuant to section 547(c) of the Bankruptcy Code. The Trustee requested that either Defendant voluntarily repay the amount of the Preference Period Payment or provide evidence to support any defenses to the Trustee by June 22, 2026, so the Trustee can review same prior to filing the Complaint ("Complaint").

WHEREAS, in response, Defendant requested additional time to investigate the validity of the asserted claims, collect relevant documentation, assess potential defenses, and engage in settlement discussions with the Trustee; and

WHEREAS, unless tolled or otherwise extended, the statute of limitations for the Trustee to commence an action under section 547 of the Bankruptcy Code will expire on June 28, 2026.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises set forth herein, the Parties agree as follows:

1.      The parties agree that the statute of limitations set forth in 11 U.S.C. § 546(a), or any other applicable time-based defense or limitations period relating to the Trustee's ability to commence an action to recover the Preference Claims, including but not limited to applicable statutes of limitation, repose, and laches, are hereby tolled and suspended as of the Effective Date of this Agreement. This tolling shall continue through and including August 31, 2026 (the "Tolling Period").

2.      The Parties further agree that the entire Tolling Period shall be excluded from any calculation of the statute of limitations, similar time-based defenses, or limitations period applicable to the Preference Claims and that no party shall assert that any claim is time-barred, waived, or prejudiced by the passage of time, and the tolling shall be deemed continuous and uninterrupted.

3.      During the Tolling Period, the Trustee may not file a complaint or commence a formal proceeding to recover any alleged Preferential Transfers in the Bankruptcy Court.

4.      The Trustee may commence an action following the expiration of the Tolling Period and through and including seven (7) days after the expiration of the Tolling Period if Defendant does not voluntarily repay the amount of the Preference Period Payment or does not inform the Trustee of the basis of Defendant's disagreement and/or details of any defenses and/or the Parties have not otherwise resolved the alleged Preference Claims. If the Trustee files an action against the Defendant during the seven (7) days following the expiration of the Tolling Period, the Defendant shall not assert any defense based on the expiration of the statute of limitations that would not have been available as of the Effective Date of this Agreement.

5.      Each party represents and warrants that it has full power and authority to enter into this Agreement, that this Agreement constitutes a valid and binding obligation enforceable against in accordance with its terms, and that it is entering into this Agreement voluntarily, without duress, or undue influence.

6.      The Parties irrevocably acknowledge and agree that they are now forever estopped and precluded from contesting or denying the validity and enforceability of this Agreement. This Agreement shall be binding on the Parties hereto and their respective successors and assigns, together

with their respective past, present and future officers, directors, employees, agents, representatives, attorneys, controlling persons, shareholders, partners, owners and affiliates.

7.      The Parties acknowledge and agree that the conditions, validity, and enforceability of any term or provision of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to its conflicts of law principles. The Parties consent to the exclusive jurisdiction and venue of the Bankruptcy Court for the District of Delaware with respect to any disputes arising out of or relating to this Agreement.

8.      The Parties each represent that they have read this Agreement in its entirety, know and understand its contents, have had the opportunity to consult with legal counsel of their choice, and understand and agree to all its terms, conditions, and meanings freely, knowingly, and willingly.

9.      This Agreement constitutes the entire understanding between the Parties relating to the subject matter hereof and supersedes all prior agreements, understandings, negotiations, and discussions, whether oral or written.

10.      This Agreement may not be enlarged, amended, modified, supplemented, or extended except by a written agreement signed by both Parties.

11.      This Agreement does not impact, change, or modify any other rights or remedies the Parties have against one another.

12.      Nothing contained in this Agreement shall be deemed or construed as an admission of liability or wrongdoing by any party, nor as a waiver of any rights, claims, or defenses, except as expressly set forth herein.

13.      Except as expressly provided herein, nothing in this Agreement shall affect any defense or response thereto that may be available to any party, and this Agreement shall not be deemed to revive any claim that is or was barred as of the date of this Agreement.

14.      For the avoidance of any doubt, nothing herein shall prejudice, limit, or otherwise affect the rights of any of the Parties to seek or oppose any further extension or tolling of any statute of limitations beyond the extended date, and the rights of the Parties with respect thereto are expressly reserved.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.


By: /s/ Sonali N. Doshi, Esq.
Counsel to Plaintiff

June 25, 2026
Date


By: *Gary Marsh*
Authorized Counsel to Defendant

26th June 2026

Date

## Tolling Agreement

This tolling agreement (this "Tolling Agreement") is made on the 26th day of June, 2026 between Plaintiff George L. Miller, ("Trustee") the Chapter 7 Trustee for the bankruptcy estate of Chicken Soup for the Soul Entertainment, Inc., *et. al.* (the "Debtor") by and through his attorneys, Ciardi Ciardi & Astin, and Filmrise Inc. "Defendant"). Defendant and the Trustee (the "Parties") stipulate and agree as follows:

WHEREAS, on June 28, 2024, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

WHEREAS, on July 11, 2024, the Court entered an *Order Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code and Granting Related Relief* (the "Chapter 7 Cases") [ECF No. 120].

WHEREAS, on July 11, 2024, George L. Miller was appointed as the Chapter 7 Trustee of the Debtors' estates. The Trustee is the Plaintiff in this action and brings this action on behalf of the Debtors' estates [ECF No. 130].

WHEREAS, the Trustee alleges that Defendant was, at all relevant times, a vendor or creditor that provided goods and/or services to or for the Debtor prior to the Petition Date.

WHEREAS, prior to the Petition Date, the Trustee alleges that Defendant and the Debtor were engaged in one or more business transactions pursuant to the terms of agreements entered in connection therewith, which are evidenced by one or more contracts, purchase orders, invoices, communications, and other documents (collectively, the "Agreements").

WHEREAS, the Trustee alleges that, the Debor made one or more transfers of an interest of the Debtor's property through payments aggregating not less than $84,366.91 to Defendant during the Preference Period (the "Transfer" or "Transfers"). The Trustee further alleges that the Open A/P Report also reveals that Defendant received payment(s) on account of debts related to the Debtor's operation of its business (the "Preference Period Payment") within ninety (90) days prior to the filing of the Debtor's bankruptcy petitions, and that the Transfers were for goods or services provided by Defendant and made pursuant to invoices or statements submitted by Defendant reflecting such goods or services previously provided, and, as a result, the Trustee alleges that the said Transfers are or may be avoidable.

WHEREAS, the Trustee is in the process of marshaling assets for the benefits of all creditors and is evaluating potential claims to avoid and recover alleged preferential transfers pursuant to 11 U.S.C. §§ 547 and 550 (the "Preference Claims") in connection with the above-captioned bankruptcy case.

WHEREAS, the Trustee has provided details of the alleged Preference Period Payments and requested that Defendant review its records to determine whether they agree with the information.

WHEREAS, the Trustee indicated that potential factual and statutory defenses may be available to Defendant pursuant to section 547(c) of the Bankruptcy Code. The Trustee requested that either Defendant voluntarily repay the amount of the Preference Period Payment or provide evidence to support any defenses to the Trustee by June 22, 2026, so the Trustee can review same prior to filing the Complaint ("Complaint").

WHEREAS, in response, Defendant requested additional time to investigate the validity of the asserted claims, collect relevant documentation, assess potential defenses, and engage in settlement discussions with the Trustee; and

WHEREAS, unless tolled or otherwise extended, the statute of limitations for the Trustee to commence an action under section 547 of the Bankruptcy Code will expire on June 28, 2026.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises set forth herein, the Parties agree as follows:

1. The parties agree that the statute of limitations set forth in 11 U.S.C. § 546(a), or any other applicable time-based defense or limitations period relating to the Trustee's ability to commence an action to recover the Preference Claims, including but not limited to applicable statutes of limitation, repose, and laches, are hereby tolled and suspended as of the Effective Date of this Agreement. This tolling shall continue through and including August 31, 2026 (the "Tolling Period").

2. The Parties further agree that the entire Tolling Period shall be excluded from any calculation of the statute of limitations, similar time-based defenses, or limitations period applicable to the Preference Claims and that no party shall assert that any claim is time-barred, waived, or prejudiced by the passage of time, and the tolling shall be deemed continuous and uninterrupted.

3. During the Tolling Period, the Trustee may not file a complaint or commence a formal proceeding to recover any alleged Preferential Transfers in the Bankruptcy Court.

4. The Trustee may commence an action following the expiration of the Tolling Period and through and including seven (7) days after the expiration of the Tolling Period if Defendant does not voluntarily repay the amount of the Preference Period Payment or does not inform the Trustee of the basis of Defendant's disagreement and/or details of any defenses and/or the Parties have not otherwise resolved the alleged Preference Claims. If the Trustee files an action against the Defendant during the seven (7) days following the expiration of the Tolling Period, the Defendant shall not assert any defense based on the expiration of the statute of limitations that would not have been available as of the Effective Date of this Agreement.

5. Each party represents and warrants that it has full power and authority to enter into this Agreement, that this Agreement constitutes a valid and binding obligation enforceable against in accordance with its terms, and that it is entering into this Agreement voluntarily, without duress, or undue influence.

6. The Parties irrevocably acknowledge and agree that they are now forever estopped and precluded from contesting or denying the validity and enforceability of this Agreement. This Agreement shall be binding on the Parties hereto and their respective successors and assigns, together

with their respective past, present and future officers, directors, employees, agents, representatives, attorneys, controlling persons, shareholders, partners, owners and affiliates.

7.      The Parties acknowledge and agree that the conditions, validity, and enforceability of any term or provision of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to its conflicts of law principles. The Parties consent to the exclusive jurisdiction and venue of the Bankruptcy Court for the District of Delaware with respect to any disputes arising out of or relating to this Agreement.

8.      The Parties each represent that they have read this Agreement in its entirety, know and understand its contents, have had the opportunity to consult with legal counsel of their choice, and understand and agree to all its terms, conditions, and meanings freely, knowingly, and willingly.

9.      This Agreement constitutes the entire understanding between the Parties relating to the subject matter hereof and supersedes all prior agreements, understandings, negotiations, and discussions, whether oral or written.

10.     This Agreement may not be enlarged, amended, modified, supplemented, or extended except by a written agreement signed by both Parties.

11.     This Agreement does not impact, change, or modify any other rights or remedies the Parties have against one another.

12.     Nothing contained in this Agreement shall be deemed or construed as an admission of liability or wrongdoing by any party, nor as a waiver of any rights, claims, or defenses, except as expressly set forth herein.

13.     Except as expressly provided herein, nothing in this Agreement shall affect any defense or response thereto that may be available to any party, and this Agreement shall not be deemed to revive any claim that is or was barred as of the date of this Agreement.

14.     For the avoidance of any doubt, nothing herein shall prejudice, limit, or otherwise affect the rights of any of the Parties to seek or oppose any further extension or tolling of any statute of limitations beyond the extended date, and the rights of the Parties with respect thereto are expressly reserved.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

By: /s/ Sonali N. Doshi, Esq.
Counsel to Plaintiff

June 26, 2026
Date

By: /s/ Zev Shechtman
Authorized Counsel to Defendant

June 26, 2026
Date