# EXHIBIT "A"

# SETTLEMENT AGREEMENT

THIS AGREEMENT (the "Settlement Agreement") dated as of September 11, 2026, is by and between George L. Miller, the chapter 7 Trustee (the "Trustee" or "Plaintiff") for the bankruptcy estate (the "Estate") of Chicken Soup for the Soul Entertainment, Inc., *et al.*[1], (collectively, the "Debtors") and IQVIA Inc. ("IQVIA). Hereinafter, the Trustee and IQVIA are each referred to as a "Party" or collectively as the "Parties".

WHEREAS, on June 28, 2024, (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court, District of Delaware (the "Bankruptcy Court") [ECF No. 1].

WHEREAS, on July 10, 2024, the Bankruptcy Court entered an Order *Converting the Debtors' Chapter 11 Case to a Case under Chapter 7 of the Bankruptcy Code* [ECF No. 120].

WHEREAS, on July 11, 2024, the Office of the United States Trustee appointed George L. Miller as Trustee of the Debtors' Estate and is presently so acting [ECF No. 130].

WHEREAS, on August 20, 2024, the Court held the meeting of creditors pursuant to section 341(a) of the Bankruptcy Code [ECF No. 255].

WHEREAS, prior to the Petition Date, the Debtors provided entertainment content to value-conscious consumers. The Debtors' flagship services were Redbox, Crackle, and Chicken Soup for the Soul.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508) (collectively referred to as the "Debtors"). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

WHEREAS, the Debtors' business operations comprised of the following four business segments: (i) streaming services, including advertising-supported video-on-demand (AVOD) services, transaction video-on-demand (TVOD) services, and free-ad supported streaming television (FAST); (ii) physical media rentals via Redbox kiosks and related kiosk service; (iii) content acquisition and distribution; and (iv) content production.

WHEREAS, upon information and belief, IQVIA was, at all relevant times, a vendor that provided goods and/or services to or for the Debtors prior to the Petition Date, as more fully disclosed herein.

WHEREAS, upon information and belief, prior to the Petition Date, IQVIA and the Debtors were engaged in one or more business transactions pursuant to the terms of agreements entered in connection therewith, which are evidenced by one or more contracts, purchase orders, invoices, communications, and other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods or services provided by IQVIA to the Debtors as described herein.

WHEREAS, according to the Schedules of Assets and Liabilities (the "Schedules") and Statement of Financial Affairs ("SOFA," and together with the Schedules, the "Bankruptcy Schedules"), as well as the Debtors' books and records, including its bank statements, cloud-based financial information, and materials produced pursuant to Rule 2004 requests, the Debtors made one or more transfers of an interest of the Debtors' property through payments aggregating not less than $16,200.00 (the "Transfers," and each, individually, a "Transfer") to IQVIA during March 30, 2024, and June 28, 2024 (the "Preference Period").

WHEREAS, the Trustee sent a demand letter to IQVIA, seeking a return of the Transfers (the "Demand Letter"). The Demand Letter detailed each of the Transfers by providing transferor,

transferee, transfer date, check number (where applicable), transfer type (i.e. wire, check, etc.), and transfer amount.

WHEREAS, in response to the Demand Letter ("Response"), IQVIA asserted certain statutory defenses.

WHEREAS, on or about June 22, 2026, the Parties entered into a Tolling Agreement extending and tolling applicable deadlines through August 30, 2026; thereby permitting the Parties to engage in settlement discussions without the commencement of an adversary proceeding, and no adversary proceeding has been commenced against IQVIA.

WHEREAS, on or about August 21, 2026, the Parties entered into an Amended Tolling Agreement further extending and tolling applicable deadlines through September 29, 2026;

WHEREAS, as reflected by the execution of this Settlement Agreement by the Trustee and IQVIA, the Parties wish to settle the issues existing between them without delay on the terms and conditions hereof; and

NOW, THEREFORE, in consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Trustee and IQVIA agree as follows:

1. Within forty-five (45) days after the execution of (a) this Settlement Agreement; (b) complete payment instructions, including wire transfer or remittance information reasonably required by IQVIA to process the Settlement Payment; and (c) any tax documentation reasonably required by IQVIA, including a completed IRS Form W-9, IQVIA shall pay the Trustee the amount of $9,000.00 on account of the Transfers (the "Settlement Payment"). The Settlement Payment may be made by wire transfer. The Trustee shall provide all information reasonably necessary for IQVIA to process the Settlement Payment, including banking information for payment to be made

by wire transfer. The Settlement Payment shall be made payable to George L. Miller, Chapter 7 Trustee.

2. The Settlement Agreement, and the obligations of the Parties to perform hereunder, shall become effective on the date which this Settlement Agreement is fully executed by all parties (the "Effective Date"). Upon the Effective Date, IQVIA shall tender the Settlement Payment in full as set forth herein. IQVIA's obligation to make the Settlement Payment shall be a condition precedent to the Trustee's obligation to take further action, including filing a motion seeking approval of this Settlement Agreement pursuant to the Federal Rules of Bankruptcy Procedure 9019 (the "9019 Motion"), and seeking entry of a final, non-appealable order of the Bankruptcy Court approving the Settlement Agreement (the "Approval Order").

3. Following execution of this Settlement Agreement and upon receipt of the Settlement Payment in full, the Trustee shall cause the 9019 Motion to be filed with the Bankruptcy Court seeking entry of the Approval Order. The Parties agree to cooperate in good faith and take all necessary steps to obtain such Approval Order as promptly as reasonably possible.

4. Upon approval of the Settlement Agreement, the Trustee, solely in their capacity as Chapter 7 Trustee and on behalf of the Debtors and the Debtors' Estates, hereby fully and irrevocably releases and discharges IQVIA and its current and former parents, subsidiaries, affiliates, officers, directors, employees, agents, successors, and assigns from any and all claims, causes of action, demands, liabilities, and avoidance actions, whether known or unknown, arising from or relating to the Transfers that were asserted or could have been asserted by the Trustee on behalf of the Debtors or the Debtors' Estates.

5. Upon approval of the Settlement Agreement, the Trustee, on behalf of only the Debtors and the Debtors' Estate, hereby releases and discharges (collectively, the "Release")

IQVIA from all claims and Chapter 5 causes of action relating to the Transfers, whether known or unknown, that were or could have been asserted by the Trustee on behalf of only the Debtors and the Debtors' Estate.

6. If the Bankruptcy Court does not approve this Settlement Agreement, the Trustee shall promptly return the Settlement Payment to IQVIA.

7. If the Bankruptcy Court does not approve this Settlement Agreement, the Settlement Agreement, including but not limited to, the Release, shall be null and void in its entirety and nothing in this Settlement Agreement shall in any way limit, modify, or affect, or be deemed to limit, modify or affect, any of the rights, claims or defenses of the parties thereto.

8. Both the Trustee and IQVIA represents and warrants to the other that this Settlement Agreement was executed freely and voluntarily in good faith, at arm's length, that no promises or representations that are not contained in this Settlement Agreement have been made to induce it to execute such documents and that it has not relied on any promise or representation except as set forth herein, and that it has conducted its own independent investigation of all matters it deems relevant regarding this Settlement Agreement.

9. This Settlement Agreement supersedes all oral or written arrangements, agreements, discussions or communications regarding the terms hereof, and no supplement, modification, waiver or termination of this Settlement Agreement, or any provision hereof, shall be binding, unless executed in writing by each of the Trustee and IQVIA.

10. The Trustee and IQVIA cooperated in drafting this Settlement Agreement. Therefore, in any action or proceeding concerning this Settlement Agreement, the provisions of this Settlement Agreement shall not be construed against either the Trustee or IQVIA as the drafter of this Settlement Agreement.

11. This Settlement Agreement shall be interpreted and governed by the laws of the State of Delaware, without giving effect to its principles of conflicts of law.

12. The Bankruptcy Court shall retain exclusive jurisdiction over any dispute that may arise concerning this Settlement Agreement, including, without limitation, any action to enforce this Settlement Agreement or to interpret its terms, and the parties hereto irrevocably submit to the personal jurisdiction of the Bankruptcy Court for such purposes.

13. This Settlement Agreement shall be binding upon and inure to the benefit of the Trustee and IQVIA their respective successors and assigns.

14. This Settlement Agreement is the result of a compromise of the Transfers and made for purposes of settlement only. Nothing contained in this Settlement Agreement shall be taken or construed as to an admission of liability or wrongdoing of any kind by any Party for any purpose. This Settlement Agreement may be executed in any number of counterparts, and by different signatories hereto in separate counterparts, each of which when so executed, shall be deemed an original, but all of which taken together, shall constitute one in the same agreement. Counterparts may be delivered via facsimile, electronic mail (including PDF or any electronic signature complying the U.S. Federal ESIGN act of 2000, or any other applicable law) or other transmission method, and any counterpart delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes. Each of the Parties shall take such further action and execute and deliver such further documents as maybe reasonably necessary to carry out the purposes of this Settlement Agreement and to facilitate the satisfaction of any conditions set forth herein.

15. The Parties each agree to otherwise bear their own legal fees, court costs, and legal expenses associated with the demands, this Settlement Agreement, the matters and documents referred to herein, and all other related matters.
16. Any individual signing this Settlement Agreement on behalf of a Party represents and warrants that he/she has full authority to do so.
17. Trustee represent and warrant that no part of their claims herein released have ever been or will be assigned, without the prior written consent of the other Party. Any assignment or attempted assignment in violation of the terms of this Section 18 shall be null and void and of no legal effect.
18. If any term or provision of this Settlement Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Settlement Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal, or unenforceable, the Parties hereto shall negotiate in good faith to modify this Settlement Agreement so as to effect the original intent of the Parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have caused this Settlement Agreement to be duly executed as set forth below.

[Remainder of page intentionally left blank].

Settlement Agreement Chicken Soup for the Soul Entertainment Inc.

AGREED TO BY:
**GEORGE L. MILLER, CHAPTER 7 TRUSTEE**

By: ______________________________
Title: George L. Miller, Chapter 7 Trustee
Date: 9/22/2026

**IQVIA INC.**

By: Jojy Alex
Title: ______________________________
Date: 9/22/2026

# SETTLEMENT AGREEMENT

THIS AGREEMENT (the "Settlement Agreement") dated as of August 31, 2026, is by and between George L. Miller, the chapter 7 Trustee (the "Trustee" or "Plaintiff") for the bankruptcy estate (the "Estate") of Chicken Soup for the Soul Entertainment, Inc., *et al.*[1], (collectively, the "Debtors") and Softeon, Inc. ("Softeon" or "Defendant"). Hereinafter, the Trustee and Defendant are each referred to as a "Party" or collectively as the "Parties".

WHEREAS, on June 28, 2024, (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court, District of Delaware (the "Bankruptcy Court") [ECF No. 1].

WHEREAS, on July 10, 2024, the Bankruptcy Court entered an Order *Converting the Debtors' Chapter 11 Case to a Case under Chapter 7 of the Bankruptcy Code* [ECF No. 120].

WHEREAS, on July 11, 2024, the Office of the United States Trustee appointed George L. Miller as Trustee of the Debtors' Estate and is presently so acting [ECF No. 130].

WHEREAS, on August 20, 2024, the Court held the meeting of creditors pursuant to section 341(a) of the Bankruptcy Code [ECF No. 255].

WHEREAS, prior to the Petition Date, the Debtors provided entertainment content to value-conscious consumers. The Debtors' flagship services were Redbox, Crackle, and Chicken Soup for the Soul.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508) (collectively referred to as the "Debtors"). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

WHEREAS, the Debtors' business operations comprised of the following four business segments: (i) streaming services, including advertising-supported video-on-demand (AVOD) services, transaction video-on-demand (TVOD) services, and free-ad supported streaming television (FAST); (ii) physical media rentals via Redbox kiosks and related kiosk service; (iii) content acquisition and distribution; and (iv) content production.

WHEREAS, upon information and belief, Defendant was, at all relevant times, a vendor or creditor that provided goods and/or services to or for the Debtors prior to the Petition Date, as more fully disclosed herein.

WHEREAS, upon information and belief, prior to the Petition Date, Defendant and the Debtors were engaged in one or more business transactions pursuant to the terms of agreements entered in connection therewith, which are evidenced by one or more contracts, purchase orders, invoices, communications, and other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods or services provided by Defendant to the Debtors as described herein.

WHEREAS, according to the Schedules of Assets and Liabilities (the "Schedules") and Statement of Financial Affairs ("SOFA," and together with the Schedules, the "Bankruptcy Schedules"), as well as the Debtors' books and records, including its bank statements, cloud-based financial information, and materials produced pursuant to Rule 2004 requests, the Debtors made one or more transfers of an interest of the Debtors' property through payments aggregating not less than $122,588.20 (the "Transfers," and each, individually, a "Transfer") to Defendant during March 30, 2024, and June 28, 2024 (the "Preference Period").

WHEREAS, the Trustee sent a demand letter to Defendant, seeking a return of the Transfers (the "Demand Letter"). The Demand Letter detailed each of the Transfers by providing

transferor, transferee, transfer date, check number (where applicable), transfer type (i.e. wire, check, etc.), and transfer amount.

WHEREAS, in response to the Demand Letter ("Response"), Softeon asserted certain statutory defenses.

WHEREAS, on or about June 25, 2026, the Parties entered into a Tolling Agreement extending and tolling applicable deadlines through August 30, 2026; thereby permitting the Parties to engage in settlement discussions without the commencement of an adversary proceeding, and no adversary proceeding has been commenced against Softeon.

WHEREAS, on or about August 28, 2026, the Parties entered into an Amended Tolling Agreement further extending and tolling applicable deadlines through September 29, 2026;

WHEREAS, as reflected by the execution of this Settlement Agreement by the Trustee and Softeon, the Parties wish to settle the issues existing between them without delay on the terms and conditions hereof; and

NOW, THEREFORE, in consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Trustee and Softeon agree as follows:

1. Within ten (10) days after the execution of this Settlement Agreement, Softeon shall pay the Trustee the amount of $45,000.00 on account of the Transfers (the "Settlement Payment"). The Settlement Payment may be made by wire transfer, check, or any such other method that the parties may agree to in writing. The Settlement Payment shall be made payable to George L. Miller, Chapter 7 Trustee and mailed to George L. Miller, Chapter 7 Trustee, 1628 John F. Kennedy Blvd., Suite 950, Philadelphia, PA 19103.

2. The Settlement Agreement, and the obligations of the Parties to perform hereunder, shall become effective on the date which this Settlement Agreement is fully executed by all parties (the "Effective Date"). Following the Effective Date, Defendant shall tender the Settlement Payment in full as set forth in Section 1 hereof. Defendant's obligation to make the Settlement Payment shall be a condition precedent to the Trustee's obligation to take further action, including filing a motion seeking approval of this Settlement Agreement pursuant to the Federal Rules of Bankruptcy Procedure 9019 (the "9019 Motion"), and seeking entry of a final, non-appealable order of the Bankruptcy Court approving the Settlement Agreement (the "Approval Order").

3. Following execution of this Settlement Agreement and upon receipt of the Settlement Payment in full, the Trustee shall cause the 9019 Motion to be filed with the Bankruptcy Court within thirty (30) days of receipt of the Settlement Payment, seeking entry of the Approval Order. The Parties agree to cooperate in good faith and take all necessary steps to obtain such Approval Order as promptly as reasonably possible.

4. Upon approval of the Settlement Agreement, and upon receipt and clearance of the Settlement Payment, the Trustee shall dismiss the claims against Softeon with prejudice within fourteen (14) days of entry of the Approval Order, fully and finally resolving the action.

5. Upon approval of the Settlement Agreement, the Trustee, on behalf of only the Debtors and the Debtors' Estate, hereby releases and discharges (collectively, the "Release") Softeon from all claims, causes of action, and Chapter 5 avoidance actions, whether known or unknown, that were or could have been asserted by the Trustee on behalf of only the Debtors and the Debtors' Estate against Softeon arising from or relating to the Debtors' dealings with Softeon prior to the Petition Date, including but not limited to the Transfers.

6. If the Bankruptcy Court does not approve this Settlement Agreement, the Trustee shall promptly return the Settlement Payment to Softeon.

7. If the Bankruptcy Court does not approve this Settlement Agreement, the Settlement Agreement, including but not limited to, the Release, shall be null and void in its entirety and nothing in this Settlement Agreement shall in any way limit, modify, or affect, or be deemed to limit, modify or affect, any of the rights, claims or defenses of the parties thereto.

8. Both the Trustee and Softeon represent and warrant to the other that this Settlement Agreement was executed freely and voluntarily in good faith, at arm's length, that no promises or representations that are not contained in this Settlement Agreement have been made to induce it to execute such documents and that it has not relied on any promise or representation except as set forth herein, and that it has conducted its own independent investigation of all matters it deems relevant regarding this Settlement Agreement.

9. This Settlement Agreement supersedes all oral or written arrangements, agreements, discussions or communications regarding the terms hereof, and no supplement, modification, waiver or termination of this Settlement Agreement, or any provision hereof, shall be binding, unless executed in writing by each of the Trustee and Softeon.

10. The Trustee and Softeon cooperated in drafting this Settlement Agreement. Therefore, in any action or proceeding concerning this Settlement Agreement, the provisions of this Settlement Agreement shall not be construed against either the Trustee or Softeon as the drafter of this Settlement Agreement.

11. This Settlement Agreement shall be interpreted and governed by the laws of the State of Delaware, without giving effect to its principles of conflicts of law.

12. The Bankruptcy Court shall retain exclusive jurisdiction over any dispute that may arise concerning this Settlement Agreement, including, without limitation, any action to enforce this Settlement Agreement or to interpret its terms, and the parties hereto irrevocably submit to the personal jurisdiction of the Bankruptcy Court for such purposes.

13. This Settlement Agreement shall be binding upon and inure to the benefit of the Trustee and Softeon their respective successors and assigns.

14. This Settlement Agreement is the result of a compromise of the Transfers and made for purposes of settlement only. Nothing contained in this Settlement Agreement shall be taken or construed as to an admission of liability or wrongdoing of any kind by any Party for any purpose. This Settlement Agreement may be executed in any number of counterparts, and by different signatories hereto in separate counterparts, each of which when so executed, shall be deemed an original, but all of which taken together, shall constitute one in the same agreement. Counterparts may be delivered via facsimile, electronic mail (including PDF or any electronic signature complying the U.S. Federal ESIGN act of 2000, or any other applicable law) or other transmission method, and any counterpart delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes. Each of the Parties shall take such further action and execute and deliver such further documents as maybe reasonably necessary to carry out the purposes of this Settlement Agreement and to facilitate the satisfaction of any conditions set forth herein.

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have caused this Settlement Agreement to be duly executed as set forth below.

[Remainder of page intentionally left blank].

Docusign Envelope ID: DF9B6ABE-4F0E-831D-8316-4A01CFAF8349

AGREED TO BY:
**GEORGE L. MILLER, CHAPTER 7 TRUSTEE**

By: ______________________
Title: George L. Miller, Chapter 7 Trustee
Date: 9/4/2026

**SOFTEON, INC.**

DocuSigned by:
By: ______________________
6479A815A72C460...
Title: Deputy General Counsel
Date: September 1, 2026 | 2:55:24 PM EDT

**SETTLEMENT AGREEMENT**

THIS AGREEMENT (the "Settlement Agreement") dated as of August 11, 2026, is by and between George L. Miller, the chapter 7 Trustee (the "Trustee" or "Plaintiff") for the bankruptcy estate (the "Estate") of Chicken Soup for the Soul Entertainment, Inc., *et al.*[1], (collectively, the "Debtors") and Nasdaq, Inc. ("Nasdaq" or "Defendant"). Hereinafter, the Trustee and Defendant are each referred to as a "Party" or collectively as the "Parties".

WHEREAS, on June 28, 2024, (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court, District of Delaware (the "Bankruptcy Court") [ECF No. 1].

WHEREAS, on July 10, 2024, the Bankruptcy Court entered an Order *Converting the Debtors' Chapter 11 Case to a Case under Chapter 7 of the Bankruptcy Code* [ECF No. 120].

WHEREAS, on July 11, 2024, the Office of the United States Trustee appointed George L. Miller as Trustee of the Debtors' Estate and is presently so acting [ECF No. 130].

WHEREAS, on August 20, 2024, the Court held the meeting of creditors pursuant to section 341(a) of the Bankruptcy Code [ECF No. 255].

WHEREAS, prior to the Petition Date, the Debtors provided entertainment content to value-conscious consumers. The Debtors' flagship services were Redbox, Crackle, and Chicken Soup for the Soul.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508) (collectively referred to as the "Debtors"). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

WHEREAS, the Debtors' business operations comprised of the following four business segments: (i) streaming services, including advertising-supported video-on-demand (AVOD) services, transaction video-on-demand (TVOD) services, and free-ad supported streaming television (FAST); (ii) physical media rentals via Redbox kiosks and related kiosk service; (iii) content acquisition and distribution; and (iv) content production.

WHEREAS, upon information and belief, Defendant was, at all relevant times, a vendor or creditor that provided goods and/or services to or for the Debtors prior to the Petition Date, as more fully disclosed herein.

WHEREAS, upon information and belief, prior to the Petition Date, Defendant and the Debtors were engaged in one or more business transactions pursuant to the terms of agreements entered in connection therewith, which are evidenced by one or more contracts, purchase orders, invoices, communications, and other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods or services provided by Defendant to the Debtors as described herein.

WHEREAS, according to the Schedules of Assets and Liabilities (the "Schedules") and Statement of Financial Affairs ("SOFA," and together with the Schedules, the "Bankruptcy Schedules"), as well as the Debtors' books and records, including its bank statements, cloud-based financial information, and materials produced pursuant to Rule 2004 requests, the Debtors made one or more transfers of an interest of the Debtors' property through payments aggregating not less than $100,500.00 (the "Transfers," and each, individually, a "Transfer") to Nasdaq during March 30, 2024, and June 28, 2024 (the "Preference Period").

WHEREAS, on or about June 22, 2026, the Parties entered into a Tolling Agreement extending and tolling applicable deadlines through August 30, 2026; thereby permitting the Parties

to engage in settlement discussions without the commencement of an adversary proceeding, and no adversary proceeding has been commenced against Nasdaq.

WHEREAS, as reflected by the execution of this Settlement Agreement by the Trustee and Nasdaq, the Parties wish to settle the issues existing between them without delay on the terms and conditions hereof; and

NOW, THEREFORE, in consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Trustee and Nasdaq agree as follows:

1. Within thirty (30) days after the execution of this Settlement Agreement, Nasdaq shall pay the Trustee the amount of $45,000.00 on account of the Transfers (the "Settlement Payment"). The Settlement Payment may be made by wire transfer, check, or any such other method that the parties may agree to in writing. The Settlement Payment shall be made payable to George L. Miller, Chapter 7 Trustee and mailed to George L. Miller, Chapter 7 Trustee, 1628 John F. Kennedy Blvd., Suite 950, Philadelphia, PA 19103.

2. The Settlement Agreement, and the obligations of the Parties to perform hereunder, shall become effective on the date which this Settlement Agreement is fully executed by all parties (the "Effective Date"). Upon the Effective Date, Nasdaq shall tender the Settlement Payment in full as set forth herein. Nasdaq's obligation to make the Settlement Payment shall be a condition precedent to the Trustee's obligation to take further action, including filing a motion seeking approval of this Settlement Agreement pursuant to the Federal Rules of Bankruptcy Procedure 9019 (the "9019 Motion"), and seeking entry of a final, non-appealable order of the Bankruptcy Court approving the Settlement Agreement (the "Approval Order").

3. Following execution of this Settlement Agreement and within sixty (60) days of receipt of the Settlement Payment in full, the Trustee shall cause the 9019 Motion to be filed with the Bankruptcy Court seeking entry of the Approval Order. Any modification or extension of the time will be made in writing. The Parties agree to cooperate in good faith and take all necessary steps to obtain such Approval Order as promptly as reasonably possible.

4. Upon approval of the Settlement Agreement, and within receipt and clearance of the Settlement Payment, the claims against Nasdaq will be fully and finally resolved, with prejudice.

5. Upon approval of the Settlement Agreement, the Trustee, on behalf of only the Debtors and the Debtors' Estate, hereby releases and discharges (collectively, the "Release") Nasdaq from all claims and Chapter 5 causes of action relating to the Transfers, whether known or unknown, that were or could have been asserted by the Trustee on behalf of only the Debtors and the Debtors' Estate.

6. If the Bankruptcy Court does not approve this Settlement Agreement, the Trustee shall promptly return the Settlement Payment to Nasdaq.

7. If the Bankruptcy Court does not approve this Settlement Agreement, the Settlement Agreement, including but not limited to, the Release, shall be null and void in its entirety and nothing in this Settlement Agreement shall in any way limit, modify, or affect, or be deemed to limit, modify or affect, any of the rights, claims or defenses of the parties thereto.

8. Both the Trustee and Nasdaq represents and warrants to the other that this Settlement Agreement was executed freely and voluntarily in good faith, at arm's length, that no promises or representations that are not contained in this Settlement Agreement have been made to induce it to execute such documents and that it has not relied on any promise or representation

except as set forth herein, and that it has conducted its own independent investigation of all matters it deems relevant regarding this Settlement Agreement.

9. This Settlement Agreement supersedes all oral or written arrangements, agreements, discussions or communications regarding the terms hereof, and no supplement, modification, waiver or termination of this Settlement Agreement, or any provision hereof, shall be binding, unless executed in writing by each of the Trustee and Nasdaq.

10. The Trustee and Nasdaq cooperated in drafting this Settlement Agreement. Therefore, in any action or proceeding concerning this Settlement Agreement, the provisions of this Settlement Agreement shall not be construed against either the Trustee or Nasdaq as the drafter of this Settlement Agreement.

11. This Settlement Agreement shall be interpreted and governed by the laws of the State of Delaware, without giving effect to its principles of conflicts of law.

12. The Bankruptcy Court shall retain exclusive jurisdiction over any dispute that may arise concerning this Settlement Agreement, including, without limitation, any action to enforce this Settlement Agreement or to interpret its terms, and the parties hereto irrevocably submit to the personal jurisdiction of the Bankruptcy Court for such purposes.

13. This Settlement Agreement shall be binding upon and inure to the benefit of the Trustee and Nasdaq their respective successors and assigns.

14. This Settlement Agreement is the result of a compromise of the Transfers and made for purposes of settlement only. Nothing contained in this Settlement Agreement shall be taken or construed as to an admission of liability or wrongdoing of any kind by any Party for any purpose. This Settlement Agreement may be executed in any number of counterparts, and by different signatories hereto in separate counterparts, each of which when so executed, shall be deemed an

original, but all of which taken together, shall constitute one in the same agreement. Counterparts may be delivered via facsimile, electronic mail (including PDF or any electronic signature complying the U.S. Federal ESIGN act of 2000, or any other applicable law) or other transmission method, and any counterpart delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes. Each of the Parties shall take such further action and execute and deliver such further documents as maybe reasonably necessary to carry out the purposes of this Settlement Agreement and to facilitate the satisfaction of any conditions set forth herein.

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have caused this Settlement Agreement to be duly executed as set forth below.

[*Remainder of page intentionally left blank*].

AGREED TO BY:
**GEORGE L. MILLER, CHAPTER 7 TRUSTEE**

By: George L. Miller
Title: George L. Miller, Chapter 7 Trustee
Date: 8/16/2026

**NASDAQ, INC.**

By: Karen C. Bifferato
Title: Karen C. Bifferato, Esq., attorney for Nasdaq, Inc.
Date: 8/11/26

# SETTLEMENT AGREEMENT

THIS AGREEMENT (the "Settlement Agreement") dated as of July 9, 2026, is by and between George L. Miller, the chapter 7 Trustee (the "Trustee" or "Plaintiff") for the bankruptcy estate (the "Estate") of Chicken Soup for the Soul Entertainment, Inc., *et al.*[1], (collectively, the "Debtors") and The Locksmith Film, LLC, ("Locksmith" or "Defendant"). Hereinafter, the Trustee and Defendant are each referred to as a "Party" or collectively as the "Parties".

WHEREAS, on June 28, 2024, (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court, District of Delaware (the "Bankruptcy Court") [ECF No. 1].

WHEREAS, on July 10, 2024, the Bankruptcy Court entered an Order *Converting the Debtors' Chapter 11 Case to a Case under Chapter 7 of the Bankruptcy Code* [ECF No. 120].

WHEREAS, on July 11, 2024, the Office of the United States Trustee appointed George L. Miller as Trustee of the Debtors' Estate and is presently so acting [ECF No. 130].

WHEREAS, on August 20, 2024, the Court held the meeting of creditors pursuant to section 341(a) of the Bankruptcy Code [ECF No. 255].

WHEREAS, prior to the Petition Date, the Debtors provided entertainment content to value-conscious consumers. The Debtors' flagship services were Redbox, Crackle, and Chicken Soup for the Soul.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508) (collectively referred to as the "Debtors"). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

WHEREAS, the Debtors' business operations comprised of the following four business segments: (i) streaming services, including advertising-supported video-on-demand (AVOD) services, transaction video-on-demand (TVOD) services, and free-ad supported streaming television (FAST); (ii) physical media rentals via Redbox kiosks and related kiosk service; (iii) content acquisition and distribution; and (iv) content production.

WHEREAS, upon information and belief, Defendant was, at all relevant times, a vendor or creditor that provided goods and/or services to or for the Debtors prior to the Petition Date, as more fully disclosed herein.

WHEREAS, upon information and belief, prior to the Petition Date, Defendant and the Debtors were engaged in one or more business transactions pursuant to the terms of agreements entered in connection therewith, which are evidenced by one or more contracts, purchase orders, invoices, communications, and other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods or services provided by Defendant to the Debtors as described herein.

WHEREAS, according to the Schedules of Assets and Liabilities (the "Schedules") and Statement of Financial Affairs ("SOFA," and together with the Schedules, the "Bankruptcy Schedules"), as well as the Debtors' books and records, including its bank statements, cloud-based financial information, and materials produced pursuant to Rule 2004 requests, the Debtors made one or more transfers of an interest of the Debtors' property through payments aggregating not less than $10,000.00 (the "Transfers," and each, individually, a "Transfer") to Locksmith during March 30, 2024, and June 28, 2024 (the "Preference Period").

WHEREAS, on or about June 26, 2026, the Parties entered into a Tolling Agreement extending and tolling applicable deadlines through August 31, 2026; thereby permitting the Parties

to engage in settlement discussions without the commencement of an adversary proceeding, and no adversary proceeding has been commenced against Locksmith.

WHEREAS, as reflected by the execution of this Settlement Agreement by the Trustee and Locksmith, the Parties wish to settle the issues existing between them without delay on the terms and conditions hereof; and

NOW, THEREFORE, in consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Trustee and Locksmith agree as follows:

1. Within ten (10) days after the execution of this Settlement Agreement, Locksmith shall pay the Trustee the amount of $10,000.00 on account of the Transfers (the "Settlement Payment"). The Settlement Payment may be made by wire transfer, check, or any such other method that the parties may agree to in writing. The Settlement Payment shall be made payable to George L. Miller, Chapter 7 Trustee and mailed to George L. Miller, Chapter 7 Trustee, 1628 John F. Kennedy Blvd., Suite 950, Philadelphia, PA 19103.

2. The Settlement Agreement, and the obligations of the Parties to perform hereunder, shall become effective on the date which this Settlement Agreement is fully executed by all parties (the "Effective Date"). Upon the Effective Date, Locksmith shall tender the Settlement Payment in full as set forth herein. Locksmith's obligation to make the Settlement Payment shall be a condition precedent to the Trustee's obligation to take further action, including filing a motion seeking approval of this Settlement Agreement pursuant to the Federal Rules of Bankruptcy Procedure 9019 (the "9019 Motion"), and seeking entry of a final, non-appealable order of the Bankruptcy Court approving the Settlement Agreement (the "Approval Order").

3. Following execution of this Settlement Agreement and upon receipt of the Settlement Payment in full, the Trustee shall cause the 9019 Motion to be filed with the Bankruptcy Court seeking entry of the Approval Order. The Parties agree to cooperate in good faith and take all necessary steps to obtain such Approval Order as promptly as reasonably possible.

4. Upon approval of the Settlement Agreement, and within receipt and clearance of the Settlement Payment, the claims against Locksmith will be fully and finally resolved, with prejudice.

5. Upon approval of the Settlement Agreement, the Trustee, on behalf of only the Debtors and the Debtors' Estate, hereby releases and discharges (collectively, the "Release") Locksmith from all claims and Chapter 5 causes of action relating to the Transfers, whether known or unknown, that were or could have been asserted by the Trustee on behalf of only the Debtors and the Debtors' Estate.

6. If the Bankruptcy Court does not approve this Settlement Agreement, the Trustee shall promptly return the Settlement Payment to Locksmith.

7. If the Bankruptcy Court does not approve this Settlement Agreement, the Settlement Agreement, including but not limited to, the Release, shall be null and void in its entirety and nothing in this Settlement Agreement shall in any way limit, modify, or affect, or be deemed to limit, modify or affect, any of the rights, claims or defenses of the parties thereto.

8. Both the Trustee and Locksmith represents and warrants to the other that this Settlement Agreement was executed freely and voluntarily in good faith, at arm's length, that no promises or representations that are not contained in this Settlement Agreement have been made to induce it to execute such documents and that it has not relied on any promise or representation

except as set forth herein, and that it has conducted its own independent investigation of all matters it deems relevant regarding this Settlement Agreement.

9. This Settlement Agreement supersedes all oral or written arrangements, agreements, discussions or communications regarding the terms hereof, and no supplement, modification, waiver or termination of this Settlement Agreement, or any provision hereof, shall be binding, unless executed in writing by each of the Trustee and Locksmith.

10. The Trustee and Locksmith cooperated in drafting this Settlement Agreement. Therefore, in any action or proceeding concerning this Settlement Agreement, the provisions of this Settlement Agreement shall not be construed against either the Trustee or Locksmith as the drafter of this Settlement Agreement.

11. This Settlement Agreement shall be interpreted and governed by the laws of the State of Delaware, without giving effect to its principles of conflicts of law.

12. The Bankruptcy Court shall retain exclusive jurisdiction over any dispute that may arise concerning this Settlement Agreement, including, without limitation, any action to enforce this Settlement Agreement or to interpret its terms, and the parties hereto irrevocably submit to the personal jurisdiction of the Bankruptcy Court for such purposes.

13. This Settlement Agreement shall be binding upon and inure to the benefit of the Trustee and Locksmith their respective successors and assigns.

14. This Settlement Agreement is the result of a compromise of the Transfers and made for purposes of settlement only. Nothing contained in this Settlement Agreement shall be taken or construed as to an admission of liability or wrongdoing of any kind by any Party for any purpose. This Settlement Agreement may be executed in any number of counterparts, and by different signatories hereto in separate counterparts, each of which when so executed, shall be deemed an

original, but all of which taken together, shall constitute one in the same agreement. Counterparts may be delivered via facsimile, electronic mail (including PDF or any electronic signature complying the U.S. Federal ESIGN act of 2000, or any other applicable law) or other transmission method, and any counterpart delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes. Each of the Parties shall take such further action and execute and deliver such further documents as maybe reasonably necessary to carry out the purposes of this Settlement Agreement and to facilitate the satisfaction of any conditions set forth herein.

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have caused this Settlement Agreement to be duly executed as set forth below.

[*Remainder of page intentionally left blank*].

AGREED TO BY:
**GEORGE L. MILLER, CHAPTER 7 TRUSTEE**

By: ______________________________
Title: George L. Miller, Chapter 7 Trustee
Date: 7/31/2026

**THE LOCKSMITH FILM LLC**

By: ______________________________
Title: Managing Member
Date: 7.30.26